CLOSED,APPEAL,ETT–2D,LC1,MEDIATION,PROTO

# U.S. District Court
# DISTRICT OF KANSAS (Topeka)
# CIVIL DOCKET FOR CASE #: <u>5:15–cv–03093–HLT</u>
## *Internal Use Only*

| | |
|---|---|
| Banks v. Opat et al | Date Filed: 04/28/2015 |
| Assigned to: District Judge Holly L. Teeter | Date Terminated: 06/01/2023 |
| Case in other court:  10CCA, 19–03073 | Jury Demand: None |
| 10CCA, 23–03097 | Nature of Suit: 550 Prisoner: Civil Rights |
| 10CCA, 23–03102 | Jurisdiction: Federal Question |
| Cause: 42:1983 Prisoner Civil Rights | |

**Plaintiff**

| | | |
|---|---|---|
| **Albert Dewayne Banks** | represented by | **Albert Dewayne Banks** |
| | | 750 Shannon Drive |
| | | Romeoville, IL 60446 |
| | | Email: |
| | | PRO SE |
| | | *Bar Number:* |
| | | *Bar Status:* |
| | | |
| | | **Michael J. Shultz** |
| | | Shultz Law Office, PA |
| | | 445 North Waco |
| | | Wichita, KS 67202 |
| | | 316–269–2284 |
| | | Fax: 316–269–2011 |
| | | Alternative Phone: |
| | | Cell Phone: |
| | | Email: michael@shultzlaw.net |
| | | *TERMINATED: 09/28/2022* |
| | | *LEAD ATTORNEY* |
| | | *Bar Number: 23133* |
| | | *Bar Status: Active* |

V.

**Consol Plaintiff**

| | | |
|---|---|---|
| **Anthony Thompson** | represented by | **Anthony Thompson** |
| *TERMINATED: 10/14/2022* | | 1316 SW Wester, Apt. 8 |
| | | Topeka, KS 66605 |
| | | Email: |
| | | PRO SE |
| | | *Bar Number:* |
| | | *Bar Status:* |
| | | |
| | | **Michael J. Shultz** |
| | | (See above for address) |

1

*TERMINATED: 09/28/2022*
*LEAD ATTORNEY*
*Bar Number: 23133*
*Bar Status: Active*

V.

**Defendant**

**David R. Platt**
*Former District Court Judge, Geary County District Court, in his individual capacity*
*TERMINATED: 02/20/2018*

**Defendant**

**Steven L. Opat**
*Former Geary County District Attorney, in his individual capacity*
*TERMINATED: 12/27/2021*

represented by **Eric Turner**
Foulston Siefkin LLP – OP
7500 College Blvd., Suite 1400
Overland Park, KS 66210
913–253–2176
Fax: 913–498–2101
Alternative Phone:
Cell Phone:
Email: eturner@foulston.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 25065*
*Bar Status: Active*

**Toby Crouse**
U.S. District Court – Topeka
444 SE Quincy Street
Topeka, KS 66683–0001
Alternative Phone:
Cell Phone:
Email:
*TERMINATED: 10/23/2020*
*LEAD ATTORNEY*
*Bar Number: 20030*
*Bar Status: Justice Judge Magist*

**Wendell F. Cowan , Jr.**
Foulston Siefkin LLP – OP
7500 College Blvd., Suite 1400
Overland Park, KS 66210
913–498–2100
Fax: 913–498–2101
Alternative Phone:
Cell Phone:
Email: bcowan@foulston.com
*LEAD ATTORNEY*

2

*ATTORNEY TO BE NOTICED*
*Bar Number: 08227*
*Bar Status: **Terminated***

**Defendant**

**Glen F. Virden**                                          represented by     **Arthur S. Chalmers**
*Senior Special Agent, Kansas Bureau of*                                      Kansas Attorney General – Topeka
*Investigation, in his individual capacity*                                   120 SW 10th Avenue, 2nd Floor
***TERMINATED: 12/27/2021***                                                  Topeka, KS 66612
                                                                              785–368–6244
                                                                              Alternative Phone:
                                                                              Cell Phone: 316–644–8541
                                                                              Email: art.chalmers@ag.ks.gov
                                                                              ***TERMINATED: 06/05/2023***
                                                                              *LEAD ATTORNEY*
                                                                              *Bar Number: 11088*
                                                                              *Bar Status: Active*

                                                                              **Carrie A. Barney**
                                                                              Kansas Attorney General – Topeka
                                                                              120 SW 10th Avenue, 2nd Floor
                                                                              Topeka, KS 66612
                                                                              785–368–6695
                                                                              Fax: 785–291–3767
                                                                              Alternative Phone:
                                                                              Cell Phone:
                                                                              Email: carrie.barney@ag.ks.gov
                                                                              ***TERMINATED: 05/28/2020***
                                                                              *LEAD ATTORNEY*
                                                                              *Bar Number: 22872*
                                                                              *Bar Status: Active*

                                                                              **Shon D. Qualseth**
                                                                              785–368–8424
                                                                              Fax: 785–291–3767
                                                                              Alternative Phone:
                                                                              Cell Phone: 785–331–7247
                                                                              Email: shon.qualseth@ag.ks.gov
                                                                              *LEAD ATTORNEY*
                                                                              *ATTORNEY TO BE NOTICED*
                                                                              *Bar Number: 18369*
                                                                              *Bar Status: Active*

**Defendant**

**Sprint/Nextel Wireless Telephone**                       represented by     **Elizabeth Marden**
**Company**                                                                   Polsinelli PC – 48th Place
                                                                              900 W. 48th Place, Suite 900
                                                                              Kansas City, MO 64112–1895
                                                                              913–526–3900
                                                                              Alternative Phone:
                                                                              Cell Phone:

Email: lmarden@polsinelli.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 78740*
*Bar Status: **Terminated***

**Jay E. Heidrick**
Polsinelli PC – 48th Place
900 W. 48th Place, Suite 900
Kansas City, MO 64112–1895
816–572–4765
Fax: 816–753–1536
Alternative Phone:
Cell Phone:
Email: jheidrick@polsinelli.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 20770*
*Bar Status: Active*

**Kymberly Kester**
Polsinelli PC
401 Commerce Street, Suite 900
Nashville, TN 37219
615–259–1510
Fax: 615–259–1573
Alternative Phone:
Cell Phone:
Email: kkester@polsinelli.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Michael L. Walden**
Shook, Hardy & Bacon LLP – KC/Grand
2555 Grand Boulevard
Kansas City, MO 64108–2613
816–559–2181
Alternative Phone: 816–474–6550
Cell Phone:
Email: mwalden@shb.com
*TERMINATED: 04/30/2019*
*LEAD ATTORNEY*
*Bar Number: 26346*
*Bar Status: Active*

**Defendant**

**Virgin Mobile USA/Sprint PCS**        represented by   **Elizabeth Marden**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Bar Number: 78740*
*Bar Status:* ***Terminated***

**Jay E. Heidrick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 20770*
*Bar Status: Active*

**Kymberly Kester**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Michael L. Walden**
(See above for address)
 *TERMINATED: 04/30/2019*
*LEAD ATTORNEY*
*Bar Number: 26346*
*Bar Status: Active*

**Defendant**

| | | |
|---|---|---|
| **Timothy Brown**<br>*Former Chief of Junction City Police*<br>*Department, in his individual capacity*<br>*TERMINATED: 12/27/2021* | represented by | **Michael K. Seck**<br>Fisher, Patterson, Sayler & Smith, LLP –<br>Overland Park<br>9393 W. 110th Street, Suite 300<br>Overland Park, KS 66210<br>913–339–6757<br>Alternative Phone:<br>Cell Phone:<br>Email: mseck@fpsslaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Number: 11393*<br>*Bar Status: Active*<br><br>**William D. Cross , Jr.**<br>Henderson Engineers<br>8345 Lenexa Drive<br>Lenexa, KS 66214<br>816–686–7989<br>Alternative Phone:<br>Cell Phone:<br>Email: bill.cross@hendersonengineers.com<br> *TERMINATED: 12/18/2018*<br>*LEAD ATTORNEY*<br>*Bar Number: 27530* |

*Bar Status: Active*

**Defendant**

**Brad Schoen**                                    represented by   **David R. Cooper**
*Director of Riley County Police*                                  Fisher, Patterson, Sayler & Smith, LLP –
*Department, in his individual and official*                       Topeka
*capacity*                                                         3550 SW Fifth Street
***TERMINATED: 02/20/2018***                                      Topeka, KS 66606
                                                                  785–232–7761
                                                                  Fax: 785–286–6609
                                                                  Alternative Phone:
                                                                  Cell Phone: 785–633–7545
                                                                  Email: dcooper@fpsslaw.com
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*
                                                                  *Bar Number: 16690*
                                                                  *Bar Status: Active*

                                                                  **Lauren E. Laushman**
                                                                  Henderson Engineers
                                                                  8345 Lenexa Drive, Suite 300
                                                                  Lenexa, KS 66049
                                                                  785–979–5936
                                                                  Alternative Phone:
                                                                  Cell Phone: 785–979–5936
                                                                  Email: l.laushman@gmail.com
                                                                  ***TERMINATED: 06/18/2020***
                                                                  *LEAD ATTORNEY*
                                                                  *Bar Number: 25776*
                                                                  *Bar Status: **Inactive***

**Defendant**

**Ron Miller**
*Chief of Police, Topeka Police*
*Department, in his individual and official*
*capacity*
***TERMINATED: 02/20/2018***

**Defendant**

**Geary County, Kansas**
***TERMINATED: 02/20/2018***

**Defendant**

**Kansas Bureau of Investigation**                  represented by   **Carrie A. Barney**
***TERMINATED: 02/20/2018***                                        (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*
                                                                    *Bar Number: 22872*
                                                                    *Bar Status: Active*

**Defendant**

**Junction City Police Department**
*TERMINATED: 02/20/2018*

**Defendant**

**Riley County Police Department**
*TERMINATED: 02/20/2018*

**Defendant**

**Topeka Police Department**
*TERMINATED: 02/20/2018*

**Defendant**

| | | |
|---|---|---|
| **Tony Wolf**<br>*Sheriff, Geary County Sheriff's*<br>*Department, in his individual and official*<br>*capacity*<br>*TERMINATED: 12/27/2021* | represented by | **Eric Turner**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Number: 25065*<br>*Bar Status: Active* |
| | | **Toby Crouse**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Number: 20030*<br>*Bar Status: Justice Judge Magist* |

V.

**Consol Defendant**

| | | |
|---|---|---|
| **Glen F. Virden**<br>*TERMINATED: 12/27/2021* | represented by | **Arthur S. Chalmers**<br>(See above for address)<br> *TERMINATED: 06/05/2023*<br>*LEAD ATTORNEY*<br>*Bar Number: 11088*<br>*Bar Status: Active* |

**Consol Defendant**

| | | |
|---|---|---|
| **T–Mobile U.S.A.**<br>*TERMINATED: 10/14/2022* | represented by | **Amanda S. Vogelsberg**<br>Henson, Hutton, Mudrick, Gragson &<br>Vogelsberg, LLP<br>3649 SW Burlingame Road, Suite 200<br>Topeka, KS 66611–21558<br>785–232–2200<br>Fax: 785–232–3344<br>Alternative Phone:<br>Cell Phone:<br>Email: avogelsberg@hhmglaw.com<br>*LEAD ATTORNEY* |

*ATTORNEY TO BE NOTICED*
*Bar Number: 23360*
*Bar Status: Active*

**James Phillip Gragson**
Henson, Hutton, Mudrick, Gragson &
Vogelsberg, LLP
3649 SW Burlingame Road, Suite 200
Topeka, KS 66611–21558
785–232–2200
Alternative Phone:
Cell Phone:
Email: jpgragson@hhmglaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16103*
*Bar Status: Active*

**Jay E. Heidrick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 20770*
*Bar Status: Active*

**Kymberly Kester**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Michael T. Hilgers**
Hilgers Graben, PLLC
570 Fallbrook Blvd., Suite 109
Lincoln, NE 68521
402–218–2106
Fax: 402–413–1880
Alternative Phone:
Cell Phone:
Email: mhilgers@hilgersgraben.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Trenton D. Tanner**
Hilgers Graben, PLLC
575 Fallbrook Blvd., Suite 200
Lincoln, NE 68521

402–260–1391
Fax: 402–413–1880
Alternative Phone:
Cell Phone:
Email: ttanner@hilgersgraben.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Consol Defendant**

**Timothy Brown**                                    represented by   **Michael K. Seck**
*TERMINATED: 12/27/2021*                                              (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*
                                                                     *Bar Number: 11393*
                                                                     *Bar Status: Active*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 04/28/2015 | 1 | COMPLAINT filed by Plaintiff Albert Dewayne Banks (Attachments: # 1 Exhibit List and Exhibits 1–4; # 2 Envelope) (smnd) (Entered: 04/28/2015) |
| 04/28/2015 | 2 | MOTION for Leave to Proceed in forma pauperis by Plaintiff Albert Dewayne Banks (referred to Magistrate Judge David J. Waxse) (Attachments: # 1 Account Statement) (smnd) (Entered: 04/28/2015) |
| 04/28/2015 | 3 | MOTION for Issuance of Summons by Plaintiff Albert Dewayne Banks (smnd) (Entered: 04/28/2015) |
| 07/21/2015 | 4 | NOTICE AND ORDER TO SHOW CAUSE ENTERED: Plaintiff is granted thirty (30) days in which to submit to the court an initial partial filing fee of $38.50. Within the same thirty–day period, plaintiff is required to show good cause, in writing, to the Honorable Sam A. Crow, United States Senior District Judge, why plaintiff's complaint should not be dismissed. Plaintiff's motion 3 for issuance of summons is denied without prejudice. Signed by Senior District Judge Sam A. Crow on 07/21/15. Mailed to pro se party Albert Dewayne Banks by regular mail. (smnd) (Entered: 07/21/2015) |
| 08/17/2015 | | INITIAL PARTIAL FILING FEE PAID on 08/17/15, Receipt No. T4631009132, in the amount of $ 38.50 (smnd) (Entered: 08/17/2015) |
| 08/17/2015 | 5 | MOTION to Consolidate Cases (titled Motion to Amend Complaint) by Plaintiff Albert Dewayne Banks (referred to Magistrate Judge David J. Waxse) (smnd) (Entered: 08/17/2015) |
| 08/17/2015 | 6 | RESPONSE (titled Statement of Facts) re 4 Notice and Order to Show Cause by Plaintiff Albert Dewayne Banks (Attachments: # 1 Memorandum of Law in Support of Statement of Facts; # 2 Exhibit 1; # 3 Exhibit 2; # 4 Exhibit 3; # 5 Exhibit 4; # 6 Envelope) (smnd) (Entered: 08/17/2015) |

| 01/06/2016 | 7 | MOTION for Stay of Execution by Plaintiff Albert Dewayne Banks (referred to Magistrate Judge David J. Waxse) (Attachments: # 1 Envelope) (smnd) (Entered: 01/06/2016) |
|---|---|---|
| 03/16/2016 | 8 | ORDER ENTERED: Plaintiff's motion 2 for leave to proceed in forma pauperis is granted with payment of the remainder of the district court filing fee to proceed as authorized by 28 U.S.C. 1915(b)(2). Plaintiff's motions 5 to consolidate is denied as moot. Plaintiff's motion 7 for a stay is granted. Signed by Senior District Judge Sam A. Crow on 03/16/16. Mailed to pro se party Albert Dewayne Banks by regular mail. (smnd) (Entered: 03/16/2016) |
| 03/28/2016 | 9 | RETURN mail received re 8 Order addressed to Plaintiff Albert Dewayne Banks (Return to Sender/Departed Facility); Remailed to Plaintiff Banks at FCI – Florence, P.O. Box 6000, Florence, Colorado 81226 (Current Location Pursuant to FBOP) (smnd) (Entered: 03/28/2016) |
| 04/07/2016 | 10 | NOTICE of Change of Address by Plaintiff Albert Dewayne Banks, #23203–031: now at FCI – Florence, P.O. Box 6000, Florence, Colorado 81226 (Attachments: # 1 Envelope) (smnd) (Entered: 04/07/2016) |
| 09/29/2017 | 11 | ORDER ENTERED: Defendants Platt, Junction City Police Department, Riley County Police Department and Topeka Police Department are dismissed from this case and plaintiff's claims for injunctive and declaratory relief are dismissed. Plaintiff's § 1983 and state law claims against defendants Platt, Opat and Virden in their official capacities and plaintiff's § 1983 and state law claims against defendant KBI are dismissed. The court shall dismiss defendant Geary County, Kansas from this action unless plaintiff files a motion to amend the complaint within 30 days of this order. The Clerk shall issue waiver of summons forms and prepare summons consistent with Section VII of this order. Signed by District Judge Sam A. Crow on 09/29/17. Mailed to pro se party Albert Banks by regular mail. (smnd) (Entered: 09/29/2017) |
| 09/29/2017 | | SUMMONS ISSUED as to Defendants Kansas Bureau of Investigation, Sprint/Nextel Wireless Telephone Company and Virgin Mobile USA/Sprint PCS. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (smnd) (Entered: 09/29/2017) |
| 09/29/2017 | | WAIVERS OF SERVICE OF SUMMONS ISSUED as to Defendants Timothy Brown, Ron Miller, Steven L. Opat, Brad Schoen and Glen F. Virden. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (smnd) (Entered: 09/29/2017) |
| 10/02/2017 | | MINUTE ORDER terminating referral to magistrate judge. Magistrate Judge David J. Waxse no longer assigned to case. Signed by District Judge Sam A. Crow on 10/2/17. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(lak) (Entered: 10/02/2017) |
| 10/05/2017 | 12 | WAIVER OF SERVICE Returned Executed by Steven L. Opat. Steven L. Opat waiver sent on 9/29/2017, answer due 11/28/2017. (Crouse, Toby) (Entered: 10/05/2017) |
| 10/05/2017 | 13 | ENTRY OF APPEARANCE by Toby Crouse on behalf of Steven L. Opat. (Crouse, Toby) (Entered: 10/05/2017) |
| 10/05/2017 | 14 | |

| | | |
|---|---|---|
| | | WAIVER OF SERVICE Returned Executed – Prisoner Case by Timothy Brown. Timothy Brown waiver sent on 9/29/2017, answer due 11/28/2017. (Seck, Michael) (Entered: 10/05/2017) |
| 10/10/2017 | 17 | SUMMONS RETURNED EXECUTED by certified mail upon Defendant Sprint/Nextel Wireless Telephone Company, c/o Corporation Service Company, Resident Agent; served on 10/6/2017, answer due 10/27/2017 (smnd) (Entered: 10/13/2017) |
| 10/10/2017 | 18 | SUMMONS RETURNED EXECUTED by certified mail upon Defendant Virgin Mobile USA/Sprint PCS, c/o Corporation Service Company, Resident Agent; served on 10/6/2017, answer due 10/27/2017 (smnd) (Entered: 10/13/2017) |
| 10/12/2017 | 15 | MOTION to Dismiss Party Timothy Brown by Defendant Timothy Brown (Seck, Michael) (Entered: 10/12/2017) |
| 10/12/2017 | 16 | MEMORANDUM IN SUPPORT of 15 MOTION to Dismiss Party Timothy Brown by Defendant Timothy Brown(Seck, Michael) (Entered: 10/12/2017) |
| 10/12/2017 | 19 | SUMMONS RETURNED EXECUTED by certified mail upon Defendant Kansas Bureau of Investigation, c/o Kansas Attorney General; served on 10/6/2017, answer due 10/27/2017 (smnd) (Entered: 10/13/2017) |
| 10/23/2017 | 20 | NOTICE of Change of Address by Plaintiff Albert Dewayne Banks, #23203–031: now at Leavenworth Detention Center, 100 Highway Terrace, Leavenworth, Kansas 66048 (Attachments: # 1 Envelope) (smnd) (Entered: 10/23/2017) |
| 10/23/2017 | | DOCKET ANNOTATION: Pursuant to Plaintiff Albert Banks' request, a copy of the Order 11 filed 09/29/17 and a current docket sheet were mailed to him at Leavenworth Detention Center, 100 Highway Terrace, Leavenworth, Kansas 66048 (smnd) (Entered: 10/23/2017) |
| 10/27/2017 | 21 | ENTRY OF APPEARANCE by Carrie A. Barney on behalf of Kansas Bureau of Investigation. (Barney, Carrie) (Entered: 10/27/2017) |
| 10/27/2017 | 22 | CLERKS ORDER EXTENDING TIME until November 10, 2017, for Defendant Kansas Bureau of Investigation to answer or otherwise plead. Signed by Deputy Clerk on 10/27/17. Mailed to pro se party Albert Dewayne Banks by regular mail. (smnd) (Entered: 10/27/2017) |
| 11/08/2017 | 23 | ENTRY OF APPEARANCE by Michael L. Walden on behalf of Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS (Walden, Michael) (Entered: 11/08/2017) |
| 11/08/2017 | 24 | MOTION for Extension of Time to File Answer re 1 Complaint by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS (Walden, Michael) (Entered: 11/08/2017) |
| 11/09/2017 | 25 | ORDER ENTERED: The motion for extension of time 24 of defendants Sprint/Nextel Wireless Telephone Company and Virgin Mobile USA/Sprint PCS is granted. The deadline for responding to plaintiff's complaint is extended to November 28, 2017. Signed by U.S. Senior District Judge Sam A. Crow on 11/09/17. Mailed to pro se party Albert Banks by regular mail. (smnd) (Entered: 11/09/2017) |
| 11/09/2017 | 26 | MOTION for Extension of Time to File Response as to 15 MOTION to Dismiss Party Timothy Brown by Plaintiff Albert Dewayne Banks (Attachments: # 1 |

| | | Envelope) (smnd) (Entered: 11/09/2017) |
|---|---|---|
| 11/10/2017 | 27 | RESPONSE by Defendant Timothy Brown re 26 MOTION for Extension of Time to File Response as to 15 MOTION to Dismiss Party Timothy Brown (Seck, Michael) (Entered: 11/10/2017) |
| 11/13/2017 | 28 | MOTION for Extension of Time to File Answer by Defendant Kansas Bureau of Investigation (Barney, Carrie) (Entered: 11/13/2017) |
| 11/15/2017 | 29 | ORDER granting 26 Motion for Extension of Time to File Response re 26 MOTION for Extension of Time to File Response as to 15 MOTION to Dismiss Party Timothy Brown ( Response deadline 11/30/2017); granting 28 Motion for Extension of Time to Answer Kansas Bureau of Investigation answer due 11/20/2017. Signed by District Judge Sam A. Crow on 11/15/17.Mailed to pro se party Albert Banks by regular mail (daw) (Entered: 11/15/2017) |
| 11/15/2017 | 30 | ORDER re 11 Geary County, Kansas terminated. Plaintiff did not respond to directive to file an amended complaint Signed by District Judge Sam A. Crow on 11/15/17.Mailed to pro se party Albert Banks by regular mail (daw) (Entered: 11/15/2017) |
| 11/20/2017 | 31 | MOTION to Proceed to Trial Against Timothy Brown by Plaintiff Albert Dewayne Banks (Attachments: # 1 Envelope) (smnd) (Entered: 11/20/2017) |
| 11/20/2017 | 32 | MEMORANDUM IN SUPPORT of 31 MOTION to Proceed to Trial Against Timothy Brown by Plaintiff Albert Dewayne Banks (Attachments: # 1 Envelope) (smnd) (Entered: 11/20/2017) |
| 11/20/2017 | 33 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Kansas Bureau of Investigation (Barney, Carrie) (Entered: 11/20/2017) |
| 11/20/2017 | 34 | MEMORANDUM IN SUPPORT of 33 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Kansas Bureau of Investigation(Barney, Carrie) (Entered: 11/20/2017) |
| 11/21/2017 | 35 | MOTION to Dismiss by Defendant Steven L. Opat. (Crouse, Toby) (Entered: 11/21/2017) |
| 11/21/2017 | 36 | MEMORANDUM IN SUPPORT of 35 MOTION to Dismiss by Defendant Steven L. Opat(Crouse, Toby) (Entered: 11/21/2017) |
| 11/21/2017 | 37 | MOTION for extension of time to File Reply by Defendant Timothy Brown (Seck, Michael) Modified motion event on 11/22/2017 (msb). (Entered: 11/21/2017) |
| 11/22/2017 | 38 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS (Walden, Michael) (Entered: 11/22/2017) |
| 11/22/2017 | 39 | MEMORANDUM IN SUPPORT of 38 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS(Walden, Michael) (Entered: 11/22/2017) |
| 11/27/2017 | 40 | MOTION to Appoint Counsel by Plaintiff Albert Dewayne Banks (Attachments: # 1 Envelope) (smnd) (Entered: 11/28/2017) |
| 11/28/2017 | 41 | ORDER ENTERED: Defendant Brown's motion 37 for an extension of time until December 8, 2017, to file a reply brief in support of his motion to dismiss is granted. |

| | | Signed by U.S. Senior District Judge Sam A. Crow on 11/28/17. Mailed to pro se party Albert Banks by regular mail. (smnd) (Entered: 11/28/2017) |
|---|---|---|
| 12/04/2017 | 42 | MOTION for Extension of Time to File Response as to 33 Motion to Dismiss for Failure to State a Claim by Defendant Kansas Bureau of Investigation and 35 Motion to Dismiss by Defendant Steven L. Opat by Plaintiff Albert Dewayne Banks (Attachments: # 1 Envelope) (smnd) (Entered: 12/04/2017) |
| 12/05/2017 | 43 | ORDER ENTERED: Plaintiff's motion 42 for extension of time is granted. Plaintiff shall be granted time until December 29, 2017 to file a response to defendant Opat's motion to dismiss and defendant KBI's motion to dismiss. Signed by U.S. Senior District Judge Sam A. Crow on 12/05/17. Mailed to pro se party Albert Dewayne Banks by regular mail. (smnd) (Entered: 12/05/2017) |
| 12/07/2017 | 44 | REPLY TO RESPONSE TO MOTION by Defendant Timothy Brown re: 15 MOTION to Dismiss Party Timothy Brown (Attachments: # 1 Exhibit 1)(Seck, Michael) (Entered: 12/07/2017) |
| 12/13/2017 | 45 | ORDER ENTERED: Plaintiff's request for appointment of counsel is denied without prejudice. Signed by U.S. District Senior Judge Sam A. Crow on 12/13/17. Mailed to pro se party Albert Banks by regular mail. (smnd) (Entered: 12/13/2017) |
| 12/29/2017 | 46 | MOTION for Leave to Amend 1 Complaint by Plaintiff Albert Dewayne Banks (Attachments: # 1 Amended Complaint; # 2 Envelope) (smnd) (Entered: 01/02/2018) |
| 12/29/2017 | 47 | MOTION to Amend 1 Complaint by Plaintiff Albert Dewayne Banks (Attachments: # 1 Envelope) (smnd) (Entered: 01/02/2018) |
| 12/29/2017 | 48 | MEMORANDUM IN SUPPORT of 47 MOTION to Amend 1 Complaint by Plaintiff Albert Dewayne Banks (Attachments: # 1 Envelope)(smnd) (Entered: 01/02/2018) |
| 12/29/2017 | 49 | STRICKEN PURSUANT TO ORDER 56 FILED 01/09/18 –– RESPONSE by Plaintiff Albert Dewayne Banks re 38 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Sprint/Nextel Wireless Telephone Company and Virgin Mobile USA/Sprint PCS, 35 MOTION to Dismiss by Defendant Steven L. Opat, 15 MOTION to Dismiss Party Timothy Brown by Defendant Timothy Brown, and 33 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Kansas Bureau of Investigation (Attachments: # 1 Envelope) (smnd) Modified text on 1/9/2018 (smnd) (Entered: 01/02/2018) |
| 12/29/2017 | 50 | MEMORANDUM OF LAW IN SUPPORT of 49 Response to Defendants' Motions to Dismiss by Plaintiff Albert Dewayne Banks (Attachments: # 1 Envelope) (smnd) (Entered: 01/02/2018) |
| 01/03/2018 | 51 | ORDER ENTERED: Plaintiff is granted 14 days to clarify which document – Doc. No. 46–1 or Doc. No. 47 – is his proposed amended complaint. Defendants' time to respond to plaintiff's motion or request for leave to amend the complaint shall not begin to run until January 17, 2018. Signed by U.S. District Senior Judge Sam A. Crow on 01/03/18. Mailed to pro se party Albert Dewayne Banks by regular mail. (smnd) (Entered: 01/03/2018) |
| 01/04/2018 | 52 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Brad Schoen (Cooper, David) (Entered: 01/04/2018) |
| 01/04/2018 | 53 | MEMORANDUM IN SUPPORT of 52 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Brad Schoen(Cooper, David) (Entered: 01/04/2018) |

| 01/05/2018 | 54 | MOTION to Strike 50 Supplement, 48 Memorandum in Support of Motion by Defendant Timothy Brown (Seck, Michael) (Entered: 01/05/2018) |
| 01/08/2018 | 55 | MOTION for Extension of Time to File Response as to 46 MOTION for Leave to Amend 1 Complaint, 47 MOTION to Amend 1 Complaint, 50 Supplement, 48 Memorandum in Support of Motion, 49 Response to Motion, by Defendant Steven L. Opat (Crouse, Toby) (Entered: 01/08/2018) |
| 01/09/2018 | 56 | ORDER ENTERED: The court directs that Doc. No. 49 be stricken as duplicative of Doc. No. 47 . Doc. No. 47 shall, depending upon plaintiff's response to Doc. No. 51 , either be considered as plaintiff's proposed amended complaint or stricken as an improper and immaterial pleading. The court shall treat Doc. No. 48 as a memorandum in support of the motion to amend – Doc. No. 46 . The court shall treat Doc. No. 50 as a response to defendants' motions to dismiss. The court shall treat the motion for extension of time 55 as seeking time to respond to Doc. Nos. 48 , 49 and 50 and, upon review, grant defendant Opat time until January 31, 2018, to respond to Doc. Nos. 48 and 50 . Signed by U.S. District Senior Judge Sam A. Crow on 01/09/18. Mailed to pro se party Albert Dewayne Banks by regular mail. (smnd) (Entered: 01/09/2018) |
| 01/11/2018 | 57 | ENTRY OF APPEARANCE by William Dennis Cross, Jr on behalf of Timothy Brown. (Cross, William) (Entered: 01/11/2018) |
| 01/11/2018 | 58 | MOTION for Extension of Time to File Response as to 50 Supplement, 48 Memorandum in Support of Motion by Defendant Timothy Brown (Seck, Michael) (Entered: 01/11/2018) |
| 01/12/2018 | 59 | ORDER ENTERED: Consistent with the court's order at Doc. No. 51 , defendant Brown is permitted time until January 31, 2018 to respond to plaintiff's motion to amend. Defendant Brown is also granted time until January 31, 2018, to file a reply or response to plaintiff's Doc. No. 50 . Signed by U.S. District Senior Judge Sam A. Crow on 01/12/18. Mailed to pro se party Albert Dewayne Banks by regular mail. (smnd) (Entered: 01/12/2018) |
| 01/16/2018 | 60 | NOTICE by Plaintiff Albert Dewayne Banks re 38 Motion to Dismiss for Failure to State a Claim and 39 Memorandum in Support of Motion. (Copies of Documents No. 38 & 39 mailed to plaintiff Banks.) (Attachments: # 1 Envelope) (smnd) (Entered: 01/16/2018) |
| 01/16/2018 | 61 | RESPONSE by Plaintiff Albert Dewayne Banks re 51 Order (Attachments: # 1 Envelope) (smnd) (Entered: 01/16/2018) |
| 01/17/2018 | 62 | ORDER ENTERED: When defendants respond to plaintiff's motion to amend, the court requests that defendants treat Doc. Nos. 47 and 46–1 as plaintiff's proposed amended complaint. Signed by U.S. District Senior Judge Sam A. Crow on 01/17/18. Mailed to pro se party Albert Dewayne Banks by regular mail. (smnd) (Entered: 01/17/2018) |
| 01/22/2018 | 63 | MOTION for Extension of Time to File Response as to Defendant Brad Schoen's 52 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Plaintiff Albert Dewayne Banks (Attachments: # 1 Envelope) (smnd) (Entered: 01/22/2018) |
| 01/23/2018 | 64 | ORDER ENTERED: The motion to strike 54 shall be granted in part and denied in part consistent with this order. Doc. No. 48 shall not be stricken because the court considers it as a memorandum in support of a motion to amend. Doc. No. 50 shall not |

| | | |
|---|---|---|
| | | be stricken, but the court shall disregard Doc. No. 50 when considering defendant Brown's motion to dismiss. Signed by U.S. District Senior Judge Sam A. Crow on 01/23/18. Mailed to pro se party Albert Dewayne Banks by regular mail. (smnd) (Entered: 01/23/2018) |
| 01/24/2018 | 65 | RESPONSE to 50 Supplement, 48 Memorandum in Support of Motion *to Amend Complaint* by Defendant Steven L. Opat. (Crouse, Toby) (Entered: 01/24/2018) |
| 01/24/2018 | 66 | REPLY TO RESPONSE TO MOTION by Defendant Steven L. Opat re: 35 MOTION to Dismiss (Crouse, Toby) (Entered: 01/24/2018) |
| 01/26/2018 | 67 | ORDER ENTERED: Plaintiff's motion 63 for a 14–day extension of time to respond to defendant Schoen's motion to dismiss is granted. Plaintiff's response shall be due on February 8, 2018. Signed by U.S. District Senior Judge Sam A. Crow on 01/26/18. Mailed to pro se party Albert Dewayne Banks by regular mail. (smnd) (Entered: 01/26/2018) |
| 01/30/2018 | 68 | NOTICE OF CHANGE OF FIRM NAME OR ADDRESS by Toby Crouse (Crouse, Toby) (Entered: 01/30/2018) |
| 01/30/2018 | 69 | RESPONSE by Defendant Brad Schoen re 46 MOTION for Leave to Amend 1 Complaint (Cooper, David) (Entered: 01/30/2018) |
| 01/31/2018 | 70 | RESPONSE by Defendant Timothy Brown re 46 MOTION for Leave to Amend 1 Complaint (Seck, Michael) (Entered: 01/31/2018) |
| 02/02/2018 | 71 | ENTRY OF APPEARANCE by Wendell F. Cowan, Jr on behalf of Steven L. Opat. (Cowan, Wendell) (Entered: 02/02/2018) |
| 02/08/2018 | 72 | MOTION to Add Brad Schoen to Amended Complaint by Plaintiff Albert Dewayne Banks (smnd) (Entered: 02/12/2018) |
| 02/20/2018 | 73 | ORDER ENTERED: Plaintiff's motion to amend and motion for leave to amend 46 & 47 are granted. The amended complaint is Doc. No. 47 . The currently pending motions to dismiss 15 , 33 , 35 , 38 & 52 and the motion to proceed to trial 31 shall be considered moot. Upon screening the amended complaint, the court directs: that defendant Platt be dismissed; that the official capacity claims against defendants Platt, Opat and Brown be dismissed; that the § 1983 claim against defendant Virden in his official capacity be dismissed; and that defendants Brad Schoen, Ron Miller, Geary County, Kansas, Kansas Bureau of Investigation, Junction City Police Department, Riley County Police Department and Topeka Police Department be dismissed without prejudice. The court further denies plaintiff's motion 72 to add Brad Schoen to the amended complaint. Signed by U.S. District Senior Judge Sam A. Crow on 02/20/18. Mailed to pro se party Albert Dewayne Banks by regular mail. (smnd) (Entered: 02/20/2018) |
| 02/20/2018 | 74 | AMENDED COMPLAINT filed by Plaintiff Albert Dewayne Banks (smnd) (Attachment added on 2/21/2018: # 1 Main Document) (mls) (Entered: 02/20/2018) |
| 02/20/2018 | 75 | REPLY TO RESPONSE TO MOTION by Plaintiff Albert Dewayne Banks re: 47 MOTION to Amend Complaint (Attachments: # 1 Envelope) (smnd) (Entered: 02/20/2018) |
| 02/26/2018 | 76 | ORDER ENTERED: The screening process under 28 U.S.C. § 1915A having been completed, this matter is returned to the Clerk of the Court for random reassignment for all further proceedings pursuant to D. Kan. R. 40.1. Signed by U.S. District |

| | | |
|---|---|---|
| | | Senior Judge Sam A. Crow on 02/26/18. Mailed to pro se party Albert Dewayne Banks by regular mail. (smnd) (Entered: 02/26/2018) |
| 02/26/2018 | | (Court only) **REASSIGNMENT REQUEST: Request for reassignment from District Judge Sam A. Crow. Reason for reassignment request: Prisoner Case. (smnd)** (Entered: 02/26/2018) |
| 02/26/2018 | 77 | MINUTE ORDER REASSIGNING CASE: Case reassigned to Chief District Judge Julie A. Robinson and Magistrate Judge K. Gary Sebelius for all further proceedings. Senior District Judge Sam A. Crow no longer assigned to case. Entered by Deputy Clerk on 02/26/18. Mailed to pro se party Albert Dewayne Banks by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (smnd) (Entered: 02/26/2018) |
| 02/28/2018 | 78 | ORDER Regarding Service. The court directs the clerk's office to issue a summons for Defendant Glen F. Virden. Service of the summons and most recent complaint shall be attempted by the United States marshal or a deputy marshal, both of whom are appointed for such purpose pursuant to Fed. R. Civ. P. 4(c)(3). The court directs service at the address provided by a plaintiff in a related case, Thompson v. Platt, 15–3117–JAR, ECF No. 67. Signed by Magistrate Judge K. Gary Sebelius on 2/28/18. A copy of this text entry was mailed to plaintiff at the address listed on the docket. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(bh) (Entered: 02/28/2018) |
| 03/01/2018 | | SUMMONS ISSUED as to Defendant Glen F. Virden (issued to US Marshal for service). (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (smnd) (Entered: 03/01/2018) |
| 03/05/2018 | 79 | MOTION to Dismiss *Plaintiff's Amended Petition* by Defendant Timothy Brown (Cross, William) (Entered: 03/05/2018) |
| 03/05/2018 | 80 | MEMORANDUM IN SUPPORT of 79 MOTION to Dismiss *Plaintiff's Amended Petition* by Defendant Timothy Brown(Cross, William) (Entered: 03/05/2018) |
| 03/05/2018 | 81 | MOTION for Extension of Time to File Answer re 74 Amended Complaint by Defendant Steven L. Opat (referred to Magistrate Judge K. Gary Sebelius) (Crouse, Toby) (Entered: 03/05/2018) |
| 03/06/2018 | 82 | ORDER granting 81 Motion for Extension of Time to Answer. Defendant Steven L. Opat shall answer or otherwise respond to plaintiff's amended complaint by March 20, 2018. Signed by Magistrate Judge K. Gary Sebelius on 3/6/18. A copy of this text entry was mailed to plaintiff at the address listed on the docket. (bh) (Entered: 03/06/2018) |
| 03/06/2018 | 83 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS (Walden, Michael) (Entered: 03/06/2018) |
| 03/06/2018 | 84 | MEMORANDUM IN SUPPORT of 83 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS(Walden, Michael) (Entered: 03/06/2018) |
| 03/16/2018 | 85 | SUMMONS RETURNED EXECUTED by certified mail upon Defendant Glen F. Virden; served on 3/13/2018, answer due 4/3/2018 (smnd) (Entered: 03/19/2018) |
| 03/20/2018 | 86 | |

| | | |
|---|---|---|
| | | MOTION to Dismiss *Amended Complaint* by Defendant Steven L. Opat (Crouse, Toby) (Entered: 03/20/2018) |
| 03/20/2018 | 87 | MEMORANDUM IN SUPPORT of 86 MOTION to Dismiss *Amended Complaint* by Defendant Steven L. Opat(Crouse, Toby) (Entered: 03/20/2018) |
| 03/22/2018 | 88 | MOTION for Extension of Time to File Response as to 79 MOTION to Dismiss Plaintiff's Amended Petition by Defendant Timothy Brown and 83 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Sprint/Nextel Wireless Telephone Company and Virgin Mobile USA/Sprint PCS by Plaintiff Albert Dewayne Banks (Attachments: # 1 Envelope) (smnd) (Entered: 03/23/2018) |
| 03/26/2018 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 88 MOTION for Extension of Time to File Response as to 83 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 79 MOTION to Dismiss *Plaintiff's Amended Petition*. The motion will be resolved by the District Judge.** (Entered: 03/26/2018) |
| 03/26/2018 | 89 | ORDER granting 88 Motion for Extension of Time to File Response re 83 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Sprint, and 79 MOTION to Dismiss Plaintiff's Amended Petition by Defendant Timothy Brown. The response deadline is extended to 4/9/2018. Signed by Chief District Judge Julie A Robinson on 3/26/2018. Mailed to pro se party Albert Dewayne Banks, CCA – Leavenworth 100 Highway Terrace Leavenworth, KS 66048 by certified mail (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 03/26/2018) |
| 04/03/2018 | 90 | ENTRY OF APPEARANCE by Carrie A. Barney on behalf of Glen F. Virden (Barney, Carrie) (Entered: 04/03/2018) |
| 04/03/2018 | 91 | CLERKS ORDER EXTENDING TIME until April 17, 2018 for Defendant Glen F. Virden to answer or otherwise plead. Signed by deputy clerk on 04/03/2018. Mailed to pro se party Albert Dewayne Banks by regular mail. (tvn) (Entered: 04/04/2018) |
| 04/09/2018 | 92 | RESPONSE by Plaintiff Albert Dewayne Banks re 83 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS (Attachments: # 1 Exhibit)(smnd) (Additional attachment(s) added on 4/9/2018: # 2 Envelope) (smnd). (Entered: 04/09/2018) |
| 04/09/2018 | 93 | RESPONSE by Plaintiff Albert Dewayne Banks re 86 MOTION to Dismiss Amended Complaint by Defendant Steven L. Opat (Attachments: # 1 Exhibit) (smnd) (Entered: 04/09/2018) |
| 04/09/2018 | 94 | RESPONSE by Plaintiff Albert Dewayne Banks re 79 MOTION to Dismiss Plaintiff's Amended Petition by Defendant Timothy Brown (Attachments: # 1 Exhibit) (smnd) (Entered: 04/09/2018) |
| 04/11/2018 | 95 | REPLY TO RESPONSE TO MOTION by Defendant Timothy Brown re: 79 MOTION to Dismiss *Plaintiff's Amended Petition* (Cross, William) (Entered: 04/11/2018) |
| 04/13/2018 | 96 | MOTION to Appoint Counsel by Plaintiff Albert Dewayne Banks (referred to Magistrate Judge K. Gary Sebelius) (Attachments: # 1 Envelope) (smnd) (Entered: 04/13/2018) |
| 04/17/2018 | 97 | |

| | | ORDER denying without prejudice 96 Motion to Appoint Counsel. Signed by Magistrate Judge James P. O'Hara on 4/17/18. A copy of this order was mailed to plaintiff at the address listed on the docket. (bh) (Entered: 04/17/2018) |
|---|---|---|
| 04/18/2018 | 98 | MOTION for Order *to Certify Final Judgment and Supporting Memorandum* by Defendant Brad Schoen (Cooper, David) (Entered: 04/18/2018) |
| 04/18/2018 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 98 MOTION for Order *to Certify Final Judgment and Supporting Memorandum*. The motion will be resolved by the District Judge.(bh)** (Entered: 04/18/2018) |
| 04/23/2018 | 99 | REPLY TO RESPONSE TO MOTION by Defendant Steven L. Opat re: 86 MOTION to Dismiss *Amended Complaint* (Crouse, Toby) (Entered: 04/23/2018) |
| 05/01/2018 | 100 | REQUEST by Plaintiff Albert Dewayne Banks for Copy of Defendant Glen Virden's Answer to Plaintiff's Amended Complaint, Extension of Time to Respond to Answer, and Current Docket Sheet (Attachments: # 1 Envelope) (a current docket sheet mailed to Plaintiff Banks) (smnd) (Entered: 05/02/2018) |
| 05/21/2018 | 101 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Glen F. Virden (Barney, Carrie) (Entered: 05/21/2018) |
| 05/21/2018 | 102 | MEMORANDUM IN SUPPORT of 101 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Glen F. Virden(Barney, Carrie) (Entered: 05/21/2018) |
| 06/13/2018 | 103 | RESPONSE by Plaintiff Albert Dewayne Banks re 101 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Attachments: # 1 Envelope) (smnd) (Entered: 06/13/2018) |
| 06/13/2018 | 104 | MOTION to Strike Defendants Unauthorized Surreply by Plaintiff Albert Dewayne Banks (Attachments: # 1 Envelope) (smnd) (Entered: 06/13/2018) |
| 06/21/2018 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 104 MOTION to Strike. The motion will be resolved by the District Judge.(bh)** (Entered: 06/21/2018) |
| 06/25/2018 | 105 | RESPONSE by Defendant Timothy Brown re 104 MOTION to Strike (Cross, William) (Entered: 06/25/2018) |
| 07/17/2018 | 106 | MOTION for Sanctions by Defendant Timothy Brown (Attachments: # 1 Attachment)(Cross, William) (Entered: 07/17/2018) |
| 07/18/2018 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 106 MOTION for Sanctions . The motion will be resolved by the District Judge.(bh)** (Entered: 07/18/2018) |
| 08/21/2018 | 107 | MINUTE ORDER REASSIGNING CASE: Case reassigned to District Judge Holly L. Teeter for all further proceedings. Chief District Judge Julie A Robinson no longer assigned to case. Signed by deputy clerk on 8/21/18. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(cs) (Entered: 08/21/2018) |
| 11/16/2018 | 108 | ORDER ENTERED: Plaintiff's Motion to Strike Defendants' Unauthorized Surreply 104 is denied. The Court considers the arguments raised by Brown and Opat in their replies 95 & 99 in determining their pending motions to dismiss the amended complaint. Brown's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure |

| | | |
|---|---|---|
| | | 11 106 is denied. Schoen's Motion to Certify Final Judgment 98 is denied as moot. Signed by District Judge Holly L. Teeter on 11/16/18. Mailed to pro se party Albert Dewayne Banks by regular mail. (smnd) (Entered: 11/16/2018) |
| 11/16/2018 | 109 | MEMORANDUM AND ORDER ENTERED: Defendants' motions to dismiss the amended complaint 79 , 83 , 86 and 101 are granted. Signed by District Judge Holly L. Teeter on 11/16/18. Mailed to pro se party Albert Dewayne Banks by regular mail. (smnd) (Entered: 11/16/2018) |
| 11/16/2018 | 110 | JUDGMENT regarding Memorandum and Order 109 granting defendants' motions to dismiss the amended complaint. ***Terminating Case. Signed by Deputy Clerk on 11/16/18. Mailed to pro se party Albert Dewayne Banks by regular mail. (smnd) (Entered: 11/16/2018) |
| 12/13/2018 | 111 | MOTION to Alter or Amend Judgment by Plaintiff Albert Dewayne Banks (Attachments: # 1 Envelope) (smnd) (Entered: 12/13/2018) |
| 12/18/2018 | 112 | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Bill D. Cross as to Timothy Brown (Cross, William) (Entered: 12/18/2018) |
| 12/26/2018 | 113 | RESPONSE by Defendant Timothy Brown re 111 MOTION to Alter or Amend Judgment (Seck, Michael) (Entered: 12/26/2018) |
| 12/27/2018 | 114 | MOTION for Extension of Time to File Response as to 111 MOTION to Alter or Amend Judgment by Defendant Steven L. Opat (referred to Magistrate Judge K. Gary Sebelius) (Crouse, Toby) (Entered: 12/27/2018) |
| 12/27/2018 | 115 | ORDER granting Defendant Steven Opat's 114 Motion for Extension of Time to File Response re 111 MOTION to Alter or Amend Judgment. Response deadline is 1/10/2019. Signed by District Judge Holly L. Teeter on 12/27/2018. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (md) (Entered: 12/27/2018) |
| 12/27/2018 | 116 | MOTION for Extension of Time to File Response as to 111 MOTION to Alter or Amend Judgment by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS (Walden, Michael) (Entered: 12/27/2018) |
| 12/27/2018 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 116 MOTION for Extension of Time to File Response as to 111 MOTION to Alter or Amend Judgment . The motion will be resolved by the District Judge.(ct)** (Entered: 12/27/2018) |
| 12/27/2018 | 117 | ORDER granting Defendants' Sprint/Nextel Wireless Telephone Company and Virgin Mobile USA/Sprint PCS's 116 Motion for Extension of Time to File Response re 111 MOTION to Alter or Amend Judgment. Response deadline is 1/10/2019. Signed by District Judge Holly L. Teeter on 12/27/2018. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (md) (Entered: 12/27/2018) |
| 12/27/2018 | 118 | RESPONSE by Defendant Brad Schoen re 111 MOTION to Alter or Amend Judgment (Cooper, David) (Entered: 12/27/2018) |
| 12/27/2018 | 119 | ENTRY OF APPEARANCE by Lauren E. Laushman on behalf of Brad Schoen (Laushman, Lauren) (Entered: 12/27/2018) |
| 01/09/2019 | 120 | |

| | | |
|---|---|---|
| | | RESPONSE by Defendant Steven L. Opat re 111 MOTION to Alter or Amend Judgment (Crouse, Toby) (Entered: 01/09/2019) |
| 01/10/2019 | 121 | RESPONSE by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS re 111 MOTION to Alter or Amend Judgment (Walden, Michael) (Entered: 01/10/2019) |
| 01/15/2019 | 122 | REPLY TO RESPONSE TO MOTION by Plaintiff Albert Dewayne Banks re: 111 MOTION to Alter or Amend Judgment (Attachments: # 1 Envelope) (smnd) (Entered: 01/16/2019) |
| 01/18/2019 | 123 | FINAL REPLY TO RESPONSE TO MOTION by Plaintiff Albert Dewayne Banks re: 111 MOTION to Alter or Amend Judgment. (mls) (Entered: 01/18/2019) |
| 01/24/2019 | 124 | MOTION for Default Judgment by Plaintiff Albert Dewayne Banks (Attachments: # 1 Envelope) (smnd) (Entered: 01/24/2019) |
| 01/24/2019 | 125 | FINAL REPLY TO RESPONSE TO MOTION by Plaintiff Albert Dewayne Banks re: 111 MOTION to Alter or Amend Judgment (Attachments: # 1 Envelope) (smnd) (Entered: 01/24/2019) |
| 01/24/2019 | 126 | RESPONSE by Defendant Glen F. Virden re 111 MOTION to Alter or Amend Judgment (Barney, Carrie) (Entered: 01/24/2019) |
| 01/24/2019 | 127 | RESPONSE by Defendant Glen F. Virden re 124 MOTION for Default Judgment (Barney, Carrie) (Entered: 01/24/2019) |
| 01/28/2019 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 124 MOTION for Default Judgment. The motion will be resolved by the District Judge.(bh)** (Entered: 01/28/2019) |
| 02/04/2019 | 128 | REPLY (Final) TO RESPONSE TO MOTION by Plaintiff Albert Dewayne Banks re: 124 MOTION for Default Judgment. (mls) (Entered: 02/04/2019) |
| 02/04/2019 | 129 | REPLY (Final Response) TO RESPONSE TO MOTION by Plaintiff Albert Dewayne Banks re: 111 MOTION to Alter or Amend Judgment. (mls) (Entered: 02/04/2019) |
| 03/20/2019 | 130 | MEMORANDUM AND ORDER ENTERED: Plaintiff's motion to alter or amend the Court's judgment of dismissal 111 is denied. Plaintiff's motion for default judgment against Defendant Glen Virden 124 is denied. Signed by District Judge Holly L. Teeter on 03/20/19. Mailed to pro se party Albert DeWayne Banks by regular mail. (smnd) (Entered: 03/20/2019) |
| 04/12/2019 | 131 | NOTICE OF APPEAL as to 97 Order, 109 Memorandum and Order, 110 Judgment and 130 Memorandum and Order by Plaintiff Albert Dewayne Banks (smnd) (Entered: 04/12/2019) |
| 04/12/2019 | | APPEAL FEE STATUS: filing fee not paid re: Notice of Appeal – Final Judgment 131 on behalf of Plaintiff Albert Dewayne Banks. (THIS IS A TEXT ONLY ENTRY–NO DOCUMENT IS ASSOCIATED WITH THIS TRANSACTION.) (smnd) (Entered: 04/12/2019) |
| 04/12/2019 | 132 | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re 131 Notice of Appeal – Final Judgment (Attachments: # 1 Preliminary Packet) (smnd) (Entered: 04/12/2019) |

| 04/12/2019 | 133 | APPEAL DOCKETED in 10CCA on April 12, 2019, and assigned Appeal No. 19–3073 re 131 Notice of Appeal – Final Judgment filed by Albert Dewayne Banks (smnd) (Entered: 04/15/2019) |
| 04/26/2019 | 134 | MOTION for Leave to Appeal in forma pauperis by Plaintiff Albert Dewayne Banks (Attachments: # 1 Inmate Account Summary; # 2 Envelope) (smnd) (Additional attachment(s) added on 4/29/2019: # 3 Correct .pdf document attached) (smnd). (Entered: 04/26/2019) |
| 04/30/2019 | 135 | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Michael L. Walden as to Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS (Walden, Michael) (Entered: 04/30/2019) |
| 05/01/2019 | 136 | ORDER ENTERED: The Court grants plaintiff's motion 134 and assesses an initial partial filing fee of $36.50. Plaintiff shall pay the balance of the filing fee in installments as calculated pursuant to 28 U.S.C. § 1915(b)(2). Signed by District Judge Holly T. Teeter on 05/01/19. Mailed to pro se party Alert Dewayne Banks by regular mail. (smnd) (Entered: 05/01/2019) |
| 05/09/2019 | 137 | RECORD ON APPEAL retrieved by 10CCA consisting of three (3) volumes (Appeal No. 19–3073). (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (smnd) (Entered: 05/09/2019) |
| 05/28/2020 | 138 | ENTRY OF APPEARANCE by Arthur S. Chalmers on behalf of Glen F. Virden. (Chalmers, Arthur) (Entered: 05/28/2020) |
| 05/28/2020 | 139 | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Carrie A. Barney as to Glen F. Virden (Barney, Carrie) (Entered: 05/28/2020) |
| 06/01/2020 | 140 | ENTRY OF APPEARANCE by Jay E. Heidrick on behalf of Sprint/Nextel Wireless Telephone Company (Heidrick, Jay) (Entered: 06/01/2020) |
| 06/03/2020 | 141 | APPEAL MANDATE from 10CCA: Affirm the district court's judgment in part, but we reverse and remand for further proceedings on Mr. Banks's statutory wiretap claims about the law enforcement defendants' interception and disclosure of extra–territorial communications and Sprint's interception and disclosure of text messages. (Appeal No. 19–3073) (Attachments: # 1 Transmittal Letter) (smnd) (Entered: 06/03/2020) |
| 06/03/2020 | 146 | Letter to the Court from Arthur S. Chalmers, Counsel for Defendant Glen F. Virden. (smnd) (Entered: 06/12/2020) |
| 06/04/2020 | 142 | MINUTE ORDER REASSIGNING CASE: Case reassigned to Magistrate Judge Gwynne E. Birzer; Magistrate Judge K. Gary Sebelius no longer assigned to case. Signed by deputy clerk on 6/4/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(kao) (Entered: 06/04/2020) |
| 06/08/2020 | 143 | ENTRY OF APPEARANCE by Plaintiff Albert Dewayne Banks. (Attachments: # 1 Envelope) (smnd) (Entered: 06/08/2020) |
| 06/08/2020 | 144 | NOTICE of Hearing:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. Status Conference set for 6/16/2020 at 08:30 AM by Zoom Video Conference before Magistrate Judge Gwynne E. Birzer. Mailed to pro se party Albert Dewayne Banks by regular mail and by email to leavenworthlegalcorrespondence@corecivic.com. (adc) (Entered: 06/08/2020) |

| 06/11/2020 | 145 | *Defendant Glen Virden's* ANSWER to 74 Amended Complaint by Glen F. Virden.(Chalmers, Arthur) (Entered: 06/11/2020) |
| 06/11/2020 | 147 | Letter to the Clerk from Plaintiff Albert Dewayne Banks in Response to 146 Letter to the Court from Arthur S. Chalmers, Counsel for Defendant Glen F. Virden. (Attachments: # 1 Envelope) (smnd) (Entered: 06/12/2020) |
| 06/11/2020 | 148 | REQUEST for Jury Trial/Scheduling by Plaintiff Albert Dewayne Banks. (Attachments: # 1 Envelope) (smnd) (Entered: 06/12/2020) |
| 06/12/2020 | 149 | ENTRY OF APPEARANCE by Eric Turner on behalf of Steven L. Opat. (Turner, Eric) (Entered: 06/12/2020) |
| 06/15/2020 | 150 | MOTION to Appoint Counsel by Plaintiff Albert Dewayne Banks (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 Envelope) (smnd) (Entered: 06/15/2020) |
| 06/16/2020 | 151 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: STATUS CONFERENCE held on 6/16/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 06/16/2020) |
| 06/16/2020 | 152 | ORDER. On 6/16/20 the Court held a video status conference. Plaintiff Albert Dewayne Banks appeared on his own behalf. Defendant Steven Opat appeared through counsel, Eric Turner. Defendant Glen Virden appeared through counsel, Arthur Chalmers. Defendant Sprint/Nextel Wireless Telephone Company appeared through counsel, Jay Heidrick. Defendant Timothy Brown appeared through counsel, Michael Seck. After discussion with Plaintiff and defense counsel, the Court enters the following orders: All Defendants must answer or otherwise respond to the operative Complaint no later than 6/30/2020. Although D. Kan. Rule 16.1 exempts prisoner actions from Fed. R. Civ. P. 26(a)(1) disclosures, in the interest of narrowing discovery, the Court orders disclosures to be exchanged in this case. All parties must exchange their Rule 26(a)(1) disclosures no later than 7/9/20. Such disclosures must not be filed with the Clerk, but should be sent to Plaintiff and all counsel, with copies to the chambers of the undersigned. Plaintiff's motion for appointment of counsel (ECF No. 150) is taken under advisement. To permit the Court an opportunity to review the Rule 26 disclosures and consider the appointment of counsel, a follow−up status conference is scheduled for 7/28/2020 at 09:00 AM by Zoom videoconference before Magistrate Judge Gwynne E. Birzer. A Zoom invitation will follow by email closer to the hearing date. The parties should be prepared to discuss a general scheduling order for this case, to include a dispositive briefing schedule, at the 7/28/2020 conference. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 6/16/20. Mailed to pro se party Albert Dewayne Banks by regular mail and by email to leavenworthlegalcorrespondence@corecivic.com. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 06/16/2020) |
| 06/18/2020 | 153 | NOTICE OF WITHDRAWAL OF APPEARANCE by Lauren E. Laushman as co−counsel for defendant, Brad Schoen. (mls) (Entered: 06/18/2020) |
| 06/25/2020 | 154 | ORDER APPOINTING COUNSEL: In follow−up to the status conference held 6/16/2020, the Court notes it has reconsidered Plaintiff's previous motion(s) to appoint counsel. Formal appointment in a written order with additional details will be forthcoming in the near future; however, for the time being, the parties are notified that Michael J. Shultz will be acting as Plaintiff's counsel. Mr. Shultz may be reached at Shultz Law Office, PA; 445 North Waco; Wichita, KS 67202. Mr. Shultz will |

| | | |
|---|---|---|
| | | work with Plaintiff to produce the Rule 26(a)(1) disclosures ordered in the 6/16/20 conference by the deadline of 7/9/20. In the event the parties need additional time to submit the disclosures, they may contact the chambers of the undersigned Magistrate Judge. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 6/25/2020. Mailed to pro se party Albert Dewayne Banks by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 06/25/2020) |
| 06/30/2020 | 155 | *Separate* ANSWER to 74 Amended Complaint by Timothy Brown.(Seck, Michael) (Entered: 06/30/2020) |
| 06/30/2020 | 156 | ANSWER to 74 Amended Complaint by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS.(Heidrick, Jay) (Entered: 06/30/2020) |
| 06/30/2020 | 157 | ANSWER to 74 Amended Complaint by Steven L. Opat.(Turner, Eric) (Entered: 06/30/2020) |
| 07/06/2020 | 158 | NOTICE OF SERVICE by Glen F. Virden of Def Virden's Rule 26 Discl. (Chalmers, Arthur) (Entered: 07/06/2020) |
| 07/07/2020 | 159 | ENTRY OF APPEARANCE by Elizabeth Marden on behalf of Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS (Marden, Elizabeth) (Entered: 07/07/2020) |
| 07/08/2020 | 160 | ORDER OF CONSOLIDATION FOR DISCOVERY PURPOSES; ORDER APPOINTING COUNSEL; and ORDER RESCHEDULING STATUS CONFERENCE granting 150 Motion to Appoint Counsel. The Court provisionally appoints Michael J. Shultz, a member in good standing of the bar of this Court, to represent both Plaintiffs for the limited purpose of assisting them through discovery and dispositive motion practice. Mr. Shultz is appointed pursuant to 28 U.S.C. § 1915(e) and may be reimbursed for his out–of– pocket expenses allowed under D. Kan. Rule 83.5.3(f)(1). Status Conference set for 8/13/2020 at 01:30 PM in Video Conference – Zoom before Magistrate Judge Gwynne E. Birzer. See Order for further details. Signed by Magistrate Judge Gwynne E. Birzer on 7/7/20. (sz) (Entered: 07/08/2020) |
| 07/08/2020 | | **Set/Reset Hearings: Status Conference set for 8/13/2020 at 01:30 PM in Video Conference – Zoom before Magistrate Judge Gwynne E. Birzer.**(sz) (Entered: 07/08/2020) |
| 07/09/2020 | 161 | NOTICE of Defendant Timothy Brown's Initial Rule 26(a)(1) Disclosures by Timothy Brown (Seck, Michael) (Entered: 07/09/2020) |
| 07/09/2020 | 162 | NOTICE of Hearing:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference originally set for 8/13/20 is RESET for 8/12/2020 at 01:30 PM by Zoom Video Conference before Magistrate Judge Gwynne E. Birzer. Counsel will receive an email invitation prior to the conference.(adc) (Entered: 07/09/2020) |
| 07/23/2020 | 163 | CERTIFICATE OF SERVICE of Rule 26(a)(1) Initial Disclosures by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS. (Marden, Elizabeth) (Entered: 07/23/2020) |
| 07/23/2020 | 164 | NOTICE OF SERVICE by Steven L. Opat, Tony Wolf of Rule 26(a) Disclosures (Turner, Eric) (Entered: 07/23/2020) |

| 07/23/2020 | 165 | NOTICE OF SERVICE by T–Mobile U.S.A. of Initial Disclosures (Vogelsberg, Amanda) (Entered: 07/23/2020) |
|---|---|---|
| 07/23/2020 | 166 | NOTICE OF SERVICE by Albert Dewayne Banks of Initial Disclosures by Plaintiffs (Shultz, Michael) (Entered: 07/23/2020) |
| 07/28/2020 | 167 | PROTECTIVE ORDER governing Case Nos. 15–3093–HLT–GEB and 15–3117–HLT–GEB. See order for details. Signed by Magistrate Judge Gwynne E. Birzer on 7/28/20. (adc) (Entered: 07/28/2020) |
| 08/12/2020 | 168 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: STATUS CONFERENCE held on 8/12/2020. (Tape #1:47–2:25.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 08/12/2020) |
| 08/13/2020 | 169 | SCHEDULING ORDER: Responses to dispositive motions deadline 12/18/2020. Replies in support of dispositive motions deadline 1/15/2021 Discovery deadline 11/20/2020. Dispositive motion deadline 9/11/2020. The Court's prior order of consolidation (No. 15–3093–HLT–GEB, ECF No. 160 ; No. 15–3117, ECF No. 170 ) specified these matters would be consolidated for discovery purposes and non–dispositive filings only. However, after discussion with counsel, the Court finds it would be most efficient for these matters to remain consolidated through dispositive motions. Therefore, all filings should be made in the lead case, No. 15–3093– HLT–GEB, until further order of the Court. Signed by Magistrate Judge Gwynne E. Birzer on 8/12/2020. (sz) Modified on 8/14/2020 to correct response date (sz). (Entered: 08/13/2020) |
| 08/13/2020 | 170 | NOTICE OF SERVICE by Glen F. Virden, Glen F. Virden of Documents Described in Defendants' Initial Rule 26 Disclosures (Chalmers, Arthur) (Entered: 08/13/2020) |
| 09/08/2020 | 171 | Unopposed MOTION to Modify *Scheduling Order* by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS (referred to Magistrate Judge Gwynne E. Birzer) (Heidrick, Jay) (Entered: 09/08/2020) |
| 09/08/2020 | 172 | ORDER granting 171 unopposed Motion to Modify Schedule. Dispositive motion deadline reset to 9/18/2020. Discovery deadline on dispositive motions reset to 11/27/2020. Responses to dispositive motions due 12/30/2020. Replies in support of dispositive motions due 1/22/2021. Signed by Magistrate Judge Gwynne E. Birzer on 9/8/20. (adc) (Entered: 09/08/2020) |
| 09/10/2020 | 173 | MOTION for Summary Judgment by Consol Defendant Glen F. Virden, Defendant Glen F. Virden (Chalmers, Arthur) (Entered: 09/10/2020) |
| 09/10/2020 | 174 | MEMORANDUM IN SUPPORT of 173 MOTION for Summary Judgment by Consol Defendant Glen F. Virden, Defendant Glen F. Virden (Attachments: # 1 Affidavit Exh A Declaration, # 2 Exhibit 1 to Exh A, # 3 Exhibit – Redacted 2–17 to Exh A, # 4 Affidavit Exh B Declaration, # 5 Exhibit 1 to Exh B, # 6 Exhibit – Redacted 2–17 to Exh B, # 7 Affidavit Exh C with Exh 18 and 19)(Chalmers, Arthur) (Entered: 09/10/2020) |
| 09/10/2020 | | (Court only) **Terminate Deadlines :(adc)** (Entered: 09/10/2020) |
| 09/17/2020 | 175 | MOTION for Summary Judgment by Defendant Timothy Brown (Seck, Michael) (Entered: 09/17/2020) |
| 09/17/2020 | 176 | |

| | | MEMORANDUM IN SUPPORT of <u>175</u> MOTION for Summary Judgment by Defendant Timothy Brown (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C)(Seck, Michael) (Entered: 09/17/2020) |
|---|---|---|
| 09/18/2020 | <u>177</u> | MOTION for Summary Judgment by Defendant Steven L. Opat (Turner, Eric) (Entered: 09/18/2020) |
| 09/18/2020 | <u>178</u> | MEMORANDUM IN SUPPORT of <u>177</u> MOTION for Summary Judgment by Defendant Steven L. Opat (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D, # <u>5</u> Exhibit E)(Turner, Eric) (Entered: 09/18/2020) |
| 09/18/2020 | <u>179</u> | MOTION for Summary Judgment by Defendant Tony Wolf (Turner, Eric) (Entered: 09/18/2020) |
| 09/18/2020 | <u>180</u> | MEMORANDUM IN SUPPORT of <u>179</u> MOTION for Summary Judgment by Defendant Tony Wolf (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D, # <u>5</u> Exhibit E)(Turner, Eric) (Entered: 09/18/2020) |
| 09/18/2020 | <u>181</u> | MOTION for Summary Judgment *by CARRIER DEFENDANTS SPRINT/NEXTEL WIRELESS TELEPHONE COMPANY, VIRGIN MOBILE/SPRINT PCS, AND T−MOBILE USA INC.* by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS (Heidrick, Jay) (Entered: 09/18/2020) |
| 09/18/2020 | <u>182</u> | MEMORANDUM IN SUPPORT of <u>181</u> MOTION for Summary Judgment *by CARRIER DEFENDANTS SPRINT/NEXTEL WIRELESS TELEPHONE COMPANY, VIRGIN MOBILE/SPRINT PCS, AND T−MOBILE USA INC.* by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D − Declaration of Jordan Kurtz in Support of T−Mobile USA, Inc.'s Motion for Summary Judgment, # <u>5</u> Exhibit D1, # <u>6</u> Exhibit D2, # <u>7</u> Exhibit D3, # <u>8</u> Exhibit D4, # <u>9</u> Exhibit E − Declaration of Robert Wilden in Support of Sprint/Nextel Wireless Telephone Company and Virgin Mobile/Sprint PCS's Motion for Summary Judgment, # <u>10</u> Exhibit E1, # <u>11</u> Exhibit E2, # <u>12</u> Exhibit F, # <u>13</u> Exhibit G, # <u>14</u> Exhibit H, # <u>15</u> Exhibit I, # <u>16</u> Exhibit J, # <u>17</u> Exhibit K)(Heidrick, Jay) (Entered: 09/18/2020) |
| 11/13/2020 | <u>183</u> | Unopposed MOTION to Continue *by Plaintiff Anthony Thompson and* by Plaintiff Albert Dewayne Banks (referred to Magistrate Judge Gwynne E. Birzer) (Shultz, Michael) (Entered: 11/13/2020) |
| 11/13/2020 | <u>184</u> | ORDER granting <u>183</u> Plaintiffs' Unopposed Motion to Continue Deadlines. Discovery deadline on motions reset to 1/8/2021. Plaintiffs' response deadline for dispositive motions reset to 1/29/2021. Defendants' reply deadline reset to 2/26/2021. Signed by Magistrate Judge Gwynne E. Birzer on 11/13/20. (adc) (Entered: 11/13/2020) |
| 11/23/2020 | <u>185</u> | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Toby Crouse as to Steven L. Opat (Crouse, Toby) (Entered: 11/23/2020) |
| 01/29/2021 | <u>186</u> | Second MOTION to Continue by Plaintiff Albert Dewayne Banks (referred to Magistrate Judge Gwynne E. Birzer) (Shultz, Michael) (Entered: 01/29/2021) |
| 02/01/2021 | <u>187</u> | RESPONSE by Consol Defendant Glen F. Virden, Defendant Glen F. Virden re <u>186</u> Motion to Continue (Chalmers, Arthur) (Entered: 02/01/2021) |
| 02/02/2021 | <u>188</u> | |

| | | |
|---|---|---|
| | | MEMORANDUM IN OPPOSITION by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS, Consol Defendant T–Mobile U.S.A. re 186 Second MOTION to Continue *(PARTIAL OPPOSITION)* (Heidrick, Jay) (Entered: 02/02/2021) |
| 02/05/2021 | 189 | RESPONSE by Consol Defendant Timothy Brown, Defendant Timothy Brown re 186 Motion to Continue (Seck, Michael) (Entered: 02/05/2021) |
| 02/12/2021 | 190 | RESPONSE by Defendants Steven L. Opat, Tony Wolf re 186 Second Motion to Continue (Turner, Eric) Modified to reflect second motion on 2/16/2021 (ctv). (Entered: 02/12/2021) |
| 03/19/2021 | 191 | ORDER granting 186 Plaintiffs Albert Banks and Anthony Thompson's Second Motion to Continue. Discovery deadline 6/30/2021. Plaintiffs' response to the summary judgment motion is due 8/27/2021. Defendants' Reply is due 9/24/2021. Signed by Magistrate Judge Gwynne E. Birzer on 3/19/21. (adc) (Entered: 03/19/2021) |
| 03/22/2021 | | (Court only) **Set/Reset Deadlines as to 179 MOTION for Summary Judgment , 173 MOTION for Summary Judgment , 175 MOTION for Summary Judgment , 181 MOTION for Summary Judgment *by CARRIER DEFENDANTS SPRINT/NEXTEL WIRELESS TELEPHONE COMPANY, VIRGIN MOBILE/SPRINT PCS, AND T–MOBILE USA INC.*, 177 MOTION for Summary Judgment. Plaintiffs' Response due 8/27/2021; Defendants' Replies due by 9/24/2021. See order ECF No. 191.**(adc) (Entered: 03/22/2021) |
| 07/09/2021 | 192 | NOTICE OF SERVICE by Glen F. Virden, Glen F. Virden of responses to Pl 1st RFP (Chalmers, Arthur) (Entered: 07/09/2021) |
| 07/28/2021 | 193 | NOTICE OF SERVICE by Steven L. Opat of Responses to Plaintiff's First Request for Production of Documents (Turner, Eric) (Entered: 07/28/2021) |
| 08/03/2021 | 194 | NOTICE OF SERVICE by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS of Responses to Plaintiffs' First Request for Production of Documents (Heidrick, Jay) (Entered: 08/03/2021) |
| 08/25/2021 | 195 | ORDER. On the informal and unopposed request by Plaintiffs' counsel, the previously–set deadlines for dispositive motion briefing 186 are extended by one week. Plaintiffs' response to the summary judgment motions is due 9/3/2021. Defendants' Replies are due by 10/4/2021. Signed by Magistrate Judge Gwynne E. Birzer on 8/25/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 08/25/2021) |
| 09/03/2021 | 196 | RESPONSE by Plaintiff Albert Dewayne Banks, Consol Plaintiff Anthony Thompson re 181 Motion for Summary Judgment *by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile/Sprint PCS, and T–Mobile USA Inc* (Attachments: # 1 Exhibit A––Banks Declaration, # 2 Exhibit B––Thompson Declaration, # 3 Exhibit C––Judge Platt Testimony Excerpt, # 4 Exhibit D––Glen Virden Testimony Excerpt, # 5 Exhibit E––Chris Turner Testimony Excerpt, # 6 Exhibit List F)(Shultz, Michael) (Entered: 09/03/2021) |
| 09/03/2021 | 197 | RESPONSE by Plaintiff Albert Dewayne Banks, Consol Plaintiff Anthony Thompson re 175 Motion for Summary Judgment *by Defendant Timothy Brown* (Attachments: # 1 Exhibit A––Banks Declaration, # 2 Exhibit B––Thompson Declaration, # 3 Exhibit C––K.S.A. Book Excerpt, # 4 Exhibit D––Babcock Search |

| | | |
|---|---|---|
| | | Warrant, # <u>5</u> Exhibit List)(Shultz, Michael) (Additional attachment(s) added on 9/7/2021: # <u>6</u> Exhibit D –– Babcock Search Warrant – Redacted) (jsh). Modified on 9/7/2021 to add redacted version of Exhibit D; original blocked from public view due to violation of privacy policy. (jsh) (Entered: 09/03/2021) |
| 09/03/2021 | <u>198</u> | RESPONSE by Plaintiff Albert Dewayne Banks, Consol Plaintiff Anthony Thompson re <u>173</u> Motion for Summary Judgment *by Defendant Glen Virden* (Attachments: # <u>1</u> Exhibit A––Banks Declaration, # <u>2</u> Exhibit B––Thompson Declaration, # <u>3</u> Exhibit C––Glen Virden Testimony Excerpt, # <u>4</u> Exhibit D––Judge Platt Testimony Excerpt, # <u>5</u> Exhibit E––K.S.A. Book Excerpt, # <u>6</u> Exhibit List)(Shultz, Michael) (Entered: 09/03/2021) |
| 09/03/2021 | <u>199</u> | RESPONSE by Consol Plaintiff Anthony Thompson re <u>179</u> Motion for Summary Judgment *by Defendant Tony Wolf* (Attachments: # <u>1</u> Exhibit A––Thompson Declaration, # <u>2</u> Exhibit List)(Shultz, Michael) (Entered: 09/03/2021) |
| 09/03/2021 | <u>200</u> | RESPONSE by Plaintiff Albert Dewayne Banks re <u>177</u> Motion for Summary Judgment *by Defendant Steven L. Opat* (Attachments: # <u>1</u> Exhibit A––Banks Declaration, # <u>2</u> Exhibit List)(Shultz, Michael) (Entered: 09/03/2021) |
| 09/23/2021 | <u>201</u> | REPLY TO RESPONSE TO MOTION by Defendant Glen F. Virden re: <u>173</u> Motion for Summary Judgment and <u>174</u> MEMORANDUM IN SUPPORT (Chalmers, Arthur) Modified title on 9/24/2021. (jsh) (Entered: 09/23/2021) |
| 09/23/2021 | <u>202</u> | MOTION for Extension of Time to File Reply Memorandum as to <u>175</u> MOTION for Summary Judgment by Consol Defendant Timothy Brown, Defendant Timothy Brown. (Seck, Michael) Modified title and association on 9/24/2021. (jsh) (Entered: 09/23/2021) |
| 09/23/2021 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: <u>202</u> MOTION for Extension of Time to File Reply Memorandum as to <u>197</u> Response to Motion,, . The motion will be resolved by the District Judge.**(ala) (Entered: 09/23/2021) |
| 09/23/2021 | 203 | ORDER granting <u>202</u> Motion for Extension of Time to Reply as to <u>175</u> MOTION for Summary Judgment. Reply deadline is on or before 10/15/2021. Signed by District Judge Holly L. Teeter on 9/23/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (md) (Entered: 09/23/2021) |
| 10/04/2021 | <u>204</u> | REPLY TO RESPONSE TO MOTION by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS, Consol Defendant T–Mobile U.S.A. re: <u>181</u> Motion for Summary Judgment (Heidrick, Jay) (Entered: 10/04/2021) |
| 10/04/2021 | <u>205</u> | REPLY TO RESPONSE TO MOTION by Defendant Steven L. Opat re: <u>177</u> Motion for Summary Judgment (Turner, Eric) (Entered: 10/04/2021) |
| 10/04/2021 | <u>206</u> | REPLY TO RESPONSE TO MOTION by Defendant Tony Wolf re: <u>179</u> Motion for Summary Judgment (Turner, Eric) (Entered: 10/04/2021) |
| 10/13/2021 | <u>207</u> | REPLY TO RESPONSE TO MOTION by Defendant Timothy Brown re: <u>175</u> Motion for Summary Judgment (Seck, Michael) (Entered: 10/13/2021) |
| 12/27/2021 | <u>208</u> | MEMORANDUM AND ORDER ENTERED: Defendant Opat's Motion for Summary Judgment (Doc. <u>177</u> ) is GRANTED. Defendant Virden's Motion for Summary Judgment (Doc. <u>173</u> ) is GRANTED. Defendant Brown's Motion for Summary Judgment (Doc. <u>175</u> ) is GRANTED. Defendant Wolf's Motion for |

|  |  |  |
|---|---|---|
|  |  | Summary Judgment (Doc. <u>179</u> ) is GRANTED. Carrier Defendants' Motion for Summary Judgment (Doc. <u>181</u> ) is DENIED. Signed by District Judge Holly L. Teeter on 12/27/21. (smnd) (Entered: 12/27/2021) |
| 12/30/2021 | 209 | ORDER. In light of the summary judgment rulings, these consolidated matters are set for a status conference on <u>2/3/2022 at 10:00 AM</u> by Zoom Video Conference before Magistrate Judge Gwynne E. Birzer. Counsel shall confer no later than 1/20/22 on how best to move this matter forward, and submit a Report of Parties Planning Meeting or other informal proposal to the undersigned by email no later than 1/27/2022. A Zoom invitation will follow by email prior to the scheduled conference. Signed by Magistrate Judge Gwynne E. Birzer on 12/30/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 12/30/2021) |
| 02/01/2022 | 210 | NOTICE of RESCHEDULED Hearing: <span style="color:red">THIS IS AN OFFICIAL NOTICE FOR THIS HEARING.</span> (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference formerly set for 2/3/22 is RESET for <u>2/16/2022 at 02:00 PM</u> by Zoom Video Conference before Magistrate Judge Gwynne E. Birzer. (adc) (Entered: 02/01/2022) |
| 02/09/2022 | 211 | NOTICE of RESCHEDULED Hearing: <span style="color:red">THIS IS AN OFFICIAL NOTICE FOR THIS HEARING</span> (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference RESET for <u>2/25/2022 at 01:30 PM</u> by Zoom Video Conference before Magistrate Judge Gwynne E. Birzer. Counsel must submit their proposal for moving this case forward to the Magistrate Judge no later than 2/22/22.(adc) (Entered: 02/09/2022) |
| 02/09/2022 |  | (Court only) **Set/Reset Deadlines: Report of Parties Planning Meeting deadline 2/22/2022.(adc)** (Entered: 02/09/2022) |
| 02/25/2022 | 212 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: STATUS CONFERENCE held on 2/25/2022. (Tape #1:30–2:15.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 02/25/2022) |
| 02/28/2022 | <u>213</u> | <span style="color:purple">SECOND SCHEDULING ORDER:</span> See order for additional details. Deadline for Plaintiff's counsel to submit status report is 3/31/22. Mediation Notice Due 3/25/2022. Mediation deadline 5/6/2022. Discovery deadline 4/3/2022. Proposed Pretrial Order due by 6/10/2022. Final Pretrial Conference set for <u>6/17/2022 at 10:00 AM</u> by Telephone before Magistrate Judge Gwynne E. Birzer. Participants must call the CONFERENCE LINE at 1–888–363–4749 using ACCESS CODE 9686294. Dispositive motion deadline 7/22/2022. Jury trial in Kansas City; date to be determined; estimated trial time 3 days. Signed by Magistrate Judge Gwynne E. Birzer on 2/28/22. (adc) (Entered: 02/28/2022) |
| 03/21/2022 | <u>214</u> | NOTICE OF SERVICE by T–Mobile U.S.A. of Discovery Requests *To Plaintiff Anthony Thompson* (Gragson, James) (Entered: 03/21/2022) |
| 03/22/2022 | <u>215</u> | NOTICE OF SERVICE by Sprint/Nextel Wireless Telephone Company of Discovery to Plaintiff Albert Banks (Heidrick, Jay) (Entered: 03/22/2022) |
| 03/28/2022 | <u>216</u> | SETTLEMENT CONFERENCE ORDER: A settlement conference will be conducted by U.S. Magistrate Judge James P. O'Hara on April 22, 2022, at 9:00 a.m., in the U.S. Courthouse (Courtroom TBD), 500 State Avenue, Kansas City, Kansas, in accordance with Fed. R. Civ. P. 16(a)(5) and D. Kan. Rule 16.3. Signed by |

| | | |
|---|---|---|
| | | Magistrate Judge James P. O'Hara on 3/28/22. (yh) (Entered: 03/28/2022) |
| 03/28/2022 | 217 | NOTICE of Courtroom assignment re: 216 Settlement Conference will be held in Courtroom #463. (yh) (Entered: 03/28/2022) |
| 03/29/2022 | | **Set Hearings: Settlement Conference set for 4/22/2022 at 09:00 AM in KC Courtroom (Unknown)before Magistrate Judge James P. O'Hara.(hw)** (Entered: 03/29/2022) |
| 04/01/2022 | 218 | ORDER. On review of the confidential report submitted by appointed Plaintiffs' counsel Michael Shultz, Mr. Shultz' appointment is lifted; however, he will remain as counsel for the consolidated Plaintiffs as retained counsel from this date onward. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 4/1/22. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 04/01/2022) |
| 04/01/2022 | | (Court only) ***Set/Clear Flags(adc) (Entered: 04/01/2022) |
| 04/20/2022 | 219 | NOTICE of Hearing:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Settlement Conference re–set for 5/4/2022 at 09:00 AM in KC Courtroom 463 before Magistrate Judge James P. O'Hara. (yh) (Entered: 04/20/2022) |
| 05/04/2022 | 220 | MEDIATION MINUTE ORDER – The undersigned magistrate judge conducted a settlement conference today in these cases which have been consolidated for discovery. Plaintiff Anthony Thompson was unable to attend, as he'd been arrested the day prior on a warrant issued in connection with a petition to revoke supervised release in D. Kan. Case No. 13–40060–10. Although plaintiff Albert Banks did attend, the conference was adjourned with no settlement having been reached. Signed by Magistrate Judge James P. O'Hara on 5/4/22. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(O'Hara, James) (Entered: 05/04/2022) |
| 05/04/2022 | 221 | MINUTE ENTRY for proceedings held before Magistrate Judge James P. O'Hara: SETTLEMENT CONFERENCE held on 5/4/2022. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ss) (Entered: 05/04/2022) |
| 05/17/2022 | 222 | ADR REPORT by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS. ADR session held on: 5/4/2022 and conducted by Magistrate Judge James P. O'Hara. Results of ADR: Case did not settle. Status of litigation at time of ADR: Partial Discovery(Heidrick, Jay) (Entered: 05/17/2022) |
| 05/18/2022 | 223 | NOTICE OF TELEPHONE CONFERENCE: Telephone Conference set for 5/31/2022 at 10:00 AM Call CONFERENCE LINE 1–888–363–4749, use ACCESS CODE 9686294 and follow the prompts to join the conference. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) before Magistrate Judge Gwynne E. Birzer. (spa) (Entered: 05/18/2022) |
| 05/31/2022 | 224 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: TELEPHONE CONFERENCE held on 5/31/2022. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (spa) (Entered: 05/31/2022) |
| 06/01/2022 | 225 | THIRD SCHEDULING ORDER: Status Report due by 7/15/2022. Discovery deadline 7/29/2022. Proposed Pretrial Order due by 8/25/2022. Final Pretrial Conference set for 9/1/2022 at 10:00 AM by Telephone GEB – CONFERENCE LINE 1–888–363–4749 ACCESS CODE 9686294 before Magistrate Judge Gwynne |

| | | |
|---|---|---|
| | | E. Birzer. Dispositive motion deadline 10/7/2022. Jury trial in Kansas City; date to be determined; estimated trial time 3 days. Signed by Magistrate Judge Gwynne E. Birzer on 5/31/2022. (heo) (Entered: 06/01/2022) |
| 07/29/2022 | 226 | NOTICE OF SERVICE by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS of Discovery Responses *to Plaintiff Albert Banks First Interrogatories and Requests for Production of Documents* (Heidrick, Jay) (Entered: 07/29/2022) |
| 08/01/2022 | 227 | NOTICE OF SERVICE by T−Mobile U.S.A. of Discovery Responses to Plaintiff Anthony Thompson (Vogelsberg, Amanda) (Entered: 08/01/2022) |
| 08/01/2022 | 228 | STIPULATION *AS TO DAMAGES* by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS. (Heidrick, Jay) (Entered: 08/01/2022) |
| 08/24/2022 | 229 | ENTRY OF APPEARANCE by Jay E. Heidrick on behalf of T−Mobile U.S.A. (Heidrick, Jay) (Entered: 08/24/2022) |
| 08/25/2022 | 230 | ORDER. Upon informal request from counsel, finding good cause and all parties in agreement, the deadline for the parties to submit their proposed pretrial order is extended to 12:00 p.m. on 8/29/22. Signed by Magistrate Judge Gwynne E. Birzer on 8/25/22. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(spa) (Entered: 08/25/2022) |
| 08/30/2022 | 231 | MOTION for attorney Kymberly Kester to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC−5856472.) by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS, Consol Defendant T−Mobile U.S.A. (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 ECF Registration Form Attachment)(Heidrick, Jay) (Entered: 08/30/2022) |
| 08/31/2022 | 232 | ORDER granting 231 Motion to Appear Pro Hac Vice of Kymberly Kester for Sprint/Nextel Wireless Telephone Company, T−Mobile U.S.A., and Virgin Mobile USA/Sprint PCS pursuant to D. Kan. Rule 83.5.4 for this case only. Signed by Magistrate Judge Gwynne E. Birzer on 8/31/22. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ala) (Entered: 08/31/2022) |
| 08/31/2022 | 233 | MOTION to Withdraw as Attorney by Plaintiff Albert Dewayne Banks (referred to Magistrate Judge Gwynne E. Birzer) (Shultz, Michael) (Entered: 08/31/2022) |
| 09/01/2022 | 234 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: FINAL PRETRIAL CONFERENCE held on 9/1/2022. (Tape #10:00−10:40.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (spa) (Entered: 09/01/2022) |
| 09/08/2022 | 235 | PRETRIAL ORDER ENTERED: Estimated trial time 2 days. Dispositive motion deadline 10/7/2022. Jury Trial set for 6/5/2023 at 09:00 AM in KC Courtroom 463 (HLT) before District Judge Holly L. Teeter. Signed by Magistrate Judge Gwynne E. Birzer on September 8, 2022. (mls) (Entered: 09/08/2022) |
| 09/08/2022 | 236 | REPORT AND RECOMMENDATIONS recommending Plaintiffs' motion to amend their amended complaints or add new § 605 claims in their pretrial orders be DENIED. Objections to R&R due by 9/22/2022. Signed by Magistrate Judge Gwynne E. Birzer on September 8, 2022. Mailed to pro se party Albert Banks by certified mail; Certified Tracking Number: 7020 3160 0000 9283 4557. (mls) (Entered: 09/08/2022) |

| | | |
|---|---|---|
| 09/15/2022 | 237 | CERTIFIED MAIL RECEIPT returned: Re 236 REPORT AND RECOMMENDATIONS re 74 Amended Complaint filed by Albert Dewayne Banks addressed to Albert Banks (msb) (Additional attachment(s) added on 9/16/2022: # 1 2nd Return) (ca). (Entered: 09/15/2022) |
| 09/21/2022 | 238 | AFFIDAVIT of Declaration of Michael Shultz re 233 MOTION to Withdraw as Attorney by Plaintiff Albert Dewayne Banks(Shultz, Michael) (Entered: 09/21/2022) |
| 09/26/2022 | 239 | OBJECTION to 236 Report and Recommendations by Consol Plaintiff Anthony Thompson. (smnd) (Entered: 09/27/2022) |
| 09/28/2022 | 240 | ORDER granting 233 Motion to Withdraw as Attorney. ORDER granting Michael Shultz's Motion to Withdraw (ECF No. 233) as attorney for Albert Dewayne Banks. The Court finds Mr. Shultz has complied with D. Kan. Rule 83.5.5(a) (ECF No. 238), and has established good cause for his withdrawal. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 9/28/22. Mailed to pro se party Albert Dewayne Banks, P.O. Box 1014, Ogden, Kansas 66517 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (spa) (Entered: 09/28/2022) |
| 10/12/2022 | 241 | MOTION for Extension of Time to File Response as to 236 REPORT AND RECOMMENDATIONS re 74 Amended Complaint by Consol Plaintiff Anthony Thompson. (jal) (Entered: 10/13/2022) |
| 10/13/2022 | 242 | Order extending deadline. This case was consolidated for discovery purposes with another case and similar pretrial orders were entered. To keep these cases on the same schedule and mindful of some delays in the other case and some docketing issues in this case, the Court extends the dispositive motion deadline. Specifically, dispositive motions as provided for in the pretrial order are due on or before January 6, 2023. Signed by District Judge Holly L. Teeter on 10/13/2022. Mailed to pro se party Albert Banks by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(md) (Entered: 10/13/2022) |
| 10/14/2022 | | NOTICE OF CHANGE OF ADDRESS by Albert Dewayne Banks. At the direction of chambers, Plaintiff Albert Bank's address was updated to: 203 S. 7th, Apt A, Ogden, Kansas 66517. (jal) (Entered: 10/14/2022) |
| 10/14/2022 | 243 | MINUTE ORDER: At the direction of chambers and upon filing of the Pretrial Order, cases 15–3093–HLT and 15–3117–HLT are no longer consolidated. Each action will continue under its own case number. Signed by deputy clerk on 10/14/2022. Mailed to pro se party Albert Dewayne Banks by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(jal) (Entered: 10/14/2022) |
| 10/14/2022 | | (Court only) ***Motions terminated: 241 MOTION for Extension of Time to File Response as to 236 REPORT AND RECOMMENDATIONS re 74 Amended Complaint filed by Albert Dewayne Banks filed by Anthony Thompson. This motion was also filed in 15–3117–HLT by Plaintiff Thompson and has been ruled on. Since the actions are no longer consolidated, this motion is being terminated in this case at the request of chambers. (jal) (Entered: 10/14/2022) |
| 10/21/2022 | | (Court only) Remark: Email to Wendell F. Cowan, Jr. and Elizabeth Marden regarding their terminated bar statuses. (mam) (Entered: 10/21/2022) |
| 10/31/2022 | 244 | |

| | | |
|---|---|---|
| | | MOTION for Order by Plaintiff Albert Dewayne Banks. (Attachments: # 1 Envelope) (smnd) (Entered: 10/31/2022) |
| 11/14/2022 | 245 | RESPONSE by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS re 244 Motion for Order, 236 Report and Recommendations, *Response in Opposition to Plaintiff's Motion to Join Plaintiff Thompson's Objections* (Heidrick, Jay) (Entered: 11/14/2022) |
| 11/18/2022 | 246 | ORDER: Plaintiff's request to join the objections to Judge Birzer's R&R 244 is DENIED. The Court ADOPTS Judge Birzer's recommendation 236 that Plaintiff's request for leave to amend his amended complaint to add a new claim in the pretrial order is DENIED. Signed by District Judge Holly L. Teeter on November 17, 2022. Mailed to pro se party Albert Dewayne Banks by regular mail. (mls) (Entered: 11/18/2022) |
| 01/06/2023 | 247 | MOTION for Summary Judgment by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS (Heidrick, Jay) (Entered: 01/06/2023) |
| 01/06/2023 | 248 | MEMORANDUM IN SUPPORT of 247 MOTION for Summary Judgment by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS (Attachments: # 1 Exhibit List, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K)(Heidrick, Jay) (Entered: 01/06/2023) |
| 01/09/2023 | 249 | ORDER: Plaintiff's response to the motion for summary judgment Doc. 247 is due on or before 5:00 p.m. on Tuesday, January 31, 2023. The Court will consider the motion without the benefit of Plaintiff's response if Plaintiff fails to respond by that time. Signed by District Judge Holly L. Teeter on 1/9/23.Mailed to pro se party Albert D. Banks by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(ss) (Entered: 01/09/2023) |
| 01/09/2023 | 250 | NOTICE TO PRO SE LITIGANT WHO OPPOSES A MOTION FOR SUMMARY JUDGMENT by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS re 247 MOTION for Summary Judgment (Heidrick, Jay) (Entered: 01/09/2023) |
| 01/25/2023 | 251 | RETURN Mail received re 249 Order, addressed to Albert Dewayne Banks. Not remailed. (kas) (Entered: 01/25/2023) |
| 01/30/2023 | 252 | MOTION for Extension of Time to File response as to 247 MOTION for Summary Judgment by Plaintiff Albert Dewayne Banks (Attachment: # 1 Mailing Envelope)(msb) (Entered: 01/30/2023) |
| 01/31/2023 | 253 | ORDER granting 252 MOTION for Extension of Time to File response as to 247 MOTION for Summary Judgment. Response deadline is on or before 2/8/2023. Signed by District Judge Holly L. Teeter on 1/31/2023.Mailed to pro se party Albert Banks by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (md) (Entered: 01/31/2023) |
| 02/08/2023 | 254 | RESPONSE by Plaintiff Albert Dewayne Banks: Re 247 Motion for Summary Judgment (Attachments: # 1 Albert Banks Affidavit, # 2 Email From Albert Banks, # 3 Cover Letter, # 4 Mailing Envelope) (msb). (Entered: 02/08/2023) |
| 02/22/2023 | 255 | REPLY TO RESPONSE TO MOTION by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS re: 247 Motion for Summary Judgment (Heidrick, Jay) (Entered: 02/22/2023) |

| 02/24/2023 | 256 | NOTICE of intent to request leave of court to amend complaint by Albert Dewayne Banks. (msb) (Entered: 02/24/2023) |
| 03/30/2023 | 257 | MOTION for Leave to Amend 74 Amended Complaint by Plaintiff Albert Dewayne Banks (Attachment: # 1 Mailing Envelope)(msb) (Entered: 03/30/2023) |
| 03/30/2023 | 258 | MEMORANDUM IN SUPPORT of 257 MOTION for Leave to Amend 74 Amended Complaint by Plaintiff Albert Dewayne Banks(msb) (Entered: 03/30/2023) |
| 03/31/2023 | 259 | ORDER: Defendant's Motion for Summary Judgment 247 is DENIED. Plaintiff's Motion for Leave to Amend 257 is DENIED. Signed by District Judge Holly L. Teeter on March 31, 2023. Mailed to pro se party Albert Dewayne Banks by regular mail. (mls) (Entered: 03/31/2023) |
| 04/04/2023 | 260 | TRIAL ORDER: SEE ORDER FOR ADDITIONAL DEADLINE INFORMATION. Jury Trial is set for **6/5/2023 at 09:00 AM** in KC Courtroom 463 (HLT) before District Judge Holly L. Teeter. Motions in limine are due by 5:00 p.m. on 5/5/2023. Responses are due by 5:00 p.m. on 5/12/2023. In Limine Conference is set for **5/19/2023 at 01:00 PM** in KC Courtroom 463 (HLT) before District Judge Holly L. Teeter. Signed by District Judge Holly L. Teeter on 4/4/2023. Mailed to pro se party Albert Banks by regular mail. (Attachments: # 1 Exhibit A)(md) (Entered: 04/04/2023) |
| 04/20/2023 | 261 | NOTICE of Change of Address by Plaintiff Albert Dewayne Banks: now at 750 Shannon Drive, Romeoville, Illinois 60446. (Attachments: # 1 Envelope) (smnd) (Entered: 04/20/2023) |
| 04/27/2023 | 262 | MOTION to Continue trial by Plaintiff Albert Dewayne Banks (Attachments: # 1 Letter to Court, # 2 Mailing Envelope)(msb) (Entered: 04/27/2023) |
| 04/27/2023 | 263 | EXHIBIT LIST by Albert Dewayne Banks.(msb) (Entered: 04/27/2023) |
| 04/27/2023 | 264 | WITNESS LIST by Albert Dewayne Banks.(msb) (Entered: 04/27/2023) |
| 04/27/2023 | 265 | EXHIBIT LIST by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS.(Heidrick, Jay) (Entered: 04/27/2023) |
| 04/27/2023 | 266 | WITNESS LIST by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS.(Heidrick, Jay) (Entered: 04/27/2023) |
| 04/27/2023 | 267 | ORDER expediting briefing regarding 262 Motion to Continue. Defendant's response is due May 1, 2023. No reply is permitted. Signed by District Judge Holly L. Teeter on 4/27/2023. Mailed to Pro Se Party Albert Banks via U.S. regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(md) (Entered: 04/27/2023) |
| 05/01/2023 | 268 | MEMORANDUM IN OPPOSITION by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS re 262 MOTION to Continue trial (Heidrick, Jay) (Entered: 05/01/2023) |
| 05/02/2023 | 269 | OBJECTION(S) to 263 Exhibit List, 264 Witness List by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS. (Heidrick, Jay) (Entered: 05/02/2023) |
| 05/03/2023 | 270 | ORDER granting in part and denying in part 262 Motion to Continue. Trial remains set for June 5, 2023, at 9:00 a.m. in Courtroom 463 in the Robert J. Dole Courthouse, 500 State Avenue, Kansas City, KS 66101. The Court GRANTS Plaintiff's request to |

| | | |
|---|---|---|
| | | attend the May 19, 2023 limine conference via Zoom. See order for details. Signed by District Judge Holly L. Teeter on 5/3/2023. Mailed to pro se party Albert Dewayne Banks by regular mail. (kas) (Entered: 05/03/2023) |
| 05/05/2023 | 271 | MOTION in Limine by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS (Heidrick, Jay) (Entered: 05/05/2023) |
| 05/05/2023 | 272 | Amended EXHIBIT LIST by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS.(Heidrick, Jay) (Entered: 05/05/2023) |
| 05/07/2023 | 273 | MOTION in Limine by Plaintiff Albert Dewayne Banks. (jal) (Entered: 05/08/2023) |
| 05/07/2023 | 274 | OBJECTIONS to 265 Exhibit List, 272 Amended Exhibit List by Albert Dewayne Banks. (jal) (Entered: 05/08/2023) |
| 05/10/2023 | 275 | MOTION for Reconsideration re 270 Order (titled Request to Alter or Amend Motion Judgment to Switch Trial Dates Pursuant to Fed.R.Civ.P 59(e)) by Plaintiff Albert Dewayne Banks. (jal) (Entered: 05/10/2023) |
| 05/11/2023 | 276 | DESIGNATION OF DEPOSITION(S) by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS. (Heidrick, Jay) (Entered: 05/11/2023) |
| 05/11/2023 | 277 | PLAINTIFF'S DEPOSITION DESIGNATIONS by Albert Dewayne Banks. (kas) (Additional attachment(s) added on 5/12/2023: # 1 Updated Document with wet signature) (kas). (Entered: 05/12/2023) |
| 05/12/2023 | 278 | RESPONSE by Defendants Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS re 273 Motion in Limine (Heidrick, Jay) (Entered: 05/12/2023) |
| 05/12/2023 | 281 | OBJECTIONS by Plaintiff Albert Dewayne Banks: Re 271 Motion in Limine (msb) (Entered: 05/15/2023) |
| 05/15/2023 | 279 | ORDER denying 275 MOTION for Reconsideration re 270 Order. Signed by District Judge Holly L. Teeter on 5/15/2023. Mailed to pro se party Albert Banks by regular mail. (md) (Entered: 05/15/2023) |
| 05/15/2023 | 280 | OBJECTION(S) to 277 Designation of Depositions *of Plaintiff* by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS. (Heidrick, Jay) (Entered: 05/15/2023) |
| 05/17/2023 | 282 | PROPOSED JURY INSTRUCTIONS by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS.(Heidrick, Jay) (Entered: 05/17/2023) |
| 05/17/2023 | 283 | NOTICE of Jury Instruction Conference by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS re 282 Proposed Jury Instructions (Heidrick, Jay) (Entered: 05/17/2023) |
| 05/17/2023 | 284 | PROPOSED VOIR DIRE by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS.(Heidrick, Jay) (Entered: 05/17/2023) |
| 05/19/2023 | 285 | MINUTE ENTRY for proceedings held before District Judge Holly L. Teeter: IN LIMINE CONFERENCE held on 5/19/2023. The Court grants Defendants' 271 Motion in Limine. The Court denies Plaintiff's 273 Motion in Limine. Additional deadlines are set forth in the minute sheet. (Court Reporter Kim Greiner.) (md) (Entered: 05/19/2023) |

| 05/19/2023 | | NOTICE re Pro Se Mailing: Document 285 MINUTE ENTRY for IN LIMINE CONFERENCE and ORDER denying Plaintiff's 273 Motion in Limine mailed to pro se Plaintiff Albert Dewayne Banks, 750 Shannon Drive, Romeoville, IL 60446 on 5/19/2023 by regular mail. (jsh) Modified docket text on 5/19/2023. (jsh) (Entered: 05/19/2023) |
|---|---|---|
| 05/25/2023 | 286 | ORDER granting as to Topic #1 271 MOTION in Limine and denying as to Topic #1 273 MOTION in Limine. Follows oral order of 5/19/23. Signed by District Judge Holly L. Teeter on 5/25/2023. Mailed to pro se party Albert Dewayne Banks by regular mail. (kas) (Entered: 05/25/2023) |
| 05/29/2023 | 287 | RESPONSE (titled: Plaintiff's Objection to the District Court's Motion in Limine Order and Request for Interlocutory Appeal Pursuant to 28 USC 1292(b) and or the Collateral Order Doctrine) by Plaintiff Albert Dewayne Banks re 286 Order. **This is a two−part filing made in error. See DE 288 for Appeal portion of this entry.** (jal) (Entered: 05/30/2023) |
| 05/29/2023 | 288 | NOTICE OF INTERLOCUTORY APPEAL (titled: Plaintiff's Objection to the District Court's Motion in Limine Order and Request for Interlocutory Appeal Pursuant to 28 USC 1292(b) and or the Collateral Order Doctrine) as to 246 Order, 286 Order, 259 Order, by Plaintiff Albert Dewayne Banks. **This is a duplicate of DE 287 and is being made for administrative purposes only.** (jal) (Entered: 05/30/2023) |
| 05/30/2023 | 289 | ORDER EXPEDITING RESPONSE. Before the Court is Plaintiff's 287 Response to Order and 288 Notice of Interlocutory Appeal. Defendant Sprint/Nextel's response is due by noon on May 31, 2023. Signed by District Judge Holly L. Teeter on 5/30/2023.Mailed to pro se party Albert Banks by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(md) (Entered: 05/30/2023) |
| 05/31/2023 | 290 | NOTICE OF VOLUNTARY DISMISSAL by Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS (Heidrick, Jay) (Entered: 05/31/2023) |
| 05/31/2023 | | APPEAL FEE STATUS: filing fee not paid re: Notice of Interlocutory Appeal by Plaintiff Albert Dewayne Banks. (THIS IS A TEXT ONLY ENTRY−NO DOCUMENT IS ASSOCIATED WITH THIS TRANSACTION.) (smnd) (Entered: 05/31/2023) |
| 05/31/2023 | 291 | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re 288 Notice of Interlocutory Appeal. (Attachments: # 1 Preliminary Packet) (smnd) (Entered: 05/31/2023) |
| 05/31/2023 | 292 | APPEAL DOCKETED in 10CCA on May 31, 2023, and assigned Appeal No. 23−3097 re 288 Notice of Interlocutory Appeal filed by Albert Dewayne Banks. (smnd) (Entered: 05/31/2023) |
| 06/01/2023 | 293 | ORDER. The parties have notified the Court that they have reached a settlement on all remaining claims (See Doc. 290). In accordance with Rule 41, the Court grants the motion and dismisses this case with prejudice. This case is closed. Signed by District Judge Holly L. Teeter on 6/1/2023. Mailed to pro se party Albert Banks by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(md) (Entered: 06/01/2023) |
| 06/01/2023 | | **Civil Case termed.(msb)** (Entered: 06/01/2023) |

| 06/01/2023 | | NOTICE of Pro Se Mailing. Document 293 Order mailed to Albert Banks on 6/1/2023 by regular mail. (msb) (Entered: 06/02/2023) |
|---|---|---|
| 06/05/2023 | 294 | NOTICE OF APPEAL as to 208 Memorandum and Order and 293 Order by Plaintiff Albert Dewayne Banks. (smnd) (Entered: 06/05/2023) |
| 06/05/2023 | | APPEAL FEE STATUS: filing fee not paid re: Notice of Appeal 294 on behalf of Plaintiff Albert Dewayne Banks. (THIS IS A TEXT ONLY ENTRY—NO DOCUMENT IS ASSOCIATED WITH THIS TRANSACTION.) (smnd) (Entered: 06/05/2023) |
| 06/05/2023 | 295 | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re 294 Notice of Appeal. (Attachments: # 1 Preliminary Packet) (smnd) (Entered: 06/05/2023) |
| 06/05/2023 | 296 | ENTRY OF APPEARANCE by Shon D. Qualseth on behalf of Glen F. Virden. (Qualseth, Shon) (Entered: 06/05/2023) |
| 06/05/2023 | 297 | APPEAL DOCKETED in 10CCA on June 5, 2023, and assigned Appeal No. 23−3102 re 294 Notice of Appeal filed by Albert Dewayne Banks. (smnd) (Entered: 06/05/2023) |
| 06/05/2023 | | (Court only) ***Staff notes: Email sent to Anthony Thompson (pro se plaintiff in associated case 15−3117) at acthompson8254@gmail.com re pleadings submitted on behalf of pro se plaintiff Albert Banks. Thompson had emailed unsigned pleading (Notice of Appeal) directly to HLT chambers on behalf of Mr. Banks. Clerks office advised Thompson that he is not attorney or counsel of record in instant case and may not submit pleadings on behalf of pro se plaintiff Albert Banks without authorization. (jsh) (Entered: 06/06/2023) |
| 06/26/2023 | 298 | APPEAL MANDATE from 10CCA: dismissing interlocutory appeal for lack of prosecution. (Appeal No. 23−3097) (Attachments: # 1 Transmittal Letter) (smnd) (Entered: 06/26/2023) |
| 07/03/2023 | | APPEAL FEE PAID in the amount of $505 Receipt No. 500000748 re Notice of Appeal − Final Judgment 294 filed by Albert Dewayne Banks. (THIS IS A TEXT ONLY ENTRY−NO DOCUMENT IS ASSOCIATED WITH THIS TRANSACTION.) (nao) (Entered: 07/03/2023) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Case No. 15-3093-SAC-DJW

ALBERT DEWAYNE BANKS
            Plaintiff,

v.

GLEN VIRDEN [ K.B.I. SPECIAL AGENT],
STEVEN OPAT [ FORMER GEARY COUNTY DISTRICT ATTORNEY],
TIMOTHY BROWN [FORMER CHIEF OF J.C.P.D.],
DAVID PLATT [ FORMER GEARY COUNTY DISTRICT JUDGE],
SPRINT/NEXTEL, VIRGIN MOBILE USA/ SPRINT PCS,
[TELEPHONE SERVICE PROVIDER]
            Defendants,

[MOTION TO AMEND COMPLAINT AND REPLY TO
DEFENDANTS MOTION TO DISMISS]

COMES NOW, Plaintiff Albert Banks for his cause of action against Defendant's David Platt,
Glen Virden, Steven Opat, and Sprint/ Nextel , Virgin Mobile USA/ Sprint PCS.

[PARTIES]

(1)     Plaintiff Albert Banks is an individual who was wiretapped by the defendants in violation of
federal and state wiretap laws.

(2)     Defendants Glen Virden ( Special Agent of Kansas Bureau of Investigations) is being sued in
both his individual and official capacities.

(3)     Defendant Steven Opat ( Former Geary County District Attorney) is being sued in both his
individual and official capacities.

(4)     Defendant Timothy Brown ( Former Chief of J.C.P.D.) is being sued in both his individual and
official capacities.

(5)    Defendant David Platt ( Former Geary County District Judge) is being sued in both his individual and official capacities.

(6)    Defendants Sprint/Nextel, Virgin Mobile USA/ Sprint PCS is a ( Wireless Telephone Service Provider)

[JURISDICTION AND VENUE]

(7)    Jurisdiction is proper in this Court pursuant to 42 U.S.C. 1983 because the defendants acting under the color of state law violated rights granted under federal law.

(8)    Jurisdiction is also proper in this Court pursuant to 28 U.S.C. 1332 and 1367 because this court has supplemental jurisdiction over the state law claims plus this court has original jurisdiction from part of the same case or controversy under Article III of the United States Constitution. Also the amount in the controversy of the plaintiff is believed to exceed the sum value of 5,000,000.00 exclusive of interest and cost.

(9)    Venue is proper in this court pursuant to 28 U.S.C. 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this District, and defendants either transact business in this District (Sprint Defendants) or employed by entities which reside within this District.

[ FACTUAL ALLEGATIONS]

(10)    On March 5, 2013 defendant Judge Platt entered an order of authorization for interceptions of plaintiff wire communications. Judge Platt authorized that the interceptions may take place in any jurisdiction within the United States. Based on the State and Federal law in place at this time defendant Platt knew or had reason to know that he completely lacked jurisdiction to issue that specific wiretap order KSA 22- 2516 (3) and 18 U.S.C. 2518 (3) only allows for a district judge to authorize interceptions to take place within the jurisdiction in which the respected judge sits. Based exclusively on its substance the order is invalid on the face of the document. The federal court has explicitly held that judge Platt lacked jurisdiction to issue interceptions outside of his judicial district.

(11)    On March 6, 2013 defendants Glen Virden, Steven Opat, Timothy Brown and approximately 50 of their subordinate officers all endorsed their signatures on the invalid wiretap order. At the time of the defendants conducts Steven Opat, Geary County District Attorney, Glen Virden lead K.B.I. Agent for the region of Manhattan and Timothy Brown Chief of the Junction City Police Department all had final decsion making authority within their respected departments. Based on the clearly established federal and state wiretap laws which were in place on this date, all defendants knew or had reason to know that the order they were endorsing was invalid on its face. See. KSA 22-2516 (3), and 18 U.S.C 2518 (3). Our Circuit has held that a violation of state wiretap law is explicitly a violation of federal wiretap law. See. United States v. McNulty.

(12)    Sprint is a wireless telephone provider who regularly conducts business within this district. Sprnit received a wiretap order from law enforcement on March 8, 2013. The wiretap order did not authorize Sprint to " disclose" electronic communications. Sprint violated the plaintiffs rights under federal and state wiretapping statutes when it disclosed the plaintiffs private "text messages" to the other defendants without a court order. The disclosed interceptions include but not limited to private "text" and "pictures" messages to family menbers which were exchanged from a place within the privacy of plaintiffs home Sprint's conduct resulted in the improper execution of the warrant. Our

circuit does not allow for a good faith reliance based on an improper execution of a warrant. The federal law has a remedy for damages for this type of violation pursuant 18 U.S.C 2520.

(13)    In April of 2013 Verizon informed the defendants Steven Opat, Glen Virden, and Timothy Brown personally or through officials from the defendants agencies that the order it received failed to authorize interceptions of "text messages". Verizon informed the defendants that if they wanted them to "disclose" Otis Ponds "text messages" they would have to send a specific request for interception of "electronic communications". The defendants supplemented the order and requested interceptions of electronic communications. Verizon then complied with the warrant and disclosed to the defendants Otis Ponds text messages.

(14)    Once Verizon explained to the defendants the different types of communications to the defendants Steven Opat, Glen Virden and Timothy Brown all had knowledge that all of the text messages they received from Sprint/Nextel beginning on March 8, 2013 were illegal under federal and state wiretapping laws. Even with this knowledge in hand at some time bettween May 16, 2013 and June 3, 2013 the defendants " intentionally" and "willfully" under the supervision of Glen Virden, and Timothy Brown the defendants disclosed these "text messages " to the United States Attorney's Office. Subsquent to that the United States Attorney's Office disclosed "electronic communications" to the United States Probation Office.The defendants did this even though they knew this information to be in violation of the federal and state wiretap law. This is sufficient to show an unofficial policy or pratice by the defendants to violate the clearly established federal law.

(15)    Defedants Steven Opat, and Glen Virden,Timothy Brown intentionally "used " the illegal information in order to further their investigation. The defendants listened to and viewed hundreds probably closer to thousands of plaintiffs calls and text messages while plaintiff was in privacy of his own home speaking to family and friends. The defendats then used this private information in order to further there own personal agenda. Plaintiff's home was located in Manhattan, Kansas which is Riley County and outside of the jurisdiction of any valid interception according Crabtree's suppression order.To "use" information which was gathered in violation of the federal and state wiretap law results in liability for defendants Steven Opat, Glen Virden, and Timothy Brown under the federal and state wiretap statutes.

(16)    The district court  for the District of Kansas explicitly held that Judge Platt lacked Jurisdiction to issue interception outside of his Judicial district. This resulted in the suppression of nearly 60,000 interceptions from the federal trial. According to the federal court Judge Platt acted in the complete absence of all jurisdiction when he issues a wiretap order which allowed interceptions to take place in any jurisdiction in the United States.

(17)    This complaint is only intended to allege that the defendants are liable for the illegal communications from the Federal Courts suppression order.

(18)    Plaintiff's direct appeal only answered whether the third party doctrine to the governments gathering of cell site location information without a valid warrant. Whether the District Court suppression remedy expanded far enough was never discussed by the Tenth Circuit Appeals Courts on plaintiffs direct appeals. See United States v. Banks -Fed Appx. - (10 th cir. 2017).

(19)    On May 9, 2013 Judge Platt denied plaintiff counsel even though he was being held under a felony arrest warrant. Defendant Platt remanded the plaintiff into the custody of the Sheriff department under excessive bond. On May 16, 2013 plaintiff appeared before Judge Platt again without counsel for

a status hearing. Plaintiff never found out that his phone was tapped until June 3, 2013 when he appeared in federal court and received legal representation. Plaintff still never seen the actual wiretap order in question until months later when his counsel brought the discovery up for him to view personally. It was at this point when the plaintiff found out about the existence of the defective wiretap warrant.

(20)    Judge Crabtree held the plaintiff has a right to privacy in all his text messages. Text messages are considered "papers" and or "effects" protected under the fourth amendment of the consitution.

## [COUNT I ]
### [Violation of Kansas Wiretap Statute ]

(21)    The Kansas Wiretap Statute prohibits the interception, disclosure or use of any wire, oral, or electronic communication.

(22)    Defendants have violated the plaintiff rights under the Kansas Wiretap Statute. The plaintiff is directly affected.

(23)    Steven Opat, Glen Virden, Timothy Brown violated the Kansas Wiretap Act when they intercepted, disclosed  used or procured others to intercept,disclose, or use plaintiffs private communications.

(24)    Plaintiff is entitled to the rights and protections and benefits provided under the Kansas Wiretap Act. See. KSA 22- 2502, et seq.

( 25)    Plaintiff is an aggrieved parties within the meaning of the Kansas Wiretap Statute.

(26)    Upon information from the discovery in the federal case defendants have "disclosed" and "use" private information which belonged to the plaintiff. The defendants used this information in order to assist them in there investigation.

(27)    Pursuant to the Kansas Wiretap Act, plaintiff is entitled to damages, but not less than the liquidated damages computed of one hundred dollars a day of each violation or ten thousand dollars whichever is greater.

(28)    Plaintiff is further entitled to punitive damages

(29)    Defendants Steven Opat, Glen Virden, and Timothy Brown are liable pursuant to KSA 22- 2518 for plaintiff's attorney's fees and cost/ expenese incurred in this action.

(30)    Plaintiff was subject to the policy and pratice of defendants Steven Opat, Glen Virden, and Timothy Brown which caused his private information to be exposed to the public to the detriment of his right to life, liberty, and pursuit of happiness.

## [COUNT II]
### [Violation of Federal Wiretap Statute].

(32)    The Federal Wiretap Act prohibts intercepting, disclosing, or using the contents of any wire, oral, or electronic communication.

(33)    Defendants have violated Plaintiff's rights under the Federal Wiretap Act. The plaintiff is directly affected.

(34)    Steven Opat, Glen Virden, and Timothy Brown, David Platt and Sprint defendants acted unlawfully by intercepting private communications and disclosing those communications to third parties including but not limited to the United States Attorney's Office, law enforcement officials, and the United States Probation Office.

(35)    Defendants Steven Opat, Glen Virden, Timothy Brown and Sprint defendants violated the federal wiretap act when they – Intentionally intercept, disclose, use or procure to intercept, disclose, or use wire, oral or electronic communications or Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication; knowingly or having reason to know that the information was obtained through the interception of wire, oral or electronic communications in violation of 18 U.S.C. 2511.

(36)    The plaintiff is entitled to rights, benefits, and protections provided under the Federal Wiretap Act. See. 18 U.S.C. 2511 et. Seq.

(37)    Defendants Steven Opat, Glen Virden , and Timothy Brown, David Platt and Sprint defendants are "persons" within the meaning of 18 U.S.C 2510 (6).

(38)    Plaintiff is an "aggrieved party" within the meaning of federal wiretap statute.

(39)    Pursuant to federal wiretap statute plaintiff is entitled to damages but not less than the actual damages suffered by the plaintiff any profits made by the defendants as a result of the violation. Or liquidated damages computed of one hundred dollars per each day of violation or ten thousand dollars which ever is greater.

(40)    Plaintiff is further entitled to punitive damages.

(41)    Defendans are liable pursuant to 18 U.S.C. 2520 for plaintiff's fees and cost / expenses incurred in this action.

[COUNT III]
[Violation of Fourth Amendment]

(42)    A violation of the state and federal wiretap statute necessarily is a violation of the fourth amendment. The wiretap statutes at issue were specifically codified in order to protect the fourth amendment rights of the plaintiff. A violation of the wiretap statutes in question today are sufficient to established cause of action under the fourth amendment as well.

[COUNT IV]
[ Conspiracy to Commit the Substantive Counts]

(43)    Defendants Steven Opat and Glen Virden knowingly conspired with one another to commit the substantive count in this complaint.

(44)    Defendants knowingly or had reason to know that the interception which they endorsed must

only take place within the jurusdiction of the court in which the authorizing judge sits. Private and Public citizens are presumed to know and abide by all laws which are available to the public.

(45)    In April of 2013 Verizon Wireless informed the defendants and their subordinate officers that the warrant did not authorize the interceptions of "text messages". With this knowledge the defendants still disclosed or procured others to disclose the text messages which defendants Sprint illegally disclosed to them from the March order. This is sufficient to established the conspiratorial intent between Steven Opat and Glen Virden.

[PRAYER FOR RELIEF]

Wherefore plaintiff prays defendants Glen Virden, Steven Opat, Timothy Brown and David Platt and Sprint defendants are held liable for damages under the respective federal and state Wiretap Act. The defendants should be order to pay no les the ten millon dollars in compensatory and punitive damages. Defendants also shall be held liable for statutory damages under 18 U.S.C 2511 and 2520. Finally plaintiff prays for the request for relief above, for cost and expenses for bringing this suit and any further relief the court deems necessary.

Respectfully Submitted,

/s/    Albert D. Banks

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Case No. 15-3093-SAC-DJW

ALBERT DEWAYNE BANKS
            Plaintiff,


v.


GLEN VIRDEN [ K.B.I. SPECIAL AGENT],
STEVEN OPAT [ FORMER GEARY COUNTY DISTRICT ATTORNEY],
TIMOTHY BROWN [FORMER CHIEF OF J.C.P.D.],
DAVID PLATT [ FORMER GEARY COUNTY DISTRICT JUDGE],
SPRINT/NEXTEL, VIRGIN MOBILE USA/ SPRINT PCS,
[TELEPHONE SERVICE PROVIDER]
                        Defendants,


[MOTION TO AMEND COMPLAINT AND REPLY TO
DEFENDANTS MOTION TO DISMISS]


        COMES NOW, Plaintiff Albert Banks for his cause of action against Defendant's David Platt,
Glen Virden, Steven Opat, and Sprint/ Nextel , Virgin Mobile USA/ Sprint PCS.

                        [PARTIES]
(1)     Plaintiff Albert Banks is an individual who was wiretapped by the defendants in violation of
federal and state wiretap laws.

(2)     Defendants Glen Virden ( Special Agent of Kansas Bureau of Investigations) is being sued in
both his individual and official capacities.

(3)     Defendant Steven Opat ( Former Geary County District Attorney) is being sued in both his
individual and official capacities.

(4)     Defendant Timothy Brown ( Former Chief of J.C.P.D.) is being sued in both his individual and
official capacities.

(5)    Defendant David Platt ( Former Geary County District Judge) is being sued in both his individual and official capacities.

(6)    Defendants Sprint/Nextel, Virgin Mobile USA/ Sprint PCS is a ( Wireless Telephone Service Provider)

[JURISDICTION AND VENUE]

(7)    Jurisdiction is proper in this Court pursuant to 42 U.S.C. 1983 because the defendants acting under the color of state law violated rights granted under federal law.

(8)    Jurisdiction is also proper in this Court pursuant to 28 U.S.C. 1332 and 1367 because this court has supplemental jurisdiction over the state law claims plus this court has original jurisdiction from part of the same case or controversy under Article III of the United States Constitution. Also the amount in the controversy of the plaintiff is believed to exceed the sum value of 5,000,000.00 exclusive of interest and cost.

(9)    Venue is proper in this court pursuant to 28 U.S.C. 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this District, and defendants either transact business in this District (Sprint Defendants) or employed by entities which reside within this District.

[ FACTUAL ALLEGATIONS]

(10)    On March 5, 2013 defendant Judge Platt entered an order of authorization for interceptions of plaintiff wire communications. Judge Platt authorized that the interceptions may take place in any jurisdiction within the United States. Based on the State and Federal law in place at this time defendant Platt knew or had reason to know that he completely lacked jurisdiction to issue that specific wiretap order KSA 22- 2516 (3) and 18 U.S.C. 2518 (3) only allows for a district judge to authorize interceptions to take place within the jurisdiction in which the respected judge sits. Based exclusively on its substance the order is invalid on the face of the document. The federal court has explicitly held that judge Platt lacked jurisdiction to issue interceptions outside of his judicial district.

(11)    On March 6, 2013 defendants Glen Virden, Steven Opat, Timothy Brown and approximately 50 of their subordinate officers all endorsed their signatures on the invalid wiretap order. At the time of the defendants conducts Steven Opat, Geary County District Attorney, Glen Virden  lead  K.B.I. Agent for the region of Manhattan and Timothy Brown Chief of the Junction City Police Department all had final decsion making authority within their respected departments. Based on the clearly established federal and state wiretap laws which were in place on this date, all defendants knew or had reason to know that the order they were endorsing was invalid on its face. **See.** KSA 22-2516 (3), and 18 U.S.C 2518 (3). Our Circuit has held that a violation of state wiretap law is explicitly a violation of federal wiretap law. **See.** United States v. McNulty.

(12)    Sprint is a wireless telephone provider who regularly conducts business within this district. Sprnit received a wiretap order from law enforcement on March 8, 2013. The wiretap order did not authorize Sprint to " disclose" electronic communications. Sprint violated the plaintiffs rights under federal and state wiretapping statutes when it disclosed the plaintiffs private "text messages" to the other defendants without a court order. The disclosed interceptions include but not limited to private "text" and "pictures" messages to family menbers which were exchanged from a place within the privacy of plaintiffs home Sprint's conduct resulted in the improper execution of the warrant. Our

circuit does not allow for a good faith reliance based on an improper execution of a warrant. The federal law has a remedy for damages for this type of violation pursuant 18 U.S.C 2520.

(13)   In April of 2013 Verizon informed the defendants Steven Opat, Glen Virden, and Timothy Brown personally or through officials from the defendants agencies that the order it received failed to authorize interceptions of "text messages". Verizon informed the defendants that if they wanted them to "disclose" Otis Ponds "text messages" they would have to send a specific request for interception of "electronic communications". The defendants supplemented the order and requested interceptions of electronic communications. Verizon then complied with the warrant and disclosed to the defendants Otis Ponds text messages.

(14)   Once Verizon explained to the defendants the different types of communications to the defendants Steven Opat, Glen Virden and Timothy Brown all had knowledge that all of the text messages they received from Sprint/Nextel beginning on March 8, 2013 were illegal under federal and state wiretapping laws. Even with this knowledge in hand at some time bettween May 16, 2013 and June 3, 2013 the defendants " intentionally" and  "willfully" under the supervision of Glen Virden, and Timothy Brown the defendants disclosed these "text messages " to the United States Attorney's Office. Subesquent to that the United States Attorney's Office disclosed "electronic communications" to the United States Probation Office.The defendants did this even though they knew this information to be in violation of the federal and state wiretap law. This is sufficient to show an unofficial policy or pratice by the defendants to violate the clearly established federal law.

(15)   Defedants Steven Opat, and Glen Virden,Timothy Brown intentionally "used "  the illegal information in order to further their investigation. The defendants listened to and viewed hundreds probably closer to thousands of plaintiffs calls and text messages while plaintiff was in privacy of his own home speaking to family and friends. The defendats then used this private information in order to further there own personal agenda. Plaintiff's home was located in Manhattan, Kansas which is Riley County and outside of the jurisdiction of any valid interception according Crabtree's suppression order.To "use" information which was gathered in violation of the federal and state wiretap law results in liability for defendants Steven Opat, Glen Virden, and Timothy Brown under the federal and state wiretap statutes.

(16)   The district court  for the District of Kansas explicitly held that Judge Platt lacked Jurisdiction to issue interception outside of his Judicial district. This resulted in the suppression of nearly 60,000 interceptions from the federal trial. According to the federal court Judge Platt acted in the complete absence of all jurisdiction when he issues a wiretap order which allowed interceptions to take place in any jurisdiction in the United States.

(17)   This complaint is only intended to allege that the defendants are liable for the illegal communications from the Federal Courts suppression order.

(18)   Plaintiff's direct appeal only answered whether the third party doctrine to the governments gathering of cell site location information without a valid warrant. Whether the District Court suppression remedy expanded far enough was never discussed by the Tenth Circuit Appeals Courts on plaintiffs direct appeals. See United States v. Banks -Fed Appx. - (10 th cir. 2017).

(19)   On May 9, 2013 Judge Platt denied plaintiff counsel even though he was being held under a felony arrest warrant. Defendant Platt remanded the plaintiff into the custody of the Sheriff department under excessive bond. On May 16, 2013 plaintiff appeared before Judge Platt again without counsel for

a status hearing. Plaintiff never found out that his phone was tapped until June 3, 2013 when he appeared in federal court and received legal representation. Plaintff still never seen the actual wiretap order in question until months later when his counsel brought the discovery up for him to view personally. It was at this point when the plaintiff found out about the existence of the defective wiretap warrant.

(20)   Judge Crabtree held the plaintiff has a right to privacy in all his text messages. Text messages are considered "papers" and or "effects" protected under the fourth amendment of the consitution.

[COUNT I ]
[Violation of Kansas Wiretap Statute ]

(21)   The Kansas Wiretap Statute prohibits the interception, disclosure or use of any wire, oral, or electronic communication.

(22)   Defendants have violated the plaintiff rights under the Kansas Wiretap Statute. The plaintiff is directly affected.

(23)   Steven Opat, Glen Virden, Timothy Brown violated the Kansas Wiretap Act when they intercepted, disclosed  used or procured others to intercept,disclose, or use plaintiffs private communications.

(24)   Plaintiff is entitled to the rights and protections and benefits provided under the Kansas Wiretap Act. See. KSA 22- 2502, et seq.

( 25)   Plaintiff is an aggrieved parties within the meaning of the Kansas Wiretap Statute.

(26)   Upon information from the discovery in the federal case defendants have "disclosed" and "use" private information which belonged to the plaintiff. The defendants used this information in order to assist them in there investigation.

(27)   Pursuant to the Kansas Wiretap Act, plaintiff is entitled to damages, but not less than the liquidated damages computed of one hundred dollars a day of each violation or ten thousand dollars whichever is greater.

(28)   Plaintiff is further entitled to punitive damages

(29)   Defendants Steven Opat, Glen Virden, and Timothy Brown are liable pursuant to KSA 22- 2518 for plaintiff's attorney's fees and cost/ expenese incurred in this action.

(30)   Plaintiff was subject to the policy and pratice of defendants Steven Opat, Glen Virden, and Timothy Brown which caused his private information to be exposed to the public to the detriment of his right to life, liberty, and pursuit of happiness.

[COUNT II]
[Violation of Federal Wiretap Statute].

(32)   The Federal Wiretap Act prohibts intercepting, disclosing, or using the contents of any wire, oral, or electronic communication.

(33)    Defendants have violated Plaintiff's rights under the Federal Wiretap Act. The plaintiff is directly affected.

(34)    Steven Opat, Glen Virden, and Timothy Brown, David Platt and Sprint defendants acted unlawfully by intercepting private communications and disclosing those communications to third parties including but not limited to the United States Attorney's Office, law enforcement officials, and the United States Probation Office.

(35)    Defendants Steven Opat, Glen Virden, Timothy Brown and Sprint defendants violated the federal wiretap act when they – Intentionally intercept, disclose, use or procure to intercept, disclose, or use wire, oral or electronic communications or Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication; knowingly or having reason to know that the information was obtained through the interception of wire, oral or electronic communications in violation of 18 U.S.C. 2511.

(36)    The plaintiff is entitled to rights, benefits, and protections provided under the Federal Wiretap Act. See. 18 U.S.C. 2511 et. Seq.

(37)    Defendants Steven Opat, Glen Virden , and Timothy Brown, David Platt and Sprint defendants are  "persons" within the meaning of 18 U.S.C 2510 (6).

(38)    Plaintiff is an "aggrieved party" within the meaning of federal wiretap statute.

(39)    Pursuant to federal wiretap statute plaintiff is entitled to damages but not less than the actual damages suffered by the plaintiff any profits made by the defendants as a result of the violation. Or liquidated damages computed of one hundred dollars per each day of violation or ten thousand dollars which ever is greater.

(40)    Plaintiff is further entitled to punitive damages.

(41)    Defendans are liable pursuant to 18 U.S.C. 2520 for  plaintiff's fees and cost / expenses incurred in this action.

[COUNT III]
[Violation of Fourth Amendment]

(42)    A violation of the state and federal wiretap statute necessarily is a violation of the fourth amendment. The wiretap statutes at issue were specifically codified in order to protect the fourth amendment rights of the plaintiff. A violation of the wiretap statutes in question today are sufficient to established cause of action under the fourth amendment as well.

[COUNT IV]
[ Conspiracy to Commit the Substantive Counts]

(43)    Defendants Steven Opat and Glen Virden knowingly conspired with one another to commit the substantive count in this complaint.

(44)    Defendants knowingly or had reason to know that the interception which they endorsed must

only take place within the jurusdiction of the court in which the authorizing judge sits. Private and Public citizens are presumed to know and abide by all laws which are available to the public.

(45)   In April of 2013 Verizon Wireless informed the defendants and their subordinate officers that the warrant did not authorize the interceptions of "text messages". With this knowledge the defendants still disclosed or procured others to disclose the text messages which defendants Sprint illegally disclosed to them from the March order. This is sufficient to established the conspiratorial intent between Steven Opat and Glen Virden.

[PRAYER FOR RELIEF]

        Wherefore plaintiff prays defendants Glen Virden, Steven Opat, Timothy Brown and David Platt and Sprint defendants are held liable for damages under the respective federal and state Wiretap Act. The defendants should be order to pay no les the ten millon dollars in compensatory and punitive damages. Defendants also shall be held liable for statutory damages under 18 U.S.C 2511 and 2520. Finally plaintiff prays for the request for relief above, for cost and expenses for bringing this suit and any further relief the court deems necessary.

Respectfully Submitted,

/s/    Albert D. Banks

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Albert DeWayne Banks, | |
| Plaintiff, | |
| v. | Case No. 5:15-CV-3093 |
| Steven L. Opat, *et al.,* | |
| Defendants. | |
| Anthony Thompson, | |
| Plaintiff, | |
| v. | Case No. 5:15-CV-03117 |
| David L. Platt, *et al.,* | |
| Defendants. | |

**DEFENDANT GLEN VIRDEN'S**
**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, Defendant Glen Virden moves the Court for summary judgment concerning the claims against him by Plaintiffs Albert Banks and Anthony Thomas.

Under the uncontroverted material facts, Defendant Virden is entitled to summary judgment against the plaintiffs' claims. *First*, the claims are time barred under the applicable statutes of limitation. *Second*, there was no violation of the federal wiretap statutes as a matter of law. *Third*, Defendant Virden's good faith

1

reliance on court orders is a complete defense to both the state and federal wiretap claims.

The Memorandum in Support of Defendant Virden's Motion for Summary Judgment, which was filed contemporaneously with this motion, is incorporated by reference.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

s/ Arthur S. Chalmers
Arthur S. Chalmers, KS S. Ct. #11088
Assistant Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612
Ph: (785) 368-8426
Fax: (785) 291-3707
Email:  art.chalmers@ag.ks.gov
Attorneys for Defendant Virden

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of September 2020, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all those individuals currently electronically registered with the Court.

s/ Arthur S. Chalmers

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| ALBERT DEWAYNE BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-3093-HLT-GEB |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN L. OPAT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ---------------------------------------------------------) | | |
| | ) | |
| ANTHONY THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-3117-HLT-GEB |
| | ) | |
| DAVID L. PLATT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**STEVEN OPAT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Steven Opat moves this Court for summary judgment under Federal Rule of Civil Procedure 56 because there are no genuine issues of material fact, and he is entitled to judgment as a matter of law. Opat files contemporaneously a Memorandum in Support detailing the arguments for this motion in Case No. 15-3093-HLT-GEB.

Opat respectfully requests that this Court enter an order granting him summary judgment on all remaining counts, for his costs and attorney fees in accordance with 42 U.S.C. § 1988, and for such and other further relief as the Court deems just and equitable.

Respectfully submitted,

FOULSTON SIEFKIN LLP

By: /s/ Eric Turner
        Eric Turner, #25065

9225 Indian Creek Parkway, Suite 600
Overland Park, KS 66210
Telephone:  (913) 498-2100
Facsimile:  (913) 498-2101
Email:  eturner@foulston.com

ATTORNEY FOR DEFENDANT
STEVEN OPAT

## CERTIFICATE OF SERVICE

I certify that on September 18, 2020, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all counsel currently electronically registered with the Court.

/s/ Eric Turner
ATTORNEY FOR DEFENDANT
STEVEN OPAT

- 2 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ALBERT DEWAYNE BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-3093-HLT-GEB |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN L. OPAT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ---------------------------------------------------------) | | |
| | ) | |
| ANTHONY THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-3117-HLT-GEB |
| | ) | |
| DAVID L. PLATT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### STEVEN OPAT'S MEMORANDUM IN SUPPORT
### OF HIS MOTION FOR SUMMARY JUDGMENT

This is the second of two civil lawsuits filed by Plaintiff Albert Banks against Defendant Steven

Opat in the District of Kansas. Both concern the criminal investigation and prosecution that ultimately

resulted in Banks' conviction on federal drug-trafficking charges. In this case, Case No. 15-3093, Banks

alleges that Opat—then the County Attorney of Geary County, Kansas—violated state and federal

wiretap laws by illegally intercepting, disclosing, and using his communications.

Opat is entitled summary judgment. To begin with, as was recognized in Banks' first suit against

Opat, he is entitled to absolute immunity because he was acting as an advocate for the State of Kansas.

Summary judgment is also required because (1) Opat is entitled to qualified immunity, (2) his actions fall

within the statutory good-faith defenses, (3) claim preclusion bars Banks' claims, (4) Banks' claims are

barred by *Heck v. Humphrey*, and (5) Banks' damages are limited by the statute of limitations.

## I.  STATEMENT OF UNCONTROVERTED FACTS

The facts are familiar to this Court from previous litigation in this matter. *See* Memorandum & Order, ECF No. 109. Defendant Steve Opat, in accordance with Federal Rule of Civil Procedure 56 and Local Rule 56.1, sets forth the following statement of uncontroverted facts:

1. This case arises from a law enforcement investigation of drug trafficking in Geary County, Kansas that began in February 2012. The investigation into the suspected narcotics-trafficking conspiracy was jointly conducted by the Kansas Bureau of Investigation, the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department. Exhibit A, Virden Declaration, ¶ 6.

2. At that time, the investigation focused on trafficking of crack cocaine in Geary County, Kansas. The investigators had discovered evidence of crack cocaine sales by Albert Banks in Junction City, which is in Geary County, Kansas. Exhibit A, Virden Declaration, ¶ 11.

3. Glen Virden, a Kansas Bureau of Investigation special agent in charge of the investigation, informed Steven Opat, the County Attorney for Geary County, about the investigation. They agreed that interception of Banks' communications was necessary and appropriate. Exhibit A, Virden Declaration, ¶ 10; Exhibit B, Opat Declaration, ¶ 7.

4. Because there had been a substantial period of time since Opat had last prepared an application for a wiretap order, he consulted the United States Attorney's Office for guidance and samples. Exhibit B, Opat Declaration, ¶ 9.

5. In 2013, Opat applied for wiretap orders authorizing the interception of wire communications by the Kansas Bureau of Investigation and its designees. As the County Attorney, Opat was authorized to make the applications by Kansas law. Opat personally presented each of the applications to Judge Platt. Exhibit B, Opat Declaration, ¶¶ 2-3, 8, 10-12; K.S.A. 22-2515(a)(11).

6. Virden and other law enforcement officers provided affidavits in support of each application. Opat reviewed each affidavit as part of his decision that each application was appropriate and supported by evidence. Exhibit A, Virden Declaration, ¶ 13; Exhibit B, Opat Declaration, ¶ 11.

7. Based on a sample obtained from the United States Attorney's Office, Opat prepared and submitted a proposed order authorizing the interception of wire communications to Judge Platt with each application. Exhibit B, Opat Declaration, ¶ 13.

8. In March and April 2013, Judge David R. Platt of the Eighth Judicial District of Kansas issued wiretap orders for cell phones used by Banks. Each order was not to exceed 30 days. Exhibit A, Virden Declaration, ¶ 9; Exhibit B, Opat Declaration, ¶ 14; Exhibit C, Wiretap Orders at 1-6 (March 5, 2013); 25-30 (April 12, 2013).

9. The wiretap orders entered by Judge Platt provided that if "the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in another jurisdiction within the United States." Exhibit C, Wiretap Orders at 3.

10. On March 6, 2013, more than 60 law enforcement officers attended a meeting and added their signatures to a copy of Judge Platt's wiretap order. All officers were required to sign and date a copy of the order. Exhibit A, Virden Declaration, ¶ 24, 26; Exhibit C, Wiretap Orders at 6-9.

11. Opat attended the meeting and added his name and signature to a list of names and signatures of law enforcement officers and other prosecutors who attended the meeting. The signatures were added to a copy of Judge Platt's March 5, 2013 wiretap order. Opat dated his name and signature March 6, 2013. Exhibit B, Opat Declaration, ¶¶ 15-16; Exhibit C, Wiretap Orders at 8.

- 3 -

12. Opat did not anticipate a jurisdictional issue regarding the wiretap order, in part because the scope of the investigation was not anticipated at the time it was initiated. Exhibit B, Opat Declaration, ¶ 17.

13. Defendant Glen Virden, a Kansas Bureau of Investigation special agent in charge of the investigation, executed the orders. Pursuant to and in reliance on Judge Platt's orders, the investigating agents monitored and collected information from intercepted calls and text messages to and from Banks' phones. Exhibit A, Virden Declaration, ¶¶ 7, 17.

14. Opat had no role in the investigation. Exhibit B, Opat Declaration, ¶ 18.

15. Opat did not intercept any of Banks' communications. Exhibit B, Opat Declaration, ¶ 19.

16. Opat did not listen to any of Banks' calls or view any of his text messages. Exhibit B, Opat Declaration, ¶ 20.

17. Opat did not use any of Banks' communications for any unlawful purpose. Opat was authorized to use the contents of Banks' communications included in Virden's affidavits as part of the judicial process of applying for wiretap orders. Exhibit B, Opat Declaration, ¶ 21; K.S.A. 22-2515(b)(c).

18. Opat did not disclose any of Banks' communications to anyone other than Judge Platt. Exhibit B, Opat Declaration, ¶ 22; K.S.A. 22-2515(b)(c).

19. All of Opat's actions were undertaken in his role as a prosecutor. Exhibit B, Opat Declaration, ¶ 23.

20. At that time, Virden and Opat anticipated that any criminal charges against the suspects, including Banks, resulting from the investigation would be filed and prosecuted in Geary County District Court in the Eighth Judicial District. Exhibit A, Virden Declaration, ¶ 12; Exhibit B, Opat Declaration, ¶ 24.

21. In fact, Banks was initially arrested on state charges and placed in the Geary County Jail. He was charged with drug-trafficking offenses in Geary County District Court. Exhibit B, Opat Declaration, ¶ 25.

22. While the state case was pending in May 2013, according to a civil lawsuit filed by Banks against Opat, Banks submitted a motion requesting that Opat deliver all information about the state charges to him. District of Kansas Case No. 14-3199-SAC, ECF No. 3 at 7.

23. During the course of the criminal investigation, the decision was made to refer Banks to the Office of the United States Attorney for the District of Kansas to prosecute for violations of federal laws, including conspiracy, an offense more appropriate for federal court. Exhibit A, Virden Declaration, ¶ 32; Exhibit B, Opat Declaration, ¶ 26.

24. Based on this decision, Opat moved to dismiss the state-court charges, which were dismissed without prejudice. Exhibit B, Opat Declaration, ¶ 27; See Banks v. Geary County District Court, No. 14-3199-SAC, 2015 WL 12864252, at *2 (D. Kan. Nov. 24, 2015).

25. In May 2013, a federal grand jury indicted Banks on multiple counts of distributing and conspiring to distribute crack cocaine. District of Kansas Case No. 13-CR-40060-DDC, ECF No. 1.

26. Banks moved to suppress the intercepted communications. District of Kansas Case No. 13-CR-40060-DDC, ECF No. 343.

27. The district court judge, Judge Crabtree, ruled that "a Kansas state court judge acting under Kansas law has no authority to authorize interception outside the judge's own judicial district." District of Kansas Case No. 13-CR-40060-DDC, ECF No. 517 at 1.

28. Judge Crabtree granted the motions to suppress the extra-territorial communications, excluding all but 7,000 of the 67,000 intercepted communications from trial. As to the 7,000 surviving communications, Judge Crabtree ruled that the government had offered sufficient

evidence that the communications were made by phones located inside the Eighth Judicial District. District of Kansas Case No. 13-CR-40060-DDC, ECF No. 580.

29. Although declining to apply the exclusionary rule's good-faith exception to evidence collected from the wiretaps, Judge Crabtree stated that the good-faith exception "almost certainly applies because one would not expect the officers executing the search warrants to have apprehended the subtle, technical jurisdictional defect." District of Kansas Case No. 13-CR-40060-DDC, ECF No. 650 at 6.

30. Opat was not aware of the possibility of a technical jurisdictional defect in Judge Platt's wiretap orders until the issue was raised in motions to suppress, which resulted in the suppression of those interceptions as evidence against Banks. Exhibit B, Opat Declaration, ¶ 28.

31. The application and proposed orders Opat prepared for submission to Judge Platt were based in part upon his review of the documents he had received and used in preparing the application, and he did not consider a technical jurisdictional issue at the time. Exhibit B, Opat Declaration, ¶ 29.

32. A jury convicted Banks on all counts in June 2015. District of Kansas Case No. 13-CR-40060-DDC, ECF No. 766.

33. In October 2014, Banks filed a lawsuit against Opat, alleging that Opat violated Banks' Fourteenth Amendment Due Process and Equal Protection rights for not delivering the information he requested in the short-lived state case. District of Kansas Case No. 14-3199, ECF No. 1, 3. The claim against Opat was dismissed based on prosecutorial immunity. *Banks v. Geary County District Court*, No. 14-3199-SAC, 2015 WL 12864252, at *2 (D. Kan. Nov. 24, 2015), *aff'd by* 645 F. App'x 713 (10th Cir. 2016).

34. Banks filed this lawsuit April 28, 2015. ECF No. 1. Banks filed an Amended Complaint on February 20, 2018. ECF No. 74. He claims actual damages of between $1 million and $2 million. Exhibit D, Plaintiffs' Rule 26(a)(1) Disclosures at 5.

35. After ongoing litigation, including an appeal to the Tenth Circuit Court of Appeals, two claims remain against Opat: (1) violation of the Kansas wiretap statutes, K.S.A. 22-2514 to 22-2519; and (2) violation of the federal wiretap statutes, 18 U.S.C. §§ 2510 to 2523. *Banks v. Opat*, 814 F. App'x 325, 333-34, 338 (10th Cir. 2020) (reversing this Court's dismissal of extra-territorial wiretapping claims in ECF No. 109 based on good-faith reliance defense).

## II.   ARGUMENTS & AUTHORITIES

Steve Opat is entitled to summary judgment because he is entitled to absolute immunity from civil liability as a prosecutor. Alternatively, Opat's motion for summary judgment should be granted because (1) he is entitled to qualified immunity from civil liability, (2) Opat's actions fall within the statutory good-faith defenses under state and federal wiretap laws, (3) Banks' claims are precluded by his first lawsuit against Opat, (4) Banks' claims are barred by *Heck v. Humphrey*, and (5) Banks' purported damages are limited by the statute of limitations.

**Legal standard: Federal Rule of Civil Procedure 56**

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute" about "any material fact" exists and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party on the issue." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* Summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

**Legal framework: <u>18 U.S.C. § 2520(a)</u>, <u>K.S.A. 22-2518(1)</u>**

The Electronic Communications Privacy Act[1] of 1986 (<u>18 U.S.C. §§ 2510</u> to 2523) provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." <u>18 U.S.C. § 2520(a)</u>. Kansas law provides a nearly identical remedy. <u>K.S.A. 22-2518(1)</u>.

> **A.   Opat is entitled to absolute immunity because all of his actions were undertaken in his role as a prosecutor and advocate for the State of Kansas.**

Opat is entitled to absolute immunity because he acted as an advocate for the State of Kansas in his role as a prosecutor. Opat appeared before a judge in support of applications for wiretap orders, initially prosecuted Banks in state court, and later referred Banks to federal prosecutors. SOF 5, 20-23. All of Opat's actions were undertaken in his role as prosecutor in the judicial phase of the criminal process. SOF 19.

Prosecutors are absolutely immune from civil liability when they act as advocates for the State. *Imbler v. Pachtman*, <u>424 U.S. 409, 430-32</u> (1976). That holding rests on "important public policy" justifications: "The 'public trust of the prosecutor's office would suffer' were the prosecutor to have in mind his 'own potential' damages 'liability' when making prosecutorial decisions—as he might well were he subject to § 1983 liability." *Van de Kamp v. Goldstein*, <u>555 U.S. 335, 341-42</u> (2009) (quoting *Imbler*, <u>424 U.S. at 424</u>). While this immunity might leave the "genuinely wronged" without a remedy against prosecutors acting for malicious or unlawful purposes, the importance of shielding prosecutorial decision-making from the influence of concerns about subsequent personal liability, the Court concluded, outweighed that risk of harm. *See Imbler*, <u>424 U.S. at 427</u>. Absolute immunity is available for

---

[1] The Amended Complaint refers to <u>18 U.S.C. §§ 2510</u> to 2523 as the "Federal Wiretap Statute." ECF No. 74 at 4-5. This Court and the Tenth Circuit have called these statutes the "Electronic Communications Privacy Act of 1986." ECF No. 109 at 4; *Banks v. Opat*, <u>814 F. App'x 325, 331</u> (10th Cir. 2020). The district court in Thompson's criminal case called the statutes "Title III of the Omnibus Crime Control and Safe Streets Act." *United States v. Banks*, No. 13-CR-40060-DDC, <u>2014 WL 4261344</u>, at *1 (D. Kan. Aug. 29, 2014). Any of these titles refer to the same set of statutes, <u>18 U.S.C. §§ 2510</u> to 2523.

conduct of prosecutors that is "intimately associated with the judicial phase of the criminal process." *Id.* at 430. For example, that means that a state prosecutor has absolute immunity for the initiation and pursuit of a criminal prosecution, including presentation of the state's case at trial. *Id.* at 431.

Specifically, the Supreme Court has held that a prosecutor's appearance in court in support of an application for a search warrant is protected by absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 125-26 (1997). A prosecutor is absolutely immune for initiating a prosecution and for presenting the State's case, and "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution." *Burns v. Reed*, 500 U.S. 478, 490-91 (1991). In *Burns*, the Court ruled that the prosecutor's "appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing are protected by absolute immunity." *Id.* at 492.

Absolute immunity protects against damages claims under any federal law not just 42 U.S.C. § 1983. *Ivory v. Platt*, No. 15-3051, 2016 WL 5916647, at *13 (D. Kan. Oct. 11, 2016). More recently, the Tenth Circuit has reiterated that absolute immunity is an available defense against claims under the federal wiretap statutes. *See Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Trust*, 744 F.3d 623, 630 (10th Cir. 2014); *see also Babb v. Eagleton*, 614 F. Supp. 2d 1232, 1237 (N.D. Okla. 2008) ("In the context of prosecutors performing quasi-judicial functions, federal courts have indicated that quasi-judicial immunity can serve as a defense to a Title III claim.").

Specifically, as relevant here, the Tenth Circuit has affirmed dismissal based on a county attorney's absolute immunity against an illegal wiretap claim under 18 U.S.C. § 2520. *See Newcomb v. Ingle*, 827 F.2d 675, 677 (10th Cir. 1987). In *Newcomb*, an assistant county attorney of Crawford County, Kansas, received tape recordings of telephone conversations and brought criminal charges based on information in the tape recordings. *Id.* A subsequent lawsuit included a claim under § 2520 against the assistant county attorney, which was dismissed based on prosecutorial immunity because the allegations in the complaint revealed that the assistant county attorney's activities were "intimately associated with

the prosecutorial phase of the criminal process." *Id.* The Tenth Circuit agreed with the district court's reasoning and affirmed. *Id.*

Courts in other jurisdictions, too, have acknowledged absolute immunity as a defense for prosecutors against claims of statutory wiretap violations. *See, e.g., Lanier v. Bryant*, 332 F.3d 999, 1005 (6th Cir. 2003) (affirming district court's determination that prosecutors were immune from suit alleging illegal disclosure under Federal Wiretap Act); *Lewellen v. Raff*, 843 F.2d 1103, 1114-15 (8th Cir. 1988) (holding that prosecutors were entitled to absolute immunity on claims that they directed and participated in allegedly illegal electronic surveillance of plaintiff); *Forsyth v. Kleindienst*, 599 F.2d 1203, 1215 n.16 (3d Cir. 1979); *Jacobson v. Bell Telephone Co. of Nevada*, 592 F.2d 515, 524 (9th Cir. 1976); *Hill v. Donoghue*, 815 F. Supp. 2d 583, 586 (E.D.N.Y. 2011) (ruling that using intercepted jailhouse calls to obtain indictment "is among a prosecutor's quasi-judicial duties that are shielded by absolute immunity"); *Bansal v. Russ*, 513 F. Supp. 2d 264, 275 (E.D. Pa. 2007); *Belanus v. Chandler*, No. 11-0026, 2011 WL 3841828, at *7 (D. Mont. July 8, 2011) (ruling that county attorney was entitled to prosecutorial immunity in defense against claim under 18 U.S.C. § 2520 for acts taken in association with plaintiff's prosecution).

Similarly, Kansas law provides that the actions within the scope of authority as county attorney are absolutely immune from a lawsuit under Kansas law. *See Sampson v. Rumsey*, 1 Kan. App. 2d 191, 197, 563 P.2d 506 (1977). As in under federal law, prosecutors in Kansas have absolute prosecutorial immunity if the prosecutor's actions are "intimately associated with the judicial phase of the criminal process." *McCormick v. Board of Shawnee County Comm'rs*, 272 Kan. 627, 634, 35 P.3d 815 (2001). Such actions include the filing of a criminal complaint or information, presenting the State's case, and performing traditional functions of an advocate. *Id.* at 634-36.

The uncontroverted historical and procedural facts confirm that Opat was acting as an advocate for the State of Kansas when he applied for the wiretap order at issue in this case. He applied to the

court for each of the wiretap orders and personally presented the application and Virden's affidavit to the judge each time in his capacity as County Attorney. SOF 5-7. In addition, Opat filed a criminal complaint against Banks in Geary County District Court and obtained dismissal when Banks was indicted in federal court. SOF 20-23. Opat took no part in the investigation. SOF 14. All of Opat's actions were undertaken in his role as a prosecutor. SOF 19. Judge Crow, in dismissing a nearly identical lawsuit filed by co-conspirator Johnny Ivory, concluded: "Defendant Opat's actions at the probable cause hearing on the wiretap application in plaintiff's case are plainly analogous to a prosecutor's actions at a probable cause hearing on a search warrant, and Opat's presentation of the application was clearly related to the judicial phase of the criminal process. The court concludes that defendant Opat's acts upon which the complaint is based are protected by absolute immunity." *Ivory v. Platt*, No. 15-3051, 2016 WL 5916647, at *11 (D. Kan. Oct. 11, 2016). Opat's actions in Banks' prosecution were identical to his actions in Ivory's prosecution. Thus, Opat is entitled to absolute immunity to both claims under state and federal law.

> **B.    In the alternative, Opat is at least entitled to qualified immunity because he did not violate Banks' rights or any law that was clearly established at the time.**

Even if the Court determines that Opat's role was less than completely prosecutorial, he is at least entitled to qualified immunity. First of all, Opat did not violate federal or state wiretap laws because his actions were statutorily authorized. Even so, the actions alleged against Opat in the Amended Complaint did not violate any law that was clearly established at the time.

In Banks' first lawsuit against Opat, the district court and the Tenth Circuit observed that a prosecuting attorney may be "at the very least entitled to qualified immunity for his role in Mr. Banks's state prosecution" unless the plaintiff alleges facts showing that the prosecutor "violated a clearly established constitutional right." *Banks v. Geary County District Court*, 645 F. App'x 713, 718 (10th Cir. 2016). A prosecutor is entitled only to qualified immunity when he "functions as an administrator rather than as an officer of the court." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

- 11 -

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). That means that "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

The Tenth Circuit has acknowledged the availability of the qualified immunity defense for an alleged violation of the federal wiretap statutes. *See Phillips v. Bell*, 365 F. App'x 133, 143 (10th Cir. 2010). At least one district court in the circuit recently has granted summary judgment based on qualified immunity against a claim alleging violation of the Federal Wiretap Act. *See Stewart v. City of Oklahoma City*, No. 18-420, 2020 WL 4352503, at *3-4 (W.D. Okla. July 29, 2020) (citing *Phillips* as "indicating that qualified immunity is available as a defense under the FWA"); *see also Babb*, 614 F. Supp. 2d at 1237-38 ("In addition, there is authority holding that qualified immunity extended to government actors is a defense to Title III liability."). Other circuits have agreed that a defendant may raise a qualified immunity defense to alleged violations of the federal wiretap act. *See, e.g., John K. MacIver Inst. for Pub. Policy, Inc. v. Schmitz*, 885 F.3d 1004, 1015 (7th Cir. 2018); *Tapley v. Collins*, 211 F.3d 1210, 1216 (11th Cir. 2001); *Blake v. Wright*, 179 F.3d 1003, 1012-13 (6th Cir. 1999).

Also relevant are exceptions to the wiretap statutes for law enforcement under Kansas and federal wiretap laws. Both statutes define an "investigative or law enforcement officer" to include "any attorney authorized by law to prosecute or participate in the prosecution" of certain criminal offenses, including drug trafficking. 18 U.S.C. § 2510(7); K.S.A 22-2514(5); K.S.A. 22-2515(a)(11). "Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived

therefrom, may use such contents to the extent such use is appropriate to the proper performance of his official duties." 18 U.S.C. § 2517(2); K.S.A. 22-2515(c) (same). Similarly, a prosecuting attorney "may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure." 18 U.S.C. § 2517(1); K.S.A. 22-2515(b).

Here, Opat was authorized to apply to a judge for a wiretap order. *See* K.S.A. 22-2515(a)(11) (allowing county attorney to make application to any judge of competent jurisdiction for a wiretap order to produce evidence of trafficking of controlled substances). SOF 5. He was authorized to use Banks' communications in the proper performance of his official duties as a prosecutor. 18 U.S.C. § 2517(2). SOF 17. Opat did not violate any of Banks' statutory rights under state and federal wiretap laws. He did not participate in the interception of Banks' communications. SOF 15. To the extent that the Amended Complaint alleges that Opat used the communications to prosecute Banks or disclosed the contents of the communications, both actions are authorized by the law enforcement exceptions. 18 U.S.C. § 2517(1); K.S.A. 22-2515(b). Thus, Opat did not engage in unauthorized conduct and may not be held civilly liable under the law enforcement exception present in the text of federal and state laws. *See Ivory v. Platt*, No. 15-3051, 2016 WL 5916647, at *13-14 (D. Kan. Oct. 11, 2016) (dismissing identical state and federal wiretap claims against Opat for multiple reasons, including the law enforcement exception).

Thus, the record does not support a claim that Opat violated any of Banks' statutory rights. Even so, Opat is entitled to qualified immunity because Banks cannot show that the alleged right to be free from the conduct Opat is alleged to have undertaken was clearly established. Specifically, Banks cannot show that the law was clearly established that a county attorney protected by the law enforcement exception violates the wiretap statutes by using contents of intercepted communications obtained through a wiretap order that is subsequently found to be partially invalid to file drug trafficking charges in state court but soon after obtains dismissal of those charges in favor of federal prosecution.

- 13 -

**C.    In the alternative, Opat's good-faith reliance on Judge Platt's court orders is a complete defense under state and federal wiretap statutes.**

This Court's original basis for dismissal of these claims is still valid. ECF No. 109 at 6-8. As this Court previously determined, Opat's good-faith reliance on a court order is a complete defense to Banks' wiretap claims under state and federal law. *See* K.S.A. 22-2518(2) ("A good faith reliance by any person on a court order authorizing the interception of any wire, oral or electronic communication shall constitute a complete defense in any civil or criminal action brought against such person based upon such interception."); 18 U.S.C. § 2520(d)(1) ("A good faith reliance on … a court warrant or order … is a complete defense against any civil or criminal action brought under this chapter or any other law.").

This Court expressly found that the record establishes that Banks' claims are barred by the good-faith defense. ECF No. 109 at 7. This Court agreed that "Judge Crabtree's reasoning in the underlying criminal case is equally applicable" to this civil case. ECF No. 109 at 8. In ruling on motions to suppress extra-territorial communications in Banks' criminal case, Judge Crabtree noted that "one would not expect the officers executing search warrants to have apprehended the subtle, technical jurisdictional defect that forms the basis of the Court's threshold suppression ruling." *United States v. Banks*, No. 13-40060, 2015 WL 2401048, at *3 (D. Kan. May 15, 2015), *vacated by* 138 S. Ct. 2707 (2018). In concluding that Banks' Amended Complaint fails to state a claim, this Court determined that the individual defendants, including Opat, did not violate state and federal wiretap statutes because their "good faith reliance provides a complete defense to Plaintiff's wiretap claims." ECF No. 109 at 8.

The Tenth Circuit's remand of this issue does not undermine this Court's previous ruling. The Tenth Circuit held only that issue preclusion was not available as a defense in this case because Judge Crabtree did not expressly rule that the good-faith defense applied in the criminal case. *Banks v. Opat*, 814 F. App'x 325, 333 (10th Cir. 2020) ("Because the court made only an observation about good faith but not a finding, Mr. Banks is not collaterally estopped from litigating the issue of good faith regarding his wiretap claims alleging the interception of extra-territorial communications.").

- 14 -

Notably, Opat did not argue for issue preclusion either before this Court or in the Tenth Circuit. On remand, Opat asks this Court to make its own independent finding based on the uncontroverted facts in this case that the state and federal wiretap claims against Opat are barred by the statutory good-faith defense. Specifically, Opat was not aware of the technical jurisdictional defect in the wiretap orders until the issue was raised in motions to suppress.[2] SOF 30. Opat did not consider the possibility of a jurisdictional issue when he applied for the wiretap orders, in part because the larger geographic scope of the investigation was not anticipated at the time it was initiated. SOF 2, 12, 31. Thus, Opat had no reason to question the authority of Judge Platt to enter the wiretap orders as issued, and he reasonably relied on them. For these reasons, Opat is entitled to summary judgment based on his good-faith reliance on a court order, which is a complete defense under state and federal law. *See* K.S.A. 22-2518(2); 18 U.S.C. § 2520(d)(1).

> ### D. In the alternative, the doctrine of claim preclusion bars Banks' claims because he could have and should have asserted them in a prior lawsuit against Opat.

A fundamental rule of civil litigation is that litigants are expected to assert all claims they may have against a defendant in one lawsuit or be barred from asserting them in a subsequent case. *See MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). A "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Banks' claims are barred by claim preclusion because Banks filed a separate civil action against Opat in October 2014 but did not include the claims now made in this lawsuit even though by then he was aware of the conduct alleged in his complaint. *See Banks v. Geary County District Court*, 645 F. App'x 713, 715 (10th Cir. 2016). In his Amended Complaint, Banks admits that he was aware that his phone

---

[2] Under certain circumstances for applications made in federal court, federal wiretap law allows for interception of communications outside the judge's territorial jurisdiction but within the United States, as was reflected in the sample order obtained from the United States Attorney's Office. 18 U.S.C. § 2518(3); SOF 4, 7. For applications made in state court, Kansas wiretap law limits interceptions to within the territorial jurisdiction of the issuing judge. K.S.A. 22-2516(3).

was tapped by June 2013 and knew within months that the wiretap order was defective. ECF No. 74 at 4. But he did not file this lawsuit until April 2015. ECF No. 1. In August 2015, Banks moved to consolidate his first-filed case, No. 14-3199, with this case. ECF No. 5. His motion was denied as moot when Case No. 14-3199 was dismissed. *Banks v. Geary County District Court*, No. 14-3199-SAC, 2015 WL 12864252 (D. Kan. Nov. 24, 2015); ECF No. 8.

The Tenth Circuit acknowledged Opat's claim preclusion argument but declined to address it, questioning whether claim preclusion should apply to this procedural circumstance where Banks moved to consolidate the two cases. *Banks v. Opat*, 814 F. App'x 325, 334 n.12 (10th Cir. 2020). But the Tenth Circuit has held that a district court's denial of a motion to consolidate does not negate an otherwise valid defense of claim preclusion. *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1334 (10th Cir. 1988) (affirming dismissal based on claim preclusion of successive actions in federal court). A second lawsuit is not immunized from claim preclusion by a district court's order denying a motion to consolidate. *Yapp v. Excel Corp.*, 186 F.3d 1222, 1228 (10th Cir. 1999) (affirming dismissal based on claim preclusion of wrongful discharge suit after settlement of FLSA suit). Because these claims could have and should have been brought in Case No 14-3199 in October 2014—which was more than a year after Banks became aware of the defective wiretap order but six months before he filed this case—they may not be brought in this case because they are barred by claim preclusion.

> **E.** **In the alternative, *Heck v. Humphrey* bars Banks' claims because his claim for actual damages necessarily calls into question the validity of his conviction.**

By claiming actual damages of between $1 million and $2 million, Banks reverses his position from his prior briefing when he sought to avoid dismissal. SOF 34; ECF No. 93 at 1 (acknowledging that "plaintiff may not receive relief under habeas for the illegal interceptions which were not in his criminal trial"). As a result of Banks' change of course, Opat renews his argument that *Heck v. Humphrey*, 512 U.S. 477 (1994), precludes Banks' claims.

In *Heck*, the Supreme Court held that a prisoner whose claim would call into question the validity of an underlying conviction "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. Although *Heck* involved a Section 1983 plaintiff, a complaint is barred by *Heck* regardless of the statutory basis alleged, if success in the suit would challenge the validity of a conviction that has not been previously invalided. *See Erlin v. United States*, 364 F.3d 1127, 1131 (9th Cir. 2004); *Apampa v. Layng*, 157 F.3d 1103, 1105 (7th Cir. 1998) (noting that *Heck* bar is fully applicable to federal wiretap claims).

Here, Banks alleges more than $1 million in actual damages, presumably because of his incarceration. Thus, he necessarily questions the validity of his underlying conviction, which he cannot do under *Heck* because Judge Crabtree upheld Banks' conviction in 2019. *United States v. Banks*, No. 13-40060-DDC, 2019 WL 3412305 (D. Kan. July 29, 2019). In a nearly identical lawsuit filed by co-conspirator Ivory, Judge Crow concluded that *Heck* barred the wiretap claims because "Plaintiff simply may not litigate any claim in this civil rights complaint for damages that would undermine or invalidate his federal criminal convictions." *Ivory v. Platt*, No. 15-3051-SAC, 2016 WL 5916647, at *14 (D. Kan. Oct. 11, 2016); *see also Chapman v. Lawson*, 89 F. Supp. 3d 959, 966 (S.D. Ohio 2015) (concluding that federal wiretap claims "necessarily call into question the validity of [plaintiff's] conviction and are barred by *Heck*); *Stegeman v. Rensselaer County Sheriff's Office*, No. 15-CV-21, 2017 WL 4350519, at *1 (N.D.N.Y. Aug. 23, 2017) (upholding dismissal of federal wiretap claim as barred by *Heck*). Thus, *Heck* bars these claims because Banks' alleged actual damages would undermine his convictions.

F.   **Banks' alleged damages under federal law should be limited because this suit was filed more than two years after most of the interceptions.**

Under the Electronic Communications Privacy Act, a civil action "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). Here, Banks filed this lawsuit on April 28, 2015. ECF No. 1. As a result,

- 17 -

the Court should find as a matter of law that Banks' damages under the ECPA are limited to those incurred after April 28, 2013. There were two wiretap orders authorizing interception of Banks' communications. The first was issued March 5, 2013, and it expired April 4, 2013. *United States v. Banks*, No. 13-40060-DDC, 2014 WL 4261344, at *1 (D. Kan. Aug. 29, 2014); SOF 8. Any damages resulting from this order are outside the statute of limitations and should be disregarded. The second order was issued April 12, 2013, and it expired May 12, 2013. *Id.*; SOF 8. As a matter of law, any damages resulting from this order should be limited to those incurred in the 15 days from April 28 to May 12, 2013.

## III.   CONCLUSION

Opat is entitled to summary judgment on both remaining claims based on absolute immunity because his alleged actions were taken as an advocate of the State of Kansas in his prosecutorial capacity. Alternatively, Opat is entitled to summary judgment for any of the legal theories argued above.

Respectfully submitted,

FOULSTON SIEFKIN LLP

By: */s/ Eric Turner*
      Eric Turner, #25065
9225 Indian Creek Parkway, Suite 600
Overland Park, KS 66210
Telephone: (913) 498-2100
Facsimile: (866) 347-9614
Email:  eturner@foulston.com

ATTORNEY FOR DEFENDANT
STEVEN OPAT

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on September 18, 2020, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all counsel currently electronically registered with the Court.


                                     /s/ *Eric Turner*
                                     ATTORNEY FOR DEFENDANT
                                     STEVEN OPAT



**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

Albert D. Banks,

                Plaintiff,

v.

Steven L. Opat, *et al.*,

                Defendants.

Case No. 15-cv-03093

## <u>DECLARATION OF GLEN VIRDEN</u>

I, Glen Virden, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am an employee of the State of Kansas with the Kansas Bureau of Investigation ("KBI"). I am an "investigative" law enforcement officer duly deputized with the statutory authority for the State of Kansas, and as further recognized and defined by K.S.A. § 22-2514(5). I am currently the Special Agent in Charge for the KBI's West Region Special Operations Division, which encompasses 46 counties on the west side of Kansas. I have been a Special Agent in the Special Operations Division of the KBI since October of 2001. I have a Bachelor of Science in Criminal Justice from Southwestern College, Winfield, Kansas. I am a graduate of the Kansas Law Enforcement Training Center. I have attended numerous seminars and law enforcement education courses while with the KBI. For example, I am a 2017 graduate of Federal Bureau of Investigation National Academy.

2.      I make this Declaration from my personal knowledge.

3.      I am a United States citizen, over 18 years of age, and a resident of the State of Kansas.

4.      Service of the Amended Complaint and summons was made on me by mail received on March 9, 2018. This is the only service of a complaint or summon that I received pertaining to this litigation.

5.      I am an "investigative or law enforcement officer" as that phrase is defined in K.S.A. § 22-2514(5) and 18 U.S.C. § 2510(7).

6.      For approximately thirteen months, starting in or about February 2012, an investigation was jointly conducted by the KBI, the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department, into a narcotics-trafficking conspiracy ("Narcotics-Trafficking investigation").

7.      I was the case agent for the KBI, *i.e.*, the lead law enforcement officer for the KBI, related to the Narcotics-Trafficking investigation.

8.      During the course of the Narcotics-Trafficking investigation, communications from and to seven cellular phones were intercepted for different lengths of time pursuant to orders authorizing the interceptions issued by the Eighth Judicial District, Kansas, District Court Judge David Platt ("Judge Platt"). A list of the affidavits provided in support of applications for these orders and the corresponding orders is attached as Exhibit 1. Redacted copies of the affidavits

and of the orders [in some instances added names and signatures on some orders as explained below] are also attached as Exhibits 2-17.

9.     In or around March and April 2013, Eighth Judicial District, Kansas, District Court Judge David Platt ("Judge Platt") entered orders authorizing the interception of Albert D. Banks' (and his suspected co-conspirators') oral, wire and/or electronic communications regarding 785-375-6704, with service provided by Sprint/Nextel Wireless. A copy of the initial order, dated March 5, 2013, is attached as Exhibit 3.

10.     I I had informed the Geary County Attorney Steven L. Opat ("Prosecutor Opat") about the Narcotics-Trafficking investigation. Prior to March 5, 2013, I, my fellow investigators in Narcotics-Trafficking investigation, and Prosecutor Opat collectively agreed that interception of Albert D. Banks and others' cellular communications was needed and appropriate as part of the investigation.

11.     Before March 5, 2013, the Narcotics-Trafficking investigation focused on trafficking of crack cocaine in Geary County, Kansas. Its investigators had discovered evidence of crack cocaine sales by Albert D. Banks in Junction City, Geary County, Kansas, which were arranged through communications on phones owned or used by Albert D. Banks.

12.     At that time, I anticipated that any criminal charges against the suspects, including Albert Banks and Anthony Thompson, in the Narcotics-

Trafficking investigation would be filed and prosecuted in the Eighth Judicial District, District Court in Geary County.

13.    I prepared and signed affidavits in order for Prosecutor Opat to request Judge Platt enter the orders referenced in paragraph 8.

14.    I did not prepare any of the orders referenced in paragraph 8, or any draft of the orders. I believe that Prosecutor Opat prepared the orders for Judge Platt's approvals and signatures.

15.    I was present when application for the initial order was made to Judge Platt on March 5, 2013. I was prepared to provide testimony required by K.S.A. § 22-2516. As part of the application for the order, Judge Platt was told whose phones would be "wiretapped" and why; how the proposed wiretaps would take place; where intercepted communications would be received and monitored, *i.e.*, the listening post was in Topeka, Kansas; and where the electronic records of the intercepted communications would be kept until their delivery to the Eighth Judicial District, District Court.

16.    The draft order submitted to Judge Platt contemplated interception of communications outside of the Eighth Judicial District. The order Judge Platt entered on March 5, 2013 provided, in part: "IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in another jurisdiction within the United States."

17.    Beginning March 7, 2013, law enforcement officers from the KBI, the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department took turns monitoring and collecting data about call and texts generally in real time. I personally monitored and collected some intercepted communications. I also reviewed copies of some intercepted communications attached to investigative reports prepared by other law enforcement officers.

18.    Pursuant to Judge Platt's March 5, 2013 order, progress reports were made to the judge by an attorney with Geary County Attorney's Office and KBI Special Agent Amanda Young on or about the tenth, twentieth and thirtieth day after March 5, 2013 showing the progress made toward achievement of the objectives authorized by the order and the need for continued interception.

19.    Upon Prosecutor Opat's additional application, on April 12, 2013, Judge Platt issued an order authorizing the interception of Albert D. Banks' (and his suspected co-conspirators') oral, wire and/or electronic communications from an additional phone number, 785-717-9771, with service provided by Virgin Mobile/Sprint PCS. A copy of the April 12 order is attached as Exhibit 15.

20.    To my best memory, I was present when applications for the April orders were made to Judge Platt. I was prepared to provide testimony required by K.S.A. § 22-2516. As with the initial order, as part of the application for the order, Judge Platt was told or was aware from the prior application or progress

reports concerning his March order, regarding whose phones would be "wiretapped" and why; how the proposed wiretaps would take place; where intercepted communication would be received and monitored, *i.e.*, the listening post was in Topeka, Kansas; and where the electronic records of the intercepted communications would be kept until their delivery to the Eighth Judicial District, District Court.

21.    Like with the March 2013 order, the April 2013 order provided, in part: "IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in another jurisdiction within the United States."

22.    The last intercepted communication under the two orders listed above, Exhibits 3 and 15, was on or about May 10, 2013.

23.    As directed by each of the three orders, monitoring of communications was to be conducted to minimize the interception and disclosure of communication intercepted to those relevant to the Narcotics-Trafficking investigation. For example, monitoring of a communication had to be terminated immediately at the time it was determined that the communication was unrelated to the subject to the interception under the applicable federal and state statutes.

24.    To document that officers monitoring communications knew the terms of the March 2013 order, including its minimization requirements, the officers were required to sign and date a copy of the order. On March 6, 2013, I

added my name and signature to a copy of the order that Judge Platt had issued

the day before on March 5, 2013. I have seen a document filed by Albert D. Banks

on August 13, 2015 in this lawsuit, doc. 6-3. That document is a copy of the Judge

Platt's order that I signed on March 6, 2013, on page 14 of doc. 4-3, for the

reasons stated.

25.    I did not question the authority of Judge Platt to enter March and

April orders. I did not question the judge's authority to order interception of

communications outside of the Eighth Judicial District.

26.    To my knowledge none of the 60 plus officers from the KBI, Junction

City Police Department, Geary County Sheriff's Office, or Riley County Police

Department, who were involved in the Narcotics-Trafficking investigation and

the interception and monitoring of communications of the involved seven cellular

phones, ever raised an issue about Judge Platt's authority to issue the intercept

orders.

27.    I did not understand or believe that either the March or April orders

or parts of those orders were invalid from the face of the orders. Nothing in the

language of the orders confined the authorized interception of oral, wire and/or

electronic communications to those initiated or intercepted within the Eighth

Judicial District.

28.    Although not making a conscious evaluation at the time, I believed

that Judge Platt was the proper judge, who had the authority to issue the March

and April orders, because:

    a. Prosecutor Opat made applications to Judge Platt and Judge Platt entered the orders, both knowing how the subject communications would be intercepted;

    b. The underlying criminal activity at issue in the Narcotics-Trafficking investigation was in Geary County;

    c. The cellular phones, which were the subject of the interception orders, were used in Geary County.

    d. Anthony Thompson came into Geary County and engaged in the underlying criminal activity, and I expected this would continue.

29.    My best memory is that I was not aware of the Kansas Court of Appeals decision in *State v. Adams*, 2 Kan.App.2d 135, 576 P.2d 242 (Kan. App. 1978) until after any role I had with the interception and disclosure of Albert D. Banks' wire or electronic communications was complete. However, even if the *Adams* decision had been brought to my attention before the applications for the March and April 2013 orders, I still would not have disputed Judge Platt's authority. I would have assumed that *Adams* did not apply, that *Adams* was no longer good law or that the statutes interpreted in *Adams* had been amended.

30.    In short, I was unaware that Judge Platt lacked jurisdiction to order wiretaps of cellular communications made and monitored outside of the Eighth Judicial District, where under the circumstances (a) the criminal activity, which

supported the need for the wiretaps, and (b) some of the communications expected to be intercepted had been and would take place within the geographic confines of Judge Platt's Judicial District.

31.     I executed Judge Platt's orders believing that they were fully and properly in issued and enforceable.

32.     During the course of the Narcotics-Trafficking investigation, the decision was made to refer the "main players" to the Office of the United States Attorney for the District of Kansas to prosecute for violations of federal laws. This was mostly because of the complexity of the prosecution.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July __6__, 2020.

_____
Glen Virden



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ALBERT DEWAYNE BANKS,      )
                                    )
              Plaintiff,      )      Case No. 15-3093-HLT-GEB
                                      )
v.                                   )
                                      )
STEVEN L. OPAT, et al.,         )
                                      )
            Defendants.     )
                                      )
&amp;                                   )
                                      )
ANTHONY THOMPSON,        )
                                      )
              Plaintiff,      )
                                      )
v.                                   )      Case No. 15-3117-HLT-GEB
                                      )
DAVID L. PLATT, et al.,        )
                                      )
            Defendants.     )

## <u>DECLARATION OF STEVEN OPAT</u>

I, Steven Opat, pursuant to <u>28 U.S.C. § 1746</u>, declare as follows:

1. I am the County Counselor of Geary County, Kansas.

2. At all times described in the Amended Complaint, I was the County Attorney for Geary County, Kansas.

3. I was the County Attorney from December 1979 to January 1989 and again from June 2003 to January 2017.

4. I make this Declaration from my personal knowledge.

5. I am a United States citizen, over 18 years of age, and a resident of the State of Kansas.

6. Starting in 2012, an investigation into a narcotics-trafficking conspiracy was jointly conducted by members of a drug task force that included officers from the Kansas Bureau of Investigation, the Junction City Police Department, the Geary County Sheriff's Office,

and the Riley County Police Department. The investigation focused on trafficking of crack cocaine in Geary County, Kansas.

7. Glen Virden, a Kansas Bureau of Investigation special agent in charge of the investigation, informed me about the investigation. We agreed that interception of Albert Banks' and others' cellular communications was necessary and appropriate as part of the investigation.

8. As the County Attorney, I was authorized to make an application to a judge of the Geary County District Court for an order authorizing the interception of communications by a law enforcement agency responsible for the investigation of crimes involving controlled substances. K.S.A. 22-2515(a)(11).

9. Because there had been a substantial period of time since I had last prepared an application for a wiretap order, I consulted the United States Attorney's Office for guidance and samples.

10. I prepared and signed applications requesting that Geary County District Court Judge David Platt enter orders authorizing the interception of wire communications by the Kansas Bureau of Investigation and its designees.

11. Virden and other law enforcement officers provided affidavits in support of each application. I reviewed each affidavit as part of my decision that each application was appropriate and supported by evidence.

12. I personally presented each of the applications to Judge Platt.

13. Based on a sample obtained from the United States Attorney's Office, I prepared and submitted a proposed order authorizing the interception of wire communications to Judge Platt with each application.

14. Judge Platt signed each order.

15. I recall attending a meeting about the investigation. While at the meeting, I added my name and signature to a list of names and signatures of several law enforcement officers and other prosecutors who attended the meeting.

16. I have seen a document filed by Albert Banks in this lawsuit. That document is a copy of Judge Platt's order that I signed and dated March 6, 2013.

17. I did not anticipate a jurisdictional issue regarding the wiretap order, in part because the scope of the investigation was not anticipated at the time it was initiated.

18. I had no role in the investigation.

19. I did not intercept any of Albert Banks' communications.

20. I did not listen to any of Albert Banks' calls or view any of his text messages.

21. I did not use any of Albert Banks' communications for any unlawful purpose. I was authorized to use the contents of Banks' communications included in Virden's affidavits as part of the judicial process of applying for wiretap orders. K.S.A. 22-2515(b)(c).

22. I did not disclose any of Albert Banks' communications to anyone other than Judge Platt.

23. All of my actions in the criminal case were undertaken in my role as a prosecutor.

24. At that time, I anticipated that any criminal charges against Banks and other suspects that resulted from the investigation would be filed and prosecuted in Geary County District Court in the Eighth Judicial District of Kansas.

25. In fact, Banks was initially arrested on state charges on May 8, 2013, and placed in the Geary County Jail. He was charged with drug-trafficking offenses in Geary County District Court.

26. During the course of the investigation, the decision was made to refer Banks to the Office of the United States Attorney for the District of Kansas to prosecute for violations of federal laws, including conspiracy, an offense more appropriate for federal court.

27. Based on this decision, I moved to dismiss the state-court charges. The state-court charges against Banks were dismissed without prejudice.

28. I was not aware of the technical jurisdictional defect in the wiretap orders until Banks and others raised the issue in motions to suppress, which resulted in the suppression of those interceptions as evidence against Banks.

29. The application and orders I prepared for submission to Judge Platt were based in part upon my review of the documents I had received and used in preparing the application, and I did not consider a technical jurisdictional issue at the time.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September *17th*, 2020

Steven Opat

- 4 -



EXHIBIT
C

*BANK 3*

Page: 85    Date Filed: 07/10/2023    Document: 010110884675    Appellate Case: 23-3102

IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

IN THE MATTER OF THE APPLICATION )
OF THE STATE OF KANSAS )          CASE NO.
FOR AN ORDER AUTHORIZING THE )
INTERCEPTION OF WIRE )            UNDER SEAL
COMMUNICATIONS TO AND FROM )
SPRINT/NEXTEL WIRELESS TELEPHONE: )
785-375-6704 )
BEARING MOBILE STATION IDENTIFICATION # )
(MSID) 00007856601961 AND ELECTRONIC SERIAL )
# (ESN) 268435459909788757 )

## ORDER AUTHORIZING THE INTERCEPTION
## OF WIRE COMMUNICATIONS

Application under oath having been made before me by Steven L. Opat, Geary County Attorney,

based on the sworn affidavit of Glen F. Virden, Senior Special Agent, Kansas Bureau of

Investigations, an investigative or law enforcement officer of the State of Kansas within the meaning

of Section 5 of K.S.A. 22-2514, *et seq*, for an Order authorizing the interception of wire

communications pursuant to K.S.A. 22-2514, *et seq*, and full consideration having been given to the

matter set forth therein, the Court finds:

A.      there is probable cause to believe that Albert DeWayne Banks, DOB ▮▮▮▮ and Anthony

Carlyle Thompson, DOB ▮▮▮▮, and others named in the affidavit of the said Glen F.

Virden, and others yet unknown (hereinafter "Target Subjects"), have committed, and are

committing, and will continue to commit offenses enumerated in Article 57 of K.S.A. 21-

5701 *et seq*, specifically possession of controlled substances with intent to distribute, and

distribution of controlled substances, in violation of K.S.A. 21-5701 *et seq*, specifically 21-

Appellate Case: 23-3102      Document: 010110884675      Date Filed: 07/10/2023      Page: 86

5705 and 5706; unlawful use of a communication facility to commit and facilitate the commission of drug trafficking offenses, in violation of K.S.A. 21-5707; attempts, conspiracies or solicitations to possess with intent to distribute or to distribute controlled substances, in violation of K.S.A. 21-5701 *et seq*, and K.S.A. 21-5301 and 21-5302 and 21-5304; unlawful acts involving proceeds derived from violations of K.S.A. 21-5701-5717. (Hereinafter the "Target Offenses");

B.   there is probable cause to believe that particular wire communications of the said Albert DeWayne Banks and the said Anthony Carlyle Thompson and others yet unknown (hereinafter "Target Interceptees"), concerning the above-described Target Offenses will be obtained through the interception for which authorization has herewith been applied. In particular, there is probable cause to believe that the interception of wire communications to and from the cellular telephone with the assigned telephone number 785-375-6704, bearing MSID 00007856601961 and ESN 268435459909788757 with service provided by Sprint/Nextel Wireless which is a subscribed prepaid account but with no subscriber name attached, although it is clear that the principal user is and has been identified as Albert DeWayne Banks, will further disclose, detail and reveal the specifics of the above offenses, including the depth of the conspiracy and the manner and means of how and with whom these offenses are being committed, including the unknown sources from which the distribution by Albert DeWayne Banks, Anthony Carlyle Thompson, and others is made possible;

C.   it has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ; and

D.   there is probable cause to believe that 785-375-6704 has been and will continue to be used

D000693

**EXHIBIT C 002**

Appellate Case: 23-3102      Document: 010110884675      Date Filed: 07/10/2023      Page: 87

in connection with commission of the above-described offenses.

WHEREFORE, IT IS HEREBY ORDERED that Special Agents of the Kansas Bureau of Investigation, and other agencies acting under the supervision of the KBI, are authorized, pursuant to an application as authorized by K.S.A. 22-2515, made by Steven L. Opat, the duly elected and authorized County Attorney for Geary County, State of Kansas,  to intercept wire communications to and from the above-described telephone.

PROVIDED that such interception(s) shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but may continue until all communications are intercepted which reveal fully the manner in which the above-named persons and others as yet unknown are committing the offenses described herein, and which reveal fully the identities of their confederates, their places of operation, and the nature of the conspiracy involved therein, or for a period of thirty (30) days measured from the day on which investigative or law enforcement officers first begin to conduct an interception under this order or ten (10) days after this order is entered, whichever is earlier.

1T IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States.

IT 1S ORDERED FURTHER that the authorization given is intended to apply not only to the target telephone number listed above, but also to any other telephone number or telephone accessed through the above-referenced MSID number, and to any other MSID number accessed through the target telephone number referenced above, within the thirty (30) day period. The authorization is also intended to apply to the target telephone number referenced above regardless

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 88

of service provider, and to background conversations intercepted in the vicinity of the target telephone while the telephone is off the hook or otherwise in use.

IT IS ORDERED FURTHER that, based upon the request of the Applicant pursuant to K.S.A. 22-2514, and the definitions set forth therein, and K.S.A. 22-2515 and 2516, Sprint / Nextel, an electronic communication service provider as defined in Section 2510(15) of Title 18, United States Code and K.S.A. 22-2514, shall furnish the KBI and/or it's agents or designees with all information, facilities and technical assistance necessary to accomplish the interceptions unobtrusively and with a minimum of interference with the services that such provider is according the persons whose communications are to be intercepted, with the service provider to be compensated by the KBI for reasonable expenses incurred in providing such facilities or assistance.

IT IS ORDERED FURTHER that, to avoid prejudice to the government's criminal investigation, the provider of the electronic communications service and its agents and employees are Ordered Not To Disclose or Cause Disclosure of the Order or the request for information, facilities and assistance by the KBI or the existence of the investigation to any person other than those of its agents and employees who require this information to accomplish the services hereby ordered. In particular, said provider and its agents and employees shall not make such disclosure to a lessee, telephone subscriber or any interceptee or participant in the intercepted communications.

IT IS ORDERED FURTHER that this Order shall be binding on any subsequent provider of electronic communications services as defined in Title 18, United States Code, Section 2510(15) and K.S.A. 22-2514 *et seq*, that provides services to the target telephone number(s) listed above upon service of a certified copy of this Order without any further court order being required.

IT IS ORDERED FURTHER that this order shall be executed as soon as practicable and that all monitoring of wire communications shall be conducted in such a way as to minimize the

Appellate Case: 23-3102    Document: 010110884675    Date Filed: 07/10/2023    Page: 89

interception and disclosure of the communications intercepted to those communications relevant to the pending investigation. The interception of wire communications must terminate upon the attainment of the authorized objectives, not to exceed thirty (30) days measured from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception of this order or ten (10) days after he order is entered.

Monitoring of conversations must terminate immediately when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119, Title 18, United States Code and K.S.A. 22-2514 *et seq.*. Interception must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named Target Interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent shall spot check to insure that the conversation has not turned to criminal matters.

IT IS ORDERED FURTHER that, pursuant to Section 2518(5), Title 18, United States Code and K.S.A. 22-2514 *et seq*, in the event intercepted communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

IT IS ORDERED FURTHER that Steven L. Opat, Geary County Attorney and/or Antonio Cruz Assistant Geary County Attorney shall provide this Court with a report on or about the tenth, twentieth, and thirtieth days following the date of this Order showing what progress has been made toward achievement of the authorized objectives and the need for continued interception. If any of the above-ordered reports should become due on a weekend or holiday, IT IS ORDERED

FURTHER that such report shall become due on the next business day thereafter.

IT IS ORDERED FURTHER that this Order, the application, affidavit and proposed order, and all interim reports filed with this Court with regard to this matter, shall be sealed until further order of this Court, except that copies of the order, in full or redacted form, may be served on the KBI and the service provider as necessary to effectuate this order.

DONE and ORDERED this ___5___ day of ___March___, 20_13_, at in Junction City, Kansas.

HONORABLE David R. Platt
District Judge

| Print Name / Agency | Sign | Date |
|---|---|---|
| _an Shelden – KBI | Ivan Shelden | 3-6-13 |
| _cott Ferris – KBI | Scott Ferris | 3/6/13 |
| Steve Bundy – KBI | Steve Bundy | 3/6/13 |
| Tim Leakey KBI | Tim Leakey | 3/06/13 |
| Amanda Young KBI | Amanda Young | 3/06/3 |
| NOAL CAMPOS KBI | | 3/06/13 |
| Chris Turner KBI | | 3/6/13 |
| MATTHEW LYN KBI | Matthew Lynn | 03.06.2013 |
| Rod Page KBI | Rod Page | 03-06-2013 |
| ED BARTKOSK KBI | ED BARTKOSK | 03-06-2013 |
| Brad Ingalls RCPD | By W. ... | 03/06/2013 |
| Shawn Stratton RCPD | | 3/6/2013 |

D000699

**EXHIBIT C 006**

Luke Brewell   RCPD

John M. Doehlig          Jud Doehl.          3-6-13          3/6/13

Brad Schorn             B Schn

Dan Breci               Danny / Breu         3-6-13

Tony Cruz GECA          Tony Cy             3-6-13
                                            3/6/13

Jeff Childs             Jeffrey E. Chet      3-6-13

Kurt Moldrup            ~                    3-6-13

Julia Goggins           Julia Bo             3-6-13

Jessie Beck             ~

Emmett Smith                                 3-06-13

Robert Duerkes                               3/6/2013

BRIAN JOHNSON   RCPD                         03-06-2013
                                             03/06/13

Rick Deutsch            R                    -3/6/13

Brek C. Jager           BREK C. JAGER        03/06/13

Mark French RCPD        Mark French          03/06/13

Dustin J. Weisebrod RCPD                     3/6/13

Michael Parr                                 3/6/13

Sherri Moore KBI        Sherri Moore         3/6/13

Robert Ceres KBI                             3/6/13

DAVE BREED KBI          3 Breed              3/6/13

Nate Boeckman                                3/6/13

Bill White              Wy White             3/6/13

Andrew Beggtm                                3 6-13

Ryan Boyer KBI          Ryan Boya            3-6-13

_____ Kaler     KBI                          3-16-13

D000698
**EXHIBIT C 007**

| PRINT NAME/AGENCY | SIGN | DATE |
|---|---|---|
| GLEN VIRDEN    KBI | | 08/06/13 |
| Doug Younger    KBI | | 03-06-2013 |
| Michael Lind    KBI | | 03-06-2013 |
| Shane Finley    K.B.I | | 03-06-2013 |
| Robert Conde    KBI | | 03-06-2013 |
| Frank Papish    KBI | | 3/6/13 |
| KELLY W. RALSTON  KBI | | 3/6/13 |
| Jon   Rankin    KBI | | 3/6/13 |
| Shawn Campiti    KBI | | 03-06-2013 |
| Traci Allen    KBI | | 3-6-13 |
| Chris Farris    KBI | | 3-6-13 |
| JOSH KYLE    RCPD | John O. Kyle | 3-6-13 |
| Mike Life    JCPD | | 03-06-13 |
| Angela C Weeks  GESO | Angela C Weeks | 03.06.13 |
| Cathy Fahey    JCPD | Cathy Fahey | 3-6-13 |
| JOSHUA BROWN    JCPD | | 03062013 |
| TODD GODFREY    JCPD | | 030613 |
| STEVEN L. OYAT    GECA | Steven L Oyat | 3/6/13 |
| Alvin Babcock    JCPD | | 3-6-13 |
| Tim Brown    JCPD | Tim Brown | 030613 |
| MAVERICK CAMPBELL  GESO | | 03-06-13 |
| | | 03.06.13 |
| Tony Wolf    Geary County S.O. | | |
| William P. Arnold Jr.  JCPP / JCPD | William P. Arnold | 03/06/13 |
| Cory Odell    JCPD | C. Odell | 3/6/13 |
| Trish Gordon    JCPD | | 3-6-13 |
| Kelly Roberts    TPD | Kelly R | 3-6-13 |
| n.the Rumford    KBI | | 3-6-13 |
| DEV SWANN    KBI | | 3/6/13 |

D000700

**EXHIBIT C 008**

Page: 92   Date Filed: 07/10/2023   Document: 0101110884675   Appellate Case: 23-3102

Page: 93

Date Filed: 07/10/2023

Document: 010110884675

Appellate Case: 23-3102

RICHARD FINK   RCPD                    3-6-2013
Justin Stopper   GLSO                  3/6/2013
Eric S. Coffman   GESO                 3-6-2013

/Eric S Coff

THOMPSON

IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION ) | CASE NO. |
| OF THE STATE OF KANSAS ) | |
| FOR AN ORDER AUTHORIZING THE ) | UNDER SEAL |
| INTERCEPTION OF WIRE ) | |
| COMMUNICATIONS TO AND FROM ) | |
| T-MOBILE USA WIRELESS TELEPHONE: ) | |
| 785-226-1783 ) | |
| BEARING INTERNATIONAL MOBILE STATION ) | |
| IDENTIFICATION # (IMSI) 310260445955245 ) | |

## ORDER AUTHORIZING THE INTERCEPTION
## OF WIRE COMMUNICATIONS

Application under oath having been made before me by Steven L. Opat, Geary County Attorney,

based on the sworn affidavit of Glen F. Virden, Senior Special Agent, Kansas Bureau of

Investigations, an investigative or law enforcement officer of the State of Kansas within the meaning

of Section 5 of K.S.A. 22-2514, *et seq*, for an Order authorizing the interception of wire

communications pursuant to K.S.A. 22-2514, *et seq*, and full consideration having been given to the

matter set forth therein, the Court finds:

A.    there is probable cause to believe that Albert DeWayne Banks, DOB ████ and Anthony

       Carlyle Thompson, DOB ████, and others named in the affidavit of the said Glen F.

       Virden, and others yet unknown (hereinafter "Target Subjects"), have committed, and are

       committing, and will continue to commit offenses enumerated in Article 57 of K.S.A. 21-

       5701 *et seq*, specifically possession of controlled substances with intent to distribute, and

       distribution of controlled substances, in violation of K.S.A. 21-5701 *et seq*, specifically 21-

**EXHIBIT 5**

D000775

**EXHIBIT C 010**

Appellate Case: 23-3102      Document: 010110884675      Date Filed: 07/10/2023      Page: 95

5705 and 5706, unlawful use of a communication facility to commit and facilitate the commission of drug trafficking offenses, in violation of K.S.A. 21-5707; attempts, conspiracies or solicitations to possess with intent to distribute or to distribute controlled substances, in violation of K.S.A. 21-5701 *et seq*, and K.S.A. 21-5301 and 21-5302 and 21-5304; unlawful acts involving proceeds derived from violations of K.S.A. 21-5701-5717. (Hereinafter the "Target Offenses");

B.   there is probable cause to believe that particular wire communications of the said Albert DeWayne Banks and the said Anthony Carlyle Thompson and others yet unknown (hereinafter "Target Interceptees"), concerning the above-described Target Offenses will be obtained through the interception for which authorization has herewith been applied. In particular, there is probable cause to believe that the interception of wire communications to and from the cellular telephone with the assigned telephone number 785-226-1783, bearing IMSI 310260445955245 with service provided by T-Mobile USA Wireless with subscriber listed as one Jason Roberts, although it is clear that the principal user is and has been identified as Anthony Carlyle Thompson, will further disclose, detail and reveal the specifics of the above offenses, including the depth of the conspiracy and the manner and means of how and with whom these offenses are being committed, including the unknown sources from which the distribution by Albert DeWayne Banks, Anthony Carlyle Thompson, and others is made possible;

C.   it has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ; and

D.   there is probable cause to believe that 785-226-1783 has been and will continue to be used in connection with commission of the above-described offenses.

Appellate Case: 23-3102   Document: 010110884675   Date Filed: 07/10/2023   Page: 96

WHEREFORE, IT IS HEREBY ORDERED that Special Agents of the Kansas Bureau of Investigation, and other agencies acting under the supervision of the KBI, are authorized, pursuant to an application as authorized by K.S.A. 22-2515, made by Steven L. Opat, the duly elected and authorized County Attorney for Geary County, State of Kansas, to intercept wire communications to and from the above-described telephone.

PROVIDED that such interception(s) shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but may continue until all communications are intercepted which reveal fully the manner in which the above-named persons and others as yet unknown are committing the offenses described herein, and which reveal fully the identities of their confederates, their places of operation, and the nature of the conspiracy involved therein, or for a period of thirty (30) days measured from the day on which investigative or law enforcement officers first begin to conduct an interception under this order or ten (10) days after this order is entered, whichever is earlier.

1T IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States.

IT 1S ORDERED FURTHER that the authorization given is intended to apply not only to the target telephone number listed above, but also to any other telephone number or telephone accessed through the above-referenced IMSI number, and to any other IMSI number accessed through the target telephone number referenced above, within the thirty (30) day period. The authorization is also intended to apply to the target telephone number referenced above regardless of service provider, and to background conversations intercepted in the vicinity of the target

D000777

**EXHIBIT C 012**

Appellate Case: 23-3102      Document: 010110884675      Date Filed: 07/10/2023      Page: 97

telephone while the telephone is off the hook or otherwise in use.

IT IS ORDERED FURTHER that, based upon the request of the Applicant pursuant to K.S.A. 22-2514, and the definitions set forth therein, and K.S.A. 22-2515 and 2516, T-Mobile , an electronic communication service provider as defined in Section 2510(15) of Title 18, United States Code and K.S.A. 22-2514, shall furnish the KBI and/or it's agents or designees with all information, facilities and technical assistance necessary to accomplish the interceptions unobtrusively and with a minimum of interference with the services that such provider is according the persons whose communications are to be intercepted, with the service provider to be compensated by the KBI for reasonable expenses incurred in providing such facilities or assistance.

IT IS ORDERED FURTHER that, to avoid prejudice to the government's criminal investigation, the provider of the electronic communications service and its agents and employees are Ordered Not To Disclose or Cause Disclosure of the Order or the request for information, facilities and assistance by the KBI or the existence of the investigation to any person other than those of its agents and employees who require this information to accomplish the services hereby ordered. In particular, said provider and its agents and employees shall not make such disclosure to a lessee, telephone subscriber or any interceptee or participant in the intercepted communications.

IT IS ORDERED FURTHER that this Order shall be binding on any subsequent provider of electronic communications services as defined in Title 18, United States Code, Section 2510(15) and K.S.A. 22-2514 *et seq*, that provides services to the target telephone number(s) listed above upon service of a certified copy of this Order without any further court order being required.

IT IS ORDERED FURTHER that this order shall be executed as soon as practicable and that all monitoring of wire communications shall be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to

Appellate Case: 23-3102    Document: 010110884675    Date Filed: 07/10/2023    Page: 98

the pending investigation. The interception of wire communications must terminate upon the attainment of the authorized objectives, not to exceed thirty (30) days measured from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception of this order or ten (10) days after he order is entered.

Monitoring of conversations must terminate immediately when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119, Title 18, United States Code and K.S.A. 22-2514 *et seq.*. Interception must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named Target Interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent shall spot check to insure that the conversation has not turned to criminal matters.

IT IS ORDERED FURTHER that, pursuant to Section 2518(5), Title 18, United States Code and K.S.A. 22-2514 *et seq*, in the event intercepted communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

IT IS ORDERED FURTHER that Steven L. Opat, Geary County Attorney and /or Antonio Cruz Assistant Geary County Attorney shall provide this Court with a report on or about the tenth, twentieth, and thirtieth days following the date of this Order showing what progress has been made toward achievement of the authorized objectives and the need for continued interception. If any of the above-ordered reports should become due on a weekend or holiday, IT IS ORDERED FURTHER that such report shall become due on the next business day thereafter.

D000780

**EXHIBIT C 014**

Page: 99          Date Filed: 07/10/2023          Document: 010110884675          Appellate Case: 23-3102

IT IS ORDERED FURTHER that this Order, the application, affidavit and proposed order, and all interim reports filed with this Court with regard to this matter, shall be sealed until further order of this Court, except that copies of the order, in full or redacted form, may be served on the KBI and the service provider as necessary to effectuate this order.

DONE and ORDERED this ___5___ day of ___March___, 20_13_, at in Junction City, Kansas.

HONORABLE David R Platt
District Judge

Page: 100     Date Filed: 07/19/2023     Document: 010110884675     Appellate Case: 23-3102

| Print Name / Agency | Sign | Date |
|---|---|---|
| Mike Rumford   ISBI | | 3-6-13 |
| Dru Swann   KBI | | 3/6/13 |
| Fran Sheldan   KBI | | 3-16-13 |
| Scott Ferris   KBI | | 3/6/13 |
| Idac Campos   KBI | | 3/6/13 |
| Chris Turner   KBI | | 3/6/13 |
| MATTHEW LYON   KBI | | 03-06-2013 |
| Rod Page   KBI | | 03-06-2013 |
| Ed Bartkoski   KBI | | 03-06-2013 |
| Brad Ingalls   RCPD | | 03/06/2013 |
| Shawn Stanton   RCPD | | 3/6/2013 |
| Dan Bortnick   RCPD | | 03-06-2013 |
| Jesse Breault   RCPD | | 3-6-13 |
| John M. Doehling   RCPD | | 3/6/13 |
| Brad Schoen | | 3-6-13 |
| Don Breci | | 3-6-12 |
| Jeff Childs | | 3-6-12 |
| Julia Goggin | | 3-6-13 |
| Jessie Beck | | 3-06-13 |
| Kurt Moldrup | | 3-6-13 |
| Emmett Smith | | 3/6/2013 |
| Robert Dierks | | 3-06-2013 |
| Brian Johnson   RCPD | | 03/06/13 |
| Mark French   RCPD | | 03/06/13 |
| Rick Duntsch | | 3/6/13 |
| Brek Jager | | 03/06/13 |

D000781

**EXHIBIT C 016**

Page: 101

Date Filed: 07/10/2023

Document: 010110884675

Appellate Case: 23-3102

| PRINT NAME/AGENCY | SIGN | DATE |
|---|---|---|
| GLEN VIRDEN   KBI | | 03/06/13 |
| Doug Younger  KBI | | 03/06/2013 |
| Robert Conde  KBI | Robert J Conde | 03/06/2013 |
| Tim Leakey KBI | Tim Leakey | 03/06/13 |
| Amanda  Young  KBI | Amanda Young | 3/06/13 |
| Steve Bundy    KBI | | 3/6/13 |
| Michael Lind   KBI | | 3-6-13 |
| Shane Finley   KBF | | 3-6-13 |
| Frank Papish   KBI | Frank Papish | 3/6/13 |
| KELLY W. Ralston KBI | Kelly w. | 3/6/13 |
| Shawn Campiti   KBI | Shawn Campiti | 3-6-2013 |
| Jon. Rankin    KBI | Jon Rankin | 3/6/13 |
| Traci Allen    KBI | Traci Allen | 3-6-13 |
| Chris Farris   KBI | | 3-6-13 |
| JOSH KYLE   RCPD | John D. Kyle | 3-6-13 |
| Mike Life   JCPD | | 03-06-13 |
| Angela C. Weeks  GESO | Angela C Weeks | 03.06.13 |
| Cathy Fahey  JCPD | Cathy Fahey | 3-6-13 |
| JOSHUA BROWN  JCPD | | 03062013 |
| TODD Goodrey   JCPD | | 030613 |
| STEVEN L. OPAT   GECA | Steven L Opat | 3/6/13 |
| Alvin Babcock   JCPD | | 3-6-13 |
| Tony   Cruz   GECA | Tony Cruz | 3/6/13 |
| Tim  Brown    JCPD | Tim Brown | 03/06/13 |
| MAVERICK CAMPBELL  GESO | | 03/06/13 |
| Tony Wolf   Geary County SO | | 3.06.13 |
| William R. Arnold Jr. JCPD | Will R Arnold | 03/06/13 |
| Cory Odell   JCPD | | 3/6/13 |
| Rish Giordano   JCPD | | 3-6-13 |
| Kelly Robens   TPD | Kelly Robens | 3-6-13 |

D000783

EXHIBIT C 017

Dustin J. Wedsterood  RCPD          3/6/13

Michael PARR   RCPD          3/6/13

Nate Boechman   RCPD          3/6/13

Robert Covin   KBI          3/6/13

Sherri McCra   KBI          3/6/13

DAVE BREDE   KBI          3/6/13

Bill White   TPD          3/6/13

Andrew Beighler  TPD          3-6-13

RyAN Boyer   KBI          3-6-13

Gary Koles   KBI          3-6-13

RICHARD FINK   RCPD          3-6-13

Eric S. Coffman   GESO          3-6-13

Justin Stopper   GESO          3/6/2013

D000779

EXHIBIT C 018

103

Appellate Case: 23-3102    Document: 010110884675    Date Filed: 07/10/2023    Page: 103

IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

IN THE MATTER OF THE APPLICATION        )
OF THE STATE OF KANSAS                   )        CASE NO.
FOR AN ORDER AUTHORIZING THE             )
INTERCEPTION OF WIRE                     )        UNDER SEAL
COMMUNICATIONS TO AND FROM               )
T-MOBILE USA WIRELESS TELEPHONE:         )
785-226-1783                             )
BEARING INTERNATIONAL MOBILE STATION     )
IDENTIFICATION # (IMSI) 310260445955245  )

## ORDER

Application under oath having been made before been made before me by Steven L. Opat,

duly elected County Attorney for Geary County, State of Kansas, an "investigative or law

enforcement officer" of the State of Kansas within the meaning of Section 2510(7) of Title 18,

United States Codes, and K.S.A. 22-2514, for an Order authorizing the **Continued** interception (i.e.

an extension) of wire communications pursuant to K.S.A. 22-2514 *et seq*, particularly 22-

2515(a)(11) and (20) as previously authorized by this Court on March 5, 2013, and therefore full

consideration having been given to the matter set forth therein, the Court **Finds:**

    A.    there is probable cause to believe that Anthony Carlyle Thompson, Albert DeWayne

Banks, Johnny Lee Ivory, Otis Ponds, others named in the affidavits and progress reports herein, and

others as yet unknown, have committed, and are committing specifically possession of controlled

substances (with intent to distribute) and distribution of controlled substances, in violation of K.S.A.

21-5701 *et seq*, specifically 21-5705 and 5706; unlawful use of a communication facility to commit

and facilitate the commission of drug trafficking offenses, in violation of K.S.A. 21-5707; attempts,

**EXHIBIT 11**

**EXHIBIT C 019**

conspiracies or solicitations to possess with intent to distribute or to distribute controlled substances, in violation of K.S.A. 21-5701 *et seq*, and K.S.A. 21-5301 and 21-5302 and 21-5304; unlawful acts involving proceeds derived from violations of K.S.A. 21-5701-5717, hereinafter the "Target Offenses";

B.      there is probable cause to believe that particular wire communications of Anthony Carlyle Thompson, Albert DeWayne Banks, Johnny Lee Ivory, Otis Ponds, others named in such previously submitted affidavits an progress reports, and others as yet unknown, concerning the above-described offenses will be obtained through the interception for which authorization has herewith been applied. In particular, there is probable cause to believe that the interception of wire communications to and from the telephone bearing number 785-226-1783, bearing International Mobile Subscriber Identity Number (IMSI): 310260445955245, Target Phone, which is a T-Mobile USA Wireless cellular telephone, subscribed to Jason Roberts, with the primary user having been identified as Anthony Carlyle Thompson, will concern the specifics of the above offenses, including the manner and means of the commission of the offenses(s);

C.      it has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are to dangerous to employ; and

D.      there is probable cause to believe that the telephone bearing the number 785-226-1783, bearing International Mobile Subscriber Identity Number (IMSI): 310260445955245, which is a T-Mobile USA Wireless cellular telephone, subscribed to Jason Roberts, with the primary user having been identified as Anthony Carlyle Thompson, has been and will continue to be used in connection with commission of the above-described offenses.

**EXHIBIT C 020**

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 105

WHEREFORE, IT IS HEREBY ORDERED that Senior Special Agent Glen Virden of the K.B.I., and other agencies acting under the supervision of a K.B.I. agent, are authorized, pursuant to an application signed by Steven L. Opat, Geary County Attorney, an authorized "investigative or law enforcement officer" of the State of Kansas within the meaning of Section 2514 of K.S.A. chapter 22, that is an attorney authorized by law to prosecute, to **Continue** to intercept wire communications to an from the above-described telephone.

PROVIDED that such interception(s) shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but may continue until all communications are intercepted which reveal fully the manner in which the above-named persons and others as yet unknown are committing the offenses described herein, and which reveal fully the identities of their confederates, their place of operations, and the nature of the conspiracy involved therein, or for a period of thirty (30) days measured from the day on which investigative or law enforcement officers first continue to conduct an interception under this order.

IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States.

IT IS ORDERED FURTHER that the authorization apply not only to the target telephone number(s) listed above, but to any changed telephone number or IMSI subsequently assigned and utilized by the target telephone within the thirty (30) day period, but to any changed telephone number or IMSI or any other telephone number subsequently assigned to or used by the instrument bearing the same IMSI as the target cellular phone within the thirty (30) day period.  It is also Ordered that the authorization apply to background conversations intercepted in the vicinity of the

EXHIBIT C 021

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 106

target telephone while the telephone is off the hook or otherwise in use.

IT IS ORDERED FURTHER that, based upon the request of the Applicant pursuant to Chapter 119 of Title 18, United States Code, and K.S.A. 22-2514 & 2516 as amended, T-Mobile USA Wireless an electronic communication service provider as defined by law shall furnish the K.B.I. will all information, facilities and technical assistance necessary to accomplish the interceptions unobtrusively and with a minimum of interference with the services that such provider is according the persons whose communications are to be intercepted, with the service provider to be compensated by the K.B.I. for reasonable expenses incurred in providing such facilities or assistance.

IT IS ORDERED FURTHER that in the event that the service provider changes during the course of the interception, interception may continue with the new service provider without further order of this Court. The State of Kansas will advise the Court of the change of service provider in the periodic progress reports submitted to this Court.

IT IS ORDERED FURTHER that, to avoid prejudice to the government's criminal investigation, the provider of the electronic communications service and its agents and employess are ordered not to disclose or cause a disclosure of the Order or the request for information, facilities and assistance by the K.B.I. or the existence of the investigation to any person other than those of its agents and employees who require this information to accomplish the services hereby ordered. In particular, said provider and its agents and employees shall not make such disclosure to a lessee, telephone subscriber or any interceptee or participant in the intercepted communications.

IT IS ORDERED FURTHER that this order shall be executed as soon as practicable and that all monitoring of wire communications shall be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to

EXHIBIT C 022

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 107

the pending investigation. The interception of wire communications must terminate upon that attainment of the authorized objectives, not to exceed thirty (30) days measured from the earlier of the day on which investigative or law enforcement officers first begin to **Continue** to conduct an interception of this Order.

Monitoring of conversations must terminate immediately when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119, Title 18 United States Code and K.S.A. 22-2516 as amended. Interceptions must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined during the portion of the conversation is overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent shall spot check to insure that the conversation has not turned to criminal matters.

IT IS ORDERED FURTHER that, pursuant to Chapter 119, Title 18, United States Code, and K.S.A. 22-2516 as amended, in the event intercepted communications are in a code or foreign language, and an expert in the code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

IT IS ORDERED FURTHER that Steven L. Opat Geary County Attorney or Tony Cruz Assistant Geary County Attorney, shall provide this Court with a report on or about the tenth, twentieth, and thirtieth days following the date of **the Extension of the Order of March 5, 2013** as Authorized this date showing what progress has been made toward achievement of the authorized objectives and need for continued interception. If any of the above-ordered reports should become due on a weekend or holiday, IT IS ORDERED FURTHER that such report shall become due on

**EXHIBIT C 023**

the next business day thereafter.

IT IS ORDERED FURTHER that, pursuant to law, Federal and State, (K.S.A. 22-2516), to prevent premature disclosure of an ongoing investigation, guard against fugitives, and better ensure the safety of agents and others, service of any notice requested by law may be delayed for a period of thirty (30) days after the termination of the monitoring period authorized by the warrant.

IT IS ORDERED FURTHER that T-Mobile USA Wireless, its affiliates, officers, employees, and agents not disclose the Court's Order or the underlying investigation, until notice is given as provided above.

IT IS ORDERED FURTHER that this **Order of Extension**, the application, any affidavit(s) and/or progress reports filed with this Court with regard to this matter, shall be sealed until further order of this Court, except that copies of the Order, in full or redacted form, may be served on the service provider as necessary to effectuate this Order.

DONE and ORDERED this _4_ day of April, 2013, at ___3:27___ a.m./p.m. in Junction City, Kansas.

_____
HONORABLE DAVID R. PLATT
DISTRICT JUDGE
8TH JUDICIAL DISTRICT
STATE OF KANSAS

**EXHIBIT C 024**

Date Filed: 07/10/2023 · Page: 109

Document: 010110884675

Appellate Case: 23-3102

IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION ) | |
| OF THE STATE OF KANSAS ) | CASE NO. |
| FOR AN ORDER AUTHORIZING THE ) | |
| INTERCEPTION OF WIRE ) | UNDER SEAL |
| COMMUNICATIONS TO AND FROM ) | |
| VIRGIN MOBILE USA/SPRINT PCS: ) | |
| 785-717-9771 ) | |
| MOBILE STATION IDENTIFICATION NUMBER ) | |
| # (MSID) 000007853750181 ) | |
| ELECTRONIC SERIAL NUMBER ) | |
| # (ESN) 268435460914908669 ) | |

## ORDER AUTHORIZING THE INTERCEPTION
## OF WIRE COMMUNICATIONS

Application under oath having been made before me by Steven L. Opat, Geary County Attorney,

based on the sworn affidavit of Glen F. Virden, Senior Special Agent, Kansas Bureau of

Investigations, an investigative or law enforcement officer of the State of Kansas within the meaning

of Section 5 of K.S.A. 22-2514, *et seq,* for an Order authorizing the interception of wire/oral and/or

electronic communications pursuant to K.S.A. 22-2514, *et seq,* and full consideration having been

given to the matter set forth therein, the Court finds:

A.      there is probable cause to believe that Albert DeWayne Banks, B/M DOB ▆▆▆ Anthony

Thompson DOB ▆▆▆ Otis Ponds, Johnny Ivory and others named in the affidavit of the

said Glen F. Virden, and others yet unknown (hereinafter "Target Subjects"), have

committed, and are committing, and will continue to commit offenses enumerated in Article

57 of K.S.A. 21-5701 *et seq,* specifically possession of controlled substances with intent to

**EXHIBIT 15**

D003025

**EXHIBIT C 025**

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 110

distribute, and distribution of controlled substances, in violation of K.S.A. 21-5701 *et seq*, specifically 21-5705 and 5706, unlawful use of a communication facility to commit and facilitate the commission of drug trafficking offenses, in violation of K.S.A. 21-5707; attempts, conspiracies or solicitations to possess with intent to distribute or to distribute controlled substances, in violation of K.S.A. 21-5701 *et seq*, and K.S.A. 21-5301 and 21-5302 and 21-5304; unlawful acts involving proceeds derived from violations of K.S.A. 21-5701-5717. (Hereinafter the "Target Offenses");

B.      there is probable cause to believe that particular wire/oral and/or electronic communications of the said Albert DeWayne Banks, Anthony Thompson, Otis Ponds, Johnny Ivory and others yet unknown (hereinafter "Target Interceptees"), concerning the above-described Target Offenses will be obtained through the interception for which authorization has herewith been applied. In particular, there is probable cause to believe that the interception of wire/oral and/or electronic communications to and from the cellular telephone with the assigned telephone number 785-717-9771, bearing MSID 000007853750181 and ESN 268435460914908669 with service provided by Virgin Mobile/Sprint PCS with subscriber listed as one Glenda Robertson, although it is clear that the principal user is and has been identified as Albert DeWayne Banks, will further disclose, detail and reveal the specifics of the above offenses, including the depth of the conspiracy and the manner and means of how and with whom these offenses are being committed, including the unknown sources from which the distribution by Albert DeWayne Banks, Anthony Carlyle Thompson, Otis Ponds, Johnny Ivory and others is made possible;

C.      it has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ; and

D.      there is probable cause to believe that 785-717-9771 has been and will continue to be used

in connection with commission of the above-described offenses.

WHEREFORE, IT IS HEREBY ORDERED that Special Agents of the Kansas Bureau of

Investigation, and other agencies acting under the supervision of the KBI, are authorized, pursuant

to an application as authorized by K.S.A. 22-2515, made by Steven L. Opat, the duly elected and

authorized County Attorney for Geary County, State of Kansas,  to intercept wire/oral and/or

electronic communications to and from the above-described telephone.

PROVIDED that such interception(s) shall not terminate automatically after the first

interception that reveals the manner in which the alleged co-conspirators and others as yet unknown

conduct their illegal activities, but may continue until all communications are intercepted which

reveal fully the manner in which the above-named persons and others as yet unknown are

committing the offenses described herein, and which reveal fully the identities of their confederates,

their places of operation, and the nature of the conspiracy involved therein, or for a period of thirty

(30) days measured from the day on which investigative or law enforcement officers first begin to

conduct an interception under this order or ten (10) days after this order is entered, whichever is

earlier.

IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside

the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within

the United States.

IT IS ORDERED FURTHER that the authorization given is intended to apply not only to

the target telephone number listed above, but also to any other telephone number or telephone

accessed through the above-referenced MSID number, and to any other MSID/IMSI number accessed

EXHIBIT C 027
D003027

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 111

111

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 112

112

through the target telephone number referenced above, within the thirty (30) day period. The authorization is also intended to apply to the target telephone number referenced above regardless of service provider, and to background conversations intercepted in the vicinity of the target telephone while the telephone is off the hook or otherwise in use.

IT IS ORDERED FURTHER that, based upon the request of the Applicant pursuant to K.S.A. 22-2514, and the definitions set forth therein, and K.S.A. 22-2515 and 2516, Virgin Mobile USA/Sprint PCS , an electronic communication service provider as defined in Section 2510(15) of Title 18, United States Code and K.S.A. 22-2514, shall furnish the KBI and/or it's agents or designees with all information, facilities and technical assistance necessary to accomplish the interceptions unobtrusively and with a minimum of interference with the services that such provider is according the persons whose communications are to be intercepted, with the service provider to be compensated by the KBI for reasonable expenses incurred in providing such facilities or assistance.

IT IS ORDERED FURTHER that, to avoid prejudice to the government's criminal investigation, the provider of the electronic communications service and its agents and employees are Ordered Not To Disclose or Cause Disclosure of the Order or the request for information, facilities and assistance by the KBI or the existence of the investigation to any person other than those of its agents and employees who require this information to accomplish the services hereby ordered. In particular, said provider and its agents and employees shall not make such disclosure to a lessee, telephone subscriber or any interceptee or participant in the intercepted communications.

IT IS ORDERED FURTHER that this Order shall be binding on any subsequent provider of electronic communications services as defined in Title 18, United States Code, Section 2510(15) and K.S.A. 22-2514 *et seq*, that provides services to the target telephone number(s) listed above upon

D003028
**EXHIBIT C 028**

Page: 113         Date Filed: 07/10/2023         Document: 010110884675         Appellate Case: 23-3102

service of a certified copy of this Order without any further court order being required.

IT IS ORDERED FURTHER that this order shall be executed as soon as practicable and that all monitoring of wire/oral and/or electronic communications shall be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to the pending investigation. The interception of wire/oral and/or electronic communications must terminate upon the attainment of the authorized objectives, not to exceed thirty (30) days measured from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception of this order or ten (10) days after he order is entered.

Monitoring of conversations must terminate immediately when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119, Title 18, United States Code and K.S.A. 22-2514 *et seq*.. Interception must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named Target Interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent shall spot check to insure that the conversation has not turned to criminal matters.

IT IS ORDERED FURTHER that, pursuant to Section 2518(5), Title 18, United States Code and K.S.A. 22-2514 *et seq*, in the event intercepted communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

Page: 114          Date Filed: 07/10/2023          Document: 010110884675          Appellate Case: 23-3102

IT IS ORDERED FURTHER that Steven L. Opat, Geary County Attorney and /or Antonio Cruz Assistant Geary County Attorney shall provide this Court with a report on or about the tenth, twentieth, and thirtieth days following the date of this Order showing what progress has been made toward achievement of the authorized objectives and the need for continued interception. If any of the above-ordered reports should become due on a weekend or holiday, IT IS ORDERED FURTHER that such report shall become due on the next business day thereafter.

IT IS ORDERED FURTHER that this Order, the application, affidavit and proposed order, and all interim reports filed with this Court with regard to this matter, shall be sealed until further order of this Court, except that copies of the order, in full or redacted form, may be served on the KBI and the service provider as necessary to effectuate this order.

DONE and ORDERED this _12_ day of ___April___, 20_13_, at in Junction City, Kansas.

_____
HONORABLE DAVID R. PLATT
DISTRICT JUDGE
8TH JUDICIAL DISTRICT, STATE OF KANSAS

Page: 115     Date Filed: 07/10/2023     Document: 010110884675     Appellate Case: 23-3102

IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION | ) | |
| OF THE STATE OF KANSAS | ) | CASE NO. |
| FOR AN ORDER AUTHORIZING THE | ) | |
| INTERCEPTION OF WIRE | ) | UNDER SEAL |
| COMMUNICATIONS TO AND FROM | ) | |
| T-MOBILE USA: | ) | |
| 785-226-2893 | ) | |
| INTERNATIONAL MOBILE SECURITY IDENTITY | ) | |
| # (IMSI) 310260566871100 | ) | |

## ORDER AUTHORIZING THE INTERCEPTION
## OF WIRE COMMUNICATIONS

Application under oath having been made before me by Steven L. Opat, Geary County Attorney,

based on the sworn affidavit of Glen F. Virden, Senior Special Agent, Kansas Bureau of

Investigations, an investigative or law enforcement officer of the State of Kansas within the meaning

of Section 5 of K.S.A. 22-2514, *et seq*, for an Order authorizing the interception of wire/oral and/or

electronic communications pursuant to K.S.A. 22-2514, *et seq*, and full consideration having been

given to the matter set forth therein, the Court finds:

A.      there is probable cause to believe that Albert DeWayne Banks, B/M DOB ███ Anthony

Thompson DOB ███ Otis Ponds, Johnny Ivory III and others named in the affidavit of

the said Glen F. Virden, and others yet unknown (hereinafter "Target Subjects"), have

committed, and are committing, and will continue to commit offenses enumerated in Article

57 of K.S.A. 21-5701 *et seq*, specifically possession of controlled substances with intent to

**EXHIBIT 17**

D003077
**EXHIBIT C 031**

Appellate Case: 23-3102        Document: 010110884675        Date Filed: 07/10/2023        Page: 116

distribute, and distribution of controlled substances, in violation of K.S.A. 21-5701 *et seq*, specifically 21-5705 and 5706, unlawful use of a communication facility to commit and facilitate the commission of drug trafficking offenses, in violation of K.S.A. 21-5707; attempts, conspiracies or solicitations to possess with intent to distribute or to distribute controlled substances, in violation of K.S.A. 21-5701 *et seq*, and K.S.A. 21-5301 and 21-5302 and 21-5304; unlawful acts involving proceeds derived from violations of K.S.A. 21-5701-5717. (Hereinafter the "Target Offenses");

B.    there is probable cause to believe that particular wire/oral and/or electronic communications of the said Albert DeWayne Banks, Anthony Thompson, Otis Ponds, Johnny Ivory III and others yet unknown (hereinafter "Target Interceptees"), concerning the above-described Target Offenses will be obtained through the interception for which authorization has herewith been applied. In particular, there is probable cause to believe that the interception of wire/oral and/or electronic communications to and from the cellular telephone with the assigned telephone number 785-226-2893, bearing IMSI 310260566871100 with service provided by T-Mobile USA with no name attached as the subscriber as it is an IN PREPAID CUSTOMER, although it is clear that the principal user is and has been identified as Anthony Carlyle Thompson, will further disclose, detail and reveal the specifics of the above offenses, including the depth of the conspiracy and the manner and means of how and with whom these offenses are being committed, including the unknown sources from which the distribution by Albert DeWayne Banks, Anthony Carlyle Thompson, Otis Ponds, Johnny Ivory and others is made possible;

C.    it has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ; and

Page: 117   Date Filed: 07/10/2023   Document: 010110884675   Appellate Case: 23-3102

D.      there is probable cause to believe that 785-226-2893 has been and will continue to be used in connection with commission of the above-described offenses.

WHEREFORE, IT IS HEREBY ORDERED that Special Agents of the Kansas Bureau of Investigation, and other agencies acting under the supervision of the KBI, are authorized, pursuant to an application as authorized by K.S.A. 22-2515, made by Steven L. Opat, the duly elected and authorized County Attorney for Geary County, State of Kansas,  to intercept wire/oral and/or electronic communications to and from the above-described telephone.

PROVIDED that such interception(s) shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but may continue until all communications are intercepted which reveal fully the manner in which the above-named persons and others as yet unknown are committing the offenses described herein, and which reveal fully the identities of their confederates, their places of operation, and the nature of the conspiracy involved therein, or for a period of thirty (30) days measured from the day on which investigative or law enforcement officers first begin to conduct an interception under this order or ten (10) days after this order is entered, whichever is earlier.

IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States.

IT IS ORDERED FURTHER that the authorization given is intended to apply not only to the target telephone number listed above, but also to any other telephone number or telephone accessed through the above-referenced MSID number, and to any other MSID/IMSI number accessed

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 118

service of a certified copy of this Order without any further court order being required.

IT IS ORDERED FURTHER that this order shall be executed as soon as practicable and that all monitoring of wire/oral and/or electronic communications shall be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to the pending investigation. The interception of wire/oral and/or electronic communications must terminate upon the attainment of the authorized objectives, not to exceed thirty (30) days measured from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception of this order or ten (10) days after he order is entered.

Monitoring of conversations must terminate immediately when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119, Title 18, United States Code and K.S.A. 22-2514 *et seq.*. Interception must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named Target Interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent shall spot check to insure that the conversation has not turned to criminal matters.

IT IS ORDERED FURTHER that, pursuant to Section 2518(5), Title 18, United States Code and K.S.A. 22-2514 *et seq*, in the event intercepted communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

Page: 119          Date Filed: 07/10/2023          Document: 010110884675          Appellate Case: 23-3102

IT IS ORDERED FURTHER that Steven L. Opat, Geary County Attorney and /or Antonio Cruz Assistant Geary County Attorney shall provide this Court with a report on or about the tenth, twentieth, and thirtieth days following the date of this Order showing what progress has been made toward achievement of the authorized objectives and the need for continued interception. If any of the above-ordered reports should become due on a weekend or holiday, IT IS ORDERED FURTHER that such report shall become due on the next business day thereafter.

IT IS ORDERED FURTHER that this Order, the application, affidavit and proposed order, and all interim reports filed with this Court with regard to this matter, shall be sealed until further order of this Court, except that copies of the order, in full or redacted form, may be served on the KBI and the service provider as necessary to effectuate this order.

DONE and ORDERED this ___16___ day of ___April___, 20_13_, at in Junction City, Kansas.


_____
HONORABLE DAVID R. PLATT
DISTRICT JUDGE
8TH JUDICIAL DISTRICT, STATE OF KANSAS

D003082
**EXHIBIT C 035**



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
WICHITA DIVISION

| | | |
|---|---|---|
| ALBERT DEWAYNE BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-3093-HLT-GEB |
| | ) | |
| STEVEN L. OPAT, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————— | ) | |
| | ) | |
| ANTHONY THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-3117-HLT-GEB |
| | ) | |
| GLEN VIRDEN, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————— | ) | |

## PLAINTIFFS ANTHONY THOMPSON AND ALBERT DEWAYNE BANKS'S RULE 26(a)(1) DISCLOSURES

COME NOW the Plaintiffs, Anthony Thompson and Albert Dewayne Banks, pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, and for their Rule 26(a)(1) disclosures, states as follows:

**A.     Rule 26(a)(1)(A)(i) Disclosures/Witnesses:**

1.     Anthony Thompson

Mr. Thompson is the Plaintiff in case 15-3117 and has personal knowledge regarding all facts and related matters.

1

2.      Albert Banks

Mr. Banks is the Plaintiff in case 15-3093 and has personal knowledge regarding all facts and related matters.

3.      David L. Platt, current address unknown.

Judge Platt was a former Geary County State District Court judge who presided over state law proceedings involving wiretaps and criminal accusations.  He will have knowledge of the following subject matter: creation and authorization and scope of the wiretaps, state criminal charges, unconstitutionally excessive bond, and general procedural posture of the state investigation.

4.      Steven L. Opat, current address unknown but can be reached through counsel.

Mr. Opat is a defendant in the consolidated case.  He is the former Geary County Attorney. He will have knowledge regarding the circumstances of Plaintiffs' initial arrests, as well as the scope and authorization of the wiretap orders, state charges, discovery issues in the state case, interrogations done by other defendants, and federal and state wiretap law.

5.      Chris Turner, current address unknown.

Mr. Turner is a Special Agent for the Kansas Bureau of Investigation.  He will have knowledge of interrogations performed in the initial state case and arrests, disclosure of extraterritorial communication interceptions, scope and authorization of various wiretap orders, as well as the location and organization of relevant documents (including communications between various law enforcement agencies, defendants, and corporations surrounding the illegal disclosure of intercepted communications).

6.      Jordan Kurtz, current address unknown.

Mr. Kurtz was an employee in the Law Enforcement Relations Division at T-Mobile during the relevant time periods, and he will have information related to T-Mobile's policy and procedures, as well as knowledge about the contents of wiretap authorizations generally and in the underlying criminal case at issue in the present lawsuit.

7.      Andrew M. Connors, current address unknown.

Mr. Connors was an employee in the Court Order Analyst division of Verizon Wireless during the relevant time periods, and he will have information related to Verizon's policy and procedures, as well as knowledge about the contents of wiretap authorizations generally and in the underlying criminal case at issue in the present lawsuit.

8.      Stacey Beilman, current address unknown.

2

Ms. Bellman is a Senior United States Probation Officer for Kansas. She will have information and knowledge of the disclosure and use of illegally-obtained communications to her office as late as 2019, as well as how that information was used in the underlying criminal proceedings. She will also have knowledge of the location of documents and communications between law enforcement officials regarding the wiretaps and communication interceptions.

9.      Anthony Mattivi, current address unknown.

Mr. Mattivi is an Assistant United States Attorney for the District of Kansas and will have knowledge of the entire scope of the discovery process, communication interceptions, use and disclosures, as well as relevant documents and information from the underlying federal criminal case.

10.      Angie Weeks, current address unknown.

Ms. Weeks is an employee of the Junction City Police Department and will have knowledge about the authorization of various wiretap orders and the use of illegally-obtained communications and interceptions. She will have knowledge of Junction City Police Department policies and procedures, as well specific facts about the circumstances surrounding the state-turned-federal investigation into Mr. Thompson and Banks.

11.      Eric Coffman, current address unknown.

Mr. Coffman is an employee of the Geary County Sheriffs Office and will have knowledge about the authorization of various wiretap orders and the use of illegally-obtained communications and interceptions. He will have knowledge of Geary County Sheriff's Office policies and procedures, as well specific facts about the circumstances surrounding the state-turned-federal investigation into Mr. Thompson and Banks.

12.      Timothy Brown, current address unknown but can be contacted through counsel.

Mr. Brown is the Chief of the Junction City Police Department and a defendant in both consolidated cases. He will have knowledge about the authorization of various wiretap orders and the use of illegally-obtained communications and interceptions. He will have knowledge of relevant policies and procedures, as well specific facts about the circumstances surrounding the state-turned-federal investigation into Mr. Thompson and Banks.

13.      Glen Virden, current address unknown but can be contacted through counsel.

Mr. Virden is a Senior Special Agent of the KBI and a defendant in both consolidated cases. He will have knowledge about the authorization of various wiretap orders and the use of illegally-obtained communications and interceptions. He will have knowledge of relevant policies and procedures, as well specific facts about the circumstances surrounding the state-turned-federal investigation into Mr. Thompson and Banks.

14.      Tony Wolf, current address unknown but can be contacted through counsel.

3

Mr. Wolf is the Sherriff of Geary County and a defendant in both consolidated cases. He will have knowledge about the authorization of various wiretap orders and the use of illegally-obtained communications and interceptions. He will have knowledge of relevant policies and procedures, as well specific facts about the circumstances surrounding the state-turned-federal investigation into Mr. Thompson and Banks.

15.     Joby Harrison, current address unknown.

Mr. Harrison is a Senior Special Agent of the KBI. He will have knowledge about the authorization of various wiretap orders and the use of illegally-obtained communications and interceptions. He will have knowledge of relevant policies and procedures, as well specific facts about the circumstances surrounding the state-turned-federal investigation into Mr. Thompson and Banks.

16.     Nathaniel Ehrnman, current address unknown.

Mr. Ehrnman was an employee in the Subpoena Specialist Division at Sprint PCS during the relevant time periods, and he will have information related to Sprint's policy and procedures, as well as knowledge about the contents of wiretap authorizations generally and in the underlying criminal case at issue in the present lawsuit.

17.     Todd Goffrey, current address unknown.

Mr. Goffrey is a former employee of the Junction City Police Department. He will have knowledge about the authorization of various wiretap orders and the use of illegally-obtained communications and interceptions. He will have knowledge of relevant policies and procedures, as well specific facts about the circumstances surrounding the state-turned-federal investigation into Mr. Thompson and Banks.

18.     Brad Schoen, current address unknown.

Mr. Schoen is an employee of Riley County. He will have knowledge about the authorization of various wiretap orders and the use of illegally-obtained communications and interceptions. He will have knowledge of relevant policies and procedures, as well specific facts about the circumstances surrounding the state-turned-federal investigation into Mr. Thompson and Banks.

19.     Other unknown law enforcement personnel. Upon information and belief, other law enforcement employees may have relevant information. Their identities are currently unknown but are likely included in police reports and various documents of the KBI and federal authorities.

20.     Individuals identified in any documents produced, or to have been produced, by any defendant.

4

21.     All witnesses identified by Defendants.

**B.      Rule 26(a)(1)(A)(ii) Disclosures/Documents:**

1.      No relevant or accessible documents are currently in the sole possession of plaintiffs, but generally the various court files from both the state and federal criminal cases will include relevant documents, such as: search warrants and applications, wiretap interception orders and warrants and applications, CSLI information provided by various telecommunications companies and to law enforcement, discovery information from the underlying criminal investigations, law enforcement reports and summaries of information related to wiretaps and criminal investigation, records of sworn statements or testimony by law enforcement or other prosecutorial witnesses in previous court proceedings, communications among law enforcement personnel regarding the legality of wiretaps as well as communications from the United States Attorney's office regarding disclosures of information from state criminal investigations and wiretaps, as well as other investigatory information and records from the underlying criminal investigations.   It is believed that most of these documents are in the possession of the United States Attorney's Office or Defendants.

**C.      Rule 26(a)(1)(A)(iii) Disclosures/Computation of Damages:**

For Plaintiff Albert Dewayne Banks:

Damage calculations are uncertain at this time, but Plaintiff Banks believes he is entitled to the following damage categories and quantities:

1.      Federal Wiretap Damages Pursuant to 18 U.S.C. § 2520(b) and (c):
   a.      The greater of the amount between Plaintiff's estimated actual damages or statutory damages of $100 per each day of violation, including violations of use of the illegally obtained information.  Plaintiff estimates his actual damages to be between $1,000,000 and $2,000,000.
   b.      Punitive damages in an amount in excess of $5,000,000.
   c.      Attorney's fees and costs unknown at this time.

2.      State Wiretap Damages Pursuant to K.S.A. 22-2518(a)-(c):
   a.      The greater of the amount between Plaintiff's estimated actual damages or statutory damages of $100 per each day of violation, including violations of use of the illegally obtained information.  Plaintiff estimates his actual damages to be between $1,000,000 and $2,000,000.
   b.      Punitive damages in an amount in excess of $5,000,000.
   c.      Attorney's fees and costs unknown at this time.

3.      Plaintiff reserves the right to amend these estimates as additional information becomes known and calculations are able to be more precisely made.

4.      Documents supportive of these calculations are generally listed above.

5

<u>For Plaintiff Anthony Thompson</u>:

Damage calculations are uncertain at this time, but Plaintiff Thompson believes he is entitled to the following damage categories and quantities:

1.  Federal Wiretap Damages Pursuant to <u>18 U.S.C. § 2520(b)</u> and <u>(c)</u>:
    a.  The greater of the amount between Plaintiff's estimated actual damages or statutory damages of $100 per each day of violation, including violations of use of the illegally obtained information.  Plaintiff estimates his actual damages to be between $1,000,000 and $2,000,000.
    b.  Punitive damages in an amount in excess of $5,000,000.
    c.  Attorney's fees and costs unknown at this time.

2.  State Wiretap Damages Pursuant to <u>K.S.A. 22-2518(a)-(c)</u>:
    a.  The greater of the amount between Plaintiff's estimated actual damages or statutory damages of $100 per each day of violation, including violations of use of the illegally obtained information.  Plaintiff estimates his actual damages to be between $1,000,000 and $2,000,000.
    b.  Punitive damages in an amount in excess of $5,000,000.
    c.  Attorney's fees and costs unknown at this time.

3.  Plaintiff reserves the right to amend these estimates as additional information becomes known and calculations are able to be more precisely made.

4.  Documents supportive of these calculations are generally listed above.

Precise damage amounts are uncertain and unknown at this time. Thus, Plaintiffs reserve the right to amend these damage calculations as additional records and statements are received and as discovery continues.

**D.    Rule 26(a)(2)(A) Disclosures of Experts:**

Expert witnesses have not been determined at this point in time but such information will be disclosed pursuant to the Court's Scheduling Order.

Respectfully submitted,
*s/ Michael Shultz*
Michael Shultz, #23133
Shultz Law Office, P.A.
445 N. Waco
Wichita, KS 67202
Telephone: (316) 269-2284
Fax: (316) 269-2011
E-mail: michael@shultzlaw.net

6

## <u>CERTIFICATE OF SERVICE</u>

A true and accurate copy of the foregoing was sent via email this 23rd day of July, 2020, to the following:

**Eric Turner**, Eturner@foulston.com
*Attorney for Defendants Opat and Wolf*

**Art Chalmers**, Art.Chalmers@ag.ks.gov
*Attorney for Defendant Virden*

**Jay Heidrick & Libby Marden**, JHeidrick@Polsinelli.com & LMarden@Polsinelli.com
*Attorneys for Defendants Sprint et al*

**Mike Seck**, mseck@fisherpatterson.com
*Attorney for Defendant Tim Brown*

**Trent Tanner & Amanda Vogelsberg & Michael Hilgers & J. Phillip Gragson**, ttanner@hilgersgraben.com & avogelsberg@hhmglaw.com & mhilgers@hilgersgraben.com & jpgragson@hhmglaw.com
*Attorneys for Defendant T-Mobile et al*

A true and accurate copy of the foregoing was sent via hardcopy and mail this 23rd day of July, 2020, to the following:

**Plaintiff Anthony Thompson**

**Plaintiff Albert Dewayne Banks**

*s/Michael Shultz*
Michael Shultz

7

**EXHIBIT**

**E**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ALBERT DEWAYNE BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-3093-HLT-GEB |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN L. OPAT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ---------------------------------------------------------) | ) | |
| | ) | |
| ANTHONY THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-3117-HLT-GEB |
| | ) | |
| DAVID L. PLATT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### EXHIBIT INDEX

In compliance with the District of Kansas Administrative Procedure IV(B)(4), Defendant Steven Opat submits the following index of exhibits in support of his motion for summary judgment contemporaneously filed in this case:

| **Exhibit** | **Description** |
|---|---|
| A | Declaration of Glen Virden |
| B | Declaration of Steven Opat |
| C | Wiretap Orders |
| D | Plaintiffs' Rule 26(a)(1) Disclosures |
| E | Exhibit Index |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ALBERT DEWAYNE BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-3093-HLT-GEB |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN L. OPAT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| -------------------------------------------------) | | |
| | ) | |
| ANTHONY THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-3117-HLT-GEB |
| | ) | |
| DAVID L. PLATT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## TONY WOLF'S MOTION FOR SUMMARY JUDGMENT

Defendant Tony Wolf moves this Court for summary judgment under Federal Rule of Civil Procedure 56 because there are no genuine issues of material fact, and he is entitled to judgment as a matter of law. Wolf files contemporaneously a Memorandum in Support detailing the arguments for this motion in Case No. 15-3117-HLT-GEB, consolidated under Case No. 15-3093-HLT-GEB.

Wolf respectfully requests that this Court enter an order granting him summary judgment on all remaining counts, for his costs and attorney fees in accordance with 42 U.S.C. § 1988, and for such and other further relief as the Court deems just and equitable.

Respectfully submitted,

FOULSTON SIEFKIN LLP

By: /s/ Eric Turner
       Eric Turner, #25065

9225 Indian Creek Parkway, Suite 600
Overland Park, KS 66210
Telephone:  (913) 498-2100
Facsimile:   (913) 498-2101
Email:  eturner@foulston.com

ATTORNEY FOR DEFENDANT
TONY WOLF

## CERTIFICATE OF SERVICE

I certify that on September 18, 2020, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all counsel currently electronically registered with the Court.

/s/ Eric Turner
ATTORNEY FOR DEFENDANT
TONY WOLF

- 2 -

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ALBERT DEWAYNE BANKS,      )
                          )
          Plaintiff,     )     Case No. 15-3093-HLT-GEB
                          )
v.                    )
                          )
STEVEN L. OPAT, et al.,      )
                          )
         Defendants.    )
                          )
-------------------------------------------------------------)
                          )
ANTHONY THOMPSON,      )
                          )
          Plaintiff,     )
                          )
v.                    )     Case No. 15-3117-HLT-GEB
                          )
DAVID L. PLATT, et al.,      )
                          )
         Defendants.    )

## TONY WOLF'S MEMORANDUM IN SUPPORT
## OF HIS MOTION FOR SUMMARY JUDGMENT

Plaintiff Anthony Thompson has sued former Geary County Sheriff Tony Wolf over a drug task force investigation and criminal prosecution that ultimately resulted in Thompson's conviction on federal drug-trafficking charges. In Case No. 15-3117, Thompson alleges that Wolf violated state and federal wiretap laws by illegally intercepting, disclosing, and using his communications. ECF No. 71.

Wolf is entitled to summary judgment on both claims because there is no genuine dispute about any material fact about Wolf's non-involvement in the investigation of Thompson's crimes. In short, aside from attending one meeting, Wolf had no involvement in the investigation and specifically did not personally participate in the wiretapping of Thompson's communications. Wolf did not intercept, disclose, or use any of Thompson's communications. Alternatively, Wolf is entitled to summary judgment based on the statutory good-faith defenses, qualified immunity, and *Heck v. Humphrey*.

# I.   STATEMENT OF UNCONTROVERTED FACTS

The facts are familiar to this Court from previous litigation in this matter. *See* Memorandum & Order, ECF No. 111 at 1-4. Defendant Tony Wolf, in accordance with Federal Rule of Civil Procedure 56 and Local Rule 56.1, sets forth the following statement of uncontroverted facts:

1.   This case arises from an investigation of drug trafficking in Geary County, Kansas that began in February 2012. The investigation was jointly conducted by members of the Kansas Bureau of Investigation, the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department. Exhibit A, Virden Declaration, ¶ 6.

2.   Tony Wolf was elected Sheriff of Geary County in November 2012. He took office in January 2013. Exhibit B, Wolf Declaration, ¶ 1.

3.   In March and April 2013, Judge David R. Platt of the Eighth Judicial District of Kansas issued wiretap orders for cell phones used by Anthony Thompson. Each order was not to exceed 30 days. Exhibit A, Virden Declaration, ¶ 9; Exhibit C, Wiretap Orders at 10-15 (March 5, 2013); 19-24 (April 4, 2013); 31-35 (April 16, 2013).

4.   The wiretap orders provided that if "the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in another jurisdiction within the United States." Exhibit C, Wiretap Orders at 12.

5.   On March 6, 2013, more than 60 law enforcement officers attended a meeting and added their signatures to a copy of the wiretap order. All officers were required to sign and date a copy of the order. Exhibit A, Virden Declaration, ¶¶ 24, 26; Exhibit C, Wiretap Orders.

6.   Wolf attended the meeting and added his name and signature to a list of names and signatures of other law enforcement officers who attended the meeting. The signatures were added to a copy of Judge Platt's wiretap order. Exhibit B, Wolf Declaration, ¶¶ 5-6; Exhibit C, Wiretap Orders at 16-18.

7. Wolf dated his name and signature March 6, 2013. He does not recall if he saw the order or read the order at the meeting. Exhibit B, Wolf Declaration, ¶ 6; Exhibit C, Wiretap Orders at 17.

8. Wolf did not question the authority of Judge Platt to enter the wiretap orders as issued. Exhibit B, Wolf Declaration, ¶ 7.

9. At the time, Wolf understood that his signature was an acknowledgment of his attendance at the meeting and an acknowledgment of his obligation to keep the investigation confidential. Exhibit B, Wolf Declaration, ¶ 8.

10. After the meeting, Wolf had no further involvement in the investigation. Exhibit B, Wolf Declaration, ¶ 9.

11. Defendant Glen Virden, a Kansas Bureau of Investigation special agent in charge of the investigation, executed the orders. Pursuant to the orders, the investigating agents monitored and collected information from intercepted calls and text messages to and from Thompson's phones. Exhibit A, Virden Declaration, ¶¶ 7, 17.

12. Wolf did not intercept any of Anthony Thompson's communications. Exhibit B, Wolf Declaration, ¶ 10.

13. Wolf did not listen to any of Anthony Thompson's calls or view any of his text messages. Exhibit B, Wolf Declaration, ¶ 11.

14. Wolf did not use any of Anthony Thompson's communications for any purpose. Exhibit B, Wolf Declaration, ¶ 12.

15. Wolf did not disclose any of Anthony Thompson's communications to anyone. Exhibit B, Wolf Declaration, ¶ 13.

16. A federal grand jury indicted Thompson on multiple counts of distributing and conspiring to distribute crack cocaine. District of Kansas Case No. 13-CR-40060-DDC, ECF No. 1.

17. Thompson moved to suppress the intercepted communications. The motion argued that investigators impermissibly intercepted Thompson's wire communications outside the Eighth Judicial District's jurisdiction. District of Kansas Case No. 13-CR-40060-DDC, ECF No. 356 at 22-29.

18. The district court judge, Judge Crabtree, ruled that "a Kansas state court judge acting under Kansas law has no authority to authorize interception outside the judge's own judicial district." District of Kansas Case No. 13-CR-40060-DDC, ECF No. 517 at 1.

19. Judge Crabtree granted the motions to suppress the extra-territorial communications, excluding all but 7,000 of the 67,000 intercepted communications from trial. As to the 7,000 surviving communications, Judge Crabtree ruled that the government had offered sufficient evidence that the communications were made by phones located inside the Eighth Judicial District. District of Kansas Case No. 13-CR-40060-DDC, ECF No. 580.

20. Although declining to apply the exclusionary rule's good-faith exception to evidence collected from the wiretaps, Judge Crabtree stated that the good-faith exception "almost certainly applies because one would not expect the officers executing the search warrants to have apprehended the subtle, technical jurisdictional defect." District of Kansas Case No. 13-CR-40060-DDC, ECF No. 650 at 6.

21. Wolf was unaware that any of the wiretap orders or parts of the wiretap orders were or might be invalid. Presumably like Judge Platt, Wolf was unaware of the technical jurisdictional defect in Judge Platt's wiretap orders or that Judge Platt lacked jurisdiction to order wiretaps of cell phone communications outside of the Eighth Judicial District. Exhibit B, Wolf Declaration, ¶¶ 14-15.

22. A jury convicted Thompson on all counts. District of Kansas Case No. 13-CR-40060-DDC, ECF No. 771.

23. Thompson filed this lawsuit April 28, 2015. ECF No. 1. Thompson filed an Amended Complaint on February 20, 2018. ECF No. 71. He claims actual damages of between $1 million and $2 million. Exhibit D, Plaintiffs' Rule 26(a)(1) Disclosures at 6.

24. After ongoing litigation, including an appeal to the Tenth Circuit Court of Appeals, two claims remain against Wolf: (1) violation of the Kansas wiretap statutes, K.S.A. 22-2514 to 22-2519; and (2) violation of the federal wiretap statutes, 18 U.S.C. §§ 2510 to 2523. *Thompson v. Platt*, 815 F. App'x 227, 235-36, 240 (10th Cir. 2020) (reversing this Court's dismissal of extra-territorial wiretapping claims in ECF No. 111 based on good-faith reliance defense).

## II.   ARGUMENTS & AUTHORITIES

Tony Wolf is entitled to summary judgment because (1) he did not intercept, disclose, or use any of Thompson's communications or otherwise personally participate in any violation of state or federal wiretap laws, (2) his good-faith reliance on a court order is a complete defense to civil liability under state and federal wiretap laws, (3) he is entitled to qualified immunity, (4) Thompson's claims are barred by *Heck v. Humphrey*, and (5) Thompson's purported damages are limited by the statute of limitations.

**Legal standard: Federal Rule of Civil Procedure 56**

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute" about "any material fact" exists and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party on the issue." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* Summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

**Legal framework: 18 U.S.C. § 2520(a), K.S.A. 22-2518(1)**

The Electronic Communications Privacy Act[1] of 1986 (18 U.S.C. §§ 2510 to 2523) provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a). Kansas law provides a nearly identical remedy. K.S.A. 22-2518(1).

A.   **Wolf did not violate state or federal wiretap laws because he did not intercept, disclose or use any of Thompson's communications.**

Other than attend one meeting, Wolf had no involvement in the investigation. SOF 6, 10. Wolf was elected Sheriff in November 2012 and officially became Sheriff in January 2013, well after the investigation was under way. SOF 1-2. Shortly after taking office, as evidenced by his signature dated March 6, 2013, Wolf attended a meeting where the investigation was discussed with more than 60 other law enforcement officers. SOF 5-6. Wolf understood that his signature was to verify his attendance and that he was obligated to keep the investigation confidential. SOF 9.

After the meeting, Wolf had no involvement in the investigation. SOF 10. He did not intercept any of Thompson's communications. SOF 12. He never listened to or saw a transcript of any of Thompson's communications. SOF 13. Thus, he had no opportunity to use or disclose any of Thompson's communications. SOF 14-15. Because Wolf did not personally participate in the investigation, Wolf did not violate state or federal wiretap laws. *See* K.S.A. 22-2518(1) (limiting civil cause of action against person who intercepted, disclosed, or used communications); 18 U.S.C. § 2520(a) (same).

---

[1] The Amended Complaint refers to 18 U.S.C. §§ 2510 to 2523 as the "Federal Wiretap Statute." ECF No. 71 at 8-9. This Court and the Tenth Circuit have called these statutes the "Electronic Communications Privacy Act of 1986." ECF No. 109 at 4; *Thompson v. Platt*, 815 F. App'x 227, 233 (10th Cir. 2020). The district court in Thompson's criminal case called the statutes "Title III of the Omnibus Crime Control and Safe Streets Act." *United States v. Banks*, No. 13-CR-40060-DDC, 2014 WL 4261344, at *1 (D. Kan. Aug. 29, 2014). Any of these titles refer to the same set of statutes, 18 U.S.C. §§ 2510 to 2523.

**B.     In the alternative, Wolf's good-faith reliance on Judge Platt's court orders is a complete defense under state and federal wiretap statutes.**

This Court's original basis for dismissal of these claims is still valid. ECF No. 111 at 7-8. Even if he had participated in the investigation, as alleged in the Amended Complaint, Wolf's good-faith reliance on a court order is a complete defense to Thompson's wiretap claims under state and federal law. *See* K.S.A. 22-2518(2) ("A good faith reliance by any person on a court order authorizing the interception of any wire, oral or electronic communication shall constitute a complete defense in any civil or criminal action brought against such person based upon such interception."); 18 U.S.C. § 2520(d)(1) ("A good faith reliance on … a court warrant or order … is a complete defense against any civil or criminal action brought under this chapter or any other law.").

This Court expressly found that the record establishes that Thompson's claims are barred by the good-faith defense. ECF No. 111 at 7. This Court agreed that "Judge Crabtree's reasoning in the underlying criminal case is equally applicable" to this civil case. ECF No. 111 at 8. In ruling on motions to suppress extra-territorial communications in Thompson's criminal case, Judge Crabtree noted that "one would not expect the officers executing search warrants to have apprehended the subtle, technical jurisdictional defect that forms the basis of the Court's threshold suppression ruling." *United States v. Banks*, No. 13-40060, 2015 WL 2401048, at *3 (D. Kan. May 15, 2015), *vacated by* 138 S. Ct. 2707 (2018). In concluding that Thompson's Amended Complaint fails to state a claim, this Court determined that the individual defendants, including Wolf, did not violate state and federal wiretap statutes because their "good faith reliance provides a complete defense to Plaintiff's wiretap claims." ECF No. 111 at 8.

The Tenth Circuit's remand of this issue does not undermine this Court's previous ruling. The Tenth Circuit held only that issue preclusion was not available as a defense in this case because Judge Crabtree did not expressly rule that the good-faith defense applied in the criminal case. *Thompson v. Platt*, 815 F. App'x 227, 236 (10th Cir. 2020) ("Because the court made only an observation about good faith

- 7 -

but not a finding, Mr. Thompson is not collaterally estopped from litigating the issue of good faith regarding his wiretap claims alleging the interception of extra-territorial communications.").

Notably, Wolf did not argue for issue preclusion either before this Court or in the Tenth Circuit. On remand, Wolf asks this Court to make its own independent finding based on the uncontroverted facts in this case that the state and federal wiretap claims against Wolf are barred by the statutory good-faith defense. Specifically, Wolf does not recall reading the wiretap order and, in any event, he was not aware that any communications would be intercepted outside the Eighth Judicial District or that Judge Platt lacked legal authority to authorize the interception of communications outside of the Eighth Judicial District. SOF 7-8, 21. To the limited extent that Wolf participated, he reasonably relied on Judge Platt's orders. For these reasons, Wolf is entitled to summary judgment based on a good-faith reliance on a court order, which is a complete defense under state and federal law. *See* K.S.A. 22-2518(2); 18 U.S.C. § 2520(d)(1).

**C.     In the alternative, Wolf is entitled to qualified immunity because he did not violate Thompson's rights or any law that was clearly established at the time.**

Alternatively, Wolf also is entitled to qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). That means that "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

The Tenth Circuit has acknowledged the availability of the qualified immunity defense for an alleged violation of the federal wiretap statutes. *See Phillips v. Bell*, 365 F. App'x 133, 143 (10th Cir. 2010). At least one district court in the circuit recently has granted summary judgment based on qualified

immunity against a claim alleging violation of the federal wiretap statutes. *See Stewart v. City of Oklahoma City*, No. 18-420, 2020 WL 4352503, at *3-4 (W.D. Okla. July 29, 2020); *see also Babb*, 614 F. Supp. 2d at 1237-38 ("In addition, there is authority holding that qualified immunity extended to government actors is a defense to Title III liability."). Other circuits have agreed. *See, e.g., John K. MacIver Inst. for Pub. Policy, Inc. v. Schmitz*, 885 F.3d 1004, 1015 (7th Cir. 2018) ("We have consistently recognized qualified immunity for alleged Wiretap Act violations."); *Tapley v. Collins*, 211 F.3d 1210, 1216 (11th Cir. 2001) ("[T]he defense of qualified immunity is available to public officials who are sued under the Federal Wiretap Act[.]"); *Blake v. Wright*, 179 F.3d 1003, 1012-13 (6th Cir. 1999) ("[W]e thus hold that a defendant may claim qualified immunity in response to a Title III claim.").

Also relevant are exceptions for law enforcement under Kansas and federal wiretap laws. Both statutes define an "investigative or law enforcement officer" to include "any officer … of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests" for certain enumerated criminal offenses. 18 U.S.C. § 2510(7); K.S.A 22-2514(5). "Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may use such contents to the extent such use is appropriate to the proper performance of his official duties." 18 U.S.C. § 2517(2); K.S.A. 22-2515(c) (same).

Here, Thompson can produce no admissible evidence that Wolf violated state or federal wiretap laws because Wolf did not personally participate in the investigation. And even so, Wolf's good-faith reliance on a court order is a complete defense to both claims. In any event, Wolf is entitled to qualified immunity because Thompson cannot show that the alleged right was clearly established. Specifically, Thompson cannot show that the law was clearly established that a sheriff protected by the law enforcement exception violates the federal wiretap statutes when intercepted communications are suppressed in criminal proceedings because of a partially invalid wiretap order.

D.   In the alternative, *Heck v. Humphrey* bars Thompson's claims because his claim for actual damages necessarily calls into question the validity of his conviction.

By claiming actual damages of between $1 million and $2 million, Thompson reverses his position from his prior briefing when he sought to avoid dismissal. SOF 23; ECF No. 89 at 8. In response to Wolf's motion to dismiss in 2018, Thompson claimed only statutory damages in an effort to show that the alleged wiretap violation "has no bearing on his conviction." ECF No. 89 at 8. As a result of Thompson's change of course, Wolf renews his argument that *Heck v. Humphrey*, 512 U.S. 477 (1994), precludes Thompson's claims.

In *Heck*, the Supreme Court held that a prisoner whose claim would call into question the validity of an underlying conviction "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. Although *Heck* involved a Section 1983 plaintiff, a complaint is barred by *Heck* regardless of the statutory basis alleged, if success in the suit would challenge the validity of a conviction that has not been previously invalided. *See Erlin v. United States*, 364 F.3d 1127, 1131 (9th Cir. 2004); *Apampa v. Layng*, 157 F.3d 1103, 1105 (7th Cir. 1998) (noting that *Heck* bar is fully applicable to federal wiretap claims).

Here, Thompson alleges more than $1 million in actual damages, presumably because of his incarceration. Thus, he necessarily questions the validity of his underlying conviction, which he cannot do under *Heck* because Judge Crabtree upheld Thompson's conviction in 2019. *United States v. Thompson*, No. 13-40060-DDC, 2019 WL 3412304 (D. Kan. July 29, 2019). In a nearly identical lawsuit filed by a Thompson's co-conspirator Johnny Ivory, Judge Crow concluded that *Heck* barred the wiretap claims because "Plaintiff simply may not litigate any claim in this civil rights complaint for damages that would undermine or invalidate his federal criminal convictions." *Ivory v. Platt*, No. 15-3051-SAC, 2016 WL 5916647, at *14 (D. Kan. Oct. 11, 2016); *see also Chapman v. Lawson*, 89 F. Supp. 3d 959, 966 (S.D. Ohio 2015) (concluding that federal wiretap claims "necessarily call into question the validity of [plaintiff's]

- 10 -

conviction and are barred by *Heck*); *Stegeman v. Rensselaer County Sheriff's Office*, No. 15-CV-21, 2017 WL 4350519, at *1 (N.D.N.Y. Aug. 23, 2017) (upholding dismissal of federal wiretap claim as barred by *Heck*). Thus, *Heck* bars these claims because Thompson's alleged actual damages necessarily would undermine his convictions.

     **E.**    **Thompson's alleged damages under federal law should be limited because this suit was filed more than two years after most of the interceptions.**

Under the federal Electronic Communications Privacy Act, a civil action "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). Here, Thompson filed this lawsuit on May 14, 2015. ECF No. 1. As a result, the Court should find as a matter of law that Banks' damages under the ECPA are limited to those incurred after May 14, 2013. There were three wiretap orders authorizing interception of Banks' communications. The first was issued March 5, 2013, and it expired April 4, 2013. *United States v. Banks*, No. 13-40060-DDC, 2014 WL 4261344, at *1 (D. Kan. Aug. 29, 2014); SOF 3. The second order was issued April 4, 2013, and it expired May 4, 2013. *Id.*; SOF 3. Any damages resulting from these orders are outside the statute of limitations and should be disregarded. The third order was issued April 16, 2013, and it expired May 16, 2013. *Id.*; SOF 3. As a matter of law, any damages resulting from this order should be limited to those incurred in the three days from May 14 to May 16, 2013.

## III.  CONCLUSION

Wolf is entitled to summary judgment on both remaining claims because he did not personally participate in the investigation of Thompson's crimes and did not intercept, use, or disclose any of Thompson's communications. Alternatively, Wolf is entitled to summary judgment based on his good-faith reliance on a court order, qualified immunity, and the *Heck v. Humphrey* bar.

Respectfully submitted,

FOULSTON SIEFKIN LLP

By: */s/ Eric Turner*
        Eric Turner, #25065
9225 Indian Creek Parkway, Suite 600
Overland Park, KS 66210
Telephone:  (913) 498-2100
Facsimile:  (913) 498-2101
Email:  eturner@foulston.com

ATTORNEY FOR DEFENDANT
TONY WOLF

## CERTIFICATE OF SERVICE

I certify that on September 18, 2020, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all counsel currently electronically registered with the Court.

/s/ *Eric Turner*
ATTORNEY FOR DEFENDANT
TONY WOLF

**EXHIBIT**

**A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

Anthony Thompson,

               Plaintiff,

v.                                 Case No. 5:15-CV-03117

Timothy Brown, *et al.,*

               Defendants.

### DECLARATION OF GLEN VIRDEN

I, Glen Virden, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am an employee of the State of Kansas with the Kansas Bureau of Investigation ("KBI"). I am an "investigative" law enforcement officer duly deputized with the statutory authority for the State of Kansas, and as further recognized and defined by K.S.A. § 22-2514(5). I am currently the Special Agent in Charge for the KBI's West Region Special Operations Division, which encompasses 46 counties on the west side of Kansas. I have been a Special Agent in the Special Operations Division of the KBI since October of 2001. I have a Bachelor of Science in Criminal Justice from Southwestern College, Winfield, Kansas. I am a graduate of the Kansas Law Enforcement Training Center. I have attended numerous seminars and law enforcement education courses while with the KBI. For example, I am a 2017 graduate of Federal Bureau of Investigation National Academy.

2.      I make this Declaration from my personal knowledge.

3.     I am a United States citizen, over 18 years of age, and a resident of the State of Kansas.

4.     Service of the Amended Complaint and summons was made on me by mail received on March 13, 2018. This is the only service of a complaint or summons that I received pertaining to this litigation.

5.     I am an "investigative or law enforcement officer" as that phrase is defined in K.S.A. § 22-2514(5) and 18 U.S.C. § 2510(7).

6.     For approximately thirteen months, starting in or about February 2012, an investigation was jointly conducted by the KBI, the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department, into a narcotics-trafficking conspiracy ("Narcotics-Trafficking investigation").

7.     I was the case agent for the KBI, *i.e.*, the lead law enforcement officer for the KBI, related to the Narcotics-Trafficking investigation.

8.     During the course of the Narcotics-Trafficking investigation, communications from and to seven cellular phones were intercepted for different lengths of time pursuant to orders authorizing the interceptions issued by the Eighth Judicial District, Kansas, District Court Judge David Platt ("Judge Platt"). A list of the affidavits provided in support of applications for these orders and the corresponding orders is attached as Exhibit 1. Redacted copies of the affidavits

and of the orders [in some instances added names and signatures on some orders as explained below] are also attached as Exhibits 2-17.

9.     In or around March and April 2013, Eighth Judicial District, Kansas, District Court Judge David Platt ("Judge Platt") entered orders authorizing the interception of Anthony Thompson's (and his suspected co-conspirators') oral, wire and/or electronic communications regarding 785-226-1783, with service provided by T-Mobile USA Wireless. A copy of the initial order, dated March 5, 2013, is attached as Exhibit 5.

10.     I had informed the Geary County Attorney Steven L. Opat ("Prosecutor Opat") about the Narcotics-Trafficking investigation. Prior to March 5, 2013, I, my fellow investigators in Narcotics-Trafficking investigation, and Prosecutor Opat collectively agreed that interception of Anthony Thompson's and others' cellular communications was needed and appropriate as part of the investigation.

11.     Before March 5, 2013, the Narcotics-Trafficking investigation focused on trafficking of crack cocaine in Geary County, Kansas. Its investigators had discovered evidence of crack cocaine sales by Anthony Thompson in Junction City, Geary County, Kansas, which were arranged through communications on phones owned or used by Anthony Thompson.

12.     At that time, I anticipated that any criminal charges against the suspects, including Albert Banks and Anthony Thompson, in the Narcotics-

Trafficking investigation would be filed and prosecuted in the Eighth Judicial District, District Court in Geary County.

13.     I prepared and signed affidavits in order for Prosecutor Opat to request Judge Platt enter the orders referenced in paragraph 8.

14.     I did not prepare any of the orders referenced in paragraph 8, or any draft of the orders. I believe that Prosecutor Opat prepared the orders for Judge Platt's approvals and signatures.

15.     I was present when application for the initial order was made to Judge Platt on March 5, 2013. I was prepared to provide testimony required by K.S.A. § 22-2516. As part of the application for the order, Judge Platt was told whose phones would be "wiretapped" and why; how the proposed wiretaps would take place; where intercepted communications would be received and monitored, *i.e.*, the listening post was in Topeka, Kansas; and where the electronic records of the intercepted communications would be kept until their delivery to the Eighth Judicial District, District Court.

16.     The draft order submitted to Judge Platt contemplated interception of communications outside of the Eighth Judicial District. The order Judge Platt entered on March 5, 2013 provided, in part: "IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in another jurisdiction within the United States."

17.     Beginning March 7, 2013, law enforcement officers from the KBI, the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department took turns monitoring and collecting data about call and texts generally in real time. I personally monitored and collected some intercepted communications. I also reviewed copies of some intercepted communications attached to investigative reports prepared by other law enforcement officers.

18.     Pursuant to Judge Platt's March 5, 2013 order, progress reports were made to the judge by an attorney with Geary County Attorney's Office and KBI Special Agent Amanda Young on or about the tenth, twentieth and thirtieth day after March 5, 2013 showing the progress made toward achievement of the objectives authorized by the order and the need for continued interception.

19.     Upon Prosecutor Opat's additional applications on April 4, 2013, to extend the March 5, 2013 order, and on April 16, 2013 concerning another telephone number, 785-226-2893, with service provided by T-Mobile USA, Judge Platt issued orders authorizing the interception of Anthony Thompson's (and his suspected co-conspirators') oral, wire and/or electronic communications. A copy of the April 4 extension order is attached as Exhibit 11. A copy of the April 16 order is attached as Exhibit 17.

20.     To my best memory, I was present when applications for the April orders were made to Judge Platt. I was prepared to provide testimony required

by K.S.A. § 22-2516. As with the initial order, as part of the application for the order, Judge Platt was told or was aware from the prior application or progress reports concerning his March order, regarding whose phones would be "wiretapped" and why; how the proposed wiretaps would take place; where intercepted communication would be received and monitored, *i.e.*, the listening post was in Topeka, Kansas; and where the electronic records of the intercepted communications would be kept until their delivery to the Eighth Judicial District, District Court.

21.     Like with the March 2013 order, the April 2013 orders provided, in part: "IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in another jurisdiction within the United States."

22.     The last intercepted communications under the three orders listed above was on or about May 10, 2013.

23.     As directed by each of the three orders, monitoring of communications was to be conducted to minimize the interception and disclosure of communication intercepted to those relevant to the Narcotics-Trafficking investigation. For example, monitoring of a communication had to be terminated immediately at the time it was determined that the communication was unrelated to the subject to the interception under the applicable federal and state statutes.

24.     To document that officers monitoring communications knew the

terms of the March 2013 order, including its minimization requirements, the officers were required to sign and date a copy of the order. On March 6, 2013, I added my name and signature to a copy of the order that Judge Platt had issued the day before on March 5, 2013. I have seen a document filed by Anthony Thompson on August 13, 2015 in this lawsuit, doc. 4-3, at 8-16. That document is a copy of the Judge Platt's order that I signed on March 6, 2013, on page 15 of doc. 4-3, for the reasons stated.

25.    I did not question the authority of Judge Platt to enter the March and April 2013 orders. I did not question the judge's authority to order interception of communications outside of the Eighth Judicial District.

26.    To my knowledge none of the 60 plus officers from the KBI, Junction City Police Department, Geary County Sheriff's Office, or Riley County Police Department, who were involved in the Narcotics-Trafficking investigation and the interception and monitoring of communications of the involved seven cellular phones, ever raised an issue about Judge Platt's authority to issue the intercept orders.

27.    I did not understand or believe that either the March or April orders or parts of those orders were invalid from the face of the orders. Nothing in the language of the orders confined the authorized interception of oral, wire and/or electronic communications to those initiated or intercepted within the Eighth Judicial District.

28.     Although not making a conscious evaluation at the time, I believed that Judge Platt was the proper judge, who had the authority to issue the March and April orders, because:

a.  Prosecutor Opat made applications to Judge Platt and Judge Platt entered the orders, both knowing how the subject communications would be intercepted;

b.  The underlying criminal activity at issue in the Narcotics-Trafficking investigation was in Geary County;

c.  The cellular phones, which were the subject of the interception orders, were used in Geary County.

d.  Anthony Thompson came into Geary County and engaged in the underlying criminal activity, and I expected this would continue.

29.     My best memory is that I was not aware of the Kansas Court of Appeals decision in *State v. Adams*, 2 Kan.App.2d 135, 576 P.2d 242 (Kan. App. 1978) until after any role I had with the interception and disclosure of Anthony Thompson's wire or electronic communications was complete. However, even if the *Adams* decision had been brought to my attention before the applications for the March and April 2013 orders, I still would not have disputed Judge Platt's authority. I would have assumed that *Adams* did not apply, that *Adams* was no longer good law or that the statutes interpreted in *Adams* had been amended.

30.     In short, I was unaware that Judge Platt lacked jurisdiction to order

wiretaps of cellular communications made and monitored outside of the Eighth

Judicial District, where under the circumstances (a) the criminal activity, which

supported the need for the wiretaps, and (b) some of the communications

expected to be intercepted had been and would take place within the geographic

confines of Judge Platt's Judicial District.

31.     I executed Judge Platt's orders believing that they were fully and

properly issued and enforceable.

32.     During the course of the Narcotics-Trafficking investigation, the

decision was made to refer the "main players" to the Office of the United States

Attorney for the District of Kansas to prosecute for violations of federal laws. This

was mostly because of the complexity of the prosecution.

I declare under penalty of perjury under the laws of the United States that

the foregoing is true and correct.

Executed on July __6__, 2020.


_____

Glen Virden



EXHIBIT

**B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ALBERT DEWAYNE BANKS,              )
                                   )
              Plaintiff,           )      Case No. 15-3093-HLT-GEB
                                   )
v.                                 )
                                   )
STEVEN L. OPAT, et al.,            )
                                   )
              Defendants.          )
                                   )
&                                  )
                                   )
ANTHONY THOMPSON,                  )
                                   )
              Plaintiff,           )
                                   )
v.                                 )      Case No. 15-3117-HLT-GEB
                                   )
DAVID L. PLATT, et al.,            )
                                   )
              Defendants.          )

### DECLARATION OF TONY WOLF

I, Tony Wolf, pursuant to 28 U.S.C. § 1746, declare as follows:

1. At all times described in the Amended Complaint, I was the Sheriff of Geary County, Kansas. I was elected Sheriff in November 2012. I was Sheriff from January 2013 to April 2019.

2. I make this Declaration from my personal knowledge.

3. I am a United States citizen, over 18 years of age, and a resident of the State of Kansas.

4. Shortly after taking office as Sheriff in 2013, I recall attending a meeting in Manhattan about an investigation into a narcotics-trafficking conspiracy that was jointly conducted by members of a drug task force that included officers from the Kansas Bureau of

Investigation, the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department.

5. While at the meeting, I added my name and signature to a list of names and signatures of several law enforcement officers who attended the meeting.

6. I have seen a document filed by Anthony Thompson in this lawsuit. That document is a copy of Judge Platt's order that I signed and dated March 6, 2013. I do not recall if I saw the order or read the order at the meeting.

7. I did not question the authority of Judge Platt to enter wiretap orders.

8. At that time, I understood that my signature was an acknowledgment of my attendance at the meeting and an acknowledgment of my obligation to keep the investigation confidential.

9. After the meeting, I had no further involvement in the investigation.

10. I did not intercept any of Anthony Thompson's communications.

11. I did not listen to any of Anthony Thompson's calls or view any of his text messages.

12. I did not use any of Anthony Thompson's communications for any purpose.

13. I did not disclose any of Anthony Thompson's communications to anyone.

14. I was unaware that any of the wiretap orders or parts of the orders were invalid.

15. I was unaware of the technical jurisdictional defect in Judge Platt's wiretap orders or that Judge Platt lacked jurisdiction to order wiretaps of cell phone communications outside of the Eighth Judicial District.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September _18_, 2020

- 2 -



Tony Wolf



Banks 5

IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

IN THE MATTER OF THE APPLICATION )
OF THE STATE OF KANSAS )          CASE NO.
FOR AN ORDER AUTHORIZING THE )
INTERCEPTION OF WIRE )             UNDER SEAL
COMMUNICATIONS TO AND FROM )
SPRINT/NEXTEL WIRELESS TELEPHONE: )
785-375-6704 )
BEARING MOBILE STATION IDENTIFICATION # )
(MSID) 00007856601961 AND ELECTRONIC SERIAL )
# (ESN) 268435459909788757 )

## ORDER AUTHORIZING THE INTERCEPTION
## OF WIRE COMMUNICATIONS

Application under oath having been made before me by Steven L. Opat, Geary County Attorney,

based on the sworn affidavit of Glen F. Virden, Senior Special Agent, Kansas Bureau of

Investigations, an investigative or law enforcement officer of the State of Kansas within the meaning

of Section 5 of K.S.A. 22-2514, *et seq*, for an Order authorizing the interception of wire

communications pursuant to K.S.A. 22-2514, *et seq*, and full consideration having been given to the

matter set forth therein, the Court finds:

A.    there is probable cause to believe that Albert DeWayne Banks, DOB ███ and Anthony

      Carlyle Thompson, DOB ███, and others named in the affidavit of the said Glen F.

      Virden, and others yet unknown (hereinafter "Target Subjects"), have committed, and are

      committing, and will continue to commit offenses enumerated in Article 57 of K.S.A. 21-

      5701 *et seq*, specifically possession of controlled substances with intent to distribute, and

      distribution of controlled substances, in violation of K.S.A. 21-5701 *et seq*, specifically 21-

D000692

**EXHIBIT C 001**

Page: 154        Date Filed: 07/10/2023        Document: 010110884675        Appellate Case: 23-3102

Page: 155       Date Filed: 07/10/2023       Document: 010110884675       Appellate Case: 23-3102

5705 and 5706; unlawful use of a communication facility to commit and facilitate the commission of drug trafficking offenses, in violation of K.S.A. 21-5707; attempts, conspiracies or solicitations to possess with intent to distribute or to distribute controlled substances, in violation of K.S.A. 21-5701 *et seq*, and K.S.A. 21-5301 and 21-5302 and 21-5304; unlawful acts involving proceeds derived from violations of K.S.A. 21-5701-5717. (Hereinafter the "Target Offenses");

B.     there is probable cause to believe that particular wire communications of the said Albert DeWayne Banks and the said Anthony Carlyle Thompson and others yet unknown (hereinafter "Target Interceptees"), concerning the above-described Target Offenses will be obtained through the interception for which authorization has herewith been applied. In particular, there is probable cause to believe that the interception of wire communications to and from the cellular telephone with the assigned telephone number 785-375-6704, bearing MSID 00007856601961 and ESN 268435459909788757 with service provided by Sprint/Nextel Wireless which is a subscribed prepaid account but with no subscriber name attached, although it is clear that the principal user is and has been identified as Albert DeWayne Banks, will further disclose, detail and reveal the specifics of the above offenses, including the depth of the conspiracy and the manner and means of how and with whom these offenses are being committed, including the unknown sources from which the distribution by Albert DeWayne Banks, Anthony Carlyle Thompson, and others is made possible;

C.     it has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ; and

D.     there is probable cause to believe that 785-375-6704 has been and will continue to be used

Appellate Case: 23-3102   Document: 010110884675   Date Filed: 07/10/2023   Page: 156

in connection with commission of the above-described offenses.

WHEREFORE, IT IS HEREBY ORDERED that Special Agents of the Kansas Bureau of Investigation, and other agencies acting under the supervision of the KBI, are authorized, pursuant to an application as authorized by K.S.A. 22-2515, made by Steven L. Opat, the duly elected and authorized County Attorney for Geary County, State of Kansas, to intercept wire communications to and from the above-described telephone.

PROVIDED that such interception(s) shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but may continue until all communications are intercepted which reveal fully the manner in which the above-named persons and others as yet unknown are committing the offenses described herein, and which reveal fully the identities of their confederates, their places of operation, and the nature of the conspiracy involved therein, or for a period of thirty (30) days measured from the day on which investigative or law enforcement officers first begin to conduct an interception under this order or ten (10) days after this order is entered, whichever is earlier.

IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States.

IT IS ORDERED FURTHER that the authorization given is intended to apply not only to the target telephone number listed above, but also to any other telephone number or telephone accessed through the above-referenced MSID number, and to any other MSID number accessed through the target telephone number referenced above, within the thirty (30) day period. The authorization is also intended to apply to the target telephone number referenced above regardless

Appellate Case: 23-3102      Document: 01110884675      Date Filed: 07/10/2023      Page: 157

of service provider, and to background conversations intercepted in the vicinity of the target telephone while the telephone is off the hook or otherwise in use.

IT IS ORDERED FURTHER that, based upon the request of the Applicant pursuant to K.S.A. 22-2514, and the definitions set forth therein, and K.S.A. 22-2515 and 2516, Sprint / Nextel, an electronic communication service provider as defined in Section 2510(15) of Title 18, United States Code and K.S.A. 22-2514, shall furnish the KBI and/or it's agents or designees with all information, facilities and technical assistance necessary to accomplish the interceptions unobtrusively and with a minimum of interference with the services that such provider is according the persons whose communications are to be intercepted, with the service provider to be compensated by the KBI for reasonable expenses incurred in providing such facilities or assistance.

IT IS ORDERED FURTHER that, to avoid prejudice to the government's criminal investigation, the provider of the electronic communications service and its agents and employees are Ordered Not To Disclose or Cause Disclosure of the Order or the request for information, facilities and assistance by the KBI or the existence of the investigation to any person other than those of its agents and employees who require this information to accomplish the services hereby ordered. In particular, said provider and its agents and employees shall not make such disclosure to a lessee, telephone subscriber or any interceptee or participant in the intercepted communications.

IT IS ORDERED FURTHER that this Order shall be binding on any subsequent provider of electronic communications services as defined in Title 18, United States Code, Section 2510(15) and K.S.A. 22-2514 *et seq*, that provides services to the target telephone number(s) listed above upon service of a certified copy of this Order without any further court order being required.

IT IS ORDERED FURTHER that this order shall be executed as soon as practicable and that all monitoring of wire communications shall be conducted in such a way as to minimize the

Page: 158     Date Filed: 07/10/2023     Document: 010110884675     Appellate Case: 23-3102

interception and disclosure of the communications intercepted to those communications relevant to the pending investigation. The interception of wire communications must terminate upon the attainment of the authorized objectives, not to exceed thirty (30) days measured from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception of this order or ten (10) days after he order is entered.

Monitoring of conversations must terminate immediately when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119, Title 18, United States Code and K.S.A. 22-2514 *et seq.*. Interception must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named Target Interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent shall spot check to insure that the conversation has not turned to criminal matters.

IT IS ORDERED FURTHER that, pursuant to Section 2518(5), Title 18, United States Code and K.S.A. 22-2514 *et seq*, in the event intercepted communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

IT IS ORDERED FURTHER that Steven L. Opat, Geary County Attorney and/or Antonio Cruz Assistant Geary County Attorney shall provide this Court with a report on or about the tenth, twentieth, and thirtieth days following the date of this Order showing what progress has been made toward achievement of the authorized objectives and the need for continued interception. If any of the above-ordered reports should become due on a weekend or holiday, IT IS ORDERED

Page: 159        Date Filed: 07/10/2023        Document: 010110884675        Appellate Case: 23-3102

FURTHER that such report shall become due on the next business day thereafter.

IT IS ORDERED FURTHER that this Order, the application, affidavit and proposed order, and all interim reports filed with this Court with regard to this matter, shall be sealed until further order of this Court, except that copies of the order, in full or redacted form, may be served on the KBI and the service provider as necessary to effectuate this order.

DONE and ORDERED this __5__ day of __March__, 20_13_, at in Junction City, Kansas.

_David R Platt_
HONORABLE  David R. Platt
District Judge

| Print Name/Agency | Sign | Date |
|---|---|---|
| _an Shedden - KBI_ | _Ivan Shedden_ | 3-6-13 |
| _Scott Ferris - KBI_ | _Scott Ferris_ | 3/6/13 |
| _Steve Bundy - KBI_ | _Steve Bundy_ | 3/6/13 |
| _Jim Leakey KBI_ | _Jim Leakey_ | 3/06/13 |
| _Amanda Young KBI_ | _Amanda Young_ | 3/06/13 |
| _Noal Campos KBI_ | | 3/06/13 |
| _Chris Turner KBI_ | | 3/6/13 |
| MATTHEW LYNN KBI | _Matthew Lynn_ | 03.06.2013 |
| Rod Page KBI | Rod Page | 03-06-2013 |
| ED BARTKOSK KBI | _Ed Bartkosk_ | 03-06-2013 |
| _Brad Ingalls_  RCPD | _By W. in_ | 03/06/2013 |
| _Shawn Stratton_ RCPD | | 3/6/2013 |

D000699
**EXHIBIT C 006**

Page: 160

Date Filed: 07/10/2023

Document: 01011084675

Appellate Case: 23-3102

Luke Braswell   RCPD

John M. Doehling                    Jim Doehl.          3-4-13
                                                        3/6/13
Brad Schorn                         B Sch

Dan Breci                           Danny Breci         3-6-13
Tony Cruz GECA                      Tony Cy             3-6-13
                                                        3/4/13
Jeff Childs                         Jeff S. Chl         3-6-13

Kurt Moldrup                                            3-6-13

Julia Goggins                       Julia Bo
                                                        3-6-13
Jessie Beck

Emmett Smith                                            3-06-13

Robert Doerkes                                          3/6/2013

BRIAN JOHNSON   RCPD                                    03-06-2013
                                                        03/06/13

Rick Deutsch                                            3/6/13

Brek C. Jager                       BREK C. JAGER       03/06/13
Mark French RCPD                    Mark French         03/06/13

Dustin J. Weisbrod RCPD                                 3/6/13

Michael PARR                                            3/6/13

Sherri Moore KBI                    Sherri Moore        3/6/13

Robert Cross KBI                                        3/6/13

DAVE BREOK KBI                                          3/6/13

Nate Boeckman                                           3/6/13
Bill White                                              3/6/13

Andrew Bezotte                                          3-6-13

RYAN Boyer KBI                      Ryan Boyer          3-6-13

_____ Kaler   KBI                                       3-16-13

D000698

**EXHIBIT C 007**

Case 5:15-cv-03093-HLT   Document 180-3   Filed 09/18/20   Page 8 of 35

Case 5:13-cr-40060-DDC   Document 379-18   Filed 07/01/14   Page 9 of 9

161

Page: 161

Date Filed: 07/10/2023

Document: 010110884675

Appellate Case: 23-3102

| PRINT NAME/AGENCY | SIGN | DATE |
|---|---|---|
| GLEN VIRDEN     KBI | *(signature)* | 03/06/13 |
| Doug Younger     KBI | *(signature)* | 03-06-2013 |
| Michael Lind     KBI | *(signature)* | 03-06-2013 |
| Shane Finley     K.B.I | *(signature)* | 03-06-2013 |
| Robert Conde     KBI | *(signature)* | 03-06-2013 |
| Frank Papish     KBI | *(signature)* | 3/6/13 |
| KELLY W. RALSTON   KBI | *(signature)* | 3/6/13 |
| JON    RANKIN    KBI | *(signature)* | 3/6/13 |
| Shawn Campiti    KBI | *(signature)* | 03-06-2013 |
| Traci Allen      KBI | *(signature)* | 3-6-13 |
| Chris Farris     KBI | *(signature)* | 3-6-13 |
| JOSH KYLE     RCPD | John O. Kyle | 3-6-13 |
| Mike Life     SCPD | *(signature)* | 03-06-13 |
| Angela C Weeks   GESO | Angela C Weeks | 03.06.13 |
| Cathy Fahey     JCPD | Cathy Fahey | 3-6-13 |
| JOSHUA BROWN    JCPD | *(signature)* | 03062013 |
| TODD GOODRICH    JCPD | *(signature)* | 030613 |
| STEVEN L. OPAT    GECA | Steven L. Opat | 3/6/13 |
| Alvin Babcock    JCPD | *(signature)* | 3-6-13 |
| Tim Brown     JCPD | Tim Brown | 030613 |
| MAVERICK CAMPBELL  GESO | *(signature)* | 03-06-13 |
| Tony Wolf    Geary County S.O. | *(signature)* | 03.06.13 |
| William R. Arnold Jr.  JCPP | *(signature)* | 03/06/13 |
| Cory Odell     JCPD | *(signature)* | 3/6/13 |
| Trish Gordan    JCPD | *(signature)* | 3-6-13 |
| Kelly Roberts    TPD | *(signature)* | 3-6-13 |
| n. the Rum Farel   KBI | *(signature)* | 3-6-13 |
| DEV SWANN     KBI | *(signature)* | 3/6/13 |

D000700

EXHIBIT C 008

Page: 162          Date Filed: 07/10/2023          Document: 010110884675          Appellate Case: 23-3102

RICHARD FINK    RCPD                          3-6-2013

Justin Stopper   GLSO                         3/6/2013

Eric S. Coffman  GESO                         3-6-2013

D000696

**EXHIBIT C 009**

THOMPSON

IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

Page: 163

Date Filed: 07/10/2023   Document: 01110884675

Appellate Case: 23-3102

| IN THE MATTER OF THE APPLICATION | ) | |
|---|---|---|
| OF THE STATE OF KANSAS | ) | CASE NO. |
| FOR AN ORDER AUTHORIZING THE | ) | |
| INTERCEPTION OF WIRE | ) | UNDER SEAL |
| COMMUNICATIONS TO AND FROM | ) | |
| T-MOBILE USA WIRELESS TELEPHONE: | ) | |
| 785-226-1783 | ) | |
| BEARING INTERNATIONAL MOBILE STATION | ) | |
| IDENTIFICATION # (IMSI) 310260445955245 | ) | |

## ORDER AUTHORIZING THE INTERCEPTION
## OF WIRE COMMUNICATIONS

Application under oath having been made before me by Steven L. Opat, Geary County Attorney,

based on the sworn affidavit of Glen F. Virden, Senior Special Agent, Kansas Bureau of

Investigations, an investigative or law enforcement officer of the State of Kansas within the meaning

of Section 5 of K.S.A. 22-2514, *et seq*, for an Order authorizing the interception of wire

communications pursuant to K.S.A. 22-2514, *et seq*, and full consideration having been given to the

matter set forth therein, the Court finds:

A.    there is probable cause to believe that Albert DeWayne Banks, DOB ████ and Anthony

Carlyle Thompson, DOB ████, and others named in the affidavit of the said Glen F.

Virden, and others yet unknown (hereinafter "Target Subjects"), have committed, and are

committing, and will continue to commit offenses enumerated in Article 57 of K.S.A. 21-

5701 *et seq*, specifically possession of controlled substances with intent to distribute, and

distribution of controlled substances, in violation of K.S.A. 21-5701 *et seq*, specifically 21-

**EXHIBIT 5**

D000775

**EXHIBIT C 010**

Appellate Case: 23-3102   Document: 010110884675   Date Filed: 07/10/2023   Page: 164

5705 and 5706, unlawful use of a communication facility to commit and facilitate the commission of drug trafficking offenses, in violation of K.S.A. 21-5707; attempts, conspiracies or solicitations to possess with intent to distribute or to distribute controlled substances, in violation of K.S.A. 21-5701 *et seq*, and K.S.A. 21-5301 and 21-5302 and 21-5304; unlawful acts involving proceeds derived from violations of K.S.A. 21-5701-5717. (Hereinafter the "Target Offenses");

B.   there is probable cause to believe that particular wire communications of the said Albert DeWayne Banks and the said Anthony Carlyle Thompson and others yet unknown (hereinafter "Target Interceptees"), concerning the above-described Target Offenses will be obtained through the interception for which authorization has herewith been applied. In particular, there is probable cause to believe that the interception of wire communications to and from the cellular telephone with the assigned telephone number 785-226-1783, bearing IMSI 310260445955245 with service provided by T-Mobile USA Wireless with subscriber listed as one Jason Roberts, although it is clear that the principal user is and has been identified as Anthony Carlyle Thompson, will further disclose, detail and reveal the specifics of the above offenses, including the depth of the conspiracy and the manner and means of how and with whom these offenses are being committed, including the unknown sources from which the distribution by Albert DeWayne Banks, Anthony Carlyle Thompson, and others is made possible;

C.   it has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ; and

D.   there is probable cause to believe that 785-226-1783 has been and will continue to be used in connection with commission of the above-described offenses.

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 165

WHEREFORE, IT IS HEREBY ORDERED that Special Agents of the Kansas Bureau of Investigation, and other agencies acting under the supervision of the KBI, are authorized, pursuant to an application as authorized by K.S.A. 22-2515, made by Steven L. Opat, the duly elected and authorized County Attorney for Geary County, State of Kansas, to intercept wire communications to and from the above-described telephone.

PROVIDED that such interception(s) shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but may continue until all communications are intercepted which reveal fully the manner in which the above-named persons and others as yet unknown are committing the offenses described herein, and which reveal fully the identities of their confederates, their places of operation, and the nature of the conspiracy involved therein, or for a period of thirty (30) days measured from the day on which investigative or law enforcement officers first begin to conduct an interception under this order or ten (10) days after this order is entered, whichever is earlier.

1T IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States.

IT 1S ORDERED FURTHER that the authorization given is intended to apply not only to the target telephone number listed above, but also to any other telephone number or telephone accessed through the above-referenced IMSI number, and to any other IMSI number accessed through the target telephone number referenced above, within the thirty (30) day period. The authorization is also intended to apply to the target telephone number referenced above regardless of service provider, and to background conversations intercepted in the vicinity of the target

telephone while the telephone is off the hook or otherwise in use.

IT IS ORDERED FURTHER that, based upon the request of the Applicant pursuant to

K.S.A. 22-2514, and the definitions set forth therein, and K.S.A. 22-2515 and 2516, T-Mobile , an

electronic communication service provider as defined in Section 2510(15) of Title 18, United States

Code and K.S.A. 22-2514, shall furnish the KBI and/or it's agents or designees with all information,

facilities and technical assistance necessary to accomplish the interceptions unobtrusively and with

a minimum of interference with the services that such provider is according the persons whose

communications are to be intercepted, with the service provider to be compensated by the KBI for

reasonable expenses incurred in providing such facilities or assistance.

IT IS ORDERED FURTHER that, to avoid prejudice to the government's criminal

investigation, the provider of the electronic communications service and its agents and employees

are Ordered Not To Disclose or Cause Disclosure of the Order or the request for information,

facilities and assistance by the KBI or the existence of the investigation to any person other than

those of its agents and employees who require this information to accomplish the services hereby

ordered. In particular, said provider and its agents and employees shall not make such disclosure to

a lessee, telephone subscriber or any interceptee or participant in the intercepted communications.

IT IS ORDERED FURTHER that this Order shall be binding on any subsequent provider

of electronic communications services as defined in Title 18, United States Code, Section 2510(15)

and K.S.A. 22-2514 *et seq*,  that provides services to the target telephone number(s) listed above

upon service of a certified copy of this Order without any further court order being required.

IT IS ORDERED FURTHER that this order shall be executed as soon as practicable and that

all monitoring of wire communications shall be conducted in such a way as to minimize the

interception and disclosure of the communications intercepted to those communications relevant to

D000778

**EXHIBIT C 013**

Page: 167     Date Filed: 07/10/2023     Document: 010110884675     Appellate Case: 23-3102

the pending investigation. The interception of wire communications must terminate upon the attainment of the authorized objectives, not to exceed thirty (30) days measured from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception of this order or ten (10) days after he order is entered.

Monitoring of conversations must terminate immediately when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119, Title 18, United States Code and K.S.A. 22-2514 *et seq.*. Interception must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named Target Interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent shall spot check to insure that the conversation has not turned to criminal matters.

IT IS ORDERED FURTHER that, pursuant to Section 2518(5), Title 18, United States Code and K.S.A. 22-2514 *et seq*, in the event intercepted communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

IT IS ORDERED FURTHER that Steven L. Opat, Geary County Attorney and /or Antonio Cruz Assistant Geary County Attorney shall provide this Court with a report on or about the tenth, twentieth, and thirtieth days following the date of this Order showing what progress has been made toward achievement of the authorized objectives and the need for continued interception. If any of the above-ordered reports should become due on a weekend or holiday, IT IS ORDERED FURTHER that such report shall become due on the next business day thereafter.

Page: 168          Date Filed: 07/10/2023          Document: 010110884675          Appellate Case: 23-3102

168

IT IS ORDERED FURTHER that this Order, the application, affidavit and proposed order, and all interim reports filed with this Court with regard to this matter, shall be sealed until further order of this Court, except that copies of the order, in full or redacted form, may be served on the KBI and the service provider as necessary to effectuate this order.

DONE and ORDERED this __5__ day of __March__, 20_13_, at in Junction City, Kansas.

HONORABLE *David R Platt*
*District Judge*

D000782

**EXHIBIT C 015**

Page: 169   Date Filed: 07/19/2023   Document: 0101108846675   Appellate Case: 23-3102

| Print Name / Agency | Sign | Date |
|---|---|---|
| Mike Rumford   ISBI | | 3-6-13 |
| Dru Swann   KBI | | 3/6/13 |
| Fran Sheddan   KBI | Fran Sheddan | 3-16-13 |
| Scott Ferris   KBI | Scott Ferris | 3/6/13 |
| Vidal Campos   KBI | | 3/6/13 |
| Chris Turner   KBI | | 3/6/13 |
| MATTHEW LYON   KBI | matthew lyon | 03-06-2013 |
| Rod Page   KBI | Rod Page | 03-06-2013 |
| ED BARTKOSKI   KBI | | 03-06-2013 |
| Brad Ingalls   RCPD | By W. dm | 03/06/2013 |
| SHAWN STANTON   RCPD | | 3/6/2013 |
| Dan Bortnick   RCPD | | 03-06-2013 |
| Lee Breault   RCPD | | 3-6-13 |
| John M. Doehling   RCPD | Joe Doehling | 3/6/13 |
| Brad Schoen | BSchn | 3-6-13 |
| Don Breci | | 3-6-12 |
| Jeff Childs | | 3-6-12 |
| Julia Goggi | Julia Gogg | 3-6-13 |
| Jessie Beck | | 3-06-13 |
| Kurt Moldrup | | 3-6-13 |
| Emmett Smith | | 3/6/2013 |
| Robert Dierks | | 83-06-2013 |
| BRIAN JOHNSON   RCPD | | 03/06/13 |
| Mark French   RCPD | Mark French | 03/06/13 |
| Rick Dentsch | | 3/6/13 |
| BREK JAGER | Brek C. Jager | 03/06/13 |

D000781

**EXHIBIT C 016**

Case 5:15-cv-03093-HLT   Document 180-3   Filed 09/18/20   Page 17 of 35

Case 5:13-cr-40060-DDC   Document 379-17   Filed 07/01/14   Page 9 of 9

170

Page: 170

Date Filed: 07/10/2023

Document: 010110884675

Appellate Case: 23-3102

| PRINT NAME/AGENCY | SIGN | DATE |
|---|---|---|
| GLEN VIRDEN    KBI | _(signature)_ | 03/06/13 |
| Doug Younger   KBI | Doug Younger | 03/06/2013 |
| Robert Conde   KBI | Robert J Conde | 03/06/2013 |
| Tim Leakey   KBI | Tim Leakey | 03/06/13 |
| Amanda Young   KBI | Amanda Young | 3/06/13 |
| Steve Bundy    KBI | _(signature)_ | 3/6/13 |
| Michael Lind   KBI | _(signature)_ | 3-6-13 |
| Shane Finley    KBI | _(signature)_ | 3-6-13 |
| Frank Papish    KBI | Frank Papish | 3/6/13 |
| KELLY W. Ralston  KBI | Kelly W. _(signature)_ | 3/6/13 |
| Shawn Campiti   KBI | Shawn Campiti | 3-6-2013 |
| Jon. Rankin    KBI | Jon Rankin | 3/6/13 |
| Traci Allen    KBI | Traci Allen | 3-6-13 |
| Chris Farris   KBI | _(signature)_ | 3-6-13 |
| Josh Kyle    RCPD | John D. Kyle | 3-6-13 |
| Mike Life    JCPD | _(signature)_ | 03-06-13 |
| Angela C. Weeks  GCSO | Angela C. Weeks | 03.06.13 |
| Cathy Fahey    JCPD | Cathy Fahey | 3-6-13 |
| JOSHUA BROWN   JCPD | _(signature)_ | 03062013 |
| TODD Godfrey    JCPD | _(signature)_ | 030613 |
| STEVEN L. OPAT   GCLA | Steven L. Opat | 3/6/13 |
| Alvin Babcock   JCPD | _(signature)_ | 3-6-13 |
| Tony Cruz    GECA | Tony Cruz | 3/6/13 |
| Tim Brown    JCPD | Tim Brown | 03/06/13 |
| MAVERICK CAMPBELL  GCSO | _(signature)_ | 03/06/13 |
| Tony Wolf   Geary County SO | _(signature)_ | 3.06.13 |
| William R. Arnold Jr.  JCPD | Will R. Arnold Jr. | 03/06/13 |
| Cory Odell    JCPD | _(signature)_ | 3/6/13 |
| Fish Girders    JCPD | F. _(signature)_ | 3-6-13 |
| Kelly Robens    TPD | Kelly Robens | 3-6-13 |

D000783

EXHIBIT C 017

Page: 171

Date Filed: 07/10/2023

Document: 010110884675

Appellate Case: 23-3102

Dustin J. Wedsebrod   RCPD   _(signature)_   3/6/13

Michael PARR   RCPD   _(signature)_   3/6/13

Nate Boechman   RCPD   _(signature)_   3/6/13

Robbart Couns   KBI   _(signature)_   3/6/13

Sherra McCra   KBI   _(signature)_   3/6/13

DAVE BREDE   KBI   _(signature)_   3/6/13

Bill White   TPD   _(signature)_   3/6/13

Andrew Beighlar   TPD   _(signature)_   3-6-13

RyAN Boyer   KBI   _(signature)_   3-6-13

Gary Koles   KBI   _(signature)_   3-6-13

RICHARD FINK   RCPD   _(signature)_   3-6-13

Eric S. Coffman   GCSO   _(signature)_   3-6-13

Justin Stopper   GCSO   _(signature)_   3/6/2013

D000779

EXHIBIT C 018

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 172

172

IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION | ) | |
| OF THE STATE OF KANSAS | ) | CASE NO. |
| FOR AN ORDER AUTHORIZING THE | ) | |
| INTERCEPTION OF WIRE | ) | UNDER SEAL |
| COMMUNICATIONS TO AND FROM | ) | |
| T-MOBILE USA WIRELESS TELEPHONE: | ) | |
| 785-226-1783 | ) | |
| BEARING INTERNATIONAL MOBILE STATION | ) | |
| IDENTIFICATION # (IMSI) 310260445955245 | ) | |

## ORDER

Application under oath having been made before been made before me by Steven L. Opat,

duly elected County Attorney for Geary County, State of Kansas, an "investigative or law

enforcement officer" of the State of Kansas within the meaning of Section 2510(7) of Title 18,

United States Codes, and K.S.A. 22-2514, for an Order authorizing the **Continued** interception (i.e.

an extension) of wire communications pursuant to K.S.A. 22-2514 *et seq*, particularly 22-

2515(a)(11) and (20) as previously authorized by this Court on March 5, 2013, and therefore full

consideration having been given to the matter set forth therein, the Court **Finds**:

    A.      there is probable cause to believe that Anthony Carlyle Thompson, Albert DeWayne

Banks, Johnny Lee Ivory, Otis Ponds, others named in the affidavits and progress reports herein, and

others as yet unknown, have committed, and are committing specifically possession of controlled

substances (with intent to distribute) and distribution of controlled substances, in violation of K.S.A.

21-5701 *et seq*, specifically 21-5705 and 5706; unlawful use of a communication facility to commit

and facilitate the commission of drug trafficking offenses, in violation of K.S.A. 21-5707; attempts,

**EXHIBIT 11**

**EXHIBIT C 019**

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 173

173

conspiracies or solicitations to possess with intent to distribute or to distribute controlled substances, in violation of K.S.A. 21-5701 *et seq*, and K.S.A. 21-5301 and 21-5302 and 21-5304; unlawful acts involving proceeds derived from violations of K.S.A. 21-5701-5717, hereinafter the "Target Offenses";

     B.     there is probable cause to believe that particular wire communications of Anthony Carlyle Thompson, Albert DeWayne Banks, Johnny Lee Ivory, Otis Ponds, others named in such previously submitted affidavits an progress reports, and others as yet unknown, concerning the above-described offenses will be obtained through the interception for which authorization has herewith been applied. In particular, there is probable cause to believe that the interception of wire communications to and from the telephone bearing number 785-226-1783, bearing International Mobile Subscriber Identity Number (IMSI): 310260445955245, Target Phone, which is a T-Mobile USA Wireless cellular telephone, subscribed to Jason Roberts, with the primary user having been identified as Anthony Carlyle Thompson, will concern the specifics of the above offenses, including the manner and means of the commission of the offenses(s);

     C.     it has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are to dangerous to employ; and

     D.     there is probable cause to believe that the telephone bearing the number 785-226-1783, bearing International Mobile Subscriber Identity Number (IMSI): 310260445955245, which is a T-Mobile USA Wireless cellular telephone, subscribed to Jason Roberts, with the primary user having been identified as Anthony Carlyle Thompson, has been and will continue to be used in connection with commission of the above-described offenses.

**EXHIBIT C 020**

Appellate Case: 23-3102     Document: 01011088675     Date Filed: 07/10/2023     Page: 174

WHEREFORE, IT IS HEREBY ORDERED that Senior Special Agent Glen Virden of the K.B.I., and other agencies acting under the supervision of a K.B.I. agent, are authorized, pursuant to an application signed by Steven L. Opat, Geary County Attorney, an authorized "investigative or law enforcement officer" of the State of Kansas within the meaning of Section 2514 of K.S.A. chapter 22, that is an attorney authorized by law to prosecute, to **Continue** to intercept wire communications to an from the above-described telephone.

PROVIDED that such interception(s) shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but may continue until all communications are intercepted which reveal fully the manner in which the above-named persons and others as yet unknown are committing the offenses described herein, and which reveal fully the identities of their confederates, their place of operations, and the nature of the conspiracy involved therein, or for a period of thirty (30) days measured from the day on which investigative or law enforcement officers first continue to conduct an interception under this order.

IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States.

IT IS ORDERED FURTHER that the authorization apply not only to the target telephone number(s) listed above, but to any changed telephone number or IMSI subsequently assigned and utilized by the target telephone within the thirty (30) day period, but to any changed telephone number or IMSI or any other telephone number subsequently assigned to or used by the instrument bearing the same IMSI as the target cellular phone within the thirty (30) day period.  It is also Ordered that the authorization apply to background conversations intercepted in the vicinity of the

EXHIBIT C 021

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 175

target telephone while the telephone is off the hook or otherwise in use.

IT IS ORDERED FURTHER that, based upon the request of the Applicant pursuant to Chapter 119 of Title 18, United States Code, and K.S.A. 22-2514 & 2516 as amended, T-Mobile USA Wireless an electronic communication service provider as defined by law shall furnish the K.B.I. will all information, facilities and technical assistance necessary to accomplish the interceptions unobtrusively and with a minimum of interference with the services that such provider is according the persons whose communications are to be intercepted, with the service provider to be compensated by the K.B.I. for reasonable expenses incurred in providing such facilities or assistance.

IT IS ORDERED FURTHER that in the event that the service provider changes during the course of the interception, interception may continue with the new service provider without further order of this Court. The State of Kansas will advise the Court of the change of service provider in the periodic progress reports submitted to this Court.

IT IS ORDERED FURTHER that, to avoid prejudice to the government's criminal investigation, the provider of the electronic communications service and its agents and employess are ordered not to disclose or cause a disclosure of the Order or the request for information, facilities and assistance by the K.B.I. or the existence of the investigation to any person other than those of its agents and employees who require this information to accomplish the services hereby ordered. In particular, said provider and its agents and employees shall not make such disclosure to a lessee, telephone subscriber or any interceptee or participant in the intercepted communications.

IT IS ORDERED FURTHER that this order shall be executed as soon as practicable and that all monitoring of wire communications shall be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to

EXHIBIT C 022

Appellate Case: 23-3102      Document: 01110884675      Date Filed: 07/10/2023      Page: 176

the pending investigation. The interception of wire communications must terminate upon that attainment of the authorized objectives, not to exceed thirty (30) days measured from the earlier of the day on which investigative or law enforcement officers first begin to **Continue** to conduct an interception of this Order.

Monitoring of conversations must terminate immediately when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119, Title 18 United States Code and K.S.A. 22-2516 as amended. Interceptions must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined during the portion of the conversation is overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent shall spot check to insure that the conversation has not turned to criminal matters.

IT IS ORDERED FURTHER that, pursuant to Chapter 119, Title 18, United States Code, and K.S.A. 22-2516 as amended, in the event intercepted communications are in a code or foreign language, and an expert in the code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

IT IS ORDERED FURTHER that Steven L. Opat Geary County Attorney or Tony Cruz Assistant Geary County Attorney, shall provide this Court with a report on or about the tenth, twentieth, and thirtieth days following the date of **the Extension of the Order of March 5, 2013** as Authorized this date showing what progress has been made toward achievement of the authorized objectives and need for continued interception. If any of the above-ordered reports should become due on a weekend or holiday, IT IS ORDERED FURTHER that such report shall become due on

**EXHIBIT C 023**

the next business day thereafter.

IT IS ORDERED FURTHER that, pursuant to law, Federal and State, (K.S.A. 22-2516), to prevent premature disclosure of an ongoing investigation, guard against fugitives, and better ensure the safety of agents and others, service of any notice requested by law may be delayed for a period of thirty (30) days after the termination of the monitoring period authorized by the warrant.

IT IS ORDERED FURTHER that T-Mobile USA Wireless, its affiliates, officers, employees, and agents not disclose the Court's Order or the underlying investigation, until notice is given as provided above.

IT IS ORDERED FURTHER that this **Order of Extension**, the application, any affidavit(s) and/or progress reports filed with this Court with regard to this matter, shall be sealed until further order of this Court, except that copies of the Order, in full or redacted form, may be served on the service provider as necessary to effectuate this Order.

DONE and ORDERED this 4 day of April, 2013, at 3:27 ~~a.m.~~/p.m. in Junction City, Kansas.

HONORABLE DAVID R. PLATT
DISTRICT JUDGE
8TH JUDICIAL DISTRICT
STATE OF KANSAS

**EXHIBIT C 024**

Date Filed: 07/10/2023   Page: 178

Document: 010110884675

Appellate Case: 23-3102

## IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

IN THE MATTER OF THE APPLICATION )
OF THE STATE OF KANSAS ) CASE NO.
FOR AN ORDER AUTHORIZING THE )
INTERCEPTION OF WIRE ) UNDER SEAL
COMMUNICATIONS TO AND FROM )
VIRGIN MOBILE USA/SPRINT PCS: )
785-717-9771 )
MOBILE STATION IDENTIFICATION NUMBER )
# (MSID) 000007853750181 )
ELECTRONIC SERIAL NUMBER )
# (ESN) 268435460914908669 )

## ORDER AUTHORIZING THE INTERCEPTION
## OF WIRE COMMUNICATIONS

Application under oath having been made before me by Steven L. Opat, Geary County Attorney,

based on the sworn affidavit of Glen F. Virden, Senior Special Agent, Kansas Bureau of

Investigations, an investigative or law enforcement officer of the State of Kansas within the meaning

of Section 5 of K.S.A. 22-2514, *et seq*, for an Order authorizing the interception of wire/oral and/or

electronic communications pursuant to K.S.A. 22-2514, *et seq*, and full consideration having been

given to the matter set forth therein, the Court finds:

A.     there is probable cause to believe that Albert DeWayne Banks, B/M DOB ███ Anthony

Thompson DOB ███ Otis Ponds, Johnny Ivory and others named in the affidavit of the

said Glen F. Virden, and others yet unknown (hereinafter "Target Subjects"), have

committed, and are committing, and will continue to commit offenses enumerated in Article

57 of K.S.A. 21-5701 *et seq*, specifically possession of controlled substances with intent to

**EXHIBIT 15**

D003025
**EXHIBIT C 025**

Page: 179

Date Filed: 07/10/2023

Document: 01110884675

Appellate Case: 23-3102

distribute, and distribution of controlled substances, in violation of K.S.A. 21-5701 *et seq*, specifically 21-5705 and 5706, unlawful use of a communication facility to commit and facilitate the commission of drug trafficking offenses, in violation of K.S.A. 21-5707; attempts, conspiracies or solicitations to possess with intent to distribute or to distribute controlled substances, in violation of K.S.A. 21-5701 *et seq*, and K.S.A. 21-5301 and 21-5302 and 21-5304; unlawful acts involving proceeds derived from violations of K.S.A. 21-5701-5717. (Hereinafter the "Target Offenses");

B.   there is probable cause to believe that particular wire/oral and/or electronic communications of the said Albert DeWayne Banks, Anthony Thompson, Otis Ponds, Johnny Ivory and others yet unknown (hereinafter "Target Interceptees"), concerning the above-described Target Offenses will be obtained through the interception for which authorization has herewith been applied. In particular, there is probable cause to believe that the interception of wire/oral and/or electronic communications to and from the cellular telephone with the assigned telephone number 785-717-9771, bearing MSID 000007853750181 and ESN 268435460914908669 with service provided by Virgin Mobile/Sprint PCS with subscriber listed as one Glenda Robertson, although it is clear that the principal user is and has been identified as Albert DeWayne Banks, will further disclose, detail and reveal the specifics of the above offenses, including the depth of the conspiracy and the manner and means of how and with whom these offenses are being committed, including the unknown sources from which the distribution by Albert DeWayne Banks, Anthony Carlyle Thompson, Otis Ponds, Johnny Ivory and others is made possible;

C.   it has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ; and

D.    there is probable cause to believe that 785-717-9771 has been and will continue to be used in connection with commission of the above-described offenses.

WHEREFORE, IT IS HEREBY ORDERED that Special Agents of the Kansas Bureau of Investigation, and other agencies acting under the supervision of the KBI, are authorized, pursuant to an application as authorized by K.S.A. 22-2515, made by Steven L. Opat, the duly elected and authorized County Attorney for Geary County, State of Kansas,  to intercept wire/oral and/or electronic communications to and from the above-described telephone.

PROVIDED that such interception(s) shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but may continue until all communications are intercepted which reveal fully the manner in which the above-named persons and others as yet unknown are committing the offenses described herein, and which reveal fully the identities of their confederates, their places of operation, and the nature of the conspiracy involved therein, or for a period of thirty (30) days measured from the day on which investigative or law enforcement officers first begin to conduct an interception under this order or ten (10) days after this order is entered, whichever is earlier.

IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States.

IT IS ORDERED FURTHER that the authorization given is intended to apply not only to the target telephone number listed above, but also to any other telephone number or telephone accessed through the above-referenced MSID number, and to any other MSID/IMSI number accessed

EXHIBIT C 027

D003027

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 180

Page: 181   Date Filed: 07/10/2023   Document: 01110884675   Appellate Case: 23-3102

through the target telephone number referenced above, within the thirty (30) day period. The authorization is also intended to apply to the target telephone number referenced above regardless of service provider, and to background conversations intercepted in the vicinity of the target telephone while the telephone is off the hook or otherwise in use.

IT IS ORDERED FURTHER that, based upon the request of the Applicant pursuant to K.S.A. 22-2514, and the definitions set forth therein, and K.S.A. 22-2515 and 2516, Virgin Mobile USA/Sprint PCS , an electronic communication service provider as defined in Section 2510(15) of Title 18, United States Code and K.S.A. 22-2514, shall furnish the KBI and/or it's agents or designees with all information, facilities and technical assistance necessary to accomplish the interceptions unobtrusively and with a minimum of interference with the services that such provider is according the persons whose communications are to be intercepted, with the service provider to be compensated by the KBI for reasonable expenses incurred in providing such facilities or assistance.

IT IS ORDERED FURTHER that, to avoid prejudice to the government's criminal investigation, the provider of the electronic communications service and its agents and employees are Ordered Not To Disclose or Cause Disclosure of the Order or the request for information, facilities and assistance by the KBI or the existence of the investigation to any person other than those of its agents and employees who require this information to accomplish the services hereby ordered. In particular, said provider and its agents and employees shall not make such disclosure to a lessee, telephone subscriber or any interceptee or participant in the intercepted communications.

IT IS ORDERED FURTHER that this Order shall be binding on any subsequent provider of electronic communications services as defined in Title 18, United States Code, Section 2510(15) and K.S.A. 22-2514 *et seq*, that provides services to the target telephone number(s) listed above upon

Page: 182       Date Filed: 07/10/2023       Document: 01110884675       Appellate Case: 23-3102

service of a certified copy of this Order without any further court order being required.

IT IS ORDERED FURTHER that this order shall be executed as soon as practicable and that all monitoring of wire/oral and/or electronic communications shall be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to the pending investigation. The interception of wire/oral and/or electronic communications must terminate upon the attainment of the authorized objectives, not to exceed thirty (30) days measured from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception of this order or ten (10) days after he order is entered.

Monitoring of conversations must terminate immediately when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119, Title 18, United States Code and K.S.A. 22-2514 *et seq.*. Interception must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named Target Interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent shall spot check to insure that the conversation has not turned to criminal matters.

IT IS ORDERED FURTHER that, pursuant to Section 2518(5), Title 18, United States Code and K.S.A. 22-2514 *et seq*, in the event intercepted communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

Page: 183     Date Filed: 07/10/2023     Document: 010110884675     Appellate Case: 23-3102

IT IS ORDERED FURTHER that Steven L. Opat, Geary County Attorney and /or Antonio Cruz Assistant Geary County Attorney shall provide this Court with a report on or about the tenth, twentieth, and thirtieth days following the date of this Order showing what progress has been made toward achievement of the authorized objectives and the need for continued interception. If any of the above-ordered reports should become due on a weekend or holiday, IT IS ORDERED FURTHER that such report shall become due on the next business day thereafter.

IT IS ORDERED FURTHER that this Order, the application, affidavit and proposed order, and all interim reports filed with this Court with regard to this matter, shall be sealed until further order of this Court, except that copies of the order, in full or redacted form, may be served on the KBI and the service provider as necessary to effectuate this order.

DONE and ORDERED this _12_ day of __April__, 20_13_, at in Junction City, Kansas.

_____
HONORABLE DAVID R. PLATT
DISTRICT JUDGE
8TH JUDICIAL DISTRICT, STATE OF KANSAS

Page: 184          Date Filed: 07/10/2023          Document: 010110884675          Appellate Case: 23-3102

IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION    ) | |
| OF THE STATE OF KANSAS    ) | CASE NO. |
| FOR AN ORDER AUTHORIZING THE    ) | |
| INTERCEPTION OF WIRE    ) | UNDER SEAL |
| COMMUNICATIONS TO AND FROM    ) | |
| T-MOBILE USA:    ) | |
| 785-226-2893    ) | |
| INTERNATIONAL MOBILE SECURITY IDENTITY    ) | |
| # (IMSI) 310260566871100    ) | |

## ORDER AUTHORIZING THE INTERCEPTION
## OF WIRE COMMUNICATIONS

Application under oath having been made before me by Steven L. Opat, Geary County Attorney,

based on the sworn affidavit of Glen F. Virden, Senior Special Agent, Kansas Bureau of

Investigations, an investigative or law enforcement officer of the State of Kansas within the meaning

of Section 5 of K.S.A. 22-2514, *et seq*, for an Order authorizing the interception of wire/oral and/or

electronic communications pursuant to K.S.A. 22-2514, *et seq*, and full consideration having been

given to the matter set forth therein, the Court finds:

A.    there is probable cause to believe that Albert DeWayne Banks, B/M DOB ████ Anthony

Thompson DOB ████ Otis Ponds, Johnny Ivory III and others named in the affidavit of

the said Glen F. Virden, and others yet unknown (hereinafter "Target Subjects"), have

committed, and are committing, and will continue to commit offenses enumerated in Article

57 of K.S.A. 21-5701 *et seq*, specifically possession of controlled substances with intent to

**EXHIBIT 17**

D003077
**EXHIBIT C 031**

Page: 185          Date Filed: 07/10/2023          Document: 010110884675          Appellate Case: 23-3102

distribute, and distribution of controlled substances, in violation of K.S.A. 21-5701 *et seq*, specifically 21-5705 and 5706, unlawful use of a communication facility to commit and facilitate the commission of drug trafficking offenses, in violation of K.S.A. 21-5707; attempts, conspiracies or solicitations to possess with intent to distribute or to distribute controlled substances, in violation of K.S.A. 21-5701 *et seq*, and K.S.A. 21-5301 and 21-5302 and 21-5304; unlawful acts involving proceeds derived from violations of K.S.A. 21-5701-5717. (Hereinafter the "Target Offenses");

B.   there is probable cause to believe that particular wire/oral and/or electronic communications of the said Albert DeWayne Banks, Anthony Thompson, Otis Ponds, Johnny Ivory III and others yet unknown (hereinafter "Target Interceptees"), concerning the above-described Target Offenses will be obtained through the interception for which authorization has herewith been applied. In particular, there is probable cause to believe that the interception of wire/oral and/or electronic communications to and from the cellular telephone with the assigned telephone number 785-226-2893, bearing IMSI 310260566871100 with service provided by T-Mobile USA with no name attached as the subscriber as it is an IN PREPAID CUSTOMER, although it is clear that the principal user is and has been identified as Anthony Carlyle Thompson, will further disclose, detail and reveal the specifics of the above offenses, including the depth of the conspiracy and the manner and means of how and with whom these offenses are being committed, including the unknown sources from which the distribution by Albert DeWayne Banks, Anthony Carlyle Thompson, Otis Ponds, Johnny Ivory and others is made possible;

C.   it has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ; and

D.    there is probable cause to believe that 785-226-2893 has been and will continue to be used

in connection with commission of the above-described offenses.

WHEREFORE, IT IS HEREBY ORDERED that Special Agents of the Kansas Bureau of

Investigation, and other agencies acting under the supervision of the KBI, are authorized, pursuant

to an application as authorized by K.S.A. 22-2515, made by Steven L. Opat, the duly elected and

authorized County Attorney for Geary County, State of Kansas,   to intercept wire/oral and/or

electronic communications to and from the above-described telephone.

PROVIDED that such interception(s) shall not terminate automatically after the first

interception that reveals the manner in which the alleged co-conspirators and others as yet unknown

conduct their illegal activities, but may continue until all communications are intercepted which

reveal fully the manner in which the above-named persons and others as yet unknown are

committing the offenses described herein, and which reveal fully the identities of their confederates,

their places of operation, and the nature of the conspiracy involved therein, or for a period of thirty

(30) days measured from the day on which investigative or law enforcement officers first begin to

conduct an interception under this order or ten (10) days after this order is entered, whichever is

earlier.

IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside

the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within

the United States.

IT IS ORDERED FURTHER that the authorization given is intended to apply not only to

the target telephone number listed above, but also to any other telephone number or telephone

accessed through the above-referenced MSID number, and to any other MSID/IMSI number accessed

Page: 186       Date Filed: 07/10/2023       Document: 010110884675       Appellate Case: 23-3102

service of a certified copy of this Order without any further court order being required.

IT IS ORDERED FURTHER that this order shall be executed as soon as practicable and that all monitoring of wire/oral and/or electronic communications shall be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to the pending investigation. The interception of wire/oral and/or electronic communications must terminate upon the attainment of the authorized objectives, not to exceed thirty (30) days measured from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception of this order or ten (10) days after he order is entered.

Monitoring of conversations must terminate immediately when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119, Title 18, United States Code and K.S.A. 22-2514 *et seq.*. Interception must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named Target Interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent shall spot check to insure that the conversation has not turned to criminal matters.

IT IS ORDERED FURTHER that, pursuant to Section 2518(5), Title 18, United States Code and K.S.A. 22-2514 *et seq*, in the event intercepted communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

Appellate Case: 23-3102       Document: 010110884675       Date Filed: 07/10/2023       Page: 188

IT IS ORDERED FURTHER that Steven L. Opat, Geary County Attorney and /or Antonio Cruz Assistant Geary County Attorney shall provide this Court with a report on or about the tenth, twentieth, and thirtieth days following the date of this Order showing what progress has been made toward achievement of the authorized objectives and the need for continued interception. If any of the above-ordered reports should become due on a weekend or holiday, IT IS ORDERED FURTHER that such report shall become due on the next business day thereafter.

IT IS ORDERED FURTHER that this Order, the application, affidavit and proposed order, and all interim reports filed with this Court with regard to this matter, shall be sealed until further order of this Court, except that copies of the order, in full or redacted form, may be served on the KBI and the service provider as necessary to effectuate this order.

DONE and ORDERED this _16_ day of _April_, 20_13_, at in Junction City, Kansas.

HONORABLE DAVID R. PLATT
DISTRICT JUDGE
8TH JUDICIAL DISTRICT, STATE OF KANSAS



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
WICHITA DIVISION

ALBERT DEWAYNE BANKS,               )
                                    )
                    Plaintiff,      )
                                    )
vs.                                 )        Case No. 15-3093-HLT-GEB
                                    )
STEVEN L. OPAT, et. al.,            )
                                    )
                    Defendants.     )
_____)
                                    )
ANTHONY THOMPSON,                   )
                                    )
                    Plaintiff,      )
                                    )
vs.                                 )        Case No. 15-3117-HLT-GEB
                                    )
GLEN VIRDEN, et. al.,               )
                                    )
                    Defendants.     )
_____)

### PLAINTIFFS ANTHONY THOMPSON AND ALBERT DEWAYNE BANKS'S RULE 26(a)(1) DISCLOSURES

COME NOW the Plaintiffs, Anthony Thompson and Albert Dewayne Banks, pursuant to

Rule 26(a)(1) of the Federal Rules of Civil Procedure, and for their Rule 26(a)(1) disclosures,

states as follows:

**A.      Rule 26(a)(1)(A)(i) Disclosures/Witnesses:**

1.      Anthony Thompson

Mr. Thompson is the Plaintiff in case 15-3117 and has personal knowledge regarding all
facts and related matters.

1

2.      Albert Banks

Mr. Banks is the Plaintiff in case 15-3093 and has personal knowledge regarding all facts and related matters.

3.      David L. Platt, current address unknown.

Judge Platt was a former Geary County State District Court judge who presided over state law proceedings involving wiretaps and criminal accusations.  He will have knowledge of the following subject matter: creation and authorization and scope of the wiretaps, state criminal charges, unconstitutionally excessive bond, and general procedural posture of the state investigation.

4.      Steven L. Opat, current address unknown but can be reached through counsel.

Mr. Opat is a defendant in the consolidated case.  He is the former Geary County Attorney. He will have knowledge regarding the circumstances of Plaintiffs' initial arrests, as well as the scope and authorization of the wiretap orders, state charges, discovery issues in the state case, interrogations done by other defendants, and federal and state wiretap law.

5.      Chris Turner, current address unknown.

Mr. Turner is a Special Agent for the Kansas Bureau of Investigation.  He will have knowledge of interrogations performed in the initial state case and arrests, disclosure of extraterritorial communication interceptions, scope and authorization of various wiretap orders, as well as the location and organization of relevant documents (including communications between various law enforcement agencies, defendants, and corporations surrounding the illegal disclosure of intercepted communications).

6.      Jordan Kurtz, current address unknown.

Mr. Kurtz was an employee in the Law Enforcement Relations Division at T-Mobile during the relevant time periods, and he will have information related to T-Mobile's policy and procedures, as well as knowledge about the contents of wiretap authorizations generally and in the underlying criminal case at issue in the present lawsuit.

7.      Andrew M. Connors, current address unknown.

Mr. Connors was an employee in the Court Order Analyst division of Verizon Wireless during the relevant time periods, and he will have information related to Verizon's policy and procedures, as well as knowledge about the contents of wiretap authorizations generally and in the underlying criminal case at issue in the present lawsuit.

8.      Stacey Beilman, current address unknown.

2

Ms. Bellman is a Senior United States Probation Officer for Kansas. She will have information and knowledge of the disclosure and use of illegally-obtained communications to her office as late as 2019, as well as how that information was used in the underlying criminal proceedings. She will also have knowledge of the location of documents and communications between law enforcement officials regarding the wiretaps and communication interceptions.

9.    Anthony Mattivi, current address unknown.

Mr. Mattivi is an Assistant United States Attorney for the District of Kansas and will have knowledge of the entire scope of the discovery process, communication interceptions, use and disclosures, as well as relevant documents and information from the underlying federal criminal case.

10.    Angie Weeks, current address unknown.

Ms. Weeks is an employee of the Junction City Police Department and will have knowledge about the authorization of various wiretap orders and the use of illegally-obtained communications and interceptions. She will have knowledge of Junction City Police Department policies and procedures, as well specific facts about the circumstances surrounding the state-turned-federal investigation into Mr. Thompson and Banks.

11.    Eric Coffman, current address unknown.

Mr. Coffman is an employee of the Geary County Sheriffs Office and will have knowledge about the authorization of various wiretap orders and the use of illegally-obtained communications and interceptions. He will have knowledge of Geary County Sheriff's Office policies and procedures, as well specific facts about the circumstances surrounding the state-turned-federal investigation into Mr. Thompson and Banks.

12.    Timothy Brown, current address unknown but can be contacted through counsel.

Mr. Brown is the Chief of the Junction City Police Department and a defendant in both consolidated cases. He will have knowledge about the authorization of various wiretap orders and the use of illegally-obtained communications and interceptions. He will have knowledge of relevant policies and procedures, as well specific facts about the circumstances surrounding the state-turned-federal investigation into Mr. Thompson and Banks.

13.    Glen Virden, current address unknown but can be contacted through counsel.

Mr. Virden is a Senior Special Agent of the KBI and a defendant in both consolidated cases. He will have knowledge about the authorization of various wiretap orders and the use of illegally-obtained communications and interceptions. He will have knowledge of relevant policies and procedures, as well specific facts about the circumstances surrounding the state-turned-federal investigation into Mr. Thompson and Banks.

14.    Tony Wolf, current address unknown but can be contacted through counsel.

3

Mr. Wolf is the Sherriff of Geary County and a defendant in both consolidated cases.  He will have knowledge about the authorization of various wiretap orders and the use of illegally-obtained communications and interceptions.  He will have knowledge of relevant policies and procedures, as well specific facts about the circumstances surrounding the state-turned-federal investigation into Mr. Thompson and Banks.

15.     Joby Harrison, current address unknown.

Mr. Harrison is a Senior Special Agent of the KBI.  He will have knowledge about the authorization of various wiretap orders and the use of illegally-obtained communications and interceptions.  He will have knowledge of relevant policies and procedures, as well specific facts about the circumstances surrounding the state-turned-federal investigation into Mr. Thompson and Banks.

16.     Nathaniel Ehrnman, current address unknown.

Mr. Ehrnman was an employee in the Subpoena Specialist Division at Sprint PCS during the relevant time periods, and he will have information related to Sprint's policy and procedures, as well as knowledge about the contents of wiretap authorizations generally and in the underlying criminal case at issue in the present lawsuit.

17.     Todd Goffrey, current address unknown.

Mr. Goffrey is a former employee of the Junction City Police Department.  He will have knowledge about the authorization of various wiretap orders and the use of illegally-obtained communications and interceptions.  He will have knowledge of relevant policies and procedures, as well specific facts about the circumstances surrounding the state-turned-federal investigation into Mr. Thompson and Banks.

18.     Brad Schoen, current address unknown.

Mr. Schoen is an employee of Riley County.  He will have knowledge about the authorization of various wiretap orders and the use of illegally-obtained communications and interceptions.  He will have knowledge of relevant policies and procedures, as well specific facts about the circumstances surrounding the state-turned-federal investigation into Mr. Thompson and Banks.

19.     Other unknown law enforcement personnel.  Upon information and belief, other law enforcement employees may have relevant information.  Their identities are currently unknown but are likely included in police reports and various documents of the KBI and federal authorities.

20.     Individuals identified in any documents produced, or to have been produced, by any defendant.

4

21.   All witnesses identified by Defendants.

**B.    Rule 26(a)(1)(A)(ii) Disclosures/Documents:**

1.    No relevant or accessible documents are currently in the sole possession of plaintiffs, but generally the various court files from both the state and federal criminal cases will include relevant documents, such as: search warrants and applications, wiretap interception orders and warrants and applications, CSLI information provided by various telecommunications companies and to law enforcement, discovery information from the underlying criminal investigations, law enforcement reports and summaries of information related to wiretaps and criminal investigation, records of sworn statements or testimony by law enforcement or other prosecutorial witnesses in previous court proceedings, communications among law enforcement personnel regarding the legality of wiretaps as well as communications from the United States Attorney's office regarding disclosures of information from state criminal investigations and wiretaps, as well as other investigatory information and records from the underlying criminal investigations.  It is believed that most of these documents are in the possession of the United States Attorney's Office or Defendants.

**C.    Rule 26(a)(1)(A)(iii) Disclosures/Computation of Damages:**

For Plaintiff Albert Dewayne Banks:

Damage calculations are uncertain at this time, but Plaintiff Banks believes he is entitled to the following damage categories and quantities:

1.    Federal Wiretap Damages Pursuant to 18 U.S.C. § 2520(b) and (c):
    a.   The greater of the amount between Plaintiff's estimated actual damages or statutory damages of $100 per each day of violation, including violations of use of the illegally obtained information.  Plaintiff estimates his actual damages to be between $1,000,000 and $2,000,000.
    b.   Punitive damages in an amount in excess of $5,000,000.
    c.   Attorney's fees and costs unknown at this time.

2.    State Wiretap Damages Pursuant to K.S.A. 22-2518(a)-(c):
    a.   The greater of the amount between Plaintiff's estimated actual damages or statutory damages of $100 per each day of violation, including violations of use of the illegally obtained information.  Plaintiff estimates his actual damages to be between $1,000,000 and $2,000,000.
    b.   Punitive damages in an amount in excess of $5,000,000.
    c.   Attorney's fees and costs unknown at this time.

3.    Plaintiff reserves the right to amend these estimates as additional information becomes known and calculations are able to be more precisely made.

4.    Documents supportive of these calculations are generally listed above.

5

<u>For Plaintiff Anthony Thompson</u>:

Damage calculations are uncertain at this time, but Plaintiff Thompson believes he is entitled to the following damage categories and quantities:

1.  Federal Wiretap Damages Pursuant to <u>18 U.S.C. § 2520(b)</u> and <u>(c)</u>:
    a.  The greater of the amount between Plaintiff's estimated actual damages or statutory damages of $100 per each day of violation, including violations of use of the illegally obtained information.  Plaintiff estimates his actual damages to be between $1,000,000 and $2,000,000.
    b.  Punitive damages in an amount in excess of $5,000,000.
    c.  Attorney's fees and costs unknown at this time.

2.  State Wiretap Damages Pursuant to <u>K.S.A. 22-2518(a)-(c)</u>:
    a.  The greater of the amount between Plaintiff's estimated actual damages or statutory damages of $100 per each day of violation, including violations of use of the illegally obtained information.  Plaintiff estimates his actual damages to be between $1,000,000 and $2,000,000.
    b.  Punitive damages in an amount in excess of $5,000,000.
    c.  Attorney's fees and costs unknown at this time.

3.  Plaintiff reserves the right to amend these estimates as additional information becomes known and calculations are able to be more precisely made.

4.  Documents supportive of these calculations are generally listed above.

Precise damage amounts are uncertain and unknown at this time. Thus, Plaintiffs reserve the right to amend these damage calculations as additional records and statements are received and as discovery continues.

**D.     Rule 26(a)(2)(A) Disclosures of Experts:**

Expert witnesses have not been determined at this point in time but such information will be disclosed pursuant to the Court's Scheduling Order.

Respectfully submitted,
*s/ Michael Shultz*
Michael Shultz, #23133
Shultz Law Office, P.A.
445 N. Waco
Wichita, KS 67202
Telephone: (316) 269-2284
Fax: (316) 269-2011
E-mail: michael@shultzlaw.net

6

## <u>CERTIFICATE OF SERVICE</u>

A true and accurate copy of the foregoing was sent via email this 23rd day of July, 2020, to the following:

**Eric Turner**, Eturner@foulston.com
*Attorney for Defendants Opat and Wolf*

**Art Chalmers**, Art.Chalmers@ag.ks.gov
*Attorney for Defendant Virden*

**Jay Heidrick & Libby Marden**, JHeidrick@Polsinelli.com & LMarden@Polsinelli.com
*Attorneys for Defendants Sprint et al*

**Mike Seck**, mseck@fisherpatterson.com
*Attorney for Defendant Tim Brown*

**Trent Tanner & Amanda Vogelsberg & Michael Hilgers & J. Phillip Gragson**, ttanner@hilgersgraben.com & avogelsberg@hhmglaw.com & mhilgers@hilgersgraben.com & jpgragson@hhmglaw.com
*Attorneys for Defendant T-Mobile et al*

A true and accurate copy of the foregoing was sent via hardcopy and mail this 23rd day of July, 2020, to the following:

**Plaintiff Anthony Thompson**

**Plaintiff Albert Dewayne Banks**

*s/Michael Shultz*
Michael Shultz

7



EXHIBIT
E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ALBERT DEWAYNE BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-3093-HLT-GEB |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN L. OPAT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ---------------------------------------------------------) | ) | |
| | ) | |
| ANTHONY THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-3117-HLT-GEB |
| | ) | |
| DAVID L. PLATT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### EXHIBIT INDEX

In compliance with the District of Kansas Administrative Procedure IV(B)(4), Defendant

Tony Wolf submits the following index of exhibits in support of his motion for summary judgment

contemporaneously filed in this case:

| Exhibit | Description |
|---|---|
| A | Declaration of Glen Virden |
| B | Declaration of Tony Wolf |
| C | Wiretap Orders |
| D | Plaintiffs' Rule 26(a)(1) Disclosures |
| E | Exhibit Index |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **ALBERT DEWAYNE BANKS,**     ) | |
| ) | |
| **Plaintiff,**   ) | |
| ) | |
| **v.**   ) | **Case No. 15-3093-HLT-GEB** |
| ) | |
| **STEVEN L. OPAT,** *et al.*,   ) | |
| ) | |
| **Defendants.**   ) | |
| _____ ) | |
| ) | |
| **ANTHONY THOMPSON,**   ) | |
| ) | |
| **Plaintiff,**   ) | |
| ) | |
| **v.**   ) | **Case No. 15-3117-HLT-GEB** |
| ) | |
| **DAVID L. PLATT,** *et al.*,   ) | |
| ) | |
| **Defendants.**   ) | |
| _____ ) | |

**DEFENDANTS SPRINT/NEXTEL WIRELESS TELEPHONE COMPANY, VIRGIN
MOBILE/SPRINT PCS, AND T-MOBILE USA INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendants Sprint/Nextel Wireless Company, Virgin Mobile/Sprint PCS, and T-Mobile

USA, Inc. (collectively, the "Carrier Defendants") move this Court for summary judgment

pursuant to Fed. R. Civ P. 56.

The Carrier Defendants are entitled to judgment in their favor as a matter of law because

the undisputed material facts establish that the March 5, 2013 Wiretap Orders authorized the

disclosure of Plaintiff's text messages to law enforcement.  The Carrier Defendants are therefore

entitled to immunity under <u>18 U.S.C. § 2511</u>.

74815360.1

And even if the immunity provisions of 18 U.S.C. § 2511 do not apply, the undisputed material facts demonstrate as a matter of law that the Carrier Defendants acted in good faith and are therefore immune to liability under 18 U.S.C. 2520(d) and its state counterpart.

Accordingly, the Carrier Defendants request that the Court enter judgment in their favor. A Memorandum in Support of this motion is being filed contemporaneously herewith and is incorporated by reference.

WHEREFORE, the above stated reasons, the Carrier Defendants request the Court enter judgment in their favor, dismiss the Plaintiffs' claims against them with prejudice, and grant the Carrier Defendants all other relief they are justly entitled.

2
74815360.1

Dated: September 18, 2020          Respectfully submitted,

                                   */s/ Jay E. Heidrick*
                                   JAY E. HEIDRICK (KS #20770)
                                   ELIZABETH M. MARDEN (KS #27817)
                                   POLSINELLI PC
                                   900 W. 48th Place, Suite 900
                                   Kansas City, MO 64112
                                   Telephone: (816) 753-1000
                                   Facsimile: (816) 753-1536
                                   jheidrick@polsinelli.com
                                   lmarden@polsinelli.com

                                   ATTORNEYS FOR SPRINT DEFENDANTS

                                   */s/ Amanda S. Vogelsberg*
                                   J. Phillip Gragson, #16103
                                   Amanda S. Vogelsberg, #23360
                                   Henson, Hutton, Mudrick & Gragson, LLP
                                   3649 SW Burlingame Rd., Ste. 200
                                   Topeka, KS 66611-2155
                                   Telephone: (785) 232-2200
                                   Facsimile: (785) 232-3344
                                   jpgragson@hhmglaw.com
                                   avogelsberg@hhmglaw.com

                                   */s/ Trenton D. Tanner*
                                   Michael T. Hilgers #24483
                                   Trenton D. Tanner #26660
                                   HILGERS GRABEN PLLC
                                   575 Fallbrook Blvd., Suite 202
                                   Lincoln, NE  68521
                                   Telephone: (402) 218-2103
                                   Facsimile: (402) 413-1880
                                   mhilgers@hilgersgraben.com
                                   ttanner@hilgersgraben.com

                                   ATTORNEYS FOR T-MOBILE DEFENDANTS

3

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 18, 2020, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all

those individuals currently electronically registered with the Court.


<u>/s/ *Jay E. Heidrick*</u>
*Attorney for Sprint Defendants*

4
74815360.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ALBERT DEWAYNE BANKS,** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**STEVEN L. OPAT,** *et al.*, )<br>)<br>**Defendants.** )<br>_____ )<br>)<br>**ANTHONY THOMPSON,** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**DAVID L. PLATT,** *et al.*, )<br>)<br>**Defendants.** )<br>_____ ) | **Case No. 15-3093-HLT-GEB**<br><br><br><br>**Case No. 15-3117-HLT-GEB** |

**DEFENDANTS SPRINT/NEXTEL WIRELESS TELEPHONE COMPANY, VIRGIN MOBILE/SPRINT PCS, AND T-MOBILE USA INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

74811351.2

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................. 3

      a.    Law Enforcement's Efforts to Obtain Wire and Electronic Communications ....... 3

      b.    Wiretap Orders .................................................................................................... 4

      c.    Service Providers' Response to the Wiretap Orders and Related Orders .............. 7

      d.    Judge Platt Was Aware Law Enforcement Was Using The March 5 Wiretap
            Orders to Intercept Electronic Communications ................................................... 9

      e.    Clarification Orders ............................................................................................. 9

      f.    The August 29, 2014 Judge Crabtree Order in the Criminal Matter ................... 10

      g.    The Tenth Circuit Decisions .............................................................................. 11

III.  ARGUMENT ...................................................................................................... 12

      a.    Legal Standard .................................................................................................. 12

      b.    The Carrier Defendants are Immune from Liability Under 18 U.S.C. § 2511 ..... 12

            i.    Judge Crabtree previously determined that the wiretap orders authorized
                  the interception of text messages ................................................................ 14

            ii.   Issue preclusion prevents Plaintiffs from re-litigating the scope of the
                  March 5 Wiretap Orders. ........................................................................... 14

            iii.  The undisputed facts show that Judge Platt and law enforcement officers
                  intended to intercept text messages ............................................................ 16

                  1.    The March 5 Wiretap Orders authorize the Carrier Defendants to
                        intercept all types of communications ................................................ 16

            iv.   The March 5 Wiretap Orders Authorize Interception of Communications
                  Without a Jurisdictional Limit ................................................................... 20

      c.    The Carrier Defendants Acted in Good Faith in Executing the March 5 Wiretap
            Orders and are Immune from Liability Under 18 U.S.C. § 2520(d) and K.S.A. §
            22-2518(2) ......................................................................................................... 21

            i.    The Carrier Defendants Acted in Good Faith by Intercepting Text
                  Messages. ................................................................................................. 22

            ii.   The Carrier Defendants Acted in Good Faith by Intercepting
                  Communications Without a Territorial Limit ............................................. 28

IV.   CONCLUSION .................................................................................................... 28

# TABLE OF AUTHORITIES

Page

**Cases**

*Banks v. Opat*,
814 F. App'x 325 (10th Cir. 2020) .............................................3, 11, 14, 15, 16, 20, 21, 22, 28

*Crawford-El v. Britton*,
523 U.S. 574, 118 S. Ct. 1584 (1998) .......................................................................................13

*Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Trust*,
744 F.3d 623 (10th Cir. 2014) .................................................................................................26

*Jacobson v. Rose*,
592 F.2d 515 (9th Cir. 1978) ...................................................................................................21

*Marshall v. Willner*,
No. 3:06CV-665-M, 2007 WL 2725971 (W.D. Ky. Sept. 14, 2007) ......................................13

*Massachusetts v. Sheppard*,
468 U.S. 981 (1984)..................................................................................................................24

*State v. Bruce*,
295 Kan. 1036, 287 P.3d 919 (2012) .......................................................................................12

*State v. Willis*,
7 Kan. App. 2d 413, 643 P.2d 1112 (1982) .............................................................................13

*Thompson v. Platt*,
815 F. App'x 227 (10th Cir. 2020) ...............................................................................11, 21, 25

*Thompson v. Platt*,
815 Fed.Appx. 227 (10th Cir. 2020)...........................................................................................3

*Thompson v. Platt*,
No. 19-3072, 2020 WL 2394007 (10th Cir. May 12, 2020)....................................................16

*U.S. v. Councilman*,
418 F.3d 67 (1st Cir. 2005) ...............................................................................................21, 27

*United States v. Banks*,
No. 5:13-cr-40060-DDC, 2014 WL 4261344 (D. Kan. Aug. 29, 2014)..2, 9, 10, 11, 14, 15, 22

*United States v. Peterson*,
812 F.2d 486, 492 (9th Cir. 1987) ...........................................................................................24

74811351.2

*United States v. Rodriguez,*
2018 WL 988054 (D. Mass. Feb. 20, 2018) ...................................................19

*Vinyl-Tech Corp. v. Continental Cas. Co.,*
Nov. CIV. 99–1053–CM, 2000 WL 1744939, at *1 (D. Kan. Nov. 15, 2000) .....................12

*Whitesel v. Sengenberger,*
222 F.3d 861 (10th Cir. 2000) ...................................................................12

**Rules**

Fed. R. Civ. P. 56 ...............................................................................1, 16

Fed. R. Civ. P. 56(c) ...............................................................................12

FRCP 12(b)(6) ...........................................................................2, 11, 12, 16

**Statutes**

18 U.S.C. 2520(d) ...................................................................................27

18 U.S.C. § 2511(2)(a)(ii) ...................................................................12, 13, 20

18 U.S.C. §§ 2511 and 2520 .........................................................................1

18 U.S.C. § 2511(a)(2)(ii) ...........................................................................12

18 U.S.C. § 2520 .....................................................................................3

18 U.S.C. § 2520(d) ..............................................................................16, 21

18 U.S.C. § 2707 ....................................................................................21

ECPA ................................................................................................21

ECPA Title II ........................................................................................21

Electronic Communications Privacy Act, 18 U.S.C. §§ 2511 ..................2, 12, 13, 14, 16, 20, 21

K.S.A. 22-2514 ...................................................................................18, 19

K.S.A. § 22-2518(2) .................................................................................21

Defendants Sprint/Nextel Wireless Company, Virgin Mobile/Sprint PCS, and T-Mobile USA, Inc. (collectively, the "Carrier Defendants") seek summary judgment pursuant to Fed. R. Civ. P. 56. The Carrier Defendants' motion centers on the following two issues, either of which is dispositive and entitles the Carrier Defendants to summary judgment:

1. *Did the scope of Judge Platt's wiretap orders authorize the interception of text messages?*

2. *Did the Carrier Defendants act in good faith in executing the wiretap orders?*

The undisputed facts establish that the answer to both of these questions is "yes." Accordingly, the immunity provisions of 18 U.S.C. §§ 2511 and 2520 preclude any claim against the Carrier Defendants, and summary judgment should be granted in their favor.

## I.      INTRODUCTION

A jury convicted Plaintiffs Albert Banks and Anthony Thompson (collectively, "Plaintiffs") of multiple counts of distributing and conspiring to distribute crack cocaine in 2015. As part of the investigation into the criminal conspiracy, law enforcement sought and obtained numerous wiretap orders from Judge Platt (Ret.) in the District Court of Geary County, Kansas. The first of these orders – which were issued on March 5, 2013 (the "March 5 Wiretap Orders") – authorized the interception and disclosure of "wire communications" for cellular telephone phone numbers used by Plaintiffs and their alleged co-conspirators.

When served with the March 5 Wiretap Orders, the Carrier Defendants provisioned the wiretap to intercept both voice and text messages. In the criminal proceedings, the Plaintiffs here moved to suppress the text messages by arguing that they were not "wire communications" as authorized by the March 5 Wiretap Orders.

During the criminal prosecution, United States District Court Judge Crabtree held that even though the March 5 Wiretap Orders discussed only "wire communications," "[b]oth Judge Platt

and the KBI understood the orders to authorize interception of text messages as well as oral communications." *United States v. Banks*, No. 5:13-cr-40060-DDC, 2014 WL 4261344 at *5 (D. Kan. Aug. 29, 2014). Judge Crabtree based this determination on, among other things, communications between law enforcement and Judge Platt regarding the wiretap orders at the time, as well as "clarification orders" later issued by Judge Platt for related wiretap orders explicitly authorizing interception of electronic communications. *Id.* In line with this determination, Judge Crabtree denied Plaintiffs' motion to suppress intercepted text messages in the criminal trial.

On April 28, 2015, Plaintiffs filed the current lawsuit in the United States District Court for the District of Kansas. Among other things, Plaintiffs allege that the Carrier Defendants violated federal and state law when they complied with law enforcement's requests based on the March 5 Wiretap Orders. The March 5 Wiretap Orders – which did not define "wire communications" – required the Carrier Defendants to provide law enforcement "with all information, facilities and technical assistance necessary to accomplish the interceptions." In order to comply with the requests, the Carrier Defendants activated technology that allowed law enforcement to directly monitor communications to and from the cellular phones in real time.  The Carrier Defendants do not monitor, store or retain the subscriber data and information delivered to the government via lawful intercept.

In 2018, all of the defendants filed motions to dismiss under FRCP 12(b)(6).  In particular, the Carrier Defendants asked that the matter be dismissed under the immunity provisions of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511 (providing immunity for carriers complying with court orders) and 2520 (providing immunity for good faith reliance on a court order), and the Kansas counterpart, to the extent applicable. The district court granted the various motions to dismiss and Plaintiffs appealed.

The Tenth Circuit affirmed in part and reversed in part. As to the Carrier Defendants, the Court held that because Judge Crabtree did not address the Carrier Defendants' actions in its good faith analysis in the criminal proceedings, the Carrier Defendants could not rely on the doctrine of collateral estoppel to establish the good faith immunity defense of 18 U.S.C. § 2520. The Court further noted that Plaintiffs had alleged in their respective complaints that the March 5 Wiretap Orders did not authorize the disclosure of text messages. Taking their allegations as true, the Tenth Circuit held that this allegation was sufficient to survive a motion to dismiss. *Thompson v. Platt*, 815 Fed.Appx. 227, 236 (10th Cir. 2020); *Banks v. Opat*, 814 F. App'x 325, 334 (10th Cir. 2020).

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### a.    Law Enforcement's Efforts to Obtain Wire and Electronic Communications

1.    On March 5, 2013, an "Application for an Order Authorizing the Interception of Wire Communications" from Steven L. Opat was filed with Judge Platt (The "Opat Application"). *See* Ex. A.[1]

2.    Steven L. Opat was the "duly elected Geary County Attorney, Kansas." *Id.* at 1.

3.    The Opat Application states:

"COMES NOW Steven L. Opat, the duly elected Geary County Attorney, Kansas and as authorized by K.S.A. 22-2515(a) and upon his oath, does hereby make application for an order authorizing the interception of wire, oral or electronic communication(s) by the Kansas Bureau of Investigation and its designees, said interception(s) providing evidence of those offenses designated in K.S.A. 22-2515(a)(11) and (20), and offenses committed ancillary to and in furtherance of such designated offenses."

*Id.*

4.    The Opat Application further states:

---

[1] All quotations to the Opat Application contained herein are from the application for the interception of Mr. Banks' communications, but it is identical to the application for the interception of Mr. Thompson's communications in all material respects. *See* Ex. I.

"All as set forth in the attached affidavit of Glen F. Virden, Senior Special Agent for the Kansas Bureau of Investigation, said affidavit being attached to this application and incorporated herein verbatim, having been reviewed in its totality by Steven L. Opat with the said Glen F. Virden for the purpose of obtaining the order authorizing such electronic interception(s)."

*Id.*

5.      On March 5, 2013, a sworn "Affidavit in Support of Application" from Glen F. Virden was filed with Judge Platt (the "Virden Affidavit"). *See* Ex. B.[2]

6.      Glen F. Virden was a "Senior Special Agent, Kansas Bureau of Investigation." *Id.* at 1.

7.      The Virden Affidavit was "submitted in support of an application for an order authorizing the interception of the wire communications of" Plaintiffs. *Id.*, ¶ 2.

8.      The Virden Affidavit states: "The Affiant requests authority to intercept the "wire communications" of individuals communicating on telephone number (785) 375-6704." *Id.*

9.      The Virden Affidavit does not define "wire communications." *See generally id.*

10.     The Virden Affidavit also states: "Affiant has set forth only the facts that Affiant believes are necessary to establish the necessary foundation for an order authorizing the interception of wire communications." *Id.* ¶ 7.

11.     The Virden Affidavit contains 18 references to "text messages" and provides content from multiple text messages between alleged co-conspirators. *Id.,* ¶¶ 7, 39, 64, 65, 70, 72, 103, 105, 278.

   **b.      Wiretap Orders**

---

[2] All quotations to the Virden Affidavit contained herein are from the affidavit submitted in support of the application for the interception of Mr. Banks' communications, but it is identical to the affidavit submitted in support of the application for the interception of Mr. Thompson's communications in all material respects. *See* Ex. J.

74811351.2

12.     On March 5, 2013, Judge Platt issued "Order[s] Authorizing the Interception of Wire Communications" for phone numbers used by Plaintiffs (the "March 5 Wiretap Orders"). *See* Ex. C.[3]

13.     Judge Platt issued the March 5 Wiretap Orders "based on the sworn affidavit of Glen F. Virden, Senior Special Agent, Kansas bureau of investigation . . . ." *Id.* at 1.

14.     The March 5 Wiretap Orders state:

"PROVIDED THAT such interception(s) shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but may continue until all communications are intercepted which reveal fully the manner in which the above-named persons and others as yet unknown are committing the offenses described herein, and which reveal fully the identities of their confederates, their places of operation, and the nature of the conspiracy involved therein, or for a period of thirty (30) days measured from the day on which investigative or law enforcement officers first begin to conduct an interception under this order or ten (10) days after this order is entered, whichever is earlier."

*Id.* at 3.

15.     The March 5 Wiretap Orders also state:

"IT IS ORDERED FURTHER that the authorization given is intended to apply not only to the target telephone number listed above, but also to any other telephone number or telephone accessed through the above-referenced MSID number, and to any other MSID number accessed through the target telephone number referenced above, within the thirty (30) day period. The authorization is also intended to apply to the target telephone number referenced above regardless of service provider, and to background conversations intercepted in the vicinity of the target telephone while the telephone is off the hook or otherwise in use."

*Id.* at 3-4.

---

[3] All quotations to the March 5 Wiretap Orders contained herein are from the order for the interception of Mr. Banks' communications, but it is identical to the order for the interception of Mr. Thompson's communications in all material respects. *See* Ex. K.

74811351.2

16.    The March 5 Wiretap Orders also state:

"IT IS ORDERED FURTHER that, based upon the request of the Applicant pursuant to K.S.A. 22-2514, and the definitions set forth therein, and K.S.A. 22-2515 and 2516, Sprint/Nextel, an electronic communication service provider as defined in Section 2510(15) of Title 18, United States Code and K.S.A. 22-2514, shall furnish the KBI and/or its agents or designees with all information, facilities and technical assistance necessary to accomplish the interceptions unobtrusively and with a minimum of interference with the services that such provider is according the persons whose communications are to be intercepted, with the service provider to be compensated by the KBI for reasonable expenses incurred in providing such facilities or assistance."

*Id.* at 4.

17.    The March 5 Wiretap Orders also state:

"IT IS ORDERED FURTHER that, to avoid prejudice to the government's criminal investigation, the provider of the electronic communications service and its agents and employees are Ordered Not To Disclose or Cause Disclosure of the Order or the request for information, facilities and assistance by the KBI or the existence of the investigation to any person other than those of its agents and employees who require this information to accomplish the services hereby ordered. In particular, said provider and its agents and employees shall not make such disclosure to a lessee, telephone subscriber or any interceptee or participant in the intercepted communications."

*Id.*

18.    The March 5 Wiretap Orders also state:

"IT IS ORDERED FURTHER that this Order shall be binding on any subsequent provider of electronic communications services as defined in Title 18, United States Code, Section 2510(15) and K.S.A. 22-2514 *et seq*, that provides services to the target telephone number(s) listed above upon service of a certified copy of this Order without any further court order being required."

*Id.*

19.    The March 5 Wiretap Orders also state: "IT IS ORDERED FURTHER that in the event the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States." *Id.*

74811351.2

20.     The first sentence of the March 5 Wiretap Orders refers to the application of Steven L. Opat, Geary County Attorney, and the sworn affidavit of Glen F. Virden, Senior Special Agent, Kansas Bureau of Investigations. *See id.* at 1.

       c.    **Service Providers' Response to the Wiretap Orders and Related Orders**

21.     The Law Enforcement Relations Team at T-Mobile ("LER Team") is responsible for responding to law enforcement requests for customer information. *See* Ex. D, Kurtz Decl., ¶ 3.

22.     In 2013, T-Mobile received approximately 317,000 requests for customer information. The requests took such forms as subpoenas, court orders, warrants, wiretap orders, and national security requests. Approximately 97% of these requests came from federal, state or local law enforcement. Of these requests, 2,308 were wiretap orders. *Id.,* ¶ 13.

23.     Virtually every wiretap order received by T-Mobile from law enforcement requests interception of both voice and text data. *Id.*, ¶ 15.

24.     In 2013 alone, Sprint received thousands of requests for customer information. A Sprint employee responsible for handling these requests might handle up to 10 or more requests per day. The requests took such forms as subpoenas, court orders, warrants, wiretap orders, and national security requests. Ex. E., Wilden Decl., ¶ 9.

25.     Virtually every wiretap order received by Sprint from law enforcement requests interception of both voice and text data. *Id.*, ¶ 10.

26.     On March 7, 2013, James T. Botts, from the Kansas Bureau of Investigations ("KBI"), transmitted a facsimile to T-Mobile's LER Team that contained one of the March 5 Wiretap Orders. The facsimile included a coversheet that instructed T-Mobile to conduct an intercept for the mobile number 785-226-1783, which belonged to Plaintiff Thompson. *See* Ex. D, ¶ 4; Ex. D1.

27.     In large, clear handwriting, in a section of the page with no other text around it, the coversheet from KBI to T-Mobile contained the following directive:



*See id.*

28.     "SMS" is an abbreviation for "short message service," the technology most commonly used for text messaging. Ex. D, ¶ 4.

29.     On or about March 7, 2013 at 11:22am law enforcement sent Sprint a CALEA coversheet instructing Sprint to provision the wiretap for the target telephone contained in the wiretap order. This document was maintained by Sprint in the ordinary course of business. *See*, Ex. E, ¶ 5.

30.     The CALEA coversheet from law enforcement instructed Sprint to "upgrade to T3." *Id.*, ¶ 6.

31.     An account note entered by an account technician at 11:57am on March 7, 2013 states that Agent Tim Botts "called to check the Wire upgrade. I fixed the line items for an upgrade." *Id.*, ¶ 7.

32.     The note history for this wiretap further indicates that several changes were made to the wiretap at approximately 11:57Am after Agent Botts' call.  One such change was the provision of text messages. This is shown on page SPRINT-BANKS-00000080 of attached Exhibit E2. This document was maintained by Sprint in the ordinary course of business. *Id.*, ¶ 8.

33.     The Carrier Defendants did not monitor, store, or retain any communications intercepted pursuant to the March 5 Wiretap Orders. *See id.*, ¶ 4, Ex. D, ¶ 7.

74811351.2

### d. Judge Platt Was Aware Law Enforcement Was Using The March 5 Wiretap Orders to Intercept Electronic Communications

34. Law enforcement subsequently submitted affidavits in support of additional wiretap applications that contained evidence of text messages intercepted pursuant to the March 5 Wiretap Orders. *United States v. Banks*, 2014 WL 4261344 at *1.

35. For example, the affidavit in support of a wiretap order regarding another co-conspirator ("Ponds Order # 1") submitted to the Court on April 2, 2013 contained references to text messages intercepted pursuant to the March 5 Wiretap Orders. *See e.g.,* Ex. F, at ¶¶ 23, 42.

36. There is no evidence that Judge Platt objected or acted surprised when the later affidavits revealed that agents had intercepted text messages. *United States v. Banks*, 2014 WL 4261344 at *4.

### e. Clarification Orders

37. On April 5, 2013 and April 23, 2013, Judge Platt issued two "Order[s] Authorizing the Interception of 'Wire, Oral, or Electronic Communications'" (the "Clarification Orders") for phone numbers believed to be owned by two of the Plaintiffs' co-conspirators. *See* Exs. G and H.

38. In the April 5, 2013 Clarification Order for Ponds Order #1 (phone number 316-347-0088), Judge Platt stated:

> ". . . based on Senior Special Agent Glen Virden's affidavit, it is apparent that the phone is being used not only for oral communication but also 'text' communication which Verizon considers as 'electronic.' Based on the affidavit of Glen Virden and the application of Steven L. Opat, Geary County Attorney, the Court specifically ORDERS that the Order of April 2, 2013, is hereby clarified to express that ***the interception of wire communications previously authorized includes all forms of communication set forth in K.S.A. 22-2514, to-wit: oral, wire, or electronic communications to and from said telephone including the interception of 'SMS data' or 'text' messaging***. All other Orders previously entered herein remain in force and effect as set forth in the Order of April 2, 2013."

*See* Ex. G at 1 (emphasis added).

9

39.    Similarly, the April 25, 2013 Clarification Order was for a later issued wiretap order

for Anthony Thompson ("Thompson Order #2") for phone number 929-268-6183, and stated:

> "Based on the application of Steven L. Opat, Geary County Attorney, the Court
> specifically ORDERS that the Order of April 2, 2013, is hereby clarified to express
> that *the interception of wire communications previously authorized includes all
> forms of communication set forth in* <u>*K.S.A. 22-2514*</u>*, to-wit: oral, wire, or
> electronic communications to and from said telephone including the interception
> of 'SMS data' or 'text' messaging*. All other Orders previously entered herein
> remain in force and effect as set forth in the Order of April 2, 2013."

*See* Ex. H at 1 (emphasis added).

### f.    The August 29, 2014 Judge Crabtree Order in the Criminal Matter

40.    On August 29, 2014, in the course of Plaintiffs' federal criminal litigation, the

District Court Judge Daniel D. Crabtree issued an order regarding Plaintiffs' motion to suppress

their text communications. *See generally United States v. Banks*, <u>2014 WL 4261344</u> (D. Kan. Aug.

29, 2014).

41.    In its August 29, 2014 Order, the Court stated:

> The Clarification Orders only applied to Ponds Order #1 and Thompson Order #2.
> Special Agent Virden testified that Judge Platt clarified those two orders only
> because those two carriers were the only carriers who refused to intercept texts
> without clarification from Judge Platt *and not because they were the only orders
> for which Judge Platt meant to authorize interception of text messages.* Although
> the Clarification Order only extended to two of the wiretap orders, the Court views
> the Clarification Orders as evidence of a broader understanding between Judge Platt
> and the KBI that the orders were supposed to authorize electronic communications.

> The Court finds that the issuing judge and executing officers both understood the
> intended scope of the wiretap authorization, and that the authorization included
> interception of text messages. The Court also finds that the officers' reliance on this
> understanding was 'objectively reasonable.'" *See Massachusetts v. Sheppard,* <u>468
> U.S. 981, 989</u>–90 (1984) ("[W]e refuse to rule that an officer is required to
> disbelieve a judge who has just advised him, by word and by action, that the warrant
> he possesses authorizes him to conduct the search he has requested."). As a result,
> the KBI's interception of text messages falls within the good-faith exception to the
> Fourth Amendment's exclusionary rule, and the Court refuses to suppress them on
> the basis that the orders authorized interception of wire communications only.

*Id.* (emphasis added).

42. The Court's holding related only to the conduct of law enforcement officers and did not address the Carrier Defendants, who were not a party to the proceeding. *See generally id.*

43. Plaintiffs were party-defendants to the motion-to-suppress litigation, participated in the suppression proceedings, and specifically litigated the scope of the March 5 Wiretap Orders. *See id.*

### g. The Tenth Circuit Decisions

44. On May 12, 2020, the Tenth Circuit issued decisions pertaining to this matter. *See generally Banks v. Opat*, 814 F. App'x 325 (10th Cir. 2020); *Thompson v. Platt*, 815 F. App'x 227 (10th Cir. 2020).

45. In both cases, the Tenth Circuit reversed this Court's dismissal of Plaintiffs' "text messages claim" against the Carrier Defendants under Fed. R. Civ. P. 12(b)(6) "because the collateral estoppel applicable to the law enforcement defendants does not extend to [the Carrier Defendants]." *Banks*, 814 F. App'x at 330-31; *Thompson*, 815 F. App'x at 233.[4]

46. The Tenth Circuit also stated: "Judge Platt's orders permitted the law enforcement defendants to intercept Mr. Banks's communications without a territorial limit." *Id.*

---

[4] The Court affirmed dismissal of Plaintiffs' § 1983 claims against the Carrier Defendants. *Banks*, 814 F. App'x at 336-37; *Thompson*, 815 F. App'x at 239.

## III.    ARGUMENT

### a.    Legal Standard

"Summary judgment is not a disfavored procedural shortcut, but an important procedure for the just, speedy and inexpensive determination of every action." *Vinyl-Tech Corp. v. Continental Cas. Co.*, Nov. CIV. A. 99–1053–CM, 2000 WL 1744939, at *1 (D. Kan. Nov. 15, 2000). Unlike a motion to dismiss, which only addresses whether a claim is properly stated, summary judgment is proper if the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Fed. R. Civ. P. 12(b)(6). "In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party." *Vinyl-Tech Corp,* 2000 WL 1744939, at *1.

The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* If the movant carries this initial burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts, identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein," from which a rational trier of fact could find for the nonmovant. *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000) (internal citations omitted).

### b.    The Carrier Defendants are Immune from Liability Under 18 U.S.C. § 2511

Summary judgment should be granted in favor of the Carrier Defendants because the Carrier Defendants – as "providers of wire or electronic communications services" complying with a facially valid court order – are provided immunity under Section 2511 of the ECPA.[5] Section

---

[5] While the Kansas wiretap act has a "good faith" immunity defense as outlined below, it does not contain a similar immunity provision as 18 U.S.C. § 2511(a)(2)(ii). But Kansas courts have repeatedly recognized that the federal wiretap act preempts any similar state statute. *State v. Bruce*,

74811351.2

2511(2)(a)(ii) provides in relevant part: "No cause of action shall lie in any court against any provider of wire or electronic communication service . . . for providing information, facilities, or assistance in accordance with the terms of a court order."

This broad immunity assures service providers like the Carrier Defendants that cooperating with law enforcement will not subject them to the burdens of litigation. When parties are entitled to immunity from suit, "there is a strong public interest in protecting [them] from the costs associated with the defense of damages actions" – an interest best served by dismissing questionable lawsuits expeditiously. *Crawford-El v. Britton*, 523 U.S. 574, 596, 118 S. Ct. 1584 (1998). "To hold otherwise would place service providers . . . and their employees in the precarious situation of risking potential liability for following what appear to be valid court orders." *Marshall v. Willner,* No. 3:06CV-665-M, 2007 WL 2725971, at *4 (W.D. Ky. Sept. 14, 2007).

Because 18 U.S.C. § 2511 grants immunity for actions taken in compliance with a court order, the application of 18 U.S.C. § 2511 comes down to one question: did Judge Platt authorize the interception of text messages in the March 5 Wiretap Orders? If he did, then the immunity provisions of 18 U.S.C. § 2511 apply and bar Plaintiffs' claims against the Carrier Defendants.

As shown below, the undisputed material facts establish that Judge Platt authorized the interception and disclosure of text messages without jurisdictional limits. Because the Carrier Defendants acted in accordance with the authorizations of Judge Platt's wiretap orders, they are entitled to immunity under 18 U.S.C. § 2511.

---

295 Kan. 1036, 1043-44, 287 P.3d 919, 924 (2012); *State v. Willis*, 7 Kan. App. 2d 413, 413, 643 P.2d 1112, 1114 (1982) ("State statutes that are more permissive than federal law are preempted."). The federal wiretap act states, "No cause of action shall lie ***in any court*** . . . ." 18 U.S.C. § 2511(2)(a)(ii) (emphasis added). Accordingly, because Carrier Defendants are entitled to immunity under § 2511, such a ruling would dispose of any state law claim as well under the doctrine of federal preemption. To hold otherwise would allow a cause of action more permissive than allowed under the federal act. *See Willis,* 7 Kan. App. 2d at 413.

13

> i.    *Judge Crabtree previously determined that the wiretap orders authorized the interception of text messages*

Just as Plaintiffs allege here, Plaintiffs and their alleged co-conspirators moved to suppress the text messages in their criminal litigation, arguing that the wiretap orders only allowed for the interception of "wire communications," which does not include text messages under the applicable wiretap statutes.

In addressing the issue, Judge Crabtree acknowledged that the face of the wiretap orders was limited to the "wire communications."  But, in analyzing whether or not the officers acted in good faith, he nonetheless held that Judge Platt authorized the interception of text messages. Specifically, in his August 29, 2014 Order, Judge Crabtree held:

> The Court finds that the issuing judge and executing officers both understood the intended scope of the wiretap authorization, and that the authorization included interception of text messages."

*United States v. Banks*, 2014 WL 4261344, at *5 (D. Kan. Aug. 29, 2014); SOF 41. And because "the [March 5 Wiretap Orders'] authorization included interception of text messages," *id.*, the Carrier Defendants acted in accordance with the scope of March 5 Wiretap Orders when they intercepted text messages. Accordingly, the immunity provisions of 18 U.S.C. § 2511 apply, and Plaintiffs' claims are barred.

> ii.    **Issue preclusion prevents Plaintiffs from re-litigating the scope of the March 5 Wiretap Orders.**

Because Judge Crabtree already determined that the scope of Judge Platt's wiretap authorizations "included interception of text messages," *id.*, the doctrine of issue preclusion precludes Plaintiffs from re-litigating that issue here.

Issue preclusion attaches "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *Banks v. Opat*,

814 F. App'x 325, 332 (10th Cir. May 12, 2020). Issue preclusion has four elements, all of which

are met here:

> (1) the issue previously decided is identical with the one presented in the action in
> question, (2) the prior action has been finally adjudicated on the merits, (3) the party
> against whom the doctrine is invoked was a party, or in privity with a party, to the
> prior adjudication, and (4) the party against whom the doctrine is raised had a full
> and fair opportunity to litigate the issue in the prior action.

*Id.* (quoting *Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir.

2004)).

Judge Crabtree's August 29, 2014 Order in Plaintiffs' criminal litigation easily meets these

criteria for issue preclusion. First, the issue decided in the Court's August 29, 2014 Order is

identical with the one presented in this action: whether the March 5 Wiretap Orders authorized the

interception of text messages. Judge Crabtree ruled that "the authorization included the

interception of text messages." SOF 41. In so concluding, he used the word "finds" to indicate that

this was part of the Court's holding rather than dicta. SOF 41. Second, the Court finally adjudicated

the issue when it "refuse[d] to suppress [text messages] on the basis that the orders authorized

interception of wire communications only." SOF 41; *see also Banks*, 2014 WL 4261344, at

*5. Third, Plaintiffs were party-defendants to the motion-to-suppress litigation that led to Judge

Crabtree's order regarding the scope of the March 5 Wiretap Orders. SOF 43. Lastly, Plaintiffs

had a full and fair opportunity to litigate the scope of the March 5 Wiretap Orders. SOF 43. They

were ably represented by counsel who participated in the suppression proceedings, which included

testimony from Agent Virden, and actually litigated the scope of the March 5 Wiretap Orders

before the Court. SOF 43.

74811351.2

Judge Crabtree held that the March 5 Wiretap Orders authorized the interception of text messages. Plaintiffs are therefore precluded from re-litigating that issue, and the immunity provisions of 18 U.S.C. § 2511 apply to the Carrier Defendants.[6]

### iii.   The undisputed facts show that Judge Platt and law enforcement officers intended to intercept text messages

#### 1.   The March 5 Wiretap Orders authorize the Carrier Defendants to intercept all types of communications

Although the March 5 Wiretap Orders did not explicitly refer to the interception of text messages – instead occasionally using the label "wire communications" – its mandate is clearly broader than the interception of phone calls. The "authorization given" under the order broadly refers to "interceptions" of the target telephone numbers generally, regardless of form or label.

SOF 14. March 5, 2013 Order. The March 5 Wiretap Orders state:

> ". . . *such interception(s)* shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but *may continue until all communications are intercepted which reveal fully the manner in which the above-named persons and others as yet unknown are committing the offenses described herein*, and which reveal fully the identities of their confederates, their places of operation, and the nature of the conspiracy involved therein . . ."

SOF 14 (emphasis added). This authorization is clear: the March 5 Wiretap Orders permit interceptions of *all communications* that reveal the manner of the offenses described in the order.

---

[6] The Tenth Circuit previously addressed the applicability of issue preclusion in this matter but not in the context raised by the Carrier Defendants here. The Tenth Circuit's decision was limited to Sprint's argument that Sprint was entitled to immunity under the "good faith reliance" provisions of 18 U.S.C. § 2520(d) because Judge Crabtree previously found the law enforcement officers acted in good faith. *Thompson v. Platt*, No. 19-3072, 2020 WL 2394007, at *2 (10th Cir. May 12, 2020); *Banks v. Opat*, 814 F. App'x 325, 327 (10th Cir. 2020). Here, the Carrier Defendants are arguing that the *actual* scope of the March 5 Wiretap Orders has already been determined – an issue not addressed by the Tenth Circuit or previously argued by the Carrier Defendants. Additionally, the previous dismissals were based on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), whereas this motion seeks summary judgment under Fed. R. Civ. P. 56.

74811351.2

The March 5 Wiretap Orders also clarify that their authorization refers to the *target telephone numbers* generally, not any specific type of communication from these target telephone numbers. They state that their authorization was "intended to apply. . . to the target telephone number listed above" as well as "any other telephone number or telephone accessed through the above-referenced MSID number, and to any other MSID number accessed through the target telephone number referenced above." SOF 15 (emphasis added). They further state that the authorization was "intended to apply to the target telephone number referenced above regardless of service provider . . . ." SOF 15. These statements indicate that, regardless of the label that Judge Platt used in the March 5 Wiretap Orders to authorize interceptions, they authorize interception of the *target telephone number*—not just its phone calls.

In fact, the sections of the orders addressed specifically to the Carrier Defendants are not limited to wire communications at all. Rather, the Orders state that "T-Mobile" and "Sprint"

> "shall furnish the KBI and/or its agents or designees with ***all information, facilities and technical assistance necessary*** to accomplish the interceptions unobtrusively and with a minimum of interference with the services that such provider is according the persons whose communications are to be intercepted, with the service provider to be compensated by the KBI for reasonable expenses incurred in providing such facilities or assistance."

SOF 16 (emphasis added). The March 5 Wiretap Orders never limit this mandate towards the Carrier Defendants, nor do they indicate that text messages are excluded from the "information, facilities, and technical assistance" that the Carrier Defendants must provide KBI to "accomplish the interceptions." *See* SOF 16 Thus, the Wiretap Orders' mandate – particularly for the Carrier Defendants – broadly calls for assistance in intercepting communications from the target telephone numbers, regardless of form.

Even though entitled "Orders Authorizing the Interception of Wire Communications," the orders specifically referred to electronic communications multiple times: "Sprint/Nextel, an

*electronic communication* service provider as defined in Section 2510(15) of Title 18, United States Code and <u>K.S.A. 22-2514</u>," "the provider of the *electronic communications* service…[is] Ordered Not To Disclose," "any subsequent provider of *electronic communications* services…that provides services to the target telephone number(s) listed above." SOF 16, 17, 18 (emphasis added). The references to providers and services as "electronic," not wire, make it clear that the authorizing judge understood that electronic communications would be intercepted.

This interpretation is also consistent with the documents upon which the March 5 Wiretap Orders are based. The Opat Application requested the authorization of the interception of "wire, oral or *electronic communications*." SOF 3. In the second paragraph, the Opat Application referenced the incorporation of the attached affidavit "for the purpose of obtaining the order authorizing such *electronic* interception(s)." SOF 4.

The first sentence of the Wiretap Orders also indicates that the order is based on the Opat Application and its accompanying Virden Affidavit. SOF 20. Like the March 5 Wiretap Orders, the Virden Affidavit also refers to the type of communications sought as "wire communications," but it plainly requests all forms of interception, including text messages. *See* SOF 7; Ex. A, March 5, 2013 Virden Affidavit, ¶ 2. The Affidavit – which "set[s] forth only the facts that Affiant believes are necessary to establish the necessary foundation for an order authorizing the interception," – contains 18 references to "text messages." SOF 10, 11. These 18 references to text messages throughout the Virden Affidavit make crystal clear that, although law enforcement labeled the type of communications sought as "wire communications," this included text messages. The March 5 Wiretap Orders, in turn, invoke this Affidavit, supporting Judge Crabtree's finding that Judge Platt's "authorization included interception of text messages." SOF 41.

18

Any alleged ambiguity about the scope of the March 5 Wiretap Orders is further dispelled by the "clarifications" of the issuing judge on April 5, 2013 and April 23, 2013. *See United States v. Rodriguez*, 2018 WL 988054, at *4 (D. Mass. Feb. 20, 2018) ("It is for the court, and not the service provider, to decide whether interception is warranted."). As Judge Crabtree noted, although Judge Platt clarified only two of the four relevant orders authorizing interception of "wire communications" for the four alleged co-conspirators, this was because those two orders were the only ones where carriers had refused to produce text messages, not because those two were the only ones that allowed text messages. SOF 41. These "Clarification Orders" were evidence of a "broader understanding" that the "orders were supposed to authorize interception of electronic communications." SOF 41. Judge Platt indicated in the Clarification Orders that "based on Senior Special Agent Glen Virden's affidavit, it is apparent that the phone is being used . . . for . . . 'text communication.'" SOF 38. On that basis, Judge Platt clarified that the "wire communications previously authorized includes all forms of communication set forth in K.S.A. 22-2514, to-wit: oral, wire, or electronic communications to and from said telephone including the interception of 'SMS data' or 'text' messaging." SOF 38. In clarifying this point, Judge Platt noted that while his prior orders did not distinguish between *wire* and *electronic* communications, nor did they carve out text messages from his authorization; instead, he clarified that text messages were included in the category of "wire communications" that he previously authorized. SOF 38.

Just as Judge Crabtree found, this shows Judge Platt's intention that "wire communications" authorized by Judge Platt in the criminal investigation – including the March 5 Wiretap Orders – was not limited to the statutory definition of "wire communications"; but was instead a broader authorization to include interception of text messages.

74811351.2

For these reasons, the March 5 Wiretap Orders authorize the interception of all communications, regardless of form. The Carrier Defendants complied with the March 5 Wiretap Orders and are therefore entitled to immunity under 18 U.S.C. § 2511(2)(a)(ii).

### iv.   The March 5 Wiretap Orders Authorize Interception of Communications Without a Jurisdictional Limit

Plaintiffs do not appear to state a claim against the Carrier Defendants for intercepting communications outside of the issuing judge's territorial jurisdiction. *See* Banks Doc. 74, Am. Compl., ¶ 12 (listing allegations against the Carrier Defendants, Plaintiffs do not address the jurisdiction or territorial limits of the intercepted communications). But if the Court finds that such a claim is stated, the Carrier Defendants' actions complied with the terms of a facially valid court order pursuant to 18 U.S.C. § 2511.

The Wiretap Orders expressly permitted the interception of communications without a territorial limit. The Wiretap Orders stated that "in the event the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States." SOF 19; *see also Banks*, 814 F. App'x at 333 ("Judge Platt's orders permitted the law enforcement defendants to intercept Mr. Banks's communications without a territorial limit."). Although the court later excluded communications intercepted outside of Judge Platt's judicial district, the Carrier Defendants' interception of communications – which occurred immediately following the issuance of the Wiretap Orders – complied with the Wiretap Orders' express terms. For that reason, the Carrier Defendants are immune from liability for complying with the express terms of the court order.

c.   **The Carrier Defendants Acted in Good Faith in Executing the March 5 Wiretap Orders and are Immune from Liability Under <u>18 U.S.C. § 2520(d)</u> and <u>K.S.A. § 22-2518(2)</u>**

Even if the Court finds that the Carrier Defendants are not entitled as a matter of law to immunity under <u>18 U.S.C. § 2511</u> on the present summary judgment record, at the very least the undisputed material facts show that they are entitled to immunity for "good faith reliance" on the March 5 Wiretap Orders under <u>18 U.S.C. § 2520(d)</u>. Both the federal and state statutes provide "a complete defense" for "good faith reliance" on "a court warrant or order." <u>18 U.S.C. § 2520(d)</u>; <u>Kan. Stat. Ann. § 22-2518(2)</u>. The "good faith" defense applies under the ECPA if a defendant acted in an objectively reasonable manner in responding to a court order. Under this standard, a defendant's *subjective* belief is irrelevant. *See Thompson*, <u>815 F. App'x at 233</u> (citing *Davis v. Gracey*, <u>111 F.3d 1472, 1484</u> (10th Ci<u>r. 1997</u>) (stating that the good-faith defense to an <u>18 U.S.C. § 2707</u> civil claim under Title II of the ECPA for unauthorized access to stored electronic communications requires, like the Fourth Amendment, objectively reasonable reliance on a warrant); *Banks*, <u>814 F. App'x at 331</u> (same). In analyzing this statutory good faith defense, the First Circuit has recognized that:

> Congress anticipated that service providers might, in good faith, misapprehend their lawful ability to intercept or disclose communications in certain circumstances. Congress addressed that problem with a broad, affirmative good faith defense.

*U.S. v. Councilman*, <u>418 F.3d 67, 83</u> (1st Ci<u>r. 2005</u>).

The Ninth Circuit has recognized that "Congress established this defense in part 'to protect telephone companies or other persons who cooperate under court order with law enforcement officials.'" *Jacobson v. Rose*, <u>592 F.2d 515, 522</u> (9th Ci<u>r. 1978</u>). Therefore, even if the March 5 Wiretap Orders did not authorize the disclosure of text messages (which would be contrary to what Judge Crabtree and Judge Platt have previously found), the immunity provisions of <u>18 U.S.C. § 2520(d)</u> still apply to the Carrier Defendants if they acted in good faith.

21

As noted by the Tenth Circuit in this matter: "Good faith under the wiretap statutes derives from the good faith exception for the Fourth Amendment's exclusionary rule." *Banks*, <u>814 F. App'x at 332</u>. And the good faith exception under the Fourth Amendment's exclusionary rule "applies when an officer has a good faith, but incorrect or mistaken, belief about a fact." *Banks,* <u>2014 WL 4261344</u>, at *3 (citing *United States v. Salinas-Cano,* <u>959 F.2d 861, 865</u> (10th Cir. <u>1992)</u>). Like the law enforcement officers Judge Crabtree found to have acted in good faith, the Carrier Defendants also acted in an "objectively reasonable" manner in carrying out the wiretap orders and are therefore immune from civil liability.

> i.    ***The Carrier Defendants Acted in Good Faith by Intercepting Text Messages.***

Even if the wiretap orders were considered ambiguous without context (which is not conceded), the record is nevertheless clear that the Carrier Defendants acted in an objectively reasonable manner by intercepting text messages in response to the March 5 Wiretap Orders.

In 2013, the Carrier Defendants received hundreds of thousands of requests from various law enforcement agencies for customer information. SOF 22, 24. The Carrier Defendants respond to these requests promptly and to the best of their abilities in order to assist law enforcement agencies in their investigations. Virtually all wiretap orders received by the Carrier Defendants request both text and voice monitoring. SOF 23. The interceptions the Carrier Defendants provisioned in this case were no exception.

Any interception of Plaintiffs' text messages by Carrier Defendants that may have occurred was done in response to requests from law enforcement officers who also believed the March 5 Wiretap Orders authorized interception of both wire and text communications. *See* SOF 41. Furthermore, these very same law enforcement officers – whom Judge Crabtree already found, as a matter of law, were objectively reasonable in their belief that the orders encompassed text

messages – gave *explicit* and *conspicuous* instructions in conveying one of the March 5 Wiretap

Orders to "TURN ON SMS." SOF 27. Additionally, law enforcement officials instructed Sprint to

"upgrade" its wiretap. SOF 30. A KBI agent then contacted Sprint to check on the "upgrade" and

thereafter the wiretap was provisioned to collect text messages. SOF 31.[7]

In addition, even though the March 5 Wiretap Orders refer only to "wire communications"

– a phrase left undefined in the orders themselves – language throughout the orders makes clear

that their intended scope was sweeping. *See* SOF 14, 15 (explaining that the order was "intended

to apply to the target telephone number" and authorized "interception(s)" of "all communications"

on that target telephone number that "reveal fully the manner in which the above-named persons

and others as yet unknown are committing the offenses described herein").

Even if the Court disagrees with Point III.b., *supra* (it should not), the orders' broad

mandate at the very least *appears* to include text messages and contain no statements to the

contrary. Additionally, the sections of the orders specifically relating to the Carrier Defendants are

not limited to wire communications at all; they broadly order the Carrier Defendants to provide

"all information, facilities and technical assistance necessary to accomplish the interceptions."

SOF 16. The Wiretap Orders were also based on the Virden Affidavit—a document that references

"text messages" 18 times and was submitted to the court "for the purpose of securing authorization

for the interception" sought. SOF 7, 11, 13. The issuing judge himself clarified that "wire

communications" utilized in virtually identical wiretap orders, from the same criminal

investigation, based on a virtually identical affidavit from the same law enforcement officer, was

to include text messages, not just phone calls. SOF 38, 39. And finally, Judge Crabtree has found

---

[7] Since the probable cause standard applies to both intercepted phone calls as well as text
messages, it is beyond dispute that law enforcement here met the probable cause standard when
it requested Plaintiffs' text messages.

that the wiretap orders issued in the investigation intended to authorize – *and actually did authorize* – the interception of text messages. The fact the Carrier Defendants acted in manner consistent with the thousands of wiretap orders they receive each year and with multiple courts' later clarifications and interpretations as to the scope of the March 5 Orders, demonstrably proves objective reasonableness by the Carrier Defendants.

Much as law enforcement is permitted to rely on communications from judges to establish a good faith defense, *see Massachusetts v. Sheppard,* 468 U.S. 981, 989–90 (1984) ("We refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested"), the Carrier Defendants also acted in good faith by relying on instructions from law enforcement regarding the scope of the March 5 Wiretap Orders. For example in *United States v. Peterson*, the Ninth Circuit held that United States law enforcement acting in concert with Philippines law enforcement could rely in good faith on the Filipino authorities' (erroneous) representations that wiretaps were conducted in compliance with Filipino law. *See* 812 F.2d 486, 492 (9th Cir. 1987). The Ninth Circuit explained, "American law enforcement officers were not in an advantageous position to judge whether the search was lawful, as would have been the case in a domestic setting. Holding them to a strict liability standard for failings of their foreign associates would be even more incongruous than holding law enforcement officials to a strict liability standard as to the adequacy of domestic warrants." *Id.* Like the law enforcement officers in *Peterson*, here the Carrier Defendants were not in the same position to evaluate the adequacy of the March 5 Wiretap Orders as the law enforcement officials who had actually procured them. This reasoning is especially applicable where, as here, the Carrier Defendants were charged with facilitating hundreds of

24

thousands of these requests each year and that virtually all of the wiretap requests include both voice and text. SOF 22, 24.

The Carrier Defendants' good faith actions are further demonstrated in other undisputed facts. For example, both Sprint *and* T-Mobile independently understood the March 5 Wiretap Orders to seek the interception of text messages and produced text messages in response to the orders. *See Thompson*, 815 F. App'x at 238. The fact that both carriers independently interpreted the orders to include text messages further establishes that their interpretation was objectively reasonable.[8] Additionally, the court in the criminal matter found that the law enforcement defendants acted in good faith executing these same March 5 Wiretap Orders, and that their actions were objectively reasonable. SOF 41. In light of that finding, there is simply no basis for concluding that the Carrier Defendants acted in anything but objective good faith. Like the law enforcement officials, the Carrier Defendants simply acted in accordance with what they perceived the scope of the Wiretap Orders to be based on their extensive past experience and concurrent communications with the law enforcement officials. And those actions have since proven to have been in compliance with the March 5 Wiretap Orders, given that the orders authorized the disclosure of text messages. No evidence has been presented in any proceeding over the past seven years to show that the Carrier Defendants acted in bad faith by producing text messages in response to March 5 Wiretap Orders, nor could such evidence ever be presented.[9]

---

[8]Although T-Mobile recently acquired Sprint, the two entities were separate unaffiliated companies in March 2013, when Wiretap Orders issued.

[9] The Carrier Defendants acknowledge that the good faith exception is an affirmative defense for which they bear the burden of proof. Carrier Defendants do not attempt to shift this burden of proof to the Plaintiffs, but rather argue that the undisputed evidence satisfies this burden because it establishes good faith intention by the Carrier Defendants as a matter of law. These undisputed facts demonstrating good faith are unrefuted by the Plaintiffs and there is no evidence to show that the Carrier Defendants acted in anything but good faith.

74811351.2

In light of these undisputed facts, *Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Trust,* 744 F.3d 623 (10th Cir. 2014) is instructive. In *Dahl,* the Tenth Circuit ruled that a father's belief that monitoring of conversations between mother and child was authorized by a prior court order was objectively reasonable. *Id.* at 632. The court made this ruling in spite of the court's intervening order, which terminated supervised visitation and provided that "the children should be able to call either parent . . . ." *Id.* Even though the monitoring was not actually authorized by the intervening order, the court ruled that it would have been reasonable to conclude that monitoring was still authorized by the prior order, could still be useful to assess the loosening of the mother's restrictions and that it was still approved. *Id.* On that basis, the court ruled that the father could invoke the good faith defense to mother's federal wiretapping claim. *Id.*

The same analysis applies here. Judge Crabtree has already held that the scope of Judge Platt's order intended to authorize the interception of text messages. SOF 41. According to this finding and the other undisputed facts cited herein, the Carrier Defendants acted in good faith in producing text messages in response to the March 5 Orders. Like Dr. Dahl, the Carrier Defendants acted in accordance with what they believed the scope of the order to be — a belief later affirmed by the clarification orders as well as Judge Crabtree's findings, even if that belief may not have been expressly born out in the language of wiretap orders.

In summary, the undisputed materials facts show that:

- The Carrier Defendants receive hundreds of thousands of requests from law enforcement for subscriber information each year;

- Virtually every wiretap order received by the Carrier Defendants requests both text and voice monitoring;

26

- The March 5 Wiretap Orders did not define "wire communications" and contained broad instructions to the Carrier Defendants to provide "all information, facilities and technical assistance necessary to accomplish the interceptions";

- The KBI explicitly instructed at least one defendant to "TURN ON SMS" in a fax cover sheet conveying the intercept request;

- Sprint and T-Mobile each independently concluded that the March 5 Wiretap Orders authorized the collection of text messages;

- The Judge who issued the March 5 Wiretap Orders and the law enforcement who sought them believed the orders authorized the interception of text messages; and

- The district court in the criminal matter found that the March 5 Wiretap Orders authorized the interception of text messages. The Carrier Defendants' actions in light of these undisputed facts prove their good faith as a matter of law.

And there are no facts that show the Carrier Defendants acted in anything but good faith. The undisputed facts show that the Carrier Defendants simply acted in accordance with the belief that the March 5 Wiretap Orders were no different than the thousands of wiretap orders they receive each year and authorized the interception of text messages – a belief held not only by them, but also by the Judge who issued the orders, law enforcement who executed them, and a later judge who reviewed and ruled upon the scope of the orders.[10] Accordingly, the Carrier Defendants are entitled to immunity under the good faith exception of 18 U.S.C. 2520(d).

---

[10] The purpose of the good faith immunity provision is to protect carriers when they misinterpret their authority. *U.S. v. Councilman*, 418 F.3d 67, 83 (1st Cir. 2005). As stated above, even if the Carrier Defendants were wrong, and the orders did not authorize the interception of text messages, that does not preclude the application of the defense. The undisputed facts still show the Carrier Defendants acted in good faith even if they misinterpreted the bounds of their authorization.

### ii. The Carrier Defendants Acted in Good Faith by Intercepting Communications Without a Territorial Limit

As noted above, Plaintiffs do not state a claim against Carrier Defendants for intercepting communications outside of the issuing judge's territorial jurisdiction. *See* Am. Compl., ¶ 12. But if the Court finds that such a claim is stated, Carrier Defendants' interception of those communications was in good faith because it complied with the terms of the March 5 Wiretap Orders, which expressly permitted the interception of communications without a territorial limit. SOF 19 ("[I]n the event the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States."); *see also Banks*, 814 F. App'x at 333 ("Judge Platt's orders permitted the law enforcement defendants to intercept Mr. Banks's communications without a territorial limit."). Carrier Defendants' interception of communications – which occurred immediately following the issuance of the Wiretap Orders – complied with the March 5 Wiretap Orders' express terms and were therefore undertaken in good faith.

## IV.   CONCLUSION

Because the undisputed evidence demonstrates that the Carrier Defendants intercepted Plaintiffs' communications in good faith and in accordance with the express terms of a court order, the Carrier Defendants' motion for summary judgment should be granted.

74811351.2

Dated: September 18, 2020

Respectfully submitted,

/s/ Jay E. Heidrick
JAY E. HEIDRICK (KS #20770)
ELIZABETH M. MARDEN (KS #27817)
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Telephone: (816) 753-1000
Facsimile: (816) 753-1536
jheidrick@polsinelli.com
lmarden@polsinelli.com

ATTORNEYS FOR SPRINT DEFENDANTS

/s/ Amanda S. Vogelsberg
J. Phillip Gragson, #16103
Amanda S. Vogelsberg, #23360
Henson, Hutton, Mudrick & Gragson, LLP
3649 SW Burlingame Rd., Ste. 200
Topeka, KS 66611-2155
Telephone: (785) 232-2200
Facsimile: (785) 232-3344
jpgragson@hhmglaw.com
avogelsberg@hhmglaw.com

/s/ Trenton D. Tanner
Michael T. Hilgers #24483
Trenton D. Tanner #26660
HILGERS GRABEN PLLC
575 Fallbrook Blvd., Suite 202
Lincoln, NE  68521
Telephone: (402) 218-2103
Facsimile: (402) 413-1880
mhilgers@hilgersgraben.com
ttanner@hilgersgraben.com

ATTORNEYS FOR T-MOBILE DEFENDANTS

74811351.2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 18, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all those individuals currently electronically registered with the Court.


/s/ *Jay E. Heidrick*
*Attorney for Sprint Defendants*

30
74811351.2

# EXHIBIT A

IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

**APPLICATION FOR AN ORDER AUTHORIZING THE INTERCEPTION
OF WIRE COMMUNICATIONS**

COMES NOW Steven L. Opat, the duly elected Geary County Attorney, Kansas and as

authorized by K.S.A. 22-2515(a) and upon his oath, does hereby make application for an order

authorizing the interception of wire, oral or electronic communication(s) by the Kansas Bureau of

Investigation and its designees, said interception(s) providing evidence of those offenses designated

in K.S.A. 22-2515(a)(11) and (20), and offenses committed ancillary to and in furtherance of such

designated offenses.

All as set forth in the attached affidavit of Glen F. Virden, Senior Special Agent for the

Kansas Bureau of Investigation, said affidavit being attached to this application and incorporated

herein verbatim, having been reviewed in its totality by Steven L. Opat with the said Glen F. Virden

for the purpose of obtaining the order authorizing such electronic interception(s).

Respectfully submitted,

Steven L. Opat
Geary County Attorney

Subscribed and sworn to before me by Steve L. Opat on this _5_ day of _March_, 2013.

Notary Public _Judge_

# EXHIBIT B

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 2 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 1 of 167

238

Page: 238      Date Filed: 07/10/2023      Document: 01110884675      Appellate Case: 23-3102

# IN THE COURT OF GEARY COUNTY
## STATE OF KANSAS

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION | } | |
| | } | |
| FOR AN ORDER AUTHORIZING THE | } | No. _____ |
| | } | |
| INTERCEPTION OF WIRE COMMUNICATIONS | } | |

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Glen F. Virden, Senior Special Agent, Kansas Bureau of Investigation, being of lawful age and duly sworn upon my oath depose and state:

1. I am an "Investigative" law enforcement officer duly deputized with statutory authority for the State of Kansas, and as further recognized and defined by K.S.A. 22-2514(5).

2. This affidavit is submitted in support of an application for an order authorizing the interception of the wire communications of **Albert Dewayne Banks, B/M Date of Birth** ▉▉▉▉▉ and others listed below, over telephone number **(785) 375-6704**, a personal cellular telephone currently in service with Sprint Nextel with Mobile Station Identification Number (MSID) 00007856601961 and Electronic Serial Number (ESN) 268435459909788757. Sprint Nextel records indicate the phone to be an Individual Boost Prepaid Account with no subscriber name attached to the account. The Affiant knows this phone to be used by **Albert Banks** as indicated within this document. The Affiant requests authority to intercept the wire communications of individuals communicating on telephone number **(785) 375-6704**.

3. Affiant believes the following individuals will be intercepted over telephone number **(785) 375-6704**; **Albert Dewayne Banks, Anthony Carlyle Thompson**, Patricia Foy, Kari Stutheit, Charles Foster and others yet unknown.

4. Affiant requests authority to intercept the conversations and the background conversations intercepted in the vicinities of the aforementioned telephone

**EXHIBIT 2**

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 3 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 2 of 167

239

Appellate Case: 23-3102   Document: 010110884675   Date Filed: 07/10/2023   Page: 239

while the telephone is off the hook or otherwise in use. Affiant requests this authority in order to obtain evidence concerning the above persons' involvement in the following offenses: Possession of Cocaine in violation of Kansas Statutes Annotated (K.S.A.) 21-5706(a); Distribution of Cocaine in violation of K.S.A. 21-5705(a)(1); Conspiracy to commit these offenses in violation of K.S.A. 21-5302; and the Use of a Communications Facility to facilitate the commission of the above offenses in violation of K.S.A. 21-5707(a)(1). All offenses are in violation of Kansas Law, which have been and are being committed by the persons identified herein and others yet unknown.

     5.     The Affiant has been a law enforcement officer since 2001 with the Kansas Bureau of Investigation (KBI). The Affiant is currently a Senior Special Agent with the Topeka Region of the Special Operations Division for the KBI. The Affiant is a graduate of Cowley County Community College with an associate of applied science degree in Criminal Justice and Southwestern College with a bachelor's degree in Criminal Justice. The Affiant, while so employed in law enforcement, has received training in narcotics investigations to include, but not limited to: Kansas Law Enforcement Training Center's Basic Training Academy, the Kansas Bureau of Investigation's Advanced Investigations Academy, the Kansas Bureau of Investigation's Clandestine Lab Certification School, Kansas Top Gun Narcotics training, and the U.S. Drug Enforcement Administration's Basic Narcotics Investigators School. Affiant has investigated numerous narcotics cases. These investigations have included, but are not limited to undercover purchases of narcotics, controlled purchases of narcotics using cooperating individuals and search warrants. The Affiant has arrested numerous individuals for violations of both state and federal violations of controlled substances statutes. As a result, Affiant has interrogated many defendants, informants and others who were either sellers, distributors, purchasers, manufacturers or users of controlled substances. The Affiant is familiar with how controlled substances are obtained, diluted, packaged, distributed, sold, used, and manufactured. Affiant is also familiar with the records, books, and documents needed to carry on such illicit activity.

     (a)     Based on the above experience, Affiant believes there is probable cause to believe the subjects of this investigation, both known and unknown, have committed, are committing and will continue to commit offenses involving possession,

2

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 4 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 3 of 167

240

Page: 240          Date Filed: 07/10/2023          Document: 01110884675          Appellate Case: 23-3102

distribution and conspiracy to distribute cocaine. Such violations involve the use of communication facilities in order to facilitate the commission of the above offenses, each being in violation of Kansas Uniformed Controlled Substances Act.

(b)       That particular wire communications of the subjects of this investigation concerning the above offenses will be obtained through the interception of such communications to and from telephone number **(785) 375-6704**. In particular, there is probable cause to believe that the communications to be intercepted will concern dates, times, and places for commission of the aforementioned offenses when the above named interceptee communicates with the listed interceptees and other unknown suppliers, co-conspirators, aiders and abettors. There is further probable cause to believe that the communications to be intercepted will disclose the location of assets owned or controlled by the persons involved, and the manner, extent and identity of persons who direct and/or participate in the illegal activities set forth herein. These communications are expected to constitute admissible evidence of the above-described offenses.

(c)       That telephone number **(785) 375-6704**, has been, is being, and will continue to be used in connection with the commission of the above offenses.
The interception of these communications is expected to concern verbal and messaging discussions of the continuing conduct, financing, managing, supervising, directing, or ownership of all or part of an illegal narcotics enterprise, including orders and instructions to subordinates, the receipt of information pertaining to the obtaining and distribution of controlled substances, and other conversations relating to the administration, control, and management of the aforementioned illegal drug activity.

6.       Normal investigative procedures have been tried and have failed to achieve the goals of this investigation, or reasonably appear unlikely to succeed if tried, or are too dangerous to employ, as more fully explained below.

Appellate Case: 23-3102   Document: 010110884675   Date Filed: 07/10/2023   Page: 241

## INVESTIGATIVE INVOLVEMENT OF STATE AND LOCAL LAW ENFORCEMENT

7.        This investigation is a result of a joint effort!by the Affiant, other Agents of the Kansas Bureau of Investigation (KBI), Officers of the Junction City Police Department (JCPD), Officers of the Geary County Sheriff's Office (GESO) and Officers of the Riley County Police Department (RCPD).  The investigation covers a period of time from June 2012 to the present.  The statements contained in this affidavit are based in part on information provided by Agents/Officers of the above-listed law enforcement agencies.    Because this affidavit is being submitted for the purpose of securing authorization for the interception of wire communications, Affiant has not included each and every fact known to the Affiant concerning this investigation.  Affiant has set forth only the facts that Affiant believes are necessary to establish the necessary foundation for an order authorizing the interception of wire communications.  If a court order is granted authorizing the interception of wire communications in this case, only those persons and agencies authorized by law to make such interceptions will be allowed to do so.

8.        In April, 2012, Detective Nate Boeckman of the RCPD contacted Detective Alvin Babcock of the JCPD Drug Operation Group (DOG) with information that **Anthony Thompson (AKA "Ant")** and **Albert Banks (AKA "AB")** were distributing cocaine within the Junction City, Geary County, KS area and the Manhattan, Riley County, KS area.  RCPD received this information from a Source of Information (SOI) to be referred to as "SOI #1" from this point forward. SOI #1 appeared to have knowledge of some of the criminal elements related to **Anthony Thompson and Albert Banks**, but was not allowed to have intimate knowledge of the day to day operations or the source of supply of the cocaine.

9.        SOI #1 did give information saying **Anthony Thompson and Albert Banks** were receiving powder cocaine from an unknown supplier/s then transporting (or having it transported) back to the Junction City, Geary County, KS area where they would convert the powder cocaine to crack cocaine themselves (evidence of this conversion will be explained in this affidavit).  SOI #1 did not have direct knowledge of when the powder cocaine purchases were occurring, who was driving to purchase the

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 6 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 5 of 167

242

Page: 242       Date Filed: 07/10/2023       Document: 010110884675       Appellate Case: 23-3102

powder cocaine and even if one of the aforementioned persons were actually obtaining the cocaine or having another person unknown to this investigation acquire and transport the cocaine to **Anthony Thompson** and **Albert Banks**. SOI #1 has continued to give some credible information to Agents/Officers but beyond that, SOI #1 has not been beneficial to the investigation. As stated above, SOI #1 has limited knowledge related to the full scope of the cocaine distribution network, other co-conspirators and the source of supply for the cocaine.

10.     The Affiant was contacted by Lieutenant Mike Life of the JCPD and asked to assist with the investigation.    The Affiant met with Agents/Officers of the aforementioned agencies to in an attempt to garner information related to persons who might be involved in the distribution of cocaine.   The Affiant then contacted an individual who had been a Cooperating individual (CI) for the KBI since 1985 (to be referred to as CI #1 from this point forward).  The Affiant had a meeting with CI #1 and asked if CI #1 would be willing to assist in the investigation to which CI #1 agreed. Since CI #1's association with the KBI beginning in 1985, CI #1 has successfully been an integral part of a number of State and Federal investigations which culminated with the prosecution and convictions of numerous persons related to the distribution of drugs.  CI #1 has had a number of Agents within the KBI as his/her handler.  The Affiant has had contact with a number of these Agents who spoke highly of CI #1 and his/her abilities to assist in investigations culminating in successful prosecution.

11.     On 05-16-2012, then KBI Task Force Agent (TFA) John Culver was contacted by RCPD in reference to **Albert Banks** possibly leaving the Junction City, KS area en route to Topeka, Shawnee County, KS to purchase drugs for distribution.  TFA Culver, RCPD and JCPD coordinated a surveillance operation to follow **Albert Banks** in an attempt to locate the person whom he was receiving his drugs from for distribution. TFA Culver was told **Albert Banks** was supposedly traveling with a white female who was later seen as the driver of the vehicle.  The vehicle **Albert Banks** and the white female were in was described as a maroon colored Cadillac Escalade.  TFA Culver observed this vehicle leave the Junction City area and observed the license tag on the vehicle which was bearing Kansas tag 669BHV.  This vehicle was later found to be registered to a 2002 Cadillac Escalade with a primary owner of Mike Roth and secondary

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 7 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 6 of 167

243

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 243

owner of Kristina Orth both of Junction City, Geary County, KS. The Affiant would later find out Kristina Orth is the girlfriend of Mike Roth.

12.     As Agents followed **Albert Banks** and Kristina Orth from Junction City, Geary County, KS the vehicle made several overt actions which appeared to be in an attempt to make sure they were not being followed. The vehicle traveled east on I-70 where it exited at the Maple Hill exit. The vehicle then made a u-turn in the middle of the road and then re-entered I-70 and continued eastbound on I-70. Once the vehicle reached the Topeka, Shawnee County, KS area, it exited onto SE California Avenue and traveled south where it entered the McDonald's drive thru at SE 29th and California. It then went south on California Avenue to SE 30th Street where it turned east then south on SE Swygart and pulled into the parking lot of 3024 SE Swygart. **Albert Banks** then exited the vehicle walked into the apartment building at this location. Kristina Orth remained in the vehicle with an undetermined number of children who were found to have been traveling in the vehicle.

13.     3024 SE Swygart Apartment F was, at that time, the residence of Johnny Lee Ivory III (AKA "5", "J5" and "Jizzle"). Johnny Lee Ivory is a confirmed member of the Traveling Vice Lords Gang. He has a lengthy criminal history to include; possession of opiates/opium/narcotic drugs, possession of depressants/stimulants, discharge of a firearm at an occupied dwelling as well as others which will be explained further later in this affidavit. Johnny Lee Ivory, at that time, was believed to reside at this residence with his then girlfriend, Whitnie A. Livingston. RCPD had received information from SOI #1 indicating Johnny Lee Ivory was perhaps a source of supply for cocaine for **Albert Banks** and **Anthony Thompson.** This has not been confirmed as Johnny Lee Ivory has not been located as to his whereabouts at this time although it is believed he still resides in Topeka, Shawnee County, KS. On 05-10-2012, Topeka Police Department (TPD) Officers located one-half (1/2) pound of marijuana, two (2) loaded handguns and approximately $10,000.00 in US Currency at this apartment where Johnny Lee Ivory stated he resided (TPD case number 10732-12).

14.     **Albert Banks** eventually exited the apartment complex and got into the passenger side of the vehicle Kristina Orth was driving. The vehicle exited the parking lot, drove north on SE California Avenue, turned east on SE 29th, turned north into the

Appellate Case: 23-3102   Document: 01110884675   Date Filed: 07/10/2023   Page: 244

Dillon's parking lot, circled the parking lot, exited the parking lot and crossed SE 29th Street where it entered into a shopping center parking lot and parked in front of the Subway restaurant and remained there for approximately 15 minutes without anyone entering or exiting the vehicle. After approximately 15 minutes, the vehicle got back onto SE 29th Street and turned north on SE California Avenue. The vehicle entered onto I-70 and traveled west to Junction City, Geary County, KS where it was followed to an unknown address (address unknown to the Affiant) on 13th Street where it was believed **Albert Banks** was possibly distributing cocaine from.

15. On 05-30-2012, Detective Alvin Babcock of the JCPD received phone call from Detective Nate Boeckman of the RCPD informing him that Detective Nate Boeckman had received information alleging **Albert Banks** had left a package of cocaine wrapped in either brown tape or a brown paper bag in an alley between 13th and 14th Streets and Franklin and Monroe Streets in Junction City, Geary County, KS the previous evening. Detective Nate Boeckman advised Detective Alvin Babcock that RCPD was conducting surveillance on a residence in Manhattan, Riley County, KS where it was believed **Albert Banks** was residing at the time. Detective Nate Boeckman advised a white in color Chrysler 300 having black rims had arrived at the residence. The driver of the vehicle was identified by RCPD Detectives as Chris Howard. A short time later, Chris Howard and **Albert Banks** were seen leaving the residence in the aforementioned vehicle.

16. Lieutenant Mike Life and Detective Alvin Babcock drove to the aforementioned alley in Junction City, Geary County, KS in an attempt to locate the package of cocaine but were unable to locate it. Detective Nate Boeckman contacted Detective Alvin Babcock and stated he had lost sight of the Chrysler 300 and was unaware if the vehicle was still in Manhattan, Riley County, KS or in the Junction City, Geary County, KS area. A short time later, Detective Alvin Babcock observed the Chrysler 300 in the aforementioned alley and stopped in wooded area where Detective Alvin Babcock was told the package of cocaine was possibly located. The vehicle then left the alleyway and sight was lost of it. Detective Alvin Babcock was not able to see who exited the vehicle or if anything was retrieved when it stopped in the alleyway but Detective Alvin Babcock did observe the driver of the vehicle did not get out of the

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 9 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 8 of 167

245

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 245

vehicle. The vehicle was later located at a liquor store in Junction City, Geary County, KS.

17.     On 05-31-2012, CI #1 made two (2) phone calls to Martye Madkins III in reference to purchasing Oxycontin pills. In the first phone call, Martye Madkins III stated he would have to call other unknown person/s in an attempt to obtain the pills. The second call to Martye Madkins III was not answered and the attempted purchase was discontinued.

18.     On 06-01-2012, CI #1 contacted Martye Madkins III once again in reference to purchasing a $50.00 quantity of crack cocaine from him. Martye Madkins III agreed to sell CI #1 the crack cocaine. While talking to Martye Madkins III, CI #1 made mention of needing to call a female by the name of "Ro" who is actually Lavern Roshell Jackson. Martye Madkins III said he was with Lavern Jackson at that time. CI #1 talked to her about purchasing three to four (3 to 4) Oxycontin pills. Lavern Jackson stated she could obtain Dilaudid and Morphine pills as well. Lavern Jackson stated she would make some phone calls and inquiries into obtaining some pills for CI #1.

19.     CI #1 was prepared for purchasing crack cocaine from either Martye Madkins III or Lavern Jackson. The Affiant gave CI #1 $50.00 in US Currency to purchase the crack cocaine. CI #1 called Martye Madkins III and inquired as to Martye Madkins III ability to sell CI #1 $50.00 worth of crack cocaine. Martye Madkins III said he would call CI #1 back in five (5) minutes. Martye Madkins III called CI #1 back and they agreed to meet at the Casey's General Store in Junction City, Geary County, KS to complete the transaction. Detectives Shawn Peirano and Josh Brown of the JCPD DOG observed Martye Madkins III arrive at the location in a gray colored Chevrolet HHR bearing a Missouri license tag. Martye Madkins III exited the vehicle, got into CI #1's vehicle and sold CI #1 the crack cocaine. The HHR had three (3) African American males in it at the time and as it left, one of the males was identified by Sergeant Todd Godfrey of the JCPD as **Albert Banks** and the driver was identified by Detective Alvin Babcock as **Anthony Thompson**.

20.     The Affiant submitted the evidentiary item, which was actually two (2) small individually wrapped baggies, to the KBI for analysis and received a Forensic

Case 5:15-cv-03093-HLT Document 182-2 Filed 09/18/20 Page 10 of 73
Case 5:13-cr-40060-DDC Document 346-1 Filed 06/30/14 Page 9 of 167

246

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 246

Laboratory Report stating cocaine base was detected in Lab Item 1 with both being examined and having a total net weight of 0.20 grams.

21.     On 06-30-2012, CI #1 contacted a male by the name of Gevonni Roberto Davis whom CI #1 had been introduced to earlier.  CI #1 told Gevonni Davis that CI #1 was attempting to make contact with **Martye Madkins III** in reference to purchasing crack cocaine from him.  CI #1 asked Gevonni Davis if he had seen Martye Madkins III and/or if Gevonni Davis knew whether or not Martye Madkins III had any crack cocaine to sell.  Gevonni Davis stated he had seen Martye Madkins III at approximately 7:30 AM that morning and had purchased the last portion of crack cocaine Martye Madkins III had to sell at that time.  CI #1 asked Gevonni Davis if he could contact **Anthony Thompson** and inquire as to whether or not he had any crack cocaine to sell.  Gevonni Davis asked if CI #1 knew **Anthony Thompson** to which CI #1 said he/she had met **Anthony Thompson** but did not have a telephone number for him.  Gevonni Davis said he would call **Anthony Thompson** and call CI #1 back.

22.     Gevonni Davis called CI #1 and stated he had made contact with **Anthony Thomson**.  **Anthony Thompson** stated he was in Ogden, KS at that time but would turn around and come to Junction City, KS to meet CI #1 at his/her motel room to sell him/her the crack cocaine.  The Affiant gave CI #1 $50.00 with which to purchase the crack cocaine.  **Anthony Thompson** arrived at the motel room and met with CI #1.  CI #1 siad **Anthony Thompson** produced approximately 15 "rocks" of crack cocaine from his pocket and thought CI #1 wanted to purchase $100.00 worth of crack cocaine.  CI #1 said he/she only wanted $50.00 worth and at that time **Anthony Thompson** sold the crack cocaine to CI #1.  CI #1 asked for and was given **Anthony Thompson's** telephone number for further transactions.  The telephone number given to CI #1 is not the current number for **Anthony Thompson**, but was his telephone number at that time.  **Anthony Thompson** was driving a red in color Chrysler Sebring bearing Arkansas license tag 227RMJ which was not registered to that vehicle.

23.     The Affiant submitted the evidentiary item to the KBI for analysis and received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 1 having a net weight of 0.15 grams.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 11 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 10 of 167

247

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 247

24.     On 07-11-2012, the Affiant and other Agents/Officers met with CI #1 for the purpose of CI #1 attempting to make a purchase of crack cocaine from Martye Madkins III.  CI #1 contacted Martye Madkins III and he told CI #1 to call him back in 10 to 20 minutes as Martye Madkins III "was checking on it now" referring to Martye Madkins III inquiring with someone as to the availability of the crack cocaine CI #1 wanted to purchase.  This would indicate the crack cocaine did not belong to Martye Madkins III but instead belonged to another party whom Martye Madkins III had to obtain it from prior to distributing it.  While waiting on Martye Madkins III to contact CI #1, Detective Alvin Babcock was watching video surveillance of Martye Madkins III residence located at 227 west 14th Street in Junction City, Geary County, KS in an attempt to observe any person/s arriving or departing from the residence.  Detective Alvin Babcock observed **Albert Banks** and Chris Howard leave the residence.  After the two (2) aforementioned persons left the Martye Madkins III residence, CI #1 received a call from Martye Madkins III.  The two (2) aforementioned males returned to the residence shortly thereafter.

25.     Martye Madkins told CI #1 to meet "his man" (referring to another unknown person) at Wood Oil in Junction City, Geary County, KS and asked how much CI #1 wanted.  CI #1 said he/she wanted $60.00 worth of crack cocaine.  The Affiant gave CI #1 $60.00 in US Currency to purchase the crack cocaine.  CI #1 left and drove toward Wood Oil.  While en route, CI #1 was contacted by Martye Madkins III and told to change the location where CI #1 was to meet someone.  Martye Madkins III said to meet in the area of the intersection of 15th Street and Adams Street in Junction City, Geary County, KS.

26.     CI #1 arrived at the location and continued to attempt to make contact with Martye Madkins III by cellular telephone to tell him CI #1 was at the location.  Martye Madkins III told CI #1 someone would be coming to the location soon to distribute the crack cocaine to CI #1.  26 minutes after CI #1 arrived at the intersection location; Martye Madkins III called CI #1 and told CI #1 to drive to another location.  During the course of these events, Detective Alvin Babcock once again observed **Albert Banks** leave the aforementioned residence.  Surveillance members observed **Albert Banks** approach a vehicle described as a grey in color Chevrolet Malibu.  An unknown

Appellate Case: 23-3102      Document: 010110884675      Date Filed: 07/10/2023      Page: 248

black female exited the vehicle. **Albert Banks**, the unknown black female and another unidentified black male (later believed to be Martye Madkins III due to identified clothing) were observed walking back and entering into the aforementioned residence. A short time later, a black male (believed to be Martye Madkins III from the clothing description) was observed leaving the residence and walking toward 14th Street in Junction City, Geary County, KS. Then, Chris Howard was observed arriving and entering the residence and the unknown black male (believed to be Martye Madkins III) returned to the residence once again. The black male believed to be Martye Madkins III (identified by the clothing description of the person who later met with CI #1) then departed the residence once again and walked toward 14th Street in Junction City, Geary County, KS. A short time after the black male (believed to be Martye Madkins III) left the residence, Chris Howard also left the residence. Surveillance members observed CI #1 driving towards 14th Street and then travel west on 14th Street. Surveillance members then observed CI #1 driving east in the 300 block of 15th Street.

27.    While en route and in the 300 block of west 15th Street in Junction City, Geary County, KS; CI #1 was stopped by the same black male who had been observed walking from the residence. The black male, who was later positively identified as Martye Madkins III, walked up to the passenger side of the vehicle CI #1 was driving. Martye Madkins III sold CI #1 the crack cocaine at that time. While CI #1 was making the purchase of crack Cocaine, Gevonni Davis entered the rear seat of the vehicle CI #1 was driving and observed the transaction take place which did not detour Martye Madkins III from completing the sell. This sell of crack cocaine was less than 1000' from Washington Elementary School which is located at 1500 N Washington Street in Junction City, Geary County, KS.

28.    The Affiant took possession of the evidentiary item and later submitted the evidentiary item to the KBI for analysis and received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 2 having a net weight of 0.33 grams.

29.    On 08-17-2012, Detective Alvin Babcock received a phone call from CI #1 advising CI #1 had been in contact with **Anthony Thomson** and **Anthony Thompson** was willing to sell CI #1 $100.00 worth of crack cocaine. CI #1 met with Agents/Officers and made a controlled phone call to **Anthony Thompson**. CI #1 told

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 13 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 12 of 167

249

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 249

**Anthony Thompson** he/she was not currently in Junction City but would be shortly. **Anthony Thompson** told CI #1 to call him when CI #1 arrived in Junction City, Geary County, KS. Detective Alvin Babcock gave CI #1 $100.00 in US Currency to purchase the crack cocaine from **Anthony Thompson**. CI #1 drove to the Casey's General Store located at 624 S Washington Street in Junction City, Geary County, KS. While en route to the location, CI #1 called **Anthony Thompson** and advised him CI #1 would meet him there to which **Anthony Thompson** agreed. A grey in color Ford Focus bearing Kansas license tag 807FEE arrived at the location. A registration check was competed on the tag and found to be registered to a 2002 Ford Focus registered to Anna Thompson who is **Anthony Thompson's** sister. The driver of the vehicle was identified as **Anthony Thompson**.

30.     CI #1 exited his/her vehicle and entered the front passenger side of **Anthony Thompson's** vehicle. A short time later, CI #1 exited the vehicle and entered his/her own vehicle. **Anthony Thompson** backed up and parked at the gas pumps then exited his vehicle and walked over to CI #1's vehicle to look at items of clothing CI #1 had for sell. Approximately a minute later, **Anthony Thompson** entered into the Casey's General Store. CI #1 walked over to **Anthony Thompson's** vehicle, entered into the driver's side front door then exited and got back in to his/her vehicle and left the location to meet with Agents/Officers.

31.     The Affiant took possession of the evidentiary item and later submitted the evidentiary item to the KBI for analysis and received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 2 having a net weight of 1.01 grams.

32.     On 08/24/2012, CI #1 met with Detective Alvin Babcock and other officers for the purpose of purchasing crack cocaine from a black male with the alias of "JD". Detective Alvin Babcock determined this black male to be Jason Dixon. CI #1 drove to an agreed upon location, which was Handy's Convenience Store located a 1734 W. Ash Street in Junction City, Geary County, KS. Jason Dixon arrived and was observed meeting with CI #1. A short time later, CI #1 and Jason Dixon left the location. CI #1 met with Detective Alvin Babcock and gave him the suspected crack cocaine CI #1 had purchased from Jason Dixon. Detective Alvin Babcock later processed the evidentiary item per his agency policies and had it submitted to the KBI for analysis.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 14 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 13 of 167

250

Appellate Case: 23-3102     Document: 01011088 4675     Date Filed: 07/10/2023     Page: 250

Detective Alvin Babcock received a Forensic Laboratory Report stating cocaine was detected in the item having a net weight of .22 grams. It should be noted that during the review of the covert electronic audio/video recording device which had been utilized during the transaction with Jason Dixon, Detective Alvin Babcock observed Jason Dixon retrieve the crack cocaine from his mouth prior to selling it to CI #1. This is a common tactic utilized by illegal drug distributors for the transporting of illegal drugs. If he/she has contact with law enforcement, the illegal drugs can be swallowed prior to being located by law enforcement.

33.     On 08-31-2012, Detective Alvin Babcock and other Officers met with CI #1 for the purpose of CI #1 purchasing crack cocaine from Charles Foster. CI #1 told Detective Alvin Babcock that Charles Foster had contacted CI #1 the previous evening and said he had $50.00 worth of crack cocaine for sell. CI #1 told Charles Foster he/she was unavailable at that time and would contact him the next day. Detective Alvin Babcock gave CI #1 the US Currency to be used in the transaction. CI #1 called Charles Foster via cellular telephone and Charles Foster told CI #1 to come to his residence which was located at 149 E Anchor Street in Grandview Plaza, Geary County, KS.

34.     Surveillance units were in place to observe CI #1 arrive at the residence. CI #1 drove to the residence and entered with items of clothing for Charles Foster's wife to look at. After approximately 30 minutes, CI #1 and Charles Foster left the residence and drove to and entered the alley behind 126 W 12th Street in Junction City, Geary County, KS. Charles Foster exited CI #1's vehicle and met with another black male who was later identified as **Anthony Thompson**. Charles Foster entered back into the vehicle CI #1 was driving and they exited the alley. A grey in color Ford Focus driven by **Anthony Thompson** exited the alleyway behind CI #1. CI #1 transported Charles Foster back to his residence where he exited. CI #1 met with Officers once again and gave Detective Alvin Babcock the evidentiary item.

35.     Detective Alvin Babcock submitted the evidentiary item per his policy to be submitted to the KBI for analysis. Detective Alvin Babcock received a Forensic Laboratory report stating cocaine base was detected in Lab Item 1 having a net weight of .28 grams.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 15 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 14 of 167

251

Page: 251          Date Filed: 07/10/2023          Document: 010110884675          Appellate Case: 23-3102

36.     On 09-05-2012, Detective Alvin Babcock received an email from Detective Nate Boeckman of the RCPD indicating a Cooperating Individual who was providing assistance to the RCPD had told Detective Nate Boeckman **Anthony Thompson** was in possession of what he/she deemed to be a large amount of crack cocaine.  The RCPD CI stated he/she was at the **Anthony Thompson** residence and observed several packages of crack cocaine lying on the kitchen counter.  The RCPD CI stated **Anthony Thompson** had measured out and packaged the crack cocaine for distribution.

37.     Detective Nate Boeckman stated he drove past the residence and observed a maroon in color Buick Century parked bearing Kansas license tag 071FEG.  This vehicle is registered to a 1998 Buick Century with the primary owner listed as Michael Harris of Manhattan, Riley County, KS.  The RCPD CI told Detective Nate Boeckman the vehicle belonged to a female by the name of Monica and that she was a crack cocaine user.  The RCPD CI told Detective Nate Boeckman Monica was allowing **Anthony Thompson** to use her vehicle.  Later that same day, the RCPD CI told Detective Nate Boeckman **Anthony Thompson** had left the residence and took the crack cocaine he had packaged for distribution with him.  The RCPD CI estimated the total amount of crack cocaine to be greater than one (1) ounce in quantity.

38.     That same day, 09/05/2012, the Affiant and other Officers met with CI #1 for the purpose of CI #1 making a crack cocaine purchase from **Anthony Thompson**.  CI #1 contacted **Anthony Thompson** via cellular telephone and both parties agreed to meet at the Casey's General Store located at 624 S Washington Street in Junction City, Geary County, KS.  **Anthony Thompson** told CI #1 he was approximately 30 seconds away from the location at the current time.  The Affiant gave CI #1 $250.00 in US Currency to purchase the crack cocaine.

39.     Once CI #1 arrived at the agreed upon location CI #1 once again attempted to contact **Anthony Thompson** via cellular telephone to advise him CI #1 was at the location.  **Anthony Thompson** did not answer the phone call.  After approximately one and a half (1 ½) hours, CI #1 sent **Anthony Thompson** a text message.  **Anthony Thompson** replied and changed the location and told CI #1 to meet him in the 100 block

14

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 16 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 15 of 167

252

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 252

of W 12th Street in Junction City, Geary County, KS which is the location of the Corner Club.

40.     CI #1 drove to this location and met with **Anthony Thompson**. CI #1 gave **Anthony Thompson** the $250.00 in US Currency and **Anthony Thompson** gave CI #1 a large plastic baggie containing numerous smaller plastic baggies containing crack cocaine. **Anthony Thompson** also gave CI #1 a small single baggie containing crack cocaine. **Anthony Thompson** had CI #1 give him a ride to another location from this location.

41.     A covert electronic audio/video recorder was used during this transaction. Detective Alvin Babcock reviewed the recording and found that **Anthony Thompson** asked CI #1 to take him to Cottonwood (mobile home park in Junction City, Geary County, KS). **Anthony Thompson** told CI #1 he needed to go to this location "so he can give this girl some shit" referring to distributing more crack cocaine to a female. As they departed the location en route to the Cottonwood, **Anthony Thompson** was observed putting something in his mouth. This is a common practice utilized by drug distributors to transport small amounts of drugs to thwart law enforcement detection should the person encounter a law enforcement officer. Persons who maintain this type of practice can swallow the illegal drugs if they encounter law enforcement. As CI #1 reaches the mobile home park **Anthony Thompson** tells CI #1 what location to drive to. Once **Anthony Thompson** exits the vehicle, CI #1 states he/she was directed to drive to lot 41B. Detective Alvin Babcock knows this location to be the residence of Audrey Ali or Audrey Nelson, both being the same person.

42.     The Affiant took possession of the evidentiary items and later submitted the evidentiary items to the KBI for analysis and received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 3 which were found to be seven (7) plastic baggies total and having a net weight of 2.70 grams total.

43.     On 09/06/2012, CI #1 met with Detective Alvin Babcock and other Officers in reference to purchasing prescription pills from Garland Hull. CI #1 contacted Garland Hull at telephone number (785) 762-5346. CI #1 met with Garland Hull at the intersection of 10th and Webster Streets in Junction City, Geary County, KS. Garland Hull gave CI #1 a prescription bottle with numerous pills in it and CI #1 gave Garland

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 253

Hull the US Currency for the pills.  Garland Hull then departed and entered the residence at 922 N Webster Street in Junction City, Geary County, KS.  Detective Alvin Babcock took possession of the evidentiary items and determined the pills were Oxycodone (Schedule II) and Clonazepam (Schedule IV).  Detective Alvin Babcock submitted the evidentiary times to the KBI for analysis.

44.    On 09/25/2012, Detective Alvin Babcock and other Officers met with CI #1 for the purpose of CI #1 purchasing ten (10) Oxycodone 20 mg pills from Garland Hull.  CI #1 drove to 922 N Webster Street in Junction City, Geary County, KS where he/she met with Garland Hull who exited from the residence at the aforementioned address.  Garland Hull entered the vehicle CI #1 was driving and eventually received ten (10) pills from him.  CI #1 exited the location and met with Detective Alvin Babcock.  CI #1 gave the evidentiary items to Detective Alvin Babcock who determined the pills were Oxycodone/Hydrochloride 20 mg pills (Schedule II).    Detective Alvin Babcock submitted the evidentiary items to the KBI for analysis.

45.    On 09/27/2012, CI #1 met with the Affiant and other law enforcement officers for the purpose of purchasing crack cocaine from Jason Dixon.  CI #1 called Jason Dixon using telephone number (785) 375-3222.  Jason Dixon answered the phone and a conversation ensued in regards to CI #1 purchasing methamphetamine from him.  Jason Dixon told CI #1 he would have to call CI #1 back to which he did and stated he was not able to locate any methamphetamine to distribute but that he had crack cocaine in his possession to distribute if CI #1 was interested.  CI #1 said he/she was interested in purchasing the crack cocaine.

46.    CI #1 told Jason Dixon he/she wanted two (2) $50.00 rocks of crack cocaine ($100.00 worth of crack cocaine).  The two agreed to meet at Handy's Convenience Store located at 1734 W. Ash Street in Junction City, Geary County, KS.  CI #1 drove to the location and a short time later Jason Dixon arrived and completed the transaction with CI #1.  CI #1 drove back to a predetermine location where he/she then gave the two (2) plastic bag corners containing an off white substance in each to the Affiant.

Appellate Case: 23-3102       Document: 01110884675       Date Filed: 07/10/2023       Page: 254

47.    The Affiant took possession of the evidentiary items and later submitted the evidentiary items to the KBI for analysis and received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 2 and having a net weight of 0.82 grams.

48.    On 09/28/2012, the Affiant was contacted by CI #1 and told CI #1 had been in contact with **Anthony Thompson** who agreed to sell CI #1 one-half (1/2) ounce of crack cocaine for $700.00. **Anthony Thompson** had previously told CI #1 he would sell him/her one-half (1/2) ounce of crack cocaine for $700.00 but at that time he was not in possession of that quantity. Then earlier the day of 09/28/2012, **Anthony Thompson** contacted CI #1 and said he was now in possession of more crack cocaine and was willing to sell CI #1 the one-half (1/2) ounce. CI #1 had made several attempts throughout the day (after the previous call) to contact **Anthony Thompson** but the calls were going straight to voicemail and the voicemail box was full so CI #1 was unable to leave a message. It should be noted throughout this investigation it has been found when **Anthony Thompson** did not answer his phone the voicemail box was nearly always full therefore no voicemail could be left indicating **Anthony Thompson** was apparently receiving a large number of phone calls with voicemails being left. **Anthony Thompson** eventually contacted CI #1 via cellular telephone and stated he would meet CI #1 and complete the transaction.

49.    CI #1 met with the Affiant and other Officers prior to the purchase. The Affiant gave CI #1 $700.00 in US Currency to purchase the crack cocaine. CI #1 once again contacted **Anthony Thompson** via cellular telephone and advised him he/she was ready to meet with him. **Anthony Thompson** told CI #1 to meet him at the Taco Bell which was located at 407 W 18th Street in Junction City, Geary County, KS. CI #1 arrived at the location and shortly thereafter was approached by a black male and asked if CI #1 was the person who was there to receive something from "Ant" (**Anthony Thompson**). CI #1 said "yes" and the black male said he would be right back with "it" referring to the crack cocaine. Sergeant Todd Godfrey of the JCPD identified the black male who approached CI #1 as **Albert Banks**. Approximately four (4) minutes later, **Albert Banks** reappeared and entered the passenger side of CI #1's vehicle where he sold CI #1 the crack cocaine. CI #1 told **Albert Banks** to tell **Anthony Thompson** if the crack cocaine was good, CI #1 would want one (1) ounce of crack cocaine next week.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 19 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 18 of 167
255

Appellate Case: 23-3102     Document: 01011084675     Date Filed: 07/10/2023     Page: 255

**Albert Banks** agreed and told CI #1 to contact **Anthony Thompson** next week. **Albert Banks** then exited the vehicle and walked to the south and was not surveilled due to the location and the fact he was walking.

50.     Prior to the purchase taking place, Detective Alvin Babcock recalled seeing a black male with dreadlocks and a white t-shirt leave Wood Oil Convenience Store (located at 439 W 19th Street in Junction City, Geary County, KS adjacent to the Taco Bell) and walk towards Taco Bell. This was the same black male later identified as **Albert Banks**. **Albert Banks** met with another unknown black male in front of Taco Bell in the parking lot who then departed shortly after meeting with **Albert banks**. Shortly thereafter, Detective Alvin Babcock recalled seeing a heavy set black female exit the Wood Oil Convenience Store and enter into a gold in color Four Taurus which Detective Alvin Babcock knew belonged to **Albert Banks** and his girlfriend Glenda Robertson. The vehicle was bearing Kansas license tag 882FEE. A registration request was run and the vehicle was found to be registered to Glenda Robertson and Ola Mae Gavin. Ola Mae Gavin is the mother of Glenda Robertson. This vehicle remained at its location throughout the purchase of crack cocaine.

51.     The Affiant took possession of the evidentiary item and later submitted the evidentiary items to the KBI for analysis and received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 3 and having a net weight of 13.89 grams.

52.     On 10/02/2012, the Affiant and Detective Alvin Babcock met with CI #1 for the purpose of making a controlled phone call to **Anthony Thompson** for the purpose of trying to obtain one (1) ounce of crack cocaine from him. **Anthony Thompson** did not answer and the call went to voicemail but once again the voicemail box was full and CI 31 was not able to leave a message. A recording device was left with CI #1 in order for him/her to make a phone call later and have a recording of it.

53.     On 10/03/2012, Detective Alvin Babcock and Detective Angie Weeks met with CI #1 to obtain the recording device from him and listen to the completed phone between CI #1 and **Anthony Thompson**. During the phone call, CI #1 talked to **Anthony Thompson** in reference to obtaining a "full one" referring to one (1) ounce of crack cocaine. **Anthony Thompson** told CI #1 the cost would be $1,400.00. CI #1 told **Anthony Thompson** he/she didn't have $1,400.00 and **Anthony Thompson** told CI #1

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 20 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 19 of 167

256

Appellate Case: 23-3102     Document: 01011088 4675     Date Filed: 07/10/2023     Page: 256

he would sell CI #1 an ounce of crack cocaine for $1,200.00.  CI #1 asked **Anthony Thompson** if "homeboy was going to meet CI #1 again like he did the other day" referring to **Albert Banks**.  **Anthony Thompson** said he would call "him" (**Albert Banks**) and find out.  CI #1 and **Anthony Thompson** agreed to meet at approximately 2:00 PM to complete the transaction.

54.     At approximately 2:00 PM, CI #1 contacted **Anthony Thompson** via cellular telephone where CI #1 asked **Anthony Thompson** if he was ready (meaning CI #1 wanted to know if **Anthony Thompson** had the ounce of crack cocaine to distribute to CI #1).  **Anthony Thompson** asked CI #1 if he/she had the "12" referring to the $1,200.00 to which he/she replied "yes".  CI #1 asked **Anthony Thompson** if he was going to have "little homeboy" bring the crack cocaine to CI #1 referring to **Albert Banks** delivering it to CI #1 as he did on 09/28/2012.  **Anthony Thompson** said "he had it anyway" referring to **Albert Banks** having the crack cocaine **Anthony Thompson** and **Albert banks** were distributing.  **Anthony Thompson** said he would call "him" referring to **Albert Banks** and call CI #1 right back.

55.     Approximately two (2) minutes later, **Anthony Thompson** called CI #1 back, asked where he/she was and where CI #1 wanted to meet.  CI #1 stated he/she liked the Taco Bell location, where he had met **Albert Banks** previously.  **Anthony Thompson** indicated he had talked to **Albert Banks** and **Albert Banks** wanted to know if CI #1 would pay $1,250.00 for the ounce of crack cocaine instead of the earlier agreed upon price of $1,200.00.  CI #1 agreed upon the price of $1,250.00.  **Anthony Thompson** agreed upon the meeting location and asked CI #1 when he/she would be arriving at the location to which CI #1 replied, 15 minutes".  **Anthony Thompson** told CI #1 to call him (**Anthony Thompson**) when CI #1 arrived at the location.

56.     CI #1 arrived at the location and attempted to contact **Anthony Thompson** via cellular telephone but **Anthony Thompson** did not answer.  Approximately 17 minutes later, **Anthony Thompson** called CI #1 back and said he had seen a JCPD patrol vehicle parked near the meeting location and therefore wanted CI #1 to exit the parking lot, turn right and then turn left at the first intersection and meet **Anthony Thompson** in that area to which CI #1 complied.  It should be noted this location is actually a dead end street making surveillance complicated as to seeing the

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 21 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 20 of 167

257

Page: 257     Date Filed: 07/10/2023     Document: 01110884675     Appellate Case: 23-3102

vehicle **Anthony Thompson** was driving.  CI #1 parked in the 2000 block of N Madison Street in Junction City, Geary County, KS at which time **Anthony Thompson** appeared and entered into the passenger side of CI #1's vehicle.

57.     The transaction was completed and CI #1 had a conversation with **Anthony Thompson**.  CI #1 asked **Anthony Thompson** how much crack cocaine he was purchasing per week to distribute.  **Anthony Thompson** said it was approximately nine (9) ounces per week.  The two continued to converse further and then **Anthony Thompson** exited the vehicle and CI #1 drove away en route to a pre-determined location.  Detective Alvin Babcock and Captain Shawn Peirano of the Grandview Plaza Police Department (GPPD) were able to observe **Anthony Thompson** leave the location where the transaction took place and as he left, **Albert Banks** was seen in the vehicle with **Anthony Thompson**.

58.     The Affiant took possession of the evidentiary item and later submitted the evidentiary item to the KBI for analysis and received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 4 and having a net weight of 27.74 grams.

59.     On 10/10/2012, Agents/Officers met with CI #1 for the purpose of purchasing one (1) ounce of crack cocaine from **Anthony Thompson**.  Detective Alvin Babcock retrieved a digital audio recorder from CI #1 which contained a recorded phone call between CI #1 and **Anthony Thompson** prior to this date.  During the phone call, CI #1 told **Anthony Thompson** he/she would be in town (Junction City, Geary County, KS) on Wednesday instead of Thursday and wanted to know if **Anthony Thompson** was "still good" referring to **Anthony Thompson** having crack cocaine to distribute.  **Anthony Thompson** told CI #1 he was "good" and asked CI #1 what "he needed".  CI #1 said he/she wanted "a yard" referring to an ounce of crack cocaine to which **Anthony Thompson** responded he is "good' meaning he had that quantity to distribute.

60.     CI #1 contacted **Anthony Thompson** via cellular telephone and told him CI #1 was in town (Junction City, Geary County, KS) and wanted to know where **Anthony Thompson** wanted to meet.  **Anthony Thompson** told CI #1 to meet him at the McDonald's on 6th Street and then changes the location to the Discount Liquor Store (located at 744 W 6th Street in Junction City, Geary County, KS).  CI #1 told **Anthony Thompson** he/she was not aware of the location for that establishment.  **Anthony**

Page: 258   Date Filed: 07/10/2023   Document: 01110884675   Appellate Case: 23-3102

**Thompson** told CI #1 it was "up the street from Dillon's" and to give **Anthony Thompson** 15 to 20 minutes (to arrive). Detective Alvin Babcock gave CI #1 directions to the location and he/she departed soon after.

61.     CI #1 arrived at the location and approximately 37 minutes later a grey in color Ford Focus arrived at the location. **Anthony Thompson** exited the vehicle and got into the vehicle CI #1 was driving. A second black male could be seen in the vehicle **Anthony Thompson** arrived in who was later identified as **Albert Banks**. The transaction was completed and as **Anthony Thompson** departed the location, surveillance was attempted on the vehicle he was driving but he was able to avoid being followed by Agents/Officers.

62.     The covert audio/video recording device from CI #1's vehicle was viewed by Detective Alvin Babcock and during the transaction **Anthony Thompson** told CI #1 "if he is unable to get in touch with him, CI #1 could call his bro (**Albert Banks**) at 785-317-1164 and his name is AB (**Albert Banks**)". **Anthony Thompson** told CI #1, AB (**Albert Banks**) was the person CI #1 met with the first time. It should be noted **Anthony Thompson** was referring to CI #1 making a purchase from **Albert Banks** on 09/28/2012 in the Taco Bell parking lot. It should also be noted this transaction took place within 1000' of Larry Dixon Alternative School.

63.     KBI Task Force Agent (TFA) Vidal Campos took possession of the evidentiary item and later submitted the evidentiary item to the KBI for analysis. The Affiant received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 5 and having a net weight of 27.74 grams.

64.     On 10/23/2012, Detective Alvin Babcock received a telephone call from CI #1 stating CI #1 attempted to contact **Albert Banks** several times to initiate a controlled purchase of crack cocaine from him but **Albert Banks** did not answer any of the incoming phone calls from CI #1. CI #1 did say he/she had a conversation with **Albert Banks** via text messaging though and forwarded the text messages to Detective Alvin Babcock. The messages are as follows;

- Is this AB that knows Ant who I got # from I am *******(omitted)
- What up yea this AB
- Will be comeing to Junk City if u got some work for me tomorrow

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 23 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 22 of 167

259

Appellate Case: 23-3102      Document: 01011088467S      Date Filed: 07/10/2023      Page: 259

- Yep hit me up when u ready
- Is there a money cut on 2

This conversation is translated to mean CI #1 sent a text message to **Albert Banks** asking if the number texted was **Albert Banks**.  He indicated it was **Albert Banks**.  CI #1 advised him he/she would be coming to Junction City, Geary County, KS tomorrow and wanted to know if **Albert Banks** had crack cocaine to purchase.  **Albert Banks** indicated he had crack cocaine for distribution and for CI #1 to call him when CI #1 was ready.  CI #1 asked if he/she would receive a discounted cost if he/she purchased two (2) ounces.

65.     CI #1 then contacted **Albert Banks** via cellular telephone later and they conversed in reference to CI #1 not being able to make it to Junction City on this date.  CI #1 said he/she would be in Junction City tomorrow (10/24/2012) and if **Albert Banks** had more (more than one or two ounces), CI #1 may want to purchase more quantity.  **Albert Banks** stated he may possibly have more available and for CI #1 to call him tomorrow.  CI #1 later received a text message from **Albert Banks** which read; U still want this o if not I am bout to get rid of it.  This text was asking CI #1 if he/she was still planning on purchasing the ounce of crack cocaine CI #1 had asked for and if CI #1 did not want it, **Albert Banks** was going to sell it to someone else.

66.     On 10/24/2012, the Affiant and other Officers met with CI #1 for the purpose of CI #1 making a crack cocaine purchase from **Albert Banks**.  CI #1 called **Albert Banks** via cellular telephone and told him CI #1 was approximately 15 minutes from Junction City, Geary County, KS and asked **Albert Banks** if he was "good" referring to whether or not he had crack cocaine available for distribution.  **Albert Banks** told CI #1 he was "good" and waiting on CI #1.  CI #1 asked **Albert Banks** if CI #1 would receive a discount if CI #1 were to purchase two (2) ounces.  **Albert Banks** said he did not believe he had that much crack cocaine left but he would "have to go see how much he has" and that he "thinks it's only like 1 ½" meaning he did not have the crack cocaine with him at that time and believed he only had one and one-half (1 ½) ounces left to sell.  **Albert Banks** told CI #1 he would give CI #1 a "deal", referring to a break in price, and CI #1 said he/she would take what **Albert Banks** had.  CI #1 asked **Albert Banks** where he wanted to meet CI #1 at and **Albert Banks** said to meet him 12th and Jefferson Street (Junction City, Geary County, KS).  CI #1 told **Albert Banks** he/she

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 24 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 23 of 167

260

Appellate Case: 23-3102     Document: 01011084675     Date Filed: 07/10/2023     Page: 260

knew where the Corner Club was (the intersection of 12th and Washington in Junction City, Geary County, KS) and he/she would meet **Albert Banks** there.

67.     CI #1 drove to the aforementioned location where CI #1 met with **Albert Banks** and purchased what was supposed to be 1 ½ ounces of crack cocaine for $1,800.00 which was given to CI #1 by the Affiant.  Detective Alvin Babcock observed **Albert Banks** walking east in the 100 block of W 12th Street prior to meeting with CI #1 and then observed **Albert Banks** exit CI #1's vehicle and walk to a residence having an address of 126 W 12th Street in Junction City, Geary County, KS/

68.     The Affiant took possession of the evidentiary items which were actually two (2) plastic baggies each containing suspected crack cocaine.  KBI TFA Vidal Campos later submitted the evidentiary item to the KBI for analysis.  The Affiant received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 4 and having a net weight of 40.96 grams.

69.     On 10/25/2012, Detective Alvin Babcock was listening to a recorded phone call from the Geary County Detention Center in which Martye Madkins III called telephone number 785-226-0131 (Martye Madkins III was incarcerated at the time in this facility).  The aforementioned telephone number was a cellular telephone number which Jasmine Tipton was utilizing.  Jasmine Tipton answered the phone and they talked briefly then she told Martye Madkins III that **Albert Banks** was there and she gives the phone to **Albert Banks**.  **Albert Banks** and Martye Madkins III talk in reference to bonding Martye Madkins III out of jail.  **Albert Banks** told Marty Madkins III "they already have the money and they are waiting for a co-signor" to bond Martye Madkins III out.  Martye Madkins III asks **Albert Banks** the question of, "My cousin did that bullshit man?" **Albert Banks** replied, "There was two (2) onions laying on the table".  Martye Madkins III said, "I'm gonna snap on they motherfucking ass".  **Albert Banks** told Martye Madkins III that he "hurried up and slid down there".  it should be noted this conversation meant there were two (2) ounces of crack cocaine on the table at Jasmine Tipton's residence (227 W 14th Street Apartment #2 in Junction City, Geary County, KS) and **Albert Banks** retrieved it hurriedly.  **Albert Banks** also said "they" were trying to bond "Dirty Dwayne" out of jail but "Dirty Dwayne's" stepfather would not co-sign to get him out of jail.  Detective Alvin Babcock knows "Dirty Dwayne" to be Dwayne

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 25 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 24 of 167

261

Appellate Case: 23-3102     Document: 01011 0884675     Date Filed: 07/10/2023     Page: 261

Alexander who is a partner of **Anthony Thompson**, **Albert Banks** and Martye Madkins III.

70.     On 10/29/2012, Detective Alvin Babcock received a text message from CI #1 which included a text message conversation CI #1 had with **Albert Banks**. The text message from CI #1 to **Albert Banks** read; "Will be out 4 sure on Friday. Will u be ready for my 2200" indicating CI #1 would be in Junction City, Geary County, KS on Friday and CI #1 wanted to know if **Albert Banks** would have cocaine to distribute to CI #1. **Albert Banks** simply replied back "Yep". A purchase of crack cocaine was attempted but **Albert Banks** indicated, during a telephone conversation, that it would be a couple of hours. A couple hours later, CI #1 contacted **Albert Banks** once again and **Albert Banks** indicated he was not in town (Junction City, Geary County, KS). CI #1 attempted to contact **Albert Banks** a short time later and he did not answer his cellular telephone so the attempted purchase of crack cocaine was discontinued for this date.

71.     On 10/31/2012, Detective Alvin Babcock observed a green in color Ford Thunderbird being driven by Glenda Robertson in the 500 block of E 8th Street in Junction City, Geary County, KS. The vehicle traveled along multiple streets and made several turns finally entering into an alleyway where Detective Alvin Babcock lost sight of it. Captain Shawn Peirano of the GPPD gained sight of the vehicle traveling through the alleyway where it was last seen. Detective Alvin Babcock drove to the intersection of 12th and Franklin Street in Junction City, Geary County, KS and observed the vehicle with **Albert Banks** in the front passenger seat and Glenda Robertson in the driver's seat. To the best of Detective Alvin Babcock's knowledge, at that time **Albert Banks** and Glenda Robertson were in a domestic relationship. Detective Alvin Babcock observed the vehicle turn west on 12th Street and finally stopping in front of a residence located at 126 W 12th Street in Junction City, Geary County, KS. **Albert Banks** exited the vehicle, approached the residence, then walked past the building and continued toward the alley where Officers lost sight of him. Detective Alvin Babcock was aware of previous information from SOI #1 who stated **Albert Banks** stashes or hides his cocaine in random alleys where it is left until he needs it for distribution. Once **Albert Banks** has a need for an unknown quantity of cocaine, he will proceed to the location where he had hid the cocaine, obtain it and then transport it to the person/s to distribute it. This

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 26 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 25 of 167

262

Appellate Case: 23-3102    Document: 010110884675    Date Filed: 07/10/2023    Page: 262

practice is done in an effort to conceal the possession of the illegal drugs in case law enforcement were to locate where **Albert Banks** was residing and execute a search warrant at that residence. If the illegal drugs were located in a location other than in or on property where **Albert Banks** resides or was located at, the drugs would not be associated to him.

72.     On 11/07/2012, CI #1 contacted Detective Alvin Babcock and said he/she had sent **Albert Banks** a text message asking him if he had any "work" for CI #1 referring to any crack cocaine for CI #1 to purchase. **Albert Banks** replied back "Yep". It should be noted no certain quantity of crack cocaine had been discussed or agreed up on by either party as the conversation was being conducted via text messaging. CI #1 arrived in Junction City, Geary County, KS and met with Agents/Officers. A controlled phone call was made to **Albert Banks** who told CI #1 to meet him at the same location as before referring to the Corner Club located at the intersection of 12th Street and Washington Street in Junction City, Geary County, KS. The Affiant gave CI #1 $2,200.00 in US Currency to be utilized for the crack cocaine purchase.

73.     CI #1 drove to the aforementioned location and once again called **Albert Banks** via cellular telephone to tell him CI #1 had arrived at the agreed upon location. **Albert Banks** told CI #1 to meet him in front of the residence where he had had contact with **Albert Banks** previously (10/24/2012) which was 126 west 12th Street in Junction City, Geary County, KS. CI #1 did as he/she was instructed to and upon parking, a black male (later identified by Detective Alvin Babcock as **Albert Banks**) exited the residence and approached CI #1. **Albert Banks** gave CI #1 a plastic baggie containing two (2) plastic baggies each having an off white substance in them later, determined to be crack cocaine. CI #1 gave **Albert Banks** the $2,200.00 in US Currency and then asked **Albert Banks** if he/she could purchase three (3) more ounces of crack cocaine in a couple of days if CI #1 was able to sell this two (2) ounces. **Albert Banks** agreed and told CI #1 to call him when he/she was ready. CI #1 left the location and met with the Affiant and other Agents/Officers.

74.     The Affiant took possession of the evidentiary item and later signed it over to KBI TFA Vidal Campos who later submitted the evidentiary item to the KBI for

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 27 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 26 of 167

263

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 263

analysis. The Affiant received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 5 and having a net weight of 56.08 grams.

75.     On 11/14/2012, The Affiant and other Agents/Officers met with CI #1 for the purpose of CI #1 purchasing crack cocaine from **Anthony Thompson**. CI #1 had been in contact with **Anthony Thompson** prior and had asked **Anthony Thompson** if he/she could purchase three (3) ounces of crack cocaine from him. **Anthony Thompson** told CI #1 he/she could as **Anthony Thompson** "was sitting fat right now" referring to having a large quantity of crack cocaine for distribution at that time. A negotiated price of $3,300.00 for the three (3) ounces of crack cocaine was agreed upon.

76.     Later this day (11/14/2012), CI #1 contacted **Anthony Thompson** once again via cellular telephone. **Anthony Thompson** told CI #1 he was not in Junction City, Geary County, KS at that time and would not be returning for two to two and a half (2 to 2 ½) hours as he was trying to "get it" referring to attempting to obtain more cocaine as he had obviously distributed all cocaine he had talked to CI #1 about previously. . CI #1 told **Anthony Thompson** he/she would be waiting for him once he returned. CI #1 and **Anthony Thompson** had contact via cellular telephone at a later time at which **Anthony Thompson** said he wanted to meet CI #1 at the Taco Bell parking lot (located at 407 W 18th Street in Junction City, Geary County, KS) once again. **Anthony Thompson** advised CI #1 he now wanted $3,600.00 for the three (3) ounces of crack cocaine. CI #1 was able to negotiate the price down to $3,400.00 and the transaction was agreed upon.

77.     The Affiant gave CI #1 $3,400.00 in US Currency to complete the transaction. CI #1 drove to the aforementioned location and waited on **Anthony Thompson**. After a period of time, CI #1 called **Anthony Thompson** once again to see if was getting close to the location as earlier, **Anthony Thompson** told CI #1 he was in Manhattan and en route to the location and suspected he would be at the location in 15 minutes but more time had elapsed than that. **Anthony Thompson** eventually arrived at the location and was seen by surveillance units. **Anthony Thompson** entered the front passenger seat of the vehicle CI #1 was driving and they began to converse. **Anthony Thompson** gave CI #1 two (2) plastic baggies each containing an off white chunky substance which was later confirmed to be crack cocaine. **Anthony Thompson** told CI

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 28 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 27 of 167

264

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 264

#1 each baggie weighed one and one-half (1 ½) ounces. **Anthony Thompson** told CI #1 they (the two packages and their contents) were still warm as he had just made it meaning he had just recently converted cocaine powder to crack cocaine immediately prior to meeting with CI #1. CI #1 gave the US Currency to **Anthony Thompson** and asked him to count it to confirm the amount was correct to which he did.

78.     Once the transaction was complete, **Anthony Thompson** exited the vehicle and walked to the south from this location. **Anthony Thompson** was observed by Detective Alvin Babcock walking in the yard of a residence located at 412 Roosevelt Street in Junction City, Geary County, KS but he was not seen entering the residence. Although the grey in color Ford Focus he had been seen driving previously was not seen near this location either. CI #1 drove to a predetermined location where he/she met with Agents/Officers. CI #1 gave the two (2) plastic baggies to the Affiant and the Affiant could feel they were still warm even given the cold ambient temperature outside at the time.

79.     The Affiant took possession of the evidentiary items and later transported and later submitted the evidentiary items to the KBI for analysis. The Affiant received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 6 and having a net weight of 82.95 grams.

80.     On 11/30/2012, Detective Alvin Babcock was contacted by SOI #1. It is unclear if **Albert Banks** was conversing with SOI #1 or if SOI #1 overheard a conversation **Albert Banks** was having with someone else (on 11/30/2012) but SOI #1 told Detective Alvin Babcock that **Anthony Banks** had eluded "them" (Detective Alvin Babcock and someone else) on 11/29/2012.

81.     On 11/29/2012, Detective Alvin Babcock and Detective Angie Weeks were in his unmarked police vehicle when they observed **Albert Banks** driving a silver in color Dodge Stratus in the 1200 block of north Jefferson Street in Junction City, Geary County, KS. Detective Alvin Babcock turned his police vehicle around in an attempt to follow **Albert Banks** and obtain the vehicle tag number displayed on the vehicle he was driving. **Albert Banks** turned east into an alleyway and continued at a high rate of speed indicated to Detective Alvin Babcock by the cloud of dust in the alleyway. Detective Alvin Babcock then observed **Albert Banks** run to a residence located at 126 W. 12th

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 29 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 28 of 167

265

Page: 265          Date Filed: 07/10/2023          Document: 01110884675          Appellate Case: 23-3102

Street. Detective Alvin Babcock was able to observe the tag number on the grey in color Dodge Stratus which was 214 EBL. Detective Alvin Babcock knows this vehicle to belong to Barbara Shaw. Detective Alvin Babcock is aware from previous law enforcement contact and recent CI conversation that Barbara Shaw (AKA "Smiley") is heavily ingesting crack cocaine at the residence located at 126 ½ W. Chestnut Street in Junction City, Geary County, KS.

82. SOI #1 also told Detective Alvin Babcock a person SOI #1 knows as "Ace' (known to Detective Alvin Babcock as Adrian Muse) was in Junction City, Geary County, KS on 11/29/2012 and was observed with **Anthony Thompson**. This was the first time SOI #1 had met "Ace" (Adrian Muse). SOI #1 had received information indicating Adrian Muse had been "raided" (search warrant executed at his residence) by the "Feds" (Federal Law Enforcement Officers) and a stolen firearm was located. SOI #1 was told the "feds" issued Adrian Muse a citation for being in possession of the stolen firearm and then told Adrian Muse something about the "Cartel" and therefore Adrian Muse is frightened the Cartel is looking for him. SOI #1 also advised he/she believed **Anthony Thompson** had been supplied cocaine by Adrian Muse in the past but since Adrian Muse had been "raided" by the "Feds", he hadn't supplied **Anthony Thompson** with cocaine.

83. It should be noted, the Affiant is aware of a search warrant which had been executed at a residence located at 18921 W. 160th Terrace in Olathe, Johnson County, KS on 10/24/2012 (residence of Adrian Muse) in which a large digital scale, a Springfield Armory Xd-40 pistol (which was found to have been reported as stolen), an Apple I-phone, one (1) firearm magazine and nine (9) rounds of Springfield 40 caliber ammunition were seized. This information/documentation is in reference to Olathe Police Department case number 2012-0016325.

84. SOI #1 also told Detective Alvin Babcock that SOI #1 had heard **Anthony Thompson** had recently drove to Kansas City (no indication whether it was Kansas City, KS or Kansas City, MO) to obtain more cocaine for conversion to crack cocaine and ultimately for distribution. **Anthony Thompson** met with an unknown cocaine supplier who he gave $3,000.00 in US Currency to purchase the cocaine. The unknown supplier stole the $3,000.00 from **Anthony Thompson**.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 30 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 29 of 167

266

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 266

85.    SOI #1 believed **Anthony Thompson** and **Albert Banks** were to be obtaining two (2) ounces of cocaine on this day but it was unknown where they were going to obtain it and who they were to obtain it from.

86.    SOI #1 also told Detective Alvin Babcock that **Albert Banks** allegedly moved to a residence located behind a residence Caress Jackson resided at.  Detective Alvin Babcock believes Caress Jackson to reside at 235 E 3rd Street in junction City, Geary County, KS.  Detective Alvin Babcock knows **Albert Banks** and Caress Jackson have a child together.

87.    On 01/22/2013, CI #1 contacted **Anthony Thompson** in reference to purchasing crack cocaine from him on 01/23/2013 at approximately 11:30 AM. **Anthony Thompson** stated he would not be out of school classes until 12:00 PM.  CI #1 asked him if they could meet at approximately 12:30 PM to which **Anthony Thompson** agreed.  **Anthony Thompson** asked CI #1 if he/she wanted "a whole one" referring to one (1) ounce of crack cocaine to which CI #1 replied "yes".  CI #1 asked **Anthony Thompson** if he/she could purchase the ounce of crack cocaine for $1,275.00.  **Anthony Thompson** replied, "I can't swing it right now buddy.  Ain't no possible way".  CI #1 asked if he/she could purchase it for $1,300.00 and at approximately the same time, **Anthony Thompson** stated "whole, 14.  It's going to be worth it though".  CI #1 was trying to negotiate a lower price for the ounce of crack cocaine but **Anthony Thompson** stated the price would be higher and wanted $1,400.00 for it.  The conversation continued ending with the two of them agreeing to meet on 01/23/2013 at approximately 12:30 PM.

88.    On 01/23/2013, CI #1 met with Agents/Officers and made a controlled phone call to **Anthony Thompson**.  CI #1 asked **Anthony Thompson** if he was ready to meet and **Anthony Thompson** said he was just getting out of school.  **Anthony Thompson** went on to say, "Gotta get everything ready.  I got it ready" referring to preparing the crack cocaine for distribution and then stated he had it prepared.  CI #1 asked **Anthony Thompson** where he wanted to meet at and **Anthony Thompson** stated they could meet at the Taco Bell in approximately one (1) hour.

89.    Approximately one (1) hour later, CI #1 called **Anthony Thompson** once again.  **Anthony Thompson** said, "On my way there now buddy".  CI #1 asked **Anthony Thompson** if he wanted CI #1 to proceed to the meeting location.  **Anthony Thompson**

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 31 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 30 of 167

267

Appellate Case: 23-3102      Document: 01110884675      Date Filed: 07/10/2023      Page: 267

said, "No, I'm coming from Manhattan. I'll meet you on the edge (referring to the east side of Junction City, Geary County, KS), that gas station by Wal-Mart (referring to the Shell Travel Center located at 821 East Chestnut Street in Junction City, Geary County, KS)". CI #1 asked, "The truck stop" to which **Anthony Thompson** replied, "I'm about two or three (2 or 3) minutes out" and the conversation ended. The Affiant gave CI #1 $1,400.00 in US Currency to purchase the crack cocaine.

90.     CI #1 drove to the agreed upon location and waited for **Anthony Thompson** to arrive. **Anthony Thompson** eventually arrived in a vehicle being driven by a black male whom Detective Alvin Babcock identified as Michael Asbury. **Anthony Thompson** entered into the passenger side of the vehicle CI #1 was driving and the $1,400.00 was exchanged for the ounce of crack cocaine.   CI #1 asked **Anthony Thompson** for a phone number for **Albert Banks** as CI #1 had been trying to contact **Albert Banks** but the phone number CI #1 had for **Albert Banks** was not in working order anymore.   **Anthony Thompson** said the phone number for **Albert Banks** was **(785) 375-6704**. CI #1 and **Anthony Thompson** then departed. CI #1 was followed to a pre-determined location where CI #1 met with Agents/Officers once again. CI #1 gave the Affiant a clear plastic baggie with an off white chunky substance in it.

91.     The Affiant took possession of the evidentiary item and later transported and later submitted the evidentiary item to the KBI for analysis. The Affiant received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 7 and having a net weight of 27.22 grams.

92.     CI #1 contacted **Albert Banks** via cellular telephone at telephone number **(785) 375-6704**. It should be noted this phone number was collected from a telephone being used by Patricia Foy on 12/29/2012 and was listed in the contacts of the phone memory as "AB" which is an alias for **Albert Banks**. **Albert Banks** answered and Detective Alvin Babcock recognized the voice as that of **Albert Banks**. CI #1 asked **Albert Banks** to meet him/her as CI #1 stated he/she had some clothes for **Albert banks** to look at. They agree to meet at the Dollar General Store located at the intersection of Chestnut and Franklin Streets in Junction City, Geary County, KS. CI #1 drove to the aforementioned location and a person arrived whom Detective Alvin Babcock identified as **Albert Banks**. **Albert Banks** arrived in a gold in color vehicle bearing Kansas license

Appellate Case: 23-3102      Document: 01110884675      Date Filed: 07/10/2023      Page: 268

tag 181DMY. The vehicle was found to be registered to a 2001 Buick Century with Robert Thomas Keeley of 6826 Meade Loop Fort Riley, KS listed as the owner. After CI #1 and **Albert Banks** were finished conversing, CI #1 met with Agents/Officers once again at which time CI #1 stated he/she conversed with **Albert Banks** in reference to purchasing crack cocaine and **Albert Banks** told CI #1 to contact him anytime CI #1 was ready and he could receive crack cocaine from him thus indicating this phone belonging to **Albert Banks** is being used for the distribution of illegal drugs.

93.    On 02/13/2013, CI #1 met with the Affiant and other Agents/Officers in reference to purchasing crack cocaine from **Albert Banks**. CI #1 contacted **Albert Banks** at telephone number **(785) 375-6704** and the two (2) agreed to meet at the Dollar General Store located at 201 S. Franklin Street in Junction City, Geary County, KS. CI #1 told **Albert Banks** he/she wanted to purchase one (1) ounce of crack cocaine from him to which **Albert Banks** agreed. CI #1 arrived at the location and approximately 30 minutes later, CI #1 contacted **Albert Banks** who said he was en route to the location. Approximately 35 minutes later, **Albert Banks** arrived and met with CI #1. This transaction was recorded on a covert electronic audio/video device. **Albert Banks** got into the passenger side of the vehicle CI #1 was driving and shortly thereafter a white female approached **Albert Banks. Albert Banks** told the white female, who was later identified as Kari Stutheit, to get back into her vehicle (which was a silver in color Mitsubishi Eclipse) to which she did. The transaction between CI #1 and **Albert Banks** ensued at which time **Albert Banks** told CI #1 the quantity of crack cocaine would be cheaper in price ($1,250.00) as it was "3 off" meaning the weight was 25 grams instead of the 28 grams earlier agreed upon. The transaction concluded and CI #1 left the location to meet with the Affiant.

94.    **Albert Banks** was observed getting out of CI #1's vehicle by SSA Amanda Young and KBI TFA Vidal Campos. They observed **Albert Banks** approach the white female earlier identified as Kari Stutheit sitting in the vehicle she drove to this location in. SSA Amanda Young and TFA Vidal Campos observed what they described as a hand-to-hand transaction between Kari Stutheit and **Albert Banks.** This refers to **Albert Banks** selling Kari Stutheit crack cocaine.

31

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 33 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 32 of 167

269

Appellate Case: 23-3102      Document: 010110884675      Date Filed: 07/10/2023      Page: 269

95.     Surveillance members observed **Albert Banks** enter into a dark in color Ford Focus bearing Kansas license tag 781FDR which was registered to Karen Johnson. Detective Alvin Babcock stated he notes Karen Johnson as being involved in the drug trade in Junction City, Geary County, KS area.

96.     When CI #1 met with the Affiant, he/she gave the Affiant the evidentiary item he/she purchased from **Albert Banks.** This was described as a clear plastic baggie containing an off white substance.  The Affiant took possession of the evidentiary item and later completed an Evidence Custody Receipt and signed the item over to SSA Amanda Young to transport to the KBI Evidence Control Center to be held for analysis.

97. The Affiant received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 8 and having a net weight of 24.63 grams.

## CONFIDENTIAL SOURCES

98.     To date, there are two cooperating individuals (CI's) that have been developed and assisting in the investigation. Only one of the CI's has been able to infiltrate this organization actively.  This particular CI has been able to make purchases of crack cocaine from only certain persons involved in this organization.  Multiple crack cocaine purchases have been made beginning with small amounts of crack cocaine with progressively larger purchases being made up to three ounces in quantity.  Although this particular CI has been able to gain limited trust from these individuals, the full scope of the organization, the persons involved and the source of supply have not been identified as is doubtful this information will be identified due to the guarded nature of the distribution ring and the source of supply.  Early within the investigation, it was hoped purchasing larger quantities of crack cocaine would afford law enforcement the ability to identify the source of supply but as of this date, that has not been available as **Anthony Thompson** and **Albert Banks** have been able to supply the quantities requested, therefore it is the belief of law enforcement that the source of supply would not be identified to law enforcement utilizing this traditional means of investigation.  Others within this distribution organization will likely never be identified as the CI has reached

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 34 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 33 of 167

270

Appellate Case: 23-3102   Document: 01110884675   Date Filed: 07/10/2023   Page: 270

the upper echelon of this organization, therefore, others distributing crack cocaine for **Anthony Thompson** and **Albert Banks** will likely not ever be identified to this CI.

99.    The other CI has indicated an unwillingness to be identified or testify in court for fear of his/her physical safety. Fear not only of **Anthony Thompson** and **Albert Banks,** but also of others associated with the organization. This CI is unwilling to make purchases from any of the individuals and therefore provides limited information related to this organization.

100.    A person whom has been identified as a Source of Information has been developed but once again has very limited knowledge of the organization therefore making it difficult to corroborate all the information the SOI is receiving. Much of the information the SOI receives is dated information as it is learned by the SOI after the fact. This SOI has also indicated an unwillingness to be identified or testify in court for fear of his/her physical safety

101.    No other cooperating individuals have been developed and none are anticipated to be developed to assist in this investigation due to the inherent risks of bodily harm that persons have expressed may occur if they were to assist in the arrest of **Anthony Thompson, Albert Banks** or any of their co-conspirators. Due to the structure and loyalty of the members of this organization, it is unlikely that any other CI's can, or will be, developed from those who associate with or are members of this organization.

## PEN REGISTER INFORMATION AND ANALYSIS

102.    To further the investigation, Pen Register was initiated on the target phone number **(785) 375-6704** pursuant to a Kansas Court Order. The Affiant was aware **Albert Banks** used the telephone for illegal drug transactions, as purchases CI #1 made from **Albert Banks** were arranged over the telephone. In February 2013, Affiant began receiving Pen Register information for the telephone number **(785) 375-6704,** for a period of time from 02-09/2013 to 02/22/2013. The subscriber information was obtained through the official phone provider business records. This particular phone is what is known as an Individual Boost Prepaid Account phone and is utilized through Sprint Nextel. The subscriber information indicated this phone has no name associated with it

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 35 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 34 of 167

271

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 271

as a subscriber but the Affiant knows it to be used by **Albert Banks** through this investigation. This type of phone service does not require a positive identification by the subscriber prior to the authorization.

103.    The Pen Register for the 14 days indicated 2,224 total phone calls and 3,658 text messages were recorded Of the 2,224 total phone calls; 1,640 were incoming calls with 582 outgoing and 2 unknown to the phone number. The records show 170 separate phone numbers were either dialed or dialed into the target phone number. The average number of calls/text messages per day was 420.  The average length of incoming call in duration was 40 seconds and the average length of outgoing call in duration was 1 minute and 02 seconds which does not include text messages sent or received as those means of communication do not record any minute usage. The Affiant is aware through experience and training that many calls involving illegal drug transactions are of short duration. The short duration of those phone calls occurring on the target phone is indicative of illegal drug transactions.

104.    Of the 170 phone numbers only 49 of them have been identified or are believed to have been identified, thus far in the investigation.   Of these 49 identified phone numbers, 41 of the known (or believed to be identified) subscribers named are known associates of **Albert Banks** and/or have past arrests for narcotics violations.

## TELEPHONE SUBSCRIBER INFORMATION OF INTEREST

105.    On 02/09/2013, a Pen Register was initiated on telephone number **(785) 375-6704**. The following phone numbers, frequency of calls/text messages, and subscriber information is detailed below. This is not an inclusive list, but a list of frequently dialed numbers and criminal information related to the subscriber; or in some cases the person believed to be actually utilizing the particular telephone as some of the phone numbers subpoenaed had no subscriber attached to the phone.  This is indicative of a pay-as-you-go type phone, which do not require a person to list their actual name and in some cases no name is required at all to activate the phone.  In some cases the phone was in the name of a person (as the subscriber) which was other than the actual person using the phone.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 36 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 35 of 167

272

Page: 272          Date Filed: 07/10/2023          Document: 01110884675          Appellate Case: 23-3102

106. The phone number **(785) 717-9386** was indicated a total of 299 times from 02/09/2013 to 02/22/2009. This phone number was subpoenaed but as of 02/22/2012 the subscriber information had not been provide by the phone carrier. Therefore, the identity of the person this phone was subscribed to is unknown.

107. The phone number **(785) 789-2019** was indicated a total of 309 times from 02/09/2013 to 02/21/2009. This phone number was subpoenaed but as of 02/22/2012 the subscriber information had not been provide by the phone carrier. Therefore, the identity of the person this phone was subscribed to is unknown.

108. The phone number **(785) 317-7682** was indicated a total of 151 times from 02/09/2013 to 02/19/2013. The subscriber information shows this phone registered to Angela Foy, W/F DOB 04/12/1933 but is believed to be used by Patricia Foy (Park), W/F DOB ▇▇▇▇ Patricia Foy has the following criminal history indicating arrests. 02/28/2002 Possession of opiates, opium or narcotic drugs; possession of depressants/stimulants/hallucinogenics/anabolic steroids; possession of controlled substances or drug paraphernalia. 05/15/2002 Possession of opiates, opium or narcotic drugs; possession of simulated controlled substances or drug paraphernalia. 06/27/2006 Possession of opiates, opium or narcotic drugs. 03/14/2007 theft. 08/24/2007 Sale etc. of opiates, opium, or narcotic drugs; possession of paraphernalia to grow, distribute marijuana. 07/29/2008 Conspiracy to aiding a felon; conspiracy theft; burglary. 08/06/2008 Probation violation. 06/27/2009 Domestic battery; disorderly conduct; criminal restraint. 09/22/2011 Possession of opiates, opium or narcotic drugs; possession of simulated controlled substances or drug paraphernalia. 12/29/2011 Theft. It should be noted; Patricia Foy was arrested on December 29, 2012 by the Junction City Police Department and was in possession of a cellular telephone (believed to be the phone having this telephone number but not confirmed) which had telephones numbers for **Anthony Thompson** and **Albert Banks** which are the same telephone numbers mentioned in this affidavit. Other phone numbers for persons involved in this investigation were also found within the cellular telephone which indicates association between Patricia Foy, **Anthony Thompson, Albert Banks**, and others mentioned in this investigation. Some of the persons phone numbers found in the phone were; Jason Dixon, Richard Verkerke, Sammy Pleas, Delantis Hairston, Linnie Sanders, Jason

Page: 273          Date Filed: 07/10/2023          Document: 010110884675          Appellate Case: 23-3102

273

Roberts (which was the name used as the subscriber for the phone in the possession of **Anthony Thompson**), Charles Foster, Gevonni Davis, Kenneth Wayne Bellamy, Akwete Burd and Felix Jenkins.

109.    The phone number **(904) 994-1672** was indicated a total of 167 times from 02/09/2013 to 02/21/2013.  The subscriber information shows this phone registered to Tiffany Young, W/F ▇▇▇▇▇▇▇▇ Tiffany Young has the following criminal history indicating arrests.  09/12/2001 Giving a worthless check<$500.00.  No other criminal history was found for Tiffany young and she is unknown to the JCPD.

110.    The phone number **(316) 347-0088** was indicated a total of 164 times from 02/09/2013 to 02/22/2013.  This phone number was subpoenaed and was listed as a "Phone in the box" with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

111.    The phone number **(785) 317-1453** was indicated a total of 132 times from 02/09/2013 to 02/21/2013.  The subscriber information shows this phone registered to Tom Stutheit, W/M DOB ▇▇▇▇▇ but is believed to be used by Kari Stutheit, W/F DOB ▇▇▇▇▇ Kari Stutheit has the following criminal history indicating arrests. 04/16/1994 giving a worthless check.  12/04/1997 Possession of simulated controlled substances or drug paraphernalia.  12/08/1999 Failure to appear.  02/16/2000 Prostitution. 02/17/2000 Prostitution; failure to appear.  06/23/2001 Driving under influence of alcohol or drugs.  03/10/2002 Driving while license cancelled/suspended/revoked.  09/13/2007 Driving under influence of alcohol or drugs.  On 02/13/2013, Kari Stutheit was observed with meeting with **Albert Banks** when he sold crack cocaine to CI #1 and she was believed to obtain crack cocaine from **Albert Banks** as well at that time.

112.    The phone number **(785) 418-4926** was indicated a total of 115 times from 02/09/2013 to 02/21/2013.  This phone number was subpoenaed and no subscriber information was available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

113.    The phone number **(785) 226-1783** was indicated a total of 116 times from 02/09/2013 to 02/21/2013.  The subscriber information shows this phone registered to Jason Roberts but is known, through this investigation to belong to **Anthony Thompson**,

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 38 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 37 of 167

274

Appellate Case: 23-3102     Document: 01011084675     Date Filed: 07/10/2023     Page: 274

B/M DOB ▮▮▮▮▮ who has been detailed throughout this affidavit.   **Anthony Thompson** has the following criminal history indicating arrests.   09/12/2000 Felony possession of paraphernalia.   11/07/2001 Domestic battery; criminal threat; criminal trespass.   02/16/2002 Possession with the intent to sell/sale etc within 1000' of school property; obstruction legal process or official duty in misdemeanor case; no drug tax stamp.   06/18/2002 Probation violation.   06/28/2002 Possession of depressant/stimulants/hallucinogenics/steroids.   12/24/2002 Possession of depressant/stimulants/hallucinogenics/steroids; violation of a protective order; aggravated burglary.   02/25/2003 Sale etc. of opiates, opium or narcotic drugs.   06/15/2007 Conspiracy sale or possession with the intent to sell stimulant; sale, offer depressants/hallucinogenics/stimulants/anabolic steroids.   06/25/2010 driving under the influence of alcohol or drugs.   12/05/2010 Obstructing legal process or official duty.   07/01/2012 Domestic battery.

114.    The phone number **(785) 210-4680** was indicated a total of 91 times from 02/09/2013 to 02/19/2013.   This phone number was subpoenaed and was listed as a "Phone in the box" with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

115.    The phone number **(785) 307-2624** was indicated a total of 93 times from 02/09/2013 to 02/21/2013.   The subscriber information shows this phone registered to Carmean Ridley, B/F DOB ▮▮▮▮▮ No criminal history was located for this subscriber.   It is not known whether this person is using the phone or has obtained the phone for use by someone else.

116.    The phone number **(785) 727-5196** was indicated a total of 125 times from 02/09/2013 to 02/22/2013.   This phone number was subpoenaed and listed T-Mobile as the carrier with no subscriber information available meaning the person activating the phone was not require to provide a name or any type of identification for activation.

117.    The phone number **(785) 307-8346** was indicated a total of 55 times from 02/09/2013 to 02/22/2013.   The subscriber information shows this phone registered to Charles with no last name provided.   Charles is believed to be Charles Foster according to JCPD records.   This phone number was found in Patricia Foy's phone when she was

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 275

arrested on 12/29/2012 and listed as Charles as well.   Charles Foster has the following criminal history indicating arrests.  06/15/1991 Possession of opiate, opium or narcotic drugs.  09/11/1992 Sale etc. opiates, opium or narcotic drugs.  01/20/1995 Sale etc. opiates, opium or narcotic drugs; no drug tax stamp.  04/19/2001 possession of simulated controlled substances or drug paraphernalia; possession of paraphernalia to grow, distribute marijuana.  03/04/2003 Possession of simulated controlled substances or drug paraphernalia; possession of opiates, opium or narcotic drugs; possession of depressant/stimulants/hallucinogenics/steroids.  12/18/2008 Conspiracy to possess with the intent to sell, sale, etc. within 1000' of a school; attempt to arrange sale/purchase using communication facility for drug; no drug tax stamp for marijuana or controlled substance.  On 08/31/2012, CI #1 made a purchase of crack cocaine from Charles Foster and **Anthony Thompson**.

118.    The phone number **(785) 761-7975** was indicated a total of 65 times from 02/09/2013 to 02/21/2013.  The subscriber information shows this phone registered to Norma Mohammed, B/F DOB ▇▇▇▇▇▇  No criminal history was located for this subscriber.  It is not known whether this person is using the phone or has obtained the phone for use by someone else.

119.    The phone number **(785) 717-9028** was indicated a total of 81 times from 02/10/2013 to 02/21/2013.  The subscriber information shows this phone registered to Elisa Davis, B/F DOB ▇▇▇▇▇▇  Elisa Davis has the following criminal history for arrest.  01/02/2007 Criminal damage to property.

120.    The phone number **(785) 492-9602** was indicated a total of 40 times from 02/11/2013 to 02/19/2013.   The subscriber information shows this phone to be a TracFone with no subscriber information available.

121.    The phone number **(954) 649-5125** was indicated a total of 54 times from 02/09/2013 to 02/21/2013.  The subscriber information shows this phone registered to John Dichiarra but the investigation has shown the phone to be used by Gevonni Davis, B/M DOB ▇▇▇▇▇▇  This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Javontae.  Gevonni Davis has been indicated earlier in this affidavit as to his involvement in distribution of crack cocaine with **Anthony Thompson**, Martye Madkins III and CI #1.  Gevonni Davis has the following

38

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 40 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 39 of 167

276

criminal history indicating arrests.  12/31/2000 Giving a worthless check.  03/12/2004 Unlawful removal of theft detection device. 01/06/2012 Making false information; theft. 05/14/2012 Failure to appear.

122.    The phone number **(785) 761-6510** was indicated a total of 55 times from 02/10/2013 to 02/21/2013.   The subscriber information shows this phone to be a TracFone with no listed person as the subscriber.

123.    The phone number **(785) 375-3222** was indicated a total of 45 times from 02/09/2013 to 02/21/2013.  The subscriber information shows this phone registered to Nance with no last name provided.  According to the JCPD this phone is used by Jason Dixon.  This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Nance as well.  On 09/27/2012, CI #1 had cellular telephone contact with Jason Dixon B/M DOB █████████ using telephone number (785) 375-3222 at which time, Jason Dixon sold CI #1 crack cocaine.  Jason Dixon has the following criminal history indicating arrests.  10/14/1999 Aggravated battery; rape.  03/14/2000 Attempt to commit aggravated criminal threat causing loss >$500.00<$25,000.00. 07/24/2000 Criminal threat.  04/30/2002 Probation violation.  08/01/2002 Failure to appear.    10/07/2002 Failure to appear.    3/28/2003 Battery; possession of depressant/stimulants/hallucinogenics/steroids.      03/06/2004 Domestic battery. 04/14/2004 Failure to appear on a misdemeanor.   05/13/2004 Failure to appear. 12/27/2004 failure to appear on a misdemeanor.   03/05/2005 Domestic battery. 03/25/2005 failure to appear.  05/02/2005 Domestic battery.  05/24/2005 Aggravated battery.  07/26/2005 Violation of a protective order.  10/13/2005 Probation violation. 11/07/2005 Violation of a protective order.  11/14/2005 Probation violation.  05/25/2006 Failure to appear on a misdemeanor; probation violation.    09/07/2006 Probation violation. 09/29/2006 Disorderly conduct. 05/31/2008 Failure to appear X2; aggravated failure to appear; probation violation.  08/16/2011 Failure to appear.  02/17/2012 failure to appear.

124.    The phone number **(785) 492-0021** was indicated a total of 32 times from 02/09/2013 to 02/18/2013.   The subscriber information was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 276

Appellate Case: 23-3102      Document: 010110884675      Date Filed: 07/10/2023      Page: 277

277

125.   The phone number **(785) 317-1591** was indicated a total of 53 times from 02/09/2013 to 02/20/2013.   The subscriber information was subpoenaed but as of 02/22/2013, the subscriber information was not available.

126.   The phone number **(785) 317-1281** was indicated a total of 39 times from 02/09/2013 to 02/22/2013.   The subscriber information shows this phone registered to Jalisa Carson, B/F DOB ███████ who resides at 2035 Fort Riley Boulevard, Manhattan, Kansas.   Jalisa Carson reported suspicious activity at the aforementioned address on 01/11/2013 and provided law enforcement with this phone number as belonging to her. Jalisa Carson resides with **Anthony Thompson** and they have a child together. Jalisa Carson has the following criminal history indicating arrests. 06/18/2004 Contempt of court indirect X2.   07/14/2004 Battery.   07/16/2004 Probation violation. 01/21/2007 Aggravated assault; battery; operating a motor vehicle without a valid license.

127.   The phone number **(785) 307-2000** was indicated a total of 31 times from 02/09/2013 to 02/20/2013.   The subscriber information shows this phone registered to Kriste Lienberger, W/F DOB ███████ Kriste Lienberger has the following criminal history indicating arrests.   03/08/1995 Battery.   10/24/1997 Forgery.   10/02/2003 Delivery manufacture drug paraphernalia other; possession of simulated controlled substances or drug paraphernalia; attempted sale of opiates, opium or narcotic drugs. 10/06/2006 Use or possess drug paraphernalia to introduce in human body. 06/01/2007 Failure to appear.   12/20/2007 Domestic battery against a family household member; criminal damage to property.   05/15/2008 Probation violation.   05/15/2008 Failure to appear. 09/18/2008 Criminal threat.   10/08/2008 Probation violation.   01/15/2009 Failure to appear.   02/15/2009 Failure to appear.   08/04/2009 Failure to appear.   09/08/2009 Failure to appear.

128.   The phone number **(785) 223-1181** was indicated a total of 43 times from 02/11/2013 to 02/22/2013.   This phone number was subpoenaed and found to have Verizon as the carrier with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

Appellate Case: 23-3102      Document: 01011084675      Date Filed: 07/10/2023      Page: 278

278

129.   The phone number **(785) 317-0425** was indicated a total of 26 times from 02/09/2013 to 02/19/2013.   The subscriber information shows this phone registered to Jalisa Carson B/F DOB███████ however it is believed Kathy Carson B/F DOB 06/03/1954 (the mother of Jalisa Carson) may be using this telephone.   Kathy Carson has the following criminal history indicating arrests.   04/16/1996 Possession of cocaine with the intent to sell; possession of drug paraphernalia; obstruction of official duty; possession of marijuana.

130.   The phone number **(785) 375-6921** was indicated a total of 24 times from 02/11/2013 to 02/18/2013.   The subscriber information shows this phone registered to Sheilaa Scott, B/F DOB███████ Sheilaa Scott has the following criminal history indicating arrests.      01/07/1989 Aggravated assault on law enforcement officer. 10/08/1994 Worthless checks.   04/10/1995 Four (4) counts forgery.   10/30//1997 Criminal threat; violation of conditions of bond.   03/03/1998 Theft by deception; making false writing.   08/17/1998 Obstruction.   02/11/1999 Possession of controlled substance. 08/26/1999 Worthless check and Failure to appear.   12/15/2000 Probation violation. 01/23/2001 Theft and forgery.   08/18/2001 Theft and three (3) counts of forgery. 12/03/2001 Probation violation. 04/07/2003 Probation violation.   07/03/2004 Violation of a protective order; criminal damage to property.   08/21/2004 Violation of a protective order; intimidation of a victim or witness; criminal damage to property.   08/31/2004 Forgery; theft.   05/13/2005 Probation violation.   10/01/2005 Probation violation. 05/19/2006 Harassment by telephone and Terroristic threat.   06/22/2006 Probation violation.   08/04/2007 Criminal threat; violation of a protective order; harassment by telephone. 08/30/2007 Violation of a protective order.   10/01/2011 Aggravated battery.

131.   The phone number **(785) 375-3247** was indicated a total of 21 times from 02/10/2013 to 02/19/2013.   The subscriber information shows this phone registered to Shenna Bronson, B/F DOB███████ Shenna Bronson was arrested on 11/30/2012 for Domestic battery; no other criminal history was located for Shenna Bronson.

132.   The phone number **(785) 717-9676** was indicated a total of 25 times from 02/15/2013 to 02/20/2013.   The subscriber information was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 279

133.   The phone number **(785) 317-0145** was indicated 20 times from 02/09/2013 to 02/12/2013.   The subscriber information shows this phone registered to Sarah Forrest B/F DOB███████ Sarah Forrest has the following criminal history indicating          arrests.          08/06/2008          Possession          of depressant/stimulants/hallucinogenics/steroids; Possession of opiates, opium or narcotic drugs.

134.   The phone number **(785) 317-1164** was indicated a total of 23 times from 02/10/2013 to 02/19/2013.   This phone number was subpoenaed and found to be a prepaid phone with no listed person as the subscriber.   In the early stages of the investigation, **Albert Banks** was the user of this phone as it had been used by CI #1 to contact **Albert Banks**.   The phone use was discontinued as minutes had not been added to it for approximately 1 ½ months.   At that time, **Albert Banks** obtained another phone (the one he is currently using).   In late January, 2013, the previous phone was re-activated once again but it is believed **Albert Banks** is not using it consistently and may have provided this phone to another person/s to use.   Per the subpoena, no name is associated with this phone meaning the person activating the phone was not required to produce any identification or a name to activate the phone.

135.   The phone number **(785) 226-5278** was indicated a total of 31 times from 02/09/2013 to 02/20/2013.   This phone number was subpoenaed and listed T-Mobile as the carrier with no subscriber information available meaning the person activating the phone was not require to provide a name or any type of identification for activation.

136.   The phone number **(913) 240-4047** was indicated a total of 28 times from 02/09/2013 to 02/21/2013.   The subscriber information shows this phone registered to Corress Jackson (actually Caress Jackson), B/F███████████ Caress Jackson has the following criminal history indicating arrests.  08/18/2008 Theft.  05/24/2011 Possession of certain hallucinogenic drugs.  11/22/2011 Probation violation.

137.   The phone number **(785) 477-7560** was indicated a total of 18 times from 02/10/2013 to 02/21/2013.   This phone number was subpoenaed and listed AT&T as the carrier with no subscriber information available meaning the person activating the phone was not require to provide a name or any type of identification for activation.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 44 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 43 of 167

-280

Appellate Case: 23-3102     Document: 01011084675     Date Filed: 07/10/2023     Page: 280

138.   The phone number **(785) 338-4149** was indicated a total of 19 times from 02/12/2013 to 02/18/2013.  This phone number was subpoenaed and listed T-Mobile as the carrier but as of 02/22/2013, the subscriber information has not been obtained.

139.   The phone number **(785) 307-9731** was indicated a total of 28 times from 02/15/2013 to 02/20/2013.  The subscriber information shows this phone registered to Felix.  It is believed the phone is being used by Felix Vinson, B/M ███████████ according to the JCPD.  This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Felix as well.  Felix Vinson has the following criminal history indicating arrests for.  09/30/1995 Driving while license suspended or revoked; willful obstruction of law enforcement officers.  05/30/2002 Breaking and/or entering (felony) with force; larceny after break/enter $200.00 and up.  08/26/2002 Larceny misdemeanor $50.00 - $199.00.  01/03/2003 Unauthorized use of a motor vehicle; possession of drug paraphernalia; carrying a concealed weapon - other; driving while license revoked.  09/19/2003 Unauthorized use of a motor vehicle; fugitive/extradition other state.  09/07/2004 Extradition/fugitive other state.  11/21/1989 Felony theft; conspiracy to commit theft - felony.  05/21/1990 Warrant arrest.  07/21/1991 Probation violation.  09/26/1991 Burglary unknown structure; theft value unknown.  03/30/1992 Attempted burglary unknown structure.  12/15/1992 Contempt of court indirect.  04/04/1993 Driving under influence of alcohol or drugs; transporting an open container.  05/28/1993 Contempt of court indirect.  07/16/1993 Prison inmate under control of Kansas DOC; theft; attempted burglary unknown structure.  04/24/1994 Sale/etc., opiates, opium or narcotic drugs.  11/25/1994 Driving under influence of alcohol or drugs.    03/05/1995 Failure to appear.    03/05/1995 Possession of depressant/stimulants/hallucinogenics/steroids; Possession of opiates, opium or narcotic drugs; Possession of simulated controlled substances or drug paraphernalia.  03/16/1995 Possession of depressant/stimulants/hallucinogenics/steroids; Possession of opiates, opium or narcotic drugs.  10/26/1995 Failure to appear.  05/27/1996 Driving while license   cancelled/suspended/revoked.         08/17/1996       Possession       of depressant/stimulants/hallucinogenics/steroids;   Possession   of   simulated   controlled substances or drug paraphernalia.  09/16/1996 Probation violation.  01/29/1997 Failure to appear.    07/07/2003 Possession of paraphernalia to grow, distribute marijuana;

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 45 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 44 of 167

281

Possession of depressants/stimulants/hallucinogenics/anabolic steroids.   12/08/2003 Aggravated failure to appear.   12/15/2003 Failure to appear.   12/23/2003 Possession of stolen property value over $500.00.   03/08/2004 Obstructing legal process or official duty.   02/17/2004 Failure to appear.   03/08/2004 Obstructing legal process in misdemeanor case; theft.   10/14/2004 Theft value $25,000.00 to <$100,000.00; probation violation; failure to appear.   11/18/2004 Probation violation.   12/22/2004 Prison inmate under control of Kansas DOC Possession of paraphernalia to grow, distribute marijuana. 11/15/2007 Operating a motor vehicle without valid license; Possession of opiates, opium or narcotic drugs.   04/27/2008 Contempt of court indirect.   05/19/2009 Forgery; attempted theft; criminal use of weapons.   09/16/2009 Aggravated assault; possession of simulated controlled substances or drug paraphernalia.   04/15/2010 Probation violation. 04/29/2010 Probation violation.   12/18/2010 Probation violation.   03/22/2012 Failure to appear.   11/06/2012 Obstructing legal process in misdemeanor case; criminal trespass.

140.   The phone number **(785) 317-0015** was indicated a total of 20 times from 02/13/2013 to 02/18/2013.   This phone number was subpoenaed and listed T-Mobile as the carrier with no subscriber information available meaning the person activating the phone was not require to provide a name or any type of identification for activation.

141.   The phone number **(773) 572-9143** was indicated a total of 15 times from 02/10/2013 to 02/11/2013.   This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

142.   The phone number **(785) 226-1283** was indicated a total number of 33 times from 02/09/2013 to 02/21/2013.   The subscriber information shows this phone registered to Wig.   This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Wig as well.   According to the JCPD, this person is also known as Linnie Sanders B/M DOB ███████.   Linnie Sanders has the following criminal history indicating arrests.   04/28/2001 Possession of marijuana <= 5 pounds >4 ounces.   10/19/2001 Escape from custody.   08/01/2004 Possession of depressant/stimulants/hallucinogenics/steroids.   01/10/2006 Battery; Criminal damage to property.   01/31/2006 Battery; Criminal damage to property.   03/09/2006 Sale etc. of opiates, opium or narcotic drugs.

Appellate Case: 23-3102     Document: 01011088675     Date Filed: 07/10/2023     Page: 281

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 46 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 45 of 167

282

Page: 282   Date Filed: 07/10/2023   Document: 01110884675   Appellate Case: 23-3102

143.    The phone number **(830) 600-1020** was indicated a total of 20 times from 02/09/2013 to 02/22/2013.  This phone number was subpoenaed and as of 02/22/2013, the subscriber information had not been obtained.

144.    The phone number **(785) 830-0001** was indicated a total of 17 times from 02/09/2013 to 02/22/2013.  This phone number was subpoenaed and found to be have AT&T as the carrier but as of 02/22/2013, the subscriber information had not been obtained.

145.    The phone number **(785) 209-4155** was indicated a total of 13 times from 02/21/2013 to 02/22/2013.  This phone number was subpoenaed and as of 02/22/2013, the subscriber information had not been obtained.

146.    The phone number **(202) 802-1577** was indicated a total of 13 times from 02/09/2013 to 02/20/2013.  The subscriber information shows this phone registered to Korena Scheible, W/F ███████████.  No criminal history was located for this subscriber.  It is not known whether this person is using the phone or has obtained the phone for use by someone else.

147.    The phone number **(785) 375-0822** was indicated a total of 12 times from 02/10/2013 to 02/17/2013.  The subscriber information shows this phone registered to Kelly Vargas, W/F DOB ██████████  Kelly Vargas has the following criminal history indicating arrests.  09/05/2004 Driving under the influence of alcohol or drugs.  07/11/2006 Obstructing legal process in misdemeanor case; disorderly conduct.  09/10/2006 Possession of depressant/stimulants/hallucinogenics/steroids.   09/21/2006 Sale of opiates, opium or narcotic drugs.  11/09/2006 Probation violation.  11/15/2006 Warrant arrest.  04/28/2012 Driving under the influence of alcohol or drugs.

148.    The phone number **(830) 615-1200** was indicated a total of 16 times from 02/09/2013 to 02/20/2013.  This phone number was subpoenaed and found to be an AT&T phone.  As of 02/22/2013 the subscriber information had not been obtained.

149.    The phone number **(785) 209-8842** was indicated a total of 12 times from 02/09/2013 to 02/20/2013.  The subscriber information shows this phone registered to John Brown B/M DOB████████.  John Brown has the following criminal history indicating arrests.  09/06/1999 required obedience to lawful order of police officer or fireman.  05/07/2003 Domestic battery.  01/22/2004 Probation violation.  02/20/2004

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 47 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 46 of 167

283

Page: 283      Date Filed: 07/10/2023      Document: 010110884675      Appellate Case: 23-3102

Failure to appear. 05/14/2004 Possession of simulated controlled substance or drug paraphernalia. 12/16/2004 Weapon offense - prohibited person possession firearm. 05/10/2005 Possession of depressant/stimulants/hallucinogenics/steroids. 10/19/2005 Possession of a forearm by a prohibited person. 02/17/2008 Failure to appear X2. 05/06/2009 Failure to appear. 06/09/2010 Failure to appear. 03/08/2011 Failure to appear.

150.    The phone number **(785) 210-9767** was indicated a total of 9 times from 02/12/2013 to 02/13/2013. This phone number was subpoenaed and listed as a TracFone with no subscriber information available.

151.    The phone number **(785) 764-8628** was indicated a total of 10 times from 02/14/2013 to 02/18/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

152.    The phone number **(785) 375-3822** was indicated a total of 8 times from 02/14/2013 to 02/15/2013. The subscriber information shows this phone registered to Michael Asbury, B/M DOB ██████ Michael Asbury has the following criminal history indicating arrests. 02/01/2005 Theft; possession of opiates, opium or narcotic drugs; possession of simulated controlled substances or drug paraphernalia. 08/05/2005 Probation violation.

153.    The phone number **(785) 226-3233** was indicated a total of 8 times from 02/10/2013 to 02/20/2013. This phone number was subpoenaed and listed T-Mobile as the carrier with no subscriber information available meaning the person activating the phone was not require to provide a name or any type of identification for activation.

154.    The phone number **(785) 210-0277** was indicated a total of 7 times from 02/09/2013 to 02/13/2013. The subscriber information shows this phone registered to Elizabeth Heaven, B/F DOB ██████ Elizabeth Heaven has the following criminal history indicating arrests. 08/05/2006 Disorderly conduct; receive stolen property; damage property-criminal mischief; making a false report. 10/04/2003 Theft. 10/07/2003 Possession of stolen property less than $500.00. 02/01/2004 Transporting an open container. 05/19/2007 Probation violation. 02/24/2008 Possession of paraphernalia to grow, distribute marijuana; Possession of opiates, opium or narcotic drugs. 01/01/2010 Aggravated assault; criminal threat; domestic battery.

Appellate Case: 23-3102     Document: 01011088467675     Date Filed: 07/10/2023     Page: 284

155.   The phone number **(785) 762-5471** was indicated a total of 7 times on 02/19/2013. This phone number was subpoenaed with the subscriber listed as Jerome Kirksey. No criminal history has been located for Jerome Kirksey.

156.   The phone number **(785) 307-3123** was indicated a total of 6 times from 02/09/2013 to 02/10/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

157.   The phone number **(316) 806-2831** was indicated a total of 7 times from 02/10/2013 to 02/20/2013. The subscriber information shows this phone registered to Dejuan Gonzales, B/F DOB ███████ Dejuan Gonzales has the following criminal history indicating arrests.    08/29/1998 Sale, offer depressants/hallucinogenics /stimulants/anabolic steroids; Possession of simulated controlled substances or drug paraphernalia.  11/10/2000 Possession of depressant/stimulants/hallucinogenics/steroids. 11/12/2000 Criminal threat; aggravated assault.    02/05/2003 Aggravated burglary; criminal damage to property; theft; burglary.  11/19/2004 Driving under the influence of alcohol or drugs.  12/28/2004 Probation violation.  02/21/2005 Aggravated robbery. 11/02/2007 Driving under the influence of alcohol or drugs.  03/08/2007 Murder in the first degree.

158.   The phone number **(929) 268-6183** was indicated a total of 6 times on 02/17/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

159.   The phone number **(785) 761-6481** was indicated a total of 14 times from 02/15/2013 to 02/21/2013. This phone number was subpoenaed and found to have Centurylink as the carrier but as of 02/22/2013 the subscriber information had not been obtained.

160.   The phone number **(785) 307-1489** was indicated a total of 5 times from 02/11/2013 to 02/14/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

161.   The phone number **(785) 375-3002** was indicated a total of 5 times from 02/12/2013 to 02/14/2013. This phone number was subpoenaed and found to be registered to Cliff Howard B/M DOB ███████. No criminal history was found for Cliff Howard.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 49 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 48 of 167

285

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 285

162.    The phone number **(785) 492-0965** was indicated a total of 5 times from 02/14/2013 to 02/16/2013.  The subscriber information shows this phone registered to R Rusty.  This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as R Rusty as well.  The JCPD is unaware of any persons using the name R Rusty at this time.

163.    The phone number **(830) 631-1020** was indicated a total of 4 times from 02/11/2013 to 02/17/2013.  This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

164.    The phone number **(785) 307-6060** was indicated a total of 6 times from 02/16-2013 to 02/19/2013.  This phone number was subpoenaed and listed Verizon as the carrier with no subscriber information available meaning the person activating the phone was not require to provide a name or any type of identification for activation.

165.    The phone number **(785) 830-0000** was indicated a total of 5 times from 02/09/2013 to 02/22/2013.  This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

166.    The phone number **(785) 830-0002** was indicated a total of 4 times from 02/09/2013 to 02/12/2013.  This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

167.    The phone number **(785) 830-0200** was indicated a total of 4 times from 02/09/2013 to 02/16/2013 This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

168.    The phone number **(785) 579-5462** was indicated a total of 2 times on 02/19/2013.  The subscriber information shows this phone registered to Jerry Ruble but the JCPD confirmed the user of the telephone to be Claudette Ruble, B/F DOB 07/12/1949.  Claudette Ruble has no current criminal history indicating arrests.

169.    The phone number **(785) 438-0895** was indicated a total of 1 time on 02/09/2013.  The subscriber information shows this phone registered to James Smith, W/M DOB ███████.  James Smith has the following criminal history indicating arrests.  06/02/1995 Possession of depressant/stimulants/hallucinogenics/steroids; Possession of simulated controlled substances or drug paraphernalia; criminal use of

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 50 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 49 of 167

286

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 286

weapons; fleeing or attempting to elude a LEO; driving under the influence of alcohol or drugs.

170.   The phone number **(785) 307-0127** was indicated a total of 1 time on 02/10/2013. This phone number was subpoenaed and found to be a TracFone with no listed person as the subscriber.

171.   The phone number **(785) 579-5546** was indicated a total of 1 times on 02/19/2013. The subscriber information shows this phone registered to Oretha Robinson B/F DOB ████████Oretha Robinson has the following criminal history indicating arrest.  03/07/1978 Possession of heroin.  09/12/1992 Aggravated battery.  09/23/2004 Driving under the influence of alcohol or drugs; driving while license cancelled /suspended/revoked.

172.   The phone number **(785) 226-2611** was indicated a total of 4 times on 02/10/2013. The subscriber information shows this phone registered to Zachary Patmon, B/M DOB ████████ Zachary Patmon has the following criminal history indicating arrests.  04/13/1969 Attempted robbery.  06/08/1969 Aggravated assault.  02/17/1971 AWOL UCMJ.  06/17/1977 Pimping.  02/08/1978 Aid and abet sale of cocaine. 04/11/1982 Carrying a concealed weapon.  05/08/1984 Criminal use of weapons. 04/08/1990 2 counts sale of cocaine; 2 counts unlawful use of a communication facility; no drug tax stamp.  09/20/1990 Unlawful use of a communication facility.  09/12/1991 Obstructing legal process or official duty.  08/17/1991 Disorderly conduct.  11/12/1991 Failure to appear.  11/30/1991 Battery against a law enforcement officer; obstructing legal process or official duty; disorderly conduct.  01/09/1992 Failure to appear. 01/07/1993 Failure to appear.  01/08/1993 Failure to appear.  01/30/1993 Battery. 04/24/1993 Fail to comply with bond restrictions; disorderly conduct.  04/29/1993 Battery against a law enforcement officer; obstructing legal process or official duty. 10/02/1994 Falsely reporting a crime.  10/02/1994 Failure to appear.  05/17/1996 Possession of cocaine.  07/13/1996 Possession of cocaine; possession of cocaine with the intent to sell; possession of marijuana.  09/12/2000 Parole violation.  12/19/2000 failure to appear.  04/12/2001 Failure to appear.  01/07/2002 Probation violation.  12/31/2002 Failure to appear.  01/30/2003 Failure to appear.  02/05/2003 Failure to appear. 01/07/2005 Probation violation.  01/30/2005 Failure to appear on misdemeanor charge;

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 51 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 50 of 167

287

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 287

possession of opiates, opium or narcotic drugs; possession of controlled substances or drug paraphernalia.   05/24/2012 Driving while license cancelled/suspended/revoked; failure to appear.

173.    The phone number **(785) 762-2370** was indicated a total of 3 times from 02/15/2013 to 02/16/2013.   The phone number **(785) 375-1838** was indicated 4 times from 02/10/2013 to 02/12/2013.   The subscriber information shows both these phones registered to Charles B/M DOB ▮▮▮▮▮ and Olivia Humphreys (AKA Big O) B/F DOB ▮▮▮▮▮   Charles Humphreys has the following criminal history indicating arrest. 02/18/1972 Criminal use of weapons, carrying firearm concealed on one's person. Olivia Humphreys has the following criminal history indicating arrest.   11/03/1985 Driving under the influence of alcohol or drugs.   06/29/1990 liquor consumption in public places prohibited.

174.    The phone number **(830) 600-2200** was indicated a total of 4 times from 02/10/2013 to 02/16/2013.   This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

175.    The phone number **(785) 830-0151** was indicated a total of 6 times from 02/10/2013 to 02/21/2013.   This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

176.    The phone number **(785) 375-7233** was indicated a total of 4 times from 02/13/2013 to 02/15/2013.   The subscriber information shows this phone registered to "James" with no last name given.   The phone number is believed to be associated with Catrina Watson, B/F DOB 07/17/1969.   No criminal record could be found for Catrina Watson.

177.    The phone number **(561) 829-2170** was indicated a total of 4 times on 02/15/2013.   This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

178.    The phone number **(316) 806-9195** was indicated a total of 4 times on 02/15/2013.   The subscriber information shows this phone registered Kilie Bowie B/F DOB ▮▮▮▮▮ Kilie Bowie has the following criminal history indicating arrests.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 52 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 51 of 167

288

Page: 288        Date Filed: 07/10/2023        Document: 01110884675        Appellate Case: 23-3102

05/04/2004 Giving worthless check.   06/06/2005 Aggravated assault with a deadly weapon; criminal damage to property.   06/06/2005 Aggravated assault; criminal damage to property; battery.   04/20/2006 Probation violation.

179.   The phone number **(830) 606-2420** was indicated a total of 3 times on 02-10-2013.   This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

180.   The phone number **(785) 226-2907** was indicated a total of 3 times from 02/10/2013 to 02/16/2013.   This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

181.   The phone number **(830) 600-0020** was indicated a total of 3 times from 02/11/2013 to 02/15/2013.   This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

182.   The phone number **(316) 617-9894** was indicated a total of 3 times from 02/11/2013 to 02/16/2013.   The subscriber information shows this phone registered to Wayne.   According to the JCPD this phone is used by Kenneth Wayne Bellamy Jr. B/M DOB ▮▮▮▮▮▮   This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Wayne as well.   Kenneth Wayne Bellamy Jr. has the following criminal history indicating arrest.   06/21/1989 Burglary; theft.   04/03/2012 Conspiracy to robbery; driving under influence of alcohol or drugs.   05/03/2012 Failure to appear.

183.   The phone number **(830) 620-0020** was indicated a total of 3 times from 02/12/2013 to 02/17/2013.   This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

184.   The phone number **(785) 210-9605** was indicated a total of 3 times from 02/12/2013 to 02/18/2013.   This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

185.   The phone number **(785) 762-9679** was indicated a total of 5 times from 02/15/2013 to 02/20/2013.   This phone number was subpoenaed with no subscriber

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 53 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 52 of 167

289

Appellate Case: 23-3102   Document: 010110884675   Date Filed: 07/10/2023   Page: 289

information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

186. The phone number **(419) 341-8130** was indicated a total of 2 times on 02/09/2013. This phone number was subpoenaed with the subscriber given as "Emily" with no last name given or required. The identity of Emily cannot be obtained at this time with this limited information.

187. The phone number **(830) 600-0220** was indicated a total of 2 times from 02/09/2013 to 02/12/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

188. The phone number **(785) 210-9034** was indicated a total of 2 times on 02/10/2013. This phone number was subpoenaed and listed as a "phone in the box" with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

189. The phone number **(785) 375-0314** was indicated a total of 2 times from 02/10/2013 to 02/12/2013. The subscriber information shows this phone registered to Kimberly Reese B/F ███████████ No criminal history was found for Kimberly Reese.

190. The phone number **(785) 210-5030** was indicated a total of 2 times on 02/11/2013. This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

191. The phone number **(646) 480-6908** was indicated a total of 2 times on 02/11/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

192. The phone number **(316) 613-3573** was indicated a total of 2 times on 02/11/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

193. The phone number **(785) 830-0062** was indicated a total of 2 times from 02/11/2013 to 02/12/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 54 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 53 of 167

290

Appellate Case: 23-3102     Document: 01011084675     Date Filed: 07/10/2023     Page: 290

194.    The phone number **(785) 762-2106** was indicated a total of 2 times from 02/11/2013 to 02/14/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

195.    The phone number **(785) 317-1704** was indicated a total of 3 times from 02/11/2013 to 02/21/2013. This phone number was subpoenaed with the subscriber listed as Darryl McLaurin B/M ▇▇▇▇▇▇▇. Darryl McLaurin has the following criminal history indicating arrests.    06/19/1999 Domestic violence; public intoxication. 09/28/2002 Contempt of court.    03/14/2009 Domestic battery; criminal restraint. 04/26/2009 Disorderly conduct brawling and fighting.  11/14/2009 Battery.  03/13/2010 Domestic battery.  03/19/2011 Battery.   04/30/2011 Probation violation.  05/25/2011 Domestic battery; intimidation of a witness or victim; criminal damage to property.

196.    The phone number **(785) 307-4768** was indicated a total of 2 times from 02/12/2013 to 02/18/2013. This phone number was subpoenaed with the subscriber listed as Randy Anderson B/M ▇▇▇▇▇▇ No criminal history was found for Randy Anderson.

197.    The phone number **(907) 563-6966** was indicated a total of 2 times on 02/13/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

198.    The phone number **(785) 307-0425** was indicated a total of 2 times from 02/13/2013 to 02/17/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

199.    The phone number **(785) 210-4278** was indicated a total of 2 times on 02/14/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

200.    The phone number **(785) 375-7607** was indicated a total of 2 times on 02/21/2013. This phone number was subpoenaed with the subscriber indicated as Audrey Nelson or Audrey Ali, both being the same person.  Audrey Nelson B/F ▇▇▇▇▇▇ has the following criminal history indicating arrests; 10/01/1995 Failure to appear. 12/09/1995 Forgery.  06/30/1996 Worthless checks.  01/09/1997 Failure to appear. 02/22/1997 Possession of cocaine; possession of drug paraphernalia.  03/09/1997 Failure to appear.  11/29/1997 Probation violation.  08/01/1999 Failure to appear.  10/25/2000

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 55 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 54 of 167

291

Appellate Case: 23-3102     Document: 01011088467S     Date Filed: 07/10/2023     Page: 291

Failure to appear.  02/15/2001 Failure to appear.  04/16/2002 Delivery/manufacture simulated controlled substance; possession of paraphernalia to grow, distribute; no drug tax stamp; sale etc. of opiates, opium or narcotic drugs; possession of depressant/stimulants/hallucinogenics/steroids.  04/17/2002 Possession of paraphernalia to grow, distribute marijuana; no drug tax stamp; sale etc. of opiates, opium or narcotic drugs.  06/13/2002 Failure to appear.  03/06/2003 Failure to appear.  06/03/2003 Conspiracy to possession of opiates, opium or narcotic drugs; conspiracy to criminal possession of a firearm; possession of depressants/stimulants/hallucinogenics/steroids; conspiracy to possess simulated controlled substances/drug paraphernalia.  12/30/2003 Contempt of court indirect X2.

201.    The phone number **(785) 341-9118** was indicated a total of 2 times on 02/16/2013.  This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

202.    The phone number **(785) 210-9873** was indicated a total of 8 times from 02/13/2013 to 02/20/2013.  The subscriber information shows this phone registered to Lamont Hill (believed to be Lemont Hill), B/M ███████████ Lemont Hill has the following criminal history indicating arrests.  05/30/1987 2 counts sale of cocaine; 1 count delivery of cocaine.  06/03/1987 Sale of cocaine.  07/21/1987 Sale of cocaine; conspiracy to sell cocaine.  04/01/1994 Parole violation.  09/05/1994 Battery; criminal use of a weapon; aggravated weapons violation; possession of stolen property.  11/15/1994 Criminal threat.  03/04/2001 Criminal threat; domestic battery.  11/14/2004 Battery.  06/29/2005 Failure to appear on a misdemeanor.  09/22/2005 Failure to appear on a misdemeanor.  12/13/2005 Forgery.  09/25/2006 Probation violation.  01/08/2008 Probation violation.  02/06/2009 Probation violation.  Lemont Hill was listed as a suspect in a 2010 JCPD case (10-09428) involving the sale/distribution/cultivation of opiates. opium, narcotic drugs or designated stimulants.

203.    The phone number **(785) 210-4812** was indicated a total of 1 time on 02/18/2013.  The subscriber information shows no name associated as the subscriber. According to the JCPD this phone is used by Barbara Jones Smith B/F ██████████ Barbara Jones Smith has the following criminal history indicating arrests.  04/10/1998 Possession cocaine; possession drug paraphernalia; criminal use of a weapon; aggravated

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 56 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 55 of 167

292

Appellate Case: 23-3102   Document: 010110884675   Date Filed: 07/10/2023   Page: 292

assault. 03/28/1999 Worthless check; failure to appear. 01/23/2001 2 counts of probation violation. 09/08/2004 Aggravated battery. 11/19/2004 Driving under the influence of alcohol or drugs. 06/29/2005 Driving while license cancelled/suspended/revoked; attempt to flee or attempt to elude LEO; obstruction legal process or official duty, resist arrest. 10/22/2006 Battery against a law enforcement officer; disorderly conduct X2. 06/01/2007 Driving under the influence of alcohol or drugs. 08/13/2007 Following another vehicle too closely; driving under the influence of alcohol or drugs. 01/22/2008 driving under the influence of alcohol or drugs; driving while license cancelled/suspended/revoked. 08/04/2009 Failure to appear. 11/01/2010 Sale etc. of opiates, opium or narcotic drugs X2. 05/12/2011 Probation violation.

204. The phone number **(785) 307-8447** was indicated a total of 2 times from 02/10/2013 to 02/19/2013. The subscriber information shows this phone registered to Dorian Bivins (AKA Dwight Bivins) B/M ▮▮▮▮▮▮▮▮▮ Dwight Bivins has the following criminal history indicating arrests. 01/04/2001 Probation violation; obstructing legal process in felony case. 04/01/2002 Failure to appear. 08/28/2003 Failure to appear. 04/13/2004 Possession of opiates, opium or narcotic drugs; possession with the intent to sell, sale etc. within 1000' of school property; knowingly intentionally receiving/acquiring proceeds from uniform controlled substances; no drug tax stamp for marijuana or controlled substance. 04/07/2005 Driving while license cancelled/suspended/revoked. 12/15/2005 Probation violation. 03/14/2006 Probation violation. 08/25/2006 Probation violation. 10/02/2006 Sale etc. of opiates, opium or narcotic drugs.

205. The phone number **(785) 307-0774** was indicated a total of 2 times on 02/17/2013. This phone number was subpoenaed and listed as a "phone in the box" which is a pay as you go type phone with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

206. The phone number **(785) 209-0139** was indicated a total of 2 times on 02/17/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 57 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 56 of 167

293

Page: 293        Date Filed: 07/10/2023        Document: 01110884675        Appellate Case: 23-3102

207.    The phone number **(319) 242-7343** was indicated a total of 1 time on 02/09/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

208.    The phone number **(785) 830-0476** was indicated a total of 1 time on 02/09/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

209.    The phone number **(316) 573-5616** was indicated a total of 1 time on 02/09/2013. This phone number was subpoenaed with the subscriber listed as Sherry Mills W/F ███████████ No criminal history was found for Sherry Mills.

210.    The phone number **(785) 225-1617** was indicated a total of 1 time on 02/10/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

211.    The phone number **(830) 636-9220** was indicated a total of 1 time on 02/10/2013. This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

212.    The phone number **(785) 238-6888** was indicated a total of 1 time on 02/10/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

213.    The phone number **(785) 830-0892** was indicated a total of 1 time on 02/10/2013. This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

214.    The phone number **(785) 307-0127** was indicated a total of 1 time on 02/10/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

215.    The phone number **(785) 761-7610** was indicated a total of 1 time on 02/10/2013. This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 58 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 57 of 167

294

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 294

216.   The phone number **(785) 830-0365** was indicated a total of 1 time on 02/10/2013.   This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

217.   The phone number **(785) 830-0209** was indicated a total of 1 time on 02/11/2013.   This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

218.   The phone number **(785) 317-2070** was indicated a total of 2 times from 02/11/2013 to 02/19/2013.   This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

219.   The phone number **(708) 965-4220** was indicated a total of 1 time on 02/11/2013.   This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

220.   The phone number **(830) 621-3420** was indicated a total of 1 time on 02/11/2013.   This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

221.   The phone number **(788) 226-1783** was indicated a total of 1 time on 02/12/2013.   This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

222.   The phone number **(785) 717-9456** was indicated a total of 1 time on 02/12/2013.   This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

223.   The phone number **(855) 429-7567** was indicated a total of 1 time on 02/12/2013.   This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

224.   The phone number **(830) 645-7620** was indicated a total of 1 time on 02/12/2013.   This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 59 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 58 of 167

295

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 295

225.   The phone number **(785) 830-0542** was indicated a total of 1 time on 02/12/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

226.   The phone number **(830) 616-2220** was indicated a total of 1 time on 02/12/2013. This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

227.   The phone number **(830) 633-0920** was indicated a total of 1 time on 02/13/2013. This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

228.   The phone number **(830) 606-9320** was indicated a total of 1 time on 02/13/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

229.   The phone number **(808) 398-5780** was indicated a total of 1 time on 02/14/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

230.   The phone number **(785) 830-0946** was indicated a total of 1 time on 02/14/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

231.   The phone number **(830) 664-3120** was indicated a total of 1 time on 02/14/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

232.   The phone number **(785) 913-2404** was indicated a total of 1 time on 02/14/2013. This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

233.   The phone number **(830) 651-0920** was indicated a total of 1 time on 02/14/2013. This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 60 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 59 of 167

296

Appellate Case: 23-3102   Document: 01011084675   Date Filed: 07/10/2023   Page: 296

234. The phone number **(830) 620-4020** was indicated a total of 1 time on 02/15/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

235. The phone number **(785) 830-0052** was indicated a total of 1 time on 02/15/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

236. The phone number **(785) 307-3214** was indicated a total of 1 time on 02/15/2013. This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

237. The phone number **(785) 830-0400** was indicated a total of 2 times from 02/15/2013 to 02/22/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

238. The phone number **(785) 512-0333** was indicated a total of 8 time from 02/15/2013 to 02/20/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

239. The phone number **(785) 307-5573** was indicated a total of 1 time on 02/15/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

240. The phone number **(785) 375-5065** was indicated a total of 2 times from 02/15/2013 to 02/19/2013. This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

241. The phone number **(785) 307-2923** was indicated a total of 1 time on 02/16/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

242. The phone number **(785) 233-1696** was indicated a total of 1 time on 02/16/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 61 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 60 of 167

297

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 297

243. The phone number **(785) 830-0983** was indicated a total of 1 time on 02/16/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

244. The phone number **(785) 830-0795** was indicated a total of 1 time on 02/16/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

245. The phone number **(785) 830-0766** was indicated a total of 1 time on 02/16/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

246. The phone number **(830) 618-9720** was indicated a total of 1 time on 02/17/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

247. The phone number **(830) 626-1120** was indicated a total of 1 time on 02/17/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

248. The phone number **(785) 830-0311** was indicated a total of 1 time on 02/17/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

249. The phone number **(785) 375-9653** was indicated a total of 1 time on 02/18/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

250. The phone number **(785) 207-2904** was indicated a total of 1 time on 02/18/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

251. The phone number **(830) 601-0020** was indicated a total of 1 time on 02/18/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

252. The phone number **(785) 304-6385** was indicated a total of 1 time on 02/19/2013. This phone number was subpoenaed with the subscriber listed as Jason Smith. No information could be located on Jason Smith. It is believed Kathy Carson, B/F ████████████ (the mother of Jalisa Carson) may be using this telephone. Kathy

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 62 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 61 of 167

298

Page: 298          Date Filed: 07/10/2023          Document: 010110884675          Appellate Case: 23-3102

Carson has the following criminal history indicating arrests.  04/16/1996 Possession of cocaine with the intent to sell; possession of drug paraphernalia; obstruction of official duty; possession of marijuana.

253.    The phone number **(785) 307-2456** was indicated a total of 1 time on 02/20/2013.  The subscriber information shows this phone registered to Akwete Burd, B/F DOB ███████ This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Who Johnny.  Akwete Burd has the following criminal history indicating arrest.  07/20/1999 Transfer firearm without background check to prohibited person. 08/01/1999 Theft-take/use/transfer movable property without consent. 08/28/1999 Drugs - 1st degree - sale - 50 kilos or more marijuana/25 kg in zone. 03/24/2011 Driving while license cancelled/suspended/revoked. 05/11/011 Driving while license cancelled/suspended/revoked.        08/07/2011    Driving    while    license cancelled/suspended/revoked.        08/23/2011        Driving        while        license cancelled/suspended/revoked.        09/24/2011        Driving        while        license cancelled/suspended/revoked.   11/14/2011 Failure to appear.   02/03/2012 Failure to appear.   02/08/2012 Probation violation.   On 04/18/2012, Akwete Burd facilitated a purchase of crack cocaine to a Riley County Police Department CI but was not charged in the case for unknown reasons (RCPD case #12-017984).  06/13/2012 Failure to appear X2; probation violation.  10/01/2012 Failure to appear X3.

254.    The phone number **(785) 830-0774** was indicated a total of 1 time on 02/19/2013.  This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

255.    The phone number **(785) 494-2762** was indicated 2 times from 02/15/2013 to 02/20/2013.  The subscriber information shows this phone registered to Michael Lillibridge (AKA Lloyd Lillibridge) W/M ████████████.  No criminal history could be located for this subscriber.

256.    The phone number **(830) 648-4320** was indicated a total of 1 time on 02/20/2013.  This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 299

299

257.  The phone number **(830) 650-8920** was indicated a total of 1 time on 02/20/2013.  This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

258.  The phone number **(830) 608-8220** was indicated a total of 1 time on 02/20/2013.  This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

259.  The phone number **(785) 492-7903** was indicated a total of 1 time on 02/21/2013.  This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

260.  The phone number **(830) 695-7220** was indicated a total of 1 time on 02/21/2013.  This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

261.  The phone number **(830) 630-8620** was indicated a total of 1 time on 02/21/2013.  This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

262.  The phone number **(830) 633-1520** was indicated a total of 1 time on 02/20/2013.  This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

263.  The phone number **(785) 830-0509** was indicated a total of 1 time on 02/19/2013.  This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

264.  The phone number **(785) 307-5415** was indicated a total of 1 time on 02/20/2013.  This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

265.  The phone number **(830) 640-1020** was indicated a total of 1 time on 02/20/2013.  This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 64 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 63 of 167

300

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 300

266.   The phone number **(830) 603-8120** was indicated a total of 1 time on 02/20/2013.   This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

267.   The phone number **(785) 226-4919** was indicated a total of 1 time on 02/20/2013.   This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

268.   The phone number **(785) 830-0400** was indicated a total of 1 time on 02/15/2013.   This phone number was subpoenaed with no subscriber information available meaning the person activating the phone was not required to provide a name or any type of identification for activation.

## FACTS AND CIRCUMSTANCES

269.   Based upon the Affiant's investigation and those of other law enforcement agencies, the following facts and circumstances are set forth.   The Affiant believes the investigation has revealed that **Anthony Thompson** and **Albert Banks** are involved in the distribution of illegal drugs and have been for quite some time. Given the amounts sold to CI #1 and the amounts of controlled substances available to sell (by their own admission)**,** the Affiant believes **Anthony Thompson** and **Albert Banks** have been and will continue to be involved in an ongoing conspiracy to distribute illegal drugs. The conspiracy includes numerous persons named above and individuals both known and unknown. **Anthony Thompson** and **Albert Banks** continue to realize profits from the sale of controlled substances. Based on all the information the investigation has been able to gather thus far, it is the consensus of the law enforcement investigators that **Anthony Thompson** and **Albert Banks,** in association with others, are involved in extensive illegal drug activity. This is evident by the sales of controlled substances to CI #1, observations made during those sales, and statements made by **Anthony Thompson** and

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 65 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 64 of 167

301

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 301

**Albert Banks** to CI #1. **Anthony Thompson** told CI #1 on 10/03/2012 that he is purchasing approximately nine (9) ounces of cocaine per week for distribution. The sources of **Anthony Thompson** and **Albert Banks'** illegal drugs appear to come from Kansas City, Topeka and/or Wichita, KS. The actual source of the narcotics is unidentified thus far in the investigation. Earlier in the investigation, Investigators believed the illegal narcotics to come from the Kansas City area from a source known as Adrian Muse. It appears as though Adrian Muse may not be the source of supply lately due to the information obtained from SOI #1 who has indicated he/she has heard conversations stating this source is possibly not used at this time. Johnny Lee Ivory was believed to be a source of supply in the Topeka, KS area. Johnny Lee Ivory has not been located during this investigation and it is unclear if he is still a source of supply. **Albert Banks** has been making tips to Wichita, KS recently as well, but investigators do not know when he is going or with whom he is going. Therefore, the source of supply, if in fact it is in Wichita, KS, is still unknown. Thus this conspiracy extends to multiple regions of the State of Kansas and multiple jurisdictions with yet unidentified persons. **Anthony Thompson** and **Albert Banks** obviously have currency at their disposal without having any legal, gainful employment. Throughout this investigation, the quantity of illegal narcotics purchased by CI #1 has increased in an effort to purchase more than **Anthony Thompson** and/or **Albert Banks** could supply, thus forcing them to either introduce CI #1 to their supplier or take CI #1 with them to their supplier so CI #1 could purchase quantities which **Anthony Thompson** or **Albert Banks** could not produce. This investigative technique has failed to date. CI #1 has purchased as small of quantity of less than one (1) gram to as much as three (3) ounces, all the while being distributed by **Anthony Thompson** and/or **Albert Banks** working in conjunction with each other.

270.   Although **Albert Banks** has not always had this same telephone number (785-375-6704) throughout this investigation, he has had it since January 2013 and currently uses this number to conduct illegal narcotic distribution at this time as indicative of the sells to CI #1. Those believed to be involved in the ongoing conspiracy are continuing to use telephone number **(785) 375-6704**, with no subscriber name attached to it, but used by **Albert Banks** to facilitate their illegal activities.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 66 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 65 of 167

302

Appellate Case: 23-3102   Document: 01011084675   Date Filed: 07/10/2023   Page: 302

## GOALS OF THE INVESTIGATION

271.   It is the goal of the Law Enforcement personnel involved in this investigation to identify all persons involved in this operation whether they are in Kansas or any other state.   The identity of persons that are transporting, manufacturing and/or storing illegal drugs in Kansas is being and will continue to be pursued.   The identities and prosecution of the conspirators involved in the transportation, manufacturing, storing and distribution of illegal drugs to and from the state of Kansas is hoped to be achieved. Another goal of this investigation is to dismantle this organization that is under the control of **Anthony Thompson** and **Albert Banks**.   It is believed this organization is responsible for the distribution of large amounts of illegal drugs in Geary and Riley County, Kansas.   At this time, the clear scope of the organization, all the conspirators, their involvement and the amount of illegal drugs being distributed have not been identified.   Without the ability to monitor the phone belonging to **Albert Banks**, it is believed the full scope of the operation will not be disclosed nor will it be dismantled. While a prosecutable case has been made on **Albert Banks;** CI #1 is not able to breech the conspiracy to learn the role of all the players. CI #1 is only able to make purchases from **Anthony Thompson, Albert Banks** and possibly a select few within the organization.   These purchases will not reveal the sources of supply, fruits, instrumentalities or assets of the distribution of illegal drugs, or the roles of other co-conspirators.   Without a wire interception the persons involved in this targeted distribution operation will be allowed to continue.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 67 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 66 of 167

303

Page: 303      Date Filed: 07/10/2023      Document: 010110884675      Appellate Case: 23-3102

## NEED FOR WIRE INTERCEPTIONS

272.    Investigation to date has failed to disclose and prove the full scope of the targeted organization and the locations and sources of any and all supply sources currently being used by the subject(s) of this investigation.  Direct evidence linking the source of the supply to the flow of illegal drugs in the present conspiracy would be difficult, if not impossible, to obtain using standard investigative techniques.  This is evidenced by the fact CI #1 has not and will not be taken into the organization's full confidence and advised of the source or sources of the illegal drugs.

273.    Affiant believes the requested wire interception will produce the requisite information identifying and establishing a direct link to the sources and supply of the illegal drugs.  Based upon the combined experience of Affiant and all law enforcement personnel involved in this investigation based upon all of the facts set forth herein, it is the Affiant's belief that the interception of wire communications is the only available technique which has a reasonable likelihood of securing evidence demonstrating the scope of the illegal drug activity.

## OTHER INVESTIGATIVE PROCEDURES

274.    There are numerous investigative procedures, which are usually employed in an investigation of this type which have been tried and failed, or which reasonably appear unlikely to succeed if attempted. Other procedures which might reveal the scope of this conspiracy and those involved are simply too dangerous to employ, or would compromise the integrity of the investigation. Some of these procedures have been described above; others are stated below.

**EXHIBIT 3**

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 68 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 67 of 167

304

Appellate Case: 23-3102   Document: 01011084675   Date Filed: 07/10/2023   Page: 304

## A.    PHYSICAL SURVEILLANCE

275.    Physical surveillance has been utilized in this investigation and has proven to be of limited value. Although it has identified some activities and associates of the targets, physical surveillance – if not used in conjunction with other techniques, including electronic surveillance – is of limited value.   Physical surveillance, even if highly successful, does not always assist in gathering evidence of the criminal activity under investigation.   It is an investigative technique that is used to confirm meetings between alleged co-conspirators, but, in many cases, only leads investigators to speculate as to the purposes of these meetings, because the surveillance itself often proves association between the conspirators at a given time and place.   It is also a technique used to corroborate information obtained from cooperating individuals. Physical surveillance of alleged conspirators will not, however, conclusively establish the elements of the subjects' violations, and this technique has not, and most likely will not, establish the identities of all conspirators.   In addition, continued physical surveillance is not expected to enlarge information now available to substantiate the elements of criminal violations for which the state's application seeks to intercept wire communications.   Prolonged or regular surveillance of the movements of the suspects is instead likely to be noticed, causing the suspects to become even more cautious and secretive in their illegal activities, causing them to flee to avoid apprehension and prosecution causing a real threat to the safety of the CI and/or possibly compromising the investigation.   It must also be noted that the conspirators have utilized techniques to avoid being surveilled by law enforcement such as driving erratic or slower than all other traffic, making sudden stops or unexpected sudden turns while engaged in physical surveillance by law enforcement. It should also be noted that the conspirators have employed counter surveillance techniques such as having lookouts place themselves around buildings, vehicles and/or residences to watch for persons that continue to drive past or near the locations where suspected drug trafficking offenses are, or will be committed.    Finally, it is not possible to determine the full nature and scope of the aforementioned offenses by the use of simple physical surveillance, given the number of conspirators, the complexity of the criminal violations, the multi-jurisdictional locations and travels of some of the

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 69 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 68 of 167

305

Appellate Case: 23-3102     Document: 01011084675     Date Filed: 07/10/2023     Page: 305

conspirators, and the varying rolls played by the targets of this investigation. Officers of the Junction City Police Department and Kansas Bureau of Investigation agents have attempted to conduct surveillance in the vicinity of some of the residences mentioned in this investigation. Officers have seen individuals that were placed outside residences appearing to look for persons that were watching the residences.

## B.   COOPERATING INDIVIDUALS

276.   No cooperating individuals other than the ones aforementioned have been identified due to the mistrust the subjects have of individuals they are acquainted with or have conducted business with prior. Additional cooperating individuals have not been developed because of their apparent fear of the repercussions they would face if their identity were ever disclosed.

## C.   UNDERCOVER AGENTS

277.   To date, no undercover Agents have been able to make purchases from any of those involved in this organization. It is the belief of law enforcement, any undercover person/s who may have the chance encounter of purchasing illegal narcotics from this group would have to do so at a very low level within the organization and would most likely never be given the opportunity to advance within the ranks of the organization to a place where the true conspiracy/conspirators would be identified. It is also the belief of law enforcement that the possibility of gaining the knowledge of the source of supply for this organization would not occur as the identity of this person/s has been kept secret throughout this investigation. The undercover agent would never be fully trusted and any further relevant information related to the scope of the illegal drug activity would never be known.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 70 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 69 of 167

306

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 306

## D.  PEN REGISTERS

278.    On 02/09/2013 a Pen Register was initiated on the target phone number **(785) 375-6704** pursuant to a Kansas Court Order.  From 02/09/2013 to 02/22/2013 a total of 5,882 calls/text messages were made into and out of **(785) 375-6704**. The Pen register information demonstrates to the Affiant **Albert Banks** is using telephone number **(785) 375-6704** to distribute controlled substances as demonstrated by, but not limited to, the number of calls/text messages registered per day, the length of the phone conversations and/or the parties calling or being called on phone number **(785) 375-6704**. The Pen Register has demonstrated to the Affiant that the phone number **(785) 375-6704** has been, is being and will continue to be used to communicate criminal activity concerning the distribution of controlled substances by **Albert Banks** and his associates.

## E.    USE OF JUDICIAL AND ADMINISTRATIVE SUBPOENAS

279.    Based upon Affiant's experience and conversations with other Agents and Administration of the Kansas Bureau of Investigation as well as Officers and Administration of the Junction City Police Department, who have considerable experience in investigating these individuals, similar operations and violations of the law such as these, it is the common consensus that the service of subpoenas to persons believed to be involved in this conspiracy and their associates would not be successful in achieving the stated goals of this investigation.  If any principals of this conspiracy, their co-conspirators, or any other participants were approached to cooperate each and every one would refuse to assist. This is especially true in this case, given the close ties among the inner circle of conspirators and many of the principals. Many of the principals in this investigation have been subjects of previous investigations and are aware of the techniques used by law enforcement to garner information. Moreover it would be unwise to afford any kind of immunity to such persons given that such immunity would not guarantee truthful admissions concerning the scope of the illegal drug activity being investigated. Additionally, service of subpoenas would alert the conspirators to the existence of this investigation and prompt the targets to take measures to thwart it.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 71 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 70 of 167

307

Appellate Case: 23-3102   Document: 010110884675   Date Filed: 07/10/2023   Page: 307

Finally, participants in such a criminal enterprise are often reluctant to implicate others out of fear for their own safety or as a result of their loyalty to their fellow conspirators.

## F.   SEARCH WARRANTS

280.   The execution of search warrants in this investigation has been considered. The execution of search warrants involving principals of this investigation has been used in the past resulting in retrieval of a limited amount of controlled substances and records. Use of warrants alone is unlikely to reveal the total scope of the criminal operation, the identities of all conspirators, or the precise roles each plays within the conspiracy. It is extremely unlikely, given the history of this criminal organization, that the majority of the contraband controlled by the conspirators could be located at any given time unless electronic surveillance was employed. Affiant believes the execution of search warrants at this time would compromise the investigation and reveal the identities of those cooperating individuals.

281.   For the reasons set forth in the preceding paragraphs, normal methods of investigation have been attempted and failed, or reasonably appear unlikely to succeed, and/or are too dangerous to employ. At this time the only reasonable method of developing the necessary evidence of the above-listed violations is to intercept the wire communications of the subjects of this investigation. Such interceptions will reveal the details of this conspiracy involving the importation and distribution of controlled substances, possession with the intent to distribute controlled substances, and use of communication facilities to further these offenses, in violation of Kansas Law.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 72 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 71 of 167

308

Appellate Case: 23-3102   Document: 01011084675   Date Filed: 07/10/2023   Page: 308

## MINIMIZATION

282.   All monitoring of wire communications will be conducted in such a way as to minimize the interception of communication.   Interception will be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named interceptees or any of their confederates, when identified, are participants in the conversation, unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. Conversations, which are of a non-criminal or non-evidentiary nature, once minimized, will be spot-monitored in order to determine if the topic of the conversation has switched to a criminal or evidentiary nature.

283.   The interception of communications will be discontinued if the voice of one or more of the named interceptees is not identified as participating in the communication within a reasonable period of time, or in the case of conversations of others unknown which are of a non-criminal or non-evidentiary nature; spot-monitoring will be used to determine if conversations have switched to an evidentiary or criminal nature.   Monitoring will be conducted subject to the requirements to minimize interception of all non-pertinent communications.   All monitoring will be recorded.

## PERIOD OF INTERCEPTION

284.   Because of the continuing nature of the offenses as discussed above, it is further requested that authorization to intercept not automatically terminate when the types of communications described above are first obtained, but be permitted to continue until all wire communications are intercepted which fully reveal the manner in which the subjects of this investigation conduct and participate in the above-described offenses, and which reveal the full nature, scope and extent of the above-described offenses; the identities and roles of accomplices, aiders and abettors, co-conspirators, other participants in the offenses; the dispositions and locations of the proceeds from the offenses; and the types, existence and locations of all records and other physical evidence of the offenses.

Case 5:15-cv-03093-HLT   Document 182-2   Filed 09/18/20   Page 73 of 73
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 72 of 167

309

Appellate Case: 23-3102   Document: 010110884675   Date Filed: 07/10/2023   Page: 309

Even if the objectives set forth in the preceding sentence have not been fully achieved, it is hereby requested that the court's order provide that authorization to intercept shall automatically terminate after thirty days, the thirty day period running from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception under the court's order or ten days after the order is entered.

GLEN F. VIRDEN
Senior Special Agent
Kansas Bureau of Investigation

Sworn to before me and subscribed in my presence this ___5___ day of March, 2013.

David R. Platt
Judge of the Geary County District Court
State of Kansas

# EXHIBIT C

*Banks*

Page: 311        Date Filed: 07/10/2023        Document: 010110884675        Appellate Case: 23-3102

IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION )<br>OF THE STATE OF KANSAS )<br>FOR AN ORDER AUTHORIZING THE )<br>INTERCEPTION OF WIRE )<br>COMMUNICATIONS TO AND FROM )<br>SPRINT/NEXTEL WIRELESS TELEPHONE: )<br>785-375-6704 )<br>BEARING MOBILE STATION IDENTIFICATION # )<br>(MSID) 00007856601961 AND ELECTRONIC SERIAL )<br># (ESN) 268435459909788757 ) | CASE NO.<br><br>UNDER SEAL |

## ORDER AUTHORIZING THE INTERCEPTION
## OF WIRE COMMUNICATIONS

Application under oath having been made before me by Steven L. Opat, Geary County Attorney,

based on the sworn affidavit of Glen F. Virden, Senior Special Agent, Kansas Bureau of

Investigations, an investigative or law enforcement officer of the State of Kansas within the meaning

of Section 5 of K.S.A. 22-2514, *et seq*, for an Order authorizing the interception of wire

communications pursuant to K.S.A. 22-2514, *et seq*, and full consideration having been given to the

matter set forth therein, the Court finds:

A.     there is probable cause to believe that Albert DeWayne Banks, DOB ████ and Anthony

Carlyle Thompson, DOB ████, and others named in the affidavit of the said Glen F.

Virden, and others yet unknown (hereinafter "Target Subjects"), have committed, and are

committing, and will continue to commit offenses enumerated in Article 57 of K.S.A. 21-

5701 *et seq*, specifically possession of controlled substances with intent to distribute, and

distribution of controlled substances, in violation of K.S.A. 21-5701 *et seq*, specifically 21-

D000692

Page: 312     Date Filed: 07/10/2023     Document: 0101110884675     Appellate Case: 23-3102

5705 and 5706; unlawful use of a communication facility to commit and facilitate the commission of drug trafficking offenses, in violation of K.S.A. 21-5707; attempts, conspiracies or solicitations to possess with intent to distribute or to distribute controlled substances, in violation of K.S.A. 21-5701 *et seq*, and K.S.A. 21-5301 and 21-5302 and 21-5304; unlawful acts involving proceeds derived from violations of K.S.A. 21-5701-5717. (Hereinafter the "Target Offenses");

B.   there is probable cause to believe that particular wire communications of the said Albert DeWayne Banks and the said Anthony Carlyle Thompson and others yet unknown (hereinafter "Target Interceptees"), concerning the above-described Target Offenses will be obtained through the interception for which authorization has herewith been applied. In particular, there is probable cause to believe that the interception of wire communications to and from the cellular telephone with the assigned telephone number 785-375-6704, bearing MSID 00007856601961 and ESN 268435459909788757 with service provided by Sprint/Nextel Wireless which is a subscribed prepaid account but with no subscriber name attached, although it is clear that the principal user is and has been identified as Albert DeWayne Banks, will further disclose, detail and reveal the specifics of the above offenses, including the depth of the conspiracy and the manner and means of how and with whom these offenses are being committed, including the unknown sources from which the distribution by Albert DeWayne Banks, Anthony Carlyle Thompson, and others is made possible;

C.   it has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ; and

D.   there is probable cause to believe that 785-375-6704 has been and will continue to be used

Page: 313     Date Filed: 07/10/2023     Document: 010110884675     Appellate Case: 23-3102

in connection with commission of the above-described offenses.

WHEREFORE, IT IS HEREBY ORDERED that Special Agents of the Kansas Bureau of Investigation, and other agencies acting under the supervision of the KBI, are authorized, pursuant to an application as authorized by K.S.A. 22-2515, made by Steven L. Opat, the duly elected and authorized County Attorney for Geary County, State of Kansas, to intercept wire communications to and from the above-described telephone.

PROVIDED that such interception(s) shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but may continue until all communications are intercepted which reveal fully the manner in which the above-named persons and others as yet unknown are committing the offenses described herein, and which reveal fully the identities of their confederates, their places of operation, and the nature of the conspiracy involved therein, or for a period of thirty (30) days measured from the day on which investigative or law enforcement officers first begin to conduct an interception under this order or ten (10) days after this order is entered, whichever is earlier.

1T IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States.

IT 1S ORDERED FURTHER that the authorization given is intended to apply not only to the target telephone number listed above, but also to any other telephone number or telephone accessed through the above-referenced MSID number, and to any other MSID number accessed through the target telephone number referenced above, within the thirty (30) day period. The authorization is also intended to apply to the target telephone number referenced above regardless

Page: 314       Date Filed: 07/10/2023       Document: 010110884675       Appellate Case: 23-3102

314

of service provider, and to background conversations intercepted in the vicinity of the target telephone while the telephone is off the hook or otherwise in use.

IT IS ORDERED FURTHER that, based upon the request of the Applicant pursuant to K.S.A. 22-2514, and the definitions set forth therein, and K.S.A. 22-2515 and 2516, Sprint / Nextel, an electronic communication service provider as defined in Section 2510(15) of Title 18, United States Code and K.S.A. 22-2514, shall furnish the KBI and/or it's agents or designees with all information, facilities and technical assistance necessary to accomplish the interceptions unobtrusively and with a minimum of interference with the services that such provider is according the persons whose communications are to be intercepted, with the service provider to be compensated by the KBI for reasonable expenses incurred in providing such facilities or assistance.

IT IS ORDERED FURTHER that, to avoid prejudice to the government's criminal investigation, the provider of the electronic communications service and its agents and employees are Ordered Not To Disclose or Cause Disclosure of the Order or the request for information, facilities and assistance by the KBI or the existence of the investigation to any person other than those of its agents and employees who require this information to accomplish the services hereby ordered. In particular, said provider and its agents and employees shall not make such disclosure to a lessee, telephone subscriber or any interceptee or participant in the intercepted communications.

IT IS ORDERED FURTHER that this Order shall be binding on any subsequent provider of electronic communications services as defined in Title 18, United States Code, Section 2510(15) and K.S.A. 22-2514 *et seq*, that provides services to the target telephone number(s) listed above upon service of a certified copy of this Order without any further court order being required.

IT IS ORDERED FURTHER that this order shall be executed as soon as practicable and that all monitoring of wire communications shall be conducted in such a way as to minimize the

Page: 315          Date Filed: 07/10/2023          Document: 010110884675          Appellate Case: 23-3102

RICHARD FINK    RCPD                                  3-6-2013
Justin Stopper   GLSO                                 3/6/2013
Eric S. Coffman   GESO                                3-6-2013

interception and disclosure of the communications intercepted to those communications relevant to the pending investigation. The interception of wire communications must terminate upon the attainment of the authorized objectives, not to exceed thirty (30) days measured from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception of this order or ten (10) days after he order is entered.

Monitoring of conversations must terminate immediately when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119, Title 18, United States Code and K.S.A. 22-2514 *et seq.*. Interception must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named Target Interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent shall spot check to insure that the conversation has not turned to criminal matters.

IT IS ORDERED FURTHER that, pursuant to Section 2518(5), Title 18, United States Code and K.S.A. 22-2514 *et seq*, in the event intercepted communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

IT IS ORDERED FURTHER that Steven L. Opat, Geary County Attorney and/or Antonio Cruz Assistant Geary County Attorney shall provide this Court with a report on or about the tenth, twentieth, and thirtieth days following the date of this Order showing what progress has been made toward achievement of the authorized objectives and the need for continued interception. If any of the above-ordered reports should become due on a weekend or holiday, IT IS ORDERED

D000697

Luke Brawell   RCPD

| Printed Name | Signature | Date |
|---|---|---|
| | 03 | 3-6-13 |
| John M. Doehlig | John Doely | 3/6/13 |
| Brad Schorn | B Scha | |
| Dan Breci | Danny Breci | 3-6-13 |
| Tony Cruz GECA | Tony Cg | 3-6-13 |
| Jeff Childs | Jeffy S. Chd | 3/6/13 |
| | | 3-6-13 |
| Kurt Moldrup | | 3-6-13 |
| Julia Goggins | Julia Bo | 3-6-13 |
| Jessie Beck | | |
| Emmett Smith | | 3-06-13 |
| Robert Duerkes | | 3/6/2013 |
| BRIAN JOHNSON   RCPD | | 03-06-2013 |
| | | 03/06/13 |
| Rick Deutsch | R | 3/6/13 |
| Brek C. Jager | Brek C. JAGER | 03/06/13 |
| Mark French   RCPD | Mark French | 03/06/13 |
| Dustin J. Weisbrod   RCPD | | 3/6/13 |
| Michael PARR | | 3/6/13 |
| Sherri Moore   KBI | Sherri Moore | 3/6/13 |
| Robert Lenes   KBI | | 3/6/13 |
| DAVE BREDE   KBI | Q3 Bred | 3/6/13 |
| Nate Boeckman | | 3/6/13 |
| Bill White | | 3/6/13 |
| Andrew Bezdek | | 3-6-13 |
| RYAN Boyer   KBI | Ryan Boyer | 3-6-13 |
| | | 3-16-13 |

D000698

Page: 317
Date Filed: 07/10/2023
Document: 010110884675
Appellate Case: 23-3102
317

FURTHER that such report shall become due on the next business day thereafter.

IT IS ORDERED FURTHER that this Order, the application, affidavit and proposed order, and all interim reports filed with this Court with regard to this matter, shall be sealed until further order of this Court, except that copies of the order, in full or redacted form, may be served on the KBI and the service provider as necessary to effectuate this order.

DONE and ORDERED this __5__ day of __March__, 20_13_, at in Junction City, Kansas.

_Dal R Platt_
HONORABLE  David R. Platt
District Judge

| Print Name/Agency | Sign | Date |
|---|---|---|
| _an Shedden_ - KBI | _Fern Shedden_ | 3-6-13 |
| _Scott Ferris_ - KBI | _Scott Ferris_ | 3/6/13 |
| Steve Bundy - KBI | _Stu Bundy_ | 3/6/13 |
| Tim Leakey KBI | _Tim Leakey_ | 3/06/13 |
| Amanda Young KBI | _Amanda Young_ | 3/06/3 |
| NOAL CAMPOS KBI | _Campos_ | 3/06/13 |
| Chris Turner KBI | _Turner_ | 3/6/13 |
| MATTHEW LYNN KBI | _Matthew Lynn_ | 03.06.2013 |
| Rod Page KBI | _Rod Page_ | 03-06-2013 |
| ED BARTKOSK KBI | _Ed Bartkosk_ | 03-06-2013 |
| Brad Ingalls  RCPD | _By W. Im_ | 03/06/2013 |
| SHAWN STRATTON  RCPD | | 3/6/2013 |

D000699

Page: 319   Date Filed: 07/10/2023   Document: 01110884675   Appellate Case: 23-3102

| PRINT NAME/AGENCY | SIGN | DATE |
|---|---|---|
| GLEN VIRDEN   KBI | | 08/06/13 |
| Doug Younger   KBI | | 03-06-2013 |
| Michael Lind   KBI | | 03-06-2013 |
| Shane Finley   K.B.I | | 03-06-2013 |
| Robert Conde   KBI | | 03-06-2013 |
| Frank Papish   KBI | | 3/6/13 |
| KELLY W. RALSTON  KBI | | 3/6/13 |
| Jon  Rankin   KBI | | 3/6/13 |
| Shawn Campiti   KBI | | 03-06-2013 |
| Traci Allen   KBI | | 3-6-13 |
| Chris Farris   KBI | | 3-6-13 |
| JOSH KYLE   RCPD | | 3-6-13 |
| Mike Life   SCPD | | 03-06-13 |
| Angela C Weeks   GESO | | 03.06.13 |
| Cathy Fahey   JCPD | | 3-6-13 |
| JOSHUA BROWN   JCPD | | 03062013 |
| TODD GODFREY   JCPD | | 030613 |
| STEVEN L. OYAT   GELA | | 3/6/13 |
| Alvin Babcock   JCPD | | 3-6-13 |
| Tim Brown   JCPD | | 030613 |
| MAVERICK CAMPBELL   GESO | | 03-06-13 |
| | | 03.06.13 |
| Tony Wolf   Geary County S.O. | | |
| William P. Arnold Jr.   JCPP  JCPD | | 03/06/13 |
| Cory Odell   JCPD | | 3/6/13 |
| Trish Gordan   JCPD | | 3-6-13 |
| Kelly Roberts   TPD | | 3-6-13 |
| n the Rum Farel   KBI | | 3-6-13 |
| DEU SWANN   KBI | | 3/6/13 |

D000700

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ALBERT DEWAYNE BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:15-CV-03093-HLT-GEB |
| | ) | (LEAD CASE) |
| v. | ) | |
| | ) | |
| STEVEN L. OPAT, et *al.,* | ) | |
| | ) | |
| Defendants. | ) | |

---

| | | |
|---|---|---|
| ANTHONY THOMPSON #15318-031, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:15-CV-03117-HLT-GEB |
| | ) | (CONSOLIDATED CASE) |
| v. | ) | |
| | ) | |
| GLEN VIRDEN, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF JORDAN KURTZ IN SUPPORT OF
## T-MOBILE USA, INC.'S MOTION FOR SUMMARY JUDGMENT

I, Jordan Kurtz, being duly sworn, hereby depose and state under penalty of perjury as follows:

1.     I am over the age of twenty-one (21), of sound mind, and competent to testify. The facts stated herein are within my personal knowledge, true and correct, and if called to testify as a witness, I would and could competently testify to the truth of each statement herein.

1

2.      I am employed by T-Mobile USA, Inc. ("T-Mobile") as a Senior Specialist on T-Mobile's Law Enforcement Relations Team ("LER Team"). I have held this position continuously since 2009.

3.      The LER Team is responsible for responding to law enforcement requests for customer information, including requests for electronic surveillance. The LER Team works 24/7/365 to respond to all government requests for subscriber data and information. In this role, the LER team responds to government and customer declared emergencies, national security requests, and the full complement of legal requests that require release of customer information.

4.      On or about March 7, 2013, the Kansas Bureau of Investigations ("KBI") transmitted a standardized coversheet, known as a CALEA Lawful Intercept Worksheet, that instructed T-Mobile to conduct an intercept for the mobile number 785-226-1783. The one-page worksheet also explicitly instructed T-Mobile to "TURN ON SMS":



"SMS" is an abbreviation for "short message service," the technology most commonly used for text messaging. Behind the coversheet, the facsimile also contained a copy of an Order, dated March 5, 2013, which authorized a wiretap pursuant to K.S.A. 22-2514, et seq. The March 5, 2013 Order referred to T-Mobile as electronic communication service provider and required the furnishing of all

2

information, facilities and technical assistance necessary to accomplish the interception of communication with respect to a certain target telephone number.

5.      A true and correct copy of the March 7, 2013 facsimile, as kept in the ordinary course of business, has been produced in this case with the Bates label T-MOBILE_00001-8 and is included herein as Exhibit 1.

6.      In response to the March 7, 2013 facsimile, and in accordance with the instructions from law enforcement, I provisioned the  wiretap requested by the KBI for the target telephone number.

7.      T-Mobile does not monitor, store or retain the subscriber data and information delivered to the government via lawful intercept.

8.      On or about April 4, 2013, the KBI transmitted an updated CALEA Lawful Intercept Worksheet and wiretap extension Order to the LER Team. The extension Order instructed T-Mobile to continue the wiretap on the same target for an additional 30 days. A true and correct copy of the April 4, 2013 facsimile, as kept in the ordinary course of business, has been produced in this case with the Bates label T-MOBILE_00009-15 and is included herein as Exhibit 2.

9.      In response to the April 4, 2013 facsimile, and in accordance with the instructions from law enforcement, T-Mobile provisioned an extension of the wiretap requested by the KBI for the target telephone number.

10.     On or about April 17, 2013, the KBI transmitted another CALEA Lawful Intercept Worksheet and Order  to T-Mobile which authorized a wiretap for a different target telephone number, 785-226-2893. The worksheet contained the

instruction to "Please turn SMS <u>ON</u>" (capitalization and underline in original).

Behind the worksheet, the facsimile contained a copy of the April 16, 2013 Order

Authorizing the Interception of Wire Communications. The body of the April 16,

2013 Order includes a provision which authorized the interception of "wire/oral

and/or electronic communications to and from the above-described telephone."

11.     A true and correct copy of the April 17, 2013 facsimile, as kept in the

ordinary course of business, has been produced in this case with the Bates label T-

MOBILE_00016-23 and is included herein as Exhibit 3.

12.     In response to the April 17, 2013 facsimile, and in accordance with the

instructions from law enforcement, T-Mobile provisioned the wiretap requested by

the KBI for the target telephone number.

13.     In 2013 alone, T-Mobile received approximately 317,000 requests for

customer information. The requests took such forms as subpoenas, court orders,

warrants, wiretap orders, and national security requests. Approximately 97% of

these requests came from federal, state or local law enforcement. Of these requests,

2,308 were wiretap orders.

14.     Exhibit 4 is a true and correct copy of T-Mobile's "Transparency Report

for 2013 and 2014," as kept in the ordinary course of business. It has been produced

in this case with the Bates label T-MOBILE_00024-29.

15.     Virtually every  wiretap order received by T-Mobile requires

interception of both voice and text messages.

4

16.    I declare under penalty of perjury and pursuant to <u>28 U.S.C. § 1746</u>

that the foregoing statements are true and accurate to the best of my knowledge

and belief.

* * *

Dated this 17th day of September, 2020

<i>/s/ Jordan Kurtz</i>
Jordan Kurtz

5

# EXHIBIT D1



# Kansas Bureau of Investigation

Kirk Thompson
*Director*

Derek Schmidt
*Attorney General*

# **Fax Cover Sheet**

NAME OF RECEIVER: SUBPOENA COMPLIANCE

NAME OF AGENCY: T-Mobile

FAX NO: 813-801-8825

DATE: 03-07-2013   PAGES INCLUDING COVER SHEET : 8

### SENT FROM
Kansas Bureau of Investigation
821 North Broadway, Pittsburg, Kansas 66762
PS No. 620-230-5811 --- FAX No. 620-230-5822

NAME OF SENDER: SSA James T. Botts

COMMENTS: **IMPORTANT INFORMATION BELOW**

**You may return information by email at tim.botts@kbi.state.ks.us , 620-230-0996 or
fax 620-230-5822. If you wish to mail hardcopies of requested information you may
forward it to:**

**SSA Tim Botts
Kansas Bureau of Investigation
821 North Broadway
Pittsburg, Kansas 66762**

This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, or an employee and/or agent for delivering this communication to the intended recipient, please note that any dissemination, distribution, or copying of this communication may be strictly prohibited. If this communication was received in error, please notify the sender by telephone and return the fax communication to the Kansas Bureau of Investigation mailing address above via United States postal mail. Thank you.

**HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY**     **T-MOBILE_00001**   327

**T··Mobile·** ✗ Upgrade to T-3 ✗

## CALEA LAWFUL INTERCEPT WORKSHEET
Please complete and remit with each Court Order to fax number: 813-801-8825
E-Mail - LERCourtOrders@T-Mobile.com

Date submitted: 3-7-13 Type of Intercept: ☐Pen Register  ☒Title III/T-50  ☐ WebMap E911  ☐ Packet Data

Mobile Number to Intercept: 785-226-1783

IMSI Number to Intercept: 310260445955246

Date of Expiration Pen:                 T-III/T-50: 4-5-13    WebMap E911:        Packet Data:

Cell Location Authorized: ☒ Yes ☐ No        Post Cut digits Authorized: ☐ Yes ☐ No

**Data Route:** ————————→ **Packet Data Monitoring Agency:**

Monitoring Center / Agency  Deliver to San Bernadino PKDT Center/Agency
**Audio Delivery**                          Randy Hanson LASBCSO
                                                                    019456
(C-Tone#): Ports 785-296-6328        WebMap Email address:

**LEA Contact Information:**

Agency Name: Kansas Bureau of Investigation

Agency Address: 1620 SW Tyler
City: Topeka    State: KS   Zip Code 12

Case Agent: Glen Virden                   Phone Number: 785-864-0474
                                                                Fax Number: 785-296-2017

Technical Agent: SSA James Botts         Phone Number: 620-230-0996
                                                                Fax Number: 785 296-2017

**Additional Agents/Officers Authorized to discuss Case:**
(T-Mobile USA will only speak to those Agents/Officers listed below, about the above referenced case)

Jason Diaz
Troy Rhodes
Matt Lyon

**Billing Information:**

Billing Name: KBI

Billing Street Address: 1620 SW Tyler          Turn ON SMS

City: Topeka   State: KS Zip: 66612

Agency's Reference number:

Please feel free to contact the Law Enforcement Relations Group at 973-292-8911 option 3 with any questions you may have.

** All Targets are put up nationwide **

T-Mobile USA
4 Sylvan Way
Parsippany, NJ 07054
973-292-8911 (office) 813-801-8825 (fax)
E-Mail - LERCourtOrders@T-Mobile.com

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY        T-MOBILE_00002

## IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

IN THE MATTER OF THE APPLICATION ) 
OF THE STATE OF KANSAS ) CASE NO.
FOR AN ORDER AUTHORIZING THE )
INTERCEPTION OF WIRE ) UNDER SEAL
COMMUNICATIONS TO AND FROM )
T-MOBILE USA WIRELESS TELEPHONE: )
785-226-1783 )
BEARING INTERNATIONAL MOBILE STATION )
IDENTIFICATION # (IMSI) 310260445955245 )

## ORDER AUTHORIZING THE INTERCEPTION
## OF WIRE COMMUNICATIONS

Application under oath having been made before me by Steven L. Opat, Geary County Attorney, based on the sworn affidavit of Glen F. Virden, Senior Special Agent, Kansas Bureau of Investigations, an investigative or law enforcement officer of the State of Kansas within the meaning of Section 5 of K.S.A. 22-2514, *et seq*, for an Order authorizing the interception of wire communications pursuant to K.S.A. 22-2514, *et seq*, and full consideration having been given to the matter set forth therein, the Court finds:

A.      there is probable cause to believe that Albert DeWayne Banks, DOB 12/23/81 and Anthony Carlyle Thompson, DOB 2/15/82, and others named in the affidavit of the said Glen F. Virden, and others yet unknown (hereinafter "Target Subjects"), have committed, and are committing, and will continue to commit offenses enumerated in Article 57 of K.S.A. 21-5701 *et seq*, specifically possession of controlled substances with intent to distribute, and distribution of controlled substances, in violation of K.S.A. 21-5701 *et seq*, specifically 21-

5705 and 5706, unlawful use of a communication facility to commit and facilitate the commission of drug trafficking offenses, in violation of K.S.A. 21-5707; attempts, conspiracies or solicitations to possess with intent to distribute or to distribute controlled substances, in violation of K.S.A. 21-5701 *et seq*, and K.S.A. 21-5301 and 21-5302 and 21-5304; unlawful acts involving proceeds derived from violations of K.S.A. 21-5701-5717. (Hereinafter the "Target Offenses");

B.  there is probable cause to believe that particular wire communications of the said Albert DeWayne Banks and the said Anthony Carlyle Thompson and others yet unknown (hereinafter "Target Interceptees"), concerning the above-described Target Offenses will be obtained through the interception for which authorization has herewith been applied. In particular, there is probable cause to believe that the interception of wire communications to and from the cellular telephone with the assigned telephone number 785-226-1783, bearing IMSI 310260445955245 with service provided by T-Mobile USA Wireless with subscriber listed as one Jason Roberts, although it is clear that the principal user is and has been identified as Anthony Carlyle Thompson, will further disclose, detail and reveal the specifics of the above offenses, including the depth of the conspiracy and the manner and means of how and with whom these offenses are being committed, including the unknown sources from which the distribution by Albert DeWayne Banks, Anthony Carlyle Thompson, and others is made possible;

C.  it has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ; and

D.  there is probable cause to believe that 785-226-1783 has been and will continue to be used in connection with commission of the above-described offenses.

**HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY**

WHEREFORE, IT IS HEREBY ORDERED that Special Agents of the Kansas Bureau of Investigation, and other agencies acting under the supervision of the KBI, are authorized, pursuant to an application as authorized by K.S.A. 22-2515, made by Steven L. Opat, the duly elected and authorized County Attorney for Geary County, State of Kansas, to intercept wire communications to and from the above-described telephone.

PROVIDED that such interception(s) shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but may continue until all communications are intercepted which reveal fully the manner in which the above-named persons and others as yet unknown are committing the offenses described herein, and which reveal fully the identities of their confederates, their places of operation, and the nature of the conspiracy involved therein, or for a period of thirty (30) days measured from the day on which investigative or law enforcement officers first begin to conduct an interception under this order or ten (10) days after this order is entered, whichever is earlier.

IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States.

IT IS ORDERED FURTHER that the authorization given is intended to apply not only to the target telephone number listed above, but also to any other telephone number or telephone accessed through the above-referenced IMSI number, and to any other IMSI number accessed through the target telephone number referenced above, within the thirty (30) day period. The authorization is also intended to apply to the target telephone number referenced above regardless of service provider, and to background conversations intercepted in the vicinity of the target

telephone while the telephone is off the hook or otherwise in use.

IT IS ORDERED FURTHER that, based upon the request of the Applicant pursuant to K.S.A. 22-2514, and the definitions set forth therein, and K.S.A. 22-2515 and 2516, T-Mobile , an electronic communication service provider as defined in Section 2510(15) of Title 18, United States Code and K.S.A. 22-2514, shall furnish the KBI and/or it's agents or designees with all information, facilities and technical assistance necessary to accomplish the interceptions unobtrusively and with a minimum of interference with the services that such provider is according the persons whose communications are to be intercepted, with the service provider to be compensated by the KBI for reasonable expenses incurred in providing such facilities or assistance.

IT IS ORDERED FURTHER that, to avoid prejudice to the government's criminal investigation, the provider of the electronic communications service and its agents and employees are Ordered Not To Disclose or Cause Disclosure of the Order or the request for information, facilities and assistance by the KBI or the existence of the investigation to any person other than those of its agents and employees who require this information to accomplish the services hereby ordered. In particular, said provider and its agents and employees shall not make such disclosure to a lessee, telephone subscriber or any interceptee or participant in the intercepted communications.

IT IS ORDERED FURTHER that this Order shall be binding on any subsequent provider of electronic communications services as defined in Title 18, United States Code, Section 2510(15) and K.S.A. 22-2514 *et seq*, that provides services to the target telephone number(s) listed above upon service of a certified copy of this Order without any further court order being required.

IT IS ORDERED FURTHER that this order shall be executed as soon as practicable and that all monitoring of wire communications shall be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to

**HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY**

the pending investigation. The interception of wire communications must terminate upon the attainment of the authorized objectives, not to exceed thirty (30) days measured from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception of this order or ten (10) days after he order is entered.

Monitoring of conversations must terminate immediately when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119, Title 18, United States Code and K.S.A. 22-2514 *et seq.*. Interception must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named Target Interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent shall spot check to insure that the conversation has not turned to criminal matters.

IT IS ORDERED FURTHER that, pursuant to Section 2518(5), Title 18, United States Code and K.S.A. 22-2514 *et seq*, in the event intercepted communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

IT IS ORDERED FURTHER that Steven L. Opat, Geary County Attorney and /or Antonio Cruz Assistant Geary County Attorney shall provide this Court with a report on or about the tenth, twentieth, and thirtieth days following the date of this Order showing what progress has been made toward achievement of the authorized objectives and the need for continued interception. If any of the above-ordered reports should become due on a weekend or holiday, IT IS ORDERED FURTHER that such report shall become due on the next business day thereafter.

**HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY**

IT IS ORDERED FURTHER that this Order, the application, affidavit and proposed order, and all interim reports filed with this Court with regard to this matter, shall be sealed until further order of this Court. except that copies of the order, in full or redacted form, may be served on the KBI and the service provider as necessary to effectuate this order.

DONE and ORDERED this __5__ day of __March__, 20_3_, at in Junction City, Kansas.

HONORABLE  David R. Platt
District Judge

**HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY**            **T-MOBILE_00008**       334

# EXHIBIT D2

# Kansas Bureau of Investigation

Kirk Thompson
*Director*

Derek Schmid
*Attorney Genera*

# Fax Cover Sheet

NAME OF RECEIVER: T-Mobile LEO Compliance

NAME OF AGENCY:

FAX NO: 813-801-8825    973-292- 8693

DATE: 4-4-13    PAGES INCLUDING COVER SHEET: 7

### SENT FROM
Kansas Bureau of Investigation
1620 SW Tyler, Topeka, KS 66612
PS No. 785/296-8200 — FAX No. 785/296-0915

NAME OF SENDER: KBI SSA Jason Diaz
620-282-2017    jason.diaz@Kbi.state.
KS.us

COMMENTS:

30 Day Extension on T-III Wire
785-226-1783
through 5-4-2013

This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, or an employee and/or agent for delivering this communication to the intended recipient, please note that any dissemination, distribution, or copying of this communication may be strictly prohibited. If this communication was received in error, please notify the sender by telephone and return the fax communication to the Kansas Bureau of Investigation mailing address above via United States postal mail. Thank you.

## IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

IN THE MATTER OF THE APPLICATION ) 
OF THE STATE OF KANSAS )     CASE NO.
FOR AN ORDER AUTHORIZING THE )
INTERCEPTION OF WIRE )     UNDER SEAL
COMMUNICATIONS TO AND FROM )
T-MOBILE USA WIRELESS TELEPHONE: )
785-226-1783 )
BEARING INTERNATIONAL MOBILE STATION )
IDENTIFICATION # (IMSI) 310260445955245 )

### ORDER

Application under oath having been made before been made before me by Steven L. Opat, duly elected County Attorney for Geary County, State of Kansas, an "investigative or law enforcement officer" of the State of Kansas within the meaning of Section 2510(7) of Title 18, United States Codes, and K.S.A. 22-2514, for an Order authorizing the **Continued** interception (i.e. an extension) of wire communications pursuant to K.S.A. 22-2514 *et seq*, particularly 22-2515(a)(11) and (20) as previously authorized by this Court on March 5, 2013, and therefore full consideration having been given to the matter set forth therein, the Court **Finds**:

A.     there is probable cause to believe that Anthony Carlyle Thompson, Albert DeWayne Banks, Johnny Lee Ivory, Otis Ponds, others named in the affidavits and progress reports herein, and others as yet unknown, have committed, and are committing specifically possession of controlled substances (with intent to distribute) and distribution of controlled substances, in violation of K.S.A. 21-5701 *et seq*, specifically 21-5705 and 5706; unlawful use of a communication facility to commit and facilitate the commission of drug trafficking offenses, in violation of K.S.A. 21-5707; attempts,

**HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY**     **T-MOBILE_00010**     

conspiracies or solicitations to possess with intent to distribute or to distribute controlled substances, in violation of K.S.A. 21-5701 *et seq*, and K.S.A. 21-5301 and 21-5302 and 21-5304; unlawful acts involving proceeds derived from violations of K.S.A. 21-5701-5717, hereinafter the "Target Offenses";

B.     there is probable cause to believe that particular wire communications of Anthony Carlyle Thompson, Albert DeWayne Banks, Johnny Lee Ivory, Otis Ponds, others named in such previously submitted affidavits an progress reports, and others as yet unknown, concerning the above-described offenses will be obtained through the interception for which authorization has herewith been applied. In particular, there is probable cause to believe that the interception of wire communications to and from the telephone bearing number 785-226-1783, bearing International Mobile Subscriber Identity Number (IMSI): 310260445955245, Target Phone, which is a T-Mobile USA Wireless cellular telephone, subscribed to Jason Roberts, with the primary user having been identified as Anthony Carlyle Thompson, will concern the specifics of the above offenses, including the manner and means of the commission of the offenses(s);

C.     it has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are to dangerous to employ; and

D.     there is probable cause to believe that the telephone bearing the number 785-226-1783, bearing International Mobile Subscriber Identity Number (IMSI): 310260445955245, which is a T-Mobile USA Wireless cellular telephone, subscribed to Jason Roberts, with the primary user having been identified as Anthony Carlyle Thompson, has been and will continue to be used in connection with commission of the above-described offenses.

**HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY**

WHEREFORE, IT IS HEREBY ORDERED that Senior Special Agent Glen Virden of the K.B.I., and other agencies acting under the supervision of a K.B.I. agent, are authorized, pursuant to an application signed by Steven L. Opat, Geary County Attorney, an authorized "investigative or law enforcement officer" of the State of Kansas within the meaning of Section 2514 of K.S.A. chapter 22, that is an attorney authorized by law to prosecute, to **Continue** to intercept wire communications to an from the above-described telephone.

PROVIDED that such interception(s) shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but may continue until all communications are intercepted which reveal fully the manner in which the above-named persons and others as yet unknown are committing the offenses described herein, and which reveal fully the identities of their confederates, their place of operations, and the nature of the conspiracy involved therein, or for a period of thirty (30) days measured from the day on which investigative or law enforcement officers first continue to conduct an interception under this order.

IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States.

IT IS ORDERED FURTHER that the authorization apply not only to the target telephone number(s) listed above, but to any changed telephone number or IMSI subsequently assigned and utilized by the target telephone within the thirty (30) day period, but to any changed telephone number or IMSI or any other telephone number subsequently assigned to or used by the instrument bearing the same IMSI as the target cellular phone within the thirty (30) day period. It is also Ordered that the authorization apply to background conversations intercepted in the vicinity of the

target telephone while the telephone is off the hook or otherwise in use.

IT IS ORDERED FURTHER that, based upon the request of the Applicant pursuant to Chapter 119 of Title 18, United States Code, and K.S.A. 22-2514 & 2516 as amended, T-Mobile USA Wireless an electronic communication service provider as defined by law shall furnish the K.B.I. will all information, facilities and technical assistance necessary to accomplish the interceptions unobtrusively and with a minimum of interference with the services that such provider is according the persons whose communications are to be intercepted, with the service provider to be compensated by the K.B.I. for reasonable expenses incurred in providing such facilities or assistance.

IT IS ORDERED FURTHER that in the event that the service provider changes during the course of the interception, interception may continue with the new service provider without further order of this Court. The State of Kansas will advise the Court of the change of service provider in the periodic progress reports submitted to this Court.

IT IS ORDERED FURTHER that, to avoid prejudice to the government's criminal investigation, the provider of the electronic communications service and its agents and employess are ordered not to disclose or cause a disclosure of the Order or the request for information, facilities and assistance by the K.B.I. or the existence of the investigation to any person other than those of its agents and employees who require this information to accomplish the services hereby ordered. In particular, said provider and its agents and employees shall not make such disclosure to a lessee, telephone subscriber or any interceptee or participant in the intercepted communications.

IT IS ORDERED FURTHER that this order shall be executed as soon as practicable and that all monitoring of wire communications shall be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

the pending investigation. The interception of wire communications must terminate upon that attainment of the authorized objectives, not to exceed thirty (30) days measured from the earlier of the day on which investigative or law enforcement officers first begin to **Continue** to conduct an interception of this Order.

Monitoring of conversations must terminate immediately when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119, Title 18 United States Code and K.S.A. 22-2516 as amended. Interceptions must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined during the portion of the conversation is overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent shall spot check to insure that the conversation has not turned to criminal matters.

IT IS ORDERED FURTHER that, pursuant to Chapter 119, Title 18, United States Code, and K.S.A. 22-2516 as amended, in the event intercepted communications are in a code or foreign language, and an expert in the code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

IT IS ORDERED FURTHER that Steven L. Opat Geary County Attorney or Tony Cruz Assistant Geary County Attorney, shall provide this Court with a report on or about the tenth, twentieth, and thirtieth days following the date of **the Extension of the Order of March 5, 2013** as Authorized this date showing what progress has been made toward achievement of the authorized objectives and need for continued interception. If any of the above-ordered reports should become due on a weekend or holiday, IT IS ORDERED FURTHER that such report shall become due on

**HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY**

the next business day thereafter.

IT IS ORDERED FURTHER that, pursuant to law, Federal and State, (K.S.A. 22-2516), to prevent premature disclosure of an ongoing investigation, guard against fugitives, and better ensure the safety of agents and others, service of any notice requested by law may be delayed for a period of thirty (30) days after the termination of the monitoring period authorized by the warrant.

IT IS ORDERED FURTHER that T-Mobile USA Wireless, its affiliates, officers, employees, and agents not disclose the Court's Order or the underlying investigation, until notice is given as provided above.

IT IS ORDERED FURTHER that this **Order of Extension,** the application, any affidavit(s) and/or progress reports filed with this Court with regard to this matter, shall be sealed until further order of this Court, except that copies of the Order, in full or redacted form, may be served on the service provider as necessary to effectuate this Order.

DONE and ORDERED this __4__ day of April, 2013, at __3127__ a.m./p.m. in Junction City, Kansas.

HONORABLE DAVID R. PLATT
DISTRICT JUDGE
8TH JUDICIAL DISTRICT
STATE OF KANSAS

# EXHIBIT D3

# Fax Cover Sheet

NAME OF RECEIVER: Law Enforcement Compliance

NAME OF AGENCY: T-Mobile

FAX NO: 813-801-8825

DATE: 4-17-13          PAGES INCLUDING COVER SHEET: 8

## SENT FROM
### SEKDETF
821 N. Broadway, Pittsburg, KS 66762
Phone No. 620-230-5826 --- FAX No. 620-230-5835

NAME OF SENDER: KBI SSA Jason Diaz ☎ 620 282 2017
                jason.diaz@kbi.state.ks.us

COMMENTS:

Target # 785-226-2893

Please call it any problems
620-282-2017

This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, or an employee and/or agent for delivering this communication to the intended recipient, please note that any dissemination, distribution, or copying of this communication may be strictly prohibited. If this communication was received in error, please notify the sender by telephone and return the fax communication to the Kansas Bureau of Investigation mailing address above via United States postal mail.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY    T-MOBILE_00016 344

T · · Mobile · ·

CALEA LAWFUL INTERCEPT WORKSHEET

Please complete and return with each Court Order to fax number: 973-292-8698-
813-801-9825

Date submitted 4-17-13   Type of Intercept: ☐ Pen Register ☒ Title III

Mobile Number to Intercept: 785-226-2893

IMSI Number to Intercept: 310260566871100

Date of Execution 5-17-13   Cell Location Authorized: ☒ Yes ☐ No

Geographic Area: Home & Any Area within past 30 days

**Data Route:**

Monitoring Center: _____ or IP Address _____ Port 170.164.210.104

**Audio Delivery**

(C-Tone#) _____

Please Deliver to:
San Bernadino Sheriffs Department
Attn: Randy Harrison
LASBCSO
019456

**LEA Contact Information:**

Agency Name: Kansas Bureau of Investigation
Agency Address: 1620 SW Tyler
City: Topeka Suite KS Zip 66612

Case Agent: _____   Phone Number: 785-564-0474
SSA Virden   Fax Number: 785-296-8291

Technical Agent: _____   Phone Number: 620-282-2017
SSA Diaz   Fax Number: 620-230-5835

Please turn
Sms ON

**Additional Agents/Officers Authorized to discuss Case:**
(T-Mobile LRMS will only speak to those Agents/Officers listed below, about this specific reference case)

SSA Rhodes   SSA Botts   SSA Diaz
SSA Lyon   SSA Virden

**Billing Information:**

Billing Name: KBI - SSA Virden

Billing Street Address: 1620 SW Tyler

City: Topeka State: KS Zip: 66617

Agency's Reference number KBI 12-305

Dial Down Numbers
Primary : 785-296-8285
Secondary: 785-296-8298

Please feel free to contact the Law Enforcement Relations Group at 973-292-8912, 111-292-8108 or 973-292-8008 with any questions you may have.

T-Mobile USA
4 Sylvan Way
Parsippany NJ 08054
973-292-8911(office) 973-292-8697 (fax)

**HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY    T-MOBILE_00017** 345

IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE STATE OF KANSAS FOR AN ORDER AUTHORIZING THE INTERCEPTION OF WIRE COMMUNICATIONS TO AND FROM T-MOBILE USA, 785-226-2893 INTERNATIONAL MOBILE SECURITY IDENTITY # (IMSI) 310260566871100 | CASE NO. UNDER SEAL |

## ORDER AUTHORIZING THE INTERCEPTION
## OF WIRE COMMUNICATIONS

Application under oath having been made before me by Steven L. Opat, Geary County Attorney, based on the sworn affidavit of Glen F. Virden, Senior Special Agent, Kansas Bureau of Investigations, an investigative or law enforcement officer of the State of Kansas within the meaning of Section 5 of K.S.A. 22-2514, et seq, for an Order authorizing the interception of wire/oral and/or electronic communications pursuant to K.S.A. 22-2514, et seq. and full consideration having been given to the matter set forth therein, the Court finds:

A.  there is probable cause to believe that Albert DeWayne Banks, B/M DOB 12/23/81, Anthony Thompson DOB 2/15/82 , Otis Ponds, Johnny Ivory III and others named in the affidavit of the said Glen F. Virden, and others yet unknown (hereinafter "Target Subjects"), have committed, and are committing, and will continue to commit offenses enumerated in Article 57 of K.S.A. 21-5701 et seq, specifically possession of controlled substances with intent to

**HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY     T-MOBILE_00018**

distribute and distribution of controlled substances, in violation of K.S.A. 21-5701 et seq; specifically 21-5705 and 5706, unlawful use of a communication facility to commit and facilitate the commission of drug trafficking offenses, or violation of K.S.A. 21-5707; attempts, conspiracies or solicitations to possess with intent to distribute or to distribute controlled substances, in violation of K.S.A. 21-5701 et seq, and K.S.A. 21-5301 and 21-5302 and 21-5304; unlawful acts involving proceeds derived from violations of K.S.A. 21-5701-5717. (Hereinafter the "Target Offenses");

B.   there is probable cause to believe that particular wire/oral and/or electronic communications of the said Albert DeWayne Banks, Anthony Thompson, Otis Ponds, Johnny Ivory III and others yet unknown (hereinafter "Target Interceptees"), concerning the above-described Target Offenses will be obtained through the interception for which authorization has herewith been applied. In particular, there is probable cause to believe that the interception of wire/oral and/or electronic communications to and from the cellular telephone with the assigned telephone number 785-226-2893, bearing IMSI 310260566871100 with service provided by T-Mobile USA with no name attached as the subscriber as it is an IN PREPAID CUSTOMER, although it is clear that the principal user is and has been identified as Anthony Carlyle Thompson, will further disclose, detail and reveal the specifics of the above offenses, including the depth of the conspiracy and the manner and means of how and with whom these offenses are being committed, including the unknown sources from which the distribution by Albert DeWayne Banks, Anthony Carlyle Thompson, Otis Ponds, Johnny Ivory and others is made possible.

It has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ, and

17.    there is probable cause to believe that 785-226-2895 has been and will continue to be used
in connection with commission of the above-described offenses.

WHEREFORE, IT IS HEREBY ORDERED that Special Agents of the Kansas Bureau of
Investigation, and other agencies acting under the supervision of the KBI, are authorized, pursuant
to an application as authorized by K.S.A. 22-2515, made by Steven L. Opat, the duly elected and
authorized County Attorney for Geary County, State of Kansas,  to intercept wire/oral and/or
electronic communications to and from the above-described telephone.

PROVIDED that such interception(s) shall not terminate automatically after the first
interception that reveals the manner in which the alleged co-conspirators and others as yet unknown
conduct their illegal activities, but may continue until all communications are intercepted which
reveal fully the manner in which the above-named persons and others as yet unknown are
committing the offenses described herein, and which reveal fully the identities of their confederates,
their places of operation, and the nature of the conspiracy involved therein, or for a period of thirty
(30) days measured from the day on which investigative or law enforcement officers first begin to
conduct an interception under this order or ten (10) days after this order is entered, whichever is
earlier.

IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside
the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within
the United States.

IT IS ORDERED FURTHER that the authorization given is intended to apply not only to
the target telephone number listed above, but also to any other telephone number or telephone
accessed through the above referenced MSID number, and to any other MSID/IMSI number accessed

**HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY     T-MOBILE_00020** 348

through the target telephone number referenced above, within the thirty (30) day period. The communication is also intended to apply to the target telephone number referenced above regardless of service provider, and to background conversations intercepted in the vicinity of the target telephone while the telephone is off the hook or otherwise in use.

IT IS ORDERED FURTHER then based upon the request of the Applicant pursuant to K.S.A. 22-2514, and the definitions set forth therein, and K.S.A. 22-2515 and 2516, Virgin Mobile USA/Sprint PCS, an electronic communication service provider as defined in Section 2510(15) of Title 18, United States Code and K.S.A 22-2514, shall furnish the KBI and/or it's agents or designees with all information, facilities and technical assistance necessary to accomplish the interceptions unobtrusyely and with a minimum of interference with the services that such provider is according the persons whose communications are to be intercepted, with the service provider to be compensated by the KBI for reasonable expenses incurred in providing such facilities or assistance.

IT IS ORDERED FURTHER that, to avoid prejudice to the government's criminal investigation, the provider of the electronic communications service and its agents and employees are Ordered Not To Disclose or Cause Disclosure of the Order or the request for information, facilities and assistance by the KBI or the existence of the investigation to any person other than those of its agents and employees who require this information to accomplish the services hereby ordered. In particular, said provider and its agents and employees shall not make such disclosure to a lessee, telephone subscriber or any interrupter or participant in the intercepted communications.

IT IS ORDERED FURTHER that this Order shall be binding on any subsequent provider of electronic communications services as defined in Title 18, United States Code, Section 2510(15) and K.S.A. 22-2514 et seq, that provides services to the target telephone number(s) listed above upon

**HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY    T-MOBILE_00021** 349

service of a certified copy of this Order without any further court order being required.

IT IS ORDERED FURTHER that this order shall be executed as soon as practicable and that all monitoring of wire/oral and/or electronic communications shall be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to the pending investigation. The interception of wire/oral and/or electronic communications must terminate upon the attainment of the authorized objectives, not to exceed thirty (30) days measured from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception of this order or ten (10) days after the order is entered.

Monitoring of conversations must terminate immediately when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119, Title 18, United States Code and K.S.A. 22-2514 et seq.. Interception must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named Target Interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent shall spot check to insure that the conversation has not turned to criminal matters.

IT IS ORDERED FURTHER that, pursuant to Section 2518(5), Title 18, United States Code and K.S.A. 22-2514 et seq, in the event intercepted communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

**HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY** T-MOBILE_00022 350

IT IS ORDERED FURTHER that Steven L. Opat, Geary County Attorney and/or Amanda Crist, Assistant Geary County Attorney shall provide this Court with a report on or about the tenth, twentieth, and thirtieth days following the date of this Order showing what progress has been made toward achievement of the authorized objectives and the need for continued interception. If any of the above-ordered reports should become due on a weekend or holiday, IT IS ORDERED FURTHER that such report shall become due on the next business day thereafter.

IT IS ORDERED FURTHER that this Order, the application, affidavit and proposed order, and all interim reports filed with this Court with regard to this matter, shall be sealed until further order of this Court, except that copies of the order, in full or redacted form, may be served on the KBI and the service provider as necessary to effectuate this order.

DONE and ORDERED this ___16___ day of ___April___, 20 _13_, at in Junction City, Kansas.


_____

HONORABLE DAVID R. PLATT
DISTRICT JUDGE
8TH JUDICIAL DISTRICT, STATE OF KANSAS

# EXHIBIT D4



# **T-Mobile** Transparency Report for 2013 and 2014

This Transparency Report provides information about requests from law enforcement agencies and others for customer information we[1] received in 2013 and 2014 and describes how we respond to those requests. We include all the information we are legally permitted to disclose, to the extent we maintain such information.

We take very seriously the privacy of our customers' information and our obligation to protect it. When we receive a request from law enforcement for customer information we confirm that the request is valid and that our response complies with the law and our own policies. When a lawful request for customer information is presented to us we are required to comply. We discuss the types of law enforcement requests we receive below.

## **Summary of Types of Information Requested and Legal Process**

Law enforcement and government[2] requests can take various forms, depending on the information sought. The most common forms include subpoenas, court orders, warrants, national security letters and requests under emergency circumstances. Each type of request has its own legal standard and requirements the government must follow for the request to be lawful. Generally speaking, the more sensitive the type of information sought, the higher the legal standard to obtain it.

With respect to any type of request, T-Mobile provides customer information to law enforcement agencies only where legally permitted or required to do so.  We maintain a dedicated law enforcement relations team (referred to as "LER"), which is available 24/7/365 to handle requests from law enforcement and other governmental agencies. We require law enforcement agencies to follow established legal processes when they make a request for customer information, and we examine each such request to ensure it meets all applicable legal requirements.  We seek clarification if a request appears overbroad, unauthorized or omits information. If a request is beyond the scope of the law, asks for information outside of T-Mobile's control, is defective on its face or otherwise has a legal deficiency, it is rejected.

The following table provides examples of the most common types of information requested by the government and type of legal process required:

---

[1] T-Mobile and MetroPCs merged in 2013. The report covers both companies.
[2] "Government" refers primarily to "law enforcement agencies." The two terms are used interchangeably in this report.

1

**T-MOBILE_00024**    353

| Information Type Requested | Minimum Required Legal Process |
|---|---|
| **Subscriber Information** (e.g., information a customer provides when signing  up for service, such as name and address, and call detail information) | Subpoena |
| **Historical Call Detail Information** (e.g., information about calls made in the past, such as start time, duration, numbers called) | Subpoena |
| **Emergency Information** (e.g., location information, call detail, content,  in emergencies) | Certification from Law Enforcement/Public Safety Answering Points |
| **Real Time Call Detail Information** (e.g., information on incoming and outgoing phone numbers for a specific phone/mobile device) | Pen Register Court Order |
| **Historical Cell Site Location Information** (e.g., location of towers that a phone/mobile device used in the past over a specific period of time) | Court Order or Warrant* |
| **Real Time Audio** (e.g., phone conversation) | Wiretap Court Order |
| **Real Time Content** (e.g., text messages) | Wiretap Court Order |
| **Real Time Location** (e.g., approximate location of a phone/mobile device) | Warrant |
| **Historical Cell Tower Dump Information** (e.g., list of phone numbers which used a specific tower during a specific period of time) | Warrant |
| **Stored Content** (e.g., saved voicemail message) | Warrant |

\*   Depends on the applicable jurisdiction.

In some cases more than one form of legal process may be acceptable. For example, subscriber information may be obtained through a subpoena, but may also be obtained through a court order or even a warrant.

**Subpoenas**

Law enforcement agencies and most administrative agencies issue subpoenas to obtain information relevant to the investigation or prosecution of a crime. Subpoenas may also be issued by attorneys in criminal defense and civil litigation cases.  The subpoenas we receive from law enforcement generally request the type of information that appears on a customer's phone bill. We only release the six types of subscriber information allowed by 18 USC § 2703:

2

1) customer name; 2) address; 3) length of service; 4) subscriber account identifiers (such as telephone number or device information); 5) network transaction records (such as call details) and 6) payment information.  We do not release content of a communication or information other than that listed above in response to a government subpoena.

**Court Orders**

There are various types of court orders that compel disclosure of customer information. The type of information sought determines the specific legal standard of proof that the government must meet.   Most of the court orders we receive are for subscriber information, which can also be obtained through a subpoena. We also receive court orders for wiretaps, under which we are required to provide the content of communications in real time or in other words, as the communication is taking place. Additionally, we receive orders for pen registers/trap and trace, under which we provide real time information on incoming and outgoing phone numbers. A judge must review law enforcement's application for any real time monitoring and sign a court order indicating that the law enforcement officer has made the requisite showing under the law.

**Warrants**

Warrants or search warrants require a showing of probable cause to believe a crime has been or is being committed and evidence of it will be obtained from the account. Warrants may sometimes request the same types of information that could be obtained through a court order or even a subpoena, but most of the warrants we receive request real-time location information or content, such as text messages and stored voicemail messages.

**Emergency Requests**

Law enforcement may request information that is needed to respond to emergencies such as kidnappings, hostage situations and suicide threats. We are authorized by law to provide the requested information upon law enforcement's certification. The certification must be sufficient for us to form a good faith belief that there is an emergency involving danger of death or serious physical injury to any person that requires disclosure without delay of transactional records and communications relating to the emergency.

We may also receive emergency requests for information from Public Safety Answering Points (PSAPs) that receive 9-1-1 calls from the public.

**National Security Letters**

The Director and certain other designated officials of the Federal Bureau of Investigation ("FBI") may issue a National Security Letter ("NSL") requesting information in national security matters. The FBI must certify in writing to the recipient of the letter that the information sought is relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities. An NSL may request only limited information:  name, address, length of service and local and long distance toll billing records. An NSL cannot be used to obtain anything else from T-Mobile.

3

T-MOBILE_00026

**Foreign Intelligence Surveillance Act ("FISA") Orders**
The FISA Court ("FISC") is a special court that reviews requests for surveillance in national security cases.  Its orders require providers to facilitate electronic surveillance of an individual's activities via such methods as wiretaps and pen registers.

**Requests from Foreign Governments**
We do not receive many requests from foreign governments but when we do, we notify the Department of Justice, the Federal Bureau of Investigation and the Department of Homeland Security of such request as required by the terms of an agreement entered into in 2001, as amended, between these agencies, T-Mobile and Deutsche Telekom, as a condition to Deutsche Telekom acquiring ownership of T-Mobile.  Only upon express written consent of the Department of Justice or a US court of competent jurisdiction, and if the request otherwise meets the requirements of US law and the law of the jurisdiction making the request, may T-Mobile respond to the foreign request.

## Summary of Types and Number of Requests

**2014**
In 2014, T-Mobile received approximately 351,940 requests for customer information and sometimes T-Mobile information (for example, information about our network).   This number represents an approximate 10.8% increase compared to 2013. Approximately 3.6% of the requests were from third parties in connection with civil matters (insurance claims, divorce and personal injury cases, for example). The remainder was from federal, state or local law enforcement.

The table below provides the types of requests we receive and the approximate number of such requests:

| Type of Request | Number of Requests |
|---|---|
| Subpoenas (criminal and civil) | 177,549 |
| Emergency Requests/911 calls | 97,440 |
| Court Orders (excluding  orders for wiretaps, pen register/trap and trace) | 34,913 |
| Warrants/Search Warrants | 17,316 |
| Other* | 8,760 |
| Pen Register/Trap and Trace Orders | 9,916 |
| Wiretap Orders | 3,087 |
| Customer Requests for their own information | 849 |
| National Security Requests (NSLs and Foreign Intelligence Surveillance Orders Combined)** | 2000 - 2250 |
| Requests from Foreign Governments † | 8 |

4

&ast; This may include requests to preserve information pursuant to 18 USC § 2704, requests for T-Mobile information  (not customer information), requests pursuant to The Fair and Accurate Credit Transactions Act of 2003,  and any other request that does not match a category above.

&ast;&ast; Providers are authorized by statute to report the national security requests in one of three ways.  T-Mobile has chosen to report a combined total of national security requests for this reporting period, and may be able to report more granular information in the future. To the extent we are permitted to report this information in the aggregate, it must be in bands of 250 increments.

† Germany (1), Canada (4), Australia (1), Hong Kong (1) and Columbia (1)

## 2013

In 2013, T-Mobile received approximately 317,000 requests for customer information and sometimes T-Mobile information (for example, network information).    This number represents an approximate 7% increase compared to 2012. Approximately 3% of the requests were from third parties in connection with civil matters (insurance claims, divorce and personal injury cases, for example). The remainder was from federal, state or local law enforcement.

The table below provides the types of requests we receive and the approximate number of such requests:

| Type of Request | Number of Requests |
|---|---|
| Subpoenas (criminal and civil) | 153,177 |
| Emergency Requests/911 calls | 93,032 |
| Court Orders (excluding  orders for wiretaps, pen register/trap and trace) | 33,106 |
| Warrants/Search Warrants | 11,879 |
| Other* | 11,105 |
| Pen Register/Trap and Trace Orders | 8,595 |
| Wiretap Orders | 2,308 |
| Customer Requests for their own information | 1,724 |
| National Security Requests (NSLs and Foreign Intelligence Surveillance Orders combined)** | 2000 - 2250 |
| Requests from Foreign Governments† | 5 |

&ast; This may include requests to preserve information pursuant to 18 USC § 2704, requests for T-Mobile information  (not customer information), requests pursuant to The Fair and Accurate Credit Transactions Act of 2003,  and any other request that does not match a category above.

&ast;&ast; Providers are authorized by statute to report the national security requests in one of three ways.  T-Mobile has chosen to report a combined total of national security requests for this reporting period, and may be able to report more granular information in the future. To the extent we are permitted to report this information in the aggregate, it must be in bands of 250 increments.

† Brazil (1), Canada (2) and Australia (2)

The average law enforcement request in both 2013 and 2014 (not including national security requests) asks for approximately fifty-five days of records for two phone numbers.

## Cost Recovery and Charges

5

T-MOBILE_00028

Federal law provides that carriers are entitled to be compensated for the reasonable costs of providing technical assistance for lawful surveillance activities and for costs incurred in providing stored electronic communications or backup copies to the government. Generally, T-Mobile does not charge law enforcement agencies for the costs incurred in responding to emergency requests. 18 USC § 2706 precludes us from cost recovery for producing toll records and subscriber information except in cases of undue burden.

**More Information**

For more information regarding how we collect, use, disclose and store customer information please see our privacy policies at: http://www.t-mobile.com/company/website/privacypolicy.aspx

6

T-MOBILE_00029

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ALBERT DEWAYNE BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:15-CV-03093-HLT-GEB |
| | ) | (LEAD CASE) |
| v. | ) | |
| | ) | |
| STEVEN L. OPAT, et *al.,* | ) | |
| | ) | |
| Defendants. | ) | |

---

| | | |
|---|---|---|
| ANTHONY THOMPSON #15318-031, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:15-CV-03117-HLT-GEB |
| | ) | (CONSOLIDATED CASE) |
| v. | ) | |
| | ) | |
| GLEN VIRDEN, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

### DECLARATION OF ROBERT WILDEN IN SUPPORT OF SPRINT/NEXTEL WIRELESS TELEPHONE COMPANY, VIRGIN MOBILE/SPRINT PCS'S MOTION FOR SUMMARY JUDGMENT

I, Robert Wilden, being duly sworn, hereby depose and state under penalty of perjury as follows:

1.      I am over the age of twenty-one (21), of sound mind, and competent to testify. The facts stated herein are within my personal knowledge, true and correct, and if called to testify as a witness, I would and could competently testify to the truth of each statement herein.

2.      I am currently employed with T-Mobile US, Inc., as a Senior Specialist Electronic Surveillance. Prior to the merger between Sprint and T-Mobile, I worked for Sprint as an Electronic Surveillance Supervisor, a role I held since 2017.

3.      I was employed at Sprint in March 2013, and my department at Sprint was responsible for responding to law enforcement requests for customer information, including requests for electronic surveillance.   The Sprint team worked 24/7/365 to respond to all government requests for subscriber data and information.

4.      In response to a wiretap order dated March 5, 2013, and in accordance with the instructions from law enforcement, Sprint provisioned a wiretap for the target telephone number, 785-375-6704.  Sprint does not monitor, store or retain the subscriber data and information delivered to the government via lawful intercept.

5.      Attached Exhibit 1 is a copy of the CALEA coversheet received from Law Enforcement on or about March 7, 2013 at 11:22am, instructing Sprint to provision the wiretap for the target telephone contained in the wiretap order. This document was maintained by Sprint in the ordinary course of business.

6.      The CALEA coversheet from law enforcement instructed Sprint to "upgrade to T3."

7.      An account note entered by an account technician at 11:57am on March 7, 2013 states that Agent Tim Botts "called to check the Wire upgrade. I fixed the line items for an upgrade."

74797948.3

8.      The note history for this wiretap further indicates that several changes were made to the wiretap at approximately 11:57Am after Agent Botts' call.  One such change was the provision of text messages. This is shown on page SPRINT-BANKS-00000080 of attached Exhibit 2. This document was maintained by Sprint in the ordinary course of business.

9.      In 2013 alone, Sprint received thousands of requests for customer information. A Sprint employee responsible for handling these requests might handle up to 10 or more requests per day. The requests took such forms as subpoenas, court orders, warrants, wiretap orders, and national security requests.

10.      In my experience working for both Sprint and T-Mobile, virtually every wiretap order requires interception of both voice and text messages.

11.      I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing statements are true and accurate to the best of my knowledge and belief.

Dated this 17 day of September, 2020

                                    ___/s/ Robert Wilden___
                                    Robert Wilden

74797948.3

# EXHIBIT E1

UPGRADE TO T3

# Sprint CALEA Coversheet
## FAX TO: 816-600-3100

PLEASE INCLUDE AGENCY COVER SHEET (Failure may result in delay of implementation)

Target's Telephone Number: **785-375-6704**                          CALEA Case ID

Law Enforcement Agency: **Kansas Bureau of Investigation**

LEA Tech. Agent Name: **Tim Botts**   Contact phone #(s): **620-230-0996**

Alternate Contact: **Glen Virden**

Contact phone #(s): **785-564-0474**

Contact fax #: **785-296-8291**

Billing name & address (if purchase order is required, please submit with Court Order):

**Kansas Bureau of Investigation**
**1620 SW Tyler, Topeka, KS  66612**

(Pen) Surveillance Start date & time: _____   (Pen) Surveillance termination date & time: _____

                                              **10:00AM**
(T3) Surveillance Start date & time: **03-07-2013**   (T3) Surveillance Termination date & time:
**04-05-2013  12:00AM**

## iDEN services

_____ Interconnect and Direct Connect   _____ Interconnect only   _____ Direct Connect only

_____ 2nd set if id's/pw   _____ Text Message Pen Data   _____ Text Message Content

## CDMA services

✓ Voice   _____ Text Message Content   _____ Q-Chat   _____ Airave   _____ Vision

## List market areas for implementation (ie: New York, Miami, Atlanta)

_____ Do NOT implement if suspended
_____ Do NOT implement if _____ days of inactivity

## Audio Delivery:

Audio Call Content Delivery:   POTS (Combined) or  Separated   ISDN

Dialed Number(s): **785-296-6179 / 785-296-6312**

1

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

SPRINT-BANKS-00000075

Rollover?  Y  N
Hunt Group?   Y  N  _____ (please indicate # of lines to be used for this surveillance)

## Call Identifying Information Delivery:

CDS (CALEA Delivery System)   or   PORT ALIAS (Nextel)

1 Public Routable IP Address: _____  Port  13131   or

2 NEXTEL Port Alias_____

3 Packet Data IP Address _____  Port _____

*Please Deliver to San Bernadino County Sheriff's Office*

Collection Box  IP Address   170.164.210.164

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

# EXHIBIT E2



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY                    SPRINT-BANKS-00000078



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY



Title **CDMA T3 UPGRADE:**    Priority Low    Group ES

Home Switch: KC-INDEPENDENCE 1
Market Areas Implemented:Kansas City,
Cell Site Authorized in Legal Demand? Yes
Primary Ring Down Number: 7852966179
Rollover? Yes
Rollover Ring Down Number: 7852966312

Title **CDMA T3 UPGRADE:**    Priority Low    Group ES

Are you Extending the Surveillance Dates? No
Start Date and Time: 3/7/2013 12:45 CT
"Original Case Number" Field Populated? Yes
Location Field in NORTEL is: Checked
Location Field in LUCENT SPA is: Checked
Added Target to CDDU:AFFL|CENT|
Added and Associated CCRs? Yes

Title **CDMA T3 UPGRADE:**    Priority Low    Group ES

Added CCCs to CDDU: Yes
CCCs Changed to Combined? Yes
Text Provisioned? Yes
Does RDN Match Target Number? No
Did You Attach The Following?
Ensemble Screen Capture? Yes
CDS Capture? Yes

Title **CDMA T3 UPGRADE:**    Priority Low    Group ES

CDDU Capture (all screens)? Yes
NORTEL Provisioning Tool or MES (all screens): Yes
BLUEZONE Screen Capture of RingDown? N/A
STARGATE ( screen capture of 'active' and Target Imp. Path)? Yes
Populated Correct Billing Address? Yes
Implementation Letter Sent? Yes
Notified: Glen Virden

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY    SPRINT-BANKS-00000080



Title CDMA T3 UPGRADE:                                                           Priority Low ▾   Group ES ▾

Implementation Letter Sent? Yes
Notified: Glen Virden
Via: L-Site
Enter Fax Number or E-Mail Address: L-Site
**For Each 'No' Selected, Please Document Why.**
NA
Incomplete Implementation?

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

SPRINT-BANKS-00000081



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY



Title: CDMA DOWNGRADE TO PEN REGISTER          Priority: Low     Group: ES

Removed Combined and CCC From: AFFL CENT
Text Delivery Removed from CDDUs? Yes
Call Content (Audio) Removed from CDMA STARGATE? Yes
LI-IMS Downgraded to PEN? N/A
XMS TOOL Downgraded to PEN? Yes

Billing Line Added to Case in STS? Yes



Title: CDMA DOWNGRADE TO PEN REGISTER          Priority: Low     Group: ES

Call Content (Audio) Removed from CDMA STARGATE? Yes
LI-IMS Downgraded to PEN? N/A
XMS TOOL Downgraded to PEN? Yes

Billing Line Added to Case in STS? Yes
"Surveillance Notes: 7853756704KB!
7856601691"

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY                                    SPRINT-BANKS-00000083



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY



Title **CDMA DOWNGRADE TO PEN REGISTER**   Priority Low   Group ES

Removed Combined and CCC From: AFFL CENT
Text Delivery Removed from CDDUs? Yes
Call Content(Audio) Removed from CDMA STARGATE? Yes
LI-IMS Downgraded to PEN? N/A
XMS TOOL Downgraded to PEN? Yes

Billing Line Added to Case in STS? Yes



Title **CDMA DOWNGRADE TO PEN REGISTER**   Priority Low   Group ES

Call Content(Audio) Removed from CDMA STARGATE? Yes
LI-IMS Downgraded to PEN? N/A
XMS TOOL Downgraded to PEN? Yes

Billing Line Added to Case in STS? Yes
"Surveillance Notes: 7853756704KB!
7856601691"

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

# EXHIBIT F

378

Page: 378     Date Filed: 07/10/2023     Document: 01110884675     Appellate Case: 23-3102

# IN THE COURT OF GEARY COUNTY
## STATE OF KANSAS

IN THE MATTER OF THE APPLICATION   }
   }
FOR AN ORDER AUTHORIZING THE   }   No. _____
   }
INTERCEPTION OF WIRE COMMUNICATIONS}

### AFFIDAVIT IN SUPPORT OF APPLICATION

I, Glen F. Virden, Senior Special Agent, Kansas Bureau of Investigation, being of lawful age and duly sworn upon my oath depose and state:

1.   I am an "Investigative" law enforcement officer duly deputized with statutory authority for the State of Kansas, and as further recognized and defined by K.S.A. 22-2514(5).

2.   This affidavit is submitted in support of an application for an order authorizing the interception of the wire communications of **Otis Ponds, B/M Date of Birth** ████████, and others listed below, over telephone number **(316) 347-0088**, a personal cellular telephone currently in service with Verizon Wireless with Electronic Serial Number(ESN) A000003962BB8A. Verizon Wireless records indicate the phone number to be subscribed to **OAS PHONEINTHEBOX** which the Affiant knows is not the person using the cellular telephone as described in detail within this document. The Affiant requests authority to intercept the wire communications of individuals communicating on telephone number **(316) 347-0088**.

3.   Affiant believes the following individuals will be intercepted over telephone number **(316) 347-0088**; **Otis Ponds**, Anthony Carlyle Thompson, Albert Dewayne Banks, and others yet unknown.

4.   Affiant requests authority to intercept the conversations and the background conversations intercepted in the vicinities of the aforementioned telephone while the telephone is off the hook or otherwise in use. Affiant requests this authority in

1

**EXHIBIT 8**

D009137

Page: 379          Date Filed: 07/10/2023          Document: 01110884675          Appellate Case: 23-3102

order to obtain evidence concerning the above persons' involvement in the following offenses: Possession of Cocaine in violation of Kansas Statutes Annotated (K.S.A.) 21-5706(a); Distribution of Cocaine in violation of K.S.A. 21-5705(a)(1); Conspiracy to commit these offenses in violation of K.S.A. 21-5302; and the Use of a Communications Facility to facilitate the commission of the above offenses in violation of K.S.A. 21-5707(a)(1). All offenses are in violation of Kansas Law, which have been and are being committed by the persons identified herein and others yet unknown.

     5.     The Affiant has been a law enforcement officer since 2001 with the Kansas Bureau of Investigation (KBI). The Affiant is currently a Senior Special Agent with the Topeka Region of the Special Operations Division for the KBI. The Affiant is a graduate of Cowley County Community College with an associate of applied science degree in Criminal Justice and Southwestern College with a bachelor's degree in Criminal Justice. The Affiant, while so employed in law enforcement, has received training in narcotics investigations to include, but not limited to: Kansas Law Enforcement Training Center's Basic Training Academy, the Kansas Bureau of Investigation's Advanced Investigations Academy, the Kansas Bureau of Investigation's Clandestine Lab Certification School, Kansas Top Gun Narcotics training, and the U.S. Drug Enforcement Administration's Basic Narcotics Investigators School. Affiant has investigated numerous narcotics cases. These investigations have included, but are not limited to undercover purchases of narcotics, controlled purchases of narcotics using cooperating individuals and search warrants. The Affiant has arrested numerous individuals for violations of both state and federal violations of controlled substances statutes. As a result, Affiant has interrogated many defendants, informants and others who were either sellers, distributors, purchasers, manufacturers or users of controlled substances. The Affiant is familiar with how controlled substances are obtained, diluted, packaged, distributed, sold, used, and manufactured. Affiant is also familiar with the records, books, and documents needed to carry on such illicit activity.

     (a)     Based on the above experience, Affiant believes there is probable cause to believe the subjects of this investigation, both known and unknown, have committed, are committing and will continue to commit offenses involving possession, distribution and conspiracy to distribute cocaine. Such violations involve the use of

D009138

Appellate Case: 23-3102   Document: 010110884675   Date Filed: 07/10/2023   Page: 380

communication facilities in order to facilitate the commission of the above offenses, each being in violation of Kansas Uniformed Controlled Substances Act.

(b)     That particular wire communications of the subjects of this investigation concerning the above offenses will be obtained through the interception of such communications to and from telephone number **(316) 347-0088**.  In particular, there is probable cause to believe that the communications to be intercepted will concern dates, times, and places for commission of the aforementioned offenses when the above named interceptee communicates with the listed interceptees and other unknown suppliers, co-conspirators, aiders and abettors.  There is further probable cause to believe that the communications to be intercepted will disclose the location of assets owned or controlled by the persons involved, and the manner, extent and identity of persons who direct and/or participate in the illegal activities set forth herein.  These communications are expected to constitute admissible evidence of the above-described offenses.

(c)     That telephone number **(316) 347-0088**, has been, is being, and will continue to be used in connection with the commission of the above offenses. The interception of these communications is expected to concern verbal and messaging discussions of the continuing conduct, financing, managing, supervising, directing, or ownership of all or part of an illegal narcotics enterprise, including orders and instructions to subordinates, the receipt of information pertaining to the obtaining and distribution of controlled substances, and other conversations relating to the administration, control, and management of the aforementioned illegal drug activity.

6.     Normal investigative procedures have been tried and have failed to achieve the goals of this investigation, or reasonably appear unlikely to succeed if tried, or are too dangerous to employ, as more fully explained below.

## INVESTIGATIVE INVOLVEMENT OF STATE AND LOCAL LAW ENFORCEMENT

7.     This investigation is a result of a joint effort by the Affiant, other Agents of the Kansas Bureau of Investigation (KBI), Officers of the Junction City Police Department (JCPD), Officers of the Geary County Sheriff's Office (GESO) and Officers

D009139

Appellate Case: 23-3102     Document: 01011088467S     Date Filed: 07/10/2023     Page: 381

of the Riley County Police Department (RCPD). The investigation covers a period of time from June 2012 to the present. The statements contained in this affidavit are based in part on information provided by Agents/Officers of the above-listed law enforcement agencies. Because this affidavit is being submitted for the purpose of securing authorization for the interception of wire communications, Affiant has not included each and every fact known to the Affiant concerning this investigation. Affiant has set forth only the facts that Affiant believes are necessary to establish the necessary foundation for an order authorizing the interception of wire communications. If a court order is granted authorizing the interception of wire communications in this case, only those persons and agencies authorized by law to make such interceptions will be allowed to do so.

8.      In April, 2012, Detective Nate Boeckman of the RCPD contacted Detective Alvin Babcock of the JCPD Drug Operation Group (DOG) with information that Anthony Thompson (AKA "Ant") and Albert Banks (AKA "AB") were distributing cocaine within the Junction City, Geary County, KS area and the Manhattan, Riley County, KS area. RCPD received this information from a Source of Information (SOI) to be referred to as "SOI #1" from this point forward. SOI #1 appeared to have knowledge of some of the criminal elements related to Anthony Thompson and Albert Banks, but was not allowed to have intimate knowledge of the day to day operations or the source of supply of the cocaine.

9.      SOI #1 did give information saying Anthony Thompson and Albert Banks were receiving powder cocaine from an unknown supplier/s then transporting (or having it transported) back to the Junction City area where they would convert the powder cocaine to crack cocaine themselves (evidence of this conversion will be explained in this affidavit). SOI #1 did not have direct knowledge of when the powder cocaine purchases were occurring, who was driving to purchase the powder cocaine and even if one of the aforementioned persons were actually obtaining the cocaine or having another person unknown to this investigation acquire and transport the cocaine to Anthony Thompson and Albert Banks. SOI #1 has continued to give some credible information to Agents/Officers but beyond that, SOI #1 has not been beneficial to the investigation. As stated above, SOI #1 has limited knowledge related to the full scope of the cocaine distribution network, other co-conspirators and the source of supply for the cocaine.

D009140

Appellate Case: 23-3102     Document: 01011084675     Date Filed: 07/10/2023     Page: 382

10.     The Affiant was contacted by Lieutenant Mike Life of the JCPD and asked to assist with the investigation.    The Affiant met with Agents/Officers of the aforementioned agencies to in an attempt to garner information related to persons who might be involved in the distribution of cocaine.    The Affiant then contacted an individual who had been a Cooperating individual (CI) for the KBI since 1985 (to be referred to as CI #1 from this point forward).    The Affiant had a meeting with CI #1 and asked if CI #1 would be willing to assist in the investigation to which CI #1 agreed. Since CI #1's association with the KBI beginning in 1985, CI #1 has successfully been an integral part of a number of State and Federal investigations which culminated with the prosecution and convictions of numerous persons related to the distribution of drugs.   CI #1 has had a number of Agents within the KBI as his/her handler.   The Affiant has had contact with a number of these Agents who spoke highly of CI #1 and his/her abilities to assist in investigations culminating in successful prosecution.

11.     On 05-30-2012, Detective Alvin Babcock of the JCPD received phone call from Detective Nate Boeckman of the RCPD informing him that Detective Nate Boeckman had received information alleging Albert Banks had left a package of cocaine wrapped in either brown tape or a brown paper bag in an alley between 13th and 14th Streets and Franklin and Monroe Streets in Junction City, Geary County, KS the previous evening.   Detective Nate Boeckman advised Detective Alvin Babcock that RCPD was conducting surveillance on a residence in Manhattan, Riley County, KS where it was believed Albert Banks was residing at the time.   Detective Nate Boeckman advised a white in color Chrysler 300 having black rims had arrived at the residence. The driver of the vehicle was identified by RCPD Detectives as Chris Howard.  A short time later, Chris Howard and Albert Banks were seen leaving the residence in the aforementioned vehicle.

12.     Also within the investigation, a source of supply has been located in the Wichita, Sedgwick County, KS area.  This source of supply is using telephone number (316) 347-0088. The subscriber is OAS PHONEINTHEBOX but is believed to be Otis Ponds who resides in the Wichita, Sedgwick County, Kansas Area.

D009141

Case 5:13-cr-40060-DDC    Document 379-22    Filed 07/01/14    Page 6 of 27

383

Appellate Case: 23-3102    Document: 01011088675    Date Filed: 07/10/2023    Page: 383

## WIRE INTERCEPT ON ANTHONY THOMPSON'S PHONE

13.     On 03/07/2013 a lawful wire intercept was initiated on telephone number (785) 226-1783 Jason Roberts but is being used by Anthony Thompson.   Anthony Thompson is distributing crack cocaine in the Junction City, Geary County, Kansas area. Numerous phone conversations have been intercepted which detail the activities of Anthony Thompson and other co-conspirators distributing crack cocaine.

14.     On 03/08/2013 at approximately 3:38 p.m. a phone conversation was intercepted between Anthony Thompson and the subject believed to Otis Ponds.   During this conversation, it was believed that Anthony Thompson asks Otis Ponds if he's "bounced out already." After Otis Ponds advised "yeah", Anthony Thompson says "well shit". Anthony Thompson asks Otis Ponds if he could "grab a little easy" for him. Otis Ponds agrees and advising "yeah, I got you." The call was ended after this.

15.     On 3/8/2013 at approximately 3:39 p.m. a short phone conversation was intercepted between Anthony Thompson and Otis Ponds.   During that conversation, Anthony Thompson asks Otis Ponds if an unknown person was "trippin' on a, on that good we had a; he was tripping on that was he?" Otis Ponds advised "I had already put it back." Anthony Thompson says "ah, you did?"   Otis Ponds again tells Anthony Thompson "I put that shit back." A short time later Otis Ponds advises that someone unknown "didn't have the money" and the unknown "didn't even know it was gone." Near the end of the conversation, Otis Ponds tells Anthony Thompson "yeah, I'll do that for you, as soon as I get down here."   Anthony Thompson responded to Ponds, "ok, that's what's up homey, love." The two then hung up.

16.     On 3/8/2013 at approximately 3:42 p.m. a phone conversation was intercepted; in which, Otis Ponds calls Anthony Thompson.   Anthony Thompson asks Otis Ponds "what was up, homey".   Otis Ponds asks Anthony Thompson "hey, if you see that nigga Martye, tell that nigga to call me asap." Anthony Thompson tells Otis Ponds "okay, I just, I seen him but okay, I got ya." Otis Ponds advises "yeah, if he got that change tell him that uh, (inaudible)" Anthony Thompson says "ok".   Otis Ponds

D009142

Appellate Case: 23-3102      Document: 01110884675      Date Filed: 07/10/2023      Page: 384

responded with "it's 780." Anthony Thompson tells Otis Ponds "alright". Otis Ponds also advises "alright", and the two hung up.

17.    On 3/8/2013 at approximately 7:52 p.m. a phone conversation was intercepted between Otis Ponds and Anthony Thompson.   Anthony Thompson answers the phone.   Otis Ponds asks Anthony Thompson for a favor.   Anthony Thompson agrees and Otis Ponds asks Anthony Thompson if he has a "hundred flip". Anthony Thompson initially says "shit I don't have, but I got yeah, I got it. What you want me to do?" Otis Ponds tells Anthony Thompson to "go take it to Renee, she gonna have to give you a hundred so I can keep it moving over there." Anthony Thompson agrees.   Further in the conversation, Otis Ponds tells Anthony Thompson that "I was supposed to go to the place, but shit nigga's went to taking so long." Anthony Thompson later asks if Otis Ponds had a "little change." Anthony Thompson tells Otis Ponds that "AB says you was going to wear (inaudible) too." Otis Ponds advises that he(Otis Ponds) went to his "little stache".   Otis Ponds and Anthony Thompson agree, and Otis Ponds advises Otis Ponds will see them "in about forty-five." Anthony Thompson agrees and tells Otis Ponds "yeah, I'll take that over there, now homey". Otis Ponds wants Anthony Thompson and AB to meet him at "the house." The call was ended shortly after.

18.    On 3/9/2013 at approximately 3:49 p.m. a phone conversation was intercepted between Otis Ponds and Anthony Thompson.    Initially, during the conversation the audio sounds as if Anthony Thompson is having a conversation with someone unknown.   Otis Ponds then asks "what's happenin' playa".    Anthony Thompson then acknowledges that Otis Ponds had answered the telephone and responded to Ponds "what's up my nigga?" During a portion of the conversation, Anthony Thompson tells Otis Ponds "we got some in, we in the back, we at the back door." Otis Ponds says "oh, I thought you was trippin' or something." Anthony Thompson wants Otis Ponds to "open the door man" and a few seconds later the call is ended.

19.    On 3/14/2013 at approximately 2:51 a.m. a phone conversation was intercepted between Otis Ponds and Anthony Thompson.    During a portion of the conversation, Otis Ponds tells Anthony Thompson "you know my motto, sell my half." Anthony Thompson and Otis Ponds then start laughing.   Anthony Thompson asks Otis

D009143

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 385

Ponds if he(Otis Ponds) wants to talk with Martye; in which, Otis Ponds agrees. Otis Ponds and Martye then have a conversation, and the call is ended shortly after.

20.     On 3/15/2013 at approximately 1:54 p.m. a phone conversation was intercepted from Anthony Thompson to Otis Ponds.   During the conversation, Otis Ponds advised that Otis Ponds was on his way to Kansas City and explains that Otis Ponds had to drop a "sister" off and grab "lil mamma" and come back.   Anthony Thompson asks Otis Ponds "what you want me to do with smoke?"  Otis Ponds then asks Anthony Thompson "ah shit, oh your sister says you hadn't hollered at him."  Otis Ponds tells Anthony Thompson "check this out, this is what I need you to do though, ah shit, ah what he trying to, what he need to, to get together?"   Anthony Thompson responded to Ponds with "I don't know, I really don't know."   Otis Ponds responded to Anthony Thompson advising that "ok, man, he need to take a break.   That's what he needs to do."  Anthony Thompson asks "what?"  Otis Ponds said "you need to know he needs to just take a break for a minute."  OTIS PONDS is briefly inaudible, but then advises "you know he's so crazy his money's going to get fucked."  OTIS PONDS says "ah, but um, shit ah, don't even trip shit if he needs something let me know, and then he can call, call me, and I'll tell you where it's at."  ANTHONY THOMPSON advises "ok."  The two then end the call within seconds.

21.     On 3/16/2013 at approximately 12:31 p.m. a phone conversation was intercepted; in which, Anthony Thompson calls Otis Ponds.   During that phone call, Anthony Thompson asks Otis Ponds "what you ah, you said you need me to (inaudible) with change."  Otis Ponds advises "I was going to have you, go to the uh, if you got it on you, go uh to the room, ah grab that, it's a 208, I need to get that room, uh, for the uh, for the night. Til tomorrow.   Cause I got to, I'm about to take, bring my bitch down there she gotta work tomorrow, I mean tonight."   Anthony Thompson asks "oh, you coming down tonight?"   Otis Ponds responded "yeah I'm coming down right here in a hot second. My bitch gotta work tonight at seven at Mustangs."  Anthony Thompson asks "what you ah, everything cool or what?"  Otis Ponds tells Anthony Thompson "yeah, that's what I'm ah, calling a nigga for now, that's why I hadn't left yet."   Anthony Thompson asks Otis Ponds "you want me to send you a lil change?"  Otis Ponds asks Anthony Thompson "ah shit, no, what was you talking about homey?"   Anthony

D009144

Page: 386     Date Filed: 07/10/2023     Document: 01110884675     Appellate Case: 23-3102

Thompson says "I was probably gonna grab one or something." Otis Ponds says "grab one, shit, then I'll, bitch, bitch the crazy thing about it all is that nigga I still got, I still got damn near a the uh, da whole down there." Anthony Thompson asks Otis Ponds "for real, ready?" Otis Ponds says "yeah, at the room, ready. That's why I'm trying to hurry up and get down there, but I had moved it. What did you, you need some right now?" Anthony Thompson says "oh shit, not, not man, I don't really need it like right, right then. I was just, I was really going come in hot, I didn't know you was coming down here today. Shit." Otis Ponds responded "shit, what you was gonna come down this way"; in which, Anthony Thompson advises "yeah." Otis Ponds asks Anthony Thompson "what you gotta bring the kids or something?" Anthony Thompson tells Otis Ponds "no, uh uh." Anthony Thompson then explains that his kids are "down here" advising to Otis Ponds that it's Spring Break. Otis Ponds then confirms "ok, uh, what you need, oh ok, you need one. I'm calling a nigga now, nigga everything, uh nigga uh, he gotta uh, like a little janitorial service." Anthony Thompson interrupts Otis Ponds and says "ah, shit it don't matter, (inaudible) whatever, shit it don't matter." Otis Ponds tells Anthony Thompson "ok, I got ya. I'll just get with you, uh, I'll get with you when I get back." Anthony Thompson says "ah, ok, that'll work." Otis Ponds tells Anthony Thompson the "room is like eighty three dollars or something at the Quality Inn it's already 208, just tell them you're paying for me another day, Otis Otis Ponds." Anthony Thompson confirms with "Quality 208, ok." The two begin talking about Martye. Otis Ponds tells Anthony Thompson that he(Otis Ponds) would call as soon as "I'm(meaning Otis Ponds) there." After a short conversation, the two then hang up.

22.   On 3/16/2013 at approximately 2:29 p.m. a phone conversation was intercepted between Otis Ponds and Anthony Thompson. Anthony Thompson tells Otis Ponds that Otis Ponds needs to go pick the keys up. Anthony Thompson asks if anything was in the room. Otis Ponds tells Anthony Thompson there was some clothes and "shit" in the room but doesn't sound concerned. Otis Ponds then says "I'm getting you together right now, we just going do the uh, we just gonna go in half on one so." Anthony Thompson tells Otis Ponds "ok, that will work." Otis Ponds responded "alright, bet." Anthony Thompson and Otis Ponds then end the call.

D009145

Appellate Case: 23-3102     Document: 01011088467S     Date Filed: 07/10/2023     Page: 387

23.    On 3/16/2013 at approximately 2:29 p.m. text messages were intercepted between Otis Ponds and Anthony Thompson.   The initial text from Otis Ponds to Anthony Thompson read "We gud bro."   On the same date at approximately 3:24 p.m. Anthony Thompson responded with a text message with "Bet."   On the same date at approximately 3:47 p.m. Otis Ponds responded with a text message to Anthony Thompson reading "Were u at fam".   After this, two telephone calls were intercepted from Otis Ponds to Anthony Thompson; however, Anthony Thompson did not answer the telephone.   On the same date at approximately 4:15 p.m. Otis Ponds again sends a text to Anthony Thompson reading "Were u at fam cal me bac asap".

24.    On 3/16/2013 at approximately 4:27 p.m. a phone conversation was intercepted between Anthony Thompson and Otis Ponds.     During that phone conversation, Otis Ponds tells Anthony Thompson "go up there to the front desk get the key right." Anthony Thompson tells Otis Ponds "uh huh, I'm in the hat but I can go do it though."   Otis Ponds says "yeah, when you go in the room, look in that coffee thing." Anthony Thompson responded to Ponds with "ok."   Otis Ponds says "that's the whole thing, but shit just take your part out of it."   Anthony Thompson again responded to Ponds with "ok."   Otis Ponds then tells Anthony Thompson that Otis Ponds has to go to Lawrence but tells Anthony Thompson when he does that, to pull up by the trash can and look on the side of that "storage thing."   Otis Ponds tells Anthony Thompson that Anthony Thompson will know what he(Otis Ponds) is talking about.  Otis Ponds wants Anthony Thompson to "put that up for me if you can." Anthony Thompson agrees with "ok."   The call ended shortly after.   (The item Otis Ponds discusses with Anthony Thompson near the storage thing was a paper bag containing a bag of Cocaine seized by the Affiant in the action described below.)

25.    On 03/16/2013, the Affiant was contacted by monitors who were monitoring telephone number (785)226-1783 being used by Anthony Anthony Thompson.  Monitors described the above phone call between Otis Ponds and Anthony Thompson; including Otis Ponds conversation with Anthony Thompson about the item by the "storage thing."  The Affiant, with other surveillance officers monitoring, walked to the shed located on the south side of the Quality Inn.  The Affiant located a brown paper bag between the curb and the shed; located in the parking lot.    The Affiant

D009146

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 388

secured the brown paper bag with contents and transported the item to the Junction City Police Department for inspection. Upon inspection of the contents of the brown paper bag and contents; the Affiant noted a clear baggy containing an off white chunky substance was located inside the brown paper bag. The Affiant weighed the clear baggy with the off white chunky substance. The baggy with off white chunky substance had an approximate gross weight of 25.7 grams. The Affiant then conducted a field test on a portion of the off white chunky substance utilizing a Scott Reagent Modified 07 field test kit. When testing the off white chunky substance; the Affiant noted the test revealed a presumptive positive for the presence of Cocaine. The Affiant packaged and secured the item as evidence.

26.     On 3/29/2013, the Affiant received a Forensic Laboratory report which stated cocaine base was indicated in the aforementioned item and had a net weight of 24.69 grams.

27.     On 3/16/2013 at approximately 4:28 p.m. a short phone conversation was intercepted between Otis Ponds and Anthony Thompson. Otis Ponds tells Anthony Thompson "the coffee thing is in the restroom." Anthony Thompson replies with "oh, ok." Later, Otis Ponds tells Anthony Thompson "look for the brown bag on the side of that thing." Anthony Thompson replies with "ok." The call is then ended.

28.     On 3/16/2013 at approximately 6:09 p.m. a phone conversation was intercepted between Otis Ponds and Anthony Thompson. During the conversation Anthony Thompson tells Otis Ponds "yeah this is here, but shit, ah you sure you this ain't, what it, you didn't put it in here." Otis Ponds tells Anthony Thompson "na, it ain't in there, that's the whole, that's one the whole thing. Man, somebody has found that ah, paper." Anthony Thompson interrupts Otis Ponds and says "you got some soft in here too or something." Otis Ponds says "yeah, no that's the whole thing, thats the whole that's all." Anthony Thompson says "oh this is, what about this other one." Otis Ponds says "what other one." Anthony Thompson says "there's two things in here." Otis Ponds says "did I take some and put it in this." Anthony Thompson interrupts and says "it's in a ziplock, you got some in a big ziplock bag." Otis Ponds tells Anthony Thompson "I did, that's, that's, that's the uh, that's the cut up for me to (inaudible.)" Anthony Thompson says "oh, ok, oh, ok." Later, Anthony Thompson tells Otis Ponds "that chunk, that's the

D009147

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 389

whole thing." Anthony Thompson replies with "(inaudible)this is other shit, that's some other shit." Otis Ponds says "yeah, that's the that's the shit to uh cut it up with the uh." Anthony Thompson then asks Otis Ponds "what you get for the half of this?" Otis Ponds tells Anthony Thompson "shit, just whatever half uh, (inaudible) 675." Anthony Thompson replies with "oh, ok, two uh, I mean six uh," Otis Ponds interrupts with "675." Otis Ponds tells Anthony Thompson to "take all that outta there." Otis Ponds then tells ~~Otis Ponds~~ _ANTHONY THOMPSON_ to "look again." Anthony Thompson and Otis Ponds have a conversation about an item that was missing, and Anthony Thompson tells Otis Ponds that the "housekeepers be moving around." Anthony Thompson suggested that the item "fell up under there"; in which, Otis Ponds advises the item couldn't have. Anthony Thompson and Otis Ponds have a brief conversation and the call is ended.

29.     On 3/16/2013 at approximately 6:14 p.m. a phone conversation was intercepted between Anthony Thompson and Otis Ponds. During that conversation Anthony Thompson tells Otis Ponds "I don't see it, homey (inaudible) they had a white boy shit pulling up over there too. I was just said fuck it, I don't see it that mothafucker should just been sitting right there." Otis Ponds responded thinking that the "white boy, probably seen it." Otis Ponds explains that there was a "white boy out there" "moving around." Otis Ponds then speaks to someone else off of the telephone. Anthony Thompson asked Otis Ponds "what the white boy looked like." Otis Ponds says "it was an older white dude." Later in the conversation Anthony Thompson says "twenty one, that's a couple riggedy's right there, at least a rack." Anthony Thompson and Otis Ponds talk about the potential of Anthony Thompson just not seeing the item where it was located. The call is ended.

30.     On 03/16/2013 at approximately 7:47 p.m. a phone conversation was intercepted between Otis Ponds and Anthony Thompson. During that conversation Otis Ponds and Anthony Thompson talk about the "white dude" seen and Otis Ponds asks if he(white dude) was driving a "black car." Anthony Thompson advises "yep"; in which, Otis Ponds tells Anthony Thompson "that motherfucker is still sittin' outside." Anthony Thompson tells Otis Ponds that "he look like the police." Otis Ponds tells Anthony Thompson "that's what I was wondering." Anthony Thompson described how he was looking for the item. Further in the conversation, Otis Ponds tells Anthony Thompson

D009148

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 390

the item had been sitting there since "yesterday morning when I left." Otis Ponds tells Anthony Thompson that Otis Ponds is "down here now." Otis Ponds tells Anthony Thompson that the female has to work at "Mustangs tonight." Otis Ponds describes a female that he(Otis Ponds) is taking to Lawrence because she has to work at the "VIP joint" tomorrow. Otis Ponds tells Anthony Thompson "I gotta make that shit up somehow." Later in the conversation, Otis Ponds tells Anthony Thompson "that in the room, that just got there today." Otis Ponds says "that shit that was missing that was there yesterday." The call then is ended.

31.     On 3/16/2013 at approximately 10:22 p.m. a phone conversation was intercepted between Otis Ponds and Anthony Thompson. During a portion of the conversation, Otis Ponds tells Anthony Thompson "I'm going have to move that, uh, that green and shit from over at that bitches house. This bitch talking bout she ain't even got no, uh, no change. I'm like how the fuck you ain't got no change, she said it was poppin' last night. But your sister said she seen her, and said the bitch look like she was uh, twerk, I mean uh, tripped out, like shit, like the bitch was high or something." Anthony Thompson asks if Otis Ponds was "talking about the black one." Otis Ponds agrees. Otis Ponds later says that "she gonna have to pay up, I ain't fucking with you like that." Otis Ponds and Anthony Thompson continue their conversation about the female. Otis Ponds later describes himself as "not a pimp" but a "jack of all trades."

32.     On 3/16/2013 at approximately 10:24 p.m. a text message was intercepted from Otis Ponds to Anthony Thompson that read "Bro only do 7g I need a ball". Anthony Thompson responded to Otis Ponds with a text that read "K".

33.     On 3/16/2013 at approximately 11:19 p.m. a phone conversation was intercepted between Otis Ponds and Anthony Thompson. Otis Ponds discusses forgetting to talk to AB about grabbing "one of those things." Otis Ponds and Anthony Thompson have a conversation about females. During the conversation, Otis Ponds talks about a female that "now wants to be a dope girl." Otis Ponds talks about wanting to tell the female "I shouldn't have to move no sack, bitch you should be having to move it. The only time I'm a moving a sack is for my niggas." Otis Ponds continued to talk about the female with Anthony Thompson. Otis Ponds then talks about a chick named "Smiley" who had called him. Otis Ponds says "I was going to do the cup trick to her, I

D009149

Appellate Case: 23-3102      Document: 01011088467S      Date Filed: 07/10/2023      Page: 391

was going to put it in a McDonald's cup and just set it somewhere and be like hun let me get the (inaudible) bitch let me get the money (inaudible.)" Anthony Thompson advises "right now she's cool, but I just don't, you know what I'm saying, I'm just going to give you the heads up that she can go bad, man, at any given time. So you know what I'm saying." Otis Ponds tells Anthony Thompson that Anthony Thompson's sister told Otis Ponds "don't fuck with her." Otis Ponds and Anthony Thompson continue their conversation; including talking about a subject named "Wig." Otis Ponds and Anthony Thompson talk for several seconds about a female in a "strip joint" doing "tricks" for "$350 a pop". The call is ended shortly after.

34.      On 3/18/2013 at approximately 12:45 p.m. a phone conversation was intercepted between Anthony Thompson and Otis Ponds. During the conversation, Otis Ponds advises to Anthony Thompson that Otis Ponds was at the room. Otis Ponds and Anthony Thompson talk about looking for an item "up under a trash can beside the pallet" that was gone. Otis Ponds explains the item must have been taken, and describes a loss of "thirty four, thirty five hundred dollar loss it took 24 hours." Otis Ponds says, "I had something to do with that change, I had some shit I needed to do with it." Anthony Thompson asks Otis Ponds if Otis Ponds had talked to "Bo" explaining to Otis Ponds that "Bo" probably found the item. Otis Ponds advises that he had been trying to call "Bo". Anthony Thompson tells Otis Ponds that he would attempt to call him.

35.      On 3/21/2013, Detective Alvin Babcock of the Junction City Police Department drove to the Quality Inn Motel at 305 E. Chestnut Street in Junction City, Geary County, Kansas. Detective Babcock confirmed Otis Ponds had rented room #208 at the same motel for the dates of 3/15/2013, 3/16/2013, and 3/17/2013. Detective Babcock identified that Otis Ponds had switched rooms on 3/17/2013. At that time Otis Ponds was identified as staying in room #205 of the same Quality Inn Motel; until 3/20/2013. Later, Detective Babcock reported checking the validity of Otis Ponds driver's license; in which, Detective Babcock was advised that Otis Ponds' Kansas driver's license was suspended.

36.      On 3/22/2013 at approximately 12:45 p.m. a phone conversation was intercepted between Anthony Thompson and Otis Ponds. Otis Ponds tells Anthony Thompson about some the "damn cop shit." Otis Ponds discusses being followed by

D009150

Page: 392          Date Filed: 07/10/2023          Document: 010110884675          Appellate Case: 23-3102

police and Otis Ponds avoiding them.   Otis Ponds said "he didn't think I knew who he was."  Otis Ponds discusses that when he was parked at the motel, the person drove by and got his tag near the CD Tradepost.   Otis Ponds tells Anthony Thompson that the person wrote down the tag.   Otis Ponds then tells Anthony Thompson "then when the name pop up, it's gonna be my cousin, and he gonna, he, my cousin look just like me. So he (inaudible)."  Anthony Thompson replied "see that's the good thing about it."  Otis Ponds tells Anthony Thompson "yeah, this nigga got life."  Anthony Thompson then says "that's what you gonna, that's what you gonna hit em with if they ever try to bloop you ain't ya."  Otis Ponds then tells Anthony Thompson "Man, hell yeah, my name is Devon Otis Ponds partner.   Shit I lost my ID, one of ya'll motherfuckers Junction City motherfuckers stoled it."  Anthony Thompson replied with "yep."  Otis Ponds describes how he would leave prior to law enforcement finding out who he really was.   Later in the conversation, when Otis Ponds is talking about coming back to town with his "lil bitch that work at the aircraft," Otis Ponds says he's gonna "slide in on the under."  Anthony Thompson says "let me shoot this change down there.  Even if you don't come, I'll just come grab it tomorrow, it don't matter."  Otis Ponds says to Anthony Thompson "ole boy, that 1250 dude ain't, dude ain't poppin with it."  Otis Ponds later says "I'll probably go holla at ole busy and them."  Anthony Thompson says "ok, what's that like 14," with Otis Ponds response as "yeah, 14."  Later Anthony Thompson says "I might have enough on me, let me count my change up and see, if not I might have to shoot to the Hat."  Otis Ponds then says "ok, but shit, don't let nobody even know."  Anthony Thompson agrees.  Otis Ponds and Anthony Thompson end the call shortly after.

37.   On 3/22/2013 at approximately 8:31 p.m. a phone conversation was intercepted between Otis Ponds and Anthony Thompson.   Initially during the telephone call, Anthony Thompson says "ah shit, I'm uh, shoot you 7 up there."  Otis Ponds replies with "shoot me 7, alright bet."  During the conversation, Otis Ponds tells Anthony Thompson to "put it to Otis Otis Ponds" with Anthony Thompson confirming this advising it was going to be at the "money gram."  Otis Ponds describes that the money gram closes early.  Later in the conversation, Otis Ponds tells Anthony Thompson that he will get "it" advising that "I got enough money to square at that."  Otis Ponds and

D009151

Appellate Case: 23-3102      Document: 01110884675      Date Filed: 07/10/2023      Page: 393

Anthony Thompson then began talking about a female.   The phone conversation ends soon after.

38.     On 3/23/2013 at approximately 12:26 a.m. a phone conversation was intercepted between Anthony Thompson and Otis Ponds.   Anthony Thompson and Otis Ponds negotiate to meet at "Eve's".   Otis Ponds tells Anthony Thompson that he was staying the night.   Otis Ponds admits to "switching everything up." Otis Ponds tells Anthony Thompson that Otis Ponds was going to the Best Western or Marriot.   Otis Ponds says he's going to go back home, and chill out; advising that he was still "trying to recover off that loss." Otis Ponds tells Anthony Thompson that "ya'll just going to have to come up my way for a minute."   Otis Ponds and Anthony Thompson finish the conversation and the call was ended.

39.     On 3/23/2013 at approximately 2:58 p.m. a phone conversation was intercepted between Anthony Thompson and Otis Ponds.   Initially, the two begin speaking about Martye.   Otis Ponds then speaks about a female being on "pills" including "Loratabs;" Otis Ponds begins talking about a female and prostitution.   Later, Otis Ponds says " hey on that, what we was talking about, is you ready on that end?" Anthony Thompson's initial response was inaudible.   Otis Ponds replies to Anthony Thompson with "yeah."   Anthony Thompson then asks Otis Ponds if he was "down here."   Otis Ponds advises "no, no, no I'm already back, I had to bring baby, baby back." Anthony Thompson says "nah, for real, I probably will be in a little bit though."   Otis Ponds later tells Anthony Thompson, "I've got something even better going." Otis Ponds wants to tell Anthony Thompson about it "in your face."   Anthony Thompson agrees and advises that Anthony Thompson could "bring the boys up tomorrow."   The two talk about going to the casino and the weather.   Otis Ponds begins talking about his "hoe" that could've done a trick for three grand.   Otis Ponds gives further advice for women to Anthony Thompson.   Anthony Thompson and Otis Ponds begin talking about "Smiley" and "Smiley's" recent arrest involving the possession of Cocaine and Marijuana.   Otis Ponds says "she must've not got caught with no work."   The two then began discussing the possibility that "Smiley" possibly working for law enforcement.   Otis Ponds tells Anthony Thompson about needing to have his female do all the work, so that Otis Ponds

D009152

Appellate Case: 23-3102      Document: 01110884675      Date Filed: 07/10/2023      Page: 394

394

doesn't have to "touch nothing." Otis Ponds and Anthony Thompson continue their phone call about females; and after a lengthy conversation, the call was ended.

40.     On 3/24/2013 at approximately 1:35 p.m. a phone conversation was intercepted between Anthony Thompson and Otis Ponds. Otis Ponds asks Anthony Thompson if Anthony Thompson was going to bring his kids down today. Anthony Thompson advised that he was going to wait until after the funeral. Otis Ponds advises that Otis Ponds was going to tell his probation officer and tell them Otis Ponds was going to go to a funeral. Otis Ponds and Anthony Thompson talk about AB. Later, Otis Ponds asks "what you wanna do, you wanna go four on four on that Q?" Anthony Thompson advises "oh, yeah." Otis Ponds later says "I wish we could go eight on eight on motherfucker, that half a thing." Anthony Thompson says "yeah, we need to get it moving." Otis Ponds and Anthony Thompson talk about Martye and the phone conversation is ended shortly after.

41.     On 03/07/2013 a lawful wire intercept was initiated on telephone number (785) 375-6704 which had no subscriber information but is being used by Albert Banks. Albert Banks is distributing crack cocaine in the Junction City, Geary County, Kansas area. Numerous phone conversations have been intercepted which detail the activities of Albert Banks and other co-conspirators distributing crack cocaine.

42.     On 3/7/2013 at approximately 9:27 p.m. a text message was intercepted from Otis Ponds to Albert Banks. The text message was sent twice within the same minute and read "Were u at bro need to get sum reg bro?"

43.     On 3/8/2013 at approximately 1:30 p.m. a phone conversation was intercepted between Otis Ponds and Albert Banks. The phone call was from Albert Banks to Otis Ponds; in which, Albert Banks advised to Otis Ponds "I'm just going to hold on off, I'm gonna get the rest of that on off, (inaudible), I've still got to give you forty dollars man." Otis Ponds says "I know, I forgot all about, I was just thinking about that like damn, I was wondering why my money was short." Albert Banks interrupts Otis Ponds advising "(inaudible) forty dollars." Otis Ponds says "huh, yeah, ok, well shit, don't even trip. But I might just go on and grab, grab your H town anyway you know and just bring it back like fuck it." Albert Banks responded to Ponds with "ok, shit, I'll

D009153

Page: 395        Date Filed: 07/10/2023        Document: 010110884675        Appellate Case: 23-3102

be ready by the time you get back though." Otis Ponds agrees with "alright" and the call is ended shortly after.

44.    On 3/10/2013 at approximately 5:24 p.m. a phone conversation was intercepted between Otis Ponds and Albert Banks.  Otis Ponds had called Albert Banks and asked Albert Banks where he was at.  Albert Banks reply was inaudible.  Otis Ponds tells Albert Banks that "alright cuz I got some that uh, some bread that you can get too." Albert Banks responded to Ponds with "oh, alright I'll be there in a second."  The call is ended shortly after.

45.    On 3/12/2013 at approximately 8:29 p.m. a phone conversation was intercepted between Otis Ponds and Albert Banks.    During the conversation, Albert Banks tells Otis Ponds about a recent CD Albert Banks had purchased that is about somebodies mom "smoking crack." Albert Banks confirms he had purchased the CD's in Topeka on the day of the call.  Later in the conversation Otis Ponds asks Albert Banks "what's up with your boy?"  Albert Banks said "I've been waiting on him to call me, but he never called back." Otis Ponds tells Albert Banks "I need ah, when I get down there I'm gonna need ah, ah, (inaudible) yeah." Albert Banks tells Otis Ponds "alright it's all good." Otis Ponds says "yeah I need some of that, you, you got uh."   Albert Banks says "hey you know you still got a little bit of that green left man." Otis Ponds says "where?" Albert Banks says "in that little baby wipe thing."  Otis Ponds tells Albert Banks that he had forgotten about it and says "well shit I'm good then, I ain't trippin."  Albert Banks and Otis Ponds then talk further about the CD and other music.   The call is ended shortly after.

46.    On 3/13/2013 at approximately 11:50 a.m. a phone conversation was intercepted between Albert Banks and Otis Ponds.    Initially, Albert Banks and Otis Ponds discuss a new CD and other music.   The two then discuss Martye's brothers death. Later in the conversation, Albert Banks tells Otis Ponds "it's all good on that end." Otis Ponds asks "on the what?"  Albert Banks says "on the end." Otis Ponds says "no shit.  I wish you would've told me last night.  Cause I just went in and got down. Ah, but you said 1250 to huh?" Albert Banks says "yeah." Otis Ponds says "ok, I gots, my dude right now I'm about to meet up with for the same ticket.  And we gonna compare notes when I get there, and shit, if your notes is better than mine, then shit."

D009154

Page: 396     Date Filed: 07/10/2023     Document: 010110884675     Appellate Case: 23-3102

47.   On 3/22/2013 at approximately 10:44 a.m. a phone conversation was intercepted between Albert Banks and Otis Ponds. During that conversation, Otis Ponds originally asks "what you think about if a mother fucker say ah, 16 for that ah, half half of that (inaudible) some of that old, uh, what's that shit, some of that old keshu. Is that cool?" Albert Banks replies with "ah, ah, ah, a half a thing." Otis Ponds says "yep." Albert Banks asks "hold up, that's it's name, keshu?" Otis Ponds then tells Albert Banks "yep, no, uh it um oh, what's that shit that you had, AK-47 or some shit?" Albert Banks again replies "what's the name of it?" Otis Ponds tells Albert Banks "shit that's what I'm saying, that's what it is?" Albert Banks asks Otis Ponds again "that's what it is?" Albert Banks can be heard talking to someone in the background. A short time later, Albert Banks comes back and says "a half a p?" Otis Ponds and Albert Banks agree that it's $16 dollars or as Otis Ponds said "8 a q." The conversation is ended shortly after.

48.   On 3/24/2013 at approximately 2:31 p.m. a phone conversation was intercepted between Albert Banks and Otis Ponds. Otis Ponds talks about trying to stop Albert Banks when Albert Banks left Lucky's. Otis Ponds and Albert Banks talked about how things were slow. Otis Ponds said "I've been taking too many losses." Albert Banks and Otis Ponds began talking about females. After that Otis Ponds brings up Martye; in which, Albert Banks talks about Martye wanting some money. Otis Ponds asks Albert Banks "did Ant tell you what I seen yesterday when I was taking baby to work." Otis Ponds advised "I seen the people on the otherside, on the front side." Otis Ponds later explained there was three different people on different locations of the block. Otis Ponds told Anthony Thompson that he was "down here" and had been. Albert Banks later tells Otis Ponds that "it's also the end of the month, so you gotta start budgeting and shit. Cause at the end of the month, shit start getting slow." Otis Ponds agreed. Albert Banks ask Otis Ponds if Otis Ponds knew that "Ant got wooped on at the club." Otis Ponds advised he had "heard." Albert Banks began talking about hearing that "they shut the roads down there to the dub." Albert Banks believed it was due to the snow. Otis Ponds later said "even if a nigga was trying to go back shit, nigga couldn't." Otis Ponds asks Albert Banks if "you still right?" Albert Banks replied "I'm still cool, I'm almost (inaudible). It's slow motion, this shit have been gone." Otis Ponds tells Albert Banks "shit nigga, I've been sittin', sittin' and sittin' on my shit. Yeah I ain't,

D009155

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 397

man, if I don't keep it undone, it ain't gettin' sold." Otis Ponds later says "I think it's time to switch towns. Shit, shoot my ass down to old Parsons for a little bit, see what the hell is going on down there." Albert Banks asks Otis Ponds "that's at the bottom of Kansas ain't it." Otis Ponds advised "yep." The conversation is ended shortly after.

## CONFIDENTIAL SOURCES

49.     To date, there are two cooperating individuals (CI's) that have been developed and assisting with the investigation into Albert Banks and Anthony Thompson's illegal drug distribution. Neither of these CI's are, nor can they be, utilized to assist with the investigation involving **Otis Ponds** as they are already assisting with the Albert Banks and Anthony Thompson investigation and therefore would have no reason (in the minds of Albert Banks, Anthony Thompson or **Otis Ponds**) to look towards **Otis Ponds** for illegal drugs to purchase. Neither of the CI's have any knowledge of **Otis Ponds**. No other CI's have been developed to assist in the investigation of **Johnny Otis Ponds** and no CI's are anticipated to be developed at this point in the investigation.

## FACTS AND CIRCUMSTANCES

50.     Based upon the Affiant's investigation and those of other law enforcement agencies, the following facts and circumstances are set forth. The Affiant believes the investigation has revealed that **Otis Ponds**, Anthony Thompson and Albert Banks are involved in the distribution of illegal drugs and have been for some time. Given the content of the phone conversations between **Otis Ponds,** Anthony Thompson and Albert Banks as well as the amounts of crack cocaine sold to CI #1 by Anthony Thompson and Albert Banks, and the amounts of controlled substances available to sell, the Affiant believes **Otis Ponds**, Anthony Thomspon and Albert Banks have been and will continue to be involved in an ongoing conspiracy to distribute illegal drugs. The conspiracy includes numerous persons both known and unknown. **Otis Ponds**, Anthony Thompson

D009156

Appellate Case: 23-3102      Document: 01011084675      Date Filed: 07/10/2023      Page: 398

and Albert Banks continue to realize profits from the sale of controlled substances. Based on all the information the investigation has been able to gather thus far, it is the consensus of the law enforcement investigators that **Otis Ponds**, Anthony Thompson and Albert Banks, in association with others, are involved in extensive illegal drug activity. This is evident by the sales of controlled substances to CI #1, observations made during those sales, and phone conversations intercepted between **Otis Ponds**, Anthony Thompson and Albert Banks.

## GOALS OF THE INVESTIGATION

51.      It is the goal of the Law Enforcement personnel involved in this investigation to identify all persons involved in this operation whether they are in Kansas or any other state.   The identity of persons that are transporting, manufacturing and/or storing illegal drugs in Kansas is being and will continue to be pursued.   The identities and prosecution of the conspirators involved in the transportation, manufacturing, storing and distribution of illegal drugs to and from the state of Kansas is hoped to be achieved. Another goal of this investigation is to dismantle this organization that is under the control of **Otis Ponds**, Anthony Thompson and Albert Banks.   It is believed this organization is responsible for the distribution of large amounts of illegal drugs in Sedgwick, Geary and Riley County, Kansas.   At this time, the clear scope of the organization, all the conspirators, their involvement and the amount of illegal drugs being distributed have not been identified.   Without the ability to monitor the phone belonging to **Otis Ponds**, it is believed the full scope of the operation will not be disclosed nor will it be dismantled.   While a prosecutable case has been made on Anthony Thompson and Albert Banks, the full extent of the source of supply coming from **Otis Ponds** and his source of supply have not been determined and likely will not be discovered without the wire intercept of his conversations between himself, Anthony Thompson and Albert Banks as well as conversations **Otis Ponds** will have with others within his organization. Without a wire interception the persons involved in this targeted distribution operation will be allowed to continue.

D009157

# EXHIBIT G

## IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

In the Matter Of The Application Of The )
State Of Kansas For An Order Authorizing )     **Case No.**
The Interception Of Wire Communications )
To And From Verizon Wireless Telephone: )     **UNDER SEAL**
316-347-0088 )
Electronic Searl Number (ESN) )
A000003962BB8A )

## ORDER AUTHORIZING THE INTERCEPTION OF "WIRE, ORAL, OR ELECTRONIC COMMUNICATIONS" TO AND FROM VERIZON WIRELESS TELEPHONE: 316-347-0088 ELECTRONIC SEARL NUMBER (ESN) A000003962BB8A

Now on this 5th day of April, 2013, the Court reviews the affidavit of Glen Virden, Senior Special Agent, Kansas Bureau of Investigation, an investigative law enforcement officer as defined by K.S.A. 22-2514(5), said affidavit indicating that Verizon Wireless will not provide "test" and/or "SMS data" because Verizon does not believes such is contained within the Court's Order of April 2, 2013, which authorizes the interception of wire communications to and from the above wireless telephone; based on Senior Special Agent Glen Virden's affidavit, it is apparent that the phone is being used not only for oral communication but also "text" communication which Verizon considers as "electronic". Based on the affidavit of Glen Virden and the application of Steven L. Opat, Geary County Attorney, the Court specifically ORDERS that the Order of April 2, 2013, is hereby clarified to express that the interception of wire communications previously authorized includes all forms of communication set forth in K.S.A. 22-2514, to-wit: oral, wire, or electronic communications to and from said telephone including the interception of "SMS data" or "text" messaging. All other Orders previously entered herein remain in force and effect as set forth in the Order of April 2, 2013.

**DONE** and **ORDERED** this 5th day of April, 2013, at Junction City, Kansas.

**THE HONORABLE DAVID R. PLATT**     D009582
**JUDGE OF THE DISTRICT COURT**

# EXHIBIT H

## IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

In the Matter Of The Application Of The )
State Of Kansas For An Order Authorizing ) **Case No.**
The Interception Of Wire Communications )
To And From Sprint/Nextel ) **UNDER SEAL**
Wireless Telephone )
929-268-6183 )
MSID # 000003477244840 )
ESN # 256691437000557176 )

### ORDER AUTHORIZING THE INTERCEPTION OF "WIRE, ORAL, OR ELECTRONIC COMMUNICATIONS" TO AND FROM VERIZON WIRELESS TELEPHONE: 929-268-6183 MOBILE STATION IDENTIFICATION (MSID) 000003477244840, ELECTRONIC SEARL NUMBER (ESN) 256691437000557176

Now on this 25th day of April, 2013, the Court reviews the application of Steven L.

Opat, Geary County Attorney, an investigative law enforcement officer as defined by K.S.A.

22-2514(5), said affidavit indicating that Sprint/Nextel Wireless will not provide "test" and/or

"SMS data" because Sprint/Nextel does not believe such is contained within the Court's

Order of April 2, 2013, which authorizes the interception of wire communications to and

from the above wireless telephone; based on the progress reports provided herein, it is

apparent that the phone is being used not only for oral communication but also "text"

communication which Sprint/Nextel considers as "electronic". Based on the application of

Steven L. Opat, Geary County Attorney, the Court specifically ORDERS that the Order of

April 2, 2013, is hereby clarified to express that the interception of wire communications

previously authorized includes all forms of communication set forth in K.S.A. 22-2514, to-

wit: oral, wire, or electronic communications to and from said telephone including the

interception of "SMS data" or "text" messaging. All other Orders previously entered herein

remain in force and effect as set forth in the Order of April 2, 2013.

**DONE** and **ORDERED** this 25th day of April, 2013, at Junction City, Kansas.

_David R. Platt_
**THE HONORABLE DAVID R. PLATT**
**JUDGE OF THE DISTRICT COURT**

D007370

# EXHIBIT I

IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

**APPLICATION FOR AN ORDER AUTHORIZING THE INTERCEPTION
OF WIRE COMMUNICATIONS**

COMES NOW Steven L. Opat, the duly elected Geary County Attorney, Kansas and as

authorized by K.S.A. 22-2515(a) and upon his oath, does hereby make application for an order

authorizing the interception of wire, oral or electronic communication(s) by the Kansas Bureau of

Investigation and its designees, said interception(s) providing evidence of those offenses designated

in K.S.A. 22-2515(a)(11) and (20), and offenses committed ancillary to and in furtherance of such

designated offenses.

All as set forth in the attached affidavit of Glen F. Virden, Senior Special Agent for the

Kansas Bureau of Investigation, said affidavit being attached to this application and incorporated

herein verbatim, having been reviewed in its totality by Steven L. Opat with the said Glen F. Virden

for the purpose of obtaining the order authorizing such electronic interception(s).

Respectfully submitted,

_Steven L. Opat_

Steven L. Opat
Geary County Attorney

Subscribed and sworn to before me by Steve L. Opat on this _5_ day of _March_, 2013.

_Dall Platt_

Notary Public _Judge_

# EXHIBIT J

Appellate Case: 23-3102   Document: 010110884675   Date Filed: 07/10/2023   Page: 406

# IN THE COURT OF GEARY COUNTY
## STATE OF KANSAS

IN THE MATTER OF THE APPLICATION   }
                                     }
FOR AN ORDER AUTHORIZING THE   }     No. _____
                                     }
INTERCEPTION OF WIRE COMMUNICATIONS}

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Glen F. Virden, Senior Special Agent, Kansas Bureau of Investigation, being of lawful age and duly sworn upon my oath depose and state:

1.      I am an "Investigative" law enforcement officer duly deputized with statutory authority for the State of Kansas, and as further recognized and defined by K.S.A. 22-2514(5).

2.      This affidavit is submitted in support of an application for an order authorizing the interception of the wire communications of **Anthony Carlyle Thompson, B/M Date of Birth** XX/XX/XXXX and others listed below, over telephone number **(785) 226-1783**, a personal cellular telephone currently in service with T-Mobile USA with International Mobile Security Identity (IMSI) 310260445955245. T-Mobile USA records indicate the phone number to be subscribed to **Jason Roberts, Date of Birth 02/17/1981** which the Affiant knows is not the person using the cellular telephone as described in detail within this document. The Affiant requests authority to intercept the wire communications of individuals communicating on telephone number **(785) 226-1783**.

3.      Affiant believes the following individuals will be intercepted over telephone number **(785) 226-1783; Anthony Carlyle Thompson, Albert Dewayne Banks,** Patricia Foy, Martye Madkins III, Charles Foster and others yet unknown.

4.      Affiant requests authority to intercept the conversations and the background conversations intercepted in the vicinities of the aforementioned telephone

1

**EXHIBIT 4**

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 3 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 87 of 167

407

Page: 407        Date Filed: 07/10/2023        Document: 010110884675        Appellate Case: 23-3102

while the telephone is off the hook or otherwise in use. Affiant requests this authority in order to obtain evidence concerning the above persons' involvement in the following offenses: Possession of Cocaine in violation of Kansas Statutes Annotated (K.S.A.) 21-5706(a); Distribution of Cocaine in violation of K.S.A. 21-5705(a)(1); Conspiracy to commit these offenses in violation of K.S.A. 21-5302; and the Use of a Communications Facility to facilitate the commission of the above offenses in violation of K.S.A. 21-5707(a)(1). All offenses are in violation of Kansas Law, which have been and are being committed by the persons identified herein and others yet unknown.

5.      The Affiant has been a law enforcement officer since 2001 with the Kansas Bureau of Investigation (KBI). The Affiant is currently a Senior Special Agent with the Topeka Region of the Special Operations Division for the KBI. The Affiant is a graduate of Cowley County Community College with an associate of applied science degree in Criminal Justice and Southwestern College with a bachelor's degree in Criminal Justice. The Affiant, while so employed in law enforcement, has received training in narcotics investigations to include, but not limited to: Kansas Law Enforcement Training Center's Basic Training Academy, the Kansas Bureau of Investigation's Advanced Investigations Academy, the Kansas Bureau of Investigation's Clandestine Lab Certification School, Kansas Top Gun Narcotics training, and the U.S. Drug Enforcement Administration's Basic Narcotics Investigators School. Affiant has investigated numerous narcotics cases. These investigations have included, but are not limited to undercover purchases of narcotics, controlled purchases of narcotics using cooperating individuals and search warrants. The Affiant has arrested numerous individuals for violations of both state and federal violations of controlled substances statutes. As a result, Affiant has interrogated many defendants, informants and others who were either sellers, distributors, purchasers, manufacturers or users of controlled substances. The Affiant is familiar with how controlled substances are obtained, diluted, packaged, distributed, sold, used, and manufactured. Affiant is also familiar with the records, books, and documents needed to carry on such illicit activity.

(a)      Based on the above experience, Affiant believes there is probable cause to believe the subjects of this investigation, both known and unknown, have committed, are committing and will continue to commit offenses involving possession,

distribution and conspiracy to distribute cocaine. Such violations involve the use of communication facilities in order to facilitate the commission of the above offenses, each being in violation of Kansas Uniformed Controlled Substances Act.

(b) That particular wire communications of the subjects of this investigation concerning the above offenses will be obtained through the interception of such communications to and from telephone number **(785) 226-1783**. In particular, there is probable cause to believe that the communications to be intercepted will concern dates, times, and places for commission of the aforementioned offenses when the above named interceptee communicates with the listed interceptees and other unknown suppliers, co-conspirators, aiders and abettors. There is further probable cause to believe that the communications to be intercepted will disclose the location of assets owned or controlled by the persons involved, and the manner, extent and identity of persons who direct and/or participate in the illegal activities set forth herein. These communications are expected to constitute admissible evidence of the above-described offenses.

(c) That telephone number **(785) 226-1783**, has been, is being, and will continue to be used in connection with the commission of the above offenses.
The interception of these communications is expected to concern verbal and messaging discussions of the continuing conduct, financing, managing, supervising, directing, or ownership of all or part of an illegal narcotics enterprise, including orders and instructions to subordinates, the receipt of information pertaining to the obtaining and distribution of controlled substances, and other conversations relating to the administration, control, and management of the aforementioned illegal drug activity.

6. Normal investigative procedures have been tried and have failed to achieve the goals of this investigation, or reasonably appear unlikely to succeed if tried, or are too dangerous to employ, as more fully explained below.

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 5 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 89 of 167

409

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 409

## INVESTIGATIVE INVOLVEMENT OF STATE AND LOCAL LAW
## ENFORCEMENT

7.      This investigation is a result of a joint effort by the Affiant, other Agents of the Kansas Bureau of Investigation (KBI), Officers of the Junction City Police Department (JCPD), Officers of the Geary County Sheriff's Office (GESO) and Officers of the Riley County Police Department (RCPD).  The investigation covers a period of time from June 2012 to the present.  The statements contained in this affidavit are based in part on information provided by Agents/Officers of the above-listed law enforcement agencies.   Because this affidavit is being submitted for the purpose of securing authorization for the interception of wire communications, Affiant has not included each and every fact known to the Affiant concerning this investigation.  Affiant has set forth only the facts that Affiant believes are necessary to establish the necessary foundation for an order authorizing the interception of wire communications.  If a court order is granted authorizing the interception of wire communications in this case, only those persons and agencies authorized by law to make such interceptions will be allowed to do so.

8.      In April, 2012, Detective Nate Boeckman of the RCPD contacted Detective Alvin Babcock of the JCPD Drug Operation Group (DOG) with information that **Anthony Thompson (AKA "Ant")** and **Albert Banks (AKA "AB")** were distributing cocaine within the Junction City, Geary County, KS area and the Manhattan, Riley County, KS area.  RCPD received this information from a Source of Information (SOI) to be referred to as "SOI #1" from this point forward. SOI #1 appeared to have knowledge of some of the criminal elements related to **Anthony Thompson** and **Albert Banks**, but was not allowed to have intimate knowledge of the day to day operations or the source of supply of the cocaine.

9.      SOI #1 did give information saying **Anthony Thompson** and **Albert Banks** were receiving powder cocaine from an unknown supplier/s then transporting (or having it transported) back to the Junction City area where they would convert the powder cocaine to crack cocaine themselves (evidence of this conversion will be explained in this affidavit).  SOI #1 did not have direct knowledge of when the powder cocaine purchases were occurring, who was driving to purchase the powder cocaine and

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 6 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 90 of 167

410

Page: 410        Date Filed: 07/10/2023        Document: 010110884675        Appellate Case: 23-3102

even if one of the aforementioned persons were actually obtaining the cocaine or having another person unknown to this investigation acquire and transport the cocaine to **Anthony Thompson** and **Albert Banks**. SOI #1 has continued to give some credible information to Agents/Officers but beyond that, SOI #1 has not been beneficial to the investigation. As stated above, SOI #1 has limited knowledge related to the full scope of the cocaine distribution network, other co-conspirators and the source of supply for the cocaine.

10.     The Affiant was contacted by Lieutenant Mike Life of the JCPD and asked to assist with the investigation.   The Affiant met with Agents/Officers of the aforementioned agencies to in an attempt to garner information related to persons who might be involved in the distribution of cocaine.   The Affiant then contacted an individual who had been a Cooperating Individual (CI) for the KBI since 1985 (to be referred to as CI #1 from this point forward).   The Affiant had a meeting with CI #1 and asked if CI #1 would be willing to assist in the investigation to which CI #1 agreed. Since CI #1's association with the KBI beginning in 1985, CI #1 has successfully been an integral part of a number of State and Federal investigations which culminated with the prosecution and convictions of numerous persons related to the distribution of drugs.  CI #1 has had a number of Agents within the KBI as his/her handler.  The Affiant has had contact with a number of these Agents who spoke highly of CI #1 and his/her abilities to assist in investigations culminating in successful prosecution.

11.     On 05-16-2012, then KBI Task Force Agent (TFA) John Culver was contacted by RCPD in reference to **Albert Banks** possibly leaving the Junction City, KS area en route to Topeka, Shawnee County, KS to purchase drugs for distribution. TFA Culver, RCPD and JCPD coordinated a surveillance operation to follow **Albert Banks** in an attempt to locate the person whom he was receiving his drugs from for distribution. TFA Culver was told **Albert Banks** was supposedly traveling with a white female who was later seen as the driver of the vehicle.   The vehicle **Albert Banks** and the white female were in was described as a maroon colored Cadillac Escalade.   TFA Culver observed this vehicle leave the Junction City area and observed the license tag on the vehicle which was bearing Kansas tag 669BHV.  This vehicle was later found to be registered to a 2002 Cadillac Escalade with a primary owner of Mike Roth and secondary

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 7 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 91 of 167

411

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 411

owner of Kristina Orth both of Junction City, Geary County, KS. The Affiant would later find out Kristina Orth is the girlfriend of Mike Roth.

12.     As Agents followed **Albert Banks** and Kristina Orth from Junction City, Geary County, KS the vehicle made several overt actions which appeared to be in an attempt to make sure they were not being followed. The vehicle traveled east on I-70 where it exited at the Maple Hill exit. The vehicle then made a u-turn in the middle of the road and then re-entered I-70 and continued eastbound on I-70. Once the vehicle reached the Topeka, Shawnee County, KS area, it exited onto SE California Avenue and traveled south where it entered the McDonald's drive thru at SE 29th and California. It then went south on California Avenue to SE 30th Street where it turned east then south on SE Swygart and pulled into the parking lot of 3024 SE Swygart. **Albert Banks** then exited the vehicle walked into the apartment building at this location. Kristina Orth remained in the vehicle with an undetermined number of children who were found to have been traveling in the vehicle.

13.     3024 SE Swygart Apartment F was, at that time, the residence of Johnny Lee Ivory III (AKA "5", "J5" and "Jizzle"). Johnny Lee Ivory is a confirmed member of the Traveling Vice Lords Gang. He has a lengthy criminal history to include; possession of opiates/opium/narcotic drugs, possession of depressants/stimulants, discharge of a firearm at an occupied dwelling as well as others which will be explained further later in this affidavit. Johnny Lee Ivory, at that time, was believed to reside at this residence with his then girlfriend, Whitnie A. Livingston. RCPD had received information from SOI #1 indicating Johnny Lee Ivory was perhaps a source of supply for cocaine for **Albert Banks** and **Anthony Thompson.** This has not been confirmed as Johnny Lee Ivory has not been located as to his whereabouts at this time although it is believed he still resides in Topeka, Shawnee County, KS. On 05-10-2012, Topeka Police Department (TPD) Officers located one-half (1/2) pound of marijuana, two (2) loaded handguns and approximately $10,000.00 in US Currency at this apartment where Johnny Lee Ivory stated he resided (TPD case number 10732-12).

14.     **Albert Banks** eventually exited the apartment complex and got into the passenger side of the vehicle Kristina Orth was driving. The vehicle exited the parking lot, drove north on SE California Avenue, turned east on SE 29th, turned north into the

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 8 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 92 of 167

412

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 412

Dillon's parking lot, circled the parking lot, exited the parking lot and crossed SE 29th Street where it entered into a shopping center parking lot and parked in front of the Subway restaurant and remained there for approximately 15 minutes without anyone entering or exiting the vehicle. After approximately 15 minutes, the vehicle got back onto SE 29th Street and turned north on SE California Avenue. The vehicle entered onto I-70 and traveled west to Junction City, Geary County, KS where it was followed to an unknown address (address unknown to the Affiant) on 13th Street where it was believed **Albert Banks** was possibly distributing cocaine from.

15.     On 05-30-2012, Detective Alvin Babcock of the JCPD received phone call from Detective Nate Boeckman of the RCPD informing him that Detective Nate Boeckman had received information alleging **Albert Banks** had left a package of cocaine wrapped in either brown tape or a brown paper bag in an alley between 13th and 14th Streets and Franklin and Monroe Streets in Junction City, Geary County, KS the previous evening. Detective Nate Boeckman advised Detective Alvin Babcock that RCPD was conducting surveillance on a residence in Manhattan, Riley County, KS where it was believed **Albert Banks** was residing at the time. Detective Nate Boeckman advised a white in color Chrysler 300 having black rims had arrived at the residence. The driver of the vehicle was identified by RCPD Detectives as Chris Howard. A short time later, Chris Howard and **Albert Banks** were seen leaving the residence in the aforementioned vehicle.

16.     Lieutenant Mike Life and Detective Alvin Babcock drove to the aforementioned alley in Junction City, Geary County, KS in an attempt to locate the package of cocaine but were unable to locate it. Detective Nate Boeckman contacted Detective Alvin Babcock and stated he had lost sight of the Chrysler 300 and was unaware if the vehicle was still in Manhattan, Riley County, KS or in the Junction City, Geary County, KS area. A short time later, Detective Alvin Babcock observed the Chrysler 300 in the aforementioned alley and stopped in wooded area where Detective Alvin Babcock was told the package of cocaine was possibly located. The vehicle then left the alleyway and sight was lost of it. Detective Alvin Babcock was not able to see who exited the vehicle or if anything was retrieved when it stopped in the alleyway but Detective Alvin Babcock did observe the driver of the vehicle did not get out of the

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 9 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 93 of 167

413

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 413

vehicle. The vehicle was later located at a liquor store in Junction City, Geary County, KS.

17.     On 05-31-2012, CI #1 made two (2) phone calls to Martye Madkins III in reference to purchasing Oxycontin pills. In the first phone call, Martye Madkins III stated he would have to call other unknown person/s in an attempt to obtain the pills. The second call to Martye Madkins III was not answered and the attempted purchase was discontinued.

18.     On 06-01-2012, CI #1 contacted Martye Madkins III once again in reference to purchasing a $50.00 quantity of crack cocaine from him. Martye Madkins III agreed to sell CI #1 the crack cocaine. While talking to Martye Madkins III, CI #1 made mention of needing to call a female by the name of "Ro" who is actually Lavern Roshell Jackson. Martye Madkins III said he was with Lavern Jackson at that time. CI #1 talked to her about purchasing three to four (3 to 4) Oxycontin pills. Lavern Jackson stated she could obtain Dilaudid and Morphine pills as well. Lavern Jackson stated she would make some phone calls and inquiries into obtaining some pills for CI #1.

19.     CI #1 was prepared for purchasing crack cocaine from either Martye Madkins III or Lavern Jackson. The Affiant gave CI #1 $50.00 in US Currency to purchase the crack cocaine. CI #1 called Martye Madkins III and inquired as to Martye Madkins III ability to sell CI #1 $50.00 worth of crack cocaine. Martye Madkins III said he would call CI #1 back in five (5) minutes. Martye Madkins III called CI #1 back and they agreed to meet at the Casey's General Store in Junction City, Geary County, KS to complete the transaction. Detectives Shawn Peirano and Josh Brown of the JCPD DOG observed Martye Madkins III arrive at the location in a gray colored Chevrolet HHR bearing a Missouri license tag. Martye Madkins III exited the vehicle, got into CI #1's vehicle and sold CI #1 the crack cocaine. The HHR had three (3) African American males in it at the time and as it left, one of the males was identified by Sergeant Todd Godfrey of the JCPD as **Albert Banks** and the driver was identified by Detective Alvin Babcock as **Anthony Thompson**.

20.     The Affiant submitted the evidentiary item, which was actually two (2) small individually wrapped baggies, to the KBI for analysis and received a Forensic

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 10 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 94 of 167

414

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 414

Laboratory Report stating cocaine base was detected in Lab Item 1 with both being examined and having a total net weight of 0.20 grams.

21.     On 06-30-2012, CI #1 contacted a male by the name of Gevonni Roberto Davis whom CI #1 had been introduced to earlier. CI #1 told Gevonni Davis that CI #1 was attempting to make contact with **Martye Madkins III** in reference to purchasing crack cocaine from him. CI #1 asked Gevonni Davis if he had seen Martye Madkins III and/or if Gevonni Davis knew whether or not Martye Madkins III had any crack cocaine to sell. Gevonni Davis stated he had seen Martye Madkins III at approximately 7:30 AM that morning and had purchased the last portion of crack cocaine Martye Madkins III had to sell at that time. CI #1 asked Gevonni Davis if he could contact **Anthony Thompson** and inquire as to whether or not he had any crack cocaine to sell. Gevonni Davis asked if CI #1 knew **Anthony Thompson** to which CI #1 said he/she had met **Anthony Thompson** but did not have a telephone number for him. Gevonni Davis said he would call **Anthony Thompson** and call CI #1 back.

22.     Gevonni Davis called CI #1 and stated he had made contact with **Anthony Thomson**. **Anthony Thompson** stated he was in Ogden, KS at that time but would turn around and come to Junction City, KS to meet CI #1 at his/her motel room to sell him/her the crack cocaine. The Affiant gave CI #1 $50.00 with which to purchase the crack cocaine. **Anthony Thompson** arrived at the motel room and met with CI #1. CI #1 siad **Anthony Thompson** produced approximately 15 "rocks" of crack cocaine from his pocket and thought CI #1 wanted to purchase $100.00 worth of crack cocaine. CI #1 said he/she only wanted $50.00 worth and at that time **Anthony Thompson** sold the crack cocaine to CI #1. CI #1 asked for and was given **Anthony Thompson's** telephone number for further transactions. The telephone number given to CI #1 is not the current number for **Anthony Thompson**, but was his telephone number at that time. **Anthony Thompson** was driving a red in color Chrysler Sebring bearing Arkansas license tag 227RMJ which was not registered to that vehicle.

23.     The Affiant submitted the evidentiary item to the KBI for analysis and received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 1 having a net weight of 0.15 grams.

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 11 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 95 of 167

415

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 415

24.     On 07-11-2012, the Affiant and other Agents/Officers met with CI #1 for the purpose of CI #1 attempting to make a purchase of crack cocaine from Martye Madkins III. CI #1 contacted Martye Madkins III and he told CI #1 to call him back in 10 to 20 minutes as Martye Madkins III "was checking on it now" referring to Martye Madkins III inquiring with someone as to the availability of the crack cocaine CI #1 wanted to purchase. This would indicate the crack cocaine did not belong to Martye Madkins III but instead belonged to another party whom Martye Madkins III had to obtain it from prior to distributing it. While waiting on Martye Madkins III to contact CI #1, Detective Alvin Babcock was watching video surveillance of Martye Madkins III residence located at 227 west 14th Street in Junction City, Geary County, KS in an attempt to observe any person/s arriving or departing from the residence. Detective Alvin Babcock observed **Albert Banks** and Chris Howard leave the residence. After the two (2) aforementioned persons left the Martye Madkins III residence, CI #1 received a call from Martye Madkins III. The two (2) aforementioned males returned to the residence shortly thereafter.

25.     Martye Madkins told CI #1 to meet "his man" (referring to another unknown person) at Wood Oil in Junction City, Geary County, KS and asked how much CI #1 wanted. CI #1 said he/she wanted $60.00 worth of crack cocaine. The Affiant gave CI #1 $60.00 in US Currency to purchase the crack cocaine. CI #1 left and drove toward Wood Oil. While en route, CI #1 was contacted by Martye Madkins III and told to change the location where CI #1 was to meet someone. Martye Madkins III said to meet in the area of the intersection of 15th Street and Adams Street in Junction City, Geary County, KS.

26.     CI #1 arrived at the location and continued to attempt to make contact with Martye Madkins III by cellular telephone to tell him CI #1 was at the location. Martye Madkins III told CI #1 someone would be coming to the location soon to distribute the crack cocaine to CI #1. 26 minutes after CI #1 arrived at the intersection location; Martye Madkins III called CI #1 and told CI #1 to drive to another location. During the course of these events, Detective Alvin Babcock once again observed **Albert Banks** leave the aforementioned residence. Surveillance members observed **Albert Banks** approach a vehicle described as a grey in color Chevrolet Malibu. An unknown

Case 5:15-cv-03093-HLT    Document 182-16    Filed 09/18/20    Page 12 of 71
Case 5:13-cr-40060-DDC    Document 346-1    Filed 06/30/14    Page 96 of 167

416

Appellate Case: 23-3102        Document: 010110884675        Date Filed: 07/10/2023        Page: 416

black female exited the vehicle. **Albert Banks**, the unknown black female and another unidentified black male (later believed to be Martye Madkins III due to identified clothing) were observed walking back and entering into the aforementioned residence. A short time later, a black male (believed to be Martye Madkins III from the clothing description) was observed leaving the residence and walking toward 14th Street in Junction City, Geary County, KS. Then, Chris Howard was observed arriving and entering the residence and the unknown black male (believed to be Martye Madkins III) returned to the residence once again. The black male believed to be Martye Madkins III (identified by the clothing description of the person who later met with CI #1) then departed the residence once again and walked toward 14th Street in Junction City, Geary County, KS. A short time after the black male (believed to be Martye Madkins III) left the residence, Chris Howard also left the residence. Surveillance members observed CI #1 driving towards 14th Street and then travel west on 14th Street. Surveillance members then observed CI #1 driving east in the 300 block of 15th Street.

27.     While en route and in the 300 block of west 15th Street in Junction City, Geary County, KS; CI #1 was stopped by the same black male who had been observed walking from the residence. The black male, who was later positively identified as Martye Madkins III, walked up to the passenger side of the vehicle CI #1 was driving. Martye Madkins III sold CI #1 the crack cocaine at that time. While CI #1 was making the purchase of crack Cocaine, Gevonni Davis entered the rear seat of the vehicle CI #1 was driving and observed the transaction take place which did not detour Martye Madkins III from completing the sell. This sell of crack cocaine was less than 1000' from Washington Elementary School which is located at 1500 N Washington Street in Junction City, Geary County, KS.

28.     The Affiant took possession of the evidentiary item and later submitted the evidentiary item to the KBI for analysis and received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 2 having a net weight of 0.33 grams.

29.     On 08-17-2012, Detective Alvin Babcock received a phone call from CI #1 advising CI #1 had been in contact with **Anthony Thomson** and **Anthony Thompson** was willing to sell CI #1 $100.00 worth of crack cocaine. CI #1 met with Agents/Officers and made a controlled phone call to **Anthony Thompson**. CI #1 told

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 13 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 97 of 167

417

Appellate Case: 23-3102      Document: 01110884675      Date Filed: 07/10/2023      Page: 417

**Anthony Thompson** he/she was not currently in Junction City but would be shortly. **Anthony Thompson** told CI #1 to call him when CI #1 arrived in Junction City, Geary County, KS. Detective Alvin Babcock gave CI #1 $100.00 in US Currency to purchase the crack cocaine from **Anthony Thompson**. CI #1 drove to the Casey's General Store located at 624 S Washington Street in Junction City, Geary County, KS. While en route to the location, CI #1 called **Anthony Thompson** and advised him CI #1 would meet him there to which **Anthony Thompson** agreed. A grey in color Ford Focus bearing Kansas license tag 807FEE arrived at the location. A registration check was competed on the tag and found to be registered to a 2002 Ford Focus registered to Anna Thompson who is **Anthony Thompson's** sister. The driver of the vehicle was identified as **Anthony Thompson**.

30.     CI #1 exited his/her vehicle and entered the front passenger side of **Anthony Thompson's** vehicle. A short time later, CI #1 exited the vehicle and entered his/her own vehicle. **Anthony Thompson** backed up and parked at the gas pumps then exited his vehicle and walked over to CI #1's vehicle to look at items of clothing CI #1 had for sell. Approximately a minute later, **Anthony Thompson** entered into the Casey's General Store. CI #1 walked over to **Anthony Thompson's** vehicle, entered into the driver's side front door then exited and got back in to his/her vehicle and left the location to meet with Agents/Officers.

31.     The Affiant took possession of the evidentiary item and later submitted the evidentiary item to the KBI for analysis and received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 2 having a net weight of 1.01 grams.

32.     On 08/24/2012, CI #1 met with Detective Alvin Babcock and other officers for the purpose of purchasing crack cocaine from a black male with the alias of "JD". Detective Alvin Babcock determined this black male to be Jason Dixon. CI #1 drove to an agreed upon location, which was Handy's Convenience Store located a 1734 W. Ash Street in Junction City, Geary County, KS. Jason Dixon arrived and was observed meeting with CI #1. A short time later, CI #1 and Jason Dixon left the location. CI #1 met with Detective Alvin Babcock and gave him the suspected crack cocaine CI #1 had purchased from Jason Dixon. Detective Alvin Babcock later processed the evidentiary item per his agency policies and had it submitted to the KBI for analysis.

12

Appellate Case: 23-3102      Document: 010110884675      Date Filed: 07/10/2023      Page: 418

Detective Alvin Babcock received a Forensic Laboratory Report stating cocaine was detected in the item having a net weight of .22 grams. It should be noted that during the review of the covert electronic audio/video recording device which had been utilized during the transaction with Jason Dixon, Detective Alvin Babcock observed Jason Dixon retrieve the crack cocaine from his mouth prior to selling it to CI #1. This is a common tactic utilized by illegal drug distributors for the transporting of illegal drugs. If he/she has contact with law enforcement, the illegal drugs can be swallowed prior to being located by law enforcement.

33. On 08-31-2012, Detective Alvin Babcock and other Officers met with CI #1 for the purpose of CI #1 purchasing crack cocaine from Charles Foster. CI #1 told Detective Alvin Babcock that Charles Foster had contacted CI #1 the previous evening and said he had $50.00 worth of crack cocaine for sell. CI #1 told Charles Foster he/she was unavailable at that time and would contact him the next day. Detective Alvin Babcock gave CI #1 the US Currency to be used in the transaction. CI #1 called Charles Foster via cellular telephone and Charles Foster told CI #1 to come to his residence which was located at 149 E Anchor Street in Grandview Plaza, Geary County, KS.

34. Surveillance units were in place to observe CI #1 arrive at the residence. CI #1 drove to the residence and entered with items of clothing for Charles Foster's wife to look at. After approximately 30 minutes, CI #1 and Charles Foster left the residence and drove to and entered the alley behind 126 W 12th Street in Junction City, Geary County, KS. Charles Foster exited CI #1's vehicle and met with another black male who was later identified as **Anthony Thompson**. Charles Foster entered back into the vehicle CI #1 was driving and they exited the alley. A grey in color Ford Focus driven by **Anthony Thompson** exited the alleyway behind CI #1. CI #1 transported Charles Foster back to his residence where he exited. CI #1 met with Officers once again and gave Detective Alvin Babcock the evidentiary item.

35. Detective Alvin Babcock submitted the evidentiary item per his policy to be submitted to the KBI for analysis. Detective Alvin Babcock received a Forensic Laboratory report stating cocaine base was detected in Lab Item 1 having a net weight of .28 grams.

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 15 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 99 of 167

419

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 419

36.   On 09-05-2012, Detective Alvin Babcock received an email from Detective Nate Boeckman of the RCPD indicating a Cooperating Individual who was providing assistance to the RCPD had told Detective Nate Boeckman **Anthony Thompson** was in possession of what he/she deemed to be a large amount of crack cocaine. The RCPD CI stated he/she was at the **Anthony Thompson** residence and observed several packages of crack cocaine lying on the kitchen counter. The RCPD CI stated **Anthony Thompson** had measured out and packaged the crack cocaine for distribution.

37.   Detective Nate Boeckman stated he drove past the residence and observed a maroon in color Buick Century parked bearing Kansas license tag 071FEG. This vehicle is registered to a 1998 Buick Century with the primary owner listed as Michael Harris of Manhattan, Riley County, KS. The RCPD CI told Detective Nate Boeckman the vehicle belonged to a female by the name of Monica and that she was a crack cocaine user. The RCPD CI told Detective Nate Boeckman Monica was allowing **Anthony Thompson** to use her vehicle. Later that same day, the RCPD CI told Detective Nate Boeckman **Anthony Thompson** had left the residence and took the crack cocaine he had packaged for distribution with him. The RCPD CI estimated the total amount of crack cocaine to be greater than one (1) ounce in quantity.

38.   That same day, 09/05/2012, the Affiant and other Officers met with CI #1 for the purpose of CI #1 making a crack cocaine purchase from **Anthony Thompson**. CI #1 contacted **Anthony Thompson** via cellular telephone and both parties agreed to meet at the Casey's General Store located at 624 S Washington Street in Junction City, Geary County, KS. **Anthony Thompson** told CI #1 he was approximately 30 seconds away from the location at the current time. The Affiant gave CI #1 $250.00 in US Currency to purchase the crack cocaine.

39.   Once CI #1 arrived at the agreed upon location CI #1 once again attempted to contact **Anthony Thompson** via cellular telephone to advise him CI #1 was at the location. **Anthony Thompson** did not answer the phone call. After approximately one and a half (1 ½) hours, CI #1 sent **Anthony Thompson** a text message. **Anthony Thompson** replied and changed the location and told CI #1 to meet him in the 100 block

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 16 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 100 of 167

420

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 420

of W 12th Street in Junction City, Geary County, KS which is the location of the Corner Club.

40.     CI #1 drove to this location and met with **Anthony Thompson**. CI #1 gave **Anthony Thompson** the $250.00 in US Currency and **Anthony Thompson** gave CI #1 a large plastic baggie containing numerous smaller plastic baggies containing crack cocaine. **Anthony Thompson** also gave CI #1 a small single baggie containing crack cocaine. **Anthony Thompson** had CI #1 give him a ride to another location from this location.

41.     A covert electronic audio/video recorder was used during this transaction. Detective Alvin Babcock reviewed the recording and found that **Anthony Thompson** asked CI #1 to take him to Cottonwood (mobile home park in Junction City, Geary County, KS). **Anthony Thompson** told CI #1 he needed to go to this location "so he can give this girl some shit" referring to distributing more crack cocaine to a female. As they departed the location en route to the Cottonwood, **Anthony Thompson** was observed putting something in his mouth. This is a common practice utilized by drug distributors to transport small amounts of drugs to thwart law enforcement detection should the person encounter a law enforcement officer. Persons who maintain this type of practice can swallow the illegal drugs if they encounter law enforcement. As CI #1 reaches the mobile home park **Anthony Thompson** tells CI #1 what location to drive to. Once **Anthony Thompson** exits the vehicle, CI #1 states he/she was directed to drive to lot 41B. Detective Alvin Babcock knows this location to be the residence of Audrey Ali or Audrey Nelson, both being the same person.

42.     The Affiant took possession of the evidentiary items and later submitted the evidentiary items to the KBI for analysis and received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 3 which were found to be seven (7) plastic baggies total and having a net weight of 2.70 grams total.

43.     On 09/06/2012, CI #1 met with Detective Alvin Babcock and other Officers in reference to purchasing prescription pills from Garland Hull. CI #1 contacted Garland Hull at telephone number (785) 762-5346. CI #1 met with Garland Hull at the intersection of 10th and Webster Streets in Junction City, Geary County, KS. Garland Hull gave CI #1 a prescription bottle with numerous pills in it and CI #1 gave Garland

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 17 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 101 of 167

421

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 421

Hull the US Currency for the pills.  Garland Hull then departed and entered the residence at 922 N Webster Street in Junction City, Geary County, KS.  Detective Alvin Babcock took possession of the evidentiary items and determined the pills were Oxycodone (Schedule II) and Clonazepam (Schedule IV).  Detective Alvin Babcock submitted the evidentiary times to the KBI for analysis.

44.     On 09/25/2012, Detective Alvin Babcock and other Officers met with CI #1 for the purpose of CI #1 purchasing ten (10) Oxycodone 20 mg pills from Garland Hull.  CI #1 drove to 922 N Webster Street in Junction City, Geary County, KS where he/she met with Garland Hull who exited from the residence at the aforementioned address.  Garland Hull entered the vehicle CI #1 was driving and eventually received ten (10) pills from him.  CI #1 exited the location and met with Detective Alvin Babcock.  CI #1 gave the evidentiary items to Detective Alvin Babcock who determined the pills were Oxycodone/Hydrochloride 20 mg pills (Schedule II).     Detective Alvin Babcock submitted the evidentiary items to the KBI for analysis.

45.     On 09/27/2012, CI #1 met with the Affiant and other law enforcement officers for the purpose of purchasing crack cocaine from Jason Dixon.  CI #1 called Jason Dixon using telephone number (785) 375-3222.  Jason Dixon answered the phone and a conversation ensued in regards to CI #1 purchasing methamphetamine from him.  Jason Dixon told CI #1 he would have to call CI #1 back to which he did and stated he was not able to locate any methamphetamine to distribute but that he had crack cocaine in his possession to distribute if CI #1 was interested.  CI #1 said he/she was interested in purchasing the crack cocaine.

46.     CI #1 told Jason Dixon he/she wanted two (2) $50.00 rocks of crack cocaine ($100.00 worth of crack cocaine).   The two agreed to meet at Handy's Convenience Store located at 1734 W. Ash Street in Junction City, Geary County, KS.  CI #1 drove to the location and a short time later Jason Dixon arrived and completed the transaction with CI #1.  CI #1 drove back to a predetermine location where he/she then gave the two (2) plastic bag corners containing an off white substance in each to the Affiant.

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 18 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 102 of 167

422

Appellate Case: 23-3102   Document: 01110884675   Date Filed: 07/10/2023   Page: 422

47.    The Affiant took possession of the evidentiary items and later submitted the evidentiary items to the KBI for analysis and received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 2 and having a net weight of 0.82 grams.

48.    On 09/28/2012, the Affiant was contacted by CI #1 and told CI #1 had been in contact with **Anthony Thompson** who agreed to sell CI #1 one-half (1/2) ounce of crack cocaine for $700.00.  **Anthony Thompson** had previously told CI #1 he would sell him/her one-half (1/2) ounce of crack cocaine for $700.00 but at that time he was not in possession of that quantity.  Then later that same day, **Anthony Thompson** contacted CI #1 and said he was now in possession of more crack cocaine and was willing to sell CI #1 the one-half (1/2) ounce.  CI #1 had made several attempts throughout the day (after the previous call) to contact **Anthony Thompson** but the calls were going straight to voicemail and the voicemail box was full so CI #1 was unable to leave a message.  It should be noted throughout this investigation it has been found when **Anthony Thompson** did not answer his phone the voicemail box was nearly always full therefore no voicemail could be left indicating **Anthony Thompson** was apparently receiving a large number of phone calls with voicemails being left.  **Anthony Thompson** eventually contacted CI #1 via cellular telephone and stated he would meet CI #1 and complete the transaction.

49.    CI #1 met with the Affiant and other Officers prior to the purchase.  The Affiant gave CI #1 $700.00 in US Currency to purchase the crack cocaine.  CI #1 once again contacted **Anthony Thompson** via cellular telephone and advised him he/she was ready to meet with him.  **Anthony Thompson** told CI #1 to meet him at the Taco Bell which was located at 407 W 18th Street in Junction City, Geary County, KS.  CI #1 arrived at the location and shortly thereafter was approached by a black male and asked if CI #1 was the person who was there to receive something from "Ant" (**Anthony Thompson**).  CI #1 said "yes" and the black male said he would be right back with "it" referring to the crack cocaine.  Sergeant Todd Godfrey of the JCPD identified the black male who approached CI #1 as **Albert Banks**.  Approximately four (4) minutes later, **Albert Banks** reappeared and entered the passenger side of CI #1's vehicle where he sold CI #1 the crack cocaine.  CI #1 told **Albert Banks** to tell **Anthony Thompson** if the crack cocaine was good, CI #1 would want one (1) ounce of crack cocaine next week.

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 19 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 103 of 167

423

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 423

**Albert Banks** agreed and told CI #1 to contact **Anthony Thompson** next week. **Albert Banks** then exited the vehicle and walked to the south and was not surveilled due to the location and the fact he was walking.

50.     Prior to the purchase taking place, Detective Alvin Babcock recalled seeing a black male with dreadlocks and a white t-shirt leave Wood Oil Convenience Store (located at 439 W 19th Street in Junction City, Geary County, KS adjacent to the Taco Bell) and walk towards Taco Bell. This was the same black male later identified as **Albert Banks**. **Albert Banks** met with another unknown black male in front of Taco Bell in the parking lot who then departed shortly after meeting with **Albert banks**. Shortly thereafter, Detective Alvin Babcock recalled seeing a heavy set black female exit the Wood Oil Convenience Store and enter into a gold in color Four Taurus which Detective Alvin Babcock knew belonged to **Albert Banks** and his girlfriend Glenda Robertson. The vehicle was bearing Kansas license tag 882FEE. A registration request was run and the vehicle was found to be registered to Glenda Robertson and Ola Mae Gavin. Ola Mae Gavin is the mother of Glenda Robertson. This vehicle remained at its location throughout the purchase of crack cocaine.

51.     The Affiant took possession of the evidentiary item and later submitted the evidentiary items to the KBI for analysis and received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 3 and having a net weight of 13.89 grams.

52.     On 10/02/2012, the Affiant and Detective Alvin Babcock met with CI #1 for the purpose of making a controlled phone call to **Anthony Thompson** for the purpose of trying to obtain one (1) ounce of crack cocaine from him. **Anthony Thompson** did not answer and the call went to voicemail but once again the voicemail box was full and CI 31 was not able to leave a message. A recording device was left with CI #1 in order for him/her to make a phone call later and have a recording of it.

53.     On 10/03/2012, Detective Alvin Babcock and Detective Angie Weeks met with CI #1 to obtain the recording device from him and listen to the completed phone between CI #1 and **Anthony Thompson**. During the phone call, CI #1 talked to **Anthony Thompson** in reference to obtaining a "full one" referring to one (1) ounce of crack cocaine. **Anthony Thompson** told CI #1 the cost would be $1,400.00. CI #1 told **Anthony Thompson** he/she didn't have $1,400.00 and **Anthony Thompson** told CI #1

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 20 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 104 of 167

424

Appellate Case: 23-3102      Document: 01110884675      Date Filed: 07/10/2023      Page: 424

he would sell CI #1 an ounce of crack cocaine for $1,200.00. CI #1 asked **Anthony Thompson** if "homeboy was going to meet CI #1 again like he did the other day" referring to **Albert Banks**. **Anthony Thompson** said he would call "him" (**Albert Banks**) and find out. CI #1 and **Anthony Thompson** agreed to meet at approximately 2:00 PM to complete the transaction.

54.     At approximately 2:00 PM, CI #1 contacted **Anthony Thompson** via cellular telephone where CI #1 asked **Anthony Thompson** if he was ready (meaning CI #1 wanted to know if **Anthony Thompson** had the ounce of crack cocaine to distribute to CI #1). **Anthony Thompson** asked CI #1 if he/she had the "12" referring to the $1,200.00 to which he/she replied "yes". CI #1 asked **Anthony Thompson** if he was going to have "little homeboy" bring the crack cocaine to CI #1 referring to **Albert Banks** delivering it to CI #1 as he did on 09/28/2012. **Anthony Thompson** said "he had it anyway" referring to **Albert Banks** having the crack cocaine **Anthony Thompson** and **Albert banks** were distributing. **Anthony Thompson** said he would call "him" referring to **Albert Banks** and call CI #1 right back.

55.     Approximately two (2) minutes later, **Anthony Thompson** called CI #1 back, asked where he/she was and where CI #1 wanted to meet. CI #1 stated he/she liked the Taco Bell location, where he had met **Albert Banks** previously. **Anthony Thompson** indicated he had talked to **Albert Banks** and **Albert Banks** wanted to know if CI #1 would pay $1,250.00 for the ounce of crack cocaine instead of the earlier agreed upon price of $1,200.00. CI #1 agreed upon the price of $1,250.00. **Anthony Thompson** agreed upon the meeting location and asked CI #1 when he/she would be arriving at the location to which CI #1 replied, 15 minutes". **Anthony Thompson** told CI #1 to call him (**Anthony Thompson**) when CI #1 arrived at the location.

56.     CI #1 arrived at the location and attempted to contact **Anthony Thompson** via cellular telephone but **Anthony Thompson** did not answer. Approximately 17 minutes later, **Anthony Thompson** called CI #1 back and said he had seen a JCPD patrol vehicle parked near the meeting location and therefore wanted CI #1 to exit the parking lot, turn right and then turn left at the first intersection and meet **Anthony Thompson** in that area to which CI #1 complied. It should be noted this location is actually a dead end street making surveillance complicated as to seeing the

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 21 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 105 of 167

425

Appellate Case: 23-3102   Document: 010110884675   Date Filed: 07/10/2023   Page: 425

vehicle **Anthony Thompson** was driving. CI #1 parked in the 2000 block of N Madison Street in Junction City, Geary County, KS at which time **Anthony Thompson** appeared and entered into the passenger side of CI #1's vehicle.

57.     The transaction was completed and CI #1 had a conversation with **Anthony Thompson**. CI #1 asked **Anthony Thompson** how much crack cocaine he was purchasing per week to distribute. **Anthony Thompson** said it was approximately nine (9) ounces per week. The two continued to converse further and then **Anthony Thompson** exited the vehicle and CI #1 drove away en route to a pre-determined location. Detective Alvin Babcock and Captain Shawn Peirano of the Grandview Plaza Police Department (GPPD) were able to observe **Anthony Thompson** leave the location where the transaction took place and as he left, **Albert Banks** was seen in the vehicle with **Anthony Thompson**.

58.     The Affiant took possession of the evidentiary item and later submitted the evidentiary item to the KBI for analysis and received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 4 and having a net weight of 27.74 grams.

59.     On 10/10/2012, Agents/Officers met with CI #1 for the purpose of purchasing one (1) ounce of crack cocaine from **Anthony Thompson**. Detective Alvin Babcock retrieved a digital audio recorder from CI #1 which contained a recorded phone call between CI #1 and **Anthony Thompson** prior to this date. During the phone call, CI #1 told **Anthony Thompson** he/she would be in town (Junction City, Geary County, KS) on Wednesday instead of Thursday and wanted to know if **Anthony Thompson** was "still good" referring to **Anthony Thompson** having crack cocaine to distribute. **Anthony Thompson** told CI #1 he was "good" and asked CI #1 what "he needed". CI #1 said he/she wanted "a yard" referring to an ounce of crack cocaine to which **Anthony Thompson** responded he is "good' meaning he had that quantity to distribute.

60.     CI #1 contacted **Anthony Thompson** via cellular telephone and told him CI #1 was in town (Junction City, Geary County, KS) and wanted to know where **Anthony Thompson** wanted to meet. **Anthony Thompson** told CI #1 to meet him at the McDonald's on 6th Street and then changes the location to the Discount Liquor Store (located at 744 W 6th Street in Junction City, Geary County, KS). CI #1 told **Anthony Thompson** he/she was not aware of the location for that establishment. **Anthony**

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 22 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 106 of 167

426

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 426

**Thompson** told CI #1 it was "up the street from Dillon's" and to give **Anthony Thompson** 15 to 20 minutes (to arrive). Detective Alvin Babcock gave CI #1 directions to the location and he/she departed soon after.

61.    CI #1 arrived at the location and approximately 37 minutes later a grey in color Ford Focus arrived at the location. **Anthony Thompson** exited the vehicle and got into the vehicle CI #1 was driving. A second black male could be seen in the vehicle **Anthony Thompson** arrived in who was later identified as **Albert Banks**. The transaction was completed and as **Anthony Thompson** departed the location, surveillance was attempted on the vehicle he was driving but he was able to avoid being followed by Agents/Officers.

62.    The covert audio/video recording device from CI #1's vehicle was viewed by Detective Alvin Babcock and during the transaction **Anthony Thompson** told CI #1 "if he is unable to get in touch with him, CI #1 could call his bro (**Albert Banks**) at 785-317-1164 and his name is AB (**Albert Banks**)". **Anthony Thompson** told CI #1, AB (**Albert Banks**) was the person CI #1 met with the first time. It should be noted **Anthony Thompson** was referring to CI #1 making a purchase from **Albert Banks** on 09/28/2012 in the Taco Bell parking lot. It should also be noted this transaction took place within 1000' of Larry Dixon Alternative School.

63.    KBI Task Force Agent (TFA) Vidal Campos took possession of the evidentiary item and later submitted the evidentiary item to the KBI for analysis. The Affiant received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 5 and having a net weight of 27.74 grams.

64.    On 10/23/2012, Detective Alvin Babcock received a telephone call from CI #1 stating CI #1 attempted to contact **Albert Banks** several times to initiate a controlled purchase of crack cocaine from him but **Albert Banks** did not answer any of the incoming phone calls from CI #1. CI #1 did say he/she had a conversation with **Albert Banks** via text messaging though and forwarded the text messages to Detective Alvin Babcock. The messages are as follows;

- Is this AB that knows Ant who I got # from I am *******(omitted)
- What up yea this AB
- Will be comeing to Junk City if u got some work for me tomorrow

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 23 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 107 of 167

427

Page: 427        Date Filed: 07/10/2023        Document: 01110884675        Appellate Case: 23-3102

- Yep hit me up when u ready
- Is there a money cut on 2

This conversation is translated to mean CI #1 sent a text message to **Albert Banks** asking if the number texted was **Albert Banks**. He indicated it was **Albert Banks**. CI #1 advised him he/she would be coming to Junction City, Geary County, KS tomorrow and wanted to know if **Albert Banks** had crack cocaine to purchase. **Albert Banks** indicated he had crack cocaine for distribution and for CI #1 to call him when CI #1 was ready. CI #1 asked if he/she would receive a discounted cost if he/she purchased two (2) ounces.

65.    CI #1 then contacted **Albert Banks** via cellular telephone later and they conversed in reference to CI #1 not being able to make it to Junction City on this date. CI #1 said he/she would be in Junction City tomorrow (10/24/2012) and if **Albert Banks** had more (more than one or two ounces), CI #1 may want to purchase more quantity. **Albert Banks** stated he may possibly have more available and for CI #1 to call him tomorrow. CI #1 later received a text message from **Albert Banks** which read; U still want this o if not I am bout to get rid of it. This text was asking CI #1 if he/she was still planning on purchasing the ounce of crack cocaine CI #1 had asked for and if CI #1 did not want it, **Albert Banks** was going to sell it to someone else.

66.    On 10/24/2012, the Affiant and other Officers met with CI #1 for the purpose of CI #1 making a crack cocaine purchase from **Albert Banks**. CI #1 called **Albert Banks** via cellular telephone and told him CI #1 was approximately 15 minutes from Junction City, Geary County, KS and asked **Albert Banks** if he was "good" referring to whether or not he had crack cocaine available for distribution. **Albert Banks** told CI #1 he was "good" and waiting on CI #1. CI #1 asked **Albert Banks** if CI #1 would receive a discount if CI #1 were to purchase two (2) ounces. **Albert Banks** said he did not believe he had that much crack cocaine left but he would "have to go see how much he has" and that he "thinks it's only like 1 ½" meaning he did not have the crack cocaine with him at that time and believed he only had one and one-half (1 ½) ounces left to sell. **Albert Banks** told CI #1 he would give CI #1 a "deal", referring to a break in price, and CI #1 said he/she would take what **Albert Banks** had. CI #1 asked **Albert Banks** where he wanted to meet CI #1 at and **Albert Banks** said to meet him 12th and Jefferson Street (Junction City, Geary County, KS). CI #1 told **Albert Banks** he/she

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 24 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 108 of 167

428

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 428

knew where the Corner Club was (the intersection of 12th and Washington in Junction City, Geary County, KS) and he/she would meet **Albert Banks** there.

67.     CI #1 drove to the aforementioned location where CI #1 met with **Albert Banks** and purchased what was supposed to be 1 ½ ounces of crack cocaine for $1,800.00 which was given to CI #1 by the Affiant.  Detective Alvin Babcock observed **Albert Banks** walking east in the 100 block of W 12th Street prior to meeting with CI #1 and then observed **Albert Banks** exit CI #1's vehicle and walk to a residence having an address of 126 W 12th Street in Junction City, Geary County, KS/

68.     The Affiant took possession of the evidentiary items which were actually two (2) plastic baggies each containing suspected crack cocaine.  KBI TFA Vidal Campos later submitted the evidentiary item to the KBI for analysis.  The Affiant received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 4 and having a net weight of 40.96 grams.

69.     On 10/25/2012, Detective Alvin Babcock was listening to a recorded phone call from the Geary County Detention Center in which Martye Madkins III called telephone number 785-226-0131 (Martye Madkins III was incarcerated at the time in this facility).  The aforementioned telephone number was a cellular telephone number which Jasmine Tipton was utilizing.  Jasmine Tipton answered the phone and they talked briefly then she told Martye Madkins III that **Albert Banks** was there and she gives the phone to **Albert Banks**.  **Albert Banks** and Martye Madkins III talk in reference to bonding Martye Madkins III out of jail.  **Albert Banks** told Marty Madkins III "they already have the money and they are waiting for a co-signor" to bond Martye Madkins III out.  Martye Madkins III asks **Albert Banks** the question of, "My cousin did that bullshit man?" **Albert Banks** replied, "There was two (2) onions laying on the table".  Martye Madkins III said, "I'm gonna snap on they motherfucking ass".  **Albert Banks** told Martye Madkins III that he "hurried up and slid down there".  it should be noted this conversation meant there were two (2) ounces of crack cocaine on the table at Jasmine Tipton's residence (227 W 14th Street Apartment #2 in Junction City, Geary County, KS) and **Albert Banks** retrieved it hurriedly.  **Albert Banks** also said "they" were trying to bond "Dirty Dwayne" out of jail but "Dirty Dwayne's" stepfather would not co-sign to get him out of jail.  Detective Alvin Babcock knows "Dirty Dwayne" to be Dwayne

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 25 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 109 of 167

429

Appellate Case: 23-3102     Document: 01011084675     Date Filed: 07/10/2023     Page: 429

Alexander who is a partner of **Anthony Thompson, Albert Banks** and Martye Madkins III.

70.     On 10/29/2012, Detective Alvin Babcock received a text message from CI #1 which included a text message conversation CI #1 had with **Albert Banks**. The text message from CI #1 to **Albert Banks** read; "Will be out 4 sure on Friday. Will u be ready for my 2200" indicating CI #1 would be in Junction City, Geary County, KS on Friday and CI #1 wanted to know if **Albert Banks** would have cocaine to distribute to CI #1. **Albert Banks** simply replied back "Yep". A purchase of crack cocaine was attempted but **Albert Banks** indicated, during a telephone conversation, that it would be a couple of hours. A couple hours later, CI #1 contacted **Albert Banks** once again and **Albert Banks** indicated he was not in town (Junction City, Geary County, KS). CI #1 attempted to contact **Albert Banks** a short time later and he did not answer his cellular telephone so the attempted purchase of crack cocaine was discontinued for this date.

71.     On 10/31/2012, Detective Alvin Babcock observed a green in color Ford Thunderbird being driven by Glenda Robertson in the 500 block of E 8th Street in Junction City, Geary County, KS. The vehicle traveled along multiple streets and made several turns finally entering into an alleyway where Detective Alvin Babcock lost sight of it. Captain Shawn Peirano of the GPPD gained sight of the vehicle traveling through the alleyway where it was last seen. Detective Alvin Babcock drove to the intersection of 12th and Franklin Street in Junction City, Geary County, KS and observed the vehicle with **Albert Banks** in the front passenger seat and Glenda Robertson in the driver's seat. To the best of Detective Alvin Babcock's knowledge, at that time **Albert Banks** and Glenda Robertson were in a domestic relationship. Detective Alvin Babcock observed the vehicle turn west on 12th Street and finally stopping in front of a residence located at 126 W 12th Street in Junction City, Geary County, KS. **Albert Banks** exited the vehicle, approached the residence, then walked past the building and continued toward the alley where Officers lost sight of him. Detective Alvin Babcock was aware of previous information from SOI #1 who stated **Albert Banks** stashes or hides his cocaine in random alleys where it is left until he needs it for distribution. Once **Albert Banks** has a need for an unknown quantity of cocaine, he will proceed to the location where he had hid the cocaine, obtain it and then transport it to the person/s to distribute it. This

24

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 26 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 110 of 167

430

practice is done in an effort to conceal the possession of the illegal drugs in case law enforcement were to locate where **Albert Banks** was residing and execute a search warrant at that residence. If the illegal drugs were located in a location other than in or on property where **Albert Banks** resides or was located at, the drugs would not be associated to him.

72.     On 11/07/2012, CI #1 contacted Detective Alvin Babcock and said he/she had sent **Albert Banks** a text message asking him if he had any "work" for CI #1 referring to any crack cocaine for CI #1 to purchase. **Albert Banks** replied back "Yep". It should be noted no certain quantity of crack cocaine had been discussed or agreed up on by either party as the conversation was being conducted via text messaging. CI #1 arrived in Junction City, Geary County, KS and met with Agents/Officers. A controlled phone call was made to **Albert Banks** who told CI #1 to meet him at the same location as before referring to the Corner Club located at the intersection of 12th Street and Washington Street in Junction City, Geary County, KS. The Affiant gave CI #1 $2,200.00 in US Currency to be utilized for the crack cocaine purchase.

73.     CI #1 drove to the aforementioned location and once again called **Albert Banks** via cellular telephone to tell him CI #1 had arrived at the agreed upon location. **Albert Banks** told CI #1 to meet him in front of the residence where he had had contact with **Albert Banks** previously (10/24/2012) which was 126 west 12th Street in Junction City, Geary County, KS. CI #1 did as he/she was instructed to and upon parking, a black male (later identified by Detective Alvin Babcock as **Albert Banks**) exited the residence and approached CI #1. **Albert Banks** gave CI #1 a plastic baggie containing two (2) plastic baggies each having an off white substance in them later, determined to be crack cocaine. CI #1 gave **Albert Banks** the $2,200.00 in US Currency and then asked **Albert Banks** if he/she could purchase three (3) more ounces of crack cocaine in a couple of days if CI #1 was able to sell this two (2) ounces. **Albert Banks** agreed and told CI #1 to call him when he/she was ready. CI #1 left the location and met with the Affiant and other Agents/Officers.

74.     The Affiant took possession of the evidentiary item and later signed it over to KBI TFA Vidal Campos who later submitted the evidentiary item to the KBI for

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 430

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 27 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 111 of 167

431

Appellate Case: 23-3102      Document: 01110884675      Date Filed: 07/10/2023      Page: 431

analysis.  The Affiant received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 5 and having a net weight of 56.08 grams.

75.     On 11/14/2012, The Affiant and other Agents/Officers met with CI #1 for the purpose of CI #1 purchasing crack cocaine from **Anthony Thompson**.  CI #1 had been in contact with **Anthony Thompson** prior and had asked **Anthony Thompson** if he/she could purchase three (3) ounces of crack cocaine from him.  **Anthony Thompson** told CI #1 he/she could as **Anthony Thompson** "was sitting fat right now" referring to having a large quantity of crack cocaine for distribution at that time.  A negotiated price of $3,300.00 for the three (3) ounces of crack cocaine was agreed upon.

76.     Later this day (11/14/2012), CI #1 contacted **Anthony Thompson** once again via cellular telephone.  **Anthony Thompson** told CI #1 he was not in Junction City, Geary County, KS at that time and would not be returning for two to two and a half (2 to 2 ½) hours as he was trying to "get it" referring to attempting to obtain more cocaine as he had obviously distributed all cocaine he had talked to CI #1 about previously. .  CI #1 told **Anthony Thompson** he/she would be waiting for him once he returned.  CI #1 and **Anthony Thompson** had contact via cellular telephone at a later time at which **Anthony Thompson** said he wanted to meet CI #1 at the Taco Bell parking lot (located at 407 W 18th Street in Junction City, Geary County, KS) once again.  **Anthony Thompson** advised CI #1 he now wanted $3,600.00 for the three (3) ounces of crack cocaine.   CI #1 was able to negotiate the price down to $3,400.00 and the transaction was agreed upon.

77.     The Affiant gave CI #1 $3,400.00 in US Currency to complete the transaction.  CI #1 drove to the aforementioned location and waited on **Anthony Thompson**.  After a period of time, CI #1 called **Anthony Thompson** once again to see if was getting close to the location as earlier, **Anthony Thompson** told CI #1 he was in Manhattan and en route to the location and suspected he would be at the location in 15 minutes but more time had elapsed than that.  **Anthony Thompson** eventually arrived at the location and was seen by surveillance units.  **Anthony Thompson** entered the front passenger seat of the vehicle CI #1 was driving and they began to converse.  **Anthony Thompson** gave CI #1 two (2) plastic baggies each containing an off white chunky substance which was later confirmed to be crack cocaine.  **Anthony Thompson** told CI

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 28 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 112 of 167

432

Appellate Case: 23-3102   Document: 010110884675   Date Filed: 07/10/2023   Page: 432

#1 each baggie weighed one and one-half (1 ½) ounces. **Anthony Thompson** told CI #1 they (the two packages and their contents) were still warm as he had just made it meaning he had just recently converted cocaine powder to crack cocaine immediately prior to meeting with CI #1. CI #1 gave the US Currency to **Anthony Thompson** and asked him to count it to confirm the amount was correct to which he did.

78.     Once the transaction was complete, **Anthony Thompson** exited the vehicle and walked to the south from this location. **Anthony Thompson** was observed by Detective Alvin Babcock walking in the yard of a residence located at 412 Roosevelt Street in Junction City, Geary County, KS but he was not seen entering the residence. Although the grey in color Ford Focus he had been seen driving previously was not seen near this location either. CI #1 drove to a predetermined location where he/she met with Agents/Officers. CI #1 gave the two (2) plastic baggies to the Affiant and the Affiant could feel they were still warm even given the cold ambient temperature outside at the time.

79.     The Affiant took possession of the evidentiary items and later transported and later submitted the evidentiary items to the KBI for analysis. The Affiant received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 6 and having a net weight of 82.95 grams.

80.     On 11/30/2012, Detective Alvin Babcock was contacted by SOI #1. It is unclear if **Albert Banks** was conversing with SOI #1 or if SOI #1 overheard a conversation **Albert Banks** was having with someone else (on 11/30/2012) but SOI #1 told Detective Alvin Babcock that **Anthony Banks** had eluded "them" (Detective Alvin Babcock and someone else) on 11/29/2012.

81.     On 11/29/2012, Detective Alvin Babcock and Detective Angie Weeks were in his unmarked police vehicle when they observed **Albert Banks** driving a silver in color Dodge Stratus in the 1200 block of north Jefferson Street in Junction City, Geary County, KS. Detective Alvin Babcock turned his police vehicle around in an attempt to follow **Albert Banks** and obtain the vehicle tag number displayed on the vehicle he was driving. **Albert Banks** turned east into an alleyway and continued at a high rate of speed indicated to Detective Alvin Babcock by the cloud of dust in the alleyway. Detective Alvin Babcock then observed **Albert Banks** run to a residence located at 126 W. 12th

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 29 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 113 of 167

433

Page: 433          Date Filed: 07/10/2023          Document: 010110884675          Appellate Case: 23-3102

Street. Detective Alvin Babcock was able to observe the tag number on the grey in color Dodge Stratus which was 214 EBL. Detective Alvin Babcock knows this vehicle to belong to Barbara Shaw. Detective Alvin Babcock is aware from previous law enforcement contact and recent CI conversation that Barbara Shaw (AKA "Smiley") is heavily ingesting crack cocaine at the residence located at 126 ½ W. Chestnut Street in Junction City, Geary County, KS.

82.     SOI #1 also told Detective Alvin Babcock a person SOI #1 knows as "Ace' (known to Detective Alvin Babcock as Adrian Muse) was in Junction City, Geary County, KS on 11/29/2012 and was observed with **Anthony Thompson**. This was the first time SOI #1 had met "Ace" (Adrian Muse). SOI #1 had received information indicating Adrian Muse had been "raided" (search warrant executed at his residence) by the "Feds" (Federal Law Enforcement Officers) and a stolen firearm was located. SOI #1 was told the "feds" issued Adrian Muse a citation for being in possession of the stolen firearm and then told Adrian Muse something about the "Cartel" and therefore Adrian Muse is frightened the Cartel is looking for him. SOI #1 also advised he/she believed **Anthony Thompson** had been supplied cocaine by Adrian Muse in the past but since Adrian Muse had been "raided" by the "Feds", he hadn't supplied **Anthony Thompson** with cocaine.

83.     It should be noted, the Affiant is aware of a search warrant which had been executed at a residence located at 18921 W. 160th Terrace in Olathe, Johnson County, KS on 10/24/2012 (residence of Adrian Muse) in which a large digital scale, a Springfield Armory Xd-40 pistol (which was found to have been reported as stolen), an Apple I-phone, one (1) firearm magazine and nine (9) rounds of Springfield 40 caliber ammunition were seized. This information/documentation is in reference to Olathe Police Department case number 2012-0016325.

84.     SOI #1 also told Detective Alvin Babcock that SOI #1 had heard **Anthony Thompson** had recently drove to Kansas City (no indication whether it was Kansas City, KS or Kansas City, MO) to obtain more cocaine for conversion to crack cocaine and ultimately for distribution. **Anthony Thompson** met with an unknown cocaine supplier who he gave $3,000.00 in US Currency to purchase the cocaine. The unknown supplier stole the $3,000.00 from **Anthony Thompson**.

434

Page: 434

Date Filed: 07/10/2023

Document: 0101108884675

Appellate Case: 23-3102

85.    SOI #1 believed **Anthony Thompson** and **Albert Banks** were to be obtaining two (2) ounces of cocaine on this day but it was unknown where they were going to obtain it and who they were to obtain it from.

86.    SOI #1 also told Detective Alvin Babcock that **Albert Banks** allegedly moved to a residence located behind a residence Caress Jackson resided at.  Detective Alvin Babcock believes Caress Jackson to reside at 235 E 3rd Street in junction City, Geary County, KS.  Detective Alvin Babcock knows **Albert Banks** and Caress Jackson have a child together.

87.    On 01/22/2013, CI #1 contacted **Anthony Thompson** in reference to purchasing crack cocaine from him on 01/23/2013 at approximately 11:30 AM. **Anthony Thompson** stated he would not be out of school classes until 12:00 PM.  CI #1 asked him if they could meet at approximately 12:30 PM to which **Anthony Thompson** agreed.  **Anthony Thompson** asked CI #1 if he/she wanted "a whole one" referring to one (1) ounce of crack cocaine to which CI #1 replied "yes".  CI #1 asked **Anthony Thompson** if he/she could purchase the ounce of crack cocaine for $1,275.00.  **Anthony Thompson** replied, "I can't swing it right now buddy.  Ain't no possible way".  CI #1 asked if he/she could purchase it for $1,300.00 and at approximately the same time, **Anthony Thompson** stated "whole, 14.  It's going to be worth it though".  CI #1 was trying to negotiate a lower price for the ounce of crack cocaine but **Anthony Thompson** stated the price would be higher and wanted $1,400.00 for it.  The conversation continued ending with the two of them agreeing to meet on 01/23/2013 at approximately 12:30 PM.

88.    On 01/23/2013, CI #1 met with Agents/Officers and made a controlled phone call to **Anthony Thompson**.  CI #1 asked **Anthony Thompson** if he was ready to meet and **Anthony Thompson** said he was just getting out of school.  **Anthony Thompson** went on to say, "Gotta get everything ready.  I got it ready" referring to preparing the crack cocaine for distribution and then stated he had it prepared.  CI #1 asked **Anthony Thompson** where he wanted to meet at and **Anthony Thompson** stated they could meet at the Taco Bell in approximately one (1) hour.

89.    Approximately one (1) hour later, CI #1 called **Anthony Thompson** once again.  **Anthony Thompson** said, "On my way there now buddy".  CI #1 asked **Anthony Thompson** if he wanted CI #1 to proceed to the meeting location.  **Anthony Thompson**

Case 5:15-cv-03093-HLT    Document 182-16    Filed 09/18/20    Page 31 of 71
Case 5:13-cr-40060-DDC    Document 346-1    Filed 06/30/14    Page 115 of 167

435

Appellate Case: 23-3102      Document: 010110884675      Date Filed: 07/10/2023      Page: 435

said, "No, I'm coming from Manhattan. I'll meet you on the edge (referring to the east side of Junction City, Geary County, KS), that gas station by Wal-Mart (referring to the Shell Travel Center located at 821 East Chestnut Street in Junction City, Geary County, KS)". CI #1 asked, "The truck stop" to which **Anthony Thompson** replied, "I'm about two or three (2 or 3) minutes out" and the conversation ended. The Affiant gave CI #1 $1,400.00 in US Currency to purchase the crack cocaine.

90.    CI #1 drove to the agreed upon location and waited for **Anthony Thompson** to arrive. **Anthony Thompson** eventually arrived in a vehicle being driven by a black male whom Detective Alvin Babcock identified as Michael Asbury. **Anthony Thompson** entered into the passenger side of the vehicle CI #1 was driving and the $1,400.00 was exchanged for the ounce of crack cocaine. CI #1 asked **Anthony Thompson** for a phone number for **Albert Banks** as CI #1 had been trying to contact **Albert Banks** but the phone number CI #1 had for **Albert Banks** was not in working order anymore. **Anthony Thompson** said the phone number for **Albert Banks** was **(785) 375-6704**. CI #1 and **Anthony Thompson** then departed. CI #1 was followed to a pre-determined location where CI #1 met with Agents/Officers once again. CI #1 gave the Affiant a clear plastic baggie with an off white chunky substance in it.

91.    The Affiant took possession of the evidentiary item and later transported and later submitted the evidentiary item to the KBI for analysis. The Affiant received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 7 and having a net weight of 27.22 grams.

92.    CI #1 contacted **Albert Banks** via cellular telephone at telephone number (785) 375-6704. It should be noted this phone number was collected from a telephone being used by Patricia Foy on 12/29/2012 and was listed in the contacts of the phone memory as "AB" which is an alias for **Albert Banks**. **Albert Banks** answered and Detective Alvin Babcock recognized the voice as that of **Albert Banks**. CI #1 asked **Albert Banks** to meet him/her as CI #1 stated he/she had some clothes for **Albert banks** to look at. They agree to meet at the Dollar General Store located at the intersection of Chestnut and Franklin Streets in Junction City, Geary County, KS. CI #1 drove to the aforementioned location and a person arrived whom Detective Alvin Babcock identified as **Albert Banks**. **Albert Banks** arrived in a gold in color vehicle bearing Kansas license

436-

Appellate Case: 23-3102   Document: 01110884675   Date Filed: 07/10/2023   Page: 436

tag 181DMY. The vehicle was found to be registered to a 2001 Buick Century with Robert Thomas Keeley of 6826 Meade Loop Fort Riley, KS listed as the owner. After CI #1 and **Albert Banks** were finished conversing, CI #1 met with Agents/Officers once again at which time CI #1 stated he/she conversed with **Albert Banks** in reference to purchasing crack cocaine and **Albert Banks** told CI #1 to contact him anytime CI #1 was ready and he could receive crack cocaine from him thus indicating this phone belonging to **Albert Banks** is being used for the distribution of illegal drugs.

93.     On 02/13/2013, CI #1 met with the Affiant and other Agents/Officers in reference to purchasing crack cocaine from **Albert Banks**. CI #1 contacted **Albert Banks** at telephone number (785) 375-6704 and the two (2) agreed to meet at the Dollar General Store located at 201 S. Franklin Street in Junction City, Geary County, KS. CI #1 told **Albert Banks** he/she wanted to purchase one (1) ounce of crack cocaine from him to which **Albert Banks** agreed. CI #1 arrived at the location and approximately 30 minutes later, CI #1 contacted **Albert Banks** who said he was en route to the location. Approximately 35 minutes later, **Albert Banks** arrived and met with CI #1. This transaction was recorded on a covert electronic audio/video device. **Albert Banks** got into the passenger side of the vehicle CI #1 was driving and shortly thereafter a white female approached **Albert Banks. Albert Banks** told the white female, who was later identified as Kari Stutheit, to get back into her vehicle (which was a silver in color Mitsubishi Eclipse) to which she did. The transaction between CI #1 and **Albert Banks** ensued at which time **Albert Banks** told CI #1 the quantity of crack cocaine would be cheaper in price ($1,250.00) as it was "3 off" meaning the weight was 25 grams instead of the 28 grams earlier agreed upon. The transaction concluded and CI #1 left the location to meet with the Affiant.

94.     **Albert Banks** was observed getting out of CI #1's vehicle by SSA Amanda Young and KBI TFA Vidal Campos. They observed **Albert Banks** approach the white female earlier identified as Kari Stutheit sitting in the vehicle she drove to this location in. SSA Amanda Young and TFA Vidal Campos observed what they described as a hand-to-hand transaction between Kari Stutheit and **Albert Banks**. This refers to **Albert Banks** selling Kari Stutheit crack cocaine.

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 33 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 117 of 167

437

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 437

95.     Surveillance members observed **Albert Banks** enter into a dark in color Ford Focus bearing Kansas license tag 781FDR which was registered to Karen Johnson. Detective Alvin Babcock stated he notes Karen Johnson as being involved in the drug trade in Junction City, Geary County, KS area.

96.     When CI #1 met with the Affiant, he/she gave the Affiant the evidentiary item he/she purchased from **Albert Banks.** This was described as a clear plastic baggie containing an off white substance. The Affiant took possession of the evidentiary item and later completed an Evidence Custody Receipt and signed the item over to SSA Amanda Young to transport to the KBI Evidence Control Center to be held for analysis.

97.     The Affiant received a Forensic Laboratory Report stating cocaine base was detected in Lab Item 8 and having a net weight of 24.63 grams.

## CONFIDENTIAL SOURCES

98.     To date, there are two cooperating individuals (CI's) that have been developed and assisting in the investigation. Only one of the CI's has been able to infiltrate this organization actively. This particular CI has been able to make purchases of crack cocaine from only certain persons involved in this organization. Multiple crack cocaine purchases have been made beginning with small amounts of crack cocaine with progressively larger purchases being made up to three ounces in quantity. Although this particular CI has been able to gain limited trust from these individuals, the full scope of the organization, the persons involved and the source of supply have not been identified as is doubtful this information will be identified due to the guarded nature of the distribution ring and the source of supply. Early within the investigation, it was hoped purchasing larger quantities of crack cocaine would afford law enforcement the ability to identify the source of supply but as of this date, that has not been available as **Anthony Thompson** and **Albert Banks** have been able to supply the quantities requested therefore it is the belief of law enforcement that the source of supply would not identified to law enforcement utilizing this traditional means of investigation. Others within this distribution organization will likely never be identified as the CI has reached the upper

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 34 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 118 of 167

438

Appellate Case: 23-3102     Document: 01011084675     Date Filed: 07/10/2023     Page: 438

echelon of this organization therefore others distributing crack cocaine for **Anthony Thompson** and **Albert Banks** will likely not ever be identified to this CI.

99.     The other CI has indicated an unwillingness to be identified or testify in court for fear of his/her physical safety. Fear not only of **Anthony Thompson** and **Albert Banks,** but also of others associated with the organization. This CI is unwilling to make purchases from any of the individuals and therefore provides limited information related to this organization.

100.     A person whom has been identified as a Source of Information has been developed but once again has very limited knowledge of the organization therefore making it difficult to corroborate all the information the SOI is receiving. Much of the information the SOI receives is dated information as it is learned by the SOI after the fact. This SOI has also indicated an unwillingness to be identified or testify in court for fear of his/her physical safety

101.     No other cooperating individuals have been developed and none are anticipated to be developed to assist in this investigation due to the inherent risks of bodily harm that persons have expressed may occur if they were to assist in the arrest of **Anthony Thompson, Albert Banks** or any of their co-conspirators. Due to the structure and loyalty of the members of this organization, it is unlikely that any other CI's can, or will be, developed from those who associate with or are members of this organization.

## PEN REGISTER INFORMATION AND ANALYSIS

102.     To further the investigation, Pen Register was initiated on the target phone number **(785) 226-1783** pursuant to a Kansas Court Order. The Affiant was aware **Anthony Thompson** used the telephone for illegal drug transactions, as purchases CI #1 made from **Anthony Thompson** were arranged over the telephone. In January 2013, Affiant began receiving Pen Register information for the telephone number **(785) 226-1783,** for a period of time from 01-07-2013 to 02-22-2013. The subscriber information was obtained through the official phone provider business records. This particular phone is what is known as a Pre-paid phone and is utilized through T-Mobile. The subscriber information indicated this phone was subscribed to Jason Roberts but the Affiant knows

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 35 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 119 of 167

439

Appellate Case: 23-3102      Document: 010110884675      Date Filed: 07/10/2023      Page: 439

it to be used by **Anthony Thompson** through this investigation. This type of phone service does not require a positive identification by the subscriber prior to the authorization. Although **Anthony Thompson** hasn't had this telephone number throughout this entire investigation, this is the telephone number he is utilizing at this time and the telephone number the Pen Register was initiated on.

103.   The Pen Register for the 47 days indicated 6,919 total phone calls and 770 text messages were recorded. Of the 6,919 total phone calls; 5,607 were incoming calls with 1,285 outgoing and 28 unknown to the phone number. The records show 283 separate phone numbers were either dialed or dialed into the target phone number. The average number of calls/text messages per day was 164. The average length of incoming call in duration was 33 seconds and the average length of outgoing call in duration was 1 minute and 25 seconds which does not include text messages sent or received as those means of communication do not record any minute usage. The Affiant is aware through experience and training that many calls involving illegal drug transactions are of short duration. The short duration of those phone calls occurring on the target phone is indicative of illegal drug transactions.

104.   Of the 283 phone numbers only 150 of them have been identified, or are believed to have been identified, thus far in the investigation. Of these 150 identified phone numbers, 31 are registered to businesses that have no names of actual persons attached to the subscriber information. Of the remaining 119 phone numbers that have been identified, 80 of the known, or believed to be identified, subscribers named are known associates of **Anthony Thompson** and/or have past arrests for narcotics violations.

## TELEPHONE SUBSCRIBER INFORMATION OF INTEREST

105.   On 01/07/2013, a Pen Register was initiated on telephone number **(785) 226-1783**. The following phone numbers, frequency of calls/text messages, and subscriber information is detailed below. This is not an inclusive list, but a list of frequently dialed numbers and criminal information related to the subscriber; or in some cases the person believed to be actually utilizing the particular telephone as some of the

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 36 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 120 of 167

440

Appellate Case: 23-3102   Document: 01011084675   Date Filed: 07/10/2023   Page: 440

phone numbers subpoenaed had no subscriber attached to the phone. This is indicative of a pay-as-you-go type phone, which do not require a person to list their actual name and in some cases no name or identification at all is required to activate the phone. In some cases, the phone was in the name of a person (as the subscriber) which was other than the actual person using the phone.

106.    The phone number **(785) 317-1281** was indicated a total of 509 times from 01/07/2013 to 02/20/2013. The subscriber information shows this phone registered to Jalisa Carson, B/F DOB 06/18/1988, who resides at 2035 Fort Riley Boulevard, Manhattan, Kansas. Jalisa Carson reported suspicious activity at the aforementioned address on 01/11/2013 and provided law enforcement with this phone number as belonging to her. Jalisa Carson resides with **Anthony Thompson** and they have a child together. Jalisa Carson has the following criminal history indicating arrests. 06/18/2004 Contempt of court indirect X2. 07/14/2004 Battery. 07/16/2004 Probation violation. 01/21/2007 Aggravated assault; battery; operating a motor vehicle without a valid license.

107.    The phone number **(785) 375-6704** was indicated a total of 368 times from 01/07/2013 to 02/20/2013. The subscriber information shows this phone registered to no name but is known, through this investigation to belong to **Albert Banks**, B/M 12/23/1981 who has been detailed throughout this affidavit. It is unknown where **Albert Banks** currently resides and throughout this investigation it has been determined **Albert Banks** moves from location to location and doesn't reside at any one location as a permanent residence. **Albert Banks** has the following criminal history for arrests as an adult. 02/08/2002 driving while license cancelled, suspended, revoked and operating a motor vehicle without a valid license. 03/15/2004 sale, etc. depress/stimulants/hallucinogen/ steroids within 1000' of a school; criminal use of weapons; sale, offer depressants/hallucinogen/stimulants/anabolic steroids; obstructing legal process in a felony case; no drug tax stamp for marijuana or controlled substance. 03/25/2004 aggravated battery; criminal threat; kidnapping; aggravated intimidation of a witness or victim. 09/25/2004 use or possess drug paraphernalia to introduce in human body; possession of depressant/stimulants/hallucinogenics/steroids; 09/29/2004 attempt to use or possess drug paraphernalia to introduce in human body; attempt possession of

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 37 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 121 of 167

441

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 441

depressants/stimulants/hallucinogenics/anabolic steroids. 02/10/2005 sale etc. of opiates, opium or narcotic drugs. 09-29-2007 Possession of depressant/stimulants/hallucinogenics/steroids. 10/25/2007 Possession of depressant/stimulants/hallucinogenics/steroids; Possession of opiates, opium or narcotic drugs; Possession of hallucinogenic; Sale, offer depressant/hallucinogenics/stimulants/anabolic steroids; no drug tax stamp for marijuana or controlled substance; Possession of simulated controlled substances or drug paraphernalia. 08/01/2011 Aggravated Assault; Conspiracy criminal damage to property; criminal possession of a firearm by felon; Felony/drug conviction firearm used in crime. 04/21/2012 Felony criminal possession of a firearm; aggravated assault. 06/21/2012 Contempt of court. 07/25/2012 Failure to appear

108.    The phone number **(785) 307-6308** was indicated a total of 282 times from 01/07/2013 to 02/19/2013. The subscriber information shows this phone registered to, or believed to be used by, Christina Peters (Snyder), B/F XXXXXXXXXXXX. Christina Peters has the following criminal history indicating arrests. 09/30/2010 Possession depressant/stimulant/hallucinogen/anabolic steroid; Use/possess with intent to use drug paraphernalia into human body; theft of services; failure to appear.

109.    The phone number **(785) 210-5082** was indicated a total of 334 times from 01/07\2013 to 02\20\2013. This phone number was subpoenaed and found to be a TracFone with no listed person as the subscriber.

110.    The phone number **(785) 418-4926** was indicated a total of 249 times from 01/08/2013 to 02/20/2013. This phone number was subpoenaed and indicated this is a prepaid telephone with no subscriber information available.

111.    The phone number **(785) 317-7682** was indicated a total of 293 times from 01/08/2013 to 02/20/2013. The subscriber information shows this phone registered to Angela Foy, W/F XXXXXXXXXXXX but is believed to be used by Patricia Foy (Park), W/F DOB 06/12/1965. Patricia Foy has the following criminal history indicating arrests. 02/28/2002 Possession of opiates, opium or narcotic drugs; possession of depressants/stimulants/hallucinogenics/anabolic steroids; possession of controlled substances or drug paraphernalia. 05/15/2002 Possession of opiates, opium or narcotic drugs; possession of simulated controlled substances or drug paraphernalia. 06/27/2006

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 38 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 122 of 167

442

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 442

Possession of opiates, opium or narcotic drugs. 03/14/2007 theft. 08/24/2007 Sale etc. of opiates, opium, or narcotic drugs; possession of paraphernalia to grow, distribute marijuana. 07/29/2008 Conspiracy to aiding a felon; conspiracy theft; burglary. 08/06/2008 Probation violation. 06/27/2009 Domestic battery; disorderly conduct; criminal restraint. 09/22/2011 Possession of opiates, opium or narcotic drugs; possession of simulated controlled substances or drug paraphernalia. 12/29/2011 Theft. It should be noted; Patricia Foy was arrested on December 29, 2012 by the Junction City Police Department and was in possession of a cellular telephone (believed to be the phone having this telephone number but not confirmed) which had telephones numbers for **Anthony Thompson** and **Albert Banks** which are the same telephone numbers mentioned in this affidavit. Other phone numbers for persons involved in this investigation were also found within the cellular telephone which indicates association between Patricia Foy, **Anthony Thompson, Albert Banks**, and others mentioned in this investigation. Some of the persons phone numbers found in the phone were; Jason Dixon, Richard Verkerke, Sammy Pleas, Delantis Hairston, Linnie Sanders, Jason Roberts (which was the name used as the subscriber for the phone in the possession of **Anthony Thompson**), Charles Foster, Gevonni Davis, Kenneth Wayne Bellamy, Akwete Burd and Felix Jenkins.

112. The phone number **(785) 492-0122** was indicated a total of 257 times from 01\18\2013 to 02\20\2013. This phone number was subpoenaed and found to be a TracFone with no listed person as the subscriber.

113. The phone number **(785) 375-3822** was indicated a total of 177 times from 01/09/2013 to 02/20/2013. The subscriber information shows this phone registered to Michael Asbury, B/M XXXXXXXXXXXXX Michael Asbury has the following criminal history indicating arrests. 02/01/2005 Theft; possession of opiates, opium or narcotic drugs; possession of simulated controlled substances or drug paraphernalia. 08/05/2005 Probation violation.

114. The phone number **(610) 504-8826** was indicated a total of 213 times from 01\12\2013 to 02\19\2013. This phone number was subpoenaed with Janice Rodriguez, W/F XXXXXXXXXXXXX listed as the subscriber. No criminal history could be located for Janice Rodriguez.

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 39 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 123 of 167

443

Appellate Case: 23-3102      Document: 01110884675      Date Filed: 07/10/2023      Page: 443

115. The phone number **(785) 307-2456** was indicated a total of 179 times from 01/19/2013 to 02/21/2013. The subscriber information shows this phone registered to Akwete Burd, B/F DOB XXXXXXXX This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Who Johnny. Akwete Burd has the following criminal history indicating arrest. 07/20/1999 Transfer firearm without background check to prohibited person. 08/01/1999 Theft-take/use/transfer movable property without consent. 08/28/1999 Drugs - 1st degree - sale - 50 kilos or more marijuana/25 kg in zone. 03/24/2011 Driving while license cancelled/suspended/revoked. 05/11/011 Driving while license cancelled/suspended/revoked. 08/07/2011 Driving while license cancelled/suspended/revoked. 08/23/2011 Driving while license cancelled/suspended/revoked. 09/24/2011 Driving while license cancelled/suspended/revoked. 11/14/2011 Failure to appear. 02/03/2012 Failure to appear. 02/08/2012 Probation violation. On 04/18/2012, Akwete Burd facilitated a purchase of crack cocaine to a Riley County Police Department CI but was not charged in the case for unknown reasons (RCPD case #12-017984). 06/13/2012 Failure to appear X2; probation violation. 10/01/2012 Failure to appear X3.

116. The phone number **(785) 307-2624** was indicated a total of 178 times from 01/08/2013 to 02/20/2013. The subscriber information shows this phone registered to Carmean Ridley, B/F DOB XXXXXXXXX No criminal history was located for this subscriber. It is not known whether this person is using the phone or has obtained the phone for use by someone else.

117. The phone number **(785) 375-7607** was indicated a total of 166 times from 01/08/2013 to 02/21/2013. The subscriber information shows this phone registered to Audrey Nelson, B/F DOB XXXXXXXXX Audrey Nelson has the following criminal history indicating arrests. 12/09/1995 Forgery. 06/30/1996 Worthless checks; forgery. 02/22/1997 Possession of cocaine; possession of drug paraphernalia. 03/28/2001 Sale etc. of opiates/opium or narcotic drugs; conspiracy to sale opiates/opium or narcotic drugs. 04/16/2002 Delivery/manufacture simulated controlled substance. 04/17/2002 Possession of paraphernalia to grow, distribute marijuana; no drug tax stamp; sale of opiates, opium or narcotic drugs; possession of marijuana. 06/03/2003 Conspiracy to

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 40 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 124 of 167

444

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 444

possession of opiates, opium or narcotic drugs; conspiracy to criminal possession of a firearm; conspiracy to possess depressants/stimulants/hallucinogenics/steroids; conspiracy to possess simulated controlled substances/drug paraphernalia. 12/30/2003 Contempt of court, indirect.

118.    The phone number **(785) 477-8766** was indicated a total of 152 times from 01\07\2013 to 02\18\2013.  This phone number was subpoenaed and found to be a TracFone with no listed person as the subscriber.

119.    The phone number **(239) 676-4132** was indicated a total of 108 times from 01\13\2013 to 01\20\2013.  This phone number was subpoenaed with no information available as to the subscriber.

120.    The phone number **(785) 761-7975** was indicated a total of 202 times from 01/09/2013 to 02/21/2013.  The subscriber information shows this phone registered to Norma Mohammed, B/F DOB XXXXXXXX.  No criminal history was located for this subscriber.  It is not known whether this person is using the phone or has obtained the phone for use by someone else.

121.    The phone number **(816) 527-7803** was indicated a total of 172 times from 01/07/2013 to 02/20/2013.  The subscriber information shows this phone registered to Zachary Patmon, B/M DOB XXXXXXXX.  The phone number **(785) 226-2611** was indicated a total of 36 times from 01\07\2013 to 02\15\2013.  This number was also associated with Zachary Patmon.  Zachary Patmon has the following criminal history indicating arrests.  04/13/1969 Attempted robbery.  06/08/1969 Aggravated assault. 02/17/1971 AWOL UCMJ.  06/17/1977 Pimping.  02/08/1978 Aid and abet sale of cocaine.  04/11/1982 Carrying a concealed weapon.  05/08/1984 Criminal use of weapons.    04/08/1990 2 counts sale of cocaine; 2 counts unlawful use of a communication facility; no drug tax stamp.    09/20/1990 Unlawful use of a communication facility.    09/12/1991 Obstructing legal process or official duty. 08/17/1991 Disorderly conduct.  11/12/1991 Failure to appear.  11/30/1991 Battery against a law enforcement officer; obstructing legal process or official duty; disorderly conduct.  01/09/1992 Failure to appear.  01/07/1993 Failure to appear.  01/08/1993 Failure to appear.  01/30/1993 Battery.  04/24/1993 Fail to comply with bond restrictions; disorderly conduct.  04/29/1993 Battery against a law enforcement officer; obstructing

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 41 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 125 of 167

445

Page: 445          Date Filed: 07/10/2023          Document: 010110884675          Appellate Case: 23-3102

legal process or official duty.  10/02/1994 Falsely reporting a crime.  10/02/1994 Failure to appear.  05/17/1996 Possession of cocaine.  07/13/1996 Possession of cocaine; possession of cocaine with the intent to sell; possession of marijuana.  09/12/2000 Parole violation.  12/19/2000 failure to appear.  04/12/2001 Failure to appear.  01/07/2002 Probation violation.  12/31/2002 Failure to appear.  01/30/2003 Failure to appear.  02/05/2003 Failure to appear.  01/07/2005 Probation violation.  01/30/2005 Failure to appear on misdemeanor charge; possession of opiates, opium or narcotic drugs; possession of controlled substances or drug paraphernalia.  05/24/2012 Driving while license cancelled/suspended/revoked; failure to appear.

122.    The phone number **(785) 307-6416** was indicated a total of 110 times from 01/13/2013 to 02/19/2013.  The phone number **(785) 579-6738** was indicated 5 times from 01/19/2013 to 02/01/2013.    The subscriber information shows these phones registered to Lisa Austin, W/F XXXXXXXXXXXX Lisa Austin has the following criminal history indicating arrests. 09/15/1987 Grand larceny. 08/15/1994 Possession of cocaine. 01/26/1995 Criminal use of a financial card.  01/15/1996 Felony theft.  02/21/1996 Probation violation.  02/29/1996 Probation violation.  06/06/1996 Failure to appear; probation violation.  09/29/1996 Probation violation.  03/13/1997 Probation violation. 05/22/1997    Failure    to    appear.        12/20/1997    Possession    of depressant/stimulants/hallucinogenics/steroids.  02/05/1998 Contempt of court, indirect. 02/05/1998 Probation violation.  11/22/1999 Embezzlement.  09/28/2001 Probation violation.  02/21/2002 Possession of opiates. Opium or narcotic drugs; possession of controlled substances or drug paraphernalia.  11/01/2003 Failure to appear.  03/09/2006 Sale etc. of opiates, opium or narcotic drugs' no drug tax stamp.  03/15/2006 Possession of paraphernalia to grow, distribute marijuana; possession of opiates, opium or narcotic drugs; possession of stimulants/hallucinogenics/steroids.  07/15/2006 Violation of a protective order.  11/26/2006 Probation violation.  11/28/2006 Failure to appear. 04/04/2007 Probation violation.  04/05/2007 Failure to appear.  03/10/2008 Obstructing legal process or official duty; transporting open container.  04/05/2007 Failure to appear. 08/27/2011 Public intoxication.

123.    The phone number **(785) 307-2000** was indicated a total of 158 times from 01/08/2013 to 02/20/2013.  The subscriber information shows this phone registered to

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 42 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 126 of 167

446

Appellate Case: 23-3102     Document: 01011088675     Date Filed: 07/10/2023     Page: 446

Kriste Lienberger, W/F DOB XXXXXXXX. Kriste Lienberger has the following criminal history indicating arrests. 03/08/1995 Battery. 10/24/1997 Forgery. 10/02/2003 Delivery manufacture drug paraphernalia other; possession of simulated controlled substances or drug paraphernalia; attempted sale of opiates, opium or narcotic drugs. 10/06/2006 Use or possess drug paraphernalia to introduce in human body. 06/01/2007 Failure to appear. 12/20/2007 Domestic battery against a family household member; criminal damage to property. 05/15/2008 Probation violation. 05/15/2008 Failure to appear. 09/18/2008 Criminal threat. 10/08/2008 Probation violation. 01/15/2009 Failure to appear. 02/15/2009 Failure to appear. 08/04/2009 Failure to appear. 09/08/2009 Failure to appear.

124.    The phone number **(785) 375-0822** was indicated a total of 116 times from 01/07/2013 to 02/20/2013. The subscriber information shows this phone registered to Kelly Vargas, W/F DOB XXXXXXXX. Kelly Vargas has the following criminal history indicating arrests. 09/05/2004 Driving under the influence of alcohol or drugs. 07/11/2006 Obstructing legal process in misdemeanor case; disorderly conduct. 09/10/2006 Possession of depressant/stimulants/hallucinogenics/steroids. 09/21/2006 Sale of opiates, opium or narcotic drugs. 11/09/2006 Probation violation. 11/15/2006 Warrant arrest. 04/28/2012 Driving under the influence of alcohol or drugs.

125.    The phone number **(785) 375-6137** was indicated a total of 99 times from 01/09/2013 to 02/16/2013. The subscriber information shows this phone registered to Johnny Dunlap but the JCPD confirmed the user of the phone to be Angela Dunlap, B/F DOB XXXXXXXX Angela Dunlap has the following criminal history indicating arrests. 06/07/2007 Driving while license cancelled/suspended/revoked; possession of depressant/stimulants/hallucinogenics/steroids; possession of opiates, opium or narcotic drugs. According to JCPD, Angela Dunlap has been seen in the past and recently frequenting known and suspected residences which are believed to be distributing illegal narcotics.

126.    The phone number **(785) 579-5462** was indicated a total of 90 times from 01/07/2013 to 02/19/2013. The subscriber information shows this phone registered to Jerry Ruble but the JCPD confirmed the user of the telephone to be Claudette Ruble, B/F DOBXXXXXXXX Claudette Ruble has no current criminal history indicating arrests.

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 43 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 127 of 167

447

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 447

127.   The phone number **(785) 512-0882** was indicated a total of 61 times from 01/26/2013 to 02/02/2013.   The subscriber information shows this phone registered to Lynn Murphy.   No monikers or criminal history were located for Lynn Murphy.   The JCPD was unaware of anyone by that name located at the address received from the subpoena request.   It is unknown if this subscriber information is correct or if this particular person is actual.

128.   The phone number **(785) 238-3262** was indicated a total of 84 times from 01/07/2013 to 02/20/2013.   The subscriber information shows this phone registered to Pamela Thompson, B/F DOBXXXXXXXXXX Pamela Thompson has the following criminal history indicating arrests.   08/20/1999 Possession of controlled substances or drug paraphernalia; possession of depressant/stimulants/hallucinogenics/steroids.

129.   The phone number **(785) 307-2209** was indicated a total of 108 times from 01/07/2013 to 02/20/2013. The phone number **(785) 431-8707** was indicated a total of 64 times from 01/22/2013 to 02/20/2013.   The subscriber information shows these phones registered to Ella Haymon, B/F DOB XXXXXXXXXXand Jose Garcia W/M DOB XXXXXXXXXX Ella Haymon was listed as a suspect in a 2006 JCPD case (06-20215) involving Sale or distribution of drugs and drug possession.

130.   The phone number **(785) 438-0895** was indicated a total of 93 times from 01/11/2013 to 02/19/2013.   The subscriber information shows this phone registered to James Smith, W/M DOB XXXXXXXXX.   James Smith has the following criminal history indicating          arrests.                    06/02/1995                    Possession          of depressant/stimulants/hallucinogenics/steroids;   Possession   of   simulated   controlled substances or drug paraphernalia; criminal use of weapons; fleeing or attempting to elude a LEO; driving under the influence of alcohol or drugs.

131.   The phone number **(913) 548-9570** was indicated a total of 90 times from 01\11\2013 to 02\20\2013.   This phone number was subpoenaed and found to be a Prepaid phone with no listed person as the subscriber.

132.   The phone number **(785) 717-9863** was indicated a total of 54 times from 01/08/2013 to 02/17/2013.   The subscriber information shows this phone registered to Mandi Ashmore, W/F DOB XXXXXXXXX   No criminal history was located for Mandi

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 44 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 128 of 167

448

Page: 448        Date Filed: 07/10/2023        Document: 010110884675        Appellate Case: 23-3102

Ashmore. It is unknown if this subscriber information is correct or if this particular person is the actual person using the phone.

1.  The phone number **(816) 308-0145** was indicated a total of 52 times from 02\01\2013 to 02\13\2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

2.  The phone number **(785) 210-7607** was indicated a total of 49 times from 01/08/2013 to 02/21/2013. The subscriber information shows this phone registered to Anthony Smith, B/M DOB XXXXXXXXX. Anthony Smith has the following criminal history indicating arrests. 11/21/2007 Possession of paraphernalia to grow, distribute marijuana; possession with the intent to sell, sale, etc. within 1000' of school property; possession of depressants/stimulants/hallucinogenics/steroids; possession of opiates, opium or narcotic drugs. 03/27/2008 Contempt of court, direct. 08/29/2008 Contempt of court, direct.

3.  The phone number **(785) 317-0406** was indicated a total of 57 times from 01/08/2013 to 02/18/2013 and the phone number **(785) 341-5161** was indicated 4 times on 01/18/2013. The subscriber information shows these phones registered to Angel Brown, W/F DOB XXXXXXXXX Angel Brown has the following criminal history indicating arrests. 11/19/2004 Disorderly conduct; criminal threat. 12/18/2008 Driving under the influence of alcohol or drugs 3rd conviction. 11/28/2009 Driving under the influence of alcohol or drugs; driving while license suspended; endangering a child <18 yoa. 05/19/2011 Probation violation.

4.  The phone number **(785) 210-9873** was indicated a total of 44 times from 01/07/2013 to 02/13/2013. The subscriber information shows this phone registered to Lamont Hill (believed to be Lemont Hill), B/M DOB XXXXXXXXX. Lemont Hill has the following criminal history indicating arrests. 05/30/1987 2 counts sale of cocaine; 1 count delivery of cocaine. 06/03/1987 Sale of cocaine. 07/21/1987 Sale of cocaine; conspiracy to sell cocaine. 04/01/1994 Parole violation. 09/05/1994 Battery; criminal use of a weapon; aggravated weapons violation; possession of stolen property. 11/15/1994 Criminal threat. 03/04/2001 Criminal threat; domestic battery. 11/14/2004 Battery. 06/29/2005 Failure to appear on a misdemeanor. 09/22/2005 Failure to appear on a misdemeanor. 12/13/2005 Forgery. 09/25/2006 Probation violation. 01/08/2008

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 45 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 129 of 167

449

Page: 449        Date Filed: 07/10/2023        Document: 01110884675        Appellate Case: 23-3102

Probation violation.  02/06/2009 Probation violation.  Lemont Hill was listed as a suspect in a 2010 JCPD case (10-09428) involving the sale/distribution/cultivation of opiates. opium, narcotic drugs or designated stimulants.

5.      The phone number **(785) 307-0127** was indicated a total of 60 times from 01\10\2013 to 02\20\2013.  This phone number was subpoenaed and found to be a TracFone with no listed person as the subscriber.

6.      The phone number **(954) 649-5125** was indicated a total of 88 times from 01/08/2013 to 02/21/2013.  The subscriber information shows this phone registered to John Dichiarra but the investigation has shown the phone to be used by Gevonni Davis, B/M DOB ⟨XXXXXXXX⟩ This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Javontae.  Gevonni Davis has been indicated earlier in this affidavit as to his involvement in distribution of crack cocaine with **Anthony Thompson**, Martye Madkins III and CI #1.  Gevonni Davis has the following criminal history indicating arrests.  12/31/2000 Giving a worthless check.  03/12/2004 Unlawful removal of theft detection device.  01/06/2012 Making false information; theft. 05/14/2012 Failure to appear.

7.      The phone number **(785) 317-3106** was indicated a total of 47 times from 01\31\2013 to 02\15\2013.  This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

8.      The phone number **(785) 307-9731** was indicated a total of 64 times from 01/09/2013 to 02/19/2013.  The subscriber information shows this phone registered to Felix.  It is believed the phone is being used by Felix Vinson, B/M DOB ⟨XXXXXXXX⟩ according to the JCPD.  This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Felix as well.  Felix Vinson has the following criminal history indicating arrests for.  09/30/1995 Driving while license suspended or revoked; willful obstruction of law enforcement officers.  05/30/2002 Breaking and/or entering (felony) with force; larceny after break/enter $200.00 and up.  08/26/2002 Larceny misdemeanor $50.00 - $199.00.  01/03/2003 Unauthorized use of a motor vehicle; possession of drug paraphernalia; carrying a concealed weapon - other; driving while license revoked.  09/19/2003 Unauthorized use of a motor vehicle; fugitive/extradition other state.  09/07/2004 Extradition/fugitive other state.  11/21/1989

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 46 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 130 of 167

450

Appellate Case: 23-3102      Document: 01110884675      Date Filed: 07/10/2023      Page: 450

Felony theft; conspiracy to commit theft - felony.   05/21/1990 Warrant arrest. 07/21/1991 Probation violation.   09/26/1991 Burglary unknown structure; theft value unknown.   03/30/1992 Attempted burglary unknown structure.   12/15/1992 Contempt of court indirect.   04/04/1993 Driving under influence of alcohol or drugs; transporting an open container.   05/28/1993 Contempt of court indirect.   07/16/1993 Prison inmate under control of Kansas DOC; theft; attempted burglary unknown structure.   04/24/1994 Sale/etc., opiates, opium or narcotic drugs.   11/25/1994 Driving under influence of alcohol or drugs.   03/05/1995 Failure to appear.   03/05/1995 Possession of depressant/stimulants/hallucinogenics/steroids; Possession of opiates, opium or narcotic drugs; Possession of simulated controlled substances or drug paraphernalia.   03/16/1995 Possession of depressant/stimulants/hallucinogenics/steroids; Possession of opiates, opium or narcotic drugs.   10/26/1995 Failure to appear.   05/27/1996 Driving while license cancelled/suspended/revoked.   08/17/1996 Possession of depressant/stimulants/hallucinogenics/steroids; Possession of simulated controlled substances or drug paraphernalia.   09/16/1996 Probation violation.   01/29/1997 Failure to appear.   07/07/2003 Possession of paraphernalia to grow, distribute marijuana; Possession of depressants/stimulants/hallucinogenics/anabolic steroids.   12/08/2003 Aggravated failure to appear.   12/15/2003 Failure to appear.   12/23/2003 Possession of stolen property value over $500.00.   03/08/2004 Obstructing legal process or official duty.   02/17/2004 Failure to appear.   03/08/2004 Obstructing legal process in misdemeanor case; theft.   10/14/2004 Theft value $25,000.00 to <$100,000.00; probation violation; failure to appear.   11/18/2004 Probation violation.   12/22/2004 Prison inmate under control of Kansas DOC Possession of paraphernalia to grow, distribute marijuana. 11/15/2007 Operating a motor vehicle without valid license; Possession of opiates, opium or narcotic drugs.   04/27/2008 Contempt of court indirect.   05/19/2009 Forgery; attempted theft; criminal use of weapons.   09/16/2009 Aggravated assault; possession of simulated controlled substances or drug paraphernalia.   04/15/2010 Probation violation. 04/29/2010 Probation violation.   12/18/2010 Probation violation.   03/22/2012 Failure to appear.   11/06/2012 Obstructing legal process in misdemeanor case; criminal trespass.

9.      The phone number **(785) 375-6921** was indicated a total of 40 times from 01/08/2013 to 02/18/2013.   The subscriber information shows this phone registered to

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 47 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 131 of 167

451

Appellate Case: 23-3102    Document: 01011084675    Date Filed: 07/10/2023    Page: 451

Sheilaa Scott, B/F DOB XX/XX/XXXX.  Sheilaa Scott has the following criminal history indicating arrests.      01/07/1989 Aggravated assault on law enforcement officer. 10/08/1994 Worthless checks.   04/10/1995 Four (4) counts forgery.   10/30//1997 Criminal threat; violation of conditions of bond.  03/03/1998 Theft by deception; making false writing.  08/17/1998 Obstruction.  02/11/1999 Possession of controlled substance. 08/26/1999 Worthless check and Failure to appear.   12/15/2000 Probation violation. 01/23/2001 Theft and forgery.   08/18/2001 Theft and three (3) counts of forgery. 12/03/2001 Probation violation. 04/07/2003 Probation violation.  07/03/2004 Violation of a protective order; criminal damage to property.  08/21/2004 Violation of a protective order; intimidation of a victim or witness; criminal damage to property.  08/31/2004 Forgery; theft.   05/13/2005 Probation violation.   10/01/2005 Probation violation. 05/19/2006 Harassment by telephone and Terroristic threat.   06/22/2006 Probation violation.  08/04/2007 Criminal threat; violation of a protective order; harassment by telephone. 08/30/2007 Violation of a protective order.  10/01/2011 Aggravated battery.

10.     The phone number **(614) 753-8572** was indicated 38 times from 02/19/2013 to 02/20/2013.   The phone number was subpoenaed with no subscriber information available indicating the subscriber did not have to provide any identification to activate the phone.

11.      The phone number **(785) 762-4708** was indicated a total of 31 times from 01/07/2013 to 02/20/2013.  The phone number is believed to be associated with Adrian Miller, B/M DOB XX/XX/XXXX.   Adrian Miller has the following criminal history indicating arrests. 11/12/2005 Sale or possession with the intent to sell hallucinogen; use or possess drug paraphernalia to introduce into the human body; no drug tax stamp for marijuana or controlled substance.  03/10/2006 obstructing legal process in misdemeanor case;  resist arrest.    08/14/2010 Criminal trespass; obstructing legal process in misdemeanor case. 05/08/2011 Domestic battery; criminal damage to property.

12.     The phone number **(785) 209-4664** was indicated a total of 48 times from 01/09/2013 to 02/20/2013.  The subscriber information shows this phone registered to D'ana Eskridge, B/F DOB XX/XX/XXXX.  D'ana Eskridge has no criminal history and it is believed someone else is using the telephone which is subscribed in her name.

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 48 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 132 of 167

452

13.    The phone number **(785) 317-2298** was indicated a total of 29 times from 01/17/2013 to 02/12/2013. The subscriber information shows this phone registered to Craig Tolliver, B/M XXXXXXXXXXXX  Craig Tolliver has the following criminal history indicating arrests.   12/21/1991 Mob Action.   04/06/1992 Possession of controlled substances.   12/28/1992 Possession of cannabis.   12/26/2007 Driving while license cancelled/suspended/revoked.          04/05/2008       Driving       while       license cancelled/suspended/revoked.   05/02/2011 Failure to appear.   07/16/2011 Domestic battery. 08/01/2012 Domestic Battery. 09/16/2012 Probation violation.

14.    The phone number **(785) 226-6474** was indicated a total of 34 times from 01/10/2013 to 02/20/2013. The subscriber information shows this phone registered to Casey Francis, B/F DOB XXXXXXXX. Casey Francis has the following criminal history indicating arrests.   09/12/2000 Possession of simulated controlled substances or drug paraphernalia; possession of depressant/stimulants/hallucinogencis/steroids; possession of opiates, opium or narcotic drugs. 05/26/2002 Domestic battery. 08/09/2002 Failure to appear.   04/03/2003 Criminal threat; aggravated battery.   08/08/2003 Criminal threat; criminal damage to property <$500.00; Theft; aggravated battery; Burglary.   06/13/2005 Driving under influence of alcohol or drugs; transporting an open container.   07/30/2005 Driving while license cancelled/suspended/revoked.   08/26/2005 Driving while license cancelled/suspended/revoked.   11/08/2005 Failure to appear.   12/03/2005 Failure to appear.   12/10/2005 Probation violation.   01/10/2006 Failure to appear.   01/19/2006 Driving while habitual violator.   01/25/2007 Possession of opiates, opium or narcotic drugs; possession of controlled substances or drug paraphernalia; Possession of depressant/stimulants/hallucinogenics/steroids.     03/10/2007   Theft   <$1000.00. 12/09/2007 Theft; burglary; criminal damage to property.  02/02/2008 Battery against a law enforcement officer; Obstructing legal process or official duty; Disorderly conduct. 03/20/2008 Driving while license cancelled/suspended/revoked.   08/14/2009 Driving while   license   cancelled/suspended/revoked.        08/26/2012   Possession opiates/opium/narcotic drug and certain stimulants; Driving while habitual violator.

15.    The phone number **(573) 842-8756** was indicated 34 times from 01/07/2013 to 02/16/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

Page: 452      Date Filed: 07/10/2023      Document: 01110884675      Appellate Case: 23-3102

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 49 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 133 of 167

453

Page: 453          Date Filed: 07/10/2023          Document: 010110884675          Appellate Case: 23-3102

16.     The phone number **(785) 223-3236** was indicated 31 times from 01/09/2013 to 01/18/2013. The phone number was subpoenaed and listed as a TracFone with no subscriber information available indicating the subscriber did not have to provide any identification to activate the phone.

17.     The phone number **(785) 210-9767** was indicated 31 times from 01/10/2013 to 01/29/2013. The phone number was subpoenaed and listed as a TracFone with no subscriber information available indicating the subscriber did not have to provide any identification to activate the phone.

18.     The phone number **(785) 307-8787** was indicated a total of 47 times from 01/16/2013 to 02/21/2013. The subscriber information shows this phone registered to Charles Sarvis B/M DOB XX/XX/XXXX. Charles Sarvis has the following criminal history indicating arrests.     03/20/1974 Criminal possession of a controlled substance. 05/01/1977 Assault 3rd degree.   09/01/1978 False statement on bank credit applications; Fraud bank loans.

19.     The phone number **(785) 375-3247** was indicated a total of 22 times from 01/12/2013 to 01/30/2013. The subscriber information shows this phone registered to Shenna Bronson, B/F DOB XX/XX/XXXX Shenna Bronson was arrested on 11/30/2012 for Domestic battery. No other criminal history was located for Shenna Bronson.

20.     The phone number **(785) 307-4471** was indicated 22 times from 01/12/2013 to 01/19/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

21.     The phone number **(785) 320-1331** was indicated 21 times from 01/18/2013 to 02/10/2013. The phone number was subpoenaed and listed as a TracFone with no subscriber information available indicating the subscriber did not have to provide any identification to activate the phone.

22.     The phone number **(785) 226-3233** was indicated 20 times from 01/12/2013 to 02/18/2013. The phone number was subpoenaed and listed as a T-Mobile prepaid phone with no subscriber information available indicating the subscriber did not have to provide any identification to activate the phone.

23.     The phone number **(785) 201-6457** was indicated 19 times from 01/19/2013 to 02/20/2013. The subscriber information shows this phone registered to

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 50 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 134 of 167

454

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 454

Willie Pleas B/M DOB XXXXXXXX  Willie Pleas has not been fully identified thus far in this investigation therefore no criminal history is available.  It's also not known if Willie Pleas is the actual user of the phone or if he has provided it to someone else for their use.

24.    The phone number **(785) 307-8346** was indicated a total of 26 times from 01/07/2013 to 02/08/2013.  The subscriber information shows this phone registered to Charles with no last name provided.  Charles is believed to be Charles Foster according to JCPD records.  This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Charles as well.   Charles Foster has the following criminal history indicating arrests.  06/15/1991 Possession of opiate, opium or narcotic drugs.  09/11/1992 Sale etc. opiates, opium or narcotic drugs.  01/20/1995 Sale etc. opiates, opium or narcotic drugs; no drug tax stamp.  04/19/2001 possession of simulated controlled substances or drug paraphernalia; possession of paraphernalia to grow, distribute marijuana.  03/04/2003 Possession of simulated controlled substances or drug paraphernalia; possession of opiates, opium or narcotic drugs; possession of depressant/stimulants/hallucinogenics/steroids.  12/18/2008 Conspiracy to possess with the intent to sell, sale, etc. within 1000' of a school; attempt to arrange sale/purchase using communication facility for drug; no drug tax stamp for marijuana or controlled substance.  On 08/31/2012, CI #1 made a purchase of crack cocaine from Charles Foster and **Anthony Thompson**.

25.    The phone number **(785) 307-3214** was indicated 26 times from 01/25/2013 to 02/02/2013.  The phone number was subpoenaed and listed as a TracFone with no subscriber information available indicating the subscriber did not have to provide any identification to activate the phone.

26.    The phone number **(785) 375-3222** was indicated a total of 204 times from 01/08/2013 to 02/20/2013.  The subscriber information shows this phone registered to Nance with no last name provided.  According to the JCPD this phone is used by Jason Dixon.  This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Nance as well.  On 09/27/2012, CI #1 had cellular telephone contact with Jason Dixon B/M DOB XXXXXXXX using telephone number (785) 375-3222 at which time, Jason Dixon sold CI #1 crack cocaine.  Jason Dixon has the following criminal history indicating arrests.  10/14/1999 Aggravated battery; rape.  03/14/2000

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 51 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 135 of 167

455

Page: 455      Date Filed: 07/10/2023      Document: 010110884675      Appellate Case: 23-3102

Attempt to commit aggravated criminal threat causing loss >$500.00<$25,000.00. 07/24/2000 Criminal threat.  04/30/2002 Probation violation.  08/01/2002 Failure to appear.     10/07/2002 Failure to appear.     3/28/2003 Battery; possession of depressant/stimulants/hallucinogenics/steroids.       03/06/2004 Domestic battery. 04/14/2004 Failure to appear on a misdemeanor.   05/13/2004 Failure to appear. 12/27/2004 failure to appear on a misdemeanor.   03/05/2005 Domestic battery. 03/25/2005 failure to appear.  05/02/2005 Domestic battery.  05/24/2005 Aggravated battery.  07/26/2005 Violation of a protective order.  10/13/2005 Probation violation. 11/07/2005 Violation of a protective order.  11/14/2005 Probation violation.  05/25/2006 Failure to appear on a misdemeanor; probation violation.   09/07/2006 Probation violation. 09/29/2006 Disorderly conduct. 05/31/2008 Failure to appear X2; aggravated failure to appear; probation violation.  08/16/2011 Failure to appear.  02/17/2012 Failure to appear.

27.     The phone number **(785) 307-8995** was indicated a total of 81 times from 02/01/2013 to 02/02/2013.  The subscriber information shows no name associated with this phone but as of 12/06/2012, the JCPD has this phone associated with and used by Felicia Austin W/F XX/XX/XXXX.   Felicia Austin has the following criminal history indicating arrests.  09/06/2001 Battery.  10/03/2007 Disorderly conduct.  03/02/2009 Theft of services misdemeanor.  03/02/2009 Battery; disorderly conduct.  03/07/2009 Theft of services $1000.00 to <$25000.00.  06/10/2010 Obstruction or impeding of lawful activities. 01/02/2012 Failure to appear.

28.     The phone number **(785) 317-0425** was indicated a total of 69 times from 01\08\2013 to 02\14\2013.  The subscriber information shows this phone registered to Jalisa Carson B/F DOB XX/XX/XXXX however it is believed Kathy Carson B/F DOB 06/03/1954 (the mother of Jalisa Carson) may be using this telephone.  Kathy Carson has the following criminal history indicating arrests.  04/16/1996 Possession of cocaine with the intent to sell; possession of drug paraphernalia; obstruction of official duty; possession of marijuana.

29.     The phone number **(785) 226-7159** was indicated a total of 54 times from 01/18/2013 to 02/20/2013.  The subscriber information shows this phone registered to Susan Wilson W/F DOB XX/XX/XXXX.  According to the JCPD this phone is used by

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 52 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 136 of 167

456

Appellate Case: 23-3102      Document: 010110884675      Date Filed: 07/10/2023      Page: 456

Richard Verkerke W/M DOB 07/06/1971. This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Rich as well. Richard Verkerke has the following criminal history indicating arrests. 06/23/2005 Assault. 06/07/2006 Failure to appear. 12/23/2008 Driving while a habitual violator; transporting an open container. 01/14/2009 Drive a commercial vehicle while driving privileges are suspended. 06/21/2009 Driving while a habitual violator; driving under the influence of alcohol or drugs; transporting an open container. 01/07/2010 Falsely reporting a crime. 07/03/2012 Assault of a law enforcement officer; possession of controlled substances or drug paraphernalia.

30.     The phone number **(785) 210-4812** was indicated a total of 40 times from 01/08/2013 to 02/18/2013. The subscriber information shows no name associated as the subscriber. According to the JCPD this phone is used by Barbara Jones Smith B/F DOB XXXXXXXX. Barbara Jones Smith has the following criminal history indicating arrests. 04/10/1998 Possession cocaine; possession drug paraphernalia; criminal use of a weapon; aggravated assault. 03/28/1999 Worthless check; failure to appear. 01/23/2001 2 counts of probation violation. 09/08/2004 Aggravated battery. 11/19/2004 Driving under the influence of alcohol or drugs. 06/29/2005 Driving while license cancelled/suspended/revoked; attempt to flee or attempt to elude LEO; obstruction legal process or official duty, resist arrest. 10/22/2006 Battery against a law enforcement officer; disorderly conduct X2. 06/01/2007 Driving under the influence of alcohol or drugs. 08/13/2007 Following another vehicle too closely; driving under the influence of alcohol or drugs. 01/22/2008 driving under the influence of alcohol or drugs; driving while license cancelled/suspended/revoked. 08/04/2009 Failure to appear. 11/01/2010 Sale etc. of opiates, opium or narcotic drugs X2. 05/12/2011 Probation violation.

31.     The phone number **(785) 492-0965** was indicated a total of 43 times from 01/11/2013 to 02/20/2013. The subscriber information shows this phone registered to R Rusty. This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as R Rusty as well. The JCPD is unaware of any persons using the name R Rusty at this time.

32.     The phone number **(785) 375-0314** was indicated a total of 22 times from 01/09/2013 to 02/07/2013. The subscriber information shows this phone registered to

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 53 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 137 of 167

457

Page: 457     Date Filed: 07/10/2023     Document: 01110884675     Appellate Case: 23-3102

Kimberly Reese B/F DOB XXXXXXXX   No criminal history was found for Kimberly Reese.

33.   The phone number **(785) 307-5231** was indicated 22 times from 01/28/2013 to 02/05/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

34.   The phone number **(785) 776-6876** was indicated a total of 29 times from 01/08/2013 to 02/12/2013. The subscriber information shows this phone registered to Jack Lindley W/M DOB XXXXXXXX   Jack Lindley has the following criminal history indicating arrest. 04/10/2006 Possession of simulated controlled substances or drug paraphernalia; opiates, opium or narcotic drugs unlawful acts. 04/17/2006 Probation violation. 07/10/2006 Aggravated intimidation of a witness or victim; solicitation to corruptly influence a witness. 09/25/2006 Attempted perjury, false statement in a felony trial; possession of opiates, opium or narcotic drugs; attempted aggravated intimidation of a witness or victim; criminal threat. 03/27/2012 Failure to appear.

35.   The phone number **(785) 226-1283** was indicated a total number of 37 times from 01/08/2013 to 01/30/2013. The subscriber information shows this phone registered to Wig. This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Wig as well. According to the JCPD, this person is also known as Linnie Sanders B/M DOB XXXXXXXX. Linnie Sanders has the following criminal history indicating arrests. 04/28/2001 Possession of marijuana <= 5 pounds >4 ounces. 10/19/2001 Escape from custody. 08/01/2004 Possession of depressant/stimulants/hallucinogenics/steroids. 01/10/2006 Battery; Criminal damage to property. 01/31/2006 Battery; Criminal damage to property. 03/09/2006 Sale etc. of opiates, opium or narcotic drugs.

36.   The phone number **(785) 492-0098** was indicated a total of 19 times from 01/07/2013 to 01/18/2013. The subscriber information shows this phone registered to prepaid customer with no actual name associated as subscriber. According to the JCPD this phone is used by Joyce Burroughs W/F DOB XXXXXXXX. Joyce Burroughs has the following criminal history indicating arrests. 05/04/2000 Trafficking in methamphetamine; possession of marijuana; drug paraphernalia buy/possess. 11/08/2000 Burglary. 10/03/2001 Trafficking in methamphetamine; possession of controlled

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 54 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 138 of 167

458

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 458

substance. 01/09/2002 Trafficking controlled substance methamphetamine; possession of controlled substance.

37. The phone number **(785) 379-1543** was indicated a total of 18 times from 01/07/2013 to 01/09/2013. The subscriber information shows this phone registered to Sylvester Jackson B/M DOB XX/XX/XXXX. Sylvester Jackson has the following criminal history indicating arrests. 04/05/1995 Aggravated assault; battery; criminal possession of a firearm; burglary; criminal damage to property; theft. 08/30/1995 Aggravated assault; battery; criminal possession of a firearm. 03/05/1996 Aggravated intimidation of a witness or victim. 03/06/1996 Aggravated intimidation of a witness or victim. 04/02/1996 Probation violation. 04/24/1996 Criminal damage to property. 07/11/1996 Stalking; criminal damage to property. 07/15/1996 Criminal damage to property. 07/06/1998 Disorderly conduct; criminal damage to property. 09/01/1998 Battery. 06/05/1999 Obstructing legal process in misdemeanor case; Possession of depressant/stimulants/hallucinogenics/steroids; Possession of opiates, opium or narcotic drugs. 05/12/2000 Possession of opiates, opium or narcotic drugs. 04/04/2002 Obstructing legal process in misdemeanor case. 10/04/2005 Obstructing legal process or official duty. 06/26/2006 Possession of depressants/stimulants/hallucinogenics/anabolic steroids; Possession of simulated controlled substances or drug paraphernalia. 07/09/2006 Domestic battery; criminal threat. 01/08/2007 Aggravated failure to appear. 10/07/2007 Failure to appear. 07/14/2008 Disorderly conduct. 09/07/2008 Possession of marijuana <2 OZ. 11/22/2008 Failure to appear.

38. The phone number **(785) 209-8842** was indicated a total of 16 times from 01/10/2013 to 01/25/2013. The subscriber information shows this phone registered to John Brown B/M DOB XX/XX/XXXX John Brown has the following criminal history indicating arrests for. 09/06/1999 required obedience to lawful order of police officer or fireman. 05/07/2003 Domestic battery. 01/22/2004 Probation violation. 02/20/2004 Failure to appear. 05/14/2004 Possession of simulated controlled substance or drug paraphernalia. 12/16/2004 Weapon offense - prohibited person possession firearm. 05/10/2005 Possession of depressant/stimulants/hallucinogenics/steroids. 10/19/2005 Possession of a firearm by a prohibited person. 02/17/2008 Failure to appear X2.

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 55 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 139 of 167

459

Appellate Case: 23-3102      Document: 010110884675      Date Filed: 07/10/2023      Page: 459

05/06/2009 Failure to appear.   06/09/2010 Failure to appear.   03/08/2011 Failure to appear.

39.     The phone number **(785) 236-9728** was indicated a total of 17 times from 01/21/2013 to 02/18/2013.  The subscriber information shows this phone registered to Jeny J Mart.  According to the JCPD this phone is used by Michael Warren B/M DOB XXXXXXXX.  Michael Warren has the following criminal history indicating arrests. 06/17/1994 Aggravated burglary.  02/05/2000 Obstructing legal process in felony case; criminal possession of paraphernalia.  05/05/2000 Possession of paraphernalia to plant, harvest marihuana plants.  07/28/2003 Failure to appear.

40.     The phone number **(785) 375-7937** was indicated a total of 42 times from 01/11/2013 to 02/20/2013.  The subscriber information shows this phone registered to Dana Pleas but it is believed the user to be Sammy Pleas B/M DOB XXXXXXXX  This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Sammy as well.  Sammy Pleas has the following criminal history indicating arrests.  09/05/1979 Disorderly conduct.  02/14/1980 Battery; prostitution.  10/03/1989 Criminal damage to property; disorderly conduct; terroristic threat.  08/06/1990 Battery. 12/05/1990 Probation violation.  04/26/1991 Fail to comply with terms of probation; terroristic threat; aggravated assault.  11/27/1992 Criminal trespass.  03/24/1993 Battery; disorderly conduct.   06/26/1993 Disorderly conduct; criminal damage to property. 09/30/1993 Criminal threat.   08/16/1994 Failure to appear.   11/27/1994 Public intoxication.  01/12/1995 Failure to appear.  02/07/1995 Failure to appear.  04/07/1995 Failure to appear.   04/17/1995 Failure to appear.   11/30/1995 Failure to appear. 01/31/1996 Probation violation.  06/17/1996 Failure to appear.  07/18/1996 Probation violation.   10/24/1996 Failure to appear.  02/15/1998 Theft.    03/25/1998 Theft. 07/01/1998 Failure to appear.  07/18/1998 Rape; aggravated battery; criminal threat. 09/19/1998 Theft; criminal use of weapons.   10/02/1998 Aggravated robbery. 11/02/1998 Probation violation.  03/13/2001 Aggravated criminal threat causing loss of >$25,000.00; domestic battery.  03/23/2001 Burglary; theft; criminal damage to property. 06/29/2001 Battery; disorderly conduct.  02/11/2004 Probation violation.   11/17/2004 Disorderly conduct.

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 56 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 140 of 167

460

Appellate Case: 23-3102      Document: 01110884675      Date Filed: 07/10/2023      Page: 460

41.     The phone number **(785) 307-8447** was indicated a total of 15 times from 01/07/2013 to 02/15/2013.  The phone number **(785) 307-5992** was indicated 1 time on 01/18/2013.  The subscriber information shows both these phones registered to Dorian Bivins (AKA Dwight Bivins) B/M DOB XX/XX/19XX  Dwight Bivins has the following criminal history indicating arrests. 01/04/2001 Probation violation; obstructing legal process in felony case.  04/01/2002 Failure to appear.  08/28/2003 Failure to appear. 04/13/2004 Possession of opiates, opium or narcotic drugs; possession with the intent to sell, sale etc. within 1000' of school property; knowingly intentionally receiving/acquiring proceeds from uniform controlled substances; no drug tax stamp for marijuana or controlled substance.      04/07/2005 Driving while license cancelled/suspended/revoked.   12/15/2005 Probation violation.   03/14/2006 Probation violation.  08/25/2006 Probation violation.  10/02/2006 Sale etc. of opiates, opium or narcotic drugs.

42.     The phone number **(785) 580-3843** was indicated a total of 15 times from 01/08/2013 to 02/15/2013.  The phone number **(785) 477-8961** was indicated 6 times from 01/08/2013 to 02/07/2013.  The subscriber information shows both these phones registered to Alvarez Cruz.  According to the JCPD, (785) 477-8961 is being used by Michael Harris B/M DOB XX/XX/19XX as Monica Walker has been calling this number while incarcerated in the Geary County Jail and Michaels Harris has been answering the telephone.  Michael Harris was reportedly with Monica Walker on a day when she was arrested for possession of cocaine.  Michael Harris has the following criminal history indicating arrests. 02/11/1977 Burglary. 05/18/1977 Burglary and stealing.  08/22/1977 Burglary; stealing.  10/11/1977 Forgery.  02/03/1978 Burglary; stealing.  04/23/1982 Theft.   06/02/1982 Failure to appear.   07/01/1982 DUI; disorderly conduct; open container.   10/19/1983 Possession of controlled substance.   07/16/1984 Obtaining prescription drugs for re-sale.  08/08/1984 Obtaining prescription drugs by fraudulent means for resale.   10/09/1984 Obtaining prescription drugs by fraudulent means. 05/20/1985 Burglary.    07/17/1985 Burglary.    09/16/1985 Probation violation. 09/06/1988 Obtaining prescription drugs by fraudulent means.   01/23/1992 DUI. 09/22/1994 Employment sec fraud.  11/11/2012 Driving under the influence of alcohol or

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 57 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 141 of 167

461

Page: 461          Date Filed: 07/10/2023          Document: 010110884675          Appellate Case: 23-3102

drugs.  11/23/2012 Driving under the influence of alcohol or drugs; transporting an open container.

43.     The phone number **(856) 650-7734** was indicated 14 times from 02/01/2013 to 02/02/2013.  The subscriber information shows this phone registered to Arthur Williams, BM DOB ◼◼◼◼◼◼◼  Arthur Williams has the following criminal history indicating arrest.  04/06/2006 Possession of marijuana/hash.

44.     The phone number **(785) 789-2019** was indicated 14 times from 02/19/2013 to 02/20/2019.  This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

45.     The phone number **(785) 512-0333** was indicated 14 times from 02/15/2013 to 02/20/2013.  This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

46.     The phone number **(317) 348-9959** was indicated 14 times from 01/22/2013 to 01/31/2013.  This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

47.     The phone number **(785) 307-2923** was indicated 14 times from 02/12/2013 to 02/18/2013.  This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

48.     The phone number **(316) 264-3031** was indicated 13 times from 01/10/2013 to 01/20/2013.  The subscriber information shows this phone registered to Rujeana Davis, B/F DOB ◼◼◼◼◼◼◼  Rujeana Davis has the following criminal history indicating arrest.  09/04/1973 Theft. 10/02/1994 Failure to appear.  06/05/2008 Burglary; theft.

49.     The phone number **(785) 762-2370** was indicated a total of 16 times from 01/10/2013 to 02/18/2013.  The phone number **(785) 375-1838** was indicated 14 times from 01/14/2013 to 02/13/2013.  The subscriber information shows both these phones registered to Charles B/M DOB ◼◼◼◼◼◼◼ and Olivia Humphreys (AKA Big O) B/F DOB 09/10/1955.   Charles Humphreys has the following criminal history indicating arrest. 02/18/1972 Criminal use of weapons, carrying firearm concealed on one's person. Olivia Humphreys has the following criminal history indicating arrest.  11/03/1985

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 58 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 142 of 167

462

Page: 462     Date Filed: 07/10/2023     Document: 01110884675     Appellate Case: 23-3102

Driving under the influence of alcohol or drugs.   06/29/1990 liquor consumption in public places prohibited.

50.     The phone number **(619) 213-9143** was indicated a total of 10 times from 01/18/2013 to 01/19/2013.   The subscriber information shows this phone registered to Sonia.   According to the JCPD this phone is used by Delantis Hairston B/M DOB XX/XX/XXXX who has an AKA of Toast.   This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Toast as well.   Delantis Hairston has the following criminal history indicating arrest.   02/26/2010 Possession of simulated controlled substances or drug paraphernalia;   Possession of depressant/stimulants/hallucinogenics/steroids.   03/18/2011 Possession of hallucinogenic. 12/09/2011 Sale depressants, stimulants or hallucinogenic drugs within 1000' of a school. 01/17/2013 Probation violation.   02/13/2013 Failure to appear

51.     The phone number **(316) 617-9894** was indicated a total of 10 times from 01/26/2013 to 02/09/2013.   The subscriber information shows this phone registered to Wayne.   According to the JCPD this phone is used by Kenneth Wayne Bellamy Jr. B/M DOB XX/XX/XXXX.   This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Wayne as well.   Kenneth Wayne Bellamy Jr. has the following criminal history indicating arrest.   06/21/1989 Burglary; theft.   04/03/2012 Conspiracy to robbery; driving under influence of alcohol or drugs.   05/03/2012 Failure to appear.

52.     The phone number **(785) 375-0596** was indicated a total of 10 times from 01/16/2013 to 02/01/2013.   The subscriber information shows this phone registered to Peggy Wearren B/F XX/XX/XX/XX/XXXX.   Peggy Wearren has the following criminal history indicating arrest.   02/15/1995 Possession of cocaine; possession of drug paraphernalia. 03/12/1995 Battery; battery against law enforcement officer.   08/30/1995 Pedestrians under influence of alcohol or drugs.   08/23/1998 Disorderly Conduct.   02/03/2004 Possession of simulated controlled substances or drug paraphernalia; possession of opiates, opium or narcotic drugs.   04/13/2005 Probation violation.   02/11/2008 Deliver/manufacture of simulated controlled substances or drug paraphernalia' possession of opiates, opium or narcotic drugs.   04/17/2008 Contempt of court. 04/19/2008 Battery against City/County correction employee.   05/27/2008 Contempt of

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 59 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 143 of 167

463

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 463

court.   07/18/2008 Contempt of court.   12/23/2009 Probation violation.   05/30/2012 Criminal threat; assault; obstructing legal process or official duty.

53.     The phone number **(785) 579-5546** was indicated a total of 15 times from 01/07/2013 to 02/19/2013.   The subscriber information shows this phone registered to Oretha Robinson B/F DOB XXXXXXXX.   Oretha Robinson has the following criminal history indicating arrest.   03/07/1978 Possession of heroin.   09/12/1992 Aggravated battery.   09/23/2004 Driving under the influence of alcohol or drugs; driving while license cancelled /suspended/revoked.

54.     The phone number **(785) 727-5196** was indicated 15 times from 02/14/2013 to 02/20/2013.   The number was subpoenaed and found to be a T-Mobile pre-paid phone with no subscriber information attached to the phone number indicating the purchaser was not required to provide a name or any type of identification in order to activate the telephone.

55.     The phone number **(785) 209-8276** was indicated a total of 16 times from 01/25/2013 to 02/08/2013.   The subscriber information shows this phone registered to Larry Jackson.   According to the JCPD this phone is used by Cinderella Jackson B/F DOB XXXXXXXX.   Cinderella Jackson has the following criminal history indicating arrest.   03/11/2000 Possession of simulated controlled substances or drug paraphernalia; Conspiracy to possess simulated controlled substances/drug paraphernalia.   01/31/2008 Failure to appear.

56.     The phone number **(785) 307-8041** was indicated 10 times from 01/18/2013 to 02/14/2013.   The subscriber request had no information attached to it. According to the JCPD this phone us used by Lisa Taylor B/F DOB XXXXXXXX  Lisa Taylor has the following criminal history indicating arrests.   08/30/1991 Disorderly conduct.   01/13/1993 Sale of cocaine.   09/21/1994 Theft.   06/18/1995 Failure to appear. 04/17/1996 Forgery financial instrument.   08/13/1998 Obstructing legal process or official duty.

57.     The phone number **(785) 761-5075** was indicated 9 times from 01/15/2013 to 01/29/2013.   The subscriber information shows this phone registered to Mildred McNeil.   Mildred McNeil has the flowing criminal history indicating arrests for. 08/17/1998 Possession of cocaine.   03/24/2007 Driving under influence of alcohol or

Case 5:15-cv-03093-HLT    Document 182-16    Filed 09/18/20    Page 60 of 71
Case 5:13-cr-40060-DDC    Document 346-1    Filed 06/30/14    Page 144 of 167

464

Appellate Case: 23-3102      Document: 010110884675      Date Filed: 07/10/2023      Page: 464

drugs.  08/02/2008 Aggravated failure to appear.  06/18/2008 Delivery/manufacture drug paraphernalia to person <18yoa; Possession of opiates, opium or narcotic drugs; Endangering a child; Involves child <18 yoa.

58.    The phone number **(785) 375-1866** was indicated 7 times from 01/10/2013 to 02/14/2013.  The subscriber information shows this phone registered to Rosella Johnson B/F DOB XX/XX/X96X.  Rosella Johnson has the following criminal history indicating arrests for.  02/08/2008 Deliver/manufacture of simulated controlled substances or drug paraphernalia; Possession of opiates, opium or narcotic drugs; Possession of depressant/stimulants/hallucinogenics/steroids.  04/01/2008 Contempt of court.

59.    The phone number **(785) 477-8570** was indicated 7 times from 01/16/2013 to 01/22/2013. The subscriber information shows this phone registered to Mark.  This is the only information received from the subpoena request indicating the person only gave the first name of Mark when activating the phone.  This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Wayne as well. The JCPD has identified Mark as Gregory Mark Roberts B/M DOB XX/XX/X96X.  Gregory Roberts has the following criminal history indicating arrest.  11/07/1988 Abandonment of child (non support). 03/10/1990 Criminal trespass.  01/16/1991 Theft; obstruction of police; giving false name, address or birthdate to law enforcement officer; DUI. 01/24/1992 Driving while license suspended or revoked. 11/01/1992 Possession, manufacture, distribution, or sale of marijuana; giving false name, address or birthdate to law enforcement officer. 04-31/1994 Purchase/possess/control drug.  07/05/1994 Battery. 08/25/1997 Probation violation.   03/28/1997  Purchase/possess/control drug; willful obstruction of law enforcement officers; forgery; giving false name, address or birthdate to law enforcement officer.  11/08/1999 Violation of Georgia controlled substance act; giving false name, address or birthdate to law enforcement officer.  07/03/2002 Parole violation.   07/07/2004 Parole violation.   09/21/2005 Parole violation.   11/08/2008 Acquiring license plate for purpose of concealing identification of motor vehicle. 03/16/2011 Attempt to unlawfully manufacture, sell theft detection device; theft. 03/30/2012 Probation violation.  08/22/2012 Probation violation.  01/05/2013 Probation violation.

Appellate Case: 23-3102     Document: 01110884675     Date Filed: 07/10/2023     Page: 465

60.    The phone number **(785) 560-1919** was indicated 6 times on 01/19/2013. The subscriber information shows this phone registered to LaDonna (Smith) McCoy B/F DOB XX/XX/XX. This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Ladonna as well. LaDonna (Smith) McCoy has the following criminal history to indicate arrests for. 02/28/1979 Promoting prostitution. 11/30/1983 Prostitution; obstructing legal process or official duty. 05/16/1986 Failure to appear. 09/18/1988 Theft. 09/19/1988 Theft. 09/29/1988 Probation violation. 05/22/1993 Prostitution. 02/15/1994 Theft. 01/13/1995 Prostitution. 01/13/1995 Obstructing legal process or official duty; theft. 01/21/1995 Theft; criminal trespass. 05/08/1995 Theft. 08/07/1995 Probation violation. 02/18/2000 Theft. 10/02/2001 Theft of services. 12/22/2001 Domestic battery. 06/26/2003 Theft by shoplifting. 04/20/2004 Burglary; criminal damage to property; theft. 02/24/2012 Failure to appear. 05/30/2010 Criminal damage to property. 07/14/2012 Failure to appear.

61.    The phone number **(785) 762-5346** was indicated 12 times from 01/21/2013 to 02/17\2013. The subscriber information shows this phone registered to Lauren Hull B/F DOB XX/XX/XXor Garland. The JCPD indicates the user of the phone to be Garland Hull B/M DOB 05/22/1963. This phone number was found in Patricia Foy's phone when she was arrested on 12/29/2012 and listed as Garland as well. Lauren Hull has the following criminal history to indicate arrests for. 11/24/2010 Theft of services; conspiracy to commit theft; unlawful removal of theft detection device. 07/20/2012 Domestic battery; possession of hallucinogenic drug; use possess with the intent to use drug paraphernalia into the human body. On 09/06/2012, CI #1 contacted Garland Hull at this telephone number and subsequently purchased Oxycodone and Clonazepam from him. On 09/25/2012 CI #1 contacted Garland Hull at this telephone number once again, CI #1 purchased Oxycodone pills from Garland Hull.

62.    The phone number **(785) 307-1667** was indicated 12 times from 02/12/2013 to 02/15/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

63.    The phone number **(785) 210 9605** was indicated 12 times from 01/07/2013 to 02/18/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 62 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 146 of 167

466

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 466

64.     The phone number **(785) 317-0015** was indicated 12 times from 01/20/2013 to 02/14/2013. The subpoena results indicated this to be a T-Mobile pre-paid phone with no subscriber information available indicating the purchaser was not required to produce any identification or name to activate the phone.

65.     The phone number **(816) 308-7814** was indicated 12 times from 02/08/2013 to 02/09/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

66.     The phone number **(785) 210-9077** was indicated 11 times from 01/19/2013 to 01/26/2013. This phone number was subpoenaed but as of 02/22/2013, the subscriber information had not been obtained.

67.     The phone number **(785) 210-5030** was indicated 11 times from 01/30/2013 to 02/20/2013.  The subpoena response indicated there was no name associated with this telephone.

68.     The phone number **(785) 717-9028** was indicated a total of 81 times from 02/10/2013 to 02/21/2013. The subscriber information shows this phone registered to Elisa Davis, B/F DOB 06/29/1984.  Elisa Davis has the following criminal history for arrest.  01/02/2007 Criminal damage to property.

## FACTS AND CIRCUMSTANCES

69.     Based upon the Affiant's investigation and those of other law enforcement agencies, the following facts and circumstances are set forth.  The Affiant believes the investigation has revealed that **Anthony Thompson** and **Albert Banks** are involved in the distribution of illegal drugs and have been for quite some time. Given the amounts sold to CI #1 and the amounts of controlled substances available to sell (by their own admission), the Affiant believes **Anthony** Thompson and **Albert Banks** have been and will continue to be involved in an ongoing conspiracy to distribute illegal drugs. The conspiracy includes numerous persons named above and individuals both known and unknown. **Anthony Thompson** and **Albert Banks** continue to realize profits from the sale of controlled substances. Based on all the information the investigation has been able to gather thus far, it is the consensus of the law enforcement investigators that **Anthony**

Case 5:15-cv-03093-HLT    Document 182-16    Filed 09/18/20    Page 63 of 71
Case 5:13-cr-40060-DDC    Document 346-1    Filed 06/30/14    Page 147 of 167

467

Appellate Case: 23-3102    Document: 010110884675    Date Filed: 07/10/2023    Page: 467

**Thompson** and **Albert Banks,** in association with others, are involved in extensive illegal drug activity. This is evident by the sales of controlled substances to CI #1, observations made during those sales, and statements made by **Anthony Thompson** and **Albert Banks** to CI #1. **Anthony Thompson** told CI #1 on 10/03/2012 that he is purchasing approximately nine (9) ounces of cocaine per week for distribution. The sources of **Anthony Thompson** and **Albert Banks'** illegal drugs appear to come from Kansas City, Topeka and/or Wichita, KS. The actual source of the narcotics is unidentified thus far in the investigation. Earlier in the investigation, Investigators believed the illegal narcotics to come from the Kansas City area from a source known as Adrian Muse. It appears as though Muse may not be the source of supply lately due to the information obtained from SOI #1 who has indicated he/she has heard conversations stating this source is possibly not used at this time. Johnny Lee Ivory was believed to be a source of supply in the Topeka, KS area. Johnny Lee Ivory had not been located this investigation and it is unclear if he is still a source of supply. **Albert** Banks has been making tips to Wichita, KS recently as well but investigators do not know when he is going or with whom he is going. Therefore, the source of supply, if in fact it is in Wichita, KS, is still unknown. Thus this conspiracy extends to multiple regions of the State of Kansas and multiple jurisdictions with yet unidentified persons. **Anthony Thompson** and **Albert Banks** obviously have currency at their disposal without having any legal, gainful employment. Throughout this investigation, the quantity of illegal narcotics purchased by CI #1 has increased in an effort to purchase more than **Anthony Thompson** or **Albert Banks** could supply, thus forcing them to either introduce CI #1 to their supplier or take CI #1 with them to their supplier so CI #1 could purchase quantities which **Anthony Thompson** or **Albert Banks** could not produce. This investigative technique has failed to date. CI #1 has purchased as small of quantity of less than one (1) gram to as much as three (3) ounces, all the while being distributed by **Anthony Thompson** and/or **Albert Banks** working in conjunction with each other.

70.    Although **Anthony Thompson** has not always had this same telephone number (785-226-1783) throughout this investigation, he has had it for the majority of the investigation and currently uses this number to conduct illegal narcotic distribution at this time as indicative of the sells to CI #1. Those believed to be involved in the ongoing

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 64 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 148 of 167

468

Appellate Case: 23-3102      Document: 010110884675      Date Filed: 07/10/2023      Page: 468

conspiracy are continuing to use telephone number **(785) 226-1783** subscribed to Jason Roberts but used by **Anthony Thompson** to facilitate their illegal activities.

## GOALS OF THE INVESTIGATION

71.    It is the goal of the Law Enforcement personnel involved in this investigation to identify all persons involved in this operation whether they are in Kansas or any other state.   The identity of persons that are transporting, manufacturing and/or storing illegal drugs in Kansas is being and will continue to be pursued.   The identities and prosecution of the conspirators involved in the transportation, manufacturing, storing and distribution of illegal drugs to and from the state of Kansas is hoped to be achieved. Another goal of this investigation is to dismantle this organization that is under the control of **Anthony Thompson** and **Albert Banks**.   It is believed this organization is responsible for the distribution of large amounts of illegal drugs in Geary and Riley County, Kansas.   At this time, the clear scope of the organization, all the conspirators, their involvement and the amount of illegal drugs being distributed have not been identified.  Without the ability to monitor the phone belonging to **Anthony Thompson**, it is believed the full scope of the operation will not be disclosed nor will it be dismantled. While a prosecutable case has been made on **Anthony Thompson;** CI #1 is not able to breech the conspiracy to learn the role of all the players.  CI #1 is only able to make purchases from **Anthony Thompson, Albert Banks** and possibly a select few within the organization.    These purchases will not reveal the sources of supply, fruits, instrumentalities or assets of the distribution of illegal drugs, or the roles of other co-conspirators.    Without a wire interception the persons involved in this targeted distribution operation will be allowed to continue.

Case 5:15-cv-03093-HLT    Document 182-16    Filed 09/18/20    Page 65 of 71
Case 5:13-cr-40060-DDC    Document 346-1    Filed 06/30/14    Page 149 of 167

469

Appellate Case: 23-3102    Document: 010110884675    Date Filed: 07/10/2023    Page: 469

## NEED FOR WIRE INTERCEPTIONS

72.     Investigation to date has failed to disclose and prove the full scope of the targeted organization and the locations and sources of any and all supply sources currently being used by the subject(s) of this investigation.  Direct evidence linking the source of the supply to the flow of illegal drugs in the present conspiracy would be difficult, if not impossible, to obtain using standard investigative techniques.  This is evidenced by the fact CI #1 has not and will not be taken into the organization's full confidence and advised of the source or sources of the illegal drugs.

73.     Affiant believes the requested wire interception will produce the requisite information identifying and establishing a direct link to the sources and supply of the illegal drugs.  Based upon the combined experience of Affiant and all law enforcement personnel involved in this investigation based upon all of the facts set forth herein, it is the Affiant's belief that the interception of wire communications is the only available technique which has a reasonable likelihood of securing evidence demonstrating the scope of the illegal drug activity.

## OTHER INVESTIGATIVE PROCEDURES

74.     There are numerous investigative procedures, which are usually employed in an investigation of this type which have been tried and failed, or which reasonably appear unlikely to succeed if attempted. Other procedures which might reveal the scope of this conspiracy and those involved are simply too dangerous to employ, or would compromise the integrity of the investigation. Some of these procedures have been described above; others are stated below.

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 66 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 150 of 167

470-

Appellate Case: 23-3102   Document: 010110884675   Date Filed: 07/10/2023   Page: 470

## A.   PHYSICAL SURVEILLANCE

75.     Physical surveillance has been utilized in this investigation and has proven to be of limited value. Although it has identified some activities and associates of the targets, physical surveillance – if not used in conjunction with other techniques, including electronic surveillance – is of limited value.   Physical surveillance, even if highly successful, does not always assist in gathering evidence of the criminal activity under investigation.  It is an investigative technique that is used to confirm meetings between alleged co-conspirators, but, in many cases, only leads investigators to speculate as to the purposes of these meetings, because the surveillance itself often proves association between the conspirators at a given time and place.  It is also a technique used to corroborate information obtained from cooperating individuals. Physical surveillance of alleged conspirators will not, however, conclusively establish the elements of the subjects' violations, and this technique has not, and most likely will not, establish the identities of all conspirators.  In addition, continued physical surveillance is not expected to enlarge information now available to substantiate the elements of criminal violations for which the state's application seeks to intercept wire communications.  Prolonged or regular surveillance of the movements of the suspects is instead likely to be noticed, causing the suspects to become even more cautious and secretive in their illegal activities, causing them to flee to avoid apprehension and prosecution causing a real threat to the safety of the CI and/or possibly compromising the investigation.  It must also be noted that the conspirators have utilized techniques to avoid being surveilled by law enforcement such as driving erratic or slower than all other traffic, making sudden stops or unexpected sudden turns while engaged in physical surveillance by law enforcement. It should also be noted that the conspirators have employed counter surveillance techniques such as having lookouts place themselves around buildings, vehicles and/or residences to watch for persons that continue to drive past or near the locations where suspected drug trafficking offenses are, or will be committed.   Finally, it is not possible to determine the full nature and scope of the aforementioned offenses by the use of simple physical surveillance, given the number of conspirators, the complexity of the criminal violations, the multi-jurisdictional locations and travels of some of the

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 67 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 151 of 167

471

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 471

conspirators, and the varying rolls played by the targets of this investigation. Officers of the Junction City Police Department and Kansas Bureau of Investigation agents have attempted to conduct surveillance in the vicinity of some of the residences mentioned in this investigation. Officers have seen individuals that were placed outside residences appearing to look for persons that were watching the residences.

### B.     COOPERATING INDIVIDUALS

76.     No cooperating individuals other than the ones aforementioned have been identified due to the mistrust the subjects have of individuals they are acquainted with or have conducted business with prior. Additional cooperating individuals have not been developed because of their apparent fear of the repercussions they would face if their identity were ever disclosed.

### C. UNDERCOVER AGENTS

77.     To date, no undercover Agents have been able to make purchases from any of those involved in this organization. It is the belief of law enforcement, any undercover person/s who may have the chance encounter of purchasing illegal narcotics from this group would have to do so at a very low level within the organization and would most likely never be given the opportunity to advance within the ranks of the organization to a place where the true conspiracy/conspirators would be identified. It is also the belief of law enforcement that the possibility of gaining the knowledge of the source of supply for this organization would not occur as the identity of this person/s have been kept secret throughout this investigation. The undercover agent would never be fully trusted and any further relevant information related to the scope of the illegal drug activity would never be known.

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 472

## D. PEN REGISTERS

78. On 01/07/2013 a Pen Register was initiated on the target phone number **(785) 226-1783** pursuant to a Kansas Court Order.  From 01/07/2013 to 02/22/2013 a total of 7,689 calls/text messages were made into and out of **(785) 226-1783**. The Pen register information demonstrates to the Affiant **Anthony Thompson** is using telephone number **(785) 226-1783** to distribute controlled substances as demonstrated by, but not limited to, the number of calls/text messages registered per day, the length of the phone conversations and/or the parties calling or being called on phone number **(785) 226-1783**. The Pen Register has demonstrated to the Affiant that the phone number **(785) 226-1783** has been, is being and will continue to be used to communicate criminal activity concerning the distribution of controlled substances by **Anthony Thompson** and his associates.

## E.     USE OF JUDICIAL AND ADMINISTRATIVE SUBPOENAS

79.     Based upon Affiant's experience and conversations with other Agents and Administration of the Kansas Bureau of Investigation as well as Officers and Administration of the Junction City Police Department, who have considerable experience in investigating these individuals, similar operations and violations of the law such as these, it is the common consensus that the service of subpoenas to persons believed to be involved in this conspiracy and their associates would not be successful in achieving the stated goals of this investigation.  If any principals of this conspiracy, their co-conspirators, or any other participants were approached to cooperate each and every one would refuse to assist. This is especially true in this case, given the close ties among the inner circle of conspirators and many of the principals. Many of the principals in this investigation have been subjects of previous investigations and are aware of the techniques used by law enforcement to garner information. Moreover it would be unwise to afford any kind of immunity to such persons given that such immunity would not guarantee truthful admissions concerning the scope of the illegal drug activity being investigated. Additionally, service of subpoenas would alert the conspirators to the

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 473

existence of this investigation and prompt the targets to take measures to thwart it. Finally, participants in such a criminal enterprise are often reluctant to implicate others out of fear for their own safety or as a result of their loyalty to their fellow conspirators.

F.      **SEARCH WARRANTS**

80.      The execution of search warrants in this investigation has been considered. The execution of search warrants involving principals of this investigation has been used in the past resulting in retrieval of a limited amount of controlled substances and records. Use of warrants alone is unlikely to reveal the total scope of the criminal operation, the identities of all conspirators, or the precise roles each plays within the conspiracy. It is extremely unlikely, given the history of this criminal organization, that the majority of the contraband controlled by the conspirators could be located at any given time unless electronic surveillance was employed. Affiant believes the execution of search warrants at this time would compromise the investigation and reveal the identities of those cooperating individuals.

81.      For the reasons set forth in the preceding paragraphs, normal methods of investigation have been attempted and failed, or reasonably appear unlikely to succeed, and/or are too dangerous to employ. At this time the only reasonable method of developing the necessary evidence of the above-listed violations is to intercept the wire communications of the subjects of this investigation. Such interceptions will reveal the details of this conspiracy involving the importation and distribution of controlled substances, possession with the intent to distribute controlled substances, and use of communication facilities to further these offenses, in violation of Kansas Law.

Appellate Case: 23-3102     Document: 010110884675     Date Filed: 07/10/2023     Page: 474

## MINIMIZATION

82.     All monitoring of wire communications will be conducted in such a way as to minimize the interception of communication.  Interception will be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named interceptees or any of their confederates, when identified, are participants in the conversation, unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. Conversations, which are of a non-criminal or non-evidentiary nature, once minimized, will be spot-monitored in order to determine if the topic of the conversation has switched to a criminal or evidentiary nature.

83.     The interception of communications will be discontinued if the voice of one or more of the named interceptees is not identified as participating in the communication within a reasonable period of time, or in the case of conversations of others unknown which are of a non-criminal or non-evidentiary nature; spot-monitoring will be used to determine if conversations have switched to an evidentiary or criminal nature.   Monitoring will be conducted subject to the requirements to minimize interception of all non-pertinent communications.  All monitoring will be recorded.

## PERIOD OF INTERCEPTION

84.     Because of the continuing nature of the offenses as discussed above, it is further requested that authorization to intercept not automatically terminate when the types of communications described above are first obtained, but be permitted to continue until all wire communications are intercepted which fully reveal the manner in which the subjects of this investigation conduct and participate in the above-described offenses, and which reveal the full nature, scope and extent of the above-described offenses; the identities and roles of accomplices, aiders and abettors, co-conspirators, other participants in the offenses; the dispositions and locations of the proceeds from the offenses; and the types, existence and locations of all records and other physical evidence of the offenses.

Case 5:15-cv-03093-HLT   Document 182-16   Filed 09/18/20   Page 71 of 71
Case 5:13-cr-40060-DDC   Document 346-1   Filed 06/30/14   Page 155 of 167

475

Page: 475      Date Filed: 07/10/2023      Document: 010110884675      Appellate Case: 23-3102

Even if the objectives set forth in the preceding sentence have not been fully achieved, it is hereby requested that the court's order provide that authorization to intercept shall automatically terminate after thirty days, the thirty day period running from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception under the court's order or ten days after the order is entered.

GLEN F. VIRDEN
Senior Special Agent
Kansas Bureau of Investigation

Sworn to before me and subscribed in my presence this ___5___ day of March, 2013.

Judge of the Geary County District Court
State of Kansas

# EXHIBIT K

IN THE DISTRICT COURT OF GEARY COUNTY, KANSAS

IN THE MATTER OF THE APPLICATION )
OF THE STATE OF KANSAS ) CASE NO.
FOR AN ORDER AUTHORIZING THE )
INTERCEPTION OF WIRE ) UNDER SEAL
COMMUNICATIONS TO AND FROM )
T-MOBILE USA WIRELESS TELEPHONE: )
785-226-1783 )
BEARING INTERNATIONAL MOBILE STATION )
IDENTIFICATION # (IMSI) 310260445955245 )

## ORDER AUTHORIZING THE INTERCEPTION
## OF WIRE COMMUNICATIONS

Application under oath having been made before me by Steven L. Opat, Geary County Attorney,

based on the sworn affidavit of Glen F. Virden, Senior Special Agent, Kansas Bureau of

Investigations, an investigative or law enforcement officer of the State of Kansas within the meaning

of Section 5 of K.S.A. 22-2514, *et seq*, for an Order authorizing the interception of wire

communications pursuant to K.S.A. 22-2514, *et seq*, and full consideration having been given to the

matter set forth therein, the Court finds:

A.      there is probable cause to believe that Albert DeWayne Banks, DOB ███ and Anthony

         Carlyle Thompson, DOB ███, and others named in the affidavit of the said Glen F.

         Virden, and others yet unknown (hereinafter "Target Subjects"), have committed, and are

         committing, and will continue to commit offenses enumerated in Article 57 of K.S.A. 21-

         5701 *et seq*, specifically possession of controlled substances with intent to distribute, and

         distribution of controlled substances, in violation of K.S.A. 21-5701 *et seq*, specifically 21-

5705 and 5706, unlawful use of a communication facility to commit and facilitate the commission of drug trafficking offenses, in violation of <u>K.S.A. 21-5707</u>; attempts, conspiracies or solicitations to possess with intent to distribute or to distribute controlled substances, in violation of <u>K.S.A. 21-5701</u> *et seq*, and <u>K.S.A. 21-5301</u> and <u>21-5302</u> and <u>21-5304</u>; unlawful acts involving proceeds derived from violations of <u>K.S.A. 21-5701-5717</u>. (Hereinafter the "Target Offenses");

B.  there is probable cause to believe that particular wire communications of the said Albert DeWayne Banks and the said Anthony Carlyle Thompson and others yet unknown (hereinafter "Target Interceptees"), concerning the above-described Target Offenses will be obtained through the interception for which authorization has herewith been applied. In particular, there is probable cause to believe that the interception of wire communications to and from the cellular telephone with the assigned telephone number 785-226-1783, bearing IMSI 310260445955245 with service provided by T-Mobile USA Wireless with subscriber listed as one Jason Roberts, although it is clear that the principal user is and has been identified as Anthony Carlyle Thompson, will further disclose, detail and reveal the specifics of the above offenses, including the depth of the conspiracy and the manner and means of how and with whom these offenses are being committed, including the unknown sources from which the distribution by Albert DeWayne Banks, Anthony Carlyle Thompson, and others is made possible;

C.  it has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ; and

D.  there is probable cause to believe that 785-226-1783 has been and will continue to be used in connection with commission of the above-described offenses.

WHEREFORE, IT IS HEREBY ORDERED that Special Agents of the Kansas Bureau of Investigation, and other agencies acting under the supervision of the KBI, are authorized, pursuant to an application as authorized by K.S.A. 22-2515, made by Steven L. Opat, the duly elected and authorized County Attorney for Geary County, State of Kansas, to intercept wire communications to and from the above-described telephone.

PROVIDED that such interception(s) shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but may continue until all communications are intercepted which reveal fully the manner in which the above-named persons and others as yet unknown are committing the offenses described herein, and which reveal fully the identities of their confederates, their places of operation, and the nature of the conspiracy involved therein, or for a period of thirty (30) days measured from the day on which investigative or law enforcement officers first begin to conduct an interception under this order or ten (10) days after this order is entered, whichever is earlier.

1T IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States.

IT 1S ORDERED FURTHER that the authorization given is intended to apply not only to the target telephone number listed above, but also to any other telephone number or telephone accessed through the above-referenced IMSI number, and to any other IMSI number accessed through the target telephone number referenced above, within the thirty (30) day period. The authorization is also intended to apply to the target telephone number referenced above regardless of service provider, and to background conversations intercepted in the vicinity of the target

D000777

telephone while the telephone is off the hook or otherwise in use.

IT IS ORDERED FURTHER that, based upon the request of the Applicant pursuant to K.S.A. 22-2514, and the definitions set forth therein, and K.S.A. 22-2515 and 2516, T-Mobile , an electronic communication service provider as defined in Section 2510(15) of Title 18, United States Code and K.S.A. 22-2514, shall furnish the KBI and/or it's agents or designees with all information, facilities and technical assistance necessary to accomplish the interceptions unobtrusively and with a minimum of interference with the services that such provider is according the persons whose communications are to be intercepted, with the service provider to be compensated by the KBI for reasonable expenses incurred in providing such facilities or assistance.

IT IS ORDERED FURTHER that, to avoid prejudice to the government's criminal investigation, the provider of the electronic communications service and its agents and employees are Ordered Not To Disclose or Cause Disclosure of the Order or the request for information, facilities and assistance by the KBI or the existence of the investigation to any person other than those of its agents and employees who require this information to accomplish the services hereby ordered. In particular, said provider and its agents and employees shall not make such disclosure to a lessee, telephone subscriber or any interceptee or participant in the intercepted communications.

IT IS ORDERED FURTHER that this Order shall be binding on any subsequent provider of electronic communications services as defined in Title 18, United States Code, Section 2510(15) and K.S.A. 22-2514 et seq, that provides services to the target telephone number(s) listed above upon service of a certified copy of this Order without any further court order being required.

IT IS ORDERED FURTHER that this order shall be executed as soon as practicable and that all monitoring of wire communications shall be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to

Dustin J. Wederbrod RCPD        [signature]        3/6/13

Michael PARR   RCPD        [signature]        3/6/13

Nate Boeckman  RCPD        [signature]        3/6/13

Robbart Couis     KBI        [signature]        3/6/13

Sherria Moore   KBI        [signature]        3/6/13

DAVE BRROE   KBI        [signature]        3/6/13

Bill White   TPD        [signature]        3/6/13

Andrew Beigham  TPD        [signature]        3-6-13

RyAN Boyer   KBI        Ryan Boyer        3-6-13

Gary Kohes        KBI        [signature]        3-6-13

RICHARD FINK   RCPD        [signature]        3-6-13

Eric S. Coffman   GESO        Eric S Coffman        3-6-13

Justin Stopper   GESO        [signature]        3/6/2013

D000779

the pending investigation. The interception of wire communications must terminate upon the attainment of the authorized objectives, not to exceed thirty (30) days measured from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception of this order or ten (10) days after he order is entered.

Monitoring of conversations must terminate immediately when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119, Title 18, United States Code and K.S.A. 22-2514 *et seq.*. Interception must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named Target Interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent shall spot check to insure that the conversation has not turned to criminal matters.

IT IS ORDERED FURTHER that, pursuant to Section 2518(5), Title 18, United States Code and K.S.A. 22-2514 *et seq*, in the event intercepted communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

IT IS ORDERED FURTHER that Steven L. Opat, Geary County Attorney and /or Antonio Cruz Assistant Geary County Attorney shall provide this Court with a report on or about the tenth, twentieth, and thirtieth days following the date of this Order showing what progress has been made toward achievement of the authorized objectives and the need for continued interception. If any of the above-ordered reports should become due on a weekend or holiday, IT IS ORDERED FURTHER that such report shall become due on the next business day thereafter.

D000780

| Print Name / Agency | Sign | Date |
|---|---|---|
| Mike Rumford   ISBI | | 3-6-13 |
| Deu Swann  KBI | | 3/16/13 |
| Fran Sheldan  KBI | Fran Sheldan | 3-16-13 |
| Scott Ferris  KBI | Scott Ferris | 3/6/13 |
| Jidal Campos KBI | | 3/6/13 |
| Chris Turner  KBI | | 3/6/13 |
| MATTHEW LYON  KBI | Matthew Lyon | 03-06-2013 |
| Rod Page  KBI | Rod Page | 03-06-2013 |
| ED BARTKOSKI KBI | | 03-06-2013 |
| Brad Ingalls  RCPD | By W. Ing | 03/06/2013 |
| SHAWN STANTON RCPD | | 3/6/2013 |
| Dan Bortnick RCPD | | 03-06-2013 |
| Luke Breault  RCPD | | 3-6-13 |
| John M. Dochling RCPD | Joe Doell | 3/6/13 |
| Brad Schoen | BSch | 3-6-13 |
| Don Breci | | 3-6-12 |
| Jeff Childs | | 3-6-12 |
| Julia Gogga | Julia Gogg | 3-6-13 |
| Jessie Beck | | 3.06.13 |
| Kurt Moldrix | | 3.6.13 |
| Emmett Smith | | 3/6/2013 |
| Robert Dienks | | 03-06.2013 |
| BRIAN JOHNSON RCPD | | 03/06/13 |
| Mark French RCPD | Mark French | 03/06/13 |
| Rick Deutsch | | 3/6/13 |
| BREK JAGER | Brek C. Jager | 03/06/13 |

IT IS ORDERED FURTHER that this Order, the application, affidavit and proposed order, and all interim reports filed with this Court with regard to this matter, shall be sealed until further order of this Court, except that copies of the order, in full or redacted form, may be served on the KBI and the service provider as necessary to effectuate this order.

DONE and ORDERED this __5__ day of __March__, 20_13_, at in Junction City, Kansas.

HONORABLE *David R Platt*
*District Judge*

D000782

PRINT NAME / AGENCY | | DATE

| | | |
|---|---|---|
| Glen Virden KBI | | 03/06/13 |
| Doug Younger KBI | Doug Younger | 03/06/2013 |
| Robert Conde KBI | Robert J Conde | 03/06/2013 |
| Tim Leakey KBI | Tim Leakey | 03/06/13 |
| Amanda Young KBI | Amanda Young | 3/06/13 |
| Steve Bundy KBI | | 3/6/13 |
| Michael Lind KBI | | 3-6-13 |
| Shane Finley KBI | | 3-6-13 |
| Frank Papish KBI | | 3/6/13 |
| KELLY W. RALSTON KBI | | 3/6/13 |
| Shawn Campiti KBI | Shawn Campiti | 3-6-2013 |
| JON RANKIN KBI | for Rankin | 3/6/13 |
| Traci Allen KBI | Traci Allen | 3-6-13 |
| Chris Farris KBI | | 3-6-13 |
| JOSH KYLE RCPD | John D. Kyle | 3-6-13 |
| Mike Life JCPD | | 3-6-13 |
| Angela C. Weeks GESO | Angela C Weeks | 03.06.13 |
| Cathy Fahey JCPD | Cathy Fahey | 3-6-13 |
| JOSHUA BROWN JCPD | | 03062013 |
| TODD Goodney JCPD | | 030613 |
| STEVEN L. OPAT GECA | Steven L. Opat | 3/6/13 |
| Alvin Babcock JCPD | | 3-6-13 |
| Tony Cruz GECA | Tony Cruz | 3/6/13 |
| TIM BROWN JCPD | Tim Brown | 03/06/13 |
| MAVERICK CAMPBELL GESO | | 03/06/13 |
| Tony Wolf Geary County SO | | 3.06.13 |
| William R Arnold Jr. JCPD | William R. Arnold | 03/06/13 |
| Cory Odell JCPD | | 3/6/13 |
| Rish Girdner JCPD | | 3-6-13 |
| Kelly Roberts TPD | Kelly Roberts | 3-6-13 |

D000783

485

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ALBERT DEWAYNE BANKS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 5:15-cv-03093-HLT-GEB** |
| **STEVEN L. OPAT, et al.,** | |
| **Defendants.** | |
| | |
| **ANTHONY THOMPSON,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 5:15-cv-03117-HLT-GEB** |
| **GLEN F. VIRDEN, et al.,** | |
| **Defendants.** | |

### MEMORANDUM AND ORDER

Plaintiffs Albert Banks and Anthony Thompson[1] bring claims under state and federal wiretapping laws against Defendants Steven L. Opat, Glen F. Virden, Timothy Brown, and Tony Wolf ("Individual Defendants"). They also bring claims against Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS, and T-Mobile USA Inc. ("Carrier Defendants"). All Defendants move for summary judgment. Docs. 173, 175, 177, 179, 181. For the reasons outlined below, the Court grants Individual Defendants' motions for summary judgment. But the Court denies Carrier Defendants' motion for summary judgment.

---

[1]   Banks and Thompson filed their cases separately, both initially proceeding pro se. Banks asserts claims against Opat, Virden, Brown, and Sprint. Thompson asserts claims against Virden, Brown, Wolf, and T-Mobile. The cases have since been consolidated, *see* Doc. 160, and the Court appointed counsel to represent both Plaintiffs. *Id.* Unless otherwise specified, all docket citations are to Case No. 15-03093, which is the lead case.

## I.   BACKGROUND

Starting in February 2012, the Kansas Bureau of Investigation ("KBI"), the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department jointly conducted a narcotics-trafficking investigation. Doc. 174 at 4; Doc. 198 at 2. The lead law enforcement officer for the KBI during the investigation was KBI Special Agent Glen Virden. Doc. 174 at 3-4; Doc. 198 at 4. The Chief of the Junction City Police Department was Timothy Brown. Doc. 176 at 8; Doc. 197 at 3. Tony Wolf was the Sheriff of Geary County starting in January 2013. Doc. 180 at 2; Doc. 199 at 1. Pursuant to this investigation, then-Geary County Attorney Steven Opat applied for and received several wiretap orders from Judge David Platt in Kansas's Eighth Judicial District. *See, e.g.*, Docs. 174-2 & 174-3. For all the applications, probable cause was supported by Virden's affidavit. *See id.*

In the spring of 2013, Judge Platt issued several wiretap orders. Relevant to Plaintiffs, the initial orders only authorized interception of wire communications (not electronic communications, i.e. text messages). *See* Doc. 174-2 at 1; Doc. 174-3 at 75, 154; Doc. 174-6 at 224. The orders also authorized interception even if the phones were taken outside the territorial jurisdiction of the Eighth Judicial District, which is where Judge Platt sat. *See* Doc. 174-3 at 75, 154; Doc. 174-6 at 224. Subsequent wiretap orders by Judge Platt explicitly authorized interception of electronic communications, but they still applied extra-territorially. *See* Doc. 379-25 at 257; Doc. 379-27 at 270. Other orders in the investigation that were directed at different individuals and phone numbers were later clarified to include text messages because certain carriers refused to intercept messages without clarification from Judge Platt. *See* Doc. 182-13 at 2; Doc. 182-14 at 2. Sprint/Nextel was one of the carriers who sought a clarification order for one of Judge Platt's

wiretap orders, but it did not seek any clarification for the orders at issue in this case. Doc. 182-14 at 2. The clarification orders do not apply to the wiretap orders in this case.[2]

As a result of the investigation, Banks and Thompson were charged in federal court with controlled-substance offenses. Banks and Thompson moved to suppress text messages that were intercepted pursuant to orders that only authorized intercepting wire communications. *Banks*, 2014 WL 4261344, at *1. The court denied the motion to suppress because it determined that text interceptions fell within the good-faith exception to the Fourth Amendment's exclusionary rule. *Id.* at *5. The court did, however, suppress 60,000 communications that were intercepted outside Judge Platt's jurisdiction. Doc. 174 at 15; Doc. 198 at 5. Still, the court noted in one of its subsequent rulings (in dicta) that the executing officers were almost certainly acting in good faith as to the extra-territorial interceptions "because one would not expect the officers executing the search warrants to have apprehended the subtle, technical jurisdictional defect that form[ed] the basis of the Court's threshold suppression ruling." *United States v. Banks*, 2015 WL 2401048, at *3 (D. Kan. 2015). Banks and Thompson were ultimately convicted of multiple controlled substance offenses. *See United States v. Thompson*, 2021 WL 3826532 (10th Cir. 2021) (declining to vacate conviction); Order, *United States v. Banks*, No. 5:13-cr-40060 (D. Kan. 2021), ECF No. 1368 (same).

Plaintiffs separately brought civil actions claiming violations of state and federal wiretap statutes, violations of the Fourth Amendment, and conspiracy. This Court dismissed their claims. *Banks v. Opat*, 2018 WL 6031188, at *8 (D. Kan. 2018); *Thompson v. Virden*, 2018 WL 6046469,

---

[2] Plaintiffs dispute the validity of the clarification orders. Doc. 196 at 8. But Plaintiffs' arguments are unpersuasive, not supported by appropriate evidence, and do not create a genuine dispute. Plaintiffs' arguments are additionally undermined because they relied on one of the clarification orders in their complaints. *See* Doc. 74 ¶13; Amended Complaint, *Thompson v. Virden*, No. 5:15-cv-03117 (D. Kan. 2018), ECF No. 71 ¶13. And the clarification orders were also used in Plaintiffs' criminal proceedings. *See United States v. Banks*, 2014 WL 4261344, at *4 (D. Kan. 2014). Thus, there is no genuine dispute of fact about the clarification orders. *See* Fed. R. Civ. P. 56(e).

at *8 (D. Kan. 2018). The Tenth Circuit affirmed in part, but it remanded for further proceedings on Plaintiffs' state and federal statutory wiretap claims stemming from Individual Defendants' interception and disclosure of extra-territorial communications and Carrier Defendants' interception and disclosure of text messages. *Banks v. Opat*, 814 F. App'x 325, 338 (10th Cir. 2020); *Thompson v. Platt*, 815 F. App'x 227, 240 (10th Cir. 2020). On remand, Defendants have all moved for summary judgment on these issues. Docs. 173, 175, 177, 179, 181.

## II.     STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.    ANALYSIS

### A.    Individual Defendants

### 1.    Absolute Prosecutorial Immunity—Opat

Opat argues that he is entitled to absolute immunity because all his challenged actions were undertaken in his role as a prosecutor and advocate for the State of Kansas. Banks[3] argues that

---

[3]    Only Banks asserts a claim against Opat.

Opat's actions were administrative or investigative in nature, and thus absolute immunity is not appropriate. "Functions that serve as an 'integral part of the judicial process' or that are 'intimately associated with the judicial process' are absolutely immune from civil suits." *Benavidez v. Howard*, 931 F.3d 1225, 1230 (10th Cir. 2019) (citation and alteration omitted). Absolute immunity is less likely to attach to a function that is more distant from the judicial process. *Id.*

In *Burns v. Reed*, 500 U.S. 478 (1991), the Supreme Court held that a prosecutor was absolutely immune from suit for his participation in a probable-cause hearing. *Id.* at 487. The Court reasoned that "[t]he prosecutor's actions at issue here—appearing before a judge and presenting evidence in support of a motion for a search warrant—clearly involve the prosecutor's 'role as advocate for the State,' rather than his role as 'administrator or investigative officer.'" *Id.* at 491 (citation omitted).

In contrast, in *Kalina v. Fletcher*, 522 U.S. 118 (1997), the Supreme Court held that although the prosecutor was absolutely immune for filing an information and a motion for an arrest warrant, she was not absolutely immune when she gave sworn testimony as a witness. *Id.* at 129-31. Specifically, to establish the grounds for a warrant, the prosecutor had executed a document entitled "Certification for Determination of Probable Cause," where she personally vouched for the truth of the facts set forth in the certification under penalty of perjury. *Id.* at 121.

Here, Opat was acting as an advocate for the state in the judicial process and not as a complaining witness. Like the prosecutor in *Burns*, Opat was acting as an advocate in a probable-cause hearing to secure a warrant. Unlike the prosecutor in *Kalina*, Opat's application was based on Virden's affidavit rather than his own testimony. *See, e.g.*, Doc. 174-3 at 73. Notably, Judge Crow of this Court ruled that Opat was entitled to absolute prosecutorial immunity in a nearly

identical case filed by Banks's co-conspirator Johnny Ivory. *See Ivory v. Platt*, 2016 WL 5916647, at *11-12 (D. Kan. 2016).

Banks points to *Mitchell v. Forsyth*, 472 U.S. 511 (1985), to argue that Opat is not entitled to absolute immunity. *Mitchell* stands for the rule that the Attorney General is not absolutely immune for actions taken pursuant to his national security duties, which are distinct from judicial actions. *Id.* at 523. But aside from the underlying factual similarity of a wiretap occurring, *Mitchell* has little bearing on this case. Therefore, the Court grants Opat's motion for summary judgment based on absolute prosecutorial immunity.[4]

### 2.   Good Faith—Virden, Brown, and Wolf

Both Plaintiffs assert claims against Virden and Brown for violations of state and federal wiretap statutes. Thompson brings the same claims against Wolf. Virden, Brown, and Wolf all assert statutory good-faith defenses, namely that they were acting in good faith based on Judge Platt's orders. Because there is significant overlap between the arguments by Virden, Brown, and Wolf, the Court addresses their good-faith arguments jointly.

The Court must decide, assuming these officers violated Plaintiffs' statutory rights, whether the officers were acting in good faith. Plaintiffs assert that the officers violated their statutory rights by intercepting, disclosing, and/or procuring communications outside Judge Platt's jurisdiction, in violation of Kansas law. K.S.A. § 22-2516(3). They also assert that the extra-territorial interceptions violate federal law under *United States v. McNulty*, 729 F.2d 1243, 1266 (10th Cir. 1983) (en banc) ("[T]he federal statute itself requires our deference to [state] law on the question of the validity of the wiretap order obtained in state court under state law.").

---

[4]   Opat argues in the alternative that he is entitled to summary judgment based on either qualified immunity, statutory good-faith defenses, issue preclusion, or *Heck v. Humphrey*. Opat also argues that Banks's purported damages are limited by the statute of limitations. The Court does not address these arguments because it holds for Opat on prosecutorial-immunity grounds.

Under state and federal law, any person who intercepts wire, oral, or electronic communications in good-faith reliance on a court order has a complete defense against any civil action. 18 U.S.C. § 2520(d); K.S.A. § 22-2518(2). "To be in good faith, the officers' reliance must have been objectively reasonable." *Davis v. Gracey*, 111 F.3d 1472, 1484 (10th Cir. 1997).[5]

The statutory good-faith defense is like the good-faith exception to the exclusionary rule for Fourth Amendment violations. *Banks*, 814 F. App'x at 331 (citing *United States v. Moore*, 41 F.3d 370, 376 (8th Cir. 1994)). Thus, Fourth Amendment good-faith law is instructive in understanding federal statutory good faith. Furthermore, Kansas has adopted the good-faith exception to the exclusionary rule without modification. *State v. Hoeck*, 163 P.3d 252, 265 (Kan. 2007). Therefore, Fourth Amendment caselaw also sheds light on the state-law defense.

In *United States v. Workman*, 863 F.3d 1313 (10th Cir. 2017), the Tenth Circuit reversed the district court's exclusion of evidence based on an invalid warrant because the executing agents acted in an objectively reasonable manner. *Id.* at 1315, 1321. There, the plaintiff had argued the warrant was invalid because the magistrate judge who issued it "lacked territorial jurisdiction under Rule 41(b) of the Federal Rules of Criminal Procedure and the Federal Magistrates Act, 28 U.S.C. § 636(a)." *Id.* at 1316. Under Rule 41(b), magistrate judges only have the authority to issue a warrant to seize a person or property located within their districts. *See* Fed. R. Crim. P. 41(b).

---

[5]   The Court recognizes that the circuits disagree on whether statutory good faith has a subjective component or is completely objective. *See, e.g.*, *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249-54 (5th Cir. 2017) (examining the circuit split over a nearly identical good faith provision pertaining to stored electronic communications). The Tenth Circuit has used a good-faith test with a subjective component. *See Dahl v. Charles F. Dahl, M.D., P.C. Defined Benefit Pension Tr.*, 744 F.3d 623, 631 (10th Cir. 2014) ("[A] defendant may invoke the defense of good faith reliance on a court order only if he can demonstrate (1) that he had a subjective good faith belief that he acted legally pursuant to a court order; and (2) that this belief was reasonable." (alteration in original)). The Tenth Circuit, however, declined to adopt the subjective-objective test for future good-faith cases. *See id.* The Tenth Circuit cited an objective test when it remanded these cases. *Banks*, 814 F. App'x at 331; *Thompson*, 815 F. App'x at 233. Thus, the Court uses the objective test in *Davis*. Notably, Plaintiffs do not contest Virden's, Brown's, or Wolf's subjective good-faith belief. Therefore, the definitive question under either test is whether the reliance on the warrants was objectively reasonable.

In *Workman*, the FBI got a warrant from a magistrate judge in the Eastern District of Virginia. 863 F.3d at 1315. The warrant allowed them to install software on a child pornography website that allowed them to identify the website's users. *Id.* at 1315-16. The software identified Workman, who had accessed the website from Colorado. *Id.* at 1316. The FBI then got a search warrant in Colorado to search Workman's computer, and the FBI caught Workman in the act of downloading child pornography. *Id.* The district court, however, suppressed the evidence. *Id.* at 1317.

The Tenth Circuit assumed for the sake of argument that the magistrate judge lacked the jurisdiction to issue the warrant. *Id.* It then considered whether a reasonably well-trained agent would have known that the warrant was invalid despite the magistrate judge's authorization. *Id.* at 1320. The Tenth Circuit started with the presumption that executing agents act in good faith on a warrant. *Id.* It then bolstered that presumption with the following observations: "1. The software was installed in a government server located in the Eastern District of Virginia. 2. The magistrate judge, who issued the warrant, was in the Eastern District of Virginia. 3. All of the information yielded from the search would be retrieved in the Eastern District of Virginia." *Id.* It thus concluded that executing agents without sophisticated legal training could reasonably rely on the magistrate judge's authorization. *See id.*

This case is similar. Here, it is undisputed that the cellular phones, which were the subject of the interception orders, had been used in Geary County. Judge Platt, who issued the orders, was in the Eighth Judicial District of Kansas, which includes Geary County. And the Plaintiffs engaged in the underlying criminal activity in Geary County. Thus, there were objective ties to Judge Platt's jurisdiction. Consequently, it was reasonable for these officers, who are without sophisticated legal training, to rely on the state judge's authorization. Therefore, the Court grants Virden, Brown, and

Wolf summary judgment based on their statutory good-faith defenses under Kansas and federal law.[6]

Plaintiffs don't point to any evidence from which a reasonable jury could find a different result. Instead, they argue that there is no good-faith defense for a mistake of law. Their argument, however, relies on caselaw outside the warrant context. *See, e.g.*, *State v. Oram*, 266 P.3d 1227, 1235 (Kan. 2011) ("*Leon*'s good-faith exception to the exclusionary rule generally applies only narrowly outside the context of a warrant."); *see also Quigley v. Rosenthal*, 327 F.3d 1044, 1070 & n. 15 (10th Cir. 2003) (arising outside the warrant context and involving private attorneys with sophisticated legal training).

Moreover, Plaintiffs' argument is contrary to *Workman*, where the Tenth Circuit assumed the officers were incorrect that the magistrate judge had jurisdiction. Plaintiffs essentially argue that it is objectively unreasonable to rely on a legally insufficient warrant. But that would all but eliminate the good-faith defense, which begins with the premise of a legally deficient order or warrant. Officers are entitled to rely on judges who have more sophisticated legal training. Under 8 U.S.C. § 2520(d) and K.S.A. § 22-2518(2), it is not an officer's job to research caselaw and correct the judge. Notably, in the Fourth Amendment setting, there are four contexts where the good-faith presumption does not apply. None of them are mistake of law. *See, e.g.*, *United States v. Barajas*, 710 F.3d 1102, 1110-11 (10th Cir. 2013); *State v. Zwickl*, 393 P.3d 621, 628 (Kan. 2017).[7] A reasonably well-trained officer would not have known the orders were invalid despite

---

[6]   The fact that the government could not prove that all the intercepted cellular communications occurred when the phones were in or in contact with Geary County does not change the analysis. The objective connections to Geary County were sufficient for an individual without legal training to have a reasonable belief that the warrants were valid.

[7]   In the alternative, Brown and Wolf would not be liable under the federal statute. Plaintiffs do not allege any facts supporting the proposition that Brown or Wolf personally intercepted, disclosed, or intentionally used their text messages in violation of federal law. Rather, Plaintiffs accuse Brown and Wolf of "procuring" others to intercept and disclose their text messages. Procuring text messages does not give rise to a cause of action under 18 U.S.C. § 2520, however. *See Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246 (10th Cir. 2012) ("[18 U.S.C. § 2520(a)'s]

the judge's authorization. No reasonable jury could conclude otherwise on this record. Therefore, Plaintiffs' arguments must fail.

### B.    Carrier Defendants

Carrier Defendants make two arguments for summary judgment: (1) Judge Platt's orders authorized the interception of text messages, and thus Carrier Defendants have an absolute defense under 18 U.S.C. § 2511 and federal preemption; and (2) alternatively, Carrier Defendants acted in good faith under 18 U.S.C. § 2520(d) and K.S.A. § 22-2518(2). *See* Doc. 182 at 1. In considering these arguments, the Court considers the following additional undisputed facts. On March 7, 2013, James T. Botts from the KBI sent a fax to T-Mobile that contained a March 5 wiretap order. Doc. 182 at 7; Doc. 196 at 6. Handwritten on the KBI coversheet was the phrase "Turn on SMS." Doc. 182 at 8; Doc. 196 at 6. The parties do not specify when T-Mobile started providing text messages to the KBI thereafter, however. On March 7, 2013, law enforcement also sent a fax coversheet to Sprint requesting a wiretap for the phone number in a different March 5 order, though it appears the order itself was not attached to the coversheet. *See* Doc. 182-11. Written on the Sprint fax was the phrase "upgrade to T3." Doc. 182 at 8; Doc. 196 at 6-7. The parties do not agree on what "T3" refers to. *See* Doc. 182 at 8; Doc. 196 at 6-7. On March 7, KBI's Botts "called back in to check the Wire upgrade." *See* Doc. 182-11. Shortly afterwards, Sprint began providing text messages to the KBI. Doc. 182 at 8; Doc 196 at 7.

### 1. Authorization by Court Order

Carrier Defendants argue that Judge Platt's orders authorized interception of text messages, and therefore they are immune under 18 U.S.C. § 2511. Furthermore, they argue that the federal

---

language does not encompass aiders or abettors."). Virden, Brown, and Wolf raise additional alternative arguments for summary judgment. Because the Court rules for Virden, Brown, and Wolf on their good-faith defenses, the Court does not address those arguments.

statutory defense preempts the state statute that lacks a similar defense. Because the Court holds that Carrier Defendants were not authorized to intercept text messages under Judge Platt's initial orders, it does not reach the preemption argument.

Under federal law, "[n]o cause of action shall lie in any court against any provider of wire or electronic communication service . . . for providing information, facilities, or assistance in accordance with the terms of a court order." 18 U.S.C. § 2511(2)(a)(ii). Text communications are electronic communications. *See Banks*, 2014 WL 4261344, at *2. "Electronic communication" does not include "wire communication" under federal or Kansas law. *See* 18 U.S.C. § 2510(12); K.S.A § 22-2514(11). Thus, an authorization to intercept wire communications does not authorize interception of text messages.

The plain text of Judge Platt's March 5 orders does not authorize the interception of electronic communications such that Carrier Defendants were acting pursuant to a court order when they began intercepting text messages. Those orders authorize law enforcement to intercept wire communications only. Carrier Defendants' arguments to the contrary are unavailing.[8]

Specifically, Carrier Defendants argue that Judge Crabtree already ruled in Plaintiffs' criminal proceedings that Judge Platt's initial orders authorized text messages. But this is incorrect. Judge Crabtree acknowledged that text messages were not explicitly authorized by all the orders, but the officers' good-faith belief that the orders did authorize interception of text messages prevented text messages from being completely excluded. *See Banks*, 2014 WL 4261344, at *5. Judge Platt and the officers may have intended for the orders to authorize interception of text

---

[8]   The parties do not address an April 4 order that extended the duration of the March 5 wiretap order sent to T-Mobile. *See* Doc. 174-6 at 222-27. The April 4 order does not authorize interception of electronic communications either. *Id.* at 224.

messages, but the initial orders did not so authorize. Therefore, the Court declines to grant summary judgment based on 18 U.S.C. § 2511(2)(a)(ii) on the instant record.

### 2. Good Faith

Carrier Defendants next argue that they are entitled to summary judgment because they acted in good faith on a court order. Under state and federal law, any entity that intercepts wire, oral, or electronic communications in good-faith reliance on a court order has a complete defense against any civil action. 18 U.S.C. § 2520(d); K.S.A. § 22-2518(2). "To be in good faith, a defendant's reliance on a court order must have been objectively reasonable." *Davis*, 111 F.3d at 1484.[9]

Carrier Defendants acknowledge that statutory good faith is an affirmative defense. Doc. 182 at 25 n.9. But they have not met their burden of proof. Carrier Defendants allege that most wiretap orders in general request interception of text data. Doc. 182 at 7. But that does not make it reasonable to assume that the orders at issue here authorized text-message interception. Furthermore, Carrier Defendants point to one of Agent Virden's affidavits as evidence that they were objectively reasonable in intercepting text messages. But even if using Virden's affidavit to construe the wiretap orders would have made intercepting text messages objectively reasonable, there are no facts to suggest that Carrier Defendants ever received his affidavit at the time, read it, or relied on it in interpreting the wiretap orders. There are holes in the record, and the Court can't make inferences to fill these holes in Carrier Defendants' favor under the summary judgment standard. *See Henderson*, 41 F.3d at 569.

---

[9]   The Court again acknowledges that the Tenth Circuit has not spoken clearly as to whether there is a subjective component to the good faith standard. In the face of this ambiguity, the Court applies the objective standard in *Davis* based on the Tenth Circuit's remands. *Banks*, 814 F. App'x at 331; *Thompson*, 815 F. App'x at 233.

And even more importantly, at least two carriers refused to intercept text messages pursuant to two similarly worded wiretap orders until they got clarification orders from Judge Platt. One of those carriers, Sprint/Nextel, is a party in this case. Carrier Defendants have not shown the Court how it was objectively reasonable to intercept text messages under the orders at issue when similar orders needed clarification.[10] Carrier Defendants point to no facts distinguishing the orders where carriers sought clarification from the orders here. Instead, they focus on handwriting on the coversheets transmitted to them on March 7. Following handwritten directives on coversheets is not reliance on a court order. Therefore, the Court declines to grant summary judgment based on statutory good faith.[11]

## IV.    CONCLUSION

The Court carefully reviewed the extensive record in this case. The Court finds that the Individual Defendants are entitled to summary judgment but that Carrier Defendants are not.

THE COURT THEREFORE ORDERS that Defendant Opat's Motion for Summary Judgment (Doc. 177) is GRANTED.

THE COURT FURTHER ORDERS that Defendant Virden's Motion for Summary Judgment (Doc. 173) is GRANTED.

---

[10]  Carrier Defendants note that the clarification orders only applied to orders directed to Plaintiffs' co-conspirators. They refer to the orders that were clarified, however, as Ponds Order #1 and Thompson Order #2. Based on the record, it appears that the clarified orders were for co-conspirators Ponds and Ivory. Compare the phone numbers in the clarification orders at Doc. 182-13 at 2 and Doc. 182-14 at 2 with the phone numbers for Ponds Order 1 and Ivory Order 1 in the exhibit list at Doc. 174-2 at 1.

[11]  Carrier Defendants mention in passing that they are entitled to rely on law enforcement's understanding of the orders. Doc. 182 at 24 (citing *United States v. Peterson*, 812 F.2d 486, 492 (9th Cir. 1987)). There is a federal statutory defense for following a law enforcement officer's request. *See* 18 U.S.C. § 2520(d)(2). To the extent Carrier Defendants rely on this statutory defense, they do not develop this argument. Furthermore, even if they had, issues of material fact remain. For example, what does "upgrade to T3" mean? Furthermore, did Agent Botts ask Sprint to intercept text messages when he called? The record does not say. It merely shows that after the call, Sprint started intercepting text messages. Correlation does not equal causation. The Court makes all reasonable inferences in favor of the non-moving party at the summary judgment phase. *Henderson*, 41 F.3d at 569. Thus, Carrier Defendants have not met the burden of proving their affirmative defense at this stage.

THE COURT FURTHER ORDERS that Defendant Brown's Motion for Summary Judgment (Doc. 175) is GRANTED.

THE COURT FURTHER ORDERS that Defendant Wolf's Motion for Summary Judgment (Doc. 179) is GRANTED.

THE COURT FURTHER ORDERS that Carrier Defendants' Motion for Summary Judgment (Doc. 181) is DENIED.

IT IS SO ORDERED.

Dated: December 27, 2021            /s/ *Holly L. Teeter*
                                   HOLLY L. TEETER
                                   UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ALBERT DEWAYNE BANKS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 15-cv-3093-HLT-GEB** |
| ) | |
| **STEVEN L. OPAT,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ———————————————— ) | |

## NOTICE OF VOLUNTARY DISMISSAL

Pursuant to Fed. R. Civ. P. 41, notice is hereby given that Plaintiff and Defendants Sprint/Nextel Wireless Telephone Company and Virgin Mobile/Sprint PCS have settled all disputes between them and request that this action be dismissed with prejudice, with the parties to bear their own fees and costs.

Dated: May 31, 2023                          Respectfully submitted,

_Albert Banks_
—DocuSigned by:
— 33559AC30A9C484...
Mr. Albert Banks
*Pro Se* Plaintiff

/s/ Jay E. Heidrick
Jay E. Heidrick (KS #20770)
POLSINELLI, PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Telephone: (816) 753-1000
Facsimile: (816) 753-1536

KYMBERLY S. KESTER (*pro hac vice*)
POLSINELLI PC
401 Commerce Street, Suite 900
Nashville, Tennessee 37201
Telephone: (615) 252-3945
Facsimile: 615.577.0145
kkester@polsinelli.com

*Attorneys for Sprint Defendants*

DocuSign Envelope ID: FDDC1A4D-31D1-485F-B406-8A7D8813EBA3

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2023 a true and correct copy of the foregoing pleading was electronically filed with the Clerk of the U.S. District Court for the District of Kansas, and a service copy was mailed via U.S. mail to the following:

Albert Banks
750 Shannon Drive
Romeoville, Illinois 60446

/s/ *Jay E. Heidrick*
*Attorney for Sprint Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF KANSAS**

**ALBERT BANKS,**

       **Plaintiff.**

**v.**

                                    **Case No: 15-3093-HLT**

**GLEN VIRDEN Et al,**

       **Defendant,**

**NOTICE OF APPEAL PURSUANT TO FEDERAL**

**RULE OF APPELLATE PROCEDURE 4**

Comes Now, Albert Banks respectfully request this Honorable Court to enter

a notice of appeal pursuant to Federal Rules of Appellate Procedure 4. The

defendant seeks to appeal from a judgment entered on Document # 293 which

finally deposed of the remaining claims. The defendant seeks to appeal Document

# 208 which granted certain defendant's summary.

/s/_____ 06/05/2023

Albert Banks

750 Shannon Dr.
Romeoville, Illinois 60446
785-473-1372
Albertbanks212@gmail.com

## **CERTIFICATE OF SERVICE**

       I Albert Banks hereby certify that on June 5, 2023, a true and correct copy of this pleading was emailed to the Clerk of the Court for the District of Kansas at 444 SE Quincy Topeka Kansas 66605. An electronic copy of this filing will be sent to all relevant parties.