NO. 23-3102

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

_____

ALBERT BANKS
PLAINTIFF/APPELLANT,
V.
STEVEN OPAT, ET AL.,
DEFENDANTS/APPELLEES.

_____

BRIEF OF APPELLEE TIMOTHY BROWN

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
THE HONORABLE HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE
CASE NO. 15-CV-3096-HLT-KGS

_____

Respectfully submitted:

Michael K. Seck, #11393
FISHER, PATTERSON, SAYLER & SMITH, LLP
51 Corporate Woods, Suite 300
9393 West 110th Street
Overland Park, Kansas 66210
913-339-6757 / Fax: 913-660-7919
mseck@fpsslaw.com
**Attorneys For Appellee Timothy Brown**

**Oral Argument Not Requested**

## <u>CORPORATE DISCLOSURE STATEMENT</u>

No corporate disclosure statement is required by Fed. R. App. P. 26.1.

## TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT** ...................................................... 1

**TABLE OF CONTENTS** ....................................................................................... 2

**TABLE OF AUTHORITIES** .................................................................................. 3

**STATEMENT OF RELATED CASES** ................................................................. 5

**STATEMENT OF THE ISSUES** .......................................................................... 6

**STATEMENT OF THE CASE** .............................................................................. 7

**SUMMARY OF THE ARGUMENT** ................................................................... 11

**ARGUMENTS AND AUTHORITIES** ................................................................ 12

      I.   APPLICABLE STANDARARD OF REVIEW ................................................ 12

      II.  ISSUE 1:  THE DISTRICT COURT DID NOT ERR IN FINDING THAT BANKS' CLAIMS AGAINST DEFENDANT TIMOTHY BROWN SHOULD BE DISMISSED BECAUSE BANKS DID NOT ALLEGE ANY FACTS SUPPORTING THE PROPOSITION THAT BROWN PERSONALLY INTERCEPTED, DISCLOSED, OR INTENTIONALLY USED HIS TEXT MESSAGEES IN VIOLATION OF STATE AND FEDERAL LAW AND THAT THERE IS NO CAUSE OF ACTION FOR "PROCURING" OTHERS TO DO SO. ........................................................................................................... 12

      III.  ISSUE 2: THE DISTRICT COURT DID NOT ERR IN FINDING THAT BANKS' CLAIM AGAINST DEFENDANT TIMOTHY BROWN WAS BARRED BY THE GOOD FAITH DEFENSE, BECAUSE THIS FINDING WAS SUPPORTED BY THE RECORD AND 18 U.S.C. § 2520 AND K.S.A. § 22-2518 PROVIDE A COMPLETE DEFENSE WHEN A DEFENDANT HAS RELIED IN GOOD FAITH UPON A COURT ORDER ...................................................... 15

**CONCLUSION** ..................................................................................................... 16

**CERTIFICATE OF COUNSEL REGARDING SEPARATE BRIEFS** .................... 17

**CERTIFICATE OF DIGITAL SUBMISSION** ........................................................ 18

**CERTIFICATE OF COMPLIANCE** ........................................................................ 18

**NOTICE OF ATTACHMENT** ................................................................................. 18

**Attachment: D. Kan Memorandum and Order, Doc. 208, filed 12/27/2021**

# TABLE OF AUTHORITIES

## Cases

*Banks v. United States*, 138 S.Ct. 2707 (2018) ................................................. 9

*Carpenter v. United States*, 138 S.Ct. 2206 (2018)........................................... 9

*Massachusetts v. Sheppard,* 468 U.S. 981, 989-990 (1984) ............................... 8

*Rezac Livestock Comm'n Co. v. Pinnacle Bank,*
255 F.Supp. 3d 1150, 1164 (D.Kan. 2017) ......................................................... 14

*State v. Adams,* 2 Kan. App. 2d 135 (1978) ...................................................... 15

*U.S. v. Banks*, 2015 WL 2401048 at *3 (D. Kan. May 15, 2015).................... 9

*U.S. v. Banks,* 93 F. Supp. 3d 1237 (2015)....................................................... 7

*United States v. Banks,* 2014 WL 4261344 at *1 (D. Kan. August 29, 2014) ................... 7

*United States v. Banks,* 706 Fed. Appx. 455 (10th Cir. 2018) ........................... 9

*United States v. McNulty,* 729 F. 2d 1243 (10th Cir. 1983) ........................... 6, 15

*United States v. Workman,* 863 F. 3d 1313 (10th Cir. 2017) ......................... 6, 15

*Utah Animal Rights Coalition v. Salt Lake County,*
566 F. 3d 1236 (10th Cir. 2009) ......................................................................... 12

*Van Woudenberg ex. rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000).................. 7

## Statutes

18 U.S.C. § 2520 ......................................................................................2, 6, 12, 15

18 U.S.C. § 2520(d)............................................................................................. 12

K.S.A. § 22-2518.........................................................................................2, 12, 15

K.S.A. § 22-2518(2) ............................................................................................. 12

K.S.A. §22-2514 *et seq*..................................................................................................7

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................12

## **STATEMENT OF RELATED CASES**

This Court has previously heard an appeal by Banks in Case No. 19-3073. This case

is related to Thompson v. Glen Virden, Case No. 23-3103 also pending in this Court.

## STATEMENT OF THE ISSUES

Albert Banks assert three issues on appeal, only two of which apply to Brown. First, he argues that the district court erred in awarding summary judgment for the Defendants on good faith grounds. He claims the district court failed to consider how the undisputed facts surrounding his use and disclosure claim applied to the relevant law. Second, he claims that the district court erred when it relied upon *United States v. Workman,* 863 F. 3d 1313 (10th Cir. 2017) instead of *United States v. McNulty,* 729 F. 2d 1243 (10th Cir. 1983). He claims that *McNulty* is precedent for this action.

However, Banks position failed to address the district court's alternative finding that Brown would not be liable under the federal statute because Banks did not allege any facts supporting the proposition that Brown personally intercepted, disclosed, or intentionally used his text messages in violation of federal law. And, as the district court held, procuring text messages does not give rise to a cause of action. Synthesizing these issues, it appears that there are really two issues for this Court's review.

I. The District Court did not err in finding that Banks' claims against Defendant Timothy Brown should be dismissed because Banks did not allege any facts supporting the proposition that Brown personally intercepted, disclosed, or intentionally used his text messages in violation of state or federal law and that there is no cause of action for "procuring" others to do so.

II. The District Court did not err in finding that Banks' claim against Defendant Timothy Brown was barred by the good faith defense, because this finding was supported by the record and 18 U.S.C. § 2520 and K.S.A § 22-2518 provide a complete defense when a defendant has relied in good faith upon a court order.

## STATEMENT OF THE CASE

The history of Banks' criminal prosecution is well documented through multiple decisions by Judge Crabtree, who presided over the criminal trial of Banks and his co-conspirators in criminal Case No. 5:13-cr-40060-DDC [1]. Highly summarized, investigators obtained wiretap orders in the final months of a 13-month investigation into a suspected narcotics-trafficking conspiracy. *United States v. Banks,* 2014 WL 4261344 at *1 (D. Kan. August 29, 2014). The investigation was a joint effort by the Kansas Bureau of Investigation ["KBI"], the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department. *Id.*

Beginning in March of 2013 investigators submitted applications for wiretap orders to Judge Platt in Kansas' 8th Judicial District. *Id.* Judge Platt issued a total of eight wiretap orders under the authorization granted by the Kansas Wiretap Statute, K.S.A. §22-2514 *et seq*. *Id.* Each order authorized the interception of "wire communications," but not "electronic communications." *Id.* However, investigators believed the orders authorized interception of text messages sent to and from the target phones. *Id*.

Banks and his co-conspirators filed motions arguing that Judge Crabtree should suppress wiretap evidence collected by the KBI during the investigation that led to their prosecution. *U.S. v. Banks,* 93 F. Supp. 3d 1237 (2015). Among other arguments, their motions asserted that the Kansas Wiretap Statute prohibits agents from intercepting

---

[1] The court is permitted to take judicial notice of its own files and records, along with facts which are part of a public record. *Van Woudenberg ex. rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000).

communications outside of the territorial jurisdiction of the Judge who authorized the wiretaps. *Banks,* 93 F. Supp. 3d at 1240. Judge Crabtree agreed and suppressed all but 7,000 intercepted communications. *Id.*

Banks also filed a Motion to Suppress Intercepted Text Messages, arguing that the text messages intercepted should be suppressed because the orders authorized the interception of wire communications only. *Banks, supra,* 2014 WL at *1. In considering the motion, Judge Crabtree looked to Fourth Amendment precedent, including any applicable exceptions to the exclusionary rule, to determine whether Judge Platt's failure to include "electronic communications" in the wiretap order required suppression of intercepted text messages. *Id*. at *2.

Judge Crabtree found that both Judge Platt and the KBI understood the orders to authorize the interception of text messages, as well as oral communications. *Id*. at *4. For the sake of his analysis, Judge Crabtree assumed that persons have a legitimate expectation of privacy in text messages. *Id*. at *3. Judge Crabtree then proceeded to analyze the good-faith exception to the warrant requirement, without addressing the underlying Fourth Amendment question. *Id*. There, Judge Crabtree specifically stated:

> The Court finds that the issuing Judge and executing Officers both understood the intended scope of the wiretap authorization, and that the authorization included interception of text messages. The Court also finds that the Officers' reliance on this understanding was "objectively reasonable." *See Massachusetts v. Sheppard,* 468 U.S. 981, 989-990 (1984) ("[W]e refuse to rule that an Officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possess authorizes him to conduct the search he has requested"). As a result, the KBI's interception of text messages falls within the good-faith exception to the Fourth Amendments exclusionary rule, and the Court refuses to

suppress them on the basis that the Order authorizes interception of wire communications only."

*Id.* at *5. Judge Crabtree later added that "one would not expect the officers executing search warrants to have apprehended the subtle, technical jurisdictional defect that forms the basis of the Court's threshold suppression ruling." *U.S. v. Banks*, 2015 WL 2401048 at *3 (D. Kan. May 15, 2015).

Banks was ultimately convicted of distribution of cocaine base and distribution of cocaine base within 1000 feet of a school. His conviction was affirmed by the 10th Circuit on June 28, 2018. *United States v. Banks,* 706 Fed. Appx. 455 (10th Cir. 2018). The United States Supreme Court granted Banks' writ of certiorari, and remanded his case to the 10th Circuit for reconsideration in light of its ruling in *Carpenter v. United States*, 138 S.Ct. 2206 (2018)[2]. *Banks v. United States*, 138 S.Ct. 2707 (2018).

Here, in his Amended Complaint, Banks alleges that Defendant Brown, and other officers, "endorsed their signatures on the invalid wiretap order.[3]" [ROA Vol. 1; ECF 74 at pg. 38]. Banks further alleges that Brown "knew or had reason to know that the wiretap order was invalid on its face." *Id*. Banks alleges that Verizon informed Brown and other officers that the order it received failed to authorize the interception of text messages. [ROA Vol. 1; ECF 74 at pg. 39]. Defendants then supplemented the order. *Id*. Based upon this, Banks alleges that Brown and other officers had knowledge that all of the text

---

[2] In *Carpenter*, the Supreme Court held that an individual has a legitimate expectation of privacy, for Fourth Amendment purposes, in the record of his physical movements as captured through cell-site location information. 138 S.Ct. at 2208.

[3] Timothy Brown is the former Chief of Police of the Junction City Police Department.

messages received from Sprint and Nextel were "illegal under federal and state wiretap laws." *Id*. Banks asserts that Brown "intentionally used the illegal information in order to further their investigation" by disclosing the information to the United States Attorney General's Office. *Id*. Banks stated that his complaint "is only intended to allege that the defendants are liable for the illegal communications from the Federal Courts suppression order." *Id*.

On March 5, 2018, Defendant Brown filed his motion to dismiss the Amended Complaint. [ROA Vol. 1; ECF 79 and 80]. Defendants Sprint, Opat, Virgin Mobile, and Virden also filed Motions to Dismiss the Amended Complaint. [ROA Vol. 1; ECF 83, 84, 86, and 87]. On November 16, 2018 the district court granted the motions to dismiss as to all Defendants. [ROA Vol. 1; ECF 109]. Specifically, the district court found that Banks' wiretap claims against Defendants was barred by the good faith defense. The district court also found that Defendants Opat, Virden, and Brown were entitled to qualified immunity, because Banks failed to show that these Defendants had violated clearly established law.

On November 16, 2018, the district court entered judgment against Plaintiff. ROA Vol. 1; ECF 110. Banks filed a Motion to Alter or Amend Judgment Pursuant to Federal Rule 59(e). [ROA Vol. 1; ECF 111]. The district court denied this motion on March 20, 2019. [ROA Vol. 1; ECF 230]. On September 21, 2019, Plaintiff filed a Notice of Appeal. [ROA. Vol. 1: ECF 131].

On appeal, this Court affirmed the district court's judgment in part but reversed and remanded for further proceedings on Banks' statutory wiretap claims about the law enforcement Defendants' interception and disclosure of extra-territorial communications.

This Court determined that the district court did not properly address this issue because, at the criminal level, Judge Crabtree only made an observation about good faith such that collateral estoppel would have no application.

On remand, Brown filed his Motion for Summary Judgment arguing that: (1) there was no violation of the state or federal wiretap laws in the first instance; and (2) Brown acted in good faith in his limited role and is entitled to good faith immunity. [ROA. Vol. 1: ECF 175 and 176].

On December 27, 2021, the district court entered its Memorandum and Order granting summary judgment for Brown and others but denying the Motions of the Carrier Defendants. As to Brown, Judge Teeter noted that Banks did not allege any facts supporting the proposition that Brown and personally intercepted, disclosed, or intentionally used Banks' text messages in violation of federal law. [ROA Vol. 1: ECF 208 at pg. 9, n. 7]. She also determined that Brown and others were entitled to good faith immunity. Banks appeals from this Memorandum and Order.

## SUMMARY OF THE ARGUMENT

This Court should affirm dismissal of all claims asserted against Timothy Brown in Banks' Amended Complaint for failure to state a claim. First, Brown is entitled to dismissal because Banks fails to assert facts sufficient to state a claim in the first instance and, at the summary judgment stage, failed to properly controvert Brown's Affidavit indicating that he had no more than a logistics role in providing the Task Force with a location from which to operate and support.

Second, Brown is entitled to dismissal because to the extent he acted at all, his actions were based on a good-faith reliance on a court order which is a complete defense to the claims under Kansas and federal wiretap statutes. *See*, K.S.A. § 22-2518(2), 18 U.S.C. § 2520(d). At the summary judgment stage there was no evidence in the record that Brown would have understood and appreciated that the manner and method of interception was improper or that federal crimes were to be pursued.

## ARGUMENTS AND AUTHORITIES

### I.     APPLICABLE STANDARARD OF REVIEW

The Court of Appeals reviews summary judgment decision de novo, applying the same legal standard as the district court. *Utah Animal Rights Coalition v. Salt Lake County,* 566 F. 3d 1236 (10th Cir. 2009). Summary judgment is appropriate when "there is not genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### II.     ISSUE 1:  THE DISTRICT COURT DID NOT ERR IN FINDING THAT BANKS' CLAIMS AGAINST DEFENDANT TIMOTHY BROWN SHOULD BE DISMISSED BECAUSE BANKS DID NOT ALLEGE ANY FACTS SUPPORTING THE PROPOSITION THAT BROWN PERSONALLY INTERCEPTED, DISCLOSED, OR INTENTIONALLY USED HIS TEXT MESSAGEES IN VIOLATION OF STATE AND FEDERAL LAW AND THAT THERE IS NO CAUSE OF ACTION FOR "PROCURING" OTHERS TO DO SO.

Judge Teeter in her Memorandum and Order correctly determined that Banks did not allege any facts supporting the proposition that Brown personally intercepted, disclosed, or intentionally used the text messages in violation of federal law. [ROA Vol.

I; ECF 208 at p. 9, n. 7]. On appeal, Banks incorrectly argues that "the record clearly indicate that Mr. Banks pleaded that Opat, Brown and Virden used and disclosed Mr. Banks' private communications in violation of the Kansas Wiretap Act." While Banks may have made that allegation in his Amended Complaint, at the summary judgment stage he failed to marshal facts sufficient to support that legal theory. In fact, nowhere in the record does Banks specifically identify facts supporting his claim against Brown.

Here, Brown's Affidavit makes clear that after Judge Platt issued his Order on March 5, 2013, authorizing the interception of wire communications, the Task Force met to discuss the investigation and that Brown signed his name to the Order on March 6, 2013, to acknowledge his understanding of the investigation and the need to maintain confidentiality. [ROA Vol. I; ECF 176-2 at pg. 2]. But Banks failed to controvert this allegation at the summary judgment stage and instead claimed the Order wasn't "issued" to the carriers until March 7, 2013. However, the plain meaning of the term "issued" means that the Judge entered the order. The order was later "served" on the carriers March 7, 2013.

Of importance is what follows in the criminal investigation. Brown was not involved in the application or service of orders authorizing the interception of wire communications and was only involved in assisting with the logistical and technical needs of the drug task force. For example, he secured a building in Junction City to serve as the headquarters of the Task Force and ensured that the Task Force had access to appropriate equipment and manpower. [ROA Vol. I; ECF 176-1 at pg. 3]. In response to Brown's Motion for Summary Judgment, Banks admitted these allegations thereby

making them uncontroverted for purposes of Judge Teeter's decision. [ROA Vol. I; ECF 197 at pg. 3].

Mr. Brown went on to explain in his Affidavit that he did not engage in any hands-on supervision of the task force operations and did not supervise, direct or engage in any search. [ROA Vol. I; ECF 176-1 at pg. 3]. In response, Banks denied these allegations but provided no citation to the record controverting Brown's statements and relied instead on media accounts of Brown acting of spokesman for the Task Force which are not admissible to controvert Brown's Affidavit. *Rezac Livestock Comm'n Co. v. Pinnacle Bank*, 255 F.Supp. 3d 1150, 1164 (D.Kan. 2017). Therefore, these statements remain uncontroverted at the time that Judge Teeter entered her decision.

Brown next stated that he did not receive regular or formal updates from the Task Force to which Banks claimed he "likely" received updates from his subordinates. [ROA Vol. I; ECF 197 at pg. 3.] This allegation is speculative and does not controvert Brown's statement. In short, Judge Teeter did not err in dismissing Mr. Brown from this action.

The same result is arrived at with regards to Banks' claims under the Kansas Wiretap Act because there are no facts in the record at the summary judgment stage that demonstrate that Brown's conduct violated that Act. That is, there was no evidence in the record at the summary judgment stage supporting Banks' claim against Brown.

**III.   ISSUE 2: THE DISTRICT COURT DID NOT ERR IN FINDING THAT BANKS' CLAIM AGAINST DEFENDANT TIMOTHY BROWN WAS BARRED BY THE GOOD FAITH DEFENSE, BECAUSE THIS FINDING WAS SUPPORTED BY THE RECORD AND 18 U.S.C. § 2520 AND K.S.A. § 22-2518 PROVIDE A COMPLETE DEFENSE WHEN A DEFENDANT HAS RELIED IN GOOD FAITH UPON A COURT ORDER.**

Should this Court affirm the dismissal of Brown because Banks failed to assert facts at the summary judgment stage supporting his claim, the remainder of this analysis is unnecessary. That is, this Court need not address the good faith defense as to Brown because it is not necessary in the first instance.

Here, Banks argues that Judge Teeter erred by relying upon *United States v. Workman,* 863 F. 3d 1313 (10th Cir. 2017) which he claims is inapplicable given the alleged conduct occurred in 2013. Instead, he argues that *United States v. McNulty,* 729 F. 2d 1243 (10th Cir. 1983) (en banc) should have been applied. He also argues that, as to the state wiretap claim, *State v. Adams,* 2 Kan. App. 2d 135 (1978) governs. *McNulty* dealt with an issue concerning the suppression of evidence obtained pursuant to a state judge's wiretap order on grounds that the order did not comply with the state wiretap in statutes. The Tenth Circuit's analysis ultimately determined that the order was permissible, and that the collection of evidence was appropriate because under Colorado law the target had consented based upon prior gambling conviction. 729 F.2d at 1257. *McNulty* did not to any degree analyze the application of good faith although it was mentioned.

Because the court in *McNulty* ultimately determined that there was not a violation of Colorado law, unlike Judge Crabtree's finding in the criminal finding which resulted in

the suppression of certain intercepts, Banks argument that good faith is not available to Brown is in error.

A similar result is reached under the Kansas wiretap statute. Here, Banks relies upon *Adams* which does not, as to Brown, abrogate the good faith defense. *Adams* stands for the proposition that where there is the interception of telephonic communications and the locations of the telephone as to where the intercept is conduct, intercepting device and monitoring are within the same judicial district, a district judge sitting in another judicial district has no power to authorize interception. But *Adams* has no application to Brown for several reasons. First, there is no evidence in the record that Brown was aware of the location of the intercept equipment. Second, there is no evidence in the record that Brown was aware that communications were being intercepted outside of Judge Platt's judicial district. As such, Brown is still entitled to the good faith defense as to both federal and state wiretap laws.

## **CONCLUSION**

For the reasons stated above, Brown respectfully requests that this Court affirm dismissal of all counts alleged against him in the Amended Complaint.

Respectfully submitted:

Michael K. Seck, #11393
FISHER, PATTERSON, SAYLER & SMITH, LLP
51 Corporate Woods, Suite 300
9393 West 110th Street
Overland Park, Kansas 66210
913-339-6757 / Fax: 913-660-7919
mseck@fpsslaw.com
**Attorneys For Appellee Timothy Brown**

## CERTIFICATE OF COUNSEL REGARDING SEPARATE BRIEFS

Pursuant to 10th Cir. R. 31.3(B) the undersigned states that there is a need for a separate brief on behalf of Timothy Brown because:

1.    At the time of the events allege in the Amended Complaint [ROA Vol. l; ECF 74], Defendant Brown occupied a position dissimilar from that of Defendants Opat and Virden because he did not actively participate in the collection, use and distribution of Banks' intercepted messages. Rather, he provided logistic support to the Task Force.

2.    Because of Brown's position as then-Chief of Police of Junction City, he does not enjoy absolute or prosecutorial immunity as asserted by the other Defendants.

3.    Defendant Brown's argument that, at the summary judgment stage, Banks failed to marshal facts sufficient to avoid summary judgment is dissimilar from the arguments of the other Defendants because of the position he occupied on the Task Force.

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

No privacy redactions were necessary in this document.

The document submitted in digital form is an exact copy of the written document filed with the Clerk. The document is a native PDF document. The digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Managed Antivirus version 6.6.10.149, most recently updated October 16, 2023, and, according to the program, is free of viruses.

## <u>CERTIFICATE OF COMPLIANCE</u>

The above brief filed today is in compliance with 10th Cir. R. 32. The font used in this brief is Times New Roman 13-point font.  The words in the foregoing brief, exclusive of the cover, table of contents, table of authorities, statement regarding oral argument, signature block, and the certificates of service and compliance, have been counted via use of Word 2016. The portions of the brief not specifically excluded above contains 3,966 words.

## <u>NOTICE OF ATTACHMENT</u>

There is a pdf attachment to this brief.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing pleading this 16th day of October 2023, with the Clerk of the Court by using the ECF system and served said pleading by U.S. Postal Mail and *e-mail* to the following:

Albert Dewayne Banks
24248 Main Street
Plainfield, IL 60544
**Appellant/ Plaintiff**

Matthew L. Shoger, KS #28151
Shon D. Qualseth
Office of Attorney General Kris W. Kobach
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
(785) 296-2215
(785) 291-3767
Matt.shoger@ag.ks.gov
Shon.qualseth@ag.ks.gov
**Attorneys for Defendant Virden**

Eric Turner
Foulston Siefkin, LLP
7500 College Blvd, Suite 1400
Overland Park, Kansas 66210
(913) 253-2176
eturner@foulston.com
**Attorney for Defendant Steven L. Opat**

   /s/ Michael K. Seck
Michael K. Seck, #11393

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ALBERT DEWAYNE BANKS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 5:15-cv-03093-HLT-GEB** |
| **STEVEN L. OPAT, et al.,** | |
| **Defendants.** | |
| **ANTHONY THOMPSON,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 5:15-cv-03117-HLT-GEB** |
| **GLEN F. VIRDEN, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiffs Albert Banks and Anthony Thompson[1] bring claims under state and federal wiretapping laws against Defendants Steven L. Opat, Glen F. Virden, Timothy Brown, and Tony Wolf ("Individual Defendants"). They also bring claims against Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS, and T-Mobile USA Inc. ("Carrier Defendants"). All Defendants move for summary judgment. Docs. 173, 175, 177, 179, 181. For the reasons outlined below, the Court grants Individual Defendants' motions for summary judgment. But the Court denies Carrier Defendants' motion for summary judgment.

---

[1]  Banks and Thompson filed their cases separately, both initially proceeding pro se. Banks asserts claims against Opat, Virden, Brown, and Sprint. Thompson asserts claims against Virden, Brown, Wolf, and T-Mobile. The cases have since been consolidated, *see* Doc. 160, and the Court appointed counsel to represent both Plaintiffs. *Id.* Unless otherwise specified, all docket citations are to Case No. 15-03093, which is the lead case.

## I.      BACKGROUND

Starting in February 2012, the Kansas Bureau of Investigation ("KBI"), the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department jointly conducted a narcotics-trafficking investigation. Doc. 174 at 4; Doc. 198 at 2. The lead law enforcement officer for the KBI during the investigation was KBI Special Agent Glen Virden. Doc. 174 at 3-4; Doc. 198 at 4. The Chief of the Junction City Police Department was Timothy Brown. Doc. 176 at 8; Doc. 197 at 3. Tony Wolf was the Sheriff of Geary County starting in January 2013. Doc. 180 at 2; Doc. 199 at 1. Pursuant to this investigation, then-Geary County Attorney Steven Opat applied for and received several wiretap orders from Judge David Platt in Kansas's Eighth Judicial District. *See, e.g.*, Docs. 174-2 & 174-3. For all the applications, probable cause was supported by Virden's affidavit. *See id.*

In the spring of 2013, Judge Platt issued several wiretap orders. Relevant to Plaintiffs, the initial orders only authorized interception of wire communications (not electronic communications, i.e. text messages). *See* Doc. 174-2 at 1; Doc. 174-3 at 75, 154; Doc. 174-6 at 224. The orders also authorized interception even if the phones were taken outside the territorial jurisdiction of the Eighth Judicial District, which is where Judge Platt sat. *See* Doc. 174-3 at 75, 154; Doc. 174-6 at 224. Subsequent wiretap orders by Judge Platt explicitly authorized interception of electronic communications, but they still applied extra-territorially. *See* Doc. 379-25 at 257; Doc. 379-27 at 270. Other orders in the investigation that were directed at different individuals and phone numbers were later clarified to include text messages because certain carriers refused to intercept messages without clarification from Judge Platt. *See* Doc. 182-13 at 2; Doc. 182-14 at 2. Sprint/Nextel was one of the carriers who sought a clarification order for one of Judge Platt's

wiretap orders, but it did not seek any clarification for the orders at issue in this case. Doc. 182-14 at 2. The clarification orders do not apply to the wiretap orders in this case.[2]

As a result of the investigation, Banks and Thompson were charged in federal court with controlled-substance offenses. Banks and Thompson moved to suppress text messages that were intercepted pursuant to orders that only authorized intercepting wire communications. *Banks*, 2014 WL 4261344, at *1. The court denied the motion to suppress because it determined that text interceptions fell within the good-faith exception to the Fourth Amendment's exclusionary rule. *Id.* at *5. The court did, however, suppress 60,000 communications that were intercepted outside Judge Platt's jurisdiction. Doc. 174 at 15; Doc. 198 at 5. Still, the court noted in one of its subsequent rulings (in dicta) that the executing officers were almost certainly acting in good faith as to the extra-territorial interceptions "because one would not expect the officers executing the search warrants to have apprehended the subtle, technical jurisdictional defect that form[ed] the basis of the Court's threshold suppression ruling." *United States v. Banks*, 2015 WL 2401048, at *3 (D. Kan. 2015). Banks and Thompson were ultimately convicted of multiple controlled substance offenses. *See United States v. Thompson*, 2021 WL 3826532 (10th Cir. 2021) (declining to vacate conviction); Order, *United States v. Banks*, No. 5:13-cr-40060 (D. Kan. 2021), ECF No. 1368 (same).

Plaintiffs separately brought civil actions claiming violations of state and federal wiretap statutes, violations of the Fourth Amendment, and conspiracy. This Court dismissed their claims. *Banks v. Opat*, 2018 WL 6031188, at *8 (D. Kan. 2018); *Thompson v. Virden*, 2018 WL 6046469,

---

[2] Plaintiffs dispute the validity of the clarification orders. Doc. 196 at 8. But Plaintiffs' arguments are unpersuasive, not supported by appropriate evidence, and do not create a genuine dispute. Plaintiffs' arguments are additionally undermined because they relied on one of the clarification orders in their complaints. *See* Doc. 74 ¶13; Amended Complaint, *Thompson v. Virden*, No. 5:15-cv-03117 (D. Kan. 2018), ECF No. 71 ¶13. And the clarification orders were also used in Plaintiffs' criminal proceedings. *See United States v. Banks*, 2014 WL 4261344, at *4 (D. Kan. 2014). Thus, there is no genuine dispute of fact about the clarification orders. *See* Fed. R. Civ. P. 56(e).

at *8 (D. Kan. 2018). The Tenth Circuit affirmed in part, but it remanded for further proceedings on Plaintiffs' state and federal statutory wiretap claims stemming from Individual Defendants' interception and disclosure of extra-territorial communications and Carrier Defendants' interception and disclosure of text messages. *Banks v. Opat*, 814 F. App'x 325, 338 (10th Cir. 2020); *Thompson v. Platt*, 815 F. App'x 227, 240 (10th Cir. 2020). On remand, Defendants have all moved for summary judgment on these issues. Docs. 173, 175, 177, 179, 181.

## II.   STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.   ANALYSIS

### A.   Individual Defendants

#### 1.   Absolute Prosecutorial Immunity—Opat

Opat argues that he is entitled to absolute immunity because all his challenged actions were undertaken in his role as a prosecutor and advocate for the State of Kansas. Banks[3] argues that

---

[3]   Only Banks asserts a claim against Opat.

Opat's actions were administrative or investigative in nature, and thus absolute immunity is not appropriate. "Functions that serve as an 'integral part of the judicial process' or that are 'intimately associated with the judicial process' are absolutely immune from civil suits." *Benavidez v. Howard*, 931 F.3d 1225, 1230 (10th Cir. 2019) (citation and alteration omitted). Absolute immunity is less likely to attach to a function that is more distant from the judicial process. *Id.*

In *Burns v. Reed*, 500 U.S. 478 (1991), the Supreme Court held that a prosecutor was absolutely immune from suit for his participation in a probable-cause hearing. *Id.* at 487. The Court reasoned that "[t]he prosecutor's actions at issue here—appearing before a judge and presenting evidence in support of a motion for a search warrant—clearly involve the prosecutor's 'role as advocate for the State,' rather than his role as 'administrator or investigative officer.'" *Id.* at 491 (citation omitted).

In contrast, in *Kalina v. Fletcher*, 522 U.S. 118 (1997), the Supreme Court held that although the prosecutor was absolutely immune for filing an information and a motion for an arrest warrant, she was not absolutely immune when she gave sworn testimony as a witness. *Id.* at 129-31. Specifically, to establish the grounds for a warrant, the prosecutor had executed a document entitled "Certification for Determination of Probable Cause," where she personally vouched for the truth of the facts set forth in the certification under penalty of perjury. *Id.* at 121.

Here, Opat was acting as an advocate for the state in the judicial process and not as a complaining witness. Like the prosecutor in *Burns*, Opat was acting as an advocate in a probable-cause hearing to secure a warrant. Unlike the prosecutor in *Kalina*, Opat's application was based on Virden's affidavit rather than his own testimony. *See, e.g.*, Doc. 174-3 at 73. Notably, Judge Crow of this Court ruled that Opat was entitled to absolute prosecutorial immunity in a nearly

identical case filed by Banks's co-conspirator Johnny Ivory. *See Ivory v. Platt*, 2016 WL 5916647, at *11-12 (D. Kan. 2016).

Banks points to *Mitchell v. Forsyth*, 472 U.S. 511 (1985), to argue that Opat is not entitled to absolute immunity. *Mitchell* stands for the rule that the Attorney General is not absolutely immune for actions taken pursuant to his national security duties, which are distinct from judicial actions. *Id.* at 523. But aside from the underlying factual similarity of a wiretap occurring, *Mitchell* has little bearing on this case. Therefore, the Court grants Opat's motion for summary judgment based on absolute prosecutorial immunity.[4]

### 2. Good Faith—Virden, Brown, and Wolf

Both Plaintiffs assert claims against Virden and Brown for violations of state and federal wiretap statutes. Thompson brings the same claims against Wolf. Virden, Brown, and Wolf all assert statutory good-faith defenses, namely that they were acting in good faith based on Judge Platt's orders. Because there is significant overlap between the arguments by Virden, Brown, and Wolf, the Court addresses their good-faith arguments jointly.

The Court must decide, assuming these officers violated Plaintiffs' statutory rights, whether the officers were acting in good faith. Plaintiffs assert that the officers violated their statutory rights by intercepting, disclosing, and/or procuring communications outside Judge Platt's jurisdiction, in violation of Kansas law. K.S.A. § 22-2516(3). They also assert that the extra-territorial interceptions violate federal law under *United States v. McNulty*, 729 F.2d 1243, 1266 (10th Cir. 1983) (en banc) ("[T]he federal statute itself requires our deference to [state] law on the question of the validity of the wiretap order obtained in state court under state law.").

---

[4]   Opat argues in the alternative that he is entitled to summary judgment based on either qualified immunity, statutory good-faith defenses, issue preclusion, or *Heck v. Humphrey*. Opat also argues that Banks's purported damages are limited by the statute of limitations. The Court does not address these arguments because it holds for Opat on prosecutorial-immunity grounds.

Under state and federal law, any person who intercepts wire, oral, or electronic communications in good-faith reliance on a court order has a complete defense against any civil action. 18 U.S.C. § 2520(d); K.S.A. § 22-2518(2). "To be in good faith, the officers' reliance must have been objectively reasonable." *Davis v. Gracey*, 111 F.3d 1472, 1484 (10th Cir. 1997).[5]

The statutory good-faith defense is like the good-faith exception to the exclusionary rule for Fourth Amendment violations. *Banks*, 814 F. App'x at 331 (citing *United States v. Moore*, 41 F.3d 370, 376 (8th Cir. 1994)). Thus, Fourth Amendment good-faith law is instructive in understanding federal statutory good faith. Furthermore, Kansas has adopted the good-faith exception to the exclusionary rule without modification. *State v. Hoeck*, 163 P.3d 252, 265 (Kan. 2007). Therefore, Fourth Amendment caselaw also sheds light on the state-law defense.

In *United States v. Workman*, 863 F.3d 1313 (10th Cir. 2017), the Tenth Circuit reversed the district court's exclusion of evidence based on an invalid warrant because the executing agents acted in an objectively reasonable manner. *Id.* at 1315, 1321. There, the plaintiff had argued the warrant was invalid because the magistrate judge who issued it "lacked territorial jurisdiction under Rule 41(b) of the Federal Rules of Criminal Procedure and the Federal Magistrates Act, 28 U.S.C. § 636(a)." *Id.* at 1316. Under Rule 41(b), magistrate judges only have the authority to issue a warrant to seize a person or property located within their districts. *See* Fed. R. Crim. P. 41(b).

---

[5] The Court recognizes that the circuits disagree on whether statutory good faith has a subjective component or is completely objective. *See, e.g.*, *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249-54 (5th Cir. 2017) (examining the circuit split over a nearly identical good faith provision pertaining to stored electronic communications). The Tenth Circuit has used a good-faith test with a subjective component. *See Dahl v. Charles F. Dahl, M.D., P.C. Defined Benefit Pension Tr.*, 744 F.3d 623, 631 (10th Cir. 2014) ("[A] defendant may invoke the defense of good faith reliance on a court order only if he can demonstrate (1) that he had a subjective good faith belief that he acted legally pursuant to a court order; and (2) that this belief was reasonable." (alteration in original)). The Tenth Circuit, however, declined to adopt the subjective-objective test for future good-faith cases. *See id*. The Tenth Circuit cited an objective test when it remanded these cases. *Banks*, 814 F. App'x at 331; *Thompson*, 815 F. App'x at 233. Thus, the Court uses the objective test in *Davis*. Notably, Plaintiffs do not contest Virden's, Brown's, or Wolf's subjective good-faith belief. Therefore, the definitive question under either test is whether the reliance on the warrants was objectively reasonable.

In *Workman*, the FBI got a warrant from a magistrate judge in the Eastern District of Virginia. 863 F.3d at 1315. The warrant allowed them to install software on a child pornography website that allowed them to identify the website's users. *Id.* at 1315-16. The software identified Workman, who had accessed the website from Colorado. *Id.* at 1316. The FBI then got a search warrant in Colorado to search Workman's computer, and the FBI caught Workman in the act of downloading child pornography. *Id.* The district court, however, suppressed the evidence. *Id.* at 1317.

The Tenth Circuit assumed for the sake of argument that the magistrate judge lacked the jurisdiction to issue the warrant. *Id.* It then considered whether a reasonably well-trained agent would have known that the warrant was invalid despite the magistrate judge's authorization. *Id.* at 1320. The Tenth Circuit started with the presumption that executing agents act in good faith on a warrant. *Id.* It then bolstered that presumption with the following observations: "1. The software was installed in a government server located in the Eastern District of Virginia. 2. The magistrate judge, who issued the warrant, was in the Eastern District of Virginia. 3. All of the information yielded from the search would be retrieved in the Eastern District of Virginia." *Id.* It thus concluded that executing agents without sophisticated legal training could reasonably rely on the magistrate judge's authorization. *See id.*

This case is similar. Here, it is undisputed that the cellular phones, which were the subject of the interception orders, had been used in Geary County. Judge Platt, who issued the orders, was in the Eighth Judicial District of Kansas, which includes Geary County. And the Plaintiffs engaged in the underlying criminal activity in Geary County. Thus, there were objective ties to Judge Platt's jurisdiction. Consequently, it was reasonable for these officers, who are without sophisticated legal training, to rely on the state judge's authorization. Therefore, the Court grants Virden, Brown, and

Wolf summary judgment based on their statutory good-faith defenses under Kansas and federal law.[6]

Plaintiffs don't point to any evidence from which a reasonable jury could find a different result. Instead, they argue that there is no good-faith defense for a mistake of law. Their argument, however, relies on caselaw outside the warrant context. *See, e.g.*, *State v. Oram*, 266 P.3d 1227, 1235 (Kan. 2011) ("*Leon*'s good-faith exception to the exclusionary rule generally applies only narrowly outside the context of a warrant."); *see also Quigley v. Rosenthal*, 327 F.3d 1044, 1070 & n. 15 (10th Cir. 2003) (arising outside the warrant context and involving private attorneys with sophisticated legal training).

Moreover, Plaintiffs' argument is contrary to *Workman*, where the Tenth Circuit assumed the officers were incorrect that the magistrate judge had jurisdiction. Plaintiffs essentially argue that it is objectively unreasonable to rely on a legally insufficient warrant. But that would all but eliminate the good-faith defense, which begins with the premise of a legally deficient order or warrant. Officers are entitled to rely on judges who have more sophisticated legal training. Under 8 U.S.C. § 2520(d) and K.S.A. § 22-2518(2), it is not an officer's job to research caselaw and correct the judge. Notably, in the Fourth Amendment setting, there are four contexts where the good-faith presumption does not apply. None of them are mistake of law. *See, e.g.*, *United States v. Barajas*, 710 F.3d 1102, 1110-11 (10th Cir. 2013); *State v. Zwickl*, 393 P.3d 621, 628 (Kan. 2017).[7] A reasonably well-trained officer would not have known the orders were invalid despite

---

[6]   The fact that the government could not prove that all the intercepted cellular communications occurred when the phones were in or in contact with Geary County does not change the analysis. The objective connections to Geary County were sufficient for an individual without legal training to have a reasonable belief that the warrants were valid.

[7]   In the alternative, Brown and Wolf would not be liable under the federal statute. Plaintiffs do not allege any facts supporting the proposition that Brown or Wolf personally intercepted, disclosed, or intentionally used their text messages in violation of federal law. Rather, Plaintiffs accuse Brown and Wolf of "procuring" others to intercept and disclose their text messages. Procuring text messages does not give rise to a cause of action under 18 U.S.C. § 2520, however. *See Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246 (10th Cir. 2012) ("[18 U.S.C. § 2520(a)'s]

the judge's authorization. No reasonable jury could conclude otherwise on this record. Therefore, Plaintiffs' arguments must fail.

### B.   Carrier Defendants

Carrier Defendants make two arguments for summary judgment: (1) Judge Platt's orders authorized the interception of text messages, and thus Carrier Defendants have an absolute defense under 18 U.S.C. § 2511 and federal preemption; and (2) alternatively, Carrier Defendants acted in good faith under 18 U.S.C. § 2520(d) and K.S.A. § 22-2518(2). *See* Doc. 182 at 1. In considering these arguments, the Court considers the following additional undisputed facts. On March 7, 2013, James T. Botts from the KBI sent a fax to T-Mobile that contained a March 5 wiretap order. Doc. 182 at 7; Doc. 196 at 6. Handwritten on the KBI coversheet was the phrase "Turn on SMS." Doc. 182 at 8; Doc. 196 at 6. The parties do not specify when T-Mobile started providing text messages to the KBI thereafter, however. On March 7, 2013, law enforcement also sent a fax coversheet to Sprint requesting a wiretap for the phone number in a different March 5 order, though it appears the order itself was not attached to the coversheet. *See* Doc. 182-11. Written on the Sprint fax was the phrase "upgrade to T3." Doc. 182 at 8; Doc. 196 at 6-7. The parties do not agree on what "T3" refers to. *See* Doc. 182 at 8; Doc. 196 at 6-7. On March 7, KBI's Botts "called back in to check the Wire upgrade." *See* Doc. 182-11. Shortly afterwards, Sprint began providing text messages to the KBI. Doc. 182 at 8; Doc 196 at 7.

### 1.  Authorization by Court Order

Carrier Defendants argue that Judge Platt's orders authorized interception of text messages, and therefore they are immune under 18 U.S.C. § 2511. Furthermore, they argue that the federal

---

language does not encompass aiders or abettors."). Virden, Brown, and Wolf raise additional alternative arguments for summary judgment. Because the Court rules for Virden, Brown, and Wolf on their good-faith defenses, the Court does not address those arguments.

statutory defense preempts the state statute that lacks a similar defense. Because the Court holds that Carrier Defendants were not authorized to intercept text messages under Judge Platt's initial orders, it does not reach the preemption argument.

Under federal law, "[n]o cause of action shall lie in any court against any provider of wire or electronic communication service . . . for providing information, facilities, or assistance in accordance with the terms of a court order." 18 U.S.C. § 2511(2)(a)(ii). Text communications are electronic communications. *See Banks*, 2014 WL 4261344, at *2. "Electronic communication" does not include "wire communication" under federal or Kansas law. *See* 18 U.S.C. § 2510(12); K.S.A § 22-2514(11). Thus, an authorization to intercept wire communications does not authorize interception of text messages.

The plain text of Judge Platt's March 5 orders does not authorize the interception of electronic communications such that Carrier Defendants were acting pursuant to a court order when they began intercepting text messages. Those orders authorize law enforcement to intercept wire communications only. Carrier Defendants' arguments to the contrary are unavailing.[8]

Specifically, Carrier Defendants argue that Judge Crabtree already ruled in Plaintiffs' criminal proceedings that Judge Platt's initial orders authorized text messages. But this is incorrect. Judge Crabtree acknowledged that text messages were <u>not</u> explicitly authorized by all the orders, but the officers' good-faith belief that the orders did authorize interception of text messages prevented text messages from being completely excluded. *See Banks*, 2014 WL 4261344, at *5. Judge Platt and the officers may have intended for the orders to authorize interception of text

---

[8]   The parties do not address an April 4 order that extended the duration of the March 5 wiretap order sent to T-Mobile. *See* Doc. 174-6 at 222-27. The April 4 order does not authorize interception of electronic communications either. *Id.* at 224.

messages, but the initial orders did not so authorize. Therefore, the Court declines to grant summary judgment based on 18 U.S.C. § 2511(2)(a)(ii) on the instant record.

### 2.  Good Faith

Carrier Defendants next argue that they are entitled to summary judgment because they acted in good faith on a court order. Under state and federal law, any entity that intercepts wire, oral, or electronic communications in good-faith reliance on a court order has a complete defense against any civil action. 18 U.S.C. § 2520(d); K.S.A. § 22-2518(2). "To be in good faith, a defendant's reliance on a court order must have been objectively reasonable." *Davis*, 111 F.3d at 1484.[9]

Carrier Defendants acknowledge that statutory good faith is an affirmative defense. Doc. 182 at 25 n.9. But they have not met their burden of proof. Carrier Defendants allege that most wiretap orders in general request interception of text data. Doc. 182 at 7. But that does not make it reasonable to assume that the orders at issue here authorized text-message interception. Furthermore, Carrier Defendants point to one of Agent Virden's affidavits as evidence that they were objectively reasonable in intercepting text messages. But even if using Virden's affidavit to construe the wiretap orders would have made intercepting text messages objectively reasonable, there are no facts to suggest that Carrier Defendants ever received his affidavit at the time, read it, or relied on it in interpreting the wiretap orders. There are holes in the record, and the Court can't make inferences to fill these holes in Carrier Defendants' favor under the summary judgment standard. *See Henderson*, 41 F.3d at 569.

---

[9]   The Court again acknowledges that the Tenth Circuit has not spoken clearly as to whether there is a subjective component to the good faith standard. In the face of this ambiguity, the Court applies the objective standard in *Davis* based on the Tenth Circuit's remands. *Banks*, 814 F. App'x at 331; *Thompson*, 815 F. App'x at 233.

And even more importantly, at least two carriers refused to intercept text messages pursuant to two similarly worded wiretap orders until they got clarification orders from Judge Platt. One of those carriers, Sprint/Nextel, is a party in this case. Carrier Defendants have not shown the Court how it was objectively reasonable to intercept text messages under the orders at issue when similar orders needed clarification.[10] Carrier Defendants point to no facts distinguishing the orders where carriers sought clarification from the orders here. Instead, they focus on handwriting on the coversheets transmitted to them on March 7. Following handwritten directives on coversheets is not reliance on a court order. Therefore, the Court declines to grant summary judgment based on statutory good faith.[11]

IV.    **CONCLUSION**

The Court carefully reviewed the extensive record in this case. The Court finds that the Individual Defendants are entitled to summary judgment but that Carrier Defendants are not.

THE COURT THEREFORE ORDERS that Defendant Opat's Motion for Summary Judgment (Doc. 177) is GRANTED.

THE COURT FURTHER ORDERS that Defendant Virden's Motion for Summary Judgment (Doc. 173) is GRANTED.

---

[10]  Carrier Defendants note that the clarification orders only applied to orders directed to Plaintiffs' co-conspirators. They refer to the orders that were clarified, however, as Ponds Order #1 and Thompson Order #2. Based on the record, it appears that the clarified orders were for co-conspirators Ponds and Ivory. Compare the phone numbers in the clarification orders at Doc. 182-13 at 2 and Doc. 182-14 at 2 with the phone numbers for Ponds Order 1 and Ivory Order 1 in the exhibit list at Doc. 174-2 at 1.

[11]  Carrier Defendants mention in passing that they are entitled to rely on law enforcement's understanding of the orders. Doc. 182 at 24 (citing *United States v. Peterson*, 812 F.2d 486, 492 (9th Cir. 1987)). There is a federal statutory defense for following a law enforcement officer's request. *See* 18 U.S.C. § 2520(d)(2). To the extent Carrier Defendants rely on this statutory defense, they do not develop this argument. Furthermore, even if they had, issues of material fact remain. For example, what does "upgrade to T3" mean? Furthermore, did Agent Botts ask Sprint to intercept text messages when he called? The record does not say. It merely shows that after the call, Sprint started intercepting text messages. Correlation does not equal causation. The Court makes all reasonable inferences in favor of the non-moving party at the summary judgment phase. *Henderson*, 41 F.3d at 569. Thus, Carrier Defendants have not met the burden of proving their affirmative defense at this stage.

THE COURT FURTHER ORDERS that Defendant Brown's Motion for Summary Judgment (Doc. 175) is GRANTED.

THE COURT FURTHER ORDERS that Defendant Wolf's Motion for Summary Judgment (Doc. 179) is GRANTED.

THE COURT FURTHER ORDERS that Carrier Defendants' Motion for Summary Judgment (Doc. 181) is DENIED.

IT IS SO ORDERED.

Dated: December 27, 2021                    /s/ *Holly L. Teeter*
                                            HOLLY L. TEETER
                                            UNITED STATES DISTRICT JUDGE