# UNITED STATES OF COURT OF APPEALS FOR THE TENTH CIRCUIT

**ALEBERT BANKS**

v.                                                            No: 23-3102

**GLEN VIRDEN, et al…**

## STATEMENT OF ISSUES

### ISSUE 1

A rational trier of fact could conclude the defendants in affixing their signature on the wiretap order prior to its execution to the phone carriers is sufficient evidence to consider defendants an authorizing official for purposes of this litigation and therefore the district court erred in failing altogether to consider the issue of use and disclosure of the communications.

### ISSUE 2

When considering the relevant law and facts before the district court a rational trier of fact could conclude that the defendant's interception of the communications was unlawful under McNulty and therefore good faith not applicable.

## Statement of Facts

(1)     The defendants did sign and date a copy of the wiretap order March 6, 2013. See Banks Doc. 178-1(Glen Virden Affidavit); See Banks Doc.176-2 (Brown's Affidavit); See Banks

Doc. 178-2 (Opat Affidavit).

(2)     The wiretap order was not issued for execution to the phone carriers until March 7, 2013, and it contained defendant's signature. See. See Doc. 182-9 at pg. 2 (Declaration of Robert

1

Wilden of Sprint PCS).

(3)    To the best of my knowledge, none of the wiretap orders explicitly authorized the use and or disclosure of any information in accordance with 18 U.S.C 2517(5). That is, the crimes investigated in the wiretaps were state crimes, not federal crimes, but the defendants in this case used and disclosed interceptions in court proceedings regarding federal crimes distinct from those state crimes. To the best of my knowledge, no such subsequent application for disclosure was made, no such order was granted, and neither such order nor application was ever produced in discovery. See Banks Doc. 200-1 at 2 (Banks Declaration).

(4)    I make this declaration from my personal knowledge. I am familiar with the events in this case as well as the underlying and related criminal investigation. Id at 1.

(5)    The information of both calls and text, as well as information derived…were disclosed to federal law enforcement and or federal prosecutors by the defendants or people procured to do so by defendants. Id at 2-3.

(6)    Judge Platt was not authorized to issue wiretap orders beyond the scope of his jurisdiction.

See Banks Doc. 197 at 2 (denying Brown's uncontroverted statement).

(7)    Judge Platt was told by defendants why and how the proposed wiretaps would take place; where intercepted communications would be received and monitored i.e., the listening post was in Topeka, Kansas; and where the intercepted communications would be kept until their delivery to the Eight Judicial District, District Court. See Doc. 178-1 at pg. 4 (Glen Virden Affidavit).

(8)     Beginning March 7, 2013, law enforcement officers from the KBI, the Junction City
        Police Department… took turns monitoring and collecting data about calls and text
        in real time. I personally monitored and collected some intercepted communications
        attached to investigative reports prepared by other enforcement officers. See Doc.
        178-1 at pg. 5 (Glen Virden Affidavit).

(9)     To document that officer monitoring communications *knew the terms* of the March
        2013 order, the officers were required to sign and date a copy of the order. See Doc.
        178-1 (Glen Virden Affidavit).

(10)    United States v. McNulty 729 F.2d 1243, 1266 (10th Cir 1983) (en banc) (the federal
        wiretap statute, 18 U.S.C 2516(2), requires federal courts to defer to state law on
        the question of validity of a wiretap order obtained in state court under state law).
        See Also State v. Adams, 2 Kan. App. 2d 135, 576 P.2d 242 rev. denied 225 Kan.
        845 (1978) (where there is interception of telephonic communications a district
        judge sitting another judicial district has no power under K.S.A. 222516 (3) to
        authorize the interceptions).

(11)    Defendants had reason to know the order was invalid on its face. See Thompson
        Doc. 71 at par 11.

(12)    Defendants had knowledge that all the text messages received were illegal under
        the federal and state wiretap laws because Verizon sent them a letter of clarification
        informing law enforcement that the order in question failed to authorize the
        interception of text messages. Id par.

(13)     Defendants did not make a conscious evaluation at the time he signed the wiretap

order. See Banks Doc. 178-1 at pg. 7 (Glen Virden Affidavit).

(14)     The joint task force personally monitored and collected the interceptions and

reviewed intercepted communications attached to investigative reports. See Banks

Doc.

178-1 at pg. 5 (Glen Virden affidavit).

(15)     Judge Platt did not "understand necessarily all of the hardware/software", "those

type of things" and the agents "explained all that to him" See Doc. 198 at pg. 11

(Plaintiff's

Statement of Additional Uncontroverted Facts) (Citing Judge Platt's testimony from United

States v. Banks, 13-cr-40060 (Doc. 1013) (D. Kan. Aug 22, 2014), at pg. 359-60).

(16)     At a May 9, 2013, press conference the day most of the arrest happened, Brown

took a    lead role describing this investigation, directing who spoke, and answering

media questions. See Banks Doc. 197 at pg. 3 (Response to Brown's uncontroverted

Facts) (citation of website omitted).

(17)     Mr. Opat was the Geary County Attorney responsible for prosecuting the criminal

case. Yet he claims in his affidavit to never listened to a communication or viewed

any text message. The applications for extensions for wiretap orders submitted by

Opat contained text messages and phone calls to support his probable cause request

for the extensions of the wiretap order. See Banks Doc. 178-2 (Opat Affidavit).

(18)     Opat's duty as a county attorney is to appear in any court having jurisdiction within

the county and prosecute and defend on behalf of the people all actions and

4

proceedings, civil and criminal, in which the state or county is a party. See KSA 19-70(a).

## SUMMARY OF THE ARGUMENT

There is one disputed fact which standing alone requires this case to move forward and allow the jury to determine the factual dispute. Judge Platt signed the order on March 5, 2013. See Banks Doc. 178-1 (Glen Virden Affidavit); Banks Doc. 176-2 (Brown's Affidavit); See Banks Doc.178-2 (Opat Affidavit). Defendants signed the order on March 6, 2013.Id. Defendants claim that when they signed the order the day after Judge Platt the order was already authorized so their signature had no effect. Contrary to defendant's stance the record indicates the order was not issued for execution to the phone carriers until March 7, 2013. *See Banks Doc 182-9 at pg. 2 (Declaration of Robet Wilden of Sprint PCS)*. When the phone carriers obtained the order, it contained over 60 names from the task force including the defendant's signature on it. Id. The plaintiff disagrees with defendant's position and argues a reasonable jurist can conclude that the order was issued for execution on March 7, 2013, the day the phone carriers received the order which had defendant's signature lodged on it. See Banks Doc. 182-9 at pg. 2 *(Declaration of Robert Wilden of Sprint PCS)*. A reasonable jurist can conclude based on this fact that the phone carriers viewed all the 60 plus signatures as authorizing officials. This factual dispute must be considered by the jury and not the district court. As to defendant Opat because the state of Kansas is not an interested party in the federal action pursuant to KSA 19-702(a). Opat's participation in the disclosure and use to federal agents cannot be protected by his shield as a Kansas County Attorney and prosecutorial immunity and absolute immunity cannot be applied.

5

The district court ruled in favor of summary judgment by relying on United States v. Workman 863 F.3d 1313 (10th Cir. 2017). See Banks Doc. 208 at 6-9. The Workman panel dealt with a federal warrant under Rule 41(b) in which the magistrate lacked jurisdiction. This case, however, deals with the validity of the state issued wiretap order being used in federal court. Under the federal law itself a federal court is required to turn to the state law to determine if the state wiretap order complies with federal law. See Statement of Facts. Sufficient evidence provides that Judge Platt turned to the defendants (primarily Virden and Opat) to explain to him the hardware and software issues within the wiretap context. See Statement of Facts. Based on this fact a rational trier of fact could reject defendants' attempt in good faith to rely on Judge Platt's authority when considering the legality of the order. Because this Court does not allow good faith when officers violate clearly established law the district court's good faith finding fails to comport with the evidence presented.

Secondly, the district court ruled in favor of summary judgment for the defendants without as much as considering the use and disclosure claim. Virden claims that this is a new issue raised for the first time on appeal. The record shows the plaintiff charged via complaint the defendants with the intentional unlawful use and disclosure of the communications in the district court. This Court has found that use and disclosure is distinct from unlawful interception. The wiretap orders in question only authorized the use and disclosure of the communication for evidence of crimes against the state of Kansas. The defendants presented no evidence that a subsequent order of approval was authorized by a judge which allowed the evidence to be disclosed for evidence of federal crimes. See Statement of Facts. The evidence in the record provides that no federal officials participated in the Joint Task Force's investigation. Id. Opat and Virden both in affidavits admit the unlawful evidence was referred by the joint task force to

6

federal authorities. Id. A rational trier of fact could find that as members of that task force Opat and Virden actively participated in that decision. The same principle applies to Brown. The case must proceed into the jury trial phase. This Court must reverse the district court's summary judgment award.

Virden asked this Court to dive deep within the record and affirm the district court on a statute of limitations defense which was litigated by both parties but passed on by the district court. The record shows that the plaintiff was incarcerated when he filed his initial complaint and summons. That complaint and summons was filed well within both the two- and three-year statute of limitations for state law and federal statute of limitations purposes. The Court issued a show cause order and explicitly denied the request for summons. At that point the plaintiff had no choice but to move forward with the show cause order. After substantial litigation the amended complaint was eventually granted, and a summons was promptly made. It is not patently clear from the record that these are not extraordinary circumstances which warrant equitable tolling. This is an issue which the district court is required to address on remand.

Finally, defendant Opat because the state of Kansas is not an interested party in the federal action pursuant to KSA 19-702(a) Opat's participation in the disclosure and use to federal agents cannot be protected by his shield as a Kansas County Attorney and prosecutorial immunity and absolute immunity cannot be applied. Mr. Opat's actions in authorizing the use and disclosure of unlawful communications to federal authorities is not protected as an advocate for the State of Kansas. The action of authorizing a wiretap order is not a statutorily prescribed duty of a County Attorney. A County Attorney may request a wiretap order but nowhere in the statute is a County Attorney proscribed to authorize the wiretap orders themselves. Only a judge is protected by his title as a judge in signing or authorizing a wiretap order. Opat states that he signed a copy of a

wiretap order on March 6, 2013, while the Judge signed the order on March 5, 2013. Mr. Opat fails

to mention that the wiretap order was not issued for execution to the phone carriers until March 7,

2013. The point is when the phone carriers received the orders, they contained Opat's signature on

the order. But the signature of a County Attorney on a wiretap order was not required nor permitted

by law. Opat's signature was permitted on the request for the order but not the actual order itself.

Opat's actions in authorizing a wiretap order and disclosing through the task force to federal

authorities is not protected by the duties of a County Attorney in the State of Kansas because for

one Kansas is not a party in the action. Absolute immunity and prosecutorial immunity failed to

protect him in this rare instance.

### *A Rational Trier of Fact Could Conclude*

Because the phone carriers did not receive the order in question until the day after

defendants signed the order a rational trier of fact can conclude the defendants in the eyes of the

phone carrier were authorizing official. See Statement of Facts. Opat and Virden admitted in their

affidavits that they both failed to make a conscious evaluation at the time he signed the wiretap

order and used those communications illegally. Id. Based on the record and clearly established

law a reasonable trier of fact could conclude Brown also failed to make a conscious evaluation.

Id. It is also clear that Judge Platt relied on law enforcement to explain the procedures when it

came to the wiretap order. Id. A rational trier of fact could easily conclude the defendants cannot

rely in good faith on Judge Platt's authority to use and disclose unlawful communications. It is

undisputed from the record that the defendants as the lead law enforcement officers in their

respective departments placed their signature on the invalid wiretap order in violation of clearly

established precedent. Id. A reasonable jurist could conclude based on the defendant's affidavit as

the lead investigative officers, knowing the terms of the order, knew or should have known that

8

monitoring in Topeka was unlawful. Id. The record leaves a reasonable jurist to conclude the defendants are considered authorizing officials who knew the communications were to be intercepted and monitored in Topeka Kansas which was outside of the jurisdiction of the district court. Id. A reasonable jurist could conclude the defendants' signatures represented in the eyes of the phone carriers their authorization to the entire joint task force to intercept, use, and disclose the unlawful communications. The evidence in the record via affidavits from the defendants is sufficient for a reasonable jurist to conclude that none of the task force researched the wiretap law prior to signing the order. Id. There is no evidence in the record that there was a subsequent order of approval from any judge which specifically authorized the evidence in question to be used for violations of federal crimes. Id. Because Virden and Opat's affidavit states a decision was made by the joint task force to refer the main players to the Office of the United States Attorney, a rational trier of fact can conclude the Joint Task Force was responsible for that decision and the disclosure and use of the communications to federal authorities for evidence of federal crimes in violation of both the state and federal wiretap acts. Id.

At the time the defendants signed their name on the wiretap order the law from United States v. McNulty and State v. Adams informed the task force that the wiretap order was unlawful on its face. See Statement of Facts. Since the wiretap order was issued under state law the district court was required to turn to McNulty/Adams to determine if the defendant's authorization of the wiretap order was lawful under precedent prior to making its good faith determination. The district court, after reviewing McNulty and Adams should have considered whether the defendants' signatures resulted in the unlawful issuance, execution, authorization, interception, use and disclosure of the communications in question. After finding McNulty was violated, the district court was required to review good faith under the lens of can law enforcement receive

9

good faith when they violate clearly established law. There is sufficient factual evidence to support a rational trier of fact finding defendants were required to sign the wiretap order before it was issued for execution to the phone carriers and (1) they were to monitor the communications and approved the use and disclosure of those communications for the joint task force and ; (2) to show they understood the terms the wiretap order e.i (the communications were to be monitored and intercepted outside the lawful jurisdiction of the district court) , (3) and Judge Platt relied on law enforcement to explain the wiretap law to him and (4) As for Brown and Opat, they both claim in affidavits to not have participated in the investigation at all. But the facts in the record indicate not only did they authorize the issuance of the interception, use, and disclosure by signing the order prior to its execution to phone carriers, but they also spoke to the media at a press conference explaining in detail how hard they worked on the investigations. See Statement of Facts.

The record shows that a rational jurist could conclude that even though defendants and 60 other law enforcement personnel signed the wiretap order on March 6, 2013, it was not issued for execution to the phone carriers until March 7, 2013. See Statement of Facts. A rational jurist could conclude that the phone carriers viewed this as more bolstered authority than a usual request from a judge. Defendants were required to know the law they were charged with upholding. Finally, Virden in his affidavit admits to the task force monitoring, using, and referring the evidence to federal authorities. See Statement of Facts. This is indicative that a reasonable jurist could conclude that despite statements to the contrary defendants may also be liable for the unlawful use and disclosure. Regardless of defendant's arguments there are sufficient facts presented to show that defendants by placing their signature on an invalid wiretap order prior to the issuance of the execution of the order to the phone carriers, without researching

10

the law makes them liable for the subsequent interception, use and disclosure of the unlawful communications. When clearly established law is violated, this fact standing alone informs law enforcement that those actions are not protected by good faith.

## **ARGUMENTS AND AUTHORITIES**

We review the grant or denial of summary judgment de novo. See Barnson v. United States, 816 F.2d 549, 552 (10th Cir. 1987). We apply the same legal standard used by the district court under Fed.R.Civ.P. 56(c) and examine the record to determine if any genuine issue of material fact was in dispute; if not, we determine if the substantive law was correctly applied.

See Osgood v. State Farm, 848 F.2d 141, 143 (10th Cir 1988). When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. See Gray v. Phillips.858 F.2d 610, 613 (10th Cir. 1988).

### **ISSUE 1**

*AT THE SUMMARY JUDGMENT STAGE, A REASONAL JURIST COULD CONCLUDE BASED ON DEFENDANTS POSITION AS LEAD LAW ENFORCEMENT AGENTS THAT BY AFFIXING THEIR SIGNATURE ON THE ORDER PRIOR TO THE ORDER BEING ISSUED FOR EXECUTION TO THE PHONE CARRIERS IS SUFFICIENT TO QUALIFY THEM AS AN AUTHORIZING OFFICIAL IN THE EYES OF THE PHONE CARRIERS WHICH IN ITSELF VIOLATES THE LAW*

While addressing summary judgment under good faith the district court totally failed to consider how the facts applied to the unlawful use and disclosure claim altogether. See Banks Doc.

208 at 6-9 (addressing good faith under Workman's illegal interception issue). This Circuit has made it clear that the use and disclosure of telephone communications is a discrete legal issue from the legality of intercepting and recording such communications. See Quigley v. Rosenthal, 327 F.3d 1044, 1070-71 n. 15 (10th Cir. 2003).). The facts from the record clearly indicate that Mr. Opat acted as the lead County Attorney and participated as a member of the Joint Task Force meeting by affixing his signature on the wiretap order prior to its execution which authorized interceptions to take place anywhere in the United States. Mr. Opat, more than any other defendant, had a duty to know the law. See Banks Doc. 198 at pg. 3-4 (Plaintiffs' Response to Statement of Material Uncontroverted Facts). The facts from the record clearly indicate that the other defendants participated as members of the joint task force meeting by affixing their signatures on the wiretap order prior to the execution to the phone carriers. See Banks Doc. 182-9 (Declaration of Robert Wilden from Sprint PCS). Defendants had a duty to know the law. See Banks Doc. 198 at pg. 3-4 (Plaintiffs' Response to Statement of Material Uncontroverted Facts). A reasonable jurist could conclude that as a lead members of the joint task force the defendants knew the communications would be intercepted and monitored in Topeka Kansas which was clearly outside the jurisdiction of the district judge's lawful authority. See Banks Doc. 178-1 at pg. 4 (Glen Virden Affidavit "Stating as part of the investigation the communications would be monitored and stored in Topeka Kansas").

Based on this record a rational jurist could conclude defendants knew or should have known their actions in affixing their signature on the order prior to the issuance of execution of the order to the phone carriers violated the state and federal wiretap laws. See United States v. McNulty 729 F.2d 1243, 1266 (10th Cir 1983) (en banc) (*the federal wiretap statute, 18 U.S.C 2516(2), requires federal courts to defer to state law on the question of validity of a wiretap order*

*obtained in state court under state law*). Had the district court followed McNulty and deferred to State wiretap law it is clear the state law was violated by authorizing interception to take place anywhere in the United States of America. See State v. Adams, 2 Kan. App. 2d 135, 576 P.2d 242 rev. denied 225 Kan. 845 (1978) (*where there is interception of telephonic communications a district judge sitting another judicial district has no power under K.S.A. 22-2516 (3) to authorize the interceptions*). Defendants in this case are not even Judges.

Other facts in the record also indicate that no federal law enforcement agency or federal attorney participated in the joint task force investigation. See Banks Doc. 178-1 (Glen Virden affidavit "investigation was jointly conducted by the KBI, Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department"); See Also Statement of Facts. I

It is not disputed that the communications were used by the federal authorities to pursue federal charges which were not approved in the wiretap order. See United States v. Banks, Case No 13-cr40060-DDC (ECF Doc. 517) (Judge Crabtree holding in the criminal case *"the Kansas wiretap statute "explicitly" limits a judge's wiretapping authority to his or her own jurisdiction"* while suppressing the communications which are relevant to this action). A reasonable jurist could conclude from this fact and from affidavits that as the lead agents the defendants by affixing their signature on the order prior to the execution to its phone carriers, without researching the wiretap law is at the least sufficient for a reasonable jurist to conclude that they participated in the joint task force's unlawful use and disclosure of the communications to federal authorities. Or under the state law claim procured designees to do the same. In rejecting a good faith defense to punitive damages claim the Quigley Court noted that the defendants had failed to discover that their "use" of the calls was unlawful. See Quigley v. Rosenthal, 327 F.3d 1044, 1071 n 15 (10th Cir 2003).

The defendant's failure to research the law in this situation is critical to their cause. The same facts from Quigley apply to this case.

There is no evidence of federal participation in the joint task force investigation. See Statement of Facts. Defendants affixed their signature to the order without researching the relevant wiretap law. Id. At some point a decision was made by the joint task force to refer the case and evidence to the federal authorities. Id; Also Banks Doc. 178-1 at pg. 9 (Glen Virden Affidavit). Defendants never disputed the claim that their joint task force failed to obtain a subsequent order from a judge to allow the evidence to be used and disclosed for evidence of federal law violations.

Banks Doc. 199-1 at pg. 2 (Plaintiff's declaration "charging a violation of 18 U.S.C 2517(5)"); See Also Thompson Doc. 71 (charging the defendant with the unlawful use and disclosure of the communications in the amended complaint). The sole remedy for past disclosure in violation of 18 U.S.C 2517(5) is the civil action created by 18 U.S.C 2520. See United States v. Levy, 905 F.2d 326, 329 (10th Cir. 1990). Where a law enforcement officer intercepts communications relating to crimes other than those specified in the order, he or she must obtain judicial permission before disclosing those communications, or evidence derived therefrom, in a court proceeding. Id. Further liability for use and disclosure requires proof that a defendant knew or had reason to know that the "information was obtained through the interception... in violation of the statute. See Thompson v. Delaney, 970 F.2d 744 749 (10th Cir. 1992). This requires proof that a defendant knew that information came from an intercepted communication and sufficient facts concerning the circumstances of the interception such that the defendant could, with presumed knowledge of the law determine that the interception was prohibited. Id. A reasonable jurist could find that defendants failed to research the law and disclosed those unlawful communications to federal

authorities without subsequent authority from a judge. See Statement of Facts. The district court erred in failing to acknowledge the use and disclosure issue altogether. See Banks Doc. 208 at 6-9.

## *ISSUE II*

## THERE IS NO GOOD FAITH FOR VIOLATIONS OF CLEARLY ESTABLISHED PRECEDENT OR FOR TITLE III FOR MISTAKE IN THE LAW

Had the district court reviewed the good faith claim under the lens of McNulty good faith could not apply under any of this Court's good faith precedent. When reviewing the validity of state wiretap order being used in federal court, McNulty explicitly held *"the federal wiretap statute itself, 18 U.S.C 2516(2), requires federal courts to defer to state law on the question of validity of a wiretap order obtained in state court under state law"*. See United States v. McNulty 729 F.2d 1243, 1266 (10th Cir 1983) (en banc). The district court never turned to the relevant state law to determine if defendants were warned by the law that their actions in signing the order, intercepting, using, and disclosing the communications were unlawful at the time. See Doc. 208 at 6-9. Had the district court done so it is clear good faith cannot be applied in this instance. Turning to state law the Kansas Supreme Court while discussing if a state judge had lawful authority to issue interceptions outside of its district explicitly held *"where there is interception of telephonic communications a district judge sitting another judicial district has no power under K.S.A. 222516 (3) to authorize the interceptions"*. See State v. Adams, 2 Kan. App. 2d 135, 576 P.2d 242 rev. denied 225 Kan. 845 (1978). If a judge lacks authority, then it is beyond question whether an officer has authority to issue a wiretap order outside the jurisdiction of the district court. The evidence in this case shows that not only did defendants not have the authority to issue extra territorial interceptions but they were not even a district judge. The fact defendants decided to sign a wiretap

order without being a district judge standing alone is enough to show a violation of the wiretap act. See Doc. 178-1. 1 (Virden's Affidavit); Doc. 176-2 at pg. 1 (Mr. Brown's Affidavit); Doc. 178-2 (Opat's Affidavit*); But See* 18 U.S.C 2518(3) (*Only judges allowed to make ex parte orders for wiretaps*). These two cases make it clear that on May 6, 2013, defendants should have known their actions in authorizing the issuance of the interception, use and disclosure of the communications was unlawful.

**Good Faith Not Available Under Precedent**

This Court has always held good faith cannot be upheld in a situation when officers violate clearly established law. In the face of binding precedent, the defendant cannot claim to have a subjective belief that his actions were reasonable. See Dahl v. Charles F. Dahl, 744 F.3d 623, 631 (10th Cir 2014) (A defendant may invoke the defense of good faith in reliance of a court order only if he can demonstrate (1) that he and a subjective good faith belief that he acted legally pursuant to a court order; and (2) that this belief was reasonable). In this case defendants cannot logically state that their actions in failing to research the law while violating binding precedent were reasonable. See Statement of Facts. Officers in Kansas are presumed to know the law of the jurisdiction that they are enforcing. Therefore, a failure to understand the law by the very person charged with enforcing it is not objectively reasonable... See State v. Oram, 266 P.3d 1227, 1237 (Kan. Ct. App. 2011). This Court has noted very similar sentiments to the Oram Court. In failing to understand the left turn law this Court noted failure to understand the law by the very person charged with enforcing it is not objectively reasonable. See United States v. Nicholson, 721 F.3d. 1236, 1238 (10th Cir. 2013). This rule does not only apply to plain and unambiguous laws. Id at

16

1241. But See Also Heggy v. Heggy, 944 F.2d 1537, 1539 (10th Cir. 1991) (finding the Title III Act to be clear and unambiguous). In Heggy this Court upheld the district court rejecting a defense that a husband didn't know he did anything illegal about wiretapping his wife's phone. This Court held there is no good faith for misunderstanding the law. Id at 1542.

The clearly established law surrounding both good faith is why it was so important for the district court first to review the facts and evidence considering McNulty and Adams prior to making its summary judgment decision based upon good faith. The district court allowed defendants to use good faith to comport with their misunderstanding of the law. But this court has noted preventing law enforcement from good faithing away their misunderstanding of law comports with basic policy of fairness. See Nicholson, 721 F.3d 1242. This is the only reasonable way to view this type of situation. If a citizen is presumed to know the law, should officers be expected to know the law? Id. Permitting them to excuse mistakes of law as reasonable would disincentivize officers from making certain that they properly understand the law they are entrusted to enforce and obey. Id. And where they do not understand the law one would hope that a law enforcement official would clarify his misunderstanding of any unclear provision before bringing the full force of the law on an unsuspecting citizen. Id at 1243.

The district court in turning to this Court's decision in Workman awarded defendants summary judgment even though the evidence and facts clearly showed their actions violated clearly established binding precedent. See Banks Doc.208 at 6-9. This is not a case where the jurisdiction of a federal magistrate is challenged under Federal Rule 41(b). Had the district court properly followed Workman according to the facts from this case it would have turned to existing law prior to making its good faith determination. See United States v. Workman, 863 F.3d 1313,

17

1321 (10th Cir. 2017) (objective reasonableness sometimes turns on the clarity of the existing law). This action concerns a state wiretap which was used and disclosed in federal proceedings by the defendants. Federal Rule 41(b) has no authority under good faith over this 18 U.S.C. 2516(2), & KSA 22-2516(3) action. To determine the validity of the communications being used in federal proceedings the district court was required to turn to the law surrounding 18 U.S.C 2516(2), and KSA 22-2516(3) prior to evaluating the good faith defense. The failure of the district court to do so in the face of the relevant facts and evidence is devastating to the defendant's cause. The good faith decisions must be reversed.

### ISSUE 3

**STATUTE OF LIMITATIONS DEFENSE AT THIS STAGE CANNOT BE AFFIRMED AS AN ALTERNATIVE REASON FOR AWARDING SUMMARY JUDGMENT GIVING ALL REASONABLE INFERENCES TO THE NON-MOVING PARTY**

The plaintiff made over 30 uncontroverted statements of facts regarding the statute of limitations defense. See Banks Doc.198 at pg. 5-11. (Plaintiff's Statement of Uncontroverted Facts). Every fact was backed by a declaration of the defendant or the record from the civil proceedings. Id. When the plaintiff initially filed his complaint and summons the district court denied the summons and entered a show cause order. Id at 5-6. At this point the plaintiff being incarcerated had no choice but to address the show cause order. Id. A response was filed to the show cause order and a stay was requested to see the outcome of the criminal case. Id 5-11. Once the stay was lifted the motion to amend was granted and the stay was lifted. Id. The plaintiff timely filed summons on all the defendants. Id. All defendants responded to the amended complaint except for Virden as the KBI responded. Id This caused confusion as the plaintiff thought the KBI was appearing on behalf

of Virden. Id. The district court explained that Virden had not been served and gave the plaintiff

60 days to serve a summons on Virden. Id. The plaintiff timely served Virden. Id. The reason for

the failure to serve Virden was a clerical error by the Court and was not the fault of the plaintiff.

This is an issue which must be addressed in the first instance by the district court who is more

equipped to deal with the factual disputes surrounding this situation. The Court should leave the

statute of limitations issue to the district court.

### *ISSUE IV*

## A COUNTY ATTORNEY WHO AUTHORIZES A WIRETAP ORDER OUTSIDE OF HIS PROTECTION OF THE LAW AND HIS DUTIES AS A COUNTY ATTORNEY CANNOT RECEIVE ABSOLUTE IMMUNITY

### Argument And Authorities

State prosecutors are entitled to absolute immunity for activities for activities "intimately

associated with the judicial. Process" See Gagan v. Nolan, 35 F.3d 1473, 1475 (10th Cir. 1994). But

not every action performed by a prosecutor is absolutely immune simply because they are

performed by a prosecutor. Id. Investigative and administrative actions by state prosecutors are not

entitled to absolute immunity. Id at 1475. In distinguishing between investigative/administrative

and prosecutorial activities, the determinative factor is advocacy, and the more distant a function

is from the judicial process and the initiation and presentation of the state's case the less likely it

is that absolute immunity will attach. Id.

## The State of Kansas Was Not A Party To The Federal Action

In this case Opat's duty as a county attorney is to appear in any court having jurisdiction within the county and prosecute and defend on behalf of the people all actions and proceedings, civil and criminal, in which the state or county is a party. See KSA 19-70(a). It is undisputed that when it comes to the federal proceedings the State of Kansas is not an interested party in the action. See United States v. Banks 13-40060 DDC-10(United States is the only interested party). Second, Opat signed a wiretap order which he was not required by state or federal law to sign. Only a judge can enter an ex parte order authorizing the interception of communications. See 18 U.S.C 2518 (3); KSA 22-2516(3).

Normally prosecutors obtain absolute immunity when they appear in court for an actual hearing. See Burns v. Reed, 500 U.S. 478, 492 (1991). Here there was no such hearing but rather a closed-door meeting by the task force where no record, or even notes, were taken. See Banks Doc. 200 at 19 (Plaintiff's Response to summary Judgment). In Mitchell v. Forsyth, 472 U.S 511, 522 (1985), the Supreme court explained that the "secret" nature of national security task, as opposed to the prosecutorial role of Attorney General, undermined the need to apply absolute immunity, as overt winners and losers are rare". To label a secret meeting that occurred nearly two months before initiation of the charges would strain credibility of the word. Further, Opat's prosecution of the plaintiff in the state case was virtually nonexistent, as the plaintiff sat in jail for weeks without counsel, evidence, or a productive hearing. Opat's participation in the wiretap process was much more akin to an investigator role than an advocate role. Absolute immunity should be denied.

## CONCLUSION

For the reasons stated above, Banks respectfully requests this Court to reverse and remand for all

counts which remain after this Court's previous decision.

Respectfully submitted:

Albert Banks

24248 W. Main St.

Plainfield Illinois 60544

## CERTIFICATE OF SERVICE

I certify that on ~~November 15,~~ December 8, 2023, I placed an exact copy of this motion in the

first-class mail via the United States Postal Service. I certify that this reply complies with

Federal Rules of Appellate Procedure 32 (a)(7)(A) as it contains 6175 words.



# UNITED STATES POSTAL SERVICE ®

## PRIORITY ® MAIL

PRIORITY MAIL
POSTAGE REQUIRE

PRESS FIRMLY TO SEAL

■ Expected delivery date specified
■ Domestic shipments include $100
■ USPS Tracking® service included
■ Limited international insurance.**
■ When used internationally, a custo

*Insurance does not cover certain items. For
Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.u

MAILING ENVEL
FOR DOMESTIC AND INTERN

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

**UNITED STATES POSTAL SERVICE.**     *Retail*

**P**     **US POSTAGE PAID**
**$10.20**     Origin: 66605
12/08/23
1989360006-29

**PRIORITY MAIL®**

0 Lb 4.10 Oz

**RDC 03**

EXPECTED DELIVERY DAY:   12/11/23

SHIP
TO:     DENVER CO 80257



**USPS TRACKING® #**

9505 5117 9166 3342 7383 11

FROM:

## PRIORITY ★ MAIL ★

**UNITED STATES POSTAL SERVICE**

VISIT US AT USPS.C
ORDER FREE SUPPLIES ONL

FROM: Albert Banks
24248 W. Main St.
Plainfield Illinois
60544

TO: Clerk of Court
Byron White Courthouse
1823 Stout St
Denver Co. 80257

Label 228, March 2016          FOR DOMESTIC AN